## UNITED STATES DEPARTMENT OF THE INTERIOR
## BUREAU OF RECLAMATION

---

## REPORT OF INVESTIGATION

---

**TITLE:**
Daniel Hamann
Electrical Engineer, GS-11
Department of the Interior (DOI)
Bureau of Reclamation (BOR)
Technical Service Center (TSC)
Denver Federal Center
Building 67, 7th Floor
Denver, CO  80225

**COMPLAINANT'S HOME ADDRESS:**
10799 W. Alameda Avenue
Unit 150032
Lakewood, CO  80215

**COMPLAINANT'S TELEPHONE NUMBERS:**
Cell:   720-428-9543
Work: 303-445-2819
Home: 210-401-3583

**REPRESENTATIVE:**
None

**CASE NUMBER:**
DOI-BOR-19-0764

**CONTRACTOR:**
Resolution Services, LLC
900 Massachusetts Street, Suite 380
Lawrence, KS  66044

**INVESTIGATOR:**
Shirley Cain

**BASES OF COMPLAINT:**
Disparate Treatment (Age) and Hostile Work Environment

---

## I.    DESCRIPTION OF THE COMPLAINT

**Kind of Discrimination Complaint:**
Discrimination on the basis of age (Month/Year of Birth: April 1953) and Hostile Work Environment

**Nature of Action, Decision or Conditions Giving Rise to Complaint:**
Complainant alleges he was subjected to disparate treatment based on age and a hostile work environment when he was not assigned a project manager (PM) role, provided promotional opportunities, offered a rotational schedule, or selected for an Electrical Engineer position.

**Dates of Alleged Discrimination:**
September 2015 through May 22, 2020

## II.  **DESCRIPTION OF THE INVESTIGATION**

**Place of Investigation:**
DOI
BOR
TSC
Denver Federal Center
Building 67, 7th Floor
Denver, CO  80225

**Method of Investigation:**
Telephonic

**Dates of Investigation:**
March 31, 2020 – September 30, 2020

**Date ROI Submitted:**
October 13, 2020

## III.  **ISSUES IN THE COMPLAINT**

**A.**  **Claims accepted for investigation:**

1.  **Whether Daniel Hamann (Complainant) has been subjected to disparate treatment based on age (YOD:  1953) when on March 6, 2020, his supervisor did not assign him a project manager role;**

2.  **Whether Complainant has been subjected to a hostile work environment based on age (YOB:  1953) when, in addition to the foregoing *and following*, he alleges that:**

    a.  **Starting in September 2015, his supervisor has not given him rotation opportunities;**

    b.  **Starting in September 2015, his supervisor has given him less training opportunities than his coworkers;**

    c.  **Starting in September 2015, his supervisor has assigned him tasks below his skill level, held him to a higher standard than his coworkers and excluded him from recognition;**

    d.  **Starting in September 2015 and continuing through July 22, 2019, his supervisor has not given him project manager opportunities;**

  e. **In 2016, his supervisor did not provide him the opportunity to apply for a Supervisory Control and Data Acquisition Position;**

  f. **In 2016, his supervisor delayed his career-ladder promotion to a GS-9, which further delayed future career-ladder and competitive promotions;**

  g. **In or around April 2018, his supervisor did not provide him the opportunity to apply for a Supervisory Control and Data Acquisition position;**

  h. **On October 31, 2018, and in fiscal year 2018, fiscal year 2017, and fiscal year 2016, his supervisor put him on performance standards that did not comply with the Department of the Interior's policies;**

  i. **On February 21, 2019, his supervisor failed to address his concern regarding the difficulty of his project assignments;**

  j. **On March 3, 2020, February 21, 2019, October 4, 2018, and February 14, 2018, he was cut off from speaking during meetings;**

  k. *On an unspecified date, the Agency failed to allocate him enough budget to charge overtime;*

  l. *On unspecified dates, the Agency failed to assign him project manager authority on the LNFH Surface Intake and Fish Passage (F061A) project and the NIIP Pumping Plan G7.5LA HVAC Addition (UC684) project;*

3. *Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on unspecified dates between July 23, 2019 and May 22, 2020, the agency did not assign him project manager authority on the following projects:*

  a. *Cle Elum Gate Hoist Construction Support (CEGH1)*
  b. *Shasta Damn [sic] Crest Road Vehicle Barrier Construction Support (SDCRV)*

4. *Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on or about January 7, 2020, he was not selected for an Electrical Engineer position advertised under the following vacancy announcement numbers:*

  a. *BR-DO-2019-193 (DEU-BM)[1]*

---

[1] This announcement number should read: BR-DO-2019-193 (MPP-BM).

> **b. *BR-DO-2019-194 (DEU-BM)***
> **c. *BR-DO-2019-195 (MPP-BM)***
> **d. *BR-DO-2019-196 (DEU-BM)***

*"Please note, the project manager assignments for the Grand Valley Power Plant LOPP (FA224), Grand Valley LOPP Project Design Review (UC640), and Navajo Dam Valve & Gate Rehabilitation (UC553) mentioned in your May 22, 2020 amendment request fall under claim 2(d) based on the dates you provided.*

*Where a date was not provided for a project manager assignment in your May 22, 2020 amendment request, those events were included as part of your harassment claim under claim 2(l). If, during the course of the investigation, the evidence shows that the events in 2(l) occurred within the forty-five (45) day filing period discussed in 29 C.F.R. § 1614.105(a) or after you made initial contact with an EEO Counselor, they will be analyzed as acts of disparate treatment."*

"Please note, claims 2(e) through 2(h) will be investigated as part of your hostile work environment claim, rather than as discrete acts of disparate treatment, because they do not meet the forty-five (45) day filing timeframe set forth in 29 C.F.R. § 1614.105(a).

Some of the items in claim 2 may be considered discrete acts of disparate treatment if they occurred within the forty-five (45) day period discussed in 29 C.F.R. § 1614.105(a). If evidence shows that items in claim 2 took place within the forty-five (45) day period, those items will be considered as discrete acts of disparate treatment. If evidence shows that those items occurred outside the forty-five (45) day period, those items will only be considered as part of the hostile work environment claim and as background for the accepted claims."

### B. Applicable Legal Theory:

## Discrimination based on Age

*Prima Facie Case:*
1. Whether the Complainant is 40 years of age or older at the time in question.
2. Whether the Complainant was subjected to an adverse employment action;
3. Whether the Complainant was treated less favorably than other younger, similarly situated employees, i.e., was accorded treatment different from that given to persons who are significantly younger.

*Management's Response:*
Whether management provides a legitimate, non-discriminatory reason for taking the action in question.

*Pretext:*
Whether there is direct or circumstantial evidence that management's reason for its treatment of the Complainant is pretext for discrimination.

## Disparate Treatment/Non-Selection

Prima Facie Case:
1. Whether Complainant is a member of a protected group.
2. Whether there was a vacancy.
3. Whether Complainant applied.
4. Whether Complainant was qualified, but was rejected.
5. Whether the vacancy was filled with someone of a different protected group. And/Or
6. Whether there is evidence that shows discriminatory intent.

Management's Response:
Whether management provided a legitimate, non-discriminatory reason.

Pretext:
Whether there is direct or circumstantial evidence that the agency's reason for rejecting the Complainant is pretext for discrimination.

## Harassment/Hostile Work Environment (non-sexual – all bases)

*Prima Facie Case:*
1. Whether the Complainant is a member of a protected class.
2. He or she was subjected to unwelcome verbal or physical conduct or other adverse treatment;
3. The harassment complained of was based on membership in a protected class; and
4. The harassment had the purpose or effect of unreasonably interfering with his or her work performance and/or creating an intimidating, hostile or offensive work environment.

*Management's Response:*
1. The alleged conduct did not occur.
2. The conduct complained of was not unwelcome.
3. The employment action or decision was based on legitimate business considerations, and not on the complainant's membership in a protected class.

*Pretext:*
If management offers a legitimate, non-discriminatory reason for an employment action, the disparate treatment analysis kicks in and the Complainant must then show that management's reason is pretext and that the employment action was actually based on the Complainant's protected trait.

*Liability:*
1. Whether the alleged harasser was a supervisor or co-worker of the Complainant. If supervisor, whether a tangible employment action was taken. If yes, then automatic liability. If no, then…
2. Whether the employer knew or should have known of the conduct.

3. Whether management exercised reasonable care to prevent and correct promptly any harassing behavior.

4. Whether the Complainant unreasonably failed to take advantage of any preventive or corrective opportunities provided by management or failed to avoid harm otherwise.

### C. Resolution Desired by Complainant:

Complainant requests the following as resolution to settle his complaint:

1. Initial appointment to be corrected to the GS-13/1 level or
2. Monetary compensation in the amount of $427,544.[2]

## IV. INVESTIGATIVE SUMMARY:

### A. Nature of the claim:

**Daniel Walter Hamann,** hereinafter referred to as **"Complainant,"** alleges he was subjected to disparate treatment on the basis of age when his supervisor did not assign him a PM role on July 23, 2019, March 6, 2020, and May 22, 2020, and when he was notified on January 7, 2020, he was not selected for an Electrical Engineer position. He alleges he was subjected to a hostile work environment from September 2015 through March 3, 2020, based on age when his supervisor did not treat him the same as other similarly situated employees who were younger than him.

### B. Complainant:

**Complainant** (YOB: 1953), is an Electrical Engineer, GS-0850-11, DOI, BOR, TSC, located in Lakewood, CO. He has held the position since September 21, 2015, when he was hired with the Agency. Complainant explains his duties are to design electrical systems for BOR facilities.

Complainant states his first-level supervisor during these events was Jay Boggess. He states his second-level supervisor was William McStraw (retired). He names his entire chain of command, up to and including the Secretary of the Interior, as the involved management officials in his claim of discrimination and harassment.[3] (Exhibit F-1)

### C. Responding Management Officials

**Jay Slavens Boggess** (YOB: 1959), is the Supervisory Electrical Engineer, GS-0850-14, DOI, BOR, TSC, located in Lakewood, CO. He has held the position since July 2013, and has been employed with the Agency since June 2010. His duties include supervision of the Electrical Controls Group, which consists of approximately 13 Electrical Engineers.

---

[2] Desired resolution was changed from Complainant's original request to the above based on Exhibit F-1, supporting documentation, submitted to the investigator on August 2, 2020.

[3] Only his first- and second-level supervisors were interviewed for this investigation.

Mr. Boggess states his first-level supervisor from September 2015 through September 2017 was George Girgis. Mr. McStraw was his first-level supervisor from September 2017 until his (Mr. McStraw's) retirement in August 2020. His second-level supervisor during these events was Tom Luebke, TSC Director (retired).

Mr. Boggess is Complainant's first-level supervisor and he believes Complainant is 67 years old. (Exhibit F-2)

**William Dean McStraw** (YOB: 1960), was the Division Chief, Electrical Mechanical Engineering Division, GS-0801-15, Denver Federal Center, Denver, CO, from December 2017 until his retirement in August 2020. He started his employment with BOR in July 1979. His duties included leading a division of six groups with approximately 102 employees. He managed workloads in order to ensure the division was staffed appropriately. His first-level supervisor from September 2015 through September 2017 was Mr. Girgis; Mr. Luebke was his first-level supervisor from September 2017 until he retired in 2020 (exact date unknown). His second-level supervisor was Mr. Luebke from September 2015 through September 2017, at which point David Palumbo became his second-level supervisor through August 2020.

Mr. McStraw knows Complainant because he is an employee of the division. He did not have any interaction with him until he (Mr. McStraw) was assigned as Division Chief in December 2017, when he became Complainant's second-level supervisor. He believes Complainant is in his middle 60s. (Exhibit F-3)

**Nathan E. Myers** (YOB: 1979), is an Electrical Engineering Manager, GS-0850-14, Hydropower Diagnostics and Supervisory Control and Data Acquisition (SCADA) Group, DOI, BOR, Denver Federal Center, Lakewood, CO. He has been in this position since approximately May 2012 and employed with BOR since May 2002. He is responsible for managing a group of 15 Electrical Engineers, visiting power plants in order to perform testing and train employees, and conducting annual safety training for all employees within the division. His first-level supervisor has been Mr. McStraw since approximately the fall of 2016. He states Mr. Luebke was his second-level supervisor at the time of this case; he has since retired. He does not currently have a second-level supervisor and reports to Dr. David Rafe, Chief Engineer, TSC.

Mr. Myers first met Complainant during Complainant's initial interview when he was hired with BOR. He has also served in an acting capacity and was Complainant's supervisor for a period of time. He became aware of his age when he received information related to this case from the investigator. (Exhibit F-4)[4]

**Kyle William Clair** (YOB: 1983), is an Electrical Engineer, GS-0850-13, Power Systems Analysis and Controls Group, DOI, BOR, TSC, Denver Federal Center, Denver, CO. He has been in this position since approximately January 2006 when he was hired for BOR. His first-level supervisor has been Jill Holmes for approximately one year, and his second-level supervisor has been Mr. McStraw for approximately five years. His duties include the collection of data from various sites which is used to write technical reports. He is a team lead and trains

---

[4] Mr. Myers' affidavit is listed as "Supplemental Affidavit of Witness." This is a typo; he was not interviewed for the original complaint.

employees when needed. He also produces the annual team budgets and participates in interviews.

Mr. Clair first met Complainant during a panel interview for an Electrical Engineer position. He is not aware of his age. (Exhibit F-5)

**Ashley Hannigan** (YOB: 1987), is an Electrical Engineer, GS-0850-13, with the Power Systems Analysis and Controls Group, DOI, BOR, TSC, Denver, CO. She has been in her position since she was hired with DOI in May 2009. Her duties include reviewing power system equipment in power plants and conducting studies on installed equipment. Her first-level supervisor has been Ms. Holmes since July 2019; her second-level supervisor was Mr. McStraw from approximately 2017 through August 2020.

Ms. Hannigan met Complainant for the first time during a panel interview; she became aware of his year of birth when she received information related to his complaint from the investigator. (Exhibit F-6)

**Benjamin Albert Few** (YOB: 1978), is an Electrical Engineer, GS-0850-13, at DOI, BOR, TSC, Denver, CO. He has been in his position since May 2009, when he was hired with DOI. He is a team lead for the Diagnostic Group and performs field testing and diagnostics of equipment failures. His first-level supervisor has been Nathan Myers since approximately August 2015; his second-level supervisor has been Mr. McStraw since approximately September 2017.

Mr. Few states he met Complainant the first time during a panel interview for an Electrical Engineer position. Prior to receiving correspondence related to this interview, he did not know his age. (Exhibit F-7)

**Toby Steves** (YOB: 1979), is an Electrical Engineer, GS-0850-13, for the Hydropower Diagnostics and SCADA Center, DOI, BOR, Denver Federal Center. He has been in this position since May 2003, when he started as a contractor. He began civilian service with the DOI in approximately April or May 2004. He is a team leader for three employees and is responsible for workload and project management as it relates to designing, building, repairing, and installing control systems at power plants. His first-level supervisor has been Mr. Myers for "a few years" and his second-level supervisor was Mr. McStraw from approximately 2017 until Mr. McStraw's retirement.

Mr. Steves first met Complainant approximately two years ago, but he does not know him personally. He is not aware of Complainant's age. (Exhibit F-8)

### D. Witness:

**Benson Muthee** (YOB: 1988), is a Human Resources Specialist (HRS), GS-0201-11, with DOI, Human Resources Operation Office, located in Lakewood, CO. He works remotely from his home in Sacramento, CA. He has been in his position since October 2016, when he started his employment with DOI. He is responsible for posting jobs on USAJOBS, processing personnel actions, reviewing applications, extending offers of employment, and on-boarding new

employees. His first-level supervisor has been Kelli Adolf since 2018; his second-level supervisor has been Heidi Murphy since 2018. He does not know Complainant or his age. (Exhibit F-9)

*Investigator's Note: In an effort to organize the Report of Investigation (ROI), each of the persons interviewed was asked about the events which Complainant indicated they had knowledge of. Only witnesses who had relevant, firsthand information about a given incident will be mentioned. If a witness is not mentioned, they had nothing relevant to add regarding the subject event.*

### E. Issues:

**1. Whether Daniel Hamann (Complainant) has been subjected to disparate treatment based on age (YOD: 1953) when on March 6, 2020, his supervisor did not assign him a project manager role.**

**Complainant** explains the TSC establishes service agreements and first-level supervisors assign PMs to provide oversight of the project. He states he is the only Engineer in his group who has not been assigned as PM, whereas all the younger employees have served in the role. When he asked Mr. Boggess why he had not been a PM, he (Mr. Boggess) either ignored the question or told him he would consider his request. He states he reported he had not served as a PM, but did not receive a response.

Complainant believes DOI encourages and promotes favoritism towards younger employees, as he was treated less favorably than similarly situated staff who are younger than him. (Exhibit F-1)

**Mr. Boggess** states PMs act as the point of contact with clients and coordinate the various engineering technical fields on projects. He testifies Complainant was scheduled to begin a rotation in department 8450 SCADA Group in April 2020. He does not believe Complainant was discriminated against based on his age in this issue. (Exhibit F-2)

**Mr. McStraw** states PMs act as the lead for a team assigned to a job and ensure the project is completed on time and within budget. He does not have any knowledge of whether Mr. Boggess assigned Complainant as PM on March 6, 2020.[5] (Exhibit F-3)

**2. Whether Complainant has been subjected to a hostile work environment based on age (YOB: 1953) when, in addition to the foregoing *and following, he alleges that*:**

**a. Starting in September 2015, his supervisor has not given him rotation opportunities.**

---

[5] At the time of his interview, the Agency was in the process of implementing telework procedures due to COVID-19, which affected the rotation.

**Complainant** explains rotations are temporary assignments to different duty stations, which could last three to six months. He states when he applied for his current position, the vacancy announcement mentioned rotations as a requirement for accelerated career promotions. He continues the issue was mentioned during his interview and he chose to participate in the program.

Complainant states after approximately six months of employment, he contacted Human Resources (HR) and was provided guidance which brought to light the consequences of non-participation in rotations. He believes he should have been assigned a rotation within the first 30 days of employment but, to date, has not been offered any rotations; as a result, he did not receive his career promotion early (March 2016), which has affected all his subsequent promotions resulting in a loss of income. Complainant testifies he addressed this issue with Mr. Boggess during his first performance review; he admitted he should have arranged for a promotion and apologized for the error. Complainant believes this issue was disparate treatment based on his age, as younger employees were assigned rotations. (Exhibit F-1)

**Mr. Boggess** explains a rotation is a temporary assignment afforded to employees to assist with gaining experience with the Agency in order to prepare them for positions of greater responsibility. He recalls a discussion in March 2016 regarding assigning Complainant to a rotation for the Davis Parker Dam project. He testifies Complainant declined the rotation because he was in the process of moving. He continues in or around January 2020, Complainant was offered another rotation, which he requested be delayed until April 2020. The project was delayed in April 2020 again due to COVID-19.

Mr. Boggess states rotation opportunities have been provided to new employees who happen to be younger than Complainant. He does not recall Complainant addressing the issue of younger employees being assigned rotations. He believes Complainant spoke to Mr. McStraw at some point, which resulted in the offer of the April 2020 rotation. (Exhibit F-2)

**Mr. McStraw** became aware of this issue in the fall of 2017 when he was notified of a letter Complainant wrote to the Commissioner, who advised him to address the matter through his chain of command. He states at that point, Complainant began notifying him of his concerns. He believes there was an error in which Complainant was not assigned a rotation, but he was not excluded from a rotation due to his age. He explains he does not have any knowledge of the alleged events occurring prior to his arrival in December 2017. (Exhibit F-3)

    b. **Starting in September 2015, his supervisor has given him less training opportunities than his coworkers.**

**Complainant** states he became aware he was not receiving the same number of training opportunities when he noticed training bulletins on printers, out of office notifications for staff who were in training, and overheard others in passing conversation. He states he has the ability to request and/or enroll in training through DOI Talent, the Agency on-line training program. He believes other employees were offered training opportunities from Mr. Boggess because he has observed a pattern of younger employees, who are favored, receiving training to prepare them for

promotion. He explains when he addressed his concerns with Mr. Boggess, he did not receive a response. He does not recall speaking to any other management official regarding this event.

Complainant explains he does not know all of the trainings offered to his co-workers; therefore, he does not know which trainings he was not offered or how the lack of training affected his ability to perform the duties of his position. (Exhibit F-1)

**Mr. Boggess** states he has encouraged and approved appropriate training for all employees; it is the responsibility of the employee to research and request training. He explains Complainant requested training to visit a control system in January 2020, which he approved. (Exhibit F-2)

**Mr. McStraw** is not aware of Complainant receiving less training opportunities than his co-workers. He explains prior to COVID-19, he was offered a 90-day detail assignment in a different group, which had to be delayed due to the pandemic. (Exhibit F-3)

    **c. Starting in September 2015, his supervisor has assigned him tasks below his skill level, held him to a higher standard than his coworkers and excluded him from recognition.**

**Complainant** states he has been assigned challenging design tasks with strict budgets and had to train himself on the 3D modeling software, Revit. He states younger employees have been given liberal budgets and tasked with simply reviewing documents completed by other Engineers.

Complainant states Mr. Boggess recognized two younger employees for their "expertise" with Revit when he trained himself to use the software and was the second person in the group to complete a project using Revit. He considers himself to be fairly competent with the use of the software, a fact Mr. Boggess ignored. Complainant does not recall specific conversations with Mr. Boggess regarding younger employees receiving awards. (Exhibit F-1)

**Mr. Boggess** states when Complainant was hired as a GS-7, he was mentored on how to perform the duties of his position in an effort to prepare him for career-ladder promotions up to the GS-11 level. He explains work is evenly distributed amongst all of the Electrical Engineers in his group.

Mr. Boggess does not agree with Complainant's allegation of being excluded from recognition, as he has received group awards. He explains Complainant has not performed work that would warrant an individual award. He does not recall Complainant bringing his concerns regarding this issue to his attention. (Exhibit F-2)

    **d. Starting in September 2015 and continuing through July 22, 2019, his supervisor has not given him project manager opportunities.**

**Complainant** states he has never been assigned as a PM and this continues to be an issue. He recalls approaching Mr. Boggess approximately five times, most recently during his mid-year review, and asking him if there was any chance he could be assigned as a PM. He does not recall Mr. Boggess' response, but states he was "very dismissive." He brought the issue to the

attention of other management officials with no resolution. Complainant states he has suffered financially and psychologically by not being afforded the opportunity to "use his skills to the fullest"; he believes he is viewed as a sub-par employee. He states he has used this skillset in former positions and was successful. He believes he was discriminated against in this issue based on his age because younger employees were assigned PM roles. (Exhibit F-1)

**Mr. Boggess** states Complainant did not seek out to be assigned PM from September 2015 through July 22, 2019. He explains assignment as a PM is not an essential duty of the GS-5/7/9/11 Electrical Engineer. He continues employees who request to be assigned a PM are assigned to the role. He explains newer employees, who happen to be younger, requested to be assigned; whereas, Complainant did not make a request. He states Complainant did not address his concerns with him; he is not aware whether he addressed it with other members of management. (Exhibit F-2)

**Mr. McStraw** states Complainant is habitually late and over-budget on his assignments, which has resulted in a reluctance in assigning him as a PM due to the requirements of the position including meeting deadlines and schedules. He testifies he had a meeting with Complainant regarding the issue; during the meeting, Complainant told him he knows more about project management than most people. (Exhibit F-3)

> **e. In 2016, his supervisor did not provide him the opportunity to apply for a Supervisory Control and Data Acquisition Position.**

> **g. In or around April 2018, his supervisor did not provide him the opportunity to apply for a Supervisory Control and Data Acquisition position.**

**Complainant** states this was a collateral duty position in which the incumbent was responsible for the SCADA specialized engineering duties. He testifies his background in SCADA exceeds the other Engineers in his group. He does not believe Mr. Boggess announced the opportunity to any of the Engineers in the group and arbitrarily assigned the collateral duty to a younger co-worker.

Complainant states he spoke to Mr. Boggess about this event during a performance review and informed him of his previous work experience. He states Mr. Boggess was dismissive of his comments. (Exhibit F-1)[6]

**Mr. Boggess** states there was no position announced in which Complainant was eligible to apply. He testifies Complainant did not address this issue with him, and he does not know if he brought it to the attention of any other management officials. (Exhibit F-2)

**Mr. McStraw** explains Complainant believes he was not afforded the opportunity to be considered for this position because his supervisor did not give him a rotation or accelerated career promotion. He states Complainant did not address this issue with him. (Exhibit F-3)

---

[6] Complainant did not provide a sworn affidavit until August 29, 2020, over three months after Mr. Boggess' testimony, and after he filed an amendment to his complaint. Therefore, this issue was not readdressed with Mr. Boggess.

###### f. In 2016, his supervisor delayed his career-ladder promotion to a GS-9, which further delayed future career-ladder and competitive promotions.

**Complainant** states the failure on Mr. Boggess' part to assign him to a rotation delayed his career-ladder promotion. He explains the vacancy announcement he applied to indicated there would be the opportunity for an accelerated career-ladder promotion at six months versus the normal 12-month requirement. He states the failure to complete a rotation precluded him from receiving the career promotion early; when he addressed the matter with Mr. Boggess, he offered an apology, but did not offer a rotation. He did not speak to other management officials regarding this event. (Exhibit F-1)

**Mr. Boggess** states he did not delay Complainant's career promotion; he was promoted to the GS-9 level in September 2016, after one year of employment as required by policy.[7] He is not aware of Complainant speaking to other management officials regarding this issue. (Exhibit F-2)

###### h. On October 31, 2018, and in fiscal year 2018, fiscal year 2017, and fiscal year 2016, his supervisor put him on performance standards that did not comply with the Department of the Interior's policies.

**Complainant** believes the DOI Employee Performance Appraisal Program (EPAP) allows for supervisors to easily "fabricate" information entered into the system, which results in employees being rated based on favoritism and not how they perform the duties of their position. He explains the performance standards are "boiler plate" documents used for all the Engineers. He does not believe the standards issued to him were developed to measure performance because the requirements are so broad; he is not clear as to what his critical duties include. As a result, he was issued a rating at the level three and refused to sign his EPAP in 2019 due to inaccuracies in the document. He believes he would have received a higher rating if he was issued an individualized performance plan.

Complainant states he addressed his concerns with Mr. Boggess and informed him the EPAP was out of compliance. He testifies Mr. Boggess refused to discuss the issue with him. He does not recall speaking to any other member of management regarding this issue. He believes the performance system shows favoritism towards younger employees. (Exhibit F-1)

**Mr. Boggess** states Complainant was issued the same performance plan as all other Electrical Engineers in his group, which complied with DOI policy. He states Complainant did not address this issue with him, but he did send a letter to the Director of BOR. It is his understanding the performance standards he issued to Complainant were appropriate and no action was required on his part. He does not believe Complainant was subjected to harassment based on the performance plan issued to him. (Exhibit F-2)

---

[7] Complainant did not provide a sworn affidavit until August 29, 2020, over three months after Mr. Boggess' testimony, and after he filed an amendment to his complaint. Therefore, this issue was not readdressed with Mr. Boggess.

**Mr. McStraw** explains Complainant was issued the same performance standards as approximately 400 Engineers Agency wide. At one point, he met with Complainant to discuss his performance standards, and during the meeting, Complainant referred to issues with the performance evaluation system government wide. He asked him for suggestions on how to improve the standards as it related to his performance and afforded him the opportunity to provide input for his evaluations; Complainant's response was he did not believe it was his responsibility to provide feedback. He does not believe Complainant was harassed based on his age when he was issued the performance standards. (Exhibit F-3)

> **i. On February 21, 2019, his supervisor failed to address his concern regarding the difficulty of his project assignments.**

**Complainant** states he was working on a project utilizing the Revit 3D software. He continues he was the first person in the group to generate documents utilizing this software and trained himself on how to operate it. He states younger employees were not tasked with the same type of responsibilities. When he brought his concerns to Mr. Boggess' attention, they were not addressed. (Exhibit F-1)

**Mr. Boggess** states Complainant never addressed his concerns regarding the difficulty of assigned projects with him. He questions the issue because Complainant also alleges he was assigned work below his skill level. He explains the work is evenly distributed among the Electrical Engineers in his group. (Exhibit F-2)

**Mr. McStraw** does not believe Complainant was assigned projects outside of his position description. He states in February 2019, Complainant was working on two separate projects in which different supervisors had oversight, one being Mr. Boggess. When he realized he was going to miss deadlines, he reached out to both supervisors and did not receive a response from Mr. Boggess. He states Complainant brought the issue to his attention and he addressed it with Mr. Boggess reminding him to respond to emails. He explains he also asked Complainant if he followed up with Mr. Boggess by phone and discovered he had not. He advised him it would have been appropriate for him to follow up with Mr. Boggess with a phone call. (Exhibit F-3)

> **j. On March 3, 2020, February 21, 2019, October 4, 2018, and February 14, 2018, he was cut off from speaking during meetings.**

**Complainant** states he attended a meeting on February 14, 2018, in which he was attempting to explain an incident. He continues while he was speaking, Mr. Boggess "cut him off" to the point he told him to stop doing it and let him talk.

Complainant states he initiated a meeting on October 4, 2018, in which there was an expectation he would "run" the meeting. He explains he was cut off by another employee several times who also continued to "talk over" him.

Complainant states he attended a meeting on February 21, 2019, in which he was attempting to convey to the other individuals information regarding budgeting as it relates to projects. He

states Mr. Boggess did not want him to speak because he was presenting information that contradicted the estimated budget.

Complainant states he attended a meeting on March 3, 2020, in which a younger employee continued to interrupt him. He testifies at one point during the meeting, he "very forcibly told her it was important to use decorum and allow others to speak."

Complainant states he did not address these issues with Mr. Boggess; however, he did send Mr. McStraw an email and reported the pattern of rude behavior displayed by employees at the TSC. He states Mr. McStraw responded to his email, but he does not believe there was an internal investigation conducted related to his allegations. He did not report this event to any other management official. (Exhibit F-1)

**Mr. Boggess** states he was not present, nor does he have any knowledge of the meetings that occurred on February 13, 2018, or March 3, 2020; although he was present for the meetings on October 4, 2018, and February 21, 2019, he does not recall the events alleged by Complainant. He states Complainant sent him an email related to the March 3, 2020, meeting; he spoke to the other individuals who were present and was informed Complainant could not stay on topic and their intention was to try to keep him focused on the subject matter.

Mr. Boggess does not know if Complainant brought these issues to the attention of any other management officials. (Exhibit F-2)

**Mr. McStraw** states he was not present for the meetings, but Complainant did speak to him about the incidents. He states he spoke to Mr. Boggess and reiterated the importance of keeping a professional demeanor during meetings. (Exhibit F-3)

   k. **On an unspecified date, the Agency failed to allocate him enough budget to charge overtime.**

**Complainant** states he did not request overtime. This issue is related to his belief that Mr. Boggess continued to approve overtime for another employee who was the only one in the group permitted to charge overtime. He does not believe the Agency took action when he reported fraud related to the amount of overtime the employee was approved. He believes younger employees were granted liberal budgets and approved for overtime. (Exhibit F-1)

**Mr. Boggess** states BOR does not allocate an overtime budget for projects, as work is expected to be completed in the allotted time by the PM. He continues overtime is requested and approved on an as needed basis. He is not aware of Complainant submitting any requests for overtime since he started teleworking in March 2020. He recalls informing Complainant on June 29, 2020, he could work overtime on a project, but he declined the offer for personal reasons. He explains other Electrical Engineers have been approved overtime due to their projects and workload. He states Complainant never addressed his concerns regarding overtime with him or any other management official. (Exhibit F-2)

### l. On unspecified dates, the Agency failed to assign him project manager authority on the LNFH Surface Intake and Fish Passage (F061A) project and the NIIP Pumping Plan G7.5LA HVAC Addition (UC684) project.

**Complainant** states he did not request to be assigned PM to these projects because he does not believe his request would be approved. He states he was assigned as a Technical Approver (TA) on one of the projects, which entailed direct control of the project and responsibility for design. He states he was carrying out the duties of the Technical Representative (TR) when Mr. Boggess decided to take over control of the project, even though he is not a subject matter expert in the area.

Complainant does not believe these issues were harassment with the exception of issue 2c, in which he believes younger employees were favored and received individual awards, but he was not recognized. He believes these events were disparate treatment based on his age because younger employees were afforded more opportunities such as rotations, given PM roles, and provided more training. He explains the younger workers, some who have less seniority, were assigned PM duties despite being less experienced than him. He has witnessed a pattern of preferential treatment towards younger employees. He reiterates younger employees were assigned less difficult projects with very liberal budgets. (Exhibit F-1)

**Mr. Boggess** explains these projects were assigned to the Civil Structure and Mechanical Equipment Groups in TSC; therefore, he did not have the authority to assign PMs. He testifies Complainant did serve as a TA, which held the responsibility for all technical information of the project. He states the TA and team lead roles are not one in the same.

Mr. Boggess states Complainant did bring his concerns to his attention, but he does not recall whether it was verbally or in an email. He does not recall the specific details of the discussion, but did tell Complainant he was not assigned to the team lead role. He does not know whether Complainant addressed his concerns with any other management officials. He explains the Mechanical Equipment Group Manager, who had oversight of the Navajo Indian Irrigation Project (NIIP), filed a formal complaint against Complainant due to his conduct and performance; there is an ongoing internal investigation related to the events that transpired on the project.

Mr. Boggess does not believe Complainant was discriminated against or harassed based on his age. He explains employees were assigned rotations or PM roles upon making the request. Some of the employees were newly hired and happened to be younger than Complainant. He does not believe Complainant was treated less favorably than similarly situated employees. (Exhibit F-2)

**Mr. McStraw** states these projects were led by groups Complainant is not assigned to; staff from the appropriate group were assigned as PM. He explains he was assigned to serve as TR for the Leavenworth National Fish Hatchery (LNFH) project, but was removed from the duty because he did not meet deadlines, which affected the project completion dates. He was assigned to be the peer review for electrical design on the NIIP, but after a complaint was made regarding his

performance and conduct towards the PM, he was removed from this project as well. He testifies Complainant did not address the issues with him.

Mr. McStraw does not believe Complainant was discriminated against or harassed based on his age in any of the accepted issues. He explains there was an Agency error when he was not assigned a rotation soon after he was hired. (Exhibit F-3)

> **3. Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on unspecified dates between July 23, 2019 and May 22, 2020, the agency did not assign him project manager authority on the following projects:**
>
> **a. Cle Elum Gate Hoist Construction Support (CEGH1)**
> **b. Shasta Dam [sic] Crest Road Vehicle Barrier Construction Support (SDCRV)**

**Complainant** states he was not offered the opportunity to serve as PM on the CEGH1 project. However, he believes another supervisor recommended he be assigned to the SDCRV project, but Mr. Boggess assigned a younger, less experienced co-worker.

Complainant states he did not address this issue with his supervisor because he filed a whistleblower complaint with DOI Office of Inspector General (OIG) after he "discovered misconduct by several individuals on the project." He states he is filing a civil complaint against BOR regarding these events.

Complainant believes he was discriminated against in this event because younger employees who have less experience are assigned to PM roles. He states these employees are "more willing to do what their supervisors tell them to do regardless of law or regulation." (Exhibit F-1)

**Mr. Boggess** states he did not have oversight of the CEGH1 or SDCRV projects, as they are assigned to other groups, which is the reason Complainant was not considered for PM. He testifies he received an email from the manager of the CEGH1 project informing Complainant he was going to assign another individual to assist with the project, as he could no longer wait for him to submit his work.

Mr. Boggess explains another manager suggested someone from his group take over the role of PM for the SDCRV project, but he did not take it as a recommendation for Complainant to be assigned. He testifies he received complaints from the manager on the project related to contentious emails between Complainant and the client for the project. In his opinion, Complainant was not effectively communicating with the client. In order to reduce conflict, he assigned another employee as PM. Additionally, he states he did not consider Complainant for the project because he was scheduled to serve a rotation at the time.

Mr. Boggess states Complainant sent an email to him, Mr. McStraw, and one other individual to inform them of his intention to file a whistleblower complaint with OIG regarding the SDCRV project; he does not know if he followed through with the complaint. He disagrees with

Complainant's belief this event was discrimination based on his age, as he would never discriminate against anyone and only considers skills, ability, and workload when assigning projects. (Exhibit F-2)

**Mr. McStraw** does not have any knowledge of the events related to the CEGH1 project; however, the group manager for the SDCRV project reported issues to him after the fact. He explains Complainant accused BOR staff of incompetence and the contractor of misrepresentation and deceptive practices; he also filed a complaint with OIG regarding the allegations against his co-workers and the contractor. He states Complainant was scheduled to be assigned to a 90-day rotation with another group, which was delayed due to COVID-19.

Mr. McStraw testifies Complainant was removed from these projects based on misconduct and performance issues; it was not because of his age. (Exhibit F-3)

4. **Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on or about January 7, 2020, he was not selected for an Electrical Engineer position advertised under the following vacancy announcement numbers:**

   a. **BR-DO-2019-193 (MPP-BM)**
   b. **BR-DO-2019-194 (DEU-BM)**
   c. **BR-DO-2019-195 (MPP-BM)**
   d. **BR-DO-2019-196 (DEU-BM)**

**Complainant** testifies he applied and was found qualified for all the vacancy announcements. He states management was originally going to fill four positions and there was an announcement for each position; however, Mr. Boggess decided to fill only two positions.

Complainant states he applied under both merit promotion and delegated examining procedures, but does not recall the date he submitted his application. He states he was not among the best qualified applicants. He makes no mention about being interviewed for the position.

Complainant testifies the two individuals selected for the positions appear to be in their early 30s. He explains prior to these announcements, it was required that applicants be Public Engineer (PE) certified. This requirement was removed when the vacancy announcements were posted. He states he addressed his concern with Mr. McStraw who responded by sending out a blanket email explaining the requirement was removed because the positions were determined to be hard to fill.

Complainant believes he was the most qualified applicant; therefore, the Agency discriminated against him when younger individuals were selected for the positions. (Exhibit F-1)

**Mr. Boggess** testifies there were four announcements to fill two positions which were posted internally and to the public. He states since he has been employed with BOR, a PE certification has not been a requirement for this position. He continues applications were reviewed by HR and scored based on the information applicants provided. Those who scored 90% or higher

would normally be referred for interviews, but on December 4, 2019, he contacted HR and instructed them to include applicants who scored in the 80th percentile, which is when Complainant became eligible to be interviewed. He states he and one other manager were the selecting officials.

Mr. Boggess states he did not participate in the panel interviews in order to ensure an unbiased process consisting of individuals who did not work directly in the Electrical Design Group. The panel interviews were led by Mr. Myers, Manager of the Hydropower and Diagnostic and SCADA Group. He recalls there were six applicants interviewed by the panel; he does not know where or when the interviews were conducted. He states all applicants were asked the same questions, which were used in previous interview panels. He continues the interview panel made selection recommendations, which he and another manager concurred with, resulting in one internal and one external selection. He states the information provided to him, which included comments from the interview panel, did not deem Complainant as more qualified for the position based on his responses to questions asked during the interview. He states references were checked on the external selectee. To the best of his knowledge, the selections were made in accordance with BOR policy and procedures. He believes Complainant was notified of his non-selection, but does not know when the notification was sent.

Mr. Boggess testifies over the past year, he has received numerous complaints from PMs and team members regarding Complainant's conduct, communication, and cooperation on projects. He states Complainant continues to allege his progress with the Agency has been hindered due to his age, but he does not believe Complainant was discriminated against based on his age. He states in this issue, the two applicants who displayed the most qualifications during the panel interview were selected, and the selections were not motivated by age versus qualifications. He confirms age is not part of the application process and the panel did not have information related to how old the applicants were during the interview process. (Exhibit F-2)

**Mr. McStraw** states he recommended the interview panel consist of individuals outside of the Electrical Design Group in an effort to keep the process fair and equitable. He confirms previous testimony regarding the process for announcing the positions, determining qualifications, conducting the interviews, and making the selections.

Mr. McStraw states Complainant sent him an email alleging the interview process was biased. He responded to his concerns by explaining the process was impartial. He does not agree with Complainant's belief the Agency showed favoritism towards younger applicants when making selections. He states the selections were based on the technical expertise listed in the applications and displayed during the interview process.

Mr. McStraw testifies he did all he could to help Complainant promote to the GS-12 level; he approved him for more telework days when he was having some personal issues and, at one time, made an offer for him to work for a different first-level supervisor after his relationship with Mr. Boggess deteriorated, but he declined the offer. (Exhibit F-3)

**Mr. Myers** states he was not involved with the announcement of the positions; he served as the chairman for the panel interviews. He explains there were two interview panels: one for the non-

SCADA position and one for the SCADA position. He received the names of applicants to interview from Mr. Boggess, who also provided him with the list of questions to ask during the interviews. He continues all applicants were asked the same questions during the panel interviews. He explains Complainant did not display to be the superior candidate during his panel interview.

Mr. Myers does not believe Complainant was discriminated against based on his age. He states the interviews were conducted in a "firm, fair, and impartial" manner; applicants ages were not considered when the panel met to discuss selection recommendations. He testifies the individuals selected were the applicants recommended by the panel. (Exhibit F-4)

**Mr. Clair** states he was only involved in the panel interview for the SCADA position. He confirms previous testimony related to the process used during the panel interview. He believes Complainant was "off track" when he responded to questions asked during the panel interview. He states Complainant spoke negatively about the Agency, which wasted valuable time. He explains the information he provided when responding to questions was not relevant to the subject matter, and several times he had to be redirected to responding to the questions. He testifies Complainant had more years of experience, but he did not respond in a manner that indicated he had relevant experience.

Mr. Clair states the panel made selection recommendations based on who were the most qualified applicants. He disagrees with Complainant's allegation of discrimination based on his age. (Exhibit F-5)

**Ms. Hannigan** states her involvement in this issue was to serve on the interview panel. She confirms previous testimony related to the process used to conduct the interviews. She believes Complainant was able to provide answers to the questions asked during the panel interview, but the content of his responses did not meet the panel's expectations. She explains there was no justification for the panel to recommend him for selection, as he did not display the knowledge and skills required for the position. She does not believe Complainant was more qualified than the individuals selected.

Ms. Hannigan states the panel consisted of individuals from different ages and backgrounds. She explains age was not a consideration in the selection recommendation. (Exhibit F-6)

**Mr. Few** states he was only involved in the interview process for this issue. He confirms previous testimony related to the process of conducting the interviews. He states he was frustrated during the interview because the information Complainant provided in his resume indicated he was very qualified, but he was not able to answer the questions asked during the panel interview, which resulted in him scoring the lowest of all the applicants. He explains he tried to redirect Complainant by asking follow-up questions, but was unsuccessful.

Mr. Few states he has respect for individuals with experience and knowledge; he would not have ruled Complainant out as a selection recommendation based on his age. He explains if the responses he provided during the panel interview reflected the information provided on his resume, he would have been his top recommendation for selection. (Exhibit F-7)

**Mr. Steves** states he served on the SCADA interview panel and provided a selection recommendation to the selecting official. He explains Complainant did not interview as well as the other applicants and did not seem to be well versed in the subject matter. He continues Complainant did not display he was more qualified for the position during the panel interview and scored the lowest of all applicants in two areas.

Mr. Steves believes Complainant's non-selection was based on a more qualified applicant being selected. He does not believe his age was a factor in the selection process. (Exhibit F-8)

**Mr. Muthee** states he was the HRS assigned to process this vacancy announcement. He explains after Mr. Boggess requested to fill the position, they met (along with a representative from the Civil Rights office) to brainstorm ways to diversify the workforce through the announcement, which included ideas on how to increase the applicant pool. He testifies the position was announced both internally and externally; it was open from October 15, 2019, through November 2, 2019. He explains the announcement yielded ten applicants who were issued a computer generated score based on the responses they provided in the application process. He states Complainant was listed on one of the external certificates, which also contained preference eligible veterans; Complainant is not a veteran.[8]

Mr. Muthee states he cannot respond to Complainant's belief that he was more qualified than the individuals selected because he only determines whether an applicant is qualified, and if so, whether they are among the best qualified applicants. He does not make determinations as to whether one applicant is more qualified than another.

Mr. Muthee testifies he was not involved in the interview, reference check, and selection processes. He explains Mr. Boggess sent him an email on January 8, 2020, stating two selections were made according to the Agency's policies and procedures.

Mr. Muthee states he does not have a response to Complainant's belief of being discriminated against based on his age. (Exhibit F-9)

**General Harassment Discussion**

**Complainant** recalls receiving training related to anti-harassment/hostile work environment from HR, but it is not reflected on his training record. He believes this training is mandatory for all employees, but does not know how often it is required. He states employees who believe they have been harassed should report it to their supervisor. He did speak to Mr. McStraw regarding the issue of being cut off at meetings, but does not recall his response. He believes he followed appropriate Agency procedures regarding the alleged harassment and notes the Agency did not provide any type of preventative or corrective measures.

Complainant states the alleged harassment has made him feel demoralized and resulted in his non-participation in meetings for fear of being cut off. He has also suffered physically and has

---

[8] It should be noted Mr. Muthee's testimony is based on his best recollection and emails between him and Mr. Boggess. The Agency recently changed computer systems and he does not have access to the documents in the files.

been treated for medical and psychological conditions for the past few years. He explains he is currently working a job modification with a reduced workload as a result of a Family and Medical Leave Act (FMLA) request, which was approved on March 25, 2020.

Complainant testifies although he believes the disparate treatment and harassment has been on-going for over four years, he did not contact the EEO office until September 2019 because he was not aware of the requirements set forth through the EEOC and merit systems principles.

Complainant is seeking for his initial appointment to be changed from the GS-7/1 to GS-13/1 level *or* liquidated in the amount of $427,544, which includes back pay and front pay from 2015 through 2025, and equitable treatment. He believes the Agency has misinterpreted 29 CFR §1614.105, as it relates to the 45-day timeframe to file a complaint of discrimination. He explains he was not aware of the discriminatory behavior until after he conducted research of the subject matter. Therefore, he believes he should be permitted to include the incidents listed in his complaint occurring prior to the 45-day timeframe. (Exhibit F-1)

**Mr. Boggess** states he last completed anti-harassment/hostile work environment training in December 2019, which is mandatory for all employees annually. He states employees who believe they have been harassed can report it to HR, a supervisor, or file a complaint. He does not know if Complainant told anyone he felt he was being harassed due to his age or if he followed Agency procedures regarding the alleged harassment. He is not aware of an internal agency investigation related to Complainant's allegation of harassment. (Exhibit F-2)

**Mr. McStraw** states he last completed anti-harassment training on May 27, 2019, which is mandatory for all managers annually. He states employees who feel harassed should report it to their first-level supervisor; if they are uncomfortable speaking to their first-level supervisor, they can also report it to their second-level supervisor, HR, or EEO. He does not believe Complainant followed Agency procedures when reporting the alleged harassment. He does not believe Complainant was pro-active in trying to resolve the issues with Mr. Boggess. He states there was no internal investigation related to Complainant's allegation of harassment. (Exhibit F-3)

### F. Complainant Rebuttal

**Complainant** makes the following points in his rebuttals dated September 8 and 15, 2020, to Mr. Boggess' testimony:

- He denies declining a rotation on the Parker Dam project
- Disputes he was provided the opportunity for a rotation
- Asserts he addressed the issue of not being assigned a rotation with Mr. Boggess during a performance review meeting
- Disputes being offered a rotation in April 2020; he asserts this was a 90-day detail
- Asserts he was not offered training in the Revit software; he was required to train himself on his own time
- Attests it is not his responsibility to research and request training
- Asserts supervisors arranged training for favored employees

- Asserts less experienced Engineers were assigned "technician" duties
- Asserts work is not evenly distributed
- Asserts the performance system is not measured by any bona fide metrics
- Asserts younger employees were assigned as PMs
- Asserts Mr. Boggess assigned a younger Engineer to a SCADA position
- Asserts he would have been eligible for an accelerated career promotion if he was assigned a rotation, and he addressed the issue with Mr. Boggess during a performance review meeting
- Denies alleging Mr. Boggess assigned work to him that was above his skill level
- Asserts he deliberately set him up for failure
- Asserts he cut him off during meetings, which he reported to Mr. McStraw
- Disputes he was off topic at meetings which resulted in other staff cutting him off
- Attests the Agency engaged in defamation against him
- Asserts another supervisor spoke to him directly about recommending him to Mr. Boggess for assignment to a project
- Attests allegations about him are a mischaracterization and have no basis
- Attests he has filed a whistleblower complaint in which he named the Agency and OIG for misconduct
- Attests he has filed a civil lawsuit against the Agency

**Complainant** makes the following points in his rebuttals dated September 1 and 15, 2020, to Mr. McStraw's testimony:

- He disputes Mr. McStraw manages workloads
- Attests his letter to the Commissioner was to "expose a fraudulent" performance system
- Attest he has no knowledge of his interaction with Mr. Boggess
- Asserts he was not involved in managing his workload and does not have any knowledge of tasks assigned to him
- Asserts he has no knowledge of being late and over budget on work
- Asserts not being assigned a rotation was bias towards him by way of negligence
- Asserts management assigned less difficult workloads, with much larger budgets, to younger, favored employees
- Disputes project management as being a critical element of his performance review
- Asserts he had no knowledge of him being held to a higher standard
- Disputes telling him he had no responsibility to provide feedback on his performance review
- Asserts he is held to a high standard
- Asserts Mr. McStraw was not pro-active in resolving the issue of him being cut off at meetings
- Attests the process for conducting interviews for the GS-12 Engineering position was conducted in a manner to show favor to younger employees
- Disputes Mr. McStraw tried to assist him with promotion

**Complainant** makes the following points in his rebuttal dated September 1, 2020, to Mr. Myers' testimony:

- He attests the questions used in the panel interview were designed to select younger, favored employees
- Disputes he did not answer questions during the interview, but he only pointed out the questions were related to skills the group does not utilize
- Does not believe the selections were made within the Agency's Merit Promotion procedures
- Disputes the interviews were conducted in a fair, impartial matter
- Asserts the interviews violated the Prohibited Personnel Practices
- Asserts his experience far exceeds the individuals selected

**Complainant** makes the following points in his rebuttal dated September 29, 2020, to Mr. Clair's testimony:

- He asserts the interview questions were developed in a manner to show preferential treatment to a preselected candidate and the process was "slated in favor of a single, younger individual"
- Disputes going off topic during the interview
- Disputes speaking of the Agency in a negative light
- Asserts he is more experienced than the selectee
- Disputes the Agency educates employees on a proper selection process

**Complainant** makes the following points in his rebuttal dated September 14, 2020, to Ms. Hannigan's testimony:

- He disputes he was unwilling to volunteer for larger projects
- Asserts the discrimination towards him fed into the interview process

**Complainant** makes the following points in his rebuttal dated September 9, 2020, to Mr. Few's testimony:

- He justifies the answers he provided during the interview
- Asserts the interview panel asked questions which were not related to the position
- Attests the questions were biased towards younger employees
- Attests he did not interview well because he "exposed corruption" within the Agency

**Complainant** makes the following points in his rebuttal dated September 9, 2020, Mr. Steves' testimony:

- He attests cybersecurity was not a listed requirement in the vacancy announcement
- Disputes he did not display the ability to work around dangerous equipment during the interview

**Complainant** makes the following points in his rebuttal dated September 3, 2020, to Mr. Muthee's testimony:

- He disputes one of the selectees met the basic requirements listed in the vacancy announcement
- Asserts the Agency has no oversight of the process in announcing positions

## V.    SURVEY OF GENERAL ENVIRONMENT

The organizational chart indicates the TSC, BOR, DOI, is comprised of approximately 560 employees, including Complainant and his first- and second-line supervisors, during this event. Four of the other employees had the same title, series, and grade as Complainant during this event. According to comparator data pertaining to age provided by the Agency, Complainant was born in 1953 while the comparators were born in 1979, 1981, 1984, and 1985. (Exhibits G-1 and G-2)


*Shirley Cain*                                    October 13, 2020
EEO Investigator                              Date

Daniel Hamann
Case No. DOI-BOR-19-0764

## **INDEX**

Exhibit A:  <u>Formal Complaint Documents</u>

Exhibit B:  <u>EEO Counseling Documents</u> (including Notice of Final Interview and Notice of Right to File)

Exhibit C:  <u>Complainant's Amended Acceptance, Acceptance, Notice of Proposed Dismissal, and Acknowledgement Letters, with supporting documentation</u>

Exhibit D:  <u>Attempts at Informal Resolution</u> – N/A

Exhibit E:  <u>Appellate Activity</u> – N/A

Exhibit F:  <u>Evidence</u>

    F-1:  AFFIDAVIT – Daniel Walter Hamann, Electrical Engineer, GS-0850-11, DOI, BOR, TSC, Denver, CO (Complainant) with supporting documentation
        A. Release of Medical Information Statement
        B. Agreement to Extend EEO Investigation Period, dated May 21, 2020
        C. Complainant Rebuttals: Jay Boggess dated September 10 and 15, 2020; William McStraw dated September 3 and 15, 2020, with attachments; Nathan Myers dated September 3, 2020; Kyle Clair dated September 29, 2020; Ashley Hannigan dated September 14, 2020; Benjamin Few dated September 9, 2020; Toby Steves dated September 9, 2020; and Benson Muthee dated September 3, 2020, with attachment

    F-2:  AFFIDAVIT and SUPPLEMENTAL AFFIDAVIT – Jay Slavens Boggess, Supervisory Electrical Engineer, GS-0850-14, DOI, BOR, TSC, Lakewood, CO (Management Official), with supporting documentation

    F-3:  AFFIDAVIT and SUPPLEMENTAL AFFIDAVIT – William Dean McStraw, Division Chief, Electrical Mechanical Engineering Division, GS-0801-15, DOI, BOR, Denver Federal Center, Denver, CO (Management Official), with supporting documentation

    F-4:  AFFIDAVIT – Nathan E. Myers, Electrical Engineering Manager, GS-0850-14, Hydropower Diagnostic and SCADA Group, DOI, BOR, Denver Federal Center, Denver, CO (Management Official)

    F-5:  AFFIDAVIT – Kyle William Clair, Electrical Engineer, GS-0850-13, Power Systems Analysis and Controls Group, DOI, BOR, Denver Federal Center, Denver, CO (Management Official)

F-6: AFFIDAVIT – Ashley Hannigan, Electrical Engineer, GS-0850-13, Power Systems Analysis and Controls Group, DOI, BOR, TSC, Denver Federal Center, Denver, CO (Management Official)

F-7: AFFIDAVIT – Benjamin Albert Few, Electrical Engineer, GS-0850-13, DOI, BOR, TSC, Denver Federal Center, Denver, CO (Management Official)

F-8: AFFIDAVIT – Toby Steves, Electrical Engineer, GS-0850-13, Hydro-Power Diagnostics and SCADA, DOI, BOR, Denver Federal Center, Denver, CO (Management Official)

F-9: AFFIDAVIT – Benson Muthee, HRS, GS-0201-11, DOI, BOR, Human Resources Operations Office, Lakewood, CO (Witness)

F-10: DOCUMENT – Request for Documents and Agency's Responses (Source: EEO Counselor Christopher Romero, DOI, BOR, Denver, CO)

F-11: DOCUMENT – Complainant's Position Description, Electrical Engineer, GS-0850-11 (Source: Christopher Romero)

F-12: DOCUMENT – Complainant's performance appraisals, with standards for rating years 2016, 2017, 2018, and 2019 (Source: Christopher Romero)

F-13: DOCUMENT – Email regarding Complainant's September 2016 Career Promotion (Source: Christopher Romero)

F-14: DOCUMENT – Electronic Service Agreement Module regarding LNFH, NIIP, and Cle Elum Projects (Source: Christopher Romero)

F-15: DOCUMENT – Complainant's Time and Attendance records from December 13, 2015, through May 23, 2020 (Source: Christopher Romero)

F-16: DOCUMENT – Copy of the merit promotion packet for the Electrical Engineer position under vacancy announcement numbers BR-DO-2019-193 (MPP-BM); BR-DO-2019-194 (DEU-BM); BR-DO-2019-195 (MPP-BM); and BR-DO-2019-196 (DEU-BM) (Source: Christopher Romero)[9]
   A. Vacancy Announcements[10]
   B. Position Descriptions for the above listed Electrical Engineer position
   C. Referral certificates for the position in question
   D. Complainant's Application
   E. Selectees' Applications

---

[9] As testified by Mr. Muthee, there were two positions to be filled, one SCADA and one non-SCADA, from the vacancy announcements; each position was announced internally and externally for a total of four announcements.
[10] Due to a computer operating conversion and the witness working from home due to COVID-19, the Personnel Action, SF-52, requesting recruitment, was not available.

   F. Rating sheets documenting eligibility
   G. Documentation regarding the recommending panel, including notes and scoresheet
   H. Letters of Selection addressed to Luke Buchholz and Chris Purdy[11]
   I. Miscellaneous documentation regarding announcement
   J. Information regarding all selections made by the selecting official going back two years from the date of the action in question

F-17: DOCUMENT – Copy of training records for Complainant, Jay Boggess, and William McStraw showing completion of Anti-Discrimination and Harassment training (Source: Christopher Romero)

F-18: HRM 04-08, Reclamation Manual, Directives and Standards, dated September 27, 2013, and Bureau of Reclamation Merit Promotion Desk Guide, dated September 2013 (Source: Christopher Romero)

F-19: DOCUMENT – DOI Departmental Manual, Technical Service Center Rotation Program Guide, dated June 2010 (Source: Christopher Romero)

F-20: DOCUMENT – BOR Policy, Prevention and Elimination of Harassing Conduct, dated April 30, 2018 (Source: Christopher Romero)

F-21: DOCUMENT – Memorandum, Anti-Discrimination Policy Statement, dated October 10, 2018 (Source: Christopher Romero)

F-22: DOCUMENT – Memorandum, Harassment Policy Statement, dated April 12, 2017 (Source: Christopher Romero)

F-23: DOCUMENT – Personnel Bulletin No: 18-01, Prevention and Elimination of Harassing Conduct, dated March 23, 2018 (Source: Christopher Romero)

**Exhibit G:** <u>Statistical and Miscellaneous</u>

G-1: DOCUMENT – Organizational Chart, DOI, BOR, TSC, Denver, CO, (Source: Christopher Romero)

G-2: DOCUMENT – Workforce Profile for Complainant's Work Unit (Source: Christopher Romero)[12]

G-3: DOCUMENT – Letter of Authority to Investigate to Resolution Services, LLC (Source: Sherilyn Rogers, Complaints Manager, DOI, BOR, Denver, CO)

---

[11] The agency did not provide SF-50s.
[12] Best copies available.

| Form DI-1892<br>REV. 3/16/09 | U. S. Department of the Interior<br>Complaint of Discrimination |
|---|---|

Complainant's Name: __Daniel W Hamann__

Employer: __Reclamation__

Location: __Denver__

Street Address: __10799 W Alameda Ave Unit 150032__

City, State, Zip Code: __Lakewood CO 80215-7402__

Home Telephone: __210-401-3583__

Cellular Telephone: __720-428-9543__

Street Address: __Denver Federal Center Building 67  7th Floor 86-68430 Denver, Colorado 80225__

City, State, Zip Code: ____

Work Telephone: __303-445-2819__

FAX: ____

**2. DOI Office which you believe discriminated against you.**

Bureau: __Reclamation__

Address: __Denver Federal Center Building 67  7th Floor 86-6843__

City/State, Zip Code: __Denver, Colorado 80225__

Work Phone: __303-445-2819__ FAX: ____

Division/Office: __Technical Service Center__

Region: __DO__

Involved Official(s): __Jay Boggess, William McStraw  Thomas Luebke__

**3. Basis(es) for believing you were discriminated against. (Check one or more, and provide the specific information).**

☐Race: ____

☐Color: ____

☐Religion: ____

☐Sex: ____

☐National Origin: ____

☒Age (Date of Birth): __4  53__

☐Physical Disability: ____

☐Mental Disability: ____

☒Reprisal: ____   ☒Other: ____

(Date(s) of previous EEO activity): ____

**4. Allegation(s) of discrimination: (For each allegation, state the date and the specific incident causing you to believe you have been discriminated against. FOR EXAMPLE: I was discriminated against on March 1, 2007, when I was not selected for the position of Analyst). Use additional pages as necessary.**

Please see attached

**5. Have you discussed your complaint with an EEO Counselor?** ☒Yes ____ ☐No ____ (If yes, name of Counselor):

__Alberto Vasquez__ Date you first contacted the EEO Counselor: __9/3/19__

**6. Are you agreeable to using the Alternative Dispute Resolution (ADR) process?** ☒Yes ____ ☐No ____ (date) ____

**7. Have you presented these allegations to any other forum? If so, please indicate:**

☐Negotiated Grievance Procedure ____ ☐Merit Systems Protection Board ____ ☐Court (Civil Action) if yes date ____

**8. List the remedies which you believe will resolve your complaint: (Use additional pages, as necessary.)**
Please see attached.

**9. Complainant's Signature:** _Daniel W Hamann_ Date: __12-21-19__

**10. For Agency Use:**
Agency Complaint Number: ____ Date Received: ____ Date Postmarked: ____

**READ CAREFULLY!**
You may use this form to file a complaint. This form should be used if you, as an applicant for U.S. Department of the Interior (USDOI) employment or as a DOI employee, believe you have been discriminated against because of race, color, religion, sex, national origin, age, disability, reprisal or sexual orientation by the USDOI. When filing a complaint, you should provide a statement of what occurred, when the incident(s) occurred, and why you believe you were treated in a discriminatory manner. Your complaint must bear an original signature.

# Age Discrimination Narrative

**Dan Hamann**
**Thursday, September 19, 2019**

The following issues and events establish a prima facie case for age discrimination by disparate treatment. Much of what has been discovered thus far has been by coincidence, offhand comments, etc.

## 1. Rotations given to younger coworkers

I was hired as a rotation engineer in the fall of 2015. I was never given a rotation. Over the course of the last four years, I have observed younger rotation engineers be given rotations. The rotation program provides a means for accelerated promotion.

## 2. New SCADA position given to younger coworker with less experience

Although I have experience in control systems going back nearly 30 years, I was not offered an opportunity to apply for a new controls position in our group. Specifically, this position was for Supervisory Control and Data Acquisition (SCADA). I'm not exactly sure when this occurred because I have not been able to find any notice. I found out about it over time and saw no evidence that the person who was given that position had any experience in control systems.

## 3. Assigned tasks below my skill level while more advanced tasks were given to younger coworkers

Since I started, and particularly earlier, I was often given technician tasks such as doing CAD work. Although I am quite capable of doing that kind of work, my skill level, knowledge and experience far exceeds that type of tasks. I have observed younger coworkers be given more responsibility and not be required to do technician work.

## 4. Project Management opportunities given to younger coworkers

Although I have background in project management that goes back decades, I have never been offered the opportunity to be a project manager. I have seen younger engineers with far less experience than myself given that opportunity. This has become apparent to me over the time that I have been at TSC.

## 5. Promotions of younger coworkers

I am aware of younger engineers without professional registration and far less experience be promoted whereas I have not been compensated or promoted at rate that is commensurate with my experience. The only verify this is through discovery.

## 6. More opportunities and training given to younger coworkers

Younger engineers have been given more opportunities in terms of training and positions than has been offered to me, even though my experience is greater.

More training has been provided to younger coworkers. For example, recently, I became of aware of electrical training, specific to our group, that was being given to younger co-workers in my group, at least one at my grade level, but was not offered to me. I became aware of this training by a printout I

notice (by chance) in our print room. I also noticed messages coworkers put on their whiteboards indicating they were in training. I put these two incidents together – the printout and the whiteboard messages - and realized that the younger coworkers were being offered electrical training, that had not been offered to me.

## 7. Recognition given to younger coworkers

When promulgating information about the skills of younger coworkers, my supervisor has explicitly excluded me, whereas younger employees have been given recognition.

## 8. Held to a higher standard than younger coworkers

Nearly all projects that I work on have very high demands and tight budgets, which require a very disciplined approach. Yet I observe younger engineers seemingly having more free time on their hands for casual conversation, laughing, giggling, et al.

## 9. Given more difficult assignments than younger coworkers

I have had difficult projects to work on that required a great deal of expertise, in terms of technical understanding, budget management, project management, et al. I don't see younger coworkers being held to this standard.

## 10. Shown a general disrespect not shown towards younger employees

There have been instances where I have been cut off when speaking, often during meetings, when basic decorum is ignored. If I mentioned an issue, that might be controversial, my supervisor would cut me off. It is my opinion that younger engineers would witness this, and feel entitled to do the same thing, perhaps to curry favor.

When I would point out errors and omissions in design work I was ignored, yet younger engineers who didn't even understand the concept were given more acknowledgement.

## 11. Statement on performance

To address the issue that my lack of recognition and commensurate pay might be related to performance, I offer the following. I have not had any negative information reported in any of my reviews. Rather, all my review ratings have been at 3 for all critical elements.

However, it is my opinion that TSC performance reviews are not based on measurable performance. In fact, upon close examination, it becomes apparent that the performance appraisals are bogus. Thus, it is my opinion that the TSC appraisal system is out of compliance, and hence, unreliable. More evidence can be provided on this.

## 12. Mentoring to younger coworkers at same grade level

Although this is not a matter of discrimination, I mention it here to show that my skills were in excess of younger coworkers, who are at the same grade level. Thus, it cannot be stated that my lack skills are contributing to my lack of compensation and recognition as compared to younger coworkers.

Since I started working at TSC, I have mentored younger engineers on many different aspects. They were promoted at the same rate I was. Thus, I was not given promotions even though my experience far exceeds theirs. In addition, I have had my professional registration for 22 years. Yet the engineers I have mentored are not registered.

I have mentored younger engineers, not only engineering and project management, but also in the use of software. This is mentioned here to verify that my lack of my promotion was not based on a lack of skills, that are sometimes correlated with older engineers. I am one of the most software-fluent members of my group.

## 13. General Statement on timeliness of reporting

Rather than a specific date of an incident I have observed a pattern of discrimination. As per this excerpt from 29 CFR § 1614.105 (b):

> The agency or the Commission shall extend the 45-day time limit ... when ... he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred ...

This exception applies to my circumstances. I was not aware of discriminatory incidents occurring until I begin to hear of them randomly, by coincidence, and in a cumulative manner. Thus, these incidents establish a pattern that has become apparent over an extended time.

I derived the following remedies by researching policy and law.

It easily demonstrated that younger employees were give far more opportunity, and promotions, and did not have near the experience, skills, knowledge and ability as myself. For example, it is my understanding that one coworker, who is close to half my age was promoted to the same level as myself, even though that individual does not have an electrical engineering degree or professional registration, and has far last experience than myself.

My total direct experience is over twenty years, with considerably more indirect experience. No one in my group has that level of experience. I readily have the skills equivalent to the individuals working at a GS-13 level in my group. I had those skills the day I started. I was under the impression that there were certain skills needed in government but such is not the case. Most of the knowledge I have now was acquired before I started at the TSC. For the work that we are tasked with, I have far more experience and skills than my supervisor, who is a GS-14 .

Thus, in determining remedies, I established a differential pay of 30%. This is based on the difference between my FY2019 pay grade of GS-11.2 and that of a GS-13.5. I then applied 30% to my gross wages to date, to arrive at the differential aggregate lost pay. The loss of wages includes future pay through the pay period 2019-26.

Because liquidated damages are allowable up to a loss of wages, I have applied that, as well. Those calculations are below. That total amount is $175,927.

As part of a remedy am seeking to be instated at a minimum level commensurate with my experience, skills, knowledge and ability, which is a GS-13.5.

As stated, I have more experience than my GS-14 supervisor, so this is a reasonable claim.

This is the remedy I will seek in district court.

### Calculations (rounded):

| | |
|---|---|
| Gross pay since start day through PP 26 | $293,212 |
| 30% differential (lost wages) | $87,964 |
| Liquidated Damages | $87,964 |
| **Total** | **$175,927** |

Dan Hamann
10799 W ALAMEDA AVE UNIT 150032
LAKEWOOD CO 80215-7402

US POSTAGE AND FEES PAID
**FIRST-CLASS**
Dec 21 2019
Mailed from ZIP 80215
2 oz First-Class Mail Letter

071S00777793



**USPS CERTIFIED MAIL**

9407 1108 9876 5050 4932 44

Manager, Civil Rights Division
Bureau of Reclamation
6th & Kipling
DFC 67/986 84-59000
DENVER CO 80225

Received 12/31/19
MLS

---

FOLD ALONG THIS LINE

**USPS CERTIFIED MAIL**™



84-59000 84-59000

Level 6:
84-59000 (40-1)

Sender:
LAKEWOOD CO

12/27/19 11:10          1 of 1

122720111050

Re: Draft responses to Items 1 thru 3

## Romero, Christopher R <cromero@usbr.gov>
Thu 1/30/2020 12:04 PM

**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Cc:** Rogers O'Gorman, Sherilyn M <srogersogorman@usbr.gov>

Hi Mr. Hamann,

Yes this content and form is acceptable. Thank you for your response. I look forward to receiving the rest of the responses.

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

---

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Thursday, January 30, 2020 11:33 AM
**To:** Romero, Christopher R <cromero@usbr.gov>
**Cc:** Rogers O'Gorman, Sherilyn M <srogersogorman@usbr.gov>
**Subject:** Draft responses to Items 1 thru 3

I have completed draft responses for items 1 through 3, which are attached. Please respond as to whether this content and form satisfies the requirements. I am moving ahead with the rest of list.

**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819 (forwarded)
**Telework:**  Tue & Thu 6-2:30  | Call 2819 | Schedule may vary | See Calendar
**Location:**   Denver Fed Cntr, Bldg 67, 11th Floor, Cube 11-110W 25007 Denver CO 80225.

## Item 1.

With respect to the dates, the answer is somewhere between 12 months and 4 years starting 9/21/2015, my start date. The answer encompasses a wide range due to conflicting information provided in the Job Announcement and the Rotation Program guidance, regarding the length of the rotation program. Excerpts as follows:

From the original USA Jobs posting (Control Number 398386500 Job Announcement Number BR-DO-2015-041):

> You can progress from $36K to $62K in 4 years! Year 1 - $36,379 (GS-5), Year 2 - $45,057 (GS-7), Year 3 - $55,116 (GS-9) and Year 4 - $62,850 (GS-11). Promotions to the next grade/salary level are neither guaranteed nor automatic, but based on supervisor initiation. This position is an entry-level engineer hired under the requirements and provisions of Reclamation's Rotation Engineer Program (Program).

> The program provides for intensive training and professional development. A program participant may be promoted from GS- 5 to GS-7 or from GS-7 to the GS-9 after a minimum of 6 months of intensive training and evidence of professional development as documented through successful performance in the program. Only 1 accelerated promotion may be granted and promotions are neither guaranteed nor automatic, but initiated at the request of the supervisory official.

Form the Technical Service Center Rotation Program Guide:

> Rotation Schedule The official assignment or home base of all participating professionals is the organizational unit for which he/she was initially selected and received appointment when he/she entered the work force. The minimum total training period of the Rotation Program is 12 months and is generally divided into two phases.

## Item 2.

I don't recollect the exact date since it's been over three years. However, it was likely some time during 2016. Additionally, it appears that there were actually two positions filled. Searching the ESAM database shows the following projects:

> *Chama SCADA Replacement FA* (FA250) started **8/7/16**, with Lisa Gentry as project manager.

> *Senator Wash P/G Plant - SCADA Replacement System* (FA063) was started on **3/2/2016** with Luke Buchholz as project manager.

Beyond that, I don't have a recollection of the vacancy being posted, announced or the selection of the individuals being announced.

## Item 3.

Yes, I have raised the issue of assigned tasks with several individuals in management. Within my group, 8430, subgroup leads are assigned by the group manager. The group manager has delegated the task assignment responsibilities to the group leads.

Eric Vaughn, who was a subgroup lead, but is no is no longer with Reclamation, was working on controls modernization projects in 2016. I mentioned to Vaughn that I had extensive background, both on the contract side and the design side, in control systems, including the development of Human Machine Interface (HMI) systems. Vaughn was courteous but showed little interest and made no offer for me to contribute to those projects in the context of controls.

Jeremiah Bradshaw, is a subgroup lead. In 2016, I mentioned to Bradshaw that I had extensive background in controls, while working on a project with him. Bradshaw responded with disgust that I had not been given more opportunities to work on controls projects.

Todd Griess, is a subgroup lead, working on controls projects. Late in 2019, I mentioned to Griess that I had extensive background in controls. Todd seemed interested but made no offers for me to participate in any projects.

In at least one of my performance reviews in 2019, I explained to my supervisor that I had extensive background in controls and HMI. He showed mild interest but never gave me any assignments.

Over the course of my tenure, I have mentioned it on multiple occasions. It is interesting that management never found it incumbent upon my supervisor, who has always had a copy of my resume, to try utilize resources under his control, to the maximum level of efficiency.

Responses to

## Hamann, Daniel (Dan) W <dhamann@usbr.gov>

Thu 2/6/2020 6:42 AM

**To:** Romero, Christopher R <cromero@usbr.gov>
**Cc:** Rogers O'Gorman, Sherilyn M <srogersogorman@usbr.gov>

1 attachments (3 MB)
Responses.pdf;

Chris - Attached, please find responses to questions in letter dated January 28, 2020, with Subject: Notice of Proposed Dismissal in Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior, Agency Complaint No. DOI-BOR-19-0764, from Sherilyn Rogers Complaints Manager.  — Dan

**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819 (forwarded)
**Telework:**  Tue & Thu 6-2:30  | Call 2819 | Schedule may vary | See Calendar
**Location:**   Denver Fed Cntr, Bldg 67, 11th Floor, Cube 11-110W 25007 Denver CO 80225.

February 6, 2020

This document contains my responses to the questions attached as Appendix A to the letter dated January 28, 2020, with the Subject: Notice of Proposed Dismissal in Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior, Agency Complaint No. DOI-BOR-19-0764, from Sherilyn Rogers, Complaints Manager.

- The responses follow, and for each item response, I have included the corresponding language from the Age Discrimination Narrative, by myself, dated, Thursday, September 19, 2019.
- I have included other documents as attachments which appear at the end.

Dan Hamann

# Item 1 "Rotations given to younger coworkers"

Approximately what date(s) were you been denied rotations?
Which individual(s) do you hold responsible for denying you rotations?

**Statement From Age Discrimination Narrative:**

I was hired as a rotation engineer in the fall of 2015. I was never given a rotation. Over the course of the last four years, I have observed younger rotation engineers be given rotations. The rotation program provides a means for accelerated promotion.

**Response**

With respect to the dates, the answer is between 12 months and 4 years starting 9/21/2015, my start date. The answer is encompasses a wide range due to conflicting and information provided in the Job Announcement as compared to the Rotation Program regarding the length of the rotation program.

From the original USA Jobs posting (Control Number 398386500 Job Announcement Number BR-DO-2015-041):

> You can progress from $36K to $62K in 4 years! Year 1 - $36,379 (GS-5), Year 2 - $45,057 (GS-7), Year 3 - $55,116 (GS-9) and Year 4 - $62,850 (GS-11). Promotions to the next grade/salary level are neither guaranteed nor automatic, but based on supervisor initiation. This position is an entry-level engineer hired under the requirements and provisions of Reclamation's Rotation Engineer Program (Program).

> The program provides for intensive training and professional development. A program participant may be promoted from GS- 5 to GS-7 or from GS-7 to the GS-9 after a minimum of 6 months of intensive training and evidence of professional development as documented through successful performance in the program. Only 1 accelerated promotion may be granted and promotions are neither guaranteed nor automatic, but initiated at the request of the supervisory official.

Form the Technical Service Center Rotation Program Guide:

> Rotation Schedule The official assignment or home base of all participating professionals is the organizational unit for which he/she was initially selected and received appointment when he/she entered the work force. The minimum total training period of the Rotation Program is 12 months and is generally divided into two phases.

Jay Boggess was responsible for rotations.

## Item 2 "New SCADA position given to younger coworker with less experience"

Approximately what date did you become aware that the Supervisory Control and Data Acquisition (SCADA) position had been filled?

Which individual(s) do you hold responsible for this alleged discrimination?

### Statement From Age Discrimination Narrative:

Although I have experience in control systems going back nearly 30 years, I was not offered an opportunity to apply for a new controls position in our group. Specifically, this position was for Supervisory Control and Data Acquisition (SCADA). I'm not exactly sure when this occurred because I have not been able to find any notice. I found out about it over time and saw no evidence that the person who was given that position had any experience in control systems. **Response**

### Response

I don't remember when I became aware that the Supervisory Control and Data Acquisition (SCADA) position had been filled. Additionally, I have not been able to find any indication that vacancies were actually posted or announced for fair and open competition. I did find the following:

An email announcement, Attachment 1,) was sent out on 4-20-18 that stating (3) individuals were promoted to GS-13 positions, indicating that *their exact new duties will be described as the new EDG sub-group arrangement is rolled out.*

However, I have been unable to locate any email, or other correspondence, that describes their *new duties.* Thus, it is not clear when the actual SCADA role was assigned.

However, it actually may have been some time during 2016. The ESAM database shows that the following projects were assigned.

*Chama SCADA Replacement FA* (FA250) started **8/7/16**, with Lisa Gentry as project manager.

*Senator Wash P/G Plant - SCADA Replacement System* (FA063) was started on **3/2/2016** with Luke Buchholz as project manager.

Jay Boggess is responsible for this discrimination. However, there may have been other individuals who participated in the process.

## Item 3 "Assigned tasks below my skill level while more advanced tasks were given to younger coworkers"

Have you raised the issue of your assigned tasks with management?
Which individual(s) did you raise these concerns with?
How did the individual(s) respond?
Approximately what date(s) did you raise these concerns?

### Statement From Age Discrimination Narrative:

Since I started, and particularly earlier, I was often given technician tasks such as doing CAD work. Although I am quite capable of doing that kind of work, my skill level, knowledge and experience far exceeds that type of tasks. I have observed younger coworkers be given more responsibility and not be required to do technician work. **Response**

### Response

Yes, I have raised the issue of your assigned tasks with numerous individuals I management. Within my group, 8430, subgroup leads were assigned by the group manager. The group manager delegated most of the task assignment responsibilities to the group leads.

Eric Vaughn ,who is no longer with Reclamation, was working on controls modernization projects in 2016. I mentioned to Vaughn that I had extensive background, both on the contract side and the design side, in control systems, including the development of Human Machine Interface (HMI) systems. Vaughn showed little interest and made no offer to contribute to any projects.

Jeremiah Bradshaw, is a subgroup lead. In 2016, I mentioned to Jeremiah that I had extensive background in controls, while working on a project with him. Bradshaw responded with disgust that I had not been given more opportunities to work on controls projects.

Todd Griess, is a subgroup lead, working on controls projects. Late in 2019, I mentioned to Griess that I had extensive background in controls. Todd seemed interested but made no offers for me to participate in any projects.

At one of my performance reviews in 2019, I explained to my supervisor that I had extensive background in controls and HMI. He showed mild interest but never gave me any assignments.

Over the course of my tenure, I have mentioned it on multiple occasions. It is interesting that management never found it incumbent upon my supervisor, who has always had a copy of my resume, to try utilize resources under his control, to the maximum level of efficiency.

## Item 4 "Project Management opportunities given to younger coworkers"

Have you raised the issue of becoming project manager with management?

Which individual(s) did you raise these concerns with?

How did the individual(s) respond?

Approximately what date(s) did you raise these concerns?

### Statement From Age Discrimination Narrative:

Although I have background in project management that goes back decades, I have never been offered the opportunity to be a project manager. I have seen younger engineers with far less experience than myself given that opportunity. This has become apparent to me over the time that I have been at TSC.

### Response

I don't think I have raised this issue specifically with management, because I think management simply decides who will be a project manager, whether one asks to be a project manager or not. Beyond that, I am not sure how projects are assigned to project managers. Furthermore, I don't know that asking would lead to a project management position. I doubt that anyone who is a project manager became a project manager because they asked to be.

All of the following people are project managers, are much younger and none have a PE.

Roland Cheng was made a project manager on Green Springs Excitation System Replacement (GSEXC). Roland is a recent graduate from college.

Lisa Billy is at the same grade level of me and has been assigned a project management position on five projects.

Luke Buchholz has been assigned project manager on ten projects, started out as a GS-5 five years ago and has been elevated to a GS-12 for reasons unknown. Additionally, Buchholz doesn't have an electrical engineering degree.

Adrian Santiago-Alvarez is project manager on two projects, is at the same grade level as me, and was assigned a project manager position, even though he didn't want the role.

There are more instances within our group.

# Item 5 "Promotions of younger coworkers"

When you identify lack of promotion, are you referencing career ladder promotion, within grade increases, or competitive promotions? Please identify each time you feel you were denied a promotion based on discrimination. For each time you were denied a promotion based on discrimination: Which individual(s) do you hold responsible for not promoting you? On what dates were you denied promotion?

### Statement From Age Discrimination Narrative:

I am aware of younger engineers without professional registration and far less experience be promoted whereas I have not been compensated or promoted at rate that is commensurate with my experience. The only verify this is through discovery.

### Response

Because the job announcement for which I was hired was for a career ladder position, I was denied a promotion from a GS-7 to a GS-9, after six months because I was not given a rotation. I was given a promotion to GS-9 after a full year. I was then given a promotion to GS-11 after another year. Thereafter, I was denied promotions to GS-12, which, to the best of my knowledge, are not competitive. I received two more one step advancements. Thus, I was also denied promotion to GS-13, which may be considered a competitive position.

The promotion dates that I was denied would have been approximately on 10/1/2018 and 10/1/2019, the beginning of the fiscal years. The fiscal year 2019 EPAP was signed on 10/31/2018. I refused to sign my fiscal year 2020 EPAP.

To put this into perspective, by giving one example, it is my understanding that Luke Buchholz, who is much younger than I, has no electrical engineering degree, and no PE, started at a GS-5, was promoted to a GS-7, GS-9, GS-11, and GS-12 over about a five year span. I don't know the exact dates. I plan to issue a FOIA request to obtain more specific information regarding Buchholz's promotions.

Additionally, I plan to submit FOIA requests for younger employees who received accelerated promotions.

I hold my supervisor responsible.

# Item 6 "More opportunities and training given to younger coworkers"

Approximately what date(s) did you become aware that you were not offered training?
Which individual(s) do you hold responsible for not offering you training?

### Statement From Age Discrimination Narrative:

Younger engineers have been given more opportunities in terms of training and positions than has been offered to me, even though my experience is greater.

More training has been provided to younger coworkers. For example, recently, I became of aware of electrical training, specific to our group, that was being given to younger co-workers in my group, at least one at my grade level, but was not offered to me. I became aware of this training by a printout I notice (by chance) in our print room. I also noticed messages coworkers put on their whiteboards indicating they were in training. I put these two incidents together – the printout and the whiteboard messages - and realized that the younger coworkers were being offered electrical training, that had not been offered to me.

### Response

I became aware of the issue almost immediately after beginning work at Reclamation in 2015 and continued to observe this over my entire tenure.  However, it didn't occur to me that there was a pattern of discrimination until I had observed the pattern over the course of my entire tenure.  It was the aggregate of the allocation of training, to younger coworkers, and not a single event, that made the discrimination obvious.

For example, in 2018 and 2019, Lisa Billy, who is nearly half my age, billed 903.5 hours to WCCAP, our training WOID, for a total labor cost of $64,809.03.  For those two years, I billed 213.00 hours for a total labor cost of $15,300.09.  Those costs do not include fees for training. Obviously, this is not comprehensive but representative of the disparity.  A comprehensive assessment would require more time, reasonably,  than I have to provide the responses herein.

Additionally, not all of my hours are for receiving training.  For some of that time I was *giving* training.  Coincidentally Billy is at the same grade level as myself: GS-11, and some of my training charges were for training Billy.

I hold Jay Boggess responsible for this disparity in training.

## Item 7 "Recognition given to younger coworkers"

On what approximate date(s) has your supervisor excluded you from recognition?

**Statement From Age Discrimination Narrative:**

When promulgating information about the skills of younger coworkers, my supervisor has explicitly excluded me, whereas younger employees have been given recognition.

**Response**

One instance would be in the Thu, Jul 11, 2019 at 9:35 AM email and spreadsheet (attached) from Jay Boggess where Boggess referred to the Revit experts as Darryl Liscomb and Kasey Nunes. Nunes was a recent hire and had never completed a solicitation in Revit at Reclamation. However, at that time, I had completed a solicitation in Revit: the Durango Pumping Plant Crest Gate Redesign (FA608). According to Liscomb I am only the second person in our group to complete a solicitation in Revit.

Also, in that email Boggess mentions "PLCs and HMIs". At the time that email was issued, my experience, which is reflected on my resume, and as I have told Boggess, with PLCs and HMIs goes back nearly 30 years. No mention of that.

Boggess has never shown any interest in utilizing my skills or expertise but certainly has provided that opportunity to other younger engineers, who have far less, or no experience, in the areas where I have the most background.

Have you raised the issue of project standards with management?
Which individual(s) did you raise these concerns with?
How did the individual(s) respond?
Approximately what date(s) did you raise these concerns?

### Statement From Age Discrimination Narrative:

Nearly all projects that I work on have very high demands and tight budgets, which require a very disciplined approach. Yet I observe younger engineers seemingly having more free time on their hands for casual conversation, laughing, giggling, et al.

### Response

First, it must be clarified by what is meant by a higher standard. To be held to a higher standard means that the expectation is that I have all of the skills necessary to complete a project. This is the expectation because of my considerable experience. Additionally, the expectation is that I can complete projects more quickly because of my experience. Thus, budgets are tighter.

The expectation is that I have all of the software skills and knowledge. For younger engineers, this expectation does not exist. It is assumed that because they are younger, they are entitled to more time and training.

For example, because of my experience, the expectation is that I know all software required to complete tasks. To the best of my knowledge Luke Buchholz, who is much younger than I, has produced very few, or no, AutoCAD drawings used in a solicitation, yet the expectation is that I must be able to do this due to my experience.

Kasey Nunes, who is also younger than I, was given a week of training at Autodesk University in Las Vegas, but the expectation was that I did not need the training because of my experience. Nunes and I are at the same grade level.

When it was determined that the Durango Pumping Plant Crest Gate Redesign (FA608) was to be completed in Revit, the expectation was that I would simply do that design work in Revit. I taught myself Revit. There was no ever any expectation that I would need training.

I may have broached this issue with various sub group leads in my group, along with my supervisor but I don't recollect precise dates. I am not so sure that it has to be broached; it is obvious, just be virtue of the work that I complete and the knowledge I pass on to others.

# Item 9 "Given more difficult assignments than coworkers"

Have you raised the issue of project difficulty with management?
Which individual(s) did you raise these concerns with?
How did the individual(s) respond?
Approximately what date(s) did you raise these concerns?

## Statement From Age Discrimination Narrative:

I have had difficult projects to work on that required a great deal of expertise, in terms of technical understanding, budget management, project management, et al. I don't see younger coworkers being held to this standard.

## Response

First, it must be clarified by what is meant by more difficult assignments. Since I started working at Reclamation, nearly every project I worked on was unique. I have worked on projects involving chlorination, overhead line relocations, canals water control, dam face lighting, hydrogenator black start, et al. Many others in my group, all younger, have the benefit of becoming specialist in an area, or working on a single project in a continuum. For example, Cory Mauer does nothing but rewinds. Darryl Liscomb has worked on the Navajo Gallup project, and pumping plants, almost exclusively, since my arrival at Reclamation. I am not afforded this luxury.

As a comparison of difficulty, Luke Buchholz was assigned as a project manager on a project with $130,000 budget to review documents. I have never had near that much budget on a project to produce – not just review – documents. Using an analogy, obviously, it is more difficult to write a book than it is to review a book. It is the same for solicitation documentation.

It take a fair amount of effort, experience, knowledge and skills to create a drawing that will appear in a solicitation package. Not only does one have to be fluent in the use of the software, such as AutoCAD or Revit, one must have a technical understanding of the substance of the documents. If one is generating a power distribution design, then all of the technical work, such as sizing conductors and breakers, must be accomplished. Thereafter, those elements must be modeled in the software. Then the appearance of the model must be placed into sheets that would then appear in the solicitation drawings. These drawings must be annotated. All work must conform to Reclamation standards, which includes everything from font sizes to location to everything else that falls under the standards. Then the specifications must be tailored in such a manner that they coincide with the drawings. The specifications must be generated in CSI format but must also conform to Reclamation standards. The review of these types of documents does not require near the skills. Additionally, Reclamation requires a P.E. to do a technical approval on the documents. Buchholz does not have a P.E. Thus, the tasks that assigned, were not as difficult.

This issue of difficulty was raised at a meeting on Thu 2/21/2019 8:30 AM - 9:00 AM  Meeting Attendees were: Jay Boggess Eric Mendlin  Michael Shepherd Alfred Bernstein and myself. When I begin to raise the issue, Boggess cut me off, by raising his voice, and stating "no, Dan!" emphatically. I immediately told Boggess that we need to maintain a decorum at our meetings where we don't cut each other off. At this point, it was difficult to proceed due to the hostility in the room. There was no backing me up. There were two managers in the room. It was their intention, manifested by their behavior, where they were going to control the narrative.

## Item 10 "Shown a general disrespect not shown towards younger employees"

Approximately what date(s) has your supervisor cut you off when speaking or ignored when you pointed out errors and/or omissions?

**Statement From Age Discrimination Narrative:**

There have been instances where I have been cut off when speaking, often during meetings, when basic decorum is ignored. If I mentioned an issue, that might be controversial, my supervisor would cut me off. It is my opinion that younger engineers would witness this, and feel entitled to do the same thing, perhaps to curry favor.

When I would point out errors and omissions in design work I was ignored, yet younger engineers who didn't even understand the concept were given more acknowledgement.

**Response**

The responses herein refer to instances when I was cut off while speaking, but not necessarily when I pointed out an error or omission. Although this was a pattern that occurred frequently, three instances stand out.

Meeting: Wed 2/14/2018 10:00 AM - 10:30 AM

　　　　Rules of Behavior for Computer Users

　　　　Jay, Luke, Dan

　　　　During this meeting I was explaining an issue, when Jay Boggess tried to cut me off, before I could finish the point. Very emphatically, I stated: "Jay! Please!" At which point he allowed me to finish. However, I had to become very forceful.

Meeting: Thu 10/4/2018 8:00 AM - 9:00 AM

　　　　Shasta Barrier - Specification Issues

　　　　Eric Mendlin

　　　　Lisa Orgren

　　　　Gerald Horton

　　　　During this meeting I was cut off repeatedly. Eric Mendlin, the sub-group lead did apologize after the meeting.

Meeting: Thu 2/21/2019 8:30 AM - 9:00 AM

8430 Budget / Deliverables Meeting

　　　　Michael Shepherd

　　　　Jay Boggess

　　　　Eric Mendlin

　　　　Alfred Bernstein

　　　　This meeting was referenced earlier in another item.

# Item 11 "Statement on performance"

Approximately what date(s) have you been given non-compliant performance evaluations?
Which individual(s) gave you the non-compliant performance evaluations?

**Statement From Age Discrimination Narrative:**

To address the issue that my lack of recognition and commensurate pay might be related to performance, I offer the following. I have not had any negative information reported in any of my reviews. Rather, all my review ratings have been at 3 for all critical elements.

However, it is my opinion that TSC performance reviews are not based on measurable performance. In fact, upon close examination, it becomes apparent that the performance appraisals are bogus. Thus, it is my opinion that the TSC appraisal system is out of compliance, and hence, unreliable. More evidence can be provided on this.

**Response**

All of the performance reviews were non-compliant and were completed by Jay Boggess.

FY 2016 signed 2015-11-02

FY 2017 signed 2016-11-18

FY 2018 signed 2017-12-05

FY 2019 signed 2018-10-31

FY 2020 – I refused to sign.

Using precise language the definition of *Comply* means to *act in accordance with a wish or command, meet specified standards*. Performance standards are established in the 370 DM 430 HB and the DI-3100. Attached please find letter, Attachment 2, to Brenda Burman Commissioner Bureau of Reclamation dated November 27, 2019 which describes the non-compliant issues. The Commissioner responded, Attachment3, in detail taking exception, also attached. Since receiving that response, I have compiled a list of 39 things, Attachment 4, that didn't happen at my EPAP review that are supposed to happen as per the guidance. Due to my time and energy being channeled into this EEO complaint, that matter is yet to be resolved.

However, as an added clarification, it appears that even if the standards were met, and my performance reviews were in compliance, the end result is that policy establishing performance effectively contravenes the law, which prohibits favoritism. To that end, the empirical evidence compiled by the MSPB suggests that performance ratings systems are ineffective in assurance of compliance with law. One survey indicated that fully one-fourth of federal employees see favoritism federal government employment. See this article: One in four feds perceive workplace favoritism. Another survey indicated that up to 80% of hiring officials have had a candidate in mind prior to posting a vacancy. This is a prohibited personnel action. See this article: Seven in 10 Federal Managers Sometimes Predetermine Who Will Fill Job Vacancies - Government Executive.

Jay Boggess gave me the non-compliant reviews.

# Attachment 1

↩ Reply all ⌄    🗑 Delete    ⊘ Junk    Block    ⋯

## Promotion Announcement in the Electrical Design Group

ⓘ   This message was sent with High importance.

 **Boggess, Jay S**
Fri 4/20/2018 8:53 AM
Eric Vaughn <evaughn@usbr.gov>; Vu, Henry; Santiago Alvarado, Adrian A; Maurer, Cory R; Gentry, Lisa K; Hamann, Daniel (Dan) W; Liscomb, Darryl

👍 ↩ ↩ → ⋯

I am pleased to announce that

Eric Mendlin
Lisa Gentry
Todd Griess

have been offered and have accepted GS-13 promotions in the Electrical Design Group, effective April 29th.  Their exact new duties will be described as the new EDG sub-group arrangement is rolled out in the next 3 weeks, but for the time being, let us all congratulate them.

Let me take this moment to personally congratulate them right now.

CONGRATS ERIC M, LISA G and TODD!!!!!

Jay Boggess
Manager, Electrical Design Group

# Dan Hamann

10799 W Alameda Ave
Unit 150032
Lakewood CO 80215-7402
Cell:    720-428-9543
VoIP:    210-401-3583
email:   **r6y2r7@gmail.com**

November 27, 2019

CMRR: 9407110898765049187420

Brenda Burman
Commissioner
Bureau of Reclamation
1849 C Street NW,
Mail Code 91-00000
Washington, DC 20240-0001

Dear Madam Commissioner:

**As per Reclamation Manual Directives and Standards HRM 07-01 (my responses are in bold):**

The Commissioner is responsible for: implementing, supporting, and communicating information to employees about Reclamation's Performance Management program; (2) establishing and communicating organizational performance and/or strategic goals; (3) holding subordinate managers and supervisors accountable for appraising employees accurately and consistently based on their accomplishments and contributions and ensuring that all covered employees receive timely performance plans and appraisals in accordance with the requirements of these procedures; and (4) establishing a method for an employee not covered by a collective bargaining agreement (or whose collective bargaining agreement does not contain reconsideration procedures) to request reconsideration of a performance rating.

**The rating official has not ensured that I have receive timely performance plans and appraisals in accordance with the requirements of these procedures.**

**As per Performance Management Handbook 370 DM 430 HB (my responses are in bold):**

Timeline of Performance Management Activities, Performance Appraisals – Assign ratings and complete EPAP forms for prior fiscal year that ended on September 30, are to be completed between October 1 to 31.

**This never happened.**

Before the start of the appraisal period, rating officials (generally, an employee's immediate supervisor) and employees should begin developing written performance plans for the next appraisal period. The process must allow for employees to provide input into the plan development.

**This never happened.**

Feedback can come from many different sources, such as observation by rating officials and other managers, measurement systems, and feedback from peers, stakeholders and customers. The rating official is responsible for determining the types, sources, and means of collecting the data and feedback that most accurately gauge performance, to ensure that each employee receives accurate, effective, and timely performance feedback. Rating officials should maintain documentation of employee performance, both positive and when improvement is needed, throughout the year. This will allow the rating official to provide specific examples during regular feedback sessions, progress reviews, for the development of the rating of record, or at other appropriate times.

Feedback should be provided in a manner that will best help performance. This is not to say that feedback should be exaggerated or under-stated. On the contrary, feedback should be accurate, factual, and complete to most effectively reinforce what the employee has done well, and what the employee needs to do to improve his/her performance.

**No feedback or data was provided**

Critical elements must describe work assignments and responsibilities that are significantly influenced by an employee's work effort and within the employee's control. For most employees, this means that critical elements cannot describe a group's performance.

**My Critical Element 1 does not comply with the DOI standards in that it does not describe an assignment or responsibility. Rather, it is a very broad and vague description of tasks. In fact, it is nearly incomprehensible. The language includes verbs such as *support, provide, adherence, plan, organize, prioritize, monitor, and accomplish*, which are non specific and imprecise. This allows the rating official to be arbitrary in deciding what is an actual accomplishment.**

**My Critical Element 1 refers to Reclamation *Project Management Framework* as Strategic Goal 1 Alignment. Three documents are available from the Reclamation Project Management Framework webpage. These three documents consist of 102 pages. No time is provided to review these documents. No training is provided.**

**Because of the broad language, it is impossible to precisely determine what the explicit strategic goal is. Thus, the rating official can arbitrarily decide whether my accomplishments are aligned with strategic goals.**

Critical elements must describe work assignments and responsibilities that are significantly influenced by an employee's work effort and within the employee's control. For most employees, this means that critical elements cannot describe a group's performance.

**My Critical Element 1 describes a groups performance.**

**Conclusion**

Rating officials do not have to allocate time or charge codes to employees. Thus, the implication is that the employee will do the work required to complete the EPAP on their own time.

When I stated that I could not sign the 2019 EPAP, there was no further discussion. The meeting was terminated immediately by the rating official. No feedback was entertained by rating official.

I submitted a document that demonstrated all of the non-compliance issues with the EPAP.

The conclusions that I have drawing is that the rating official is not interested in receiving feedback. He is only interested in signatures. The tone of the emails that I have received imply that I am a pariah because I am the only one in the group who requested time and I am the only one in the group that would not sign the EPAP. This is a form of intimidation. The entire group is subjected to it and likely simply sign their EPAPs so as to not be on the receiving end of the pariah effect and to not be on the receiving end of the intimidation.

TSC upper management has shown no interest in addressing these matters.

Thank you.

Sincerely,

*Dan Hamann*

Dan Hamann

OFFICE: 303-445-2819, Building 67, 11th Floor, Denver Federal Center

**Attachments**

Emails describing the meetings, et al.

The email attachment showing noncompliance

Language excerpted from my 2020 EPAP.

**CC:**

Jay Boggess

William McStraw

Thomas Luebke

| | |
|---|---|
| **From:** | Boggess, Jay S |
| **To:** | Hamann, Daniel (Dan) W |
| **Cc:** | Pierce, Rona L |
| **Subject:** | Re: Here is your 2019 EPAP scan |
| **Date:** | Thursday, November 7, 2019 1:30:19 PM |
| **Importance:** | High |

Please respond by tomorrow morning whether you intend to sign your 2019 EPAP. It has to be turned into HR with the rest of the group's EPAPs tomorrow before noon due to the time off being provided to employees for Veterans Day.

Jay Boggess

On Thu, Nov 7, 2019 at 12:59 PM Hamann, Daniel (Dan) <dhamann@usbr.gov> wrote:
Jay - Actually, I haven't had a chance to look at it yet. I spent most of the morning (after our meeting) getting my replacement PIV card, getting access, etc. And I am just finishing lunch.

However, I am concerned about the tone of your email. This is starting to look like retaliation.

A similar event occurred when I requested Official Time, which you never granted, but was eventually granted by Bill McStraw. - Dan

On Thu, Nov 7, 2019 at 8:29 AM Boggess, Jay <jboggess@usbr.gov> wrote:
WIth my signature. Please let me know by COB today if you are or are not going to sign your 2019 EPAP.

My expectation is that you will not spend the whole work day studying your EPAP and charging to overhead.

Thank you.

Jay B.


--


**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819 (forwarded)

**Telework:** MWF 6-2:30 till 1/1/20 | Call 2819 | Schedule may vary | See Google Calendar

**Location:** Denver Fed Cntr, Bldg 67, 11th Floor, Cube 11-110W 25007 Denver CO 80225.

Department of the Interior
Employee Performance Appraisal Plan

DI-3100
October 2018 (previous edition obsolete)

## U.S. DEPARTMENT OF THE INTERIOR
## Employee Performance Appraisal Plan

| Employee Name: Daniel W. Hamann | | Title/Series/Grade: Electrical Engineer GS-850-11 | |
|---|---|---|---|
| Duty Station: Denver TSC. Lakewood, Colorado | Appraisal Period: FY 2019 | From Date: October 1, 2018 | To Date: September 30, 2019 |

**Part A-1: Establishment of Performance Plan:** *Signatures certify that performance plan (Part E) was discussed with the employee*

| Employee: *(signature)* Date: 10-31-18 | Rating Official: *(signature)* Date: 31-0 | Reviewing Official (if applicable): I am retracting these signatures. The rating official did not solicit my involvement nor did I receive training. I did not read it carefully at the time and did not want to upset my supervisor by not signing. Thus, I signed it. It was only later, after studying the DI-3100, that I realized my error, |

**Part A-2: Employee Input into Performance Plan Development:** *Signatures certify that the rating official solicited the employee's involvement in developing the performance plan*

| Employee: *(signature)* | Date: 10-31-18 | Rating Official: *(signature)* | Date: 31-Oct-18 |

**Part A-3: Employee Training:** *Signatures certify that the employee reviewed the "Understanding Performance Management" guidance or was otherwise provided training on the performance management policy*

| Employee: *(signature)* | Date: 10-31-18 | Rating Official: *(signature)* | Date: 31-Oct-1 |

**Part A-4: Individual Development Plan:** *Signatures certify that the employee's Individual Development Plan was created. (Optional)*

| Employee: | Date: | Rating Official: | Date: |

**Part B: Progress Review:** *Signatures certify that performance was discussed.*

| Employee: *(signature)* | Date: 5/29/18 | Rating Official: *(signature)* | Date: 2-8-May-19 |

**Part C: Summary Rating Determination:** Assign the numerical rating level that accurately reflects the employee's performance for each of the critical elements (Use only whole numbers: **Outstanding = 5 points; Exceeds Expectations = 4 points, Fully Successful = 3 points, and Unacceptable = 0 points.)** *See next page for complete instructions.*

| Element Number | Numerical Rating |
|---|---|
| 1 | 3 |
| 2 | 3 |
| | 3 |
| | — |
| Total: | 9 |

I am not signing this because the critical elements and performance measures do not meet the requirements of the 370 DM 430 HB. Furthermore, there is no data to back up, or to show, how these ratings were established. They appear to be completely arbitrary.

**Total Numerical Rating** 9 ÷ **Number of Elements** 3 = **Numeric Summary Rating** 3.0

**Part D: Summary Rating:** Use conversion chart to determine rating. Check appropriate box:

| | | |
|---|---|---|
| | Outstanding | 4.6 – 5.00 AND No Critical Element rated lower than "Exceeds Expectations" |
| | Exceeds Expectations | 3.6 – 4.59 AND No Critical Element rated "Unacceptable" |
| X | Fully Successful | 3.0 – 3.59 AND No Critical Element rated "Unacceptable" |
| | Unacceptable | One or more Critical Elements rated "Unacceptable" |

| Employee: | Rating Official: *(signature)* | Reviewing Official: (if applicable): |
|---|---|---|
| Date: | Date: 7-Nov-19 | Date: |

Check here if Interim Rating:

Performance Award: QSI ____ Cash: $ ____ or ____% of Pay ____ Time Off ____

The critical elements in this DI-3200 do no meet the
**Instructions for Co** requirements of the 370 DM 430 HB. **Appraisal Plan (EPAP) Form**

### Establishing Critical Elements and Performance Standards

Critical elements (at least one, but not more than tive) must be established for each employee at the start of the appraisal period. Through these elements, employees are held accountable for work assignments and responsibilities of their position. A critical element is an assignment or responsibility of such importance that Unacceptable performance in that element alone would result in the determination that the employee's overall performance is Unacceptable. Please see 370 DM 430 or the Performance Management Handbook for more detailed information.

Performance standards are management-approved expressions of the performance threshold(s), requirement(s), or expectation(s) that must be met to be appraised on a critical element at a particular level of performance. They must be focused on results and include credible measures such as quality, quantity, timeliness, cost effectiveness, etc. The attached Benchmark Standards describe general parameters of the standards. Federal regulations require. at a minimum, that a specific performance standard be established for the Fully Successful level for each critical element Rating officials are strongly encouraged to develop spec     performance standards at additional levels to ensure that the employee has a clear understanding of the levels of performance expected.

At least one, and preferably all, critical elements must show how the element is linked to the strategic goal(s) of the organization. These goals should be aligned throughout the organization (i.e., show how the strategic goal cascades from the senior executive level down to the lowest non-supervisory levels). The employee should be able to clearly understand how the results they are held responsible for are linked to the results that those in their supervisory/managerial chain are held responsible for.

**Employee Involvement:** Employees must be provided an opportunity to participate in the development of their performance plans. Part A-2 of this form requires employee and rating official signatures certifying that employee input into the development of the plan was solicited.

**Individual Development Plan (IDP) (Optional):** The IDP provides a connection between the employee's career interests and needs to the organizational mission and priorities. The employee and the rating official should develop goals together.

**Progress Reviews:** A progress review discussion is required approximately midway through the appraisal period. Part B should be completed after the progress review. Any written feedback or recommended training can be noted on a separate sheet and attached to the EPAP form

**Assigning the Summary Rating:** A specific rating is required for each critical element to reflect the level of performance demonstrated by the employee throughout the appraisal period. Only one numerical rating level is assigned for each critical element Before the rating official assigns a summary rating, he/she should consider all interim appraisals received for the employee during the annual appraisal period. The summary rating is assigned as follows:

A.  Assess how the employee performed relative to the described performance standards.

B.  Document the employee's performance with a narrative that describes the achievements for the critical elements as compared to the performance standards. A narrative must be written for each critical element assigned a rating of Outstanding or Unacceptable to provide examples of the employee's performance that substantiate and explain how the performance falls within the level assigned. There is a block provided for the narrative for each critical element.

C.  In Part C of this form, assign one of the numerical rating levels that accurately reflects the employee's performance for each of the critical elements. Use only whole numbers: Outstanding = 5 points, Exceeds Expectations= 4 points. Fully Successful = 3 points. and Unacceptable = 0 points.

D.  Add up the numerical rating levels to get a total, and then divide the total by the number of critical elements that were rated to get an average. Elements that are not rated because an employee has not had a chance to perform them during the appraisal period are not assigned any points and should not be used to determine the average

E.  Assign a summary rating based on the table in Part D of this form. Employee and rating official sign the form certifying that the rating was discussed *Summary ratings of Outstanding or Unacceptable must be reviewed and approved by the reviewing official prior to the rating official's discussion with the employee.*

**Note:** Whenever an employee is rated **Unacceptable** on one or more critical elements. the overall rating **must** be **Unacceptable** (regardless of total points). **The rating official should immediately contact the servicing Human Resources Office for guidance and assistance on addressing Unacceptable performance.**

This is language is not a description of a task or responsibility.
Rather is it guidance on how to develop a critical element.

Attachment 2

**Department of the Interior**
**Employee Performance Appraisal Plan**

DI-3100
October 2018 (previous edition obsolete)

Part E: Critical Elements and Performance Standards: *List each of the employee's critical elements (at least one, but not more than five) and their corresponding performance standards. If Benchmark Standards are used, indicate "Benchmark Standards are attached" in the space below, and ensure they are attached to this form. At a minimum, measurable criteria must be identified at the Fully Successful level. For at least one critical element, identify the strategic/mission goal that the critical element supports.*

| **Critical Element 1 Title:** | **Critical Element Description:** (Describe the results (e.g., product, service, duty) for which the employee is accountable and responsible) |
|---|---|

<table>
<tr>
<td>
This is titled as a "Performance Measure" but appears to describe a critical element that is general, vague and not measurable, as required by the 370 DM 430 HB. It actually describes a group's performance, which cannot be used as a critical element.
</td>
<td>
<b>Performance Measure:</b> Support Reclamation's program accomplishment within the TSC by providing quality service and products to internal and external clients, in part through adherence to the TSC Operating Guidelines. Plan, organize, prioritize, monitor, and accomplish work within established budget and schedule. Perform required administrative tasks and incorporate concern for safety and security in all work.<br><br>
<b>GPRA/Strategic Goal: Workload/Project Management</b> - Ensure continued implementation of Reclamation Project Management Framework and TSC Project Management and workload management practices to improve the timeliness and cost accountability of TSC products.
</td>
</tr>
</table>

| | **Performance Standards** |
|---|---|

<table>
<tr>
<td><b>Outstanding</b><br><br>
<div style="border:1px solid">I requested a copy of these strategic goals but was not provided. I was not able to find where these are located.</div><br><br>
<div style="border:1px solid">There is no credible measure in terms of quality, quantity, timeliness, and cost effectiveness for these standards which is required by the 370 DM 430 HB.</div>
</td>
<td>
<b>Employee plans and performs an exceptional quantity of work according to organizational priorities and schedules with little supervision.</b>
<ul>
<li>No valid complaints or substantive supervisory interventions related to workload or project management during the rating period.</li>
<li>With few exceptions completes tasks/jobs (including checks/reviews, etc) on time and often ahead of schedule and within or below agreed to budgets through the use of project management tools (such as earned value analysis, task based estimates, project management plans, etc) and reports cost effectiveness to supervisor.</li>
<li>Positively influences and improves organizational collaboration and coordination with fellow employees, colleagues, supervisors/managers, and/or clients to prevent misunderstandings and plans for the unexpected.</li>
<li>Proactive, self-starter and highly motivated to complete tasks successfully and improve processes; consistently exceeds clients' expectations (as documented in narrative summary).</li>
<li>Successfully manages workload during the majority of rating period, of considerable complexity, controversy, and/or well beyond present grade level.</li>
<li>Peer (and other) reviewers and checkers are with few exceptions afforded sufficient time to review employee's work.</li>
</ul>
See Benchmark standards attached.
</td>
</tr>
<tr>
<td><b>Exceeds Expectations</b><br><br><br>
<div style="border:1px solid">There is no credible measure in terms of quality, quantity, timeliness, and cost effectiveness for these standards which is required by the 370 DM 430 HB.</div>
</td>
<td>
<b>Employee plans and performs a high quantity of work according to organizational priorities and schedules with less than normal supervision.</b>
<ul>
<li>No more than 1 valid complaint or substantive supervisory intervention related to workload or project management during the rating period</li>
<li>Consistently completes tasks/jobs (including checks/reviews, etc) on time and often ahead of schedule and within agreed to budgets through the use of project management tools (such as earned value analysis, task based estimates, project management plans, etc)and reports cost effectiveness to supervisor.</li>
<li>Self-starter and motivated to complete tasks successfully; generally exceeds clients' expectations (as documented in narrative summary).</li>
<li>Effectively collaborates and coordinates with fellow employees, colleagues, supervisors/managers, and/or clients and handles difficult and unpredicted problems.</li>
<li>Successfully manages workload during the majority of rating period, which is considered outside typical norms in terms of complexity, controversy, and/or beyond present grade level.</li>
<li>Peer (and other) reviewers and checkers are consistently afforded sufficient time to review employee's work.</li>
</ul>
See Benchmark standards attached.
</td>
</tr>
</table>

Exhibit A - page 31 of 49

3

| **Fully Successful** | In addition to attached Benchmark standards, the following measurable criteria apply: **Employee generally plans and performs workload/project management duties for assigned projects according to organizational priorities and schedules with mentoring.** |
|---|---|
| | ▪ No more than 3 valid complaints or substantive supervisory interventions related to workload or project management duties during the rating period. |
| There is no credible measure in terms of quality, quantity, timeliness, and cost effectiveness for these standards which is required by the 370 DM 430 HB. | ▪ Generally completes tasks/jobs (including checks/reviews, project status updates, change management, and charge reconciliation) in a timely manner and within agreed to budgets through the use of project management tools (such as earned value analysis, task based estimates, project management plans, etc.) |
| | ▫ Demonstrates good, sound performance that meets organizational goals; consistently meets supervisor's, client's and project managers' product delivery expectations. |
| | ▪ Peer (and other) reviewers and checkers are generally afforded sufficient time to review employee's work. |
| **Unacceptable** | Any performance that falls below that which is described as Fully Successful. See Benchmark standards attached. |

## Narrative Summary

Describe the employee's performance for the critical element. A narrative summary must be written for each element assigned a rating of Outstanding or Unacceptable.

In FY 2019, Dan worked on the Durango Pumping Plant Crest Gate Redesign, Boca Dam Seismic Modification Construction Support San Xavier Reliability Recovery Project, Cle Elum Gate Hoist project and Blackfeet Renewable Energy Opportunities study

**Rating for Critical Element 1:**

[] Outstanding-5    [] Exceeds Expectations-4    [x] Fully Successful-3    [] Unacceptable-0

**Part E: Critical Elements and Performance Standards:** *List each of the employee's critical elements (at least one, but not more than five) and their corresponding performance standards. If Benchmark Standards are used, indicate "Benchmark" standards are attached" in the space below, and ensure they are attached to this form. At a minimum, measurable criteria must be identified at the Fully Successful level. For at least one critical element, identify the strategic/mission goal that the critical element supports.*

| Critical Element 2 Title: | Performance Measure: Communication. Organize and prepare, or coordinate the preparation of. materials such as specifications documents, reports, meeting minutes, travel reports, drawings, maps, graphs, or figures; deliver oral presentations or briefings; and participate in meetings – to communicate, promote TSC capabilities, and convey work status and findings to team leaders, team members, clients, superiors, and others. |
|---|---|
| *This is titled as a "Performance Measure" but appears to describe a critical element that is general, vague and not measurable, as required by the 370 DM 430 HB. It actually describes a group's performance, which cannot be used as a critical element.* | GPRA/Strategic Goal: Contribute to the accomplishment of GPRA performance targets for Reclamation's goals for efficient use and delivery of water and hydropower through effective communication. |

<table>
<tr><td colspan="2" align="center"><b>Performance Standards</b></td></tr>
<tr><td><b>Outstanding</b></td><td>Employee communicates clearly and effectively on even complicated or controversial subjects.</td></tr>
<tr><td><i>I requested a copy of these strategic goals but was not provided. I was not able to find where these are located.</i><br><br><i>There is no credible measure in terms of quality, quantity, timeliness, and cost effectiveness for these standards which is required by the 370 DM 430 HB.</i></td><td><ul><li>No valid complaints or substantive supervisory interventions related to communication during the rating period.</li><li>With few exceptions provides exceptional quality written documents that require only minor additional data and/or clarification upon review.</li><li>Provides high quality oral communication appropriately tailored to the target audience such that concepts and/or ideas are accurately, concisely, and persuasively articulated so that desired outcomes are achieved.</li><li>With few exceptions seeks appropriate assistance on issues/concerns, including technical, in a timely manner, (i.e., effective networking) and often advises others (such as mentoring or coaching).</li><li>Consistently exceeds clients', supervisor's, and team lead's expectations (as documented in narrative summary.)</li></ul>May also contribute to organizational growth or recognition:<ul><li>Prepares peer-reviewed journal paper or serves as principal author of organizational guidelines or manual.</li><li>Teaches an internal or external class.</li></ul>See Benchmark standards attached.</td></tr>
<tr><td><b>Exceeds Expectations</b></td><td>Employee communicates very clearly and effectively on even difficult subjects.</td></tr>
<tr><td><i>There is no credible measure in terms of quality, quantity, timeliness, and cost effectiveness for these standards which is required by the 370 DM 430 HB.</i></td><td><ul><li>No more than 1 valid complaint or substantive supervisory intervention related to communication during the rating period.</li><li>Consistently provides high quality written documents that require only minor additional data and/or clarification upon review.</li><li>Provides high quality oral communication appropriately tailored to a wide range of audiences such that concepts and/or ideas are accurately and concisely articulated.</li><li>Consistently seeks appropriate assistance on issues/concerns, including technical, in a timely manner (i.e., effective networking) and occasionally advises others (such as mentoring or coaching).</li><li>Generally exceeds clients', supervisor's, and team lead's expectations (as documented in narrative summary.)</li></ul>May also contribute to organizational growth or recognition:<ul><li>Prepares or presents a technical paper or presentation for internal or external forums/events.</li><li>Participates in agency-supported teams and activities</li></ul>See Benchmark standards attached.</td></tr>
</table>

| Fully Successful | In addition to attached Benchmark standards, the following measurable criteria Employee **generally** communicates clearly and effectively with supervisor, team leads, team members, co-workers, and clients. |
| --- | --- |
| | • No more than 3 valid complaints or substantive supervisory interventions related to communication during the rating period. |
| There is no credible measure in terms of quality, quantity, timeliness, and cost effectiveness for these standards which is required by the 370 DM 430 HB. | • Generally provides quality written documents that require only minor additional data and/or clarification upon review. |
| | • Provides quality oral communication appropriately tailored to a target audience. |
| | • Consistently seeks appropriate assistance on issues/concerns, including technical, in a timely manner, (i.e., effective networking). |
| | • Consistently meets clients', team leads', and supervisor's expectations with regards to communication on projects. |
| Unacceptable | Any performance that falls below that which is described as Fully Successful. See Benchmark standards attached. |

## Narrative Summary

Describe the employee's performance for the critical element. A narrative summary must be written for each element assigned a rating of Outstanding or Unacceptable.

Dan is fully successful in the communication critical element.

## Rating for Critical Element 2:

[ ] Outstanding-5    [ ] Exceeds Expectations-4    [x] Fully Successful-3    [ ] Unacceptable-0

Part E: Critical Elements and Performance Standards: *List each of the employee's critical elements (at least one, but not more than five) and their corresponding performance standards. If Benchmark Standards are used, indicate "Benchmark Standards are attached" in the space below, and ensure they are attached to this form. At a minimum, measurable criteria must be identified at the Fully Successful level. For at least one critical element, identify the strategic/mission goal that the critical element supports.*

| | |
|---|---|
| **Critical Element 3 Title:** | **Performance Measure:** <u>Technical.</u>  Perform, check, and/or assist others with analyses, investigations, or designs for assigned projects or studies.  Such work may include data collection and evaluation, computations, analysis, modeling, or layouts.  Maintain technical skills. |

> This is titled as a "Performance Measure" but appears to describe a critical element that is general, vague and not measurable, as required by the 370 DM 430 HB. It actually describes a group's performance, which cannot be used as a critical element.

**GPRA/Strategic Goal:** Contribute to the accomplishment of GPRA performance targets for Reclamation's goals for efficient use and delivery of water and hydropower by providing support activities, designs and analyses, and information that meet Reclamation needs.

### Performance Standards

**Outstanding**

> I requested a copy of these strategic goals but was not provided. I was not able to find where these are located.

Employee demonstrates mastery of technical skills and a thorough understanding of the mission of the organization and has a fundamental impact on the completion of the job with little mentoring.
- No valid complaints or substantive supervisory interventions related to technical aspects of work products during the rating period.
- Applies and leads or identifies the need for the development of appropriate technical codes, criteria, standards, guidelines to accomplish tasks/jobs.
- Analyses and results/products are with few exceptions very sound and accurate; peer review comments identify only minor errors.
- Products and performance are of such high quality that organizational goals have been achieved that would not have been otherwise.
- Proactive, self-starter and highly motivated to complete tasks successfully and improve processes and consistently exceeds clients' expectations (as documented in narrative summary).

> There is no credible measure in terms of quality, quantity, timeliness, and cost effectiveness for these standards which is required by the 370 DM 430 HB.

May also contribute to improving organization's technical capabilities or recognition:
- Advances the state-of-practice and/or state-of-art through independently developing technical methods/ procedures for Group, Division, or TSC.
See Benchmark standards attached.

**Exceeds Expectations**

Employee effectively applies comprehensive technical skills, understanding of the objectives, and knowledge of organizational procedures to get the job done and support organizational goals with less than normal mentoring.
- No more than 1 valid complaint or substantive supervisory intervention related to ~~technical aspects of work products during the rating period~~
- Applies and assists in the development of appropriate technical codes, criteria, standards, guidelines to accomplish tasks/jobs.
- Performance is unusually good, analyses and results/products are consistently sound and accurate; peer review comments identify only minor errors
- Self starter, motivated to complete tasks successfully, and generally exceeds clients' expectations (as documented in narrative summary).
- Serves on technical teams that are not part of the normal workload.

> There is no credible measure in terms of quality, quantity, timeliness, and cost effectiveness for these standards which is required by the 370 DM 430 HB.

May also contribute to improving organization's technical capabilities or recognition:
- Advances the state-of-practice and/or state-of-art through participation in the development and implementation of technical methods/procedures within the Group, Division or TSC.
See Benchmark standards attached.

| Fully Successful | In addition to attached Benchmark standards, the following measurable criteria apply. Employee generally applies technical skills and organizational knowledge to perform and check analyses, investigations, or designs for assigned projects with mentoring. |
|---|---|
| There is no credible measure in terms of quality, quantity, timeliness, and cost effectiveness for these standards which is required by the 370 DM 430 HB. | • No more than 3 valid complaints or substantive, supervisory interventions related to technical aspects of work products during the rating period<br>• Applies appropriate technical codes, criteria, standards, guidelines in the accomplishment of tasks/jobs.<br>• Analyses and results/products are generally sound and accurate; peer review comments identify only minor errors.<br>• Demonstrates good, sound performance that meets organizational goals and consistently meets clients' expectations related to technical aspects of product. |
| Unacceptable | Any performance that falls below that which is described as Fully Successful. See Benchmark standards attached. |

## Narrative Summary

Describe the employee's performance for the critical element. A narrative summary must be written for each element assigned a rating of Outstanding, or Unacceptable.

Dan is fully successful in the area of the technical critical element

**Rating for Critical Element 3:**

[] Outstanding-5    [] Exceeds Expectations-4    [x] Fully Successful-3    [] Unacceptable-0

| From: | Hamann, Daniel (Dan) W |
|---|---|
| To: | Boggess, Jay S |
| Cc: | Pierce, Rona L; McStraw, William D |
| Subject: | Re: Here is your 2019 EPAP scan |
| Date: | Friday, November 8, 2019 10:04:55 AM |
| Attachments: | commented EPAP.pdf |

Jay,

I was given two hours notice for my performance review yesterday. This could have been scheduled two weeks in advance, which would have given me time to prepare. Having taken leave on Wednesday, I came in yesterday (Thursday) at 6 AM, to see an invite for an 8 AM EPAP meeting. I already had a busy day scheduled but accepted the invite.

Throughout this meeting, I calmly provided feedback to you regarding the nature of my performance review and the DOI performance review system at large. I spoke openly and candidly. I never raised my voice - but you did. And it certainly isn't the first time.

Over the course of the last year, on my own time, I have researched policy, laws and regulations. I discovered that TSC does not comply with DOI policy. For example, yesterday's meeting occurred after the October 1 to 31 window, which is in the timeline in the 370 DM 430 HB. TSC does seem to have a problem with this.

Because I have developed a better understanding of the policy and the performance system, I now see it is ritualistic, and you actually seem to agree with me on that. Rather, there is a system of cronyism and favoritism that is the actual performance and promotion system, that is pervasive, particularly within our group - a system largely partially on obsequious behavior.

The meeting ended with you having (another) temper tantrum, when I indicated that I couldn't sign the EPAP. Quite frankly, this type of behavior is unbecoming for a rating official. As I told you, we could review each of the signature blocks, but you abruptly terminated the meeting at that point, emailed a copy of the EPAP to me, stating that "expectation is that you will not spend the whole work day studying your EPAP and charging to overhead".

What seemed to enrage you in particular was when I pointed out that my ratings are coincidentally all "3s," which is highly unlikely in a bona fide rating system. In my opinion, these ratings are arbitrary and assigned for convenience. There is no back up data provided to show that the calculations of the ratings were based on guidance in the 370 DM 430 HB, which shows ratings taken out to 2 decimal points.

This is hardly an environment conducive to a fluid exchange of information. It is hardly in compliance with the guidance of the 370 DM 430 HB which states "Giving and receiving feedback is one of the critical components of the performance appraisal process." Rather, this behavior smacks of bullying, and that has been the M.O., since I began working at TSC. As a rating official, it is my opinion you are more interested in getting signatures than in conducting bona fide performance reviews, and will use intimidation to achieve that.

I have attached a DI-3100, with my comments, where the intent is to show, more

specifically, the non-compliance issues with respect to DOI policy.

Dan

On Fri, Nov 8, 2019 at 8:39 AM Boggess, Jay <jboggess@usbr.gov> wrote:
> Dan -
> Per our IM conversation (Screen shot enclosed) I note that you are refusing to sign your
> 2019 EPAP.
>
> Jay Boggess
>
> On Thu, Nov 7, 2019 at 1:30 PM Boggess, Jay <jboggess@usbr.gov> wrote:
>> Please respond by tomorrow morning whether you intend to sign your 2019 EPAP. It has
>> to be turned into HR with the rest of the group's EPAPs tomorrow before noon
>> due to the time off being provided to employees for Veterans Day.
>>
>> Jay Boggess
>>
>> On Thu, Nov 7, 2019 at 12:59 PM Hamann, Daniel (Dan) <dhamann@usbr.gov> wrote:
>>> Jay - Actually, I haven't had a chance to look at it yet. I spent most of the
>>> morning (after our meeting) getting my replacement PIV card, getting access,
>>> etc. And I am just finishing lunch.
>>>
>>> However, I am concerned about the tone of your email. This is starting to look
>>> like retaliation.
>>>
>>> A similar event occurred when I requested Official Time, which you never
>>> granted, but was eventually granted by Bill McStraw. - Dan
>>>
>>> On Thu, Nov 7, 2019 at 8:29 AM Boggess, Jay <jboggess@usbr.gov> wrote:
>>>> WIth my signature. Please let me know by COB today if you are or are not going to
>>>> sign your 2019 EPAP.
>>>>
>>>> My expectation is that you will not spend the whole work day studying your EPAP
>>>> and charging to overhead.
>>>>
>>>> Thank you.
>>>>
>>>> Jay B.
>>>>
>>>>
>>>> --

---

**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819 (forwarded)

**Telework:** MWF 6-2:30 till 1/1/20 | Call 2819 | Schedule may vary | See Google
Calendar

**Location:** Denver Fed Cntr, Bldg 67, 11th Floor, Cube 11-110W 25007 Denver CO

## Attachment 2

80225.

--

**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819 (forwarded)

**Telework:** MWF 6-2:30 till 1/1/20 | Call 2819 | Schedule may vary | See Google Calendar

**Location:** Denver Fed Cntr, Bldg 67, 11th Floor, Cube 11-110W 25007 Denver CO 80225.

| | |
|---|---|
| **From:** | Hamann, Daniel (Dan) W |
| **To:** | Boggess, Jay S |
| **Subject:** | Re: Re 2020 EPAPs |
| **Date:** | Wednesday, November 13, 2019 1:51:09 PM |

What WOID is to be used for this effort and how much time is allocated?

On Tue, Nov 12, 2019 at 2:33 PM Boggess, Jay <jboggess@usbr.gov> wrote:

Folks -

Everyone has their 2020 EPAP in their DOI Talent, awaiting review. Next step after you look it over (some of you have already done this) is to sit down with me and play a game of electronic signing I call "Electronic EPAP Battleship" or "Electronic EPAP Ping-Pong".

One concern someone brought up is that there does not seem to be any Performance Management training and therefore their signature on their EPAPs (Part A-3) should not have been requested. In the EPAP forms it states 'Signature certify that the employee reviewed the "Understanding Performance Management" guidance or was otherwise provided training on the performance management policy.' Appendix 1 is the "Understanding Performance Management." Therefore, you should ensure they review Appendix 1 at the time before signing the electronic version.

Jay Boggess

--

**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819 (forwarded)

**Telework:** MWF 6-2:30 till 1/1/20 | Call 2819 | Schedule may vary | See Google Calendar

**Location:** Denver Fed Cntr, Bldg 67, 11th Floor, Cube 11-110W 25007 Denver CO 80225.

## Attachment 2

**From:** Boggess, Jay S
**To:** Hamann, Daniel (Dan) W
**Subject:** WOID for 2020
**Date:** Wednesday, November 13, 2019 2:41:53 PM
**Importance:** High

No one has asked explicitly for time to review the 2020 EPAP, but I will give you 2-3 hours WCCAP for you to review your 2020 EPAP.

Jay Boggess

**From:** Boggess, Jay S
**To:** Hamann, Daniel (Dan) W
**Cc:** Pierce, Rona L
**Subject:** Re Your 2020 EPAP
**Date:** Tuesday, November 26, 2019 2:34:24 PM

On the 7th of November, I informed you that your 2020 EPAP was ready for your electronic review in DOI Talent. It is now 26 November. Everyone else in 8430 has signed their 2020 EPAP. Please let me know by COB November 27 if you are going to sign or not sign your 2020 EPAP.

Thank you!

Jay Boggess

**Critical Element 1 / Outstanding Performance Measures**

Critical Element 1 Title

　　Workload/Project Management

Strategic Goal 1 Alignment

　　Ensure continued implementation of Reclamation Project Management Framework and TSC Project
　　Management and workload management practices to improve the timeliness and cost accountability of TSC
　　products

Critical Element 1 Description

　　Support Reclamation's program accomplishment within the TSC by providing quality service and products to
　　internal and external clients, in part through adherence to the TSC Operating Guidelines.  Plan, organize,
　　prioritize, monitor, and accomplish work within established budget and schedule.  Perform required
　　administrative tasks and incorporate concern for safety and security in all work.

Outstanding

　　Employee plans and performs an exceptional quantity of work according to organizational priorities and
　　schedules with little supervision.  § No valid complaints or substantive supervisory interventions related to
　　workload or project management during the rating period.  § With few exceptions completes tasks/jobs
　　(including checks/reviews, etc) on time and often ahead of schedule and within or below agreed to budgets
　　through the use of project management tools (such as earned value analysis, task based estimates, project
　　management plans, etc) and reports cost effectiveness to supervisor.  § Positively influences and improves
　　organizational collaboration and coordination with fellow employees, colleagues, supervisors/managers, and/or
　　clients to prevent misunderstandings and plans for the unexpected.  § Proactive, self-starter and highly
　　motivated to complete tasks successfully and improve processes; consistently exceeds clients' expectations (as
　　documented in narrative summary).  § Successfully manages workload during the majority of rating period, of
　　considerable complexity, controversy, and/or well beyond present grade level.  § Peer (and other) reviewers
　　and checkers are with few exceptions afforded sufficient time to review employee's work.  See Benchmark
　　standards attached.

# United States Department of the Interior

BUREAU OF RECLAMATION
Washington, DC 20240



IN REPLY REFER TO:

91-00000
1.2.04

DEC 1 0 2019

Mr. Dan Hamann
10799 West Alameda Avenue
Unit 150032
Lakewood, Colorado 80215-7402

Dear Mr. Hamann:

At the request of Commissioner Burman, I am responding to your letter of November 27, 2019. Leadership wants employees to communicate with us, but also expect efforts to resolve issues at the lowest level. I am concerned that you wrote directly to the Commissioner of the Bureau of Reclamation, bypassing several levels of supervision. It does not appear that you fully tried to resolve any issues you were having with your supervisor, with your next level supervisor, the Director of the Technical Service Center (TSC), or the Deputy Commissioner-Operations.

Regarding the issue that your supervisor "has not ensured that [you] receive timely performance plans and appraisals," under the requirements of the Reclamation Manual, Directives and Standards, HRM 07-01, provides allowances for supervisors under certain circumstances. You state that your supervisor never completed assigning the ratings and the Employee Performance Appraisal Plan (EPAP) for this Fiscal Year (FY). I have been in contact with the Human Resource (HR) Office regarding the EPAPs for your group and your information is not entirely correct. While Supervisory Electrical Engineer Jay Boggess did not get the end of year ratings issued to you and others in your group prior to October 31, 2019 for FY 2019, he timely requested and was approved an extension by the Human Resource Officer.

You stated that before the appraisal period, you did not have the opportunity to provide input for the appraisal plan. When you were presented the standards for FY 2019 at the beginning of the rating period, you signed part A-2: Employee Input into the Performance Plan Development. You had the opportunity to work with your supervisor regarding the standards and could have requested additional time to review and provide input. However, I need to point out that in HRM 07-01, paragraph 5.B.(1), on page 9, "management has the final decision as to how the performance standards will be written."

You state that no feedback was provided to you with the rating you received. In review of your FY 2019 EPAP, you received ratings of Fully Successful in Critical Elements 1, 2 and 3. In accordance with the HRM, paragraph 5.H.(2), on page 12, management is only required to provide a narrative summary for critical elements given a rating of Outstanding or Unacceptable and are only highly encouraged to write summaries at all levels. However, in paragraph 4.H., paragraphs (2), (4) and (5)

on page 8, it does state that it is the employee's responsibility to ensure they have a clear understanding of their rating official's expectations, manage their performance to achieve at least a Fully Successful rating, and to seek feedback from their rating official, internal and external customers, and stakeholders, as appropriate.

If an employee does not like the rating received or disagrees with the summary provided for the performance in one or multiple critical elements, they do have the right to request reconsideration of the rating as stated in the HRM, paragraph 5.K.(1)(a), on page 14, but "<u>only</u> if the outcome of the numerical summary rating is affected by changing the disputed critical element rating(s)." However, in paragraph 5.K.(1)(b), it does state that you "cannot dispute the number or type of critical elements or the content of the performance standards." According to the HR office, you did utilize the process at the informal stage and received a response from your supervisor but did not go forward and request a Formal Reconsideration of your ratings from a higher-level supervisor.

It appears you misunderstand how performance standards are developed. There are employees in your similar position and grade who perform duties that are like yours but not identical. In accordance with the HRM, paragraph 4.G.(4), page 7, a supervisor is to ensure there is "consistency of critical elements and performance standards for employees with similar duties and responsibilities" and, as stated in paragraph 5.B.(1), page 9, not just use benchmark performance standards by themselves to define performance standards at the Fully Successful level. Also, as stated in paragraph 5.E.(2) on page 11, standardized performance standards for certain like positions are permitted and, therefore, the supervisors of all the groups which have employees with the same title, series, grade level, and similar duties and responsibilities work together to develop standards which are achievable for the employees in each group.

Finally, as stated above, it is the employee's responsibility to seek feedback on their performance. Also, if you are having a problem with your immediate supervisor and cannot resolve the issues, it is appropriate to then speak with your second-level supervisor and on up through your supervisory chain. In checking with the HR office, we have been informed that your second-level supervisor was not aware of the issues until you wrote the Commissioner.

I hope I have provided some clarity on the issues you have raised. I encourage you to work through your supervisory structure to resolve the issues you have raised.

Sincerely,

Elizabeth Cordova-Harrison
Senior Advisor to the Commissioner

cc:  86-68010 (TLuebke), 86-68400 (WMcStraw), 86-68430 (JBoggess)

## 39 EPAP THINGS THAT ARE SUPPOSED TO HAPPEN BUT DIDN'T
### Dan Hamann
### February 5, 2020

The following are excerpted directly from the EPAP guidance.

## From DI-3100

1) The employee should be able to clearly understand how the results they are held responsible for are linked to the results that those in their supervisory/managerial chain are held responsible for.

2) Employees must be provided an opportunity to participate in the development of their performance plans.

3) Part A-2 of this form requires employee and rating official signatures certifying that employee input into the development of the plan was solicited.

## From 370 DM 430 HB

4) The rating official is responsible for determining the types, sources, and means of collecting the data and feedback that most accurately gauge performance, to ensure that each employee receives accurate, effective, and timely performance feedback.

5) Rating officials should maintain documentation of employee performance, both positive and when improvement is needed, throughout the year.

6) Supervisors and managers must encourage employees to participate in the development of the critical elements and performance standards for their positions in order to give them a clearer understanding of their performance expectations, as well as the role their positions play in achieving the mission and goals of the organization.

7) Examples of Employee Participation Techniques: (1)Employee and rating official jointly develop the performance plan; (2)Employee provides the rating official with a draft plan; (3)Rating official provides the employee with a draft plan; or (4)Employee writes one of the critical elements that he/she performs in his/her position.

8) Employees should sign the EPAP form to acknowledge that they have received the performance plan, not to indicate agreement with its content. If an employee refuses to sign, the rating official must document the refusal on the EPAP form.

9) Feedback can come from many different sources, such as observation by rating officials and other managers, measurement systems, and feedback from peers, stakeholders and customers.

10) The rating official is responsible for determining the types, sources, and means of collecting the data and feedback that most accurately gauge performance, to ensure that each employee receives accurate, effective, and timely performance feedback

11) Rating officials should maintain documentation of employee performance, both positive and when improvement is needed, throughout the year.

12) Feedback works best when it relates to a specific goal, such as those established in the employee's performance plan.

13) Rating officials should compile performance data from various sources as a part of the rating process.

## 39 EPAP THINGS THAT ARE SUPPOSED TO HAPPEN BUT DIDN'T
### Dan Hamann
### February 5, 2020

14) The rating official should be prepared to have a thorough performance rating discussion.

15) Employee performance on each critical element during the rating period has been reviewed and noted, including tasks that were completed well and any areas needing improvement. Specific examples should be noted when possible.

16) Be professional, calm, and focused on discussing the employee's performance.

17) Begin with positive feedback on tasks the employee has done well, regardless of the final rating.

18) Review each critical element and discuss items of note, both positive and negative as appropriate, and advise the employee of the rating on that element.

19) Provide specific examples.

20) Describe any changes in performance needed and ensure the employee understands the requirements.

21) Allow time for employee questions.

22) Summarize the performance and communicate the summary rating assigned to the employee.

23) The employee must also be afforded an opportunity to sign the EPAP form to indicate that the rating has been discussed with him/her.

24) Giving and receiving feedback is one of the critical components of the performance appraisal process.

25) As a rating official, it is incumbent upon you to ensure that the feedback provided is meaningful, that you take the time to prepare for the conversation, and that the employee has a chance to ask questions and provide input.

26) You get to provide the employee information about the "big picture" and how what he/she does contributes to mission/organizational goals.

27) Request information from the employee on his/her key work accomplishments for the period being discussed.

28) Keep a "kudos" folder for each employee with key accomplishments that you can reference.

29) Write down what you feel the employee has done/accomplished/learned, what he/she did particularly well, and any areas in which you may have been disappointed in how the employee performed, including what they could have done better

30) You should include examples of specific projects or assignments.

31) During the actual performance discussion, you should review the employee's performance during the period in question including a summary of key accomplishments, praise him/her for work that he/she did particularly well, inform him/her of work that could have been improved and/or areas where he/she may need to focus more effort, etc

# 39 EPAP THINGS THAT ARE SUPPOSED TO HAPPEN BUT DIDN'T
## Dan Hamann
### February 5, 2020

32) Ask the employee how he/she feels the past six months or year went, and what he/she liked and didn't like (with the goal of finding out in what ways he/she felt supported, or might have wanted feedback, or other information that you can use in working with the employee in the future).

33) Ask whether the employee has adequate training and resources to carry out his/her work.

34) Ask the employee about his/her short and/or long-term career goals and offer suggestions or resources to assist him/her with these goals, as appropriate.

35) Clearly articulate your expectations for the next six months or during the coming year and ask if the employee understands them. Be prepared to clarify any areas of confusion.

36) Ensure that the employee has a chance to provide feedback and ask questions.

37) It's wonderful to hear about the good work that you're doing.

38) You get the "big picture" about how you're doing on the job.

39) This is your chance to have an open discussion with your supervisor about how you feel things are going.

**Dan Hamann**

10799 W Alameda Ave
Unit 150032
Lakewood CO 80215-7402
Cell:     720-428-9543
VoIP:    210-401-3583
email:   r6y2r7@gmail.com

December 21, 2019

CMRR 9407110898765050493244

Manager, Civil Rights Division
Bureau of Reclamation
6th & Kipling,
DFC 67/986 (84-59000)
Denver,, CO 80225

Dear Madam or Sir:

Attached please find Form DI-1892, Complaint of Discrimination.

Thank you.

Sincerely,

Dan Hamann

Dan Hamann

# U.S. DEPARTMENT OF THE INTERIOR
# CIVIL RIGHTS DIVISION
# COUNSELOR'S REPORT

a.   Rights and Responsibilities for Processing Complaints of Discrimination, signed by the aggrieved person, including the certificate of receipt, if mailed. 1, 2

b.   Copy of the Notice of Final Interview signed by the aggrieved person, including a copy of the certificate of receipt, if mailed.

c.   Any informal resolution agreement(s) presented to the aggrieved person for acceptance/rejection.

d.   Agreement to Extend the Counseling Period, if an extension was approved.

**BUREAU:** __Reclamation__ Office: __Denver Office__ Region:_ Denver __

**EEO COUNSELOR'S NAME:** Alberto Vasquez

**LOCATION:**_Denver Office__ **TELEPHONE:** 303-445-3623 __

**EEO COUNSELOR'S SIGNATURE AND DATE:** ALBERTO VASQUEZ  Digitally signed by ALBERTO VASQUEZ Date: 2020.01.27 11:07:22 -07'00'

**EQUAL OPPORTUNITY MANAGER'S/**
**SPECIALIST'S SIGNATURE AND DATE, IF APPLICABLE:** SHERILYN ROGERS O'GORMAN  Digitally signed by SHERILYN ROGERS O'GORMAN Date: 2020.01.28 08:57:39 -07'00'

---

1.  _____

1 The information contained in this report is subject to the non-disclosure provisions of the Privacy Act of 1974, Public Law 93-579, 5 U.S.C. 552a. A copy of this report should be given to the aggrieved person after he/she files a formal complaint.

2 Note: Attach all relevant documents and supplemental sheets, including, but not limited to the above (a-d).

1

# U.S. DEPARTMENT OF THE INTERIOR
# CIVIL RIGHTS DIVISION
# COUNSELOR'S REPORT

### DOI-BOR-19-0764

**PART A**

### *KEY FACTS*

**1. Aggrieved Person's Full Name:** Daniel Hamann
Home Address: 10799 W. Alameda Avenue, Unit 1500032, Lakewood, CO 80215
Home Telephone: N/A
Cell Number: N/A
E-Mail: dhamann@usbr.gov

**2. Place of Employment:** Technical Service Center, Denver Office, Bureau of Reclamation

Work Telephone: 303-445-2819

Position: Title, Series, Grade: Electrical Engineer, GS-0801-07

**3. Office/Location where Complaint arose, ff different from above:** N/A

**4. Anonymity Requested**: No

**5. Name of Aggrieved Person's Representative:** No representative during informal

**6. Aggrieved Person's Initial Contact with EEO Office (date):** 9/04/2019

**7. EEO Counselor's Initial Interview with Aggrieved Person (date):** 9/19/2019

**8. Regional Equal Opportunity Manager Advised of Pre-Complaint (date):** 9/04/2019

**9. Notice of Rights and Responsibilities for Processing Complaints of Discrimination issued:** 9/04/2019

**10. Notice of Final Interview (NOFI) Issued:** 12/03/2019

**11. Notice of Final Interview Received by Aggrieved Person:** 12/27/201

**12. Agreement to Postpone the Final Interview (Agreement)**

a. Date agreement was signed: N/A
b. Date counseling period was extended: 9/19/2019
c. Reason for extension: ADR/Mediation

2

# U.S. DEPARTMENT OF THE INTERIOR
## CIVIL RIGHTS DIVISION
## COUNSELOR'S REPORT

**PART B**

### *REASON(S) FOR SEEKING COUNSELING*

#### 1. Alleged Discriminatory Basis(es)

| | | | | | |
|---|---|---|---|---|---|
| | Race: | | Disability | | Retaliation/Reprisal Prior EEO Activity: |
| | Color: | | Physical: | | Sexual Orientation: |
| | Sex: | | Mental: | | Non-EEO: |
| | Religion: | | Status as Parent: | | Political Affiliation: |
| X | Age: 66 DOB: 4/█/1953 | | Genetics: | | Marital Status: |
| | Pregnancy: | | National origin: | | |

Regarding an employee's prior complaint activity, indicate whether an informal or formal complaint was pursued. If the employee filed a formal complaint(s), provide the Agency Complaint Number(s):

#### Issues raised:

| | | | | | |
|---|---|---|---|---|---|
| | Appointment/Hire | | Evaluation/Appraisal | | Reasonable Accommodation: |
| X | Assignment of Duties | | Examination/Test | | Reinstatement |
| | Awards | | Harassment | | Retirement |
| | Conversion to Full Time | | -Non-Sexual | | Termination |
| | Disciplinary Action | | -Sexual | X | Terms/Conditions of Employment |
| | -Demotion | | Medical Examination | | Time and Attendance |
| | -Reprimand | | Pay including Overtime | | Training |
| | -Suspension | | Promotion/Selection | X | Other (Specify) Not offered a rotational schedule |
| | -Removal | | Reassignment-Denied | | |
| | Duty Hours | | Reassignment-Directed | | |

Other matters not covered by Federal EEO complaint regulations under 29 C.F.R Part 1614:

2. **Alleged Discriminatory Matter(s)/Action(s):** *Daniel Hamann*, Electric Engineer, TSC, Denver Office, alleges he was discriminated against on September 13, 2019, based on Age (66) when supervisor Jay Bogess, Supervisory Engineer, did not select him for a rotational schedule. AP indicated all the other applicants that received rotational schedules were under the age of 40.

3

# U.S. DEPARTMENT OF THE INTERIOR
## CIVIL RIGHTS DIVISION
## COUNSELOR'S REPORT

**Date of 45th Day After Last Incident:** 10/28/2019

**3. If any incidents occurred more than 45 days before initial contact, record the individual's reason(s) why (s)he did not raise the matter earlier.**

**In what manner was the aggrieved person made aware of the discrimination complaint procedures, including the time limit in which to contact an EEO Counselor?** Postings of EEO Complaints process and point of contacts of EEO Counselors in work areas.

**4. Corrective Action Sought by and Discussed with Aggrieved Person:**

- AP would like to be promoted to GS-13 step 5
- AP would like to be put on a rotational schedule
- AP would like monetary compensation of $175,927

## PART C

### *FACT FINDING*

**Summary of Informal Inquiry**: AP alleges he was discriminated against based on age (66) when his supervisory Jay Bogess did not select him for a rotational schedule engineering position. AP stated that he has notice a pattern of younger employees under the age of 40 being selected for the rotational engineering positions.

**1.    Witness Interviews.**
Date of Interview: 9/19/2019
Name/Title/Grade: Daniel Hamann, Electric Engineer, GS-0801-07

Interview Summary: **Summary of My EEO Complaint on Age Discrimination**

AP indicated he was hired as a rotation engineer in the Fall of 2015 and was never given a rotation. Over the course of the last four years, AP stated that he has observed younger rotation engineers be given rotations. The rotation program provides a means for accelerated promotion. AP said he has experience in control systems going back nearly 30 years and was not offered an opportunity to apply for a new controls position in the group. Specifically, this position was for Supervisory Control and Data Acquisition (SCADA). AP mentioned he found out about it over time and saw no evidence that the person who was given that position had any experience in control systems.

Since AP has started, he was often given technician tasks such as doing CAD work. AP also mentioned he has observed younger coworkers were given more responsibility and not be required to do technician work.

4

# U.S. DEPARTMENT OF THE INTERIOR
## CIVIL RIGHTS DIVISION
## COUNSELOR'S REPORT

AP indicated years of having experience and background in project management and was never offered the opportunity to be a project manager. AP has seen younger engineers with far less experience than himself given that opportunity. AP mentioned that the younger engineers have been given more opportunities in terms of training and positions than himself. AP stated that he feels that he is being held to a higher standard. AP stated he feels he has been discounted on all his experience and knowledge.

<center>**********</center>

Date of Interview:
Name/Title/Grade:
Address:
Phone Number:

Interview Summary:

No interviews conducted with RMO.
AP elected ADR/ Mediation..

<center>**********</center>

## PART D
### *CONCLUSION OF EEO COUNSELING ACTIVITIES*

1. Was resolution sought through an Alternate Dispute Resolution (ADR) process or through the informal EEO counseling process? ADR

**ADR (date):** 11/20/2019

    a.  Was Aggrieved Person advised of the availability of Alternative Dispute Resolution (date): 9/19/19
    b.  Was the matter resolved: No
    c.  Resolution/Settlement Agreement Attached: N/A

## PART E
### *MISCELLANEOUS*

**1.  Has the aggrieved person filed a grievance related to the issue(s) identified under B.2? No**

    a.  If yes, identify venue pursued:
    b.  Negotiated Grievance Procedure:
    c.  Administrative Grievance Procedure:

<center>5</center>

## U.S. DEPARTMENT OF THE INTERIOR
## CIVIL RIGHTS DIVISION
## COUNSELOR'S REPORT

**2. Has the aggrieved person filed an appeal with the Merit Systems Protection Board about the issue(s) raised under B.2? No**

    a. If yes, indicate date filed: No

    b. Attach copy if applicable: N/A

## 3. Non-EEO Matter:

## 4. Management Notification/Contacts:

    a. Was management advised of the informal and formal EEO complaint process: 9/19/19

    b. Was management notified of the allegations? Yes

    c. Was management notified of the conclusion of EEO counseling? Yes

## Checklist

    a. Rights and Responsibilities for Processing Complaints of Discrimination, signed by aggrieved person or certificate of receipt (Date): 9/04/2019

    b. Rights and Responsibilities for Processing Complaints of Discrimination pursuant to 373 DM 7 signed by aggrieved person or certificate of receipt (date): 9/04/2019

    c. Notice of Final Interview and Right to File a Discrimination Complaint, signed by aggrieved person and certificate of receipt (date): 12/23/2019

    d. Agreement to Extend EEO Counseling (date): 9/19/2019

    e. Waiver of Anonymity Form (date): 9/04/2019

    f. Designation of Representative (date): 9/30/2019

    g. Statement of Claim (date): 9/04/2019

Rev. 10-Jan-20

# Exhibit 1

# WAIVER OF ANONYMITY

I understand I have the right to remain anonymous during the pre-complaint stage of the EEO complaint process and unless I give my permission the EEO Counselor must make every effort to protect my identity.*

By signing this form, I am voluntarily electing to waive my right to remain anonymous, and authorize the EEO Counselor to reveal my name to the alleged responsible official (RMO) and witnesses who must be interviewed during pre-complaint counseling.

_____, Aggrieved Party          9-4-19
                                                           Date

* Your right to anonymity will end if you make a threat (direct or perceived) of violence or suicide or disclose any type of harassment, including sexual harassment, or child abuse, or domestic violence. The Counselor is required to report such disclosures to the appropriate authorities.

_____, Aggrieved Party          9-4-19
                                                           Date

Rev. 4 September 2019

## AGREEMENT TO EXTEND
## THE COUNSELING PERIOD

I understand that the initial Equal Employment Opportunity (EEO) counseling period is **thirty (30) calendar days**. This agreement extends the counseling period for an additional period of no more than 60-calendar days. * If my claims have not been resolved before the conclusion of the extended counseling period, then the EEO Counselor will issue the Notice of the Final Interview and Right to File a Discrimination Complaint (NOFI). If I decide to file a formal complaint of discrimination, I will have **fifteen (15) calendar days** to file after I receive the NOFI.

If Alternative Dispute Resolution (ADR) is selected the regulations provide for a **ninety (90) day informal complaint period** where the parties agree to participate in the agency's ADR program. If the matter is not resolved through ADR within **90-days**, the agency must issue the notice of final interview pursuant to 29 C.F.R. 1614.105 (f):

_Durul A Sansom_      _9-4-17_

Aggrieved Person           Date

_____    _____

Signature of EEO Officer          Date

Alberto Vasquez             _9-4-19_

Signature of EEO Counselor     Date

*EEO Counseling may not be extended for more than **sixty 60 additional calendar days** beyond the initial **thirty 30-day period** as described in 29 C.F.R. Section 1614.105 (e).

For Agency Use:

Reasons for the extension:

Revised July 2018

to the MSPB;
- **Within 30 days of receiving the MSPB final decision** or action if you have not petitioned the EEOC for consideration;
- **After 120 days from the date of filing a formal complaint** if there is no final action or appeal to the MSPB;
- **After 120 days from the date of filing an appeal to the MSPB,** if the MSPB has not yet decided.

5.  There are additional stages in the mixed case complaint process that trigger a right to file a civil action. You will be informed of your rights should you enter those stages.

If you have any questions regarding the discrimination complaint process, please contact the EEO Counselor assigned to you or contact the EEO Manager at 702-293-8493.

I have received a copy of this Notice of Rights and Responsibilities in the Discrimination Complaint Process.

_____     9-4-17
Signature of Aggrieved Person       Date

Alberto Vasquez                     9-4-19
Signature of EEO Counselor          Date

Rev. 4 September 2019

7

# Exhibit 2



United States Department of the Interior

BUREAU OF RECLAMATION
PO Box 25007
Denver, CO 80225-0007

IN REPLY REFER TO

ADM 14.00
BOR-19-0764                    December 3, 2019

VIA ELECTRONIC MAIL

Mr. Daniel W. Hamann
10799 W Alameda Avenue Unit-1500032
Lakewood, CO 80215-7402
dhamann@usbr.gov

SUBJECT: **NOTICE OF FINAL INTERVIEW AND RIGHT TO FILE A
DISCRIMINATION COMPLAINT UNDER 29 C.F.R. PART 1614**

This memorandum is to inform you that the final counseling interview has been conducted in
connection with the matter(s) you presented on September 4, 2019. Because the matter(s) you
brought to our attention have not been resolved, you are now entitled to file a discrimination
complaint. If you wish to pursue this matter further and file a formal complaint of discrimination,
the complaint must be in writing, signed, and filed in person or by mail within fifteen **(15)
CALENDAR DAYS AFTER RECEIPT OF THIS NOTICE**.

The formal complaint must contain a signed statement that describes what incident(s) occurred,
when they occurred, and why you believe you were treated in a discriminatory manner. An incident
is a personnel matter or action such as a non-selection, suspension, denied training opportunity, etc.
The complaint must encompass only matters raised during counseling. In addition, it must contain
the telephone number and address where you may be contacted. The complaint must state whether
you filed a grievance under a negotiated grievance procedure or an appeal to the Merit Systems
Protection Board on the same matter(s).

For your convenience, the Department's Individual Complaint Form is attached. Your complaint
must be filed with:

Director, Office of Civil Rights
Department of the Interior
1849 C Street, N.W., MS-MIB4359
Washington, D.C. 20240

Or

Manager, Civil Rights Division
Bureau of Reclamation
6th & Kipling
DFC 67/986 (84-59000)
Denver, CO 80225

If you file your complaint with one of the listed officials outside the Bureau, please provide a copy of your complaint to the Bureau EEO Officer to ensure prompt processing of your complaint.

If you retain an attorney or any other person to represent you, you or your representative must immediately notify the Bureau EEO Officer or the Director, Office of Civil Rights (OS Complaints) in writing (Designation form attached). Unless you state otherwise, in writing, all official correspondence from the Agency will be sent to your representative with copies to you. If you designate an attorney to represent you, all documents and decisions will be sent to your attorney, not to you, and the time frames for receipt of materials by you will be computed from the time of receipt by your attorney.

Upon receipt of this Notice, please sign and date the original in the space provided below and return it to me. Please retain the enclosed duplicate copy for your files.


_____
Alberto Vasquez, EEO Counselor


I have read and understood all the above listed information.


_____          _____
Daniel W. Hamann, Complainant                                    Date


Attachments:  Form DI-1892
                        Designation of Representative Form

cc:

Notice of Final Interview/Right to File a Complaint
EEO Counselor's Record of Issuance

This notice was hand-delivered/mailed to the Aggrieved Person named above by the following method:

. Electronic Mail Delivered
Date Delivered ____December 3, 2019____

. Certified/Registered Mail

Certified Mail#: _____
Mail Date: _____
Date Delivered: _____

_____     _____
Counselor's Signature                Date

Rev. 11 April 2007

## otice of Final Interview

🔗 1 ⌄ ▭

ⓘ This message was sent with High importance.

ⓘ The message sender has requested a read receipt. To send a receipt, click here.

ⓘ The sender has requested a vote. Please choose an option

 **Hamann, Daniel (Dan) W**
Mon 12/23/2019 7:27 AM
Vasquez, Alberto; Rogers O'Gorman, Sherilyn M

🖕 ↩ ↩ → ⋯

 2019-12-16 email to Al (NOFI...
105 KB

Al – I did receive a hardcopy of the NOFI from you on 12/12/2019. I also acknowledged that in the attached email (PDF).

It appears that we may be having email problems with the transition to Outlook. Thus, I have requested a *Delivery Receipt* (from the server) and a *Read Receipt* (from you). Screenshot is below. (I guess I'll find out if that is working.) I've also sent this email with *high importance*.

FYI: I did send the formal complaint certified on 12/21/19 to both Denver and DC. If you would like a copy of that, I would be happy to email it. – Dan



. . .

 **Vasquez, Alberto**
Thu 12/19/2019 4:27 PM
Hamann, Daniel (Dan) W; Rogers O'Gorman, Sherilyn M

🖕 ↩ ↩ → ⋯

Good afternoon Mr. Hamann,

On 12/12/2019 for your 2nd mediation, you informed me you did not receive the email of the NOFI in which I emailed out on 12/03/2019 due to the migration into Office 365. I made hard copies and handed them to you on 12/12/2019. Can you please reply back to this email that you have acknowledged receiving those NOFI documents by hand.

I have to keep records that you did receive the NOFI documents by hard copies or email.

Thank you,
Al

 — BUREAU OF —
**RECLAMATION**

Alberto Vasquez

Exhibit B — page 15 of 26

000092

# Exhibit 3

# ALTERNATIVE DISPUTE RESOLUTION (ADR) & PRE-COMPLAINT PROCESSING ELECTION

The counseling and ADR processes have been explained to me, and I have made the following election of my options as described under 29 C.F.R. 1614.105(t):

☐ To proceed with EEO counseling for 30 days unless I agree to an extension.

☒ To participate in mediation, I understand that this decision extends the pre-complaint process for a total of 90 days. If a resolution is not reached, I will be referred to the EEO Counselor.

☐ Although ADR is offered, I choose not to select ADR.

Although optional, if ADR is not selected please state why you declined ADR:

_____

_____
, Aggrieved Person     9-19-19
                                               Date

Copy for:

Aggrieved Person
EEO Counselor
Mediator (if applicable)

# Exhibit 4

# WAIVER OF ANONYMITY

I understand I have the right to remain anonymous during the pre-complaint stage of the EEO complaint process and unless I give my permission the EEO Counselor must make every effort to protect my identity.*

By signing this form, I am voluntarily electing to waive my right to remain anonymous, and authorize the EEO Counselor to reveal my name to the alleged responsible official (RMO) and witnesses who must be interviewed during pre-complaint counseling.

_____, Aggrieved Party       9-4-19
                                                         Date

* Your right to anonymity will end if you make a threat (direct or perceived) of violence or suicide or disclose any type of harassment, including sexual harassment, or child abuse, or domestic violence. The Counselor is required to report such disclosures to the appropriate authorities.

_____, Aggrieved Party       9-4-19
                                                         Date

Rev. 4 September 2019

# Exhibit 5

# Age Discrimination Narrative

Dan Hamann

Thursday, September 19, 2019

The following issues and events establish a prima facie case for age discrimination by disparate treatment. Much of what has been discovered thus far has been by coincidence, offhand comments, etc.

## 1. Rotations given to younger coworkers

I was hired as a rotation engineer in the fall of 2015. I was never given a rotation. Over the course of the last four years, I have observed younger rotation engineers be given rotations. The rotation program provides a means for accelerated promotion.

## 2. New SCADA position given to younger coworker with less experience

Although I have experience in control systems going back nearly 30 years, I was not offered an opportunity to apply for a new controls position in our group. Specifically, this position was for Supervisory Control and Data Acquisition (SCADA). I'm not exactly sure when this occurred because I have not been able to find any notice. I found out about it over time and saw no evidence that the person who was given that position had any experience in control systems.

## 3. Assigned tasks below my skill level while more advanced tasks were given to younger coworkers

Since I started, and particularly earlier, I was often given technician tasks such as doing CAD work. Although I am quite capable of doing that kind of work, my skill level, knowledge and experience far exceeds that type of tasks. I have observed younger coworkers be given more responsibility and not be required to do technician work.

## 4. Project Management opportunities given to younger coworkers

Although I have background in project management that goes back decades, I have never been offered the opportunity to be a project manager. I have seen younger engineers with far less experience than myself given that opportunity. This has become apparent to me over the time that I have been at TSC.

## 5. Promotions of younger coworkers

I am aware of younger engineers without professional registration and far less experience be promoted whereas I have not been compensated or promoted at rate that is commensurate with my experience. The only verify this is through discovery.

## 6. More opportunities and training given to younger coworkers

Younger engineers have been given more opportunities in terms of training and positions than has been offered to me, even though my experience is greater.

More training has been provided to younger coworkers. For example, recently, I became of aware of electrical training, specific to our group, that was being given to younger co-workers in my group, at least one at my grade level, but was not offered to me. I became aware of this training by a printout I

notice (by chance) in our print room. I also noticed messages coworkers put on their whiteboards indicating they were in training. I put these two incidents together – the printout and the whiteboard messages - and realized that the younger coworkers were being offered electrical training, that had not been offered to me.

## 7. Recognition given to younger coworkers

When promulgating information about the skills of younger coworkers, my supervisor has explicitly excluded me, whereas younger employees have been given recognition.

## 8. Held to a higher standard than younger coworkers

Nearly all projects that I work on have very high demands and tight budgets, which require a very disciplined approach. Yet I observe younger engineers seemingly having more free time on their hands for casual conversation, laughing, giggling, et al.

## 9. Given more difficult assignments than younger coworkers

I have had difficult projects to work on that required a great deal of expertise, in terms of technical understanding, budget management, project management, et al. I don't see younger coworkers being held to this standard.

## 10. Shown a general disrespect not shown towards younger employees

There have been instances where I have been cut off when speaking, often during meetings, when basic decorum is ignored. If I mentioned an issue, that might be controversial, my supervisor would cut me off. It is my opinion that younger engineers would witness this, and feel entitled to do the same thing, perhaps to curry favor.

When I would point out errors and omissions in design work I was ignored, yet younger engineers who didn't even understand the concept were given more acknowledgement.

## 11. Statement on performance

To address the issue that my lack of recognition and commensurate pay might be related to performance, I offer the following. I have not had any negative information reported in any of my reviews. Rather, all my review ratings have been at 3 for all critical elements.

However, it is my opinion that TSC performance reviews are not based on measurable performance. In fact, upon close examination, it becomes apparent that the performance appraisals are bogus. Thus, it is my opinion that the TSC appraisal system is out of compliance, and hence, unreliable. More evidence can be provided on this.

## 12. Mentoring to younger coworkers at same grade level

Although this is not a matter of discrimination, I mention it here to show that my skills were in excess of younger coworkers, who are at the same grade level. Thus, it cannot be stated that my lack skills are contributing to my lack of compensation and recognition as compared to younger coworkers.

Since I started working at TSC, I have mentored younger engineers on many different aspects. They were promoted at the same rate I was. Thus, I was not given promotions even though my experience far exceeds theirs. In addition, I have had my professional registration for 22 years. Yet the engineers I have mentored are not registered.

I have mentored younger engineers, not only engineering and project management, but also in the use of software. This is mentioned here to verify that my lack of my promotion was not based on a lack of skills, that are sometimes correlated with older engineers. I am one of the most software-fluent members of my group.

## 13. General Statement on timeliness of reporting

Rather than a specific date of an incident I have observed a pattern of discrimination. As per this excerpt from 29 CFR § 1614.105 (b):

> The agency or the Commission shall extend the 45-day time limit ... when ... he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred ...

This exception applies to my circumstances. I was not aware of discriminatory incidents occurring until I begin to hear of them randomly, by coincidence, and in a cumulative manner. Thus, these incidents establish a pattern that has become apparent over an extended time.

# Exhibit 6



 **United States Department of the Interior**



BUREAU OF RECLAMATION
P.O. Box 25007
Denver, CO 80225-0007
**January 28, 2020**

IN REPLY REFER TO
84-11000
1.1.2

## CERTIFIED MAIL NO. 7019 1640 0001 0417 5075
## RETURN RECEIPT REQUESTED

Daniel Hamann
10799 W Alameda Ave
Unit 1500032
Lakewood, CO 80215

Subject: Report of Counseling in *Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior*, Agency Complaint No. DOI-BOR-19-0764.

Dear Daniel Hamann,

Enclosed please find the Report of Counseling in the above referenced case for your records. The Report of Counseling is a summary of the informal stage of the EEO complaint process. If you have any questions, you may contact Chris Romero, EEO Specialist at (303) 445-3604.

Sincerely,

Sherilyn Rogers O'Gorman
Complaints Manager

Enclosure: Report of Counseling





# United States Department of the Interior

BUREAU OF RECLAMATION
P.O. Box 25007
Denver, CO 80225-0007
June 5, 2020



IN REPLY REFER TO:

84-11000
1.1.2

**<u>VIA ELECTRONIC MAIL ONLY</u>**
**<u>READ RECEIPT REQUESTED</u>**

Daniel Hamann
10799 W. Alameda Ave.
Unit 1500032
Lakewood, CO 80215

Subject:  Amended Notice of Acceptance in *Daniel Hamann v. David Bernhardt, Secretary, U.S.*
*Department of the Interior*, Agency Complaint No. DOI-BOR-19-0764

Dear Daniel Hamann,

This letter is in reference to your complaint of discrimination filed against the U.S. Department of
the Interior (DOI), Bureau of Reclamation (Reclamation). You contacted the Reclamation Civil
Rights Division and requested equal employment opportunity (EEO) counseling on September 4,
2019. Your initial interview with the EEO Counselor was on September 19, 2019. EEO counseling
ended without resolution, and on December 3, 2019, the EEO Counselor issued the Notice of Right
to File a Discrimination Complaint which you received on December 12, 2019. You filed a formal
complaint on December 21, 2019, and Reclamation sent you an acknowledgement letter on January
3, 2020. On March 18, 2020, Reclamation sent you an acceptance letter. On May 22, 2020, you
submitted an amendment request. Your complaint has been assigned case number DOI-BOR-19-
0764. Please refer to this case number in any correspondence referencing this complaint.

We have reviewed the formal complaint, the EEO Counselor's Report, and your amendment
requests dated February 10, 2020, March 3, 2020, March 9, 2020, and May 22, 2020, and have
accepted the following claims for investigation (changes are in *italics*):

1.  Whether Daniel Hamann (Complainant) has been subjected to disparate treatment based on
    age (YOB: 1953) when on March 6, 2020, his supervisor did not assign him a project
    manager role;

2.  Whether Complainant has been subjected to a hostile work environment based on age
    (YOB: 1953) when, in addition to the foregoing *and following, he alleges that*:

    a.  Starting in September 2015, his supervisor has not given him rotation
        opportunities;

    b. Starting in September 2015, his supervisor has given him less training opportunities than his coworkers;

    c. Starting in September 2015, his supervisor has assigned him tasks below his skill level, held him to a higher standard than his coworkers and excluded him from recognition;

    d. Starting in September 2015 and continuing through July 22, 2019, his supervisor has not given him project manager opportunities;

    e. In 2016, his supervisor did not provide him the opportunity to apply for a Supervisory Control and Data Acquisition Position;

    f. In 2016, his supervisor delayed his career-ladder promotion to a GS-9, which further delayed future career-ladder and competitive promotions;

    g. In or around April 2018, his supervisor did not provide him the opportunity to apply for a Supervisory Control and Data Acquisition position;

    h. On October 31, 2018, and in fiscal year 2018, fiscal year 2017, and fiscal year 2016, his supervisor put him on performance standards that did not comply with the Department of the Interior's policies;

    i. On February 21, 2019, his supervisor failed to address his concern regarding the difficulty of his project assignments;

    j. On March 3, 2020, February 21, 2019, October 4, 2018, and February 14, 2018, he was cut off from speaking during meetings;

    k. *On an unspecified date, the Agency failed to allocate him enough budget to charge overtime;*

    l. *On unspecified dates, the Agency failed to assign him project manager authority on the LNFH Surface Intake and Fish Passage (F061A) project and the NIIP Pumping Plan G7.5LA HVAC Addition (UC684) project;*

3. *Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on unspecified dates between July 23, 2019 and May 22, 2020, the agency did not assign him project manager authority on the following projects:*

    a. *Cle Elum Gate Hoist Construction Support (CEGH1);*

    b. *Shasta Damn Crest Road Vehicle Barrier Construction Support (SDCRV)*

4. *Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on or about January 7, 2020, he was not selected for an Electrical Engineer position advertised under the following vacancy announcement numbers:*

      a. *BR-DO-2019-193 (DEU-BM)*

      b. *BR-DO-2019-194 (DEU-BM)*

      c. *BR-DO-2019-195 (MPP-BM)*

      d. *BR-DO-2019-196 (DEU-BM)*

*Please note, the project manager assignments for the Grand Valley Power Plant LOPP (FA224), Grand Valley LOPP Project Design Review (UC640), and Navajo Dam Valve & Gate Rehabilitation (UC553) mentioned in your May 22, 2020 amendment request fall under claim 2(d) based on the dates you provided.*

*Where a date was not provided for a project manager assignment in your May 22, 2020 amendment request, those events were included as part of your harassment claim under claim 2(l). If, during the course of the investigation, the evidence shows that the events in 2(l) occurred within the forty-five (45) day filing period discussed in 29 C.F.R. § 1614.105(a) or after you made initial contact with an EEO Counselor, they will be analyzed as acts of disparate treatment.*

*In your May 22, 2020 amendment request, you mentioned that you suspect another employee is committing time and attendance fraud. Please note, our office does not have the authority to review such claims. If you would like to file a claim related to this issue, please direct your concerns to either the Department of the Interior's Office of Inspector General (doioig.gov) or to the U.S. Office of Special Counsel (osc.gov).*

Please note, claims 2(e) through 2(h) will be investigated as part of your hostile work environment claim, rather than as discreate acts of disparate treatment, because they do not meet the forty-five (45) day filing timeframe set forth in 29 C.F.R. § 1614.105(a).

Some of the items in claim 2 may be considered discrete acts of disparate treatment if they occurred within the forty-five (45) day period discussed in 29 C.F.R. § 1614.105(a). If evidence shows that items in claim 2 took place within the forty-five (45) day period, those items will be considered as discrete acts of disparate treatment. If evidence shows that those items occurred outside the forty-five (45) day period, those items will only be considered as part of the hostile work environment claim and as background for the accepted claims.

On February 10, 2020, you submitted an amendment request alleging that you were subject to disparate treatment based on reprisal when you were denied official time to work on your EEO complaint. An employee is entitled to a reasonable amount of official time to work on their EEO complaint. 29 C.F.R. § 1614.605(b). The EEOC has consistently held that an allegation of denial of official time does not state a claim for discrimination, but rather a separately processable claim alleging violation of EEOC regulations. *Nobuko M. v. U.S. Postal Serv.*, EEOC Appeal No. 2019005966 (Jan. 31, 2020) ("… an allegation involving the denial of official time states a separately-processable claim alleging a violation of the Commission's regulations."); *Felton A. v. Dep't of Veterans Affairs*, EEOC Appeal No. 2019001767 (Apr. 30, 2019) ("an allegation pertaining to denial of official time states a separately processable claim alleging violation of the Commission regulations and does not require a determination of a discriminatory motive."); *Paul O'Donnell v. U.S. Postal Serv.*, EEOC Appeal No. 01A02094 (May 31, 2000) ("…

a claim of denial of official time is a violation of EEOC regulations and not a claim of discrimination…"). Thus, your allegations regarding denial of official time will be processed separately from the above claims. The following claims have been accepted regarding your denial of official time:

A. Whether Complainant suffered harm pursuant to 29 C.F.R. § 1614.605(b) when in September 2019 he was denied official time to work on his EEO complaint; and

B. Whether Complainant suffered harm pursuant to 29 C.F.R. § 1614.605(b) when on February 4, 2020, he was denied official time to work on his EEO complaint.

Please review the accepted claims carefully. If you are not satisfied with the accepted claims, as stated, you may, within five (5) calendar days of receipt of this letter, submit a statement to this office concerning our articulation of your claims. This office will review and evaluate any comments you provide. However, this office reserves the right to make the final decision regarding the framing of your claims and any unresolved differences will be recorded in the complaint file.

You will be contacted in the near future to coordinate the investigation of your complaint. It is expected that the investigation will be completed within one hundred and eighty (180) days from the date you submitted your most recent amendment request.

At the conclusion of the investigation, the Reclamation Civil Rights Division shall provide you with a copy of the Report of Investigation (ROI). In accordance with 29 C.F.R. § 1614.108(f), you will have thirty (30) days from the date you receive the ROI to request either a hearing and decision from an Equal Employment Opportunity Commission (EEOC) Administrative Judge or a Final Agency Decision (FAD) without a hearing from DOI's Office of Civil Rights Director.

If you elect to have a hearing before an EEOC Administrative Judge, your request for a hearing must be mailed directly to the EEOC at:

> Equal Employment Opportunity Commission
> Phoenix District Office
> 3300 North Central Avenue
> Suite 690
> Phoenix, AZ 85012

If you elect to have a hearing before an EEOC Administrative Judge, you are required to certify to the Administrative Judge that you sent a copy of the hearing request to the Reclamation EEO Office. Therefore, you must mail a copy of your hearing request to:

> Manager, Civil Rights Division
> Bureau of Reclamation
> P.O. Box 25007 (84-11000)
> Denver, CO 80225

The hearing is an adjudicatory proceeding that completes the process of developing a full and appropriate record. The Administrative Judge will assume full responsibility for the adjudication of the complaint, including overseeing the development of the record. See the EEOC's MD-110, Chapter 7 for more information about the hearing process.

Please note that you have the right to request a hearing before an EEOC Administrative Judge if more than 180 calendar days have passed since the filing of your formal complaint.

If you request a FAD without a hearing, within sixty (60) calendar days of DOI's receipt of your FAD request, DOI's Office of Civil Rights Director will issue you a FAD. If you fail to elect either a hearing before an EEOC Administrative Judge or a FAD within thirty (30) calendar days of your receipt of the ROI, you will automatically trigger the FAD process.

If you are not satisfied with the FAD, you may appeal the FAD to the EEOC within thirty (30) calendar days of your receipt of the FAD. Your appeal must be mailed to:

> Equal Employment Opportunity Commission
> Office of Federal Operations
> P.O. Box 77960
> Washington, D.C. 20013

Or you may fax your appeal to the EEOC at (202) 663-7022.

You have the right to file a civil action in an appropriate U.S. District Court after one hundred and eighty (180) calendar days from the date you filed your formal complaint if DOI has not issued a final decision and you have not filed an appeal.

You also have the right to file a civil action within ninety (90) calendar days of your receipt of the EEOC decision on your appeal or after one hundred and eighty (180) calendar days of filing an appeal if the EEOC has not issued a decision.

You will continue to receive specific information about your rights and responsibilities in the complaint process as your complaint progresses. If at any time you have questions regarding the process, you may contact Chris Romero, EEO Specialist at (303) 445-3604.

Sincerely,

**LARA GRILLOS**
Digitally signed by LARA GRILLOS
Date: 2020.06.05 10:40:13 -06'00'

Lara Grillos
Civil Rights Division Manager

Re: Amendment to Your Acceptance Letter for Your Formal EEO Complaint

Romero, Christopher R <cromero@usbr.gov>

Mon 6/8/2020 8:16 AM

**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>; Stephens, Michele L <mstephens@usbr.gov>; r6y2r7@gmail.com <r6y2r7@gmail.com>

Thank you Dan.

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

---

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Monday, June 8, 2020 7:53 AM
**To:** Stephens, Michele L <mstephens@usbr.gov>; r6y2r7@gmail.com <r6y2r7@gmail.com>
**Cc:** Romero, Christopher R <cromero@usbr.gov>
**Subject:** RE: Amendment to Your Acceptance Letter for Your Formal EEO Complaint

Ms. Stephens - The email I received (below) is addressed to Mr. Romero with the greeting "Dear Mr. Romero".

However, it was sent to me, i.e., the To field has my name and the CC field has Christopher Romero.

The attached letter is addressed to me so my assumption is that the email greeting line is intended to have my name.

Given that clarification, yes, I am able to open the attachment. – Dan Hamann

**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819
**Telework:** Everyday until restrictions are lifted. Office phone forwarded to home phone.
**Location:** Working from home until restrictions are lifted.

From: Stephens, Michele L <mstephens@usbr.gov>
Sent: Friday, June 5, 2020 11:28 AM
To: Hamann, Daniel (Dan) W <dhamann@usbr.gov>; r6y2r7@gmail.com
Cc: Romero, Christopher R <cromero@usbr.gov>
Subject: Amendment to Your Acceptance Letter for Your Formal EEO Complaint
Importance: High

Dear Mr. Romero,

Attached is your amended acceptance letter for your EEO complaint.  <u>Please reply to this email upon receipt to confirm you are able to open the attachment.</u>  At this time, the Civil Rights Division is only sending letters electronically, and you will thus not receive a paper copy of this document.  If you have any questions, please contact Chris Romero at 303-445-3604 or at <u>cromero@usbr.gov</u>.

Thank you,
Michele Stephens
Admin Support Assistant
Bureau of Reclamation

Civil Rights Division
P.O. Box 25007, 84-11000
Denver, CO 80225
303-445-3680

000110          Exhibit C - page 7 of 106



# United States Department of the Interior

BUREAU OF RECLAMATION
P.O. Box 25007
Denver, CO 80225-0007
**March 18, 2020**



IN REPLY REFER TO:

84-59000
1.1.2

## VIA ELECTRONIC MAIL ONLY
## READ RECEIPT REQUESTED

Daniel Hamann
10799 W. Alameda Ave
Unit 1500032
Lakewood, CO 80215

Subject: Notice of Acceptance in *Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior*, Agency Complaint No. DOI-BOR-19-0764

Dear Daniel Hamann,

This letter is in reference to your complaint of discrimination filed against the U.S. Department of the Interior (DOI), Bureau of Reclamation (Reclamation). You contacted the Reclamation Civil Rights Division and requested equal employment opportunity (EEO) counseling on September 4, 2019. Your initial interview with the EEO Counselor was on September 19, 2019. EEO counseling ended without resolution, and on December 3, 2019, the EEO Counselor issued the Notice of Right to File a Discrimination Complaint which you received on December 12, 2019. You filed a formal complaint on December 21, 2019, and Reclamation sent you an acknowledgement letter on January 3, 2020. Your complaint has been assigned case number DOI-BOR-19-0764. Please refer to this case number in any correspondence referencing this complaint.

We have reviewed the formal complaint, the EEO Counselor's Report, and your amendment requests dated February 10, 2020, March 3, 2020 and March 9, 2020, and have accepted the following claims for investigation:

1. Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on March 6, 2020, his supervisor did not assign him a project manager role;

2. Whether Complainant has been subjected to a hostile work environment based on age (YOB: 1953) when, in addition to the foregoing:

    a. Starting in September 2015, his supervisor has not given him rotation opportunities;

    b. Starting in September 2015, his supervisor has given him less training opportunities than his coworkers;

    c.  Starting in September 2015, his supervisor has assigned him tasks below his skill level, held him to a higher standard than his coworkers and excluded him from recognition;

    d.  Starting in September 2015 and continuing through July 22, 2019, his supervisor has not given him project manager opportunities;

    e.  In 2016, his supervisor did not provide him the opportunity to apply for a Supervisory Control and Data Acquisition Position;

    f.  In 2016, his supervisor delayed his career-ladder promotion to a GS-9, which further delayed future career-ladder and competitive promotions;

    g.  In or around April 2018, his supervisor did not provide him the opportunity to apply for a Supervisory Control and Data Acquisition position;

    h.  On October 31, 2018, and in fiscal year 2018, fiscal year 2017, and fiscal year 2016, his supervisor put him on performance standards that did not comply with the Department of the Interior's policies;

    i.  On February 21, 2019, his supervisor failed to address his concern regarding the difficulty of his project assignments; and

    j.  On March 3, 2020, February 21, 2019, October 4, 2018, and February 14, 2018, he was cut off from speaking during meetings;

Please note, claims 2(e) through 2(h) will be investigated as part of your hostile work environment claim rather than as discrete acts of disparate treatment because they do not meet the forty-five (45) day filing timeframe set forth in 29 C.F.R. § 1614.105(a).

Some of the items in claim 2 may be considered discrete acts of disparate treatment if they occurred within the forty-five (45) day period discussed in 29 C.F.R. § 1614.105(a). If evidence shows that items in claim 2 took place within the forty-five (45) day period, those items will be considered as discrete acts of disparate treatment. If evidence shows that those items occurred outside the forty-five (45) day period, those items will only be considered as part of the hostile work environment claim and as background for the accepted claims.

On February 10, 2020, you submitted an amendment request alleging that you were subject to disparate treatment based on reprisal when you were denied official time to work on your EEO complaint. An employee is entitled to a reasonable amount of official time to work on their EEO complaint. 29 C.F.R. § 1614.605(b). The EEOC has consistently held that an allegation of denial of official time does not state a claim for discrimination, but rather a separately processable claim alleging violation of EEOC regulations. *Nobuko M. v. U.S. Postal Serv.*, EEOC Appeal No. 2019005966 (Jan. 31, 2020) ("… an allegation involving the denial of official time states a separately-processable claim alleging a violation of the Commission's regulations."); *Felton A. v. Dep't of Veterans Affairs*, EEOC Appeal No. 2019001767 (Apr. 30, 2019) ("an allegation pertaining to denial of official time states a separately processable claim alleging violation of the Commission regulations and does not require a determination of a discriminatory

motive."); *Paul O'Donnell v. U.S. Postal Serv.*, EEOC Appeal No. 01A02094 (May 31, 2000) ("… a claim of denial of official time is a violation of EEOC regulations and not a claim of discrimination…"). Thus, your allegations regarding denial of official time will be processed separately from the above claims. The following claims have been accepted regarding your denial of official time:

A. Whether Complainant suffered harm pursuant to 29 C.F.R. § 1614.605(b) when in September 2019 he was denied official time to work on his EEO complaint; and

B. Whether Complainant suffered harm pursuant to 29 C.F.R. § 1614.605(b) when on February 4, 2020, he was denied official time to work on his EEO complaint.

Please review the accepted claims carefully. If you are not satisfied with the accepted claims, as stated, you may, within five (5) calendar days of receipt of this letter, submit a statement to this office concerning our articulation of your claims. This office will review and evaluate any comments you provide. However, this office reserves the right to make the final decision regarding the framing of your claims and any unresolved differences will be recorded in the complaint file.

You will be contacted in the near future to coordinate the investigation of your complaint. It is expected that the investigation will be completed within one hundred and eighty (180) days from the date you submitted your most recent amendment request.

At the conclusion of the investigation, the Reclamation Civil Rights Division shall provide you with a copy of the Report of Investigation (ROI). In accordance with 29 C.F.R. § 1614.108(f), you will have thirty (30) days from the date you receive the ROI to request either a hearing and decision from an Equal Employment Opportunity Commission (EEOC) Administrative Judge or a Final Agency Decision (FAD) without a hearing from DOI's Office of Civil Rights Director.

If you elect to have a hearing before an EEOC Administrative Judge, your request for a hearing must be mailed directly to the EEOC at:

> Equal Employment Opportunity Commission
> Phoenix District Office
> 3300 North Central Avenue
> Suite 690
> Phoenix, AZ 85012

If you elect to have a hearing before an EEOC Administrative Judge, you are required to certify to the Administrative Judge that you sent a copy of the hearing request to the Reclamation EEO Office. Therefore, you must mail a copy of your hearing request to:

> Manager, Civil Rights Division
> Bureau of Reclamation
> P.O. Box 25007 (84-11000)
> Denver, CO 80225

The hearing is an adjudicatory proceeding that completes the process of developing a full and appropriate record. The Administrative Judge will assume full responsibility for the adjudication of the complaint, including overseeing the development of the record. See the EEOC's MD-110, Chapter 7 for more information about the hearing process.

Please note that you have the right to request a hearing before an EEOC Administrative Judge if more than 180 calendar days have passed since the filing of your formal complaint.

If you request a FAD without a hearing, within sixty (60) calendar days of DOI's receipt of your FAD request, DOI's Office of Civil Rights Director will issue you a FAD. If you fail to elect either a hearing before an EEOC Administrative Judge or a FAD within thirty (30) calendar days of your receipt of the ROI, you will automatically trigger the FAD process.

If you are not satisfied with the FAD, you may appeal the FAD to the EEOC within thirty (30) calendar days of your receipt of the FAD. Your appeal must be mailed to:

> Equal Employment Opportunity Commission
> Office of Federal Operations
> P.O. Box 77960
> Washington, D.C. 20013

Or you may fax your appeal to the EEOC at (202) 663-7022.

You have the right to file a civil action in an appropriate U.S. District Court after one hundred and eighty (180) calendar days from the date you filed your formal complaint if DOI has not issued a final decision and you have not filed an appeal.

You also have the right to file a civil action within ninety (90) calendar days of your receipt of the EEOC decision on your appeal or after one hundred and eighty (180) calendar days of filing an appeal if the EEOC has not issued a decision.

You will continue to receive specific information about your rights and responsibilities in the complaint process as your complaint progresses. If at any time you have questions regarding the process, you may contact Chris Romero, EEO Specialist at (303) 445-3604.

> Sincerely,
>
> **LARA GRILLOS**
> Digitally signed by LARA GRILLOS
> Date: 2020.03.18 11:45:15 -06'00'
>
> Lara Grillos
> Civil Rights Division Manager

 **United States Department of the Interior**



IN REPLY REFER TO

84-11000
1.1.2

## <u>CERTIFIED MAIL NO. - 7019 1640 0001 0417 5082</u>

Daniel Hamann
10799 W Alameda Ave
Unit 1500032
Lakewood, CO 80215

Subject: Notice of Proposed Dismissal in *Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior*, Agency Complaint No. DOI-BOR-19-0764

Dear Daniel Hamann,

This letter is in reference to your complaint of discrimination filed against the U.S. Department of the Interior (DOI), Bureau of Reclamation (Reclamation). You contacted the Reclamation Civil Rights Division (CRD) and requested Equal Employment Opportunity (EEO) counseling on September 4, 2019. Your initial interview with the EEO Counselor was on September 19, 20-19. EEO counseling ended without resolution. On December 3, 2019 the EEO Counselor issued the Notice of Right to File a Discrimination Complaint, which you received on December 12, 2019. You filed a formal complaint on December 21, 2019 and Reclamation sent you an acknowledgement letter on January 3, 2020. Reclamation sent you a clarification request on January 13, 2020 and asked you to respond by January 17, 2020. Reclamation agreed to extend the deadline to respond to the request for information until January 24, 2020. On January 27, 2020 you indicated that you would try to respond to the request for information "next week."

Pursuant to Equal Employment Opportunity Commission (EEOC) regulation 29 C.F.R. § 1614.107(a)(7), an agency must dismiss a complaint when it provides a complainant with a written request to provide information and the complainant fails to respond to or address the request within fifteen (15) days of receipt of the request. This letter, including the attached Appendix A, constitutes the written request for information described in 29 C.F.R. § 1614.107(a)(7). You have fifteen (15) days to address the questions contained in Appendix A. Please be advised, failure to address these issues may result in a dismissal of your complaint. If you do not pick up this letter from the post office within five days of attempted delivery, our office will presume you received the letter on the fifth day.

For questions pertaining to dates, you may provide an approximation of the date the discriminatory conduct took place or the date you became aware that the conduct was discriminatory. This includes providing the month and year or a range of dates for the conduct.

Page 2

Please note that a busy work schedule does not excuse you from responding to this request for information in a timely fashion. Pursuant to EEOC regulation 29 C.F.R. § 1614.605 and EEOC Management Directive 110, Chapter 6, Part VII(c) you are entitled to a reasonable amount of official time to prepare a response to this request for information. You may direct your request for official time to your supervisor, who may contact this office with any questions.

Also, you raised a concern about the deadline we initially gave you to respond to our information request and noted that the process is 180 days. You are correct that the process should be completed in 180 days. However, the 180 days is the amount of time given for the entire process. The EEO process has many stages, including issuing an accept/dismiss letter, contracting your accepted claims for investigation, the investigation itself, reviewing the Report of Investigation for legal sufficiency, and conducting any supplemental investigations as necessary. Our office has 60 days to issue a letter informing you if your claims are accepted or dismissed and cannot do so until we have the requested information. The 60-day deadline is approaching quickly for your case.

If you have any further questions or concerns, please contact Chris Romero, at (303) 445-3604.

Sincerely,

Sherilyn Rogers O'Gorman
Complaints Manager

Enclosure: Appendix A

## APPENDIX A

### Request for Information

Item 1 "Rotations given to younger coworkers"
- Approximately what date(s) were you been denied rotations?
- Which individual(s) do you hold responsible for denying you rotations?

Item 2 "New SCADA position given to younger coworker with less experience"
- Approximately what date did you become aware that the Supervisory Control and Data Acquisition (SCADA) position had been filled?
- Which individual(s) do you hold responsible for this alleged discrimination?

Item 3 "Assigned tasks below my skill level while more advanced tasks were given to younger coworkers"
- Have you raised the issue of your assigned tasks with management?
- Which individual(s) did you raise these concerns with?
- How did the individual(s) respond?
- Approximately what date(s) did you raise these concerns?

Item 4 "Project Management opportunities given to younger coworkers"
- Have you raised the issue of becoming project manager with management?
- Which individual(s) did you raise these concerns with?
- How did the individual(s) respond?
- Approximately what date(s) did you raise these concerns?

Item 5 "Promotions of younger coworkers"
- When you identify lack of promotion, are you referencing career ladder promotion, within grade increases, or competitive promotions? Please identify each time you feel you were denied a promotion based on discrimination.
- For each time you were denied a promotion based on discrimination:
  - Which individual(s) do you hold responsible for not promoting you?
  - On what dates were you denied promotion?

Item 6 "More opportunities and training given to younger coworkers"
- Approximately what date(s) did you become aware that you were not offered training?
- Which individual(s) do you hold responsible for not offering you training?

Item 7 "Recognition given to younger coworkers"
- On what approximate date(s) has your supervisor excluded you from recognition?

Item 8 "Held to a higher standard than younger coworkers"
- Have you raised the issue of project standards with management?
- Which individual(s) did you raise these concerns with?
- How did the individual(s) respond?
- Approximately what date(s) did you raise these concerns?

1

Page 2

Item 9 "Given more difficult assignments than younger coworkers"
- Have you raised the issue of project difficulty with management?
- Which individual(s) did you raise these concerns with?
- How did the individual(s) respond?
- Approximately what date(s) did you raise these concerns?

Item 10 "Shown a general disrespect not shown towards younger employees"
- Approximately what date(s) has your supervisor cut you off when speaking or ignored when you pointed out errors and/or omissions?

Item 11 "Statement on performance"
- Approximately what date(s) have you been given non-compliant performance evaluations?
- Which individual(s) gave you the non-compliant performance evaluations?

Item 12 "Mentoring to younger coworkers at same grade level"
- No questions

Item 13 "General Statement on timeliness of reporting"
- No questions

Notice of Proposed Dismissal Ltr



| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee<br>B. Received by *(Printed Name)*   C. Date of Delivery<br>Daniel W Hamann   JAN 28 |
| 1. Article Addressed to:<br><br>Daniel W. Hamann<br>10799 W. Alameda Ave<br>Unit 150032<br>Lakewood, CO 80215-7402<br><br>‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖<br>9590 9402 5421 9189 7105 80 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
| 2. Article Number *(Transfer from service label)*<br>7019 1640 0001 0417 5082 | 3. Service Type<br>☒ Adult Signature<br>☐ Adult Signature Restricted Delivery<br>☒ Certified Mail®<br>☐ Certified Mail Restricted Delivery<br>☐ Collect on Delivery<br>☐ Collect on Delivery Restricted Delivery<br>☐ Insured Mail<br>☐ Insured Mail Restricted Delivery (over $500) | ☐ Priority Mail Express®<br>☐ Registered Mail™<br>☐ Registered Mail Restricted Delivery<br>☒ Return Receipt for Merchandise<br>☐ Signature Confirmation™<br>☐ Signature Confirmation Restricted Delivery |

PS Form 3811, July 2015 PSN 7530-02-000-9053      Domestic Return Receipt

 United States Department of the Interior

BUREAU OF RECLAMATION
P.O. Box 25007
Denver, CO 80225-0007
**January 2, 2020**



IN REPLY REFER TO

84-59000
1.1.02

<u>CERTIFIED MAIL – 7018 0040 0000 3107 7008</u>
<u>RETURN RECEIPT REQUESTED</u>

Daniel W. Hamann
10799 WS. Alameda Ave
Unit 150032
Lakewood, CO 80215-7402

Subject: Acknowledgement of Complaint of Discrimination, *Daniel W. Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior*, Agency Complaint No. DOI BOR-19-0764

Dear Mr. Hamann,

This letter acknowledges receipt of a formal complaint of discrimination filed by you on December 21, 2019 alleging the Bureau of Reclamation/ Department of the Interior (DOI) discriminated against you.

After a review of the EEO counselor's report and your formal complaint, we will determine whether to accept your complaint, or whether to dismiss your complaint based upon regulations issued by the Equal Employment Opportunity Commission (EEOC) in Chapter 29, Part 1614 of the Code of Federal Regulations.

If we accept your complaint, DOI is required to conduct a complete and impartial investigation of your complaint within 180 calendar days of the filing date cited above unless the parties agree in writing to extend that period for up to an additional 90 calendar days. If you file an amendment to your complaint, DOI is required to complete its investigation within the earliest of 180 calendar days after the last amendment to the complaint or within 360 days after the filing of the original complaint. If you wish to amend your complaint to include an incident that occurred after you were issued your Notice of Right to File, please email Sherilyn Rogers O'Gorman, Formal Complaints Manager, at srogersogorman@usbr.gov and include the date of the incident, the individual(s) involved, and a very brief description of the incident.

If you file two or more complaints, we may consolidate your complaints for joint processing. Subsequently, DOI would be required to complete its investigation of the consolidated complaints within the earliest of 180 calendar days after the filing of the last complaint or within 360 days after the filing of the original complaint.

You have a right to request a hearing before an EEOC Administrative Judge after 180 calendar days from the filing of your original formal complaint or after the completion of the investigation, whichever comes first, except where your complaint involves a matter appealable to the Merit Systems Protection Board.

You must send your request for a hearing directly to the following EEOC field office:

> Equal Employment Opportunity Commission
> Denver Field Office
> 303 E. 17th Avenue
> Suite 410
> Denver, CO 80203

You must certify to EEOC that you have mailed a copy of your request for a hearing to the office listed below:

> United States Department of the Interior
> Director, Office of Civil Rights
> Office of Civil Rights
> 1849 C Street, NW MS-4309, MIB
> Washington, DC 20240

You have the rights to be accompanied, represented, and advised by a representative of your choice. If you obtain a representative, please provide us immediate written notice of your designation of representative. Your representative may act on your behalf in all matters pertaining to your complaint. However, in the event that you withdraw your complaint or reach a settlement agreement, you must personally sign a notice of withdrawal or settlement agreement.

Further information regarding your rights under 29 CFR § 1614 will be provided to you in the decision letter this office will issue. If you have any questions, please contact Sherilyn Rogers O'Gorman in the Civil Rights Division at (303) 445-3686.

Sincerely,

Lara Grillos
Civil Rights Division Manager

59000

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Daniel W. Hamann
10799 WS. Alameda Ave
Unit 150032
Lakewood, CO 80215-7402



9590 9402 3787 8032 5133 46

2. Article Number (Transfer from service label)

7018 0040 0000 3107 7008

PS Form 3811, July 2015 PSN 7530-02-000-9053

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _Kreller_          ☐ Agent
                     ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
                                 1/7/2020

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

JAN - 7 2020

USPS

3. Service Type
☑ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

000122          Exhibit C - page 19 of 106

Fw: questions re: your complaint

## Rogers O'Gorman, Sherilyn M <srogersogorman@usbr.gov>

Wed 1/22/2020 10:35 AM

**To:** Romero, Christopher R <cromero@usbr.gov>

Sherilyn Rogers O'Gorman
Complaints Manager
USBR Civil Rights Division
303-445-3686

**From:** Rogers O'Gorman, Sherilyn M <srogersogorman@usbr.gov>
**Sent:** Tuesday, January 14, 2020 11:20 AM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Subject:** Re: questions re: your complaint

That will work.

Sherilyn Rogers O'Gorman
Complaints Manager
USBR Civil Rights Division
303-445-3686

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Tuesday, January 14, 2020 11:18 AM
**To:** Rogers O'Gorman, Sherilyn M <srogersogorman@usbr.gov>
**Subject:** RE: questions re: your complaint

Probably the following Friday (1/24).  However, I'm in the process of contacting my supervisor about resolving some confusion on the current deliverables, along with requesting additional resources to deal with workload.  Once I resolve those issues, I'll have a better idea.

From: Rogers O'Gorman, Sherilyn M <srogersogorman@usbr.gov>
Sent: Tuesday, January 14, 2020 11:15 AM
To: Hamann, Daniel (Dan) W <dhamann@usbr.gov>
Subject: Re: questions re: your complaint

When do you think you could get it to me?

Sherilyn Rogers O'Gorman
Complaints Manager
USBR Civil Rights Division
303-445-3686

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Tuesday, January 14, 2020 11:13 AM
**To:** Rogers O'Gorman, Sherilyn M <srogersogorman@usbr.gov>
**Subject:** RE: questions re: your complaint          000123          Exhibit C - page 20 of 106

I was out on sick leave yesterday and am getting caught up. I have a couple deadlines for deliverables – one for Friday and one for Tuesday. There is a possibility I won't be able to respond by January 17th.

From: Rogers O'Gorman, Sherilyn M <srogersogorman@usbr.gov>
Sent: Monday, January 13, 2020 10:16 AM
To: Hamann, Daniel (Dan) W <dhamann@usbr.gov>
Subject: questions re: your complaint

The Civil Rights Division has received your formal complaint. I have a few questions that will enable me to properly define your claims. Please return this information as soon as possible, but no later than January 17, 2020.

When you are alleging a pattern of discrimination (hostile work environment discrimination), at least one incident must have occurred during the 45 days proceeding counseling for the claim to be timely. However, these claims, if timely, will be concurrently be evaluated as separate discrete incidents of discrimination. As such, we need you to provide the approximate dates for each claim to determine timeliness of the hostile work environment claim and to determine the timeliness of the claims as discrete incidents.

1. On what approximate date did you discover that the SCADA position had been filled?
2. Have you raised the issue of your assignments with management and, if so, when? what was the response?
3. Have you requested to be a project manager and been denied? If so, when?
4. When you identify the issue of lack of promotion, are you referencing career ladder promotion, within grade increases or competitive promotions? On what date(s) were you denied promotion?
5. On what date(s) were you not recognized by your supervisor?
6. On what date(s) have you been given more demanding work than younger employees or what date(s) have you observed them receiving less demanding work?
7. On what date(s) have you been cut off when speaking or been ignored when pointing out errors and/or omissions.

Please feel free to contact me if you have any questions.

Sherilyn Rogers O'Gorman
Complaints Manager
USBR Civil Rights Division
303-445-3686

https://outlook.office365.com/mail/inbox/id/AAQkADJiZjM2ZTA4LWY2NjMtNDNjZS1hZjMwLWRlZDI0Y2M2MmNjMgAQAFpXugXrTHBAI%2BhIUsGj3k...

Re: Case Reassignment and Request for Clarification - Hamann DOI-BOR-19-0764

Romero, Christopher R <cromero@usbr.gov>
Thu 1/23/2020 1:52 PM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>

Mr. Hamann,

When do you expect to have this information ready? Your case cannot move forward until I receive the requested information.

Further, based on your response in red, please provide an approximate date that you became aware that you felt you were being discriminated against. Please also describe the circumstances that made you aware of the alleged discrimination.

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

---

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Thursday, January 23, 2020 1:30 PM
**To:** Romero, Christopher R <cromero@usbr.gov>
**Cc:** Rogers O'Gorman, Sherilyn M <srogersogorman@usbr.gov>
**Subject:** RE: Case Reassignment and Request for Clarification - Hamann DOI-BOR-19-0764

Chris - I am working around several deadlines right now that are part of my normal workload, so I am providing info as I get time. My first response addresses the 45 day issue and is in red below. - Dan

**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819 (forwarded)
**Telework:** Tue & Thu 6-2:30 | Call 2819 | Schedule may vary | See Calendar
**Location:** Denver Fed Cntr, Bldg 67, 11th Floor, Cube 11-110W 25007 Denver CO 80225.

From: Romero, Christopher R <cromero@usbr.gov>
Sent: Wednesday, January 22, 2020 10:58 AM
To: Hamann, Daniel (Dan) W <dhamann@usbr.gov>
Cc: Rogers O'Gorman, Sherilyn M <srogersogorman@usbr.gov>
Subject: Case Reassignment and Request for Clarification - Hamann DOI-BOR-19-0764

Good Morning Mr. Hamann,

My name is Chris Romero, and I am an EEO Specialist with Reclamation's Civil Rights Division. Your EEO case has recently been reassigned to me for processing. Please direct all future correspondence to me at this email address or the phone number in my signature. Sherilyn informed me you were going to respond to her request for clarification by this Friday, January 24th. Below are the questions again for your convenience. Please let me know if you need anything further from me. I look forward to hearing from you soon.

When you are alleging a pattern of discrimination (hostile work environment discrimination), at least one incident must have occurred during the 45 days proceeding counseling for the claim

to be timely. However, these claims, if timely, will be concurrently be evaluated as separate discrete incidents of discrimination. As such, we need you to provide the approximate dates for each claim to determine timeliness of the hostile work environment claim and to determine the timeliness of the claims as discrete incidents.

RESPONSE:

As per § 1614.105 (a) (2): *The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.*

I was not aware that the discrimination was occurring while it was occurring. I received information later that demonstrated discrimination. I only came across the information by coincidence, such as in passing conversations, or observations. For example, when younger coworkers received a rotation, which I did not receive, I only became aware of it after the fact. I was not informed prior to their rotations, or during their rotations. Additionally, the pattern of discrimination became apparent over time, and it was only after the pattern had been established, that I become aware of it. Thus, it was beyond my control to know that discrimination was occurring. This issue was raised by me, during the pre-complaint state, and no exception was taken during that time. .

1. On what approximate date did you discover that the SCADA position had been filled?
2. Have you raised the issue of your assignments with management and, if so, when? what was the response?
3. Have you requested to be a project manager and been denied? If so, when?
4. When you identify the issue of lack of promotion, are you referencing career ladder promotion, within grade increases or competitive promotions? On what date(s) were you denied promotion?
5. On what date(s) were you not recognized by your supervisor?
6. On what date(s) have you been given more demanding work than younger employees or what date(s) have you observed them receiving less demanding work?
7. On what date(s) have you been cut off when speaking or been ignored when pointing out errors and/or omissions.

Best,

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

## RE: Case Reassignment and Request for Clarification - Hamann DOI-BOR-19-0764

### Hamann, Daniel (Dan) W <dhamann@usbr.gov>

Mon 1/27/2020 1:21 PM

**To:** Romero, Christopher R <cromero@usbr.gov>
**Cc:** Rogers O'Gorman, Sherilyn M <srogersogorman@usbr.gov>

Chris -- I don't know when the info will be available. However, I am concerned about the short duration of time that was originally allowed. It's my understand that entire process through investigation is **180 days** as per this link. The (7) questions pertain to events that occurred over four years. In many instances, it did not become apparent that there had been a transgression until after becoming aware of a pattern. Some transgressions were not known to be such until the law and policy had been researched. Thus, it was not as though an event occurred, and the time and date of that event were recorded.

With respect to the (7) questions that were transmitted, I'm not entirely sure what you are referencing, in all the questions. During the pre-complaint stage, I submitted a narrative with (13) instances of events that established a pattern of age discrimination. If you are referencing that list, please tell me which of the (13) items you are referencing in each of the (7) questions. For example, in number (5), it is not clear what you are referencing when you ask " ... on what date(s) were you not recognized by your supervisor?"

Many events that occurred, occurred as patterns, and not simply as singular, discrete dates. They may have occurred over a period of time. Thus, it is not always possible to provide a date or dates, but it may be possible to provide a window of time, and a specific project. Where possible, dates, or windows of time can be provided, but in all cases, it may require searching a variety of sources, such as a time and attendance system. It may require issuing a FOIA request, discussions with co-workers, et al.

The policy on official time does not allow me to work on this effort full time. The expectation is that I continue to work on my normal tasks for which I am employed. This will have the effect of extending the total duration of the task.

Please bear in mind that I first approached the idea of seeking remedies for age discrimination by filing a complaint in district court, and not by pursuing a discrimination complaint with DOI. To that end, the supreme court has issued rules for establishing a basis for disparate treatment, whereby the plaintiff must first show prima facie evidence to which the defendant can respond. Thus, if and when this case were to be processed in the courts, I would expect a protracted period of discovery, due to the nature of the inquiries, some of which might take considerable time due to FOIA processing, research, etc. In a court case, some discovery may require depositions, etc. If the DOI complaint process is not as rigorous, or contravenes the law, it raises questions as to whether the complaint process can effectively address EEO complaints.

Finally, I am concerned that there may be a desire, on the part of DOI EEO, to push this case ahead, in an effort to get closure, suggesting there is a quota of cases that are expected to be to closed out. Obviously, this would not be working in the best interest of the aggrieved. -- Dan

From: Romero, Christopher R <cromero@usbr.gov>
Sent: Thursday, January 23, 2020 1:52 PM
To: Hamann, Daniel (Dan) W <dhamann@usbr.gov>
Subject: Re: Case Reassignment and Request for Clarification - Hamann DOI-BOR-19-0764

**Mr. Hamann,**

When do you expect to have this information ready? Your case cannot move forward until I receive the requested information.

Further, based on your response in red, please provide an approximate date that you became aware that you felt you were being discriminated against. Please also describe the circumstances that made you aware of the alleged discrimination.

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

---

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Thursday, January 23, 2020 1:30 PM
**To:** Romero, Christopher R <cromero@usbr.gov>
**Cc:** Rogers O'Gorman, Sherilyn M <srogersogorman@usbr.gov>
**Subject:** RE: Case Reassignment and Request for Clarification - Hamann DOI-BOR-19-0764

Chris - I am working around several deadlines right now that are part of my normal workload, so I am providing info as I get time. My first response addresses the 45 day issue and is in red below. – Dan

**Dan Hamann, PE | Electrical Engineer | Reclamation | 303-445-2819 (forwarded)**
**Telework:** Tue & Thu 6-2:30 | Call 2819 | Schedule may vary | See Calendar
**Location:** Denver Fed Cntr, Bldg 67, 11th Floor, Cube 11-110W 25007 Denver CO 80225.

**From:** Romero, Christopher R <cromero@usbr.gov>
**Sent:** Wednesday, January 22, 2020 10:58 AM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Cc:** Rogers O'Gorman, Sherilyn M <srogersogorman@usbr.gov>
**Subject:** Case Reassignment and Request for Clarification - Hamann DOI-BOR-19-0764

Good Morning Mr. Hamann,

My name is Chris Romero, and I am an EEO Specialist with Reclamation's Civil Rights Division. Your EEO case has recently been reassigned to me for processing. Please direct all future correspondence to me at this email address or the phone number in my signature. Sherilyn informed me you were going to respond to her request for clarification by this Friday, January 24th. Below are the questions again for your convenience. Please let me know if you need anything further from me. I look forward to hearing from you soon.

When you are alleging a pattern of discrimination (hostile work environment discrimination), at least one incident must have occurred during the 45 days proceeding counseling for the claim to be timely. However, these claims, if timely, will be concurrently be evaluated as separate discrete incidents of discrimination. As such, we need you to provide the approximate dates for each claim to determine timeliness of the hostile work environment claim and to determine the timeliness of the claims as discrete incidents.

---

RESPONSE:

As per § 1614.105 (a) (2): *The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.*

I was not aware that the discrimination was occurring while it was occurring. I received information later that demonstrated discrimination. I only came across the information by coincidence, such as in passing conversations, or observations. For example, when younger coworkers received a rotation, which I did not receive, I only became aware of it after the fact. I was not informed prior to their rotations, or during their rotations. Additionally, the pattern of discrimination became apparent over time, and it was only after the pattern had been established, that I become aware of it. Thus, it was beyond my control to know that discrimination was occurring. This issue was raised by me, during the pre-complaint state, and no exception was taken during that time. .

1. On what approximate date did you discover that the SCADA position had been filled?
2. Have you raised the issue of your assignments with management and, if so, when? what was the response?
3. Have you requested to be a project manager and been denied? If so, when?
4. When you identify the issue of lack of promotion, are you referencing career ladder promotion, within grade increases or competitive promotions? On what date(s) were you denied promotion?
5. On what date(s) were you not recognized by your supervisor?
6. On what date(s) have you been given more demanding work than younger employees or what date(s) have you observed them receiving less demanding work?
7. On what date(s) have you been cut off when speaking or been ignored when pointing out errors and/or omissions.

Best,

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

**Romero, Christopher R**

| | |
|---|---|
| **From:** | Romero, Christopher R |
| **Sent:** | Tuesday, January 28, 2020 2:42 PM |
| **To:** | Hamann, Daniel (Dan) W |
| **Cc:** | Rogers O'Gorman, Sherilyn M |
| **Subject:** | Re: 15-Day Letter and Request for Information - Hamann DOI-BOR-19-0764 |

Mr. Hamann,

Please note, because you have indicated that you received and read the letter attached to my email, I will treat today, 1/28/2020, as the day you received the 15-day letter.

Your complaint has not been dismissed yet. You still have the opportunity to answer the questions in our request for information contained in the 15-day letter. Please note, you were given from January 13th to January 24th to respond to our request for information. Now, you are being given an additional 15 days from today to respond. The information I've requested is necessary for me to be able to frame your claims. At this point, you have not addressed the questions provided to you in the 15-day letter. If you do not answer the questions contained in the 15-day letter to the best of your ability within 15 calendar days, your claim will be subject to dismissal pursuant to 29 C.F.R. § 1614.107(a)(7).

Pursuant to EEOC Management Directive 110, Chapter 5, Part IV.D, if you are dissatisfied with the processing of your complaint, you may raise your concerns directly with an EEOC Administrative Judge should you eventually request a hearing, or with the EEOC Office of Federal Operations on appeal should you not request a hearing. Please visit the EEOC's website for more information.

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

---

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Tuesday, January 28, 2020 1:47 PM
**To:** Romero, Christopher R <cromero@usbr.gov>
**Cc:** Rogers O'Gorman, Sherilyn M <srogersogorman@usbr.gov>
**Subject:** RE: 15-Day Letter and Request for Information - Hamann DOI-BOR-19-0764

Unfortunately, the reason for dismissal is erroneous, and reflects a misunderstanding of the law.

§ 1614.107 (a) (7) does NOT require that I provide information requested. It only requires that I RESPOND and ADDRESS within 15 days, which I did.

Furthermore, the initial requirement to respond in (7) days, does NOT constitute a *reasonable amount of time*. If FOIA requests must be submitted to gather information, they alone can take considerable time.

Unless I hear otherwise my next choice may be to refer this matter to the Department of Justice. It now appears that this complaint was mishandled by your office.

**From:** Romero, Christopher R <cromero@usbr.gov>
**Sent:** Tuesday, January 28, 2020 1:20 PM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Subject:** 15-Day Letter and Request for Information - Hamann DOI-BOR-19-0764

Mr. Hamann,

The attached letter was sent to you by certified mail today. Please note, the request for information contained in this letter has additional questions that must be answered for me to assess your claims. Please let me know if you have any questions.

Sincerely,

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

## FW: another incident

**Hamann, Daniel (Dan) W** <dhamann@usbr.gov>

Tue 3/3/2020 1:58 PM

**To:** Romero, Christopher R <cromero@usbr.gov>
**Cc:** Rogers O'Gorman, Sherilyn M <srogersogorman@usbr.gov>

Chris - I should mention that the Lisa Orgren, mentioned below, is *considerably younger than I am.* This is a continuation of a pattern I had mentioned in my complaint. - Dan

**From:** Hamann, Daniel (Dan) W
**Sent:** Tuesday, March 3, 2020 1:56 PM
**To:** Boggess, Jay S <JBoggess@usbr.gov>
**Cc:** Pierce, Rona L <rpierce@usbr.gov>; McStraw, William D <WMcstraw@usbr.gov>
**Subject:** another incident

I am reporting another incident that occurred this morning similar to previous incidents. I was at a meeting where I was repeatedly cut-off. The meeting involved Lisa Orgren and Alfred Bernstein.

At the onset of the of the meeting, I asked Lisa if she wanted to take the lead on the meeting, and I said I would defer to her to do so, even though I called the meeting. Lisa has been the team lead on the project. Lisa then deferred to me to run the meeting.

There were approximately (5) pressing items that needed to be addressed. On at least three occasions I would start a sentence, to either respond or broach an issue, and part way through Lisa would simply start talking over me. It came across as an effort to deliberately suppress me, or that which I had to say.

Finally, I had had enough, and I very forcefully stated that she had interrupted me on three occasions. I then reminded them that we have to maintain a decorum at these meetings, where we allow others to talk. Lisa got up, picked up her paperwork, indicating she was leaving the meeting, but I think Al convinced her to stay.

Unfortunately, thereafter Lisa would raise her hand, while I was talking, as if to mock me, when she wanted to speak. I found all of this to be demeaning.

However, I certainly have no trouble holding my own when folks try to suppress me. It's not going to happen. Unfortunately, this a long standing pattern at the TSC.

I will be forwarding this email to the EEO Office.

**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819 (forwarded)
**Telework:** Tue & Thu 6-2:30 | Call 2819 | Schedule may vary | See Calendar
**Location:**    Denver Fed Cntr, Bldg 67, 11th Floor, Cube 11-110W 25007 Denver CO 80225.

## Re: another incident

**Romero, Christopher R** <cromero@usbr.gov>
Mon 3/9/2020 3:44 PM
To: Hamann, Daniel (Dan) W <dhamann@usbr.gov>

Thank you Dan.

As for your timeline question, please see 29 C.F.R. § 1614.106(e)(2) or MD-110 Chapter 5, Section V.B
"Investigations Must Be Timely Completed."

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

---

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Monday, March 9, 2020 3:34 PM
**To:** Romero, Christopher R <cromero@usbr.gov>
**Subject:** RE: another incident

1. Friday, 3/6/20.
2. Jay Boggess

Chris I wasn't aware that each amendment extends the investigation timeline by 180 days. Having reviewed <u>Management Directive 110</u> and <u>29 CFR § 1614.106 - Individual complaints</u> I didn't where that is stated. Can you direct me to where that language is? – Dan

**From:** Romero, Christopher R <cromero@usbr.gov>
**Sent:** Monday, March 9, 2020 8:27 AM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Subject:** Re: another incident

Good Morning Dan,

The investigation is still in the early stages due to your recent amendments. Because item 4 below is a new allegation, I will process it as an amendment request. Thus, the investigation timeline will be extended by 180 days from today. You can hold on to your supporting evidence for now. Please provide the evidence to the EEO investigator at the time of your interview. For now, please respond to the below questions:

1. What date was the individual made a project manager?
2. Who decided to make the individual a project manager?

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

---

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Monday, March 9, 2020 8:10 AM
**To:** Romero, Christopher R <cromero@usbr.gov>
**Subject:** RE: another incident

Chris – Several issues/questions:

1. What is the status of the investigation?

2. What is the last day of the 180 day window for DOI to complete the investigation?

3. I will be updating the remedies amount since the previous calculations were based on a settlement by the end of 2019. Hope to get that to you in a day or so.

4. Another age discrimination event occurred last week. A younger engineer was placed into a project manager position, although another general manager recommended I be assigned as project manager for the project. If you need supporting evidence, such as emails, or if you need more information, on this event, please advise.

5. Screenshot from supervisor's training spreadsheet (below) verifies that I am still the only engineer in my group that is not a project manager.

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 | **TSC PM Credentialing** | | | | | | | | | | |
| 5 | | | | | | | | | | | |
| 6 | **Full Name** | **Cost Center** | **ESAM Role** | **TSC 101** | **PM101** | **PM201** | **PM Forum** | **Advanced PM Training** | | | **Credenti aling Level** | **Previously Took PM Fundamentals** |
| 7 | | | | | | | | **PSMJ** | **FDP** | **EV** | | |
| 8 | ATWATER, PHILIP L | RR85843000 | PROJECT_MGR | | | | | | | | | |
| 9 | BOGGESS, JAY S. | RR85843000 | PROJECT_MGR | | | | 6 | | | | | |
| 10 | BUCHHOLZ, LUKE B | RR85843000 | PROJECT_MGR | | | | 3 | | | | | |
| 11 | CHENG, ROLAND NMN | RR85843000 | PROJECT_MGR | x | x | x | 7 | | | | | |
| 12 | GENTRY, LISA K | RR85843000 | PROJECT_MGR | | | | 1 | | | | | |
| 13 | GRIESS, TODD W. | RR85843000 | PROJECT_MGR | | | | 1 | | | x | | |
| 14 | HAMANN, DANIEL W | RR85843000 | READ_ONLY | | | | 2 | | | | | |
| 15 | HOCHHALTER, DIANNE D | RR85843000 | READ_ONLY | | | | | | | | | |
| 16 | MILLAN-AGUILAR, VICTOR ARTURO | RR85843000 | PROJECT_MGR | thinks so | | | 3 | | | | | |
| 17 | PATTERSON, JAMES B. | RR85843000 | PROJECT_MGR | | x | | 4 | | | | | |
| 18 | SANTIAGO-ALVARADO, ADRIAN A | RR85843000 | PROJECT_MGR | | | | | | | | | |
| 19 | VU, HENRY NMN | RR85843000 | PROJECT_MGR | | | | | | | | | |
| 20 | WIAFE, SAMPSON DARFOUR | RR85843000 | PROJECT_MGR | | | | | | | | | |
| 21 | YOKOYAMA, KENNETH ALAN | RR85843000 | PROJECT_MGR | x | | | | | | | | |
| 22 | | | | | | | | | | | | |

Thanks. – Dan Hamann

---

From: Romero, Christopher R <cromero@usbr.gov>
Sent: Tuesday, March 3, 2020 2:28 PM
To: Hamann, Daniel (Dan) W <dhamann@usbr.gov>
Subject: Re: another incident

Thank you Dan. I will process this as an amendment request.

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

---

From: Hamann, Daniel (Dan) W <dhamann@usbr.gov>
Sent: Tuesday, March 3, 2020 1:58 PM
To: Romero, Christopher R <cromero@usbr.gov>
Cc: Rogers O'Gorman, Sherilyn M <srogersogorman@usbr.gov>
Subject: FW: another incident

Chris - I should mention that the Lisa Orgren, mentioned below, is considerably younger than I am. This is a continuation of a pattern I had mentioned in my complaint. - Dan

**From:** Hamann, Daniel (Dan) W
**Sent:** Tuesday, March 3, 2020 1:56 PM
**To:** Boggess, Jay S <JBoggess@usbr.gov>
**Cc:** Pierce, Rona L <rpierce@usbr.gov>; McStraw, William D <WMcstraw@usbr.gov>
**Subject:** another incident

I am reporting another incident that occurred this morning similar to previous incidents. I was at a meeting where I was repeatedly cut-off. The meeting involved Lisa Orgren and Alfred Bernstein.

At the onset of the of the meeting, I asked Lisa if she wanted to take the lead on the meeting, and I said I would defer to her to do so, even though I called the meeting. Lisa has been the team lead on the project. Lisa then deferred to me to run the meeting.

There were approximately (5) pressing items that needed to be addressed. On at least three occasions I would start a sentence, to either respond or broach an issue, and part way through Lisa would simply start talking over me. It came across as an effort to deliberately suppress me, or that which I had to say.

Finally, I had had enough, and I very forcefully stated that she had interrupted me on three occasions. I then reminded them that we have to maintain a decorum at these meetings, where we allow others to talk. Lisa got up, picked up her paperwork, indicating she was leaving the meeting, but I think Al convinced her to stay.

Unfortunately, thereafter Lisa would raise her hand, while I was talking, as if to mock me, when she wanted to speak. I found all of this to be demeaning.

However, I certainly have no trouble holding my own when folks try to suppress me. It's not going to happen. Unfortunately, this a long standing pattern at the TSC.

I will be forwarding this email to the EEO Office.


**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819 (forwarded)
**Telework:**  Tue & Thu 6-2:30  | Call 2819 | Schedule may vary | See Calendar
**Location:**   Denver Fed Cntr, Bldg 67, 11th Floor, Cube 11-110W 25007 Denver CO 80225.

Re: Notice of Acceptance - Hamann DOI-BOR-19-0764

Romero, Christopher R <cromero@usbr.gov>
Wed 3/18/2020 12:42 PM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Cc:** r6y2r7@gmail.com <r6y2r7@gmail.com>

Thank you Dan.

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

_____

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Wednesday, March 18, 2020 12:41 PM
**To:** Romero, Christopher R <cromero@usbr.gov>
**Cc:** r6y2r7@gmail.com <r6y2r7@gmail.com>
**Subject:** RE: Notice of Acceptance - Hamann DOI-BOR-19-0764

Chris – I am open able to open the attachment. -- Dan

From: Romero, Christopher R <cromero@usbr.gov>
Sent: Wednesday, March 18, 2020 12:28 PM
To: Hamann, Daniel (Dan) W <dhamann@usbr.gov>
Cc: r6y2r7@gmail.com
Subject: Notice of Acceptance - Hamann DOI-BOR-19-0764
Importance: High

Dear Daniel Hamann,

Attached is a letter regarding your EEO complaint.  Please reply to this email upon receipt to confirm you
are able to open the attachment.  At this time, the Civil Rights Division is only sending letters
electronically, and you will not receive a paper copy of this document.  If you have any questions, please
contact feel free to contact me by replying to this email or at the phone number in my signature.

Best,

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

Re: Notice of Acceptance - Hamann DOI-BOR-19-0764

## Romero, Christopher R <cromero@usbr.gov>
Fri 3/20/2020 8:55 AM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>

Dan,

Your concerns will be noted in the record. At this time, Reclamation will not adjust the framing of your claims based on the information you've provided.

The 45 day filing period for personnel actions starts on the date that the action became effective. All of the claims dismissed for untimely counselor contact were personnel actions that became effective well outside of the 45 day time frame. Even if you were not aware of the actions on the day that they became effective, you provided evidence and statements in your response to our request for clarification that shows you were aware of these actions well outside of the 45 day time frame. Thus, 29 C.F.R. § 1614.105(b) does not apply to your circumstances.

If you are dissatisfied with the processing of your complaint, please bring your concerns to the attention of the Administrative Judge either at hearing or on appeal.

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

---

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Friday, March 20, 2020 8:14 AM
**To:** Romero, Christopher R <cromero@usbr.gov>
**Subject:** RE: Notice of Acceptance - Hamann DOI-BOR-19-0764

Chris - Please consider this my response to the *accepted claims* as stated in 3/18 acceptance letter.

Perhaps the most disturbing element of the letter is the statement:

> *because they do not meet the forty-five (45) day filing timeframe set forth in 29 C.F.R. § 1614.105(a).*

This issue was addressed very early on and seems have been ignored. 29 C.F.R. § 1614.105(b) makes a clear and compelling allowance for extending the 45-day time limit when the aggrieved could not have known that the discriminatory matter or personnel action occurred. In my case:

1. As incidents occurred, singular incidents in and of themselves would not reveal discrimination, whereas patterns of incidents provide a clearer and more compelling pattern of discrimination.

2. In some incidents, I simply didn't know that discrimination occurred, because I would find out about the incident randomly. I might hear or see something long after any incident.

This failure to acknowledge this allowance provided by the C.F.R. is deeply concerning. As mentioned, this matter was broached during the pre-complaint process. It hass never been rejected, or disputed, as being a valid basis of my complaint. I have no recollection that was even addressed. Thus, it appears it has simply been ignored. For this reason, I question whether it is even possible to have a fair investigation when this very important allowance in the C.F.R appears to be have been ignored.

Additionally, by excluding the allowance provided by the C.F.R., the fundamental basis of many of claims have been disallowed and erroneously attributed to a *hostile work environment,* rather than acts of *disparate treatment.* Excluding acts that occur outside of the (45) day period changes the fabric of the complaint. Please provide an explanation as to why the allowance provided under 29 C.F.R. § 1614.105(b) has not been applied.

Additionally, my **remedies have been updated** to reflect a loss of wage differential (30%) thorough 2020 to **$233,135.** The previous calculations were based on future pay through 2019. If you need my spreadsheet calculations for this, please advise. Thanks. -- Dan

**From:** Romero, Christopher R <cromero@usbr.gov>
**Sent:** Thursday, March 19, 2020 8:11 AM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Subject:** Re: Notice of Acceptance - Hamann DOI-BOR-19-0764

Yes, that's correct.

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Thursday, March 19, 2020 7:54 AM
**To:** Romero, Christopher R <cromero@usbr.gov>
**Subject:** RE: Notice of Acceptance - Hamann DOI-BOR-19-0764

Chris -- As per the following excerpt from *19-0764 - ACC LTR Signed*:

> *Please review the accepted claims carefully. If you are not satisfied with the accepted claims, as stated, you may, within five (5) calendar days of receipt of this letter,*

My understanding is that a response would need be returned by 3/23. Is that correct? I did see a few issues I need to examine more closely. Thanks. -- Dan

**From:** Romero, Christopher R <cromero@usbr.gov>
**Sent:** Wednesday, March 18, 2020 12:42 PM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Cc:** r6y2r7@gmail.com
**Subject:** Re: Notice of Acceptance - Hamann DOI-BOR-19-0764

Thank you Dan.

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Wednesday, March 18, 2020 12:41 PM
**To:** Romero, Christopher R <cromero@usbr.gov>

**Cc:** r6y2r7@gmail.com <r6y2r7@gmail.com>
**Subject:** RE: Notice of Acceptance - Hamann DOI-BOR-19-0764

Chris – I am open able to open the attachment. – Dan

**From:** Romero, Christopher R <cromero@usbr.gov>
**Sent:** Wednesday, March 18, 2020 12:28 PM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Cc:** r6y2r7@gmail.com
**Subject:** Notice of Acceptance - Hamann DOI-BOR-19-0764
**Importance:** High

Dear Daniel Hamann,

Attached is a letter regarding your EEO complaint. Please reply to this email upon receipt to confirm you are able to open the attachment. At this time, the Civil Rights Division is only sending letters electronically, and you will not receive a paper copy of this document. If you have any questions, please contact feel free to contact me by replying to this email or at the phone number in my signature.

Best,

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

## RE: Notice of Acceptance - Hamann DOI-BOR-19-0764

**Romero, Christopher R** <cromero@usbr.gov>

Mon 3/23/2020 8:22 AM

**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>

Good Morning Dan,

I've noted your request for additional remedies in the record. Per my last email, 105(b) does not apply to your situation because you have previously indicated that you were aware of the personnel actions well outside of the 45-day filing timeframe.

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Monday, March 23, 2020 6:26 AM
**To:** Romero, Christopher R <cromero@usbr.gov>
**Subject:** RE: Notice of Acceptance - Hamann DOI-BOR-19-0764

Chis – One question and one clarification:

1. Have the updated monetary remedies been acknowledged to reflect the extension of the claim into calendar 2020?

2. Quoting *29 C.F.R. § 1614.105(b)* with emphasis on applicable language in the code:
   *(2) The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.*

Thanks. – Dan

**From:** Romero, Christopher R <cromero@usbr.gov>
**Sent:** Friday, March 20, 2020 8:55 AM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Subject:** Re: Notice of Acceptance - Hamann DOI-BOR-19-0764

Dan,

Your concerns will be noted in the record. At this time, Reclamation will not adjust the framing of your claims based on the information you've provided.

The 45 day filing period for personnel actions starts on the date that the action became effective. All of the claims dismissed for untimely counselor contact were personnel actions that became effective well outside of the 45 day time frame. Even if you were not aware of the actions on the day that they became effective, you provided evidence and statements in your response to our request for clarification that shows you were aware of these actions well outside of the 45 day time frame. Thus, 29 C.F.R. § 1614.105(b) does not apply to your circumstances.

If you are dissatisfied with the processing of your complaint, please bring your concerns to the attention of the Administrative Judge either at hearing or on appeal.

**Chris Romero**
*EEO Specialist*

U.S. Bureau of Reclamation
(303) 445-3604

---

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Friday, March 20, 2020 8:14 AM
**To:** Romero, Christopher R <cromero@usbr.gov>
**Subject:** RE: Notice of Acceptance - Hamann DOI-BOR-19-0764

Chris - Please consider this my response to the *accepted claims* as stated in 3/18 acceptance letter.

Perhaps the most disturbing element of the letter is the statement:

> *because they do not meet the forty-five (45) day filing timeframe set forth in 29 C.F.R. § 1614.105(a).*

This issue was addressed very early on and seems have been ignored. 29 C.F.R. § 1614.105(b) makes a clear and compelling allowance for extending the 45-day time limit when the aggrieved could not have known that the discriminatory matter or personnel action occurred. In my case:

1. As incidents occurred, singular incidents in and of themselves would not reveal discrimination, whereas patterns of incidents provide a clearer and more compelling pattern of discrimination.

2. In some incidents, I simply didn't know that discrimination occurred, because I would find out about the incident randomly. I might hear or see something long after any incident.

This failure to acknowledge this allowance provided by the C.F.R. is deeply concerning. As mentioned, this matter was broached during the pre-complaint process. It hass never been rejected, or disputed, as being a valid basis of my complaint. I have no recollection that was even addressed. Thus, it appears it has simply been ignored. For this reason, I question whether it is even possible to have a fair investigation when this very important allowance in the C.F.R appears to be have been ignored.

Additionally, by excluding the allowance provided by the C.F.R., the fundamental basis of many of claims have been disallowed and erroneously attributed to a *hostile work environment,* rather than acts of *disparate treatment.* Excluding acts that occur outside of the (45) day period changes the fabric of the complaint. Please provide an explanation as to why the allowance provided under 29 C.F.R. § 1614.105(b) has not been applied.

Additionally, my **remedies have been updated** to reflect a loss of wage differential (30%) thorough 2020 to **$233,135.** The previous calculations were based on future pay through 2019. If you need my spreadsheet calculations for this, please advise. Thanks. – Dan

---

**From:** Romero, Christopher R <cromero@usbr.gov>
**Sent:** Thursday, March 19, 2020 8:11 AM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Subject:** Re: Notice of Acceptance - Hamann DOI-BOR-19-0764

Yes, that's correct.

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

---

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Thursday, March 19, 2020 7:54 AM
**To:** Romero, Christopher R <cromero@usbr.gov>
**Subject:** RE: Notice of Acceptance - Hamann DOI-BOR-19-0764

000141

Exhibit C - page 38 of 106

Chris – As per the following excerpt from *19-0764 - ACC LTR Signed:*

*Please review the accepted claims carefully. If you are not satisfied with the accepted claims, as stated, you may, within five (5) calendar days of receipt of this letter,*

My understanding is that a response would need be returned by 3/23. Is that correct? I did see a few issues I need to examine more closely. Thanks. – Dan

---

**From:** Romero, Christopher R <cromero@usbr.gov>
**Sent:** Wednesday, March 18, 2020 12:42 PM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Cc:** r6y2r7@gmail.com
**Subject:** Re: Notice of Acceptance - Hamann DOI-BOR-19-0764

Thank you Dan.

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

---

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Wednesday, March 18, 2020 12:41 PM
**To:** Romero, Christopher R <cromero@usbr.gov>
**Cc:** r6y2r7@gmail.com <r6y2r7@gmail.com>
**Subject:** RE: Notice of Acceptance - Hamann DOI-BOR-19-0764

Chris – I am open able to open the attachment. – Dan

**From:** Romero, Christopher R <cromero@usbr.gov>
**Sent:** Wednesday, March 18, 2020 12:28 PM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Cc:** r6y2r7@gmail.com
**Subject:** Notice of Acceptance - Hamann DOI-BOR-19-0764
**Importance:** High

Dear Daniel Hamann,

Attached is a letter regarding your EEO complaint.  Please reply to this email upon receipt to confirm you are able to open the attachment.  At this time, the Civil Rights Division is only sending letters electronically, and you will not receive a paper copy of this document.  If you have any questions, please contact feel free to contact me by replying to this email or at the phone number in my signature.

Best,

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

## Re: Notice of Acceptance - Hamann DOI-BOR-19-0764

**Romero, Christopher R** <cromero@usbr.gov>

Thu 3/26/2020 8:46 AM

**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Cc:** Rogers O'Gorman, Sherilyn M <srogersogorman@usbr.gov>

Dan,

Our position has not changed. I will note your concerns in the record. If you are dissatisfied with the processing of your EEO complaint, you may raise your concerns with an EEOC Administrative Judge at hearing or on appeal. Please see <u>MD-110, Chapter 5, Section IV.D</u> for more information.

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

---

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Thursday, March 26, 2020 6:27 AM
**To:** Romero, Christopher R <cromero@usbr.gov>
**Cc:** Rogers O'Gorman, Sherilyn M <srogersogorman@usbr.gov>
**Subject:** RE: Notice of Acceptance - Hamann DOI-BOR-19-0764

Chris - I have given this several days to consider to ensure I am not missing something. And to that end, I am now certain that your position (red-bold emphasis below) has no basis in fact. In fact, I am certain this position is grossly in error. Here is why:

> 105(b) does, in fact, apply. 105(b) allows the agency to extend the 45 day limit. It is true that I became aware of the personnel actions well outside of the 45-day filing timeframe. But that is precisely what 105(b) permits.

Quite frankly, I'm appalled that your statement is the official position of the agency. If this remains the position, I will have no choice but to contact the Department of Justice. - Dan

---

**From:** Romero, Christopher R <cromero@usbr.gov>
**Sent:** Monday, March 23, 2020 8:22 AM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Subject:** RE: Notice of Acceptance - Hamann DOI-BOR-19-0764

Good Morning Dan,

I've noted your request for additional remedies in the record. Per my last email, **105(b) does not apply to your situation because you have previously indicated that you were aware of the personnel actions well outside of the 45-day filing timeframe**.

**From:** Hamann, Daniel (Dan) W <<u>dhamann@usbr.gov</u>>
**Sent:** Monday, March 23, 2020 6:26 AM
**To:** Romero, Christopher R <<u>cromero@usbr.gov</u>>
**Subject:** RE: Notice of Acceptance - Hamann DOI-BO 000143 4                       Exhibit C - page 40 of 106

Chis -- One question and one clarification:

1. Have the updated monetary remedies been acknowledged to reflect the extension of the claim into calendar 2020?

2. Quoting *29 C.F.R. § 1614.105(b)* with emphasis on applicable language in the code:
   *(2) The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.*

Thanks. -- Dan

**From:** Romero, Christopher R <cromero@usbr.gov>
**Sent:** Friday, March 20, 2020 8:55 AM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Subject:** Re: Notice of Acceptance - Hamann DOI-BOR-19-0764

Dan,

Your concerns will be noted in the record. At this time, Reclamation will not adjust the framing of your claims based on the information you've provided.

The 45 day filing period for personnel actions starts on the date that the action became effective. All of the claims dismissed for untimely counselor contact were personnel actions that became effective well outside of the 45 day time frame. Even if you were not aware of the actions on the day that they became effective, you provided evidence and statements in your response to our request for clarification that shows you were aware of these actions well outside of the 45 day time frame. Thus, 29 C.F.R. § 1614.105(b) does not apply to your circumstances.

If you are dissatisfied with the processing of your complaint, please bring your concerns to the attention of the Administrative Judge either at hearing or on appeal.

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

---

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Friday, March 20, 2020 8:14 AM
**To:** Romero, Christopher R <cromero@usbr.gov>
**Subject:** RE: Notice of Acceptance - Hamann DOI-BOR-19-0764

Chris - Please consider this my response to the *accepted claims* as stated in 3/18 acceptance letter.

Perhaps the most disturbing element of the letter is the statement:

   *because they do not meet the forty-five (45) day filing timeframe set forth in 29 C.F.R. § 1614.105(a).*

This issue was addressed very early on and seems have been ignored. 29 C.F.R. § 1614.105(b) makes a clear and compelling allowance for extending the 45-day time limit when the aggrieved could not have known that the discriminatory matter or personnel action occurred. In my case:

000144                    Exhibit C - page 41 of 106

1. As incidents occurred, singular incidents in and of themselves would not reveal discrimination, whereas patterns of incidents provide a clearer and more compelling pattern of discrimination.

2. In some incidents, I simply didn't know that discrimination occurred, because I would find out about the incident randomly. I might hear or see something long after any incident.

This failure to acknowledge this allowance provided by the C.F.R. is deeply concerning. As mentioned, this matter was broached during the pre-complaint process. It hass never been rejected, or disputed, as being a valid basis of my complaint. I have no recollection that was even addressed. Thus, it appears it has simply been ignored. For this reason, I question whether it is even possible to have a fair investigation when this very important allowance in the C.F.R appears to be have been ignored.

Additionally, by excluding the allowance provided by the C.F.R., the fundamental basis of many of claims have been disallowed and erroneously attributed to a *hostile work environment,* rather than acts of *disparate treatment.* Excluding acts that occur outside of the (45) day period changes the fabric of the complaint. Please provide an explanation as to why the allowance provided under 29 C.F.R. § 1614.105(b) has not been applied.

Additionally, my **remedies have been updated** to reflect a loss of wage differential (30%) thorough 2020 to **$233,135.** The previous calculations were based on future pay through 2019. If you need my spreadsheet calculations for this, please advise. Thanks. – Dan

---

**From:** Romero, Christopher R <<u>cromero@usbr.gov</u>>
**Sent:** Thursday, March 19, 2020 8:11 AM
**To:** Hamann, Daniel (Dan) W <<u>dhamann@usbr.gov</u>>
**Subject:** Re: Notice of Acceptance - Hamann DOI-BOR-19-0764

Yes, that's correct.

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

---

**From:** Hamann, Daniel (Dan) W <<u>dhamann@usbr.gov</u>>
**Sent:** Thursday, March 19, 2020 7:54 AM
**To:** Romero, Christopher R <<u>cromero@usbr.gov</u>>
**Subject:** RE: Notice of Acceptance - Hamann DOI-BOR-19-0764

Chris – As per the following excerpt from *19-0764 - ACC LTR Signed*:

> *Please review the accepted claims carefully. If you are not satisfied with the accepted claims, as stated, you may, within five (5) calendar days of receipt of this letter,*

My understanding is that a response would need be returned by 3/23. Is that correct? I did see a few issues I need to examine more closely. Thanks. – Dan

---

**From:** Romero, Christopher R <<u>cromero@usbr.gov</u>>
**Sent:** Wednesday, March 18, 2020 12:42 PM
**To:** Hamann, Daniel (Dan) W <<u>dhamann@usbr.gov</u>>
**Cc:** <u>r6y2r7@gmail.com</u>
**Subject:** Re: Notice of Acceptance - Hamann DOI-BOR-19-0764

Thank you Dan.

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

---

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Wednesday, March 18, 2020 12:41 PM
**To:** Romero, Christopher R <cromero@usbr.gov>
**Cc:** r6y2r7@gmail.com <r6y2r7@gmail.com>
**Subject:** RE: Notice of Acceptance - Hamann DOI-BOR-19-0764

Chris – I am open able to open the attachment. – Dan

**From:** Romero, Christopher R <cromero@usbr.gov>
**Sent:** Wednesday, March 18, 2020 12:28 PM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Cc:** r6y2r7@gmail.com
**Subject:** Notice of Acceptance - Hamann DOI-BOR-19-0764
**Importance:** High

Dear Daniel Hamann,

Attached is a letter regarding your EEO complaint.  <u>Please reply to this email upon receipt to confirm you</u>
<u>are able to open the attachment.</u>  At this time, the Civil Rights Division is only sending letters
electronically, and you will not receive a paper copy of this document.  If you have any questions, please
contact feel free to contact me by replying to this email or at the phone number in my signature.

Best,

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

## Re: Vacancy Announcement Numbers - Hamann DOI-BOR-19-0764

**Romero, Christopher R** <cromero@usbr.gov>

Fri 4/24/2020 11:24 AM

**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>

Ok thank you Dan.

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

---

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Friday, April 24, 2020 11:11 AM
**To:** Romero, Christopher R <cromero@usbr.gov>
**Subject:** RE: Vacancy Announcement Numbers - Hamann DOI-BOR-19-0764

Chris — To best of my knowledge, there were never any vacancy announcements associated with that position. — Dan

**From:** Romero, Christopher R <cromero@usbr.gov>
**Sent:** Friday, April 24, 2020 10:29 AM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Subject:** Vacancy Announcement Numbers - Hamann DOI-BOR-19-0764

Good Morning Dan,

Human Resources is currently pulling together documents related to your claims to include in the record as part of your EEO investigation. In order to obtain all relevant documentation, Human Resources needs to know the vacancy announcement numbers associated with the positions referenced in the below claims. Reclamation vacancy announcement numbers generally look like this: BR-DO-2020-001. Can you please provide the vacancy announcement numbers?

Claim 2(e): "In 2016, his supervisor did not provide him the opportunity to apply for a Supervisory Control and Data Acquisition position."

Claim 2(g): "In or around April 2018, his supervisor did not provide him the opportunity to apply for a Supervisory Control and Data Acquisition position."

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

## FW: 180 Day Letter - Hamann DOI-BOR-19-0764

### Stephens, Michele L <mstephens@usbr.gov>

Mon 6/22/2020 4:29 PM

**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Cc:** Romero, Christopher R <cromero@usbr.gov>

 5 attachments (3 MB)

Hamman180 DAY LTR.pdf; V1-Getting_Started.pdf; V6-Hearings_with_the_EEOC.pdf; V8-Manage_Case_Information.pdf; 2020 COVID-19 Processing Information for EEO Directors (Revised).pdf;

Dear Mr. Hamann,

Attached are documents your EEO Specialist, Chris Romero, asked me to send to you for your EEO complaint.  <u>Please reply to this email upon receipt to confirm you are able to open the attachment.</u>  At this time, the Civil Rights Division is only sending letters electronically, and you will thus not receive a paper copy of this document.  If you have any questions, please contact Chris Romero at 303-445-3604 or at <u>cromero@usbr.gov.</u>


Thank you,
Michele Stephens
Admin Support Assistant
Bureau of Reclamation
Civil Rights Division
P.O. Box 25007, 84-11000
Denver, CO 80225
303-445-3680

000148        Exhibit C - page 45 of 106

## Re: 180 Day Letter - Hamann DOI-BOR-19-0764

**Romero, Christopher R** <cromero@usbr.gov>

Mon 6/22/2020 4:45 PM

**To:** Stephens, Michele L <mstephens@usbr.gov>; Hamann, Daniel (Dan) W <dhamann@usbr.gov>

📎 1 attachments (31 KB)

EEOC Hearing Request Form (Phoenix).pdf;

Mr. Hamann,

Please disregard the Hearing Request Form attached the Notice of Incomplete Investigation letter in Michele's previous email (page 3 of the attachment named "Hamann180 DAY LTR"). I inadvertently included the incorrect EEOC Field Office information on the form. Please use the attached hearing request form for the EEOC's Phoenix District Office and send any hearing request forms to the EEOC's Phoenix District Office. Please let me know if you have any questions or concerns. Please also respond to these emails confirming your receipt and that you were able to open the documents.

**Chris Romero**
*EEO Specialist*
U.S. Bureau of Reclamation
(303) 445-3604

---

**From:** Stephens, Michele L <mstephens@usbr.gov>
**Sent:** Monday, June 22, 2020 4:29 PM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Cc:** Romero, Christopher R <cromero@usbr.gov>
**Subject:** FW: 180 Day Letter - Hamann DOI-BOR-19-0764

Dear Mr. Hamann,

Attached are documents your EEO Specialist, Chris Romero, asked me to send to you for your EEO complaint.  Please reply to this email upon receipt to confirm you are able to open the attachment.  At this time, the Civil Rights Division is only sending letters electronically, and you will thus not receive a paper copy of this document.  If you have any questions, please contact Chris Romero at 303-445-3604 or at cromero@usbr.gov.

Thank you,
Michele Stephens
Admin Support Assistant
Bureau of Reclamation
Civil Rights Division
P.O. Box 25007, 84-11000
Denver, CO 80225
303-445-3680

## EEOC HEARING REQUEST

Re: *Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior*, Agency Case No. DOI-BOR-19-0764

I am requesting a hearing before an Equal Employment Opportunity Commission (EEOC) Administrative Law Judge, pursuant to 29 C.F.R. § 1614.108(g). I hereby certify that more than 180 days have passed from the date I filed my complaint.

Agency Case Number: _____

Name: _____

Address: _____

City, State, Zip: _____

Phone Number: _____

☐ In accordance with § 1614.108(g), I have sent this request to the following EEOC District Office:

> Equal Employment Opportunity Commission
> Phoenix District Office
> 3300 N. Central Avenue, Suite 690
> Phoenix, AZ  85012

☐ In accordance with § 1614.108(g), I have also sent a copy of this request for a hearing to the Bureau of Reclamation Civil Rights Division at:

> Manager, Civil Rights Division
> Bureau of Reclamation
> P.O. Box 25007 (84-11000)
> Denver, CO  80225

☐ In accordance with § 1614.108(g), I have also sent a copy of this request for a hearing to the U.S. Department of the Interior Office of Civil Rights Director at:

> Director, Office of Civil Rights
> U.S. Department of the Interior
> 1849 C Street NW (MS-4309)
> Washington, D.C.  20240

_____          _____

Signature                                                           Date

## Read: 180 Day Letter – Hamann DOI-BOR-19-0764

**Hamann, Daniel (Dan) W <dhamann@usbr.gov>**
Mon 6/22/2020 5:02 PM
**To:** Romero, Christopher R <cromero@usbr.gov>
Your message

  To: Hamann, Daniel (Dan) W
  Subject: Re: 180 Day Letter - Hamann DOI-BOR-19-0764
  Sent: Monday, June 22, 2020 4:45:54 PM (UTC-07:00) Mountain Time (US & Canada)

 was read on Monday, June 22, 2020 5:02:36 PM (UTC-07:00) Mountain Time (US & Canada).

000151         Exhibit C - page 48 of 106



# United States Department of the Interior

BUREAU OF RECLAMATION
P.O. Box 25007
Denver, CO 80225-0007
June 19, 2020



IN REPLY REFER TO:

84-11000
1.1.2

**ELECTRONIC MAIL ONLY**
**READ RECEIPT REQUESTED**

Daniel Hamann
10799 W Alameda Avenue
Unit 1500032
Lakewood, CO 80215

Re: Notice of Incomplete Investigation in *Daniel Hamann v. David Bernhardt, Secretary,* U.S.
Department of the Interior, Agency Case No. DOI-BOR-19-0764

Dear Daniel Hamann,

In accordance with 29 C.F.R. § 1614.108(e), Reclamation would like to inform you that more
than 180 days have passed since you filled your formal complaint. Pursuant to 29 C.F.R. §
1614.108(g), you may request a hearing before an Equal Employment Opportunity Commission
(EEOC) Administrative Judge or file a civil action in the appropriate U.S. District Court.

Reclamation is currently on track to complete your investigation within the regulatory timelines.
Based on the most recent amendment to your formal complaint dated May 22, 2020,
Reclamation has until November 18, 2020 to complete your investigation. We do not anticipate
the investigation taking that long to complete.

If you would like to request a hearing before an EEOC Administrative Judge, please complete
the attached Hearing Request Form. Further, we ask that you follow the guidelines set out in the
attached memorandum from the EEOC dated April 6, 2020 by emailing a copy of your hearing
request to Chris Romero (cromero@usbr.gov) and filing your request electronically using the
EEOC's Public Portal (publicportal.eeoc.gov). Instructions for how to use the EEOC's Public
Portal are enclosed for your review. Please feel free to contact Chris Romero with any questions
or concerns at (303) 445-3604.

Sincerely,

**SHERILYN**
**ROGERS**
**O'GORMAN**

Digitally signed by
SHERILYN ROGERS
O'GORMAN
Date: 2020.06.19
13:44:03 -06'00'

Sherilyn Rogers O'Gorman
Complaints Manager

Page 3

Enclosures:    Hearing Request Form
EEOC Memorandum dated April 6, 2020
EEOC Public Portal User's Guide, Volume 1 – Getting Started
EEOC Public Portal User's Guide, Volume 6 – Hearings with the EEOC
EEOC Public Portal User's Guide, Volume 8 – Manage Case Information

## EEOC HEARING REQUEST

Re: *Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior*, Agency Case No. DOI-BOR-19-0764

I am requesting a hearing before an Equal Employment Opportunity Commission (EEOC) Administrative Law Judge, pursuant to 29 C.F.R. § 1614.108(g). I hereby certify that more than 180 days have passed from the date I filed my complaint.

Agency Case Number: _____

Name: _____

Address: _____

City, State, Zip: _____

Phone Number: _____


☐ In accordance with § 1614.108(g), I have sent this request to the following EEOC District Office:

> Equal Employment Opportunity Commission
> San Francisco District Office
> 450 Golden Gate Avenue
> 5 West, P.O. Box 36025
> San Francisco, CA 94102

☐ In accordance with § 1614.108(g), I have also sent a copy of this request for a hearing to the Bureau of Reclamation Civil Rights Division at:

> Manager, Civil Rights Division
> Bureau of Reclamation
> P.O. Box 25007 (84-11000)
> Denver, CO 80225

☐ In accordance with § 1614.108(g), I have also sent a copy of this request for a hearing to the U.S. Department of the Interior Office of Civil Rights Director at:

> Director, Office of Civil Rights
> U.S. Department of the Interior
> 1849 C Street NW (MS-4309)
> Washington, D.C. 20240


_____          _____

Signature                                                        Date



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Office of Federal Operations**

**P. O. Box 77960**

**Washington, D.C. 20013**

April 6, 2020

Memorandum

TO:    Federal Sector EEO Directors & Officials

Digitally signed by Carlton M. Hadden
DN: cn=Carlton M. Hadden, o=Office of Federal
Operations, ou=EEOC-OFO,
email=carlton.hadden@eeoc.gov, c=US
Date: 2020.04.08 12:01:08 -04'00'

FROM:  Carlton M. Hadden
          Director, Office of Federal Operations

SUBJECT:   Processing Information for All Parties in Federal EEO Processing under 29 CFR Part 1614

In light of the National Emergency declared by the President due to the Coronavirus (COVID-19), the U.S. Equal Employment Opportunity Commission's (EEOC) Office of Federal Operations (OFO) is issuing the following instructions regarding the processing of federal sector EEO complaints covered by 29 CFR Part 1614.

The EEOC recognizes this crisis affects all federal employees, complainants, and others involved in the EEO process. We appreciate the dedication of federal EEO professionals throughout the federal government and we further recognize that the centerpiece of our efforts are the employees, applicants, and former employees who believe they have experienced employment discrimination and access our regulatory process for assistance. Nevertheless, the federal government remains open and committed to providing mission-critical services to the greatest extent possible, given the limitations inherent in the current environment.

The EEOC also recognizes that, because of the National Emergency, applicants who utilize the EEO complaint process may face challenges that preclude them from meeting the regulatory timeframes set forth in 29 CFR Part 1614.

The EEOC must balance its duty to ensure that the EEO process continues efficiently and effectively, without compromising the safety of federal employees or the rights or safety of complainants and others involved in the EEO process.

The EEOC expects that agencies and employees will continue to process EEO complaints in a timely manner that will best preserve the legal rights of the parties involved, unless doing so would interfere with mission-critical operations for an agency. Accordingly, the Office of Federal Operations is issuing the following instructions, which will remain in effect until further notice:

1. Agencies will continue all counseling, investigations and other complaint processing set forth in 29 CFR Part 1614, except in circumstances meeting the criteria described below.

2. To the extent practicable, regulatory timeframes concerning the processing of federal sector EEO complaints will continue to be met, wherever feasible. For this purpose, practicable means where the agency and complainant have access to needed witnesses, documents and representation, and where such processing will not interfere with the mission- critical operations of the agency.

3. The regulatory timeframes set forth in 29 C.F.R. Part 1614 will be subject to the equitable tolling provisions set forth in 29 C.F.R. §1614.604(c). Absent mutual agreement, agencies and complainants will be required to document in the record the reason(s) why tolling any of the time limits set forth in 29 CFR Part 1614 is necessary. Such justification will fully be considered by the Commission in any appeal raised in the matter.

4. Agencies and complainants are encouraged to seek mutual agreement with respect to the extension of any timeframes. Where such agreements are reached, they should be reduced to writing and made part of the record. OFO will honor such agreements on appeal, unless they are clearly onerous to one party or otherwise violate the standards for equitable tolling, waiver or estoppel.

5. EEOC Administrative Judges will continue to manage the hearings program. Administrative Judges will continue to hold conferences, manage discovery, refer cases to ADR and settlement, issue summary judgment decisions and, where appropriate, hold hearings and issue decisions. In light of the National Emergency, either party can seek an extension or other relief from any deadline for good cause shown.

6. The EEOC is deeply concerned about protecting (and committed to ensuring every federal employee continues to have) all their rights during this time of National Emergency. To that end, EEOC asks agency EEO offices to continue counseling employees, accepting their discrimination complaints, and investigating these complaints to the fullest extent possible without undermining mission-critical functions. We ask agencies not to issue final actions on any EEO complaint, unless the investigation is complete and the Complainant has requested that the final action be issued.

7. EEOC will continue to prepare appellate decisions but will not mail those decisions. A Complainant who provides an e-mail address and waives first class mailing may request the decision via e-mail to ofo.eeoc@eeoc.gov . The Commission is extremely cognizant of preserving a party's right to file a civil action in U.S. District Court. Given the current National Emergency, the Commission is suspending issuance of all appellate decisions via the U. S. mail until further notice in order to best preserve those rights.

8. Until further notice, OFO does not have access to U.S. Mail; rather, we ask that all submissions and communications from both agencies and complainants be digital, via the Public Portal/FEDSEP. We ask those who submitted items via U.S. Mail on or after March 6, 2020 to resubmit them via the Public Portal/FEDSEP.

9. The Commission supports and encourages the use of digital documents and electronic signatures. A digital document used by a person, agency, or other entity shall have the same force and effect as those documents not produced by electronic means. "Electronic signature" means any digital symbol, sound, or process attached to or logically associated with a digital record and executed or adopted by a person with the intent to sign the record.

10. Each agency subject to the regulations at 29 CFR Part 1614 is directed to forward a copy of this notice, using the most effective available method, to each Complainant with a pending EEO matter and to each person who hereafter contacts an agency EEO counselor or otherwise enters into the agency's EEO process.

11. For more Commission information and resources, please go to our COVID-19 information links at:   https://www.eeoc.gov/coronavirus/



U.S. Equal Employment Opportunity Commission (EEOC)

# EEOC Public Portal User's Guide
## Vol 1 – Getting Started

November 7, 2019

## Table of Contents

Table of Contents ............................................................................................ i

Introduction to the EEOC Public Portal ...................................................... ii

**Chapter 1     Creating a User Account** ................................................. **1**

  1.1     EEOC Public Portal Access for Representatives ................................. 3

**Chapter 2     Change or Reset Your Password** ......................................... **4**

**Chapter 3     Change Your Email Address** ................................................. **6**

**Chapter 4     The EEOC Public Portal Application Window** ..................... **9**

  4.1     Filing with EEOC ............................................................................. 9

  4.2     My Cases ...................................................................................... 10

  4.3     Guidance ...................................................................................... 10

  4.4     Locate an EEOC Office ................................................................. 10

**Chapter 5     Keyboard Navigation** ...................................................... **12**

**Chapter 6     The Calendar Dialog** ........................................................ **13**

**Chapter 7     Tutorials and Learning More** ........................................... **14**

### Figures

Figure 1 – EEOC Public Portal Home Page .................................................... 9

Figure 2 – Guidance Page ........................................................................... 10

Figure 3 – Locate an EEOC Office Page ....................................................... 11

Figure 4 – Calendar Dialog ......................................................................... 13

000159             Exhibit C - page 56 of 106

## Introduction to the EEOC Public Portal

The EEOC Public Portal is a secure, web-based application developed for individuals to interact with the EEOC regarding complaints of employment or hiring discrimination against private business or non-profit organizations, unions, temp agency or staffing firms, state or local governments, or the Federal government. The EEOC Public Portal is the primary point of communication between you and the EEOC.

### About the User's Guide

The EEOC Public Portal User's Guide ("User's Guide") provides comprehensive guidance for using the EEOC Public Portal's features and functions. The User's Guide is published as individual documents, each of which covers a feature or related features of the EEOC Public Portal.

The following EEOC Public Portal User's Guide documents are available (the highlighted Document Name is the one you're reading now):

- ❖ Vol 1 – Getting Started (learn about EEOC Public Portal access, structure, and other basic information)

- ❖ Vol 2 – Submit an Online Inquiry to the EEOC

- ❖ Vol 3 – Post-Inquiry Tasks (learn about scheduling an interview with the EEOC, entering additional information about an online inquiry, and signing a Charge of Discrimination)

- ❖ Vol 4 – Post-Charge Tasks (learn how to check the status of your charge, respond to an Invitation to Mediate, and request/respond to a Respondent's Position Statement)

- ❖ Vol 5 – Charge Closure (learn what happens during the conclusion of an investigation/conciliation/closure and about your right to sue)

- ❖ Vol 6 – Federal Sector EEO Complaint Hearings with the EEOC

- ❖ Vol 7 – Appealing Federal Agency Decisions to the EEOC

- ❖ Vol 8 – Manage Case/Charge Information (learn how to display information about your case, enter/update your personal information, add representatives, and submit/receive documents associated with your case)

## Chapter 1    Creating a User Account

You must have a Public Portal user account to submit an inquiry, a hearing request, or an appeal to EEOC. Your user account is identified by a unique user name (your email address) and protected by a secure password of your choice. If you don't already have a Public Portal user account, you'll be prompted to register when you start the submission process.

To create a user account, perform the following steps:

**Step 1.** When prompted, click on the **Register** link (inquiries) or the **Sign Up Now** button (federal sector hearings/appeals).



**Step 2.** On the **Create Account** page, enter the required information, including a password.

000161          Exhibit C - page 58 of 106



> ➢ **Tip!** *Enter a zip code to automatically populate the city and state fields.*
> ➢ **Tip!** *Your password must be at least 8-characters and contain at least one uppercase, lowercase, and numeric character.*

**Step 3.** Click on the **Validate** button to verify your email address. A verification code will be sent to the email address you provided. Enter the code when prompted and click on the **Submit** button. When the pop-up appears indicating the validation was successful, click on the **OK** button.



000162        Exhibit C - page 59 of 106

> *Tip!* Can't find the email with the verification code? Check your spam folder.

**Step 4.** When you are finished entering the information, click on the **Submit** button to create your account.

Once you have created a user account, you can login via the **Sign in page**, either by clicking on the **Returning Users** button (when it appears), or on **My Cases**.

## 1.1  EEOC Public Portal Access for Representatives

If you represent clients who have filed charges, hearing requests or appeals with the EEOC, you may access the EEOC Public Portal to view your clients' cases. When the **Create Account** page displays, click on the **I represent a charging party or complainant** checkbox and enter your contact information. Be sure to click on the **Validate** button to validate your email address. When you have finished entering information click on the **Submit** button.

Once you log in you will see, on the **My Cases** page, a list of all the charges, hearing requests and/or appeals for which you are identified as a representative for the charging party or complainant. Click on the **Case Number** link to view the case specifics.

In addition to accessing your client's cases, you may also update your client's information and your (the representative's) information, submit documents to the EEOC or take an action on your client's behalf, and view any documents associated with the case.

> *Tip!* You will access the Public Portal as if you were the client you represent.
> *Tip!* You can only access your client's cases **after** they have been filed with the EEOC.
> *Tip!* If you do not see your client's charge, hearing request or appeal, contact your client to ensure that you were identified as a representative for matters concerning that case.

000163          Exhibit C - page 60 of 106

## Chapter 2    Change or Reset Your Password

If you want to change your password or have forgotten your password and need a new one, you can get a new password by clicking on the **Forgot Password?** link on the **Sign in** page.

To obtain a new password, perform the following steps:

**Step 1.**    Click on the **Forgot Password?** link on the **Sign in** page.

**Step 2.**    Enter your identifying information, either your first name, last name, zip code or your email address and click on the **Next** button.



> ➢ **Tip!** *Clicking on the **Reset** button will clear the fields on the screen.*

**Step 3.**    Next answer the security questions you entered when you created your user account. Provide your answers and click on the **Reset Password** button to continue.



> ➢ **Tip!** *Forgot the answers? Click the **Forgot Answers** button and they will be emailed to you.*

**Step 4.**    The **Reset Password** screen displays. Enter a new password and click on the **Save Password** button. A confirmation email will be sent to you.



000165          Exhibit C - page 62 of 106

## Chapter 3    Change Your Email Address

If your email address has changed, you may modify the address you entered in the Public Portal by clicking on your name link at the top of any screen.

> ➢ **Tip!** *Your email address is your login ID for the Public Portal. If you change it, remember to login using the new email address.*

> ➢ **Tip!** *You cannot change your email address using the **Update My Information** button on either the **My Charge** or **My Case** page for a specific case. You must use the **Update Account** page as described below.*

To change your email address, perform the following steps:

**Step 1.**    Click on your name at the top-right corner of any page (the Public Portal home page is shown in this example).



**Step 2.**    Click on the **OK** button to acknowledge the Privacy Policy.

**Step 3.**    The **Update Account** page displays.



**Step 4.** Enter your new email address and press **Tab**.

**Step 5.** A confirmation pop-up window displays. Click on **OK** to continue.



**Step 6.** Click on the **Validate** button to verify your new email address.

**Step 7.**    A verification code will be sent to the new email address you provided. Enter the code when prompted and click on the **Submit** button. When the pop-up appears indicating the validation was successful, click on the **OK** button.

> ➢   *Tip! Can't find the email with the verification code? Check your spam folder.*

**Step 8.**    Click on the **Submit** button to update your account.

**Step 9.**    You will be logged out and returned to the Home page of the Public Portal. Click on **Login** to login again with your new email address.

> ➢   *Tip! Your password and security questions will remain the same.*

## Chapter 4     The EEOC Public Portal Application Window

The EEOC Public Portal Home page has four links to choose from which are described in the subsections that follow:

- **Filing with EEOC**
- **My Cases**
- **Guidance**
- **Find an EEOC Office**

There is also a FAQ section in the Portal that provides you with helpful information based on a search of the EEOC articles. The most frequently visited articles are listed there. The EEOC Public Portal is Section 508-compliant, which means the website is accessible to people with disabilities.

The EEOC Public Portal Home page is illustrated in Figure 1 below.

**Figure 1 – EEOC Public Portal Home Page**



- ➢ **Tip!** Click on the house icon ( 🏠 ) from any page to return to the Home page.
- ➢ **Tip!** Turn off Pop-Up blockers in your browser.
- ➢ **Tip!** Do not use the browser buttons to navigate the application. Use the **Back** and **Next** buttons.

## 4.1     Filing with EEOC

The **Filing with EEOC** link allows you to submit an inquiry, hearing request, or an appeal to the EEOC. After you click on the **Filing with EEOC** link, you will be asked to select the type

000169            Exhibit C - page 66 of 106

of employer you work for, worked for, or applied to, and then be directed to the appropriate submission process.

## 4.2   My Cases

The **My Cases** link allows you to track the process of your online inquiries, charges, hearing requests, and/or appeals, respond to the EEOC when an action is required, maintain information on your representatives and your personal contact information, and view/submit documents associated with your case. If you submitted an online inquiry, the **My Cases** link will allow you to schedule an interview with the EEOC, enter supplemental information, or sign a Charge of Discrimination, depending on where you are in the process.

## 4.3   Guidance

The **Guidance** link allows you to access the EEOC Public Portal User Guides. Here you can get information about how to use the EEOC Public Portal. Click on a link to display the document. Click on the Back button to return to the previous page.

To display the **Guidance** page, click on the **Guidance** link on the Home page. The **Guidance** page is shown in Figure 2 below.

**Figure 2 – Guidance Page**

U.S. Equal Employment Opportunity Commission                    Sign In  Register

Guidance

EEOC Public Portal User Guides
- Getting Started
- Submit an Online Inquiry to EEOC
- Hearing with the EEOC
- Appealing Federal Agency Decisions with the EEOC
- Manage Your Case Information

Back

## 4.4   Locate an EEOC Office

If you need help locating an EEOC office, the **Find an EEOC Office** link will help you. Clicking on the link brings up a map of the EEOC districts in the United States, as shown in Figure 3 below. Enter a zip code or click on the link below the map to display information about a specific EEOC office.

To display the **Locate an EEOC Office** page, click on the **Find an EEOC Office** link on the Home page:

000170          Exhibit C - page 67 of 106

**Figure 3 – Locate an EEOC Office Page**



000171                    Exhibit C - page 68 of 106

## Chapter 5    Keyboard Navigation

For brevity, procedures in the User's Guide presume that you'll use your mouse to navigate the EEOC Public Portal. However, the EEOC Public Portal is Section 508 compliant, so you can also navigate it using your keyboard.

❖  *Tab, Shift+Tab Keys*

Pressing the Tab key moves your cursor forward and pressing the Shift+Tab keys moves it back. The steps in the User's Guide's procedures typically follow the tabulation order of the screens.

❖  *Space Key*

Place your cursor on a checkbox field or radio button and press the Space key to add/remove a checkmark (this also can be used to select a radio button).

❖  *«Key»+Up/Down Arrow Keys*

Place your cursor on a field with a drop list, type a letter to drill-down to the list values that begin with that letter, and then use the Up (↑) or Down (↓) keys to scroll up or down through the listed values.

❖  *Enter Key*

Place your cursor on a button then press the Enter key to execute the button action. The Enter Key may also be used to enter the highlighted value in a drop-down list into a field.

## Chapter 6    The Calendar Dialog

When you enter a date value (e.g., date of birth, date you filed your formal EEO complaint, etc.) you may select it using the calendar dialog.

When you encounter a field that lets you enter a date, when you place your cursor in the field the Calendar dialog will open. The dialog will display the current month, as shown in Figure 4 below:

**Figure 4 – Calendar Dialog**

| Prev | | | | | | Next |
|------|------|------|------|------|------|------|
| | | October 2018 | | | | |
| Su | Mo | Tu | We | Th | Fr | Sa |
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

Above the Month and Year are the Prev and Next buttons, which let you select a different year and/or month by toggling through the calendar one month at a time.

The current day is highlighted for you in the calendar grid (e.g., "1" in Figure 4). If you want to enter a different day, click that day to highlight it.

Once you click on the desired date, the dialog will close and the date you selected will be entered in the field.

000173        Exhibit C - page 70 of 106

## Chapter 7    Tutorials and Learning More

When you start the process of submitting an inquiry, requesting a hearing, or filing an appeal, after selecting the type of employer you work or worked for, a page will display with links to information about the EEOC and its processes. Click on a link to learn more before getting started.

If you are submitting an inquiry, there is a video available, in English and Spanish, that explains the basics of filing a charge with the EEOC. Click on the **Play** button to view the video to learn more before getting started.

When you are ready to start, click on the **Next** button.



Equal Employment Opportunity Commission (EEOC)

# EEOC Public Portal User's Guide

## Vol 6 – Hearings with the EEOC

November 22, 2019

## Table of Contents

Table of Contents ................................................................................................i

Introduction to the EEOC Public Portal ...............................................................1

About the User's Guide ........................................................................................1

Chapter 1    Request a Hearing with EEOC ........................................................2

Chapter 2    Uploading Hearing Documents .......................................................9

Chapter 3    Viewing and Managing Information About Your Case .......................10

Chapter 4    Respond to an Invitation to ADR ..................................................11

4.1      Accepting or Rejecting an Invitation to ADR ..................................... 12

4.2      ADR Outcomes ............................................................................... 15

4.2.1      ADR Scheduled ....................................................................... 15

4.2.2      ADR Held ............................................................................... 15

4.2.3      Not Eligible for ADR ................................................................ 15

Chapter 5    Hearing Conducted by the EEOC ..................................................16

Appendix A. ADR Documents ...........................................................................17

## Introduction to the EEOC Public Portal

The EEOC Public Portal is a secure, web-based application developed for individuals to interact with the EEOC regarding a complaint of employment discrimination. Using the EEOC Public Portal, you may file a complaint against an employer in the Private Sector (i.e. Business or non-profit) or a State or Local Government Agency. If you work or worked for the U.S. Federal Government as an employee or a contractor, or applied to work for the Federal Government, you may request a hearing with or appeal a decision to the EEOC regarding your formal EEO complaint. The EEOC Public Portal is the primary point of communication between you and the EEOC.

## About the User's Guide

The EEOC Public Portal User's Guide ("User's Guide") provides comprehensive guidance for using the EEOC Public Portal features and functions. The User's Guide is published as individual documents, each of which covers a particular feature or related features of the EEOC Public Portal.

The following EEOC Public Portal User's Guide documents are available; the highlighted Document Name is the one you're reading right now:

- ❖ Vol 1 – Getting Started (learn about logging into the EEOC Public Portal, the Portal structure, and other basic information)
- ❖ Vol 2 – Submit an Online Inquiry to the EEOC
- ❖ Vol 3 – Post-Inquiry Tasks (learn about scheduling an interview with the EEOC, entering Supplemental Information, filing a Charge of Discrimination)
- ❖ Vol 4 – Post-Charge Tasks (learn how to check the status of your case, respond to an Invitation to Mediate, request/respond to a Respondent's Position Statement)
- ❖ Vol 5 – Charge Closure (learn what happens during the conclusion of an investigation/conciliation/closure and about your right to sue)
- ❖ Vol 6 – Hearings with the EEOC
- ❖ Vol 7 – Appealing Federal Agency Decisions to the EEOC
- ❖ Vol 8 – Manage Your Case/Charge Information (learn how to display information about your case, enter/update your personal information, add Legal Representatives, and submit/receive documents associated with your case)

## Chapter 1    Request a Hearing with EEOC

When you file a formal EEO Complaint with a Federal Government agency, that agency is expected to complete its investigation within 180 days from the day the complaint was filed; or, if the complaint was amended, 180 days from the day it was amended. The agency is then expected to issue you its Report of Investigation and/or a Notice of Right to Request a Hearing. If you have received the Report or the Notice, or if more than 180 days have passed since you filed or amended your complaint, you may request a hearing with an EEOC's Hearing Unit Office.

To request a hearing on your complaint through the EEOC Public Portal, perform the following steps:

**Step 1.**    On the home page, click **Filing with EEOC**.

**Step 2.**    When asked to identify the **Type of Employer** you believe discriminated against you, select 'Federal Government agency…' and click on the **Next** button.



**Step 3.**    An informational page displays with links to help you learn more about EEOC and the hearing and appeal processes. When you are ready to continue, click on the **Next** button.

**Step 4.**    The **What would you like to do?** page displays. Select **Request a Hearing about my formal EEO complaint** and click on the **Next** button.



**Step 5.**    You will now be asked some questions to determine if the EEOC can help you. Select the appropriate response or fill in the requested information for each question. When you have completed the questions, click on the **Next** button.

> ➤    **Tip!** You may be asked more or fewer questions depending on your answers. The illustration below shows one possible outcome.



**Step 6.**    To submit a Hearing request, you must have a user account. If you have not used the EEOC Public Portal before, click on the **Sign-Up Now** button to create your user account (see EEOC Public Portal User's Guide Vol 1 – Getting Started for details).

> ➤ **Tip!** *If you already registered with the EEOC, click on the **Returning Users** button and login.*

**Step 7.**  Your personal information is displayed, which will be submitted with the online inquiry. This screen is view-only. Click on the **Continue** button to proceed.

> ➤ **Tip!** *If you need to modify this information, click on the link at the top of the page to go to your User Account Information. When you have finished and submitted your changes, you will be returned to inquiry submission process.*



**Step 8.**  Next, you will be asked if you want to enter information about your legal representative (this is optional, but if you are being represented by an attorney or another individual in the EEO process, you should identify your representative here). Select **Yes** or **No** and click on the **Next** button to continue.



> ➤ **Tip!** *If you choose not to enter a legal representative now, you will be able to enter one later, on the **My Case Page**.*

**Step 9.** If you selected **Yes**, a form will display for you to fill in the representative information. When you are finished, click on the **Next** button to continue.



> *Tip!* *EEOC verifies that the representative represents you. EEOC expects a reply from the representative within 10 days of sending a verification email; if they haven't received a reply after 10 days, then you will receive an email notifying you that EEOC has been unable to verify the representative.*

**Step 10.** A page displays showing the representative(s) you have entered. Click on the **Add Another Representative** button to add another representative. Click on the **View/Update Delete** button to make changes. When you are finished, click on the **Next** button to continue.



**Step 11.** Next you must upload your Notice of Right to Request Hearing document, which you should have received from the agency named in your complaint. Click on the **Upload** button.



When the pop-up window displays, select the document and 'Request for Hearing' as the document type, and click on the **Upload** button on the window. The **Hearing Document** page will then display the file that you uploaded. <u>You must upload the hearing request document before you can submit the hearing request.</u>

**Step 12.** After uploading the document, the screen will appear as shown below. If you made a mistake and uploaded the wrong document, you can replace it with the correct document by clicking on the **Replace Document** button. Otherwise click on the **Next** button to continue.



**Step 13.** Finally, you will be asked to enter information to identify your complaint. You must enter the Agency number, Agency name, and the EEOC office. When you are finished, click on the **Submit Request** button.



**Step 14.** When the request is sucessfully submitted, you and the Agency will receive an email titled a "Notice of Receipt of Hearing Request". The Notice may also be downloaded from the **My Cases** page for the hearing request.

In the Portal, you will also see confirmation of your hearing request with your hearing number as shown below. (Note: the hearing number displayed is for a fictional hearing.)



Be sure to write down the hearing number so that you can reference it when communicating with the EEOC .

**Step 15.** Click on the **My Cases** button to display the page for your case, or the **Home** button to return to the Home page.

## Chapter 2      Uploading Hearing Documents

After you have requested a hearing with the EEOC, you can upload documents associated with your hearing. Click on **My Cases** on the EEOC Public Portal Home Page, and then the EEOC Number in the case list. Click on the **Upload** button on the **My Case** page to begin and follow the prompts provided.

*For Details see EEOC Public Portal User's Guide Vol 8 – Managing Case Information.*

## Chapter 3     Viewing and Managing Information About Your Case

After you have requested a hearing with the EEOC, you may view the details of your case and associated documents by clicking on **My Cases** on the EEOC Public Portal Home Page, and then the EEOC Number in the case list. From the **My Case** page you may also add Legal Representatives, update your contact information, and submit documents to the EEOC.

*For Details see EEOC Public Portal User's Guide Vol 8 – Managing Case and Charge Information.*

## Chapter 4     Respond to an Invitation to ADR

All hearing requests upon submission and docketing are eligible for ADR except for complaints filed against the following Agencies:

1. Decennial Census Agency.
2. Central Intelligence Agency.
3. National Reconnaissance Office.
4. Office of the Director of National Intelligence.
5. National Security Agency.

You can view the invitation to participate in ADR and respond to it via the EEOC Public Portal. When you login, click on **My Cases** and then the hearing number in the list of cases; you will see the invitation on the **My Case** page below the **My Case** section as shown in Figure 1 below (the full text of the invitation to ADR can be found in Appendix A).

You will have 30 days to respond to the invitation. If you do not respond within 30 days, you will receive a weekly email reminder and if you do not respond after the reminder, EEOC may decide to move your case forward without mediation by assigning it to an Administrative Judge or Pending AJ assignment if your case is yet to be assigned to an Administrative Judge.

**Figure 1 – Invitation to ADR**




U.S. Equal Employment Opportunity Commission              Welcome,  Joan  Log Out

### My Case                                    Update My Information

**EEOC Hearing Request** 440-2019-00195X

Your request for a hearing before an Administrative Judge at the U.S. Equal Employment Opportunity Commission (EEOC) has been received by the EEOC's Chicago District Office. An Administrative Judge will be assigned to your case. When communicating with the EEOC about this hearing request, please reference EEOC Hearing Request **440-2019-00195X**

**Status: Referred to ADR**

*The EEOC ADR Program:*

*Your Partner in Workplace Solutions!*

We invite you to participate in the EEOC's Alternative Dispute Resolution (ADR) Program to efficiently resolve EEOC Number 440-2019-00195X. ADR is a no-cost, voluntary, and confidential opportunity for both parties to work with a neutral ADR facilitator to discuss and try to resolve your EEOC Complaint. ADR includes a variety of methods such as settlement conferences conducted by Administrative Judges and mediations with EEOC staff members or outside neutrals.

Here are five reasons you should participate:

**It's the FASTEST way to resolve a complaints** – We try to resolve complaint within 90 days.

**It's fair and confidential** – The ADR facilitator is a neutral person who helps the parties find a solution to the problem. All discussions with the ADR facilitator are strictly confidential and are NOT part of the EEOC's adjudication of a case.

**It provides a FINAL resolution to a complaint** – ADR allows Complainants to address all of their filed claims.

**You CONTROL the outcome** – The ADR facilitator will work with you to identify the best options that exist to resolve the complaint at this early stage. The parties will determine what options are workable and you and the Agency are free to accept or reject any options.

**It's FREE and EFFECTIVE** – There is no cost to participate in ADR. EEOC resolves more than 50% of the complaints in the ADR program. If ADR doesn't resolve the complaint, then an EEOC Administrative Judge will be assigned and will proceed with the case.

We look forward to working with you in bringing this matter to an amicable resolution and demonstrating why so many Complainants consider the EEOC ADR Program their partner in workplace solutions

For more information, please click  ADR Fact Sheet

Please select a response to the ADR Offer on this page by **11-23-2019**

| | Yes        | | No

**Please note, assignment to the ADR Program is dependent upon available EEOC resources, such as available ADR facilitators, office inventory and available dates.**

## 4.1   Accepting or Rejecting an Invitation to ADR

To respond to an invitation to ADR, perform the following steps:

**Step 1.**   Login to the EEOC Public Portal. On the home page, click on **My Cases**.

**Step 2.**   On the **My Cases** page, click on the EEOC number for your hearing request.

**Step 3.**   On the **My Case** page, scroll down to where "Invitation to ADR" is displayed (see Figure 1 above).

**Step 4.**   Select a response, either '**Yes**' or '**No**'.

> ➢  *Tip! Click on the link at the bottom of the invitation to view the ADR Fact Sheet.*

**Step 5.**   If you selected '**Yes**', you will see this message in the EEOC Public Portal:

*Thank you for agreeing to participate in the EEOC ADR Program. Please click **Review and Sign Documents** below to review and sign the ADR and Confidentiality Agreements.*

*If the Agency also agrees to participate in ADR, we will contact you to schedule the ADR conference. If the Agency does not choose to participate in ADR, the EEOC will determine how to proceed with your case. **Please note, assignment to the ADR Program is dependent upon available EEOC resources, such as available ADR facilitators, office inventory and available dates.***

*We look forward to working with you in bringing this matter to amicable resolution and demonstrating why so many Complainants consider the EEOC ADR Program their partner in workplace solutions.*

You must review and sign the ADR and Confidentiality agreements if you wish to proceed with the ADR program (the full text of the agreements an be found 0). Click on the **Review & Sign Documents** button.

*The EEOC ADR Program:*

*Your Partner in Workplace Solutions!*

Thank you for agreeing to participate in the EEOC ADR Program. Please click **Review and Sign Documents** below to review and sign the ADR and Confidentiality Agreements.

If the Agency also agrees to participate in ADR, we will contact you to schedule the ADR conference. If the Agency does not choose to participate in ADR, then EEOC will determine how to proceed with your case. **Please note, assignment to the ADR Program is dependent upon available EEOC resources, such as available ADR facilitators, office inventory and available dates.**

We look forward to working with you in bringing this matter to an amicable resolution and demonstrating why so many Complainants consider the EEOC ADR Program their partner in workplace solutions



First the Agreement to Participate in ADR displays. Click on the box to "check" it and digitally sign the agreement (the signature will be automatically populated), then click on the **Next** button. If you want to go back to the **My Cases** page, click on the **Back** button



Then the Confidentiality Agreement displays. Click on the box to "check" it and digitally sign the agreeement (the signature will be automatically populated), then click on the **Sign Agreements** button. If you want to go back to the Agreement to Participate in ADR, click on the **Back** button.



You will now be returned to the **My Case** page. The signed agreements will be automatically uploaded and will appear in the **My Documents** list. You will see this message in the EEOC Public Portal:

> *Thank you for agreeing to participate in the EEOC ADR program.* ***Please note, assignment to the ADR Program is dependent upon available EEOC resources, such as available ADR facilitators, office inventory and available dates.***

If the Agency also agrees to ADR and an ROI has been submitted, then the EEOC may move the case forward to ADR scheduling and you will be contacted to schedule ADR.

Once you have chosen '**Yes**' and signed the documents, the selection cannot be undone.

**Step 6.**    If you selected '**No**', click on the **Save** buton. You will see this message in the EEOC Public Portal:

> *Thank you for your response. EEOC's staff will determine how to proceed with the processing of your complaint. We look forward to working with you in bringing this matter to an amicable resolution. If you had previously selected* ***No****, you may still select* ***Yes*** *should you decide to change your mind and proceed with the ADR program.*

> *Please note, assignment to the ADR Program is dependent upon available EEOC resources, such as available ADR facilitators, office inventory and available dates.*

The radio buttons will remain active in case you change your mind and decide to accept the ADR invitation.

## 4.2 ADR Outcomes

### 4.2.1 ADR Scheduled

After you accept the invitation to ADR, if the agency has also agreed to participate in ADR and the EEOC decides to move the case forward to ADR scheduling, this message is displayed on the screen:

> *Both parties have agreed to participate in ADR. EEOC will contact you when the ADR session is scheduled and will provide you with more information. No further action is required from you at this time.*

When the ADR session has been scheduled, this message will be displayed on the screen:

> *An ADR session has been scheduled. Please be sure to make yourself available for this meeting.*

### 4.2.2 ADR Held

When ADR has been held, this message will be displayed on the screen:

> *Both parties participated in ADR.*

If ADR was successful, this message will be displayed on the screen:

> *The ADR session resulted in a resolution of the complaint. After the executed settlement is uploaded, this matter will be closed.*

If a Closure Document is issued, this message will be displayed on the screen:

> *A Closure Document was issued in the case. To view the document, please access the document section of the Portal.*

When the complaint is closed, the following messages will display on the screen:

> *The case is now closed. Please review the Closure Document for Appeal Rights, if applicable.*

If ADR was unsuccessful, this message will be displayed on the screen:

> *The ADR session did not result in a resolution of the complaint. The parties will receive further instruction on the processing of the complaint from EEOC.*

Additional status messages will be displayed as the complaint is processed (see Chapter 5).

### 4.2.3 Not Eligible for ADR

If the EEOC reviews the ROI and determines your case is not eligible for ADR, or you and the Agency declines the ADR invitation, your case will be Pending AJ assignment and this message will be displayed on the screen:

> *Upon further review this complaint is not considered for ADR and will be assigned to an Administrative Judge to continue processing. However, ADR may be considered after assignment to an Administrative Judge. Your patience is appreciated.*

Additional status messages will be displayed as the complaint is processed (see Chapter 5).

## Chapter 5      Hearing Conducted by the EEOC

If your complaint was not eligible for ADR (either because one or both parties declined, or the EEOC determined it is ineligible), or the ADR session did not result in a resolution, the EEOC will proceed with conducting a hearing. The case is assigned to an EEOC Administrative Judge (AJ) who will conduct the hearing, make a decision, and order relief if discrimination is found.

Once the AJ has made a decision, the agency will issue a final order notifying you if they agree with the AJ's decision and if they will grant any relief ordered. You have a right to appeal the AJ's decision and may file an appeal via the EEOC Public Portal. For details on how to file an appeal see *EEOC Public Portal User's Guide Vol 7 – Appeals to the EEOC.*

You may track the progress of your hearing via the EEOC Public Portal. Click on **My Cases** on the EEOC Public Portal Home Page, and then the EEOC Number in the case list. On the **My Case** page, you will see the current status of your hearing request and a detailed description. The status will be one of the following:

- Pending AJ Assignment
- Assigned to AJ
- Hearing Scheduled
- Hearing Held
- Closure Document Issued
- Closed

You may submit documents, and view documents issued by the agency and/or the EEOC, throughout the remainder of the hearing process via the EEOC Public Portal, on the **My Case** page for your hearing request (in the **My Documents** section).

For details on viewing case information and uploading/downloading documents see *EEOC Public Portal User's Guide Vol 8 – Managing Case Information.*

## Appendix A.    ADR Documents

**Invitation to ADR**

# The EEOC ADR Program:
## Your Partner in Workplace Solutions!

*We invite you to participate in the EEOC's Alternative Dispute Resolution (ADR) Program to efficiently resolve EEOC Complaint {EEOC Number}. ADR is a no-cost, voluntary, and confidential opportunity for both parties to work with a neutral ADR facilitator to discuss and try to resolve your EEOC Complaint.  ADR includes a variety of methods such as settlement conferences conducted by Administrative Judges and mediations with EEOC staff members or outside neutrals.*

*Here are five reasons you should participate:*

***It's the FASTEST way to resolve a complaint** – We try to resolve complaint within 90 days.*

***It's fair and confidential** – The ADR facilitator is a neutral facilitator who helps the parties find a solution to the problem. All discussions with the ADR facilitator are strictly confidential and are NOT part of the EEOC's adjudication of a case.*

***It provides a FINAL resolution to a complaint** – ADR allows Complainants to address all of their filed claims.*

***You CONTROL the outcome** – The ADR facilitator will work with you to identify the best options that exist to resolve the complaint at this early stage. The parties will determine what options are workable and the Agency is free to accept or reject any options. **It's FREE and EFFECTIVE** – There is no cost to participate in ADR. EEOC resolves more than 50% of the complaints in the ADR program.  If ADR doesn't resolve the complaint, then an EEOC Administrative Judge will be assigned and will proceed with the case.*

*We look forward to working with you in bringing this matter to an amicable resolution and demonstrating why so many Complainants consider the EEOC ADR Program their partner in workplace solutions*

*Please select a response to the ADR Offer on this page by **<30 days from receipt of the ADR invitation>**.*

☐ *Yes*        ☐ *No*

***Please note, assignment to the ADR Program is dependent upon available EEOC resources, such as available ADR facilitators, office inventory and available dates.***

**Agreement to Participate in ADR**

 ***U.S. Equal Employment Opportunity Commission***
***{Accountable EEOC Office}***                    *{Office Address Line 1}*
*{Office Address Line 2}*
*{Office City, State Zip Code}*
*{Office Main Phone}*
*TTY {Office TTY}*
*Fax: {Office Main Fax}*

## AGREEMENT TO PARTICIPATE IN ALTERNATIVE DISPUTE RESOLUTION (ADR)

*EEOC NUMBER: <Truncated EEOC Number>*
*AGENCY NUMBER: <AGENCY Number>*

*COMPLAINANT:  <Complainant Name>*

*AGENCY: <AGENCY Name>*

*This is an agreement by the above parties to participate in mediation in the above referenced complaint. The parties understand that mediation is a voluntary process, which may be terminated at any time. The parties and, if they desire, their representatives and/or attorneys, are invited to attend a mediation session. No one else may attend without the permission of the parties and the consent of the mediator(s).*

*The mediator(s) will not function as the representative of either party. However, the mediator(s) may assist the parties in crafting a settlement agreement. Each party acknowledges being advised to seek independent legal review prior to signing any settlement agreement. The parties acknowledge that they have received a copy of the Mediation Fact Sheet. The parties acknowledge that the mediator(s) possesses the discretion to terminate the mediation at any time if an impasse occurs or either party or the mediator deems the case inappropriate for mediation.*

*The parties acknowledge that participation in the scheduled mediation does not constitute an admission by either party of any wrongdoing or of a violation of the laws enforced by EEOC. Furthermore, the Complainant acknowledges that participation in the scheduled mediation by the Agency does not commit the Agency to providing a monetary resolution of the matter.*

*The parties recognize that mediation is a confidential process and agree to abide by the terms of the attached Confidentiality Agreement. The parties acknowledge that if a settlement is reached as a result of the mediation, the assigned mediator(s) is required to report to EEOC any benefits received. This information is reported only for purposes of providing aggregate data to the EEOC for mediation program evaluation purposes, and the individual terms of the agreement will not be disclosed to the public.*

*{Signatory's Digital Signature}*                                        *{Date of Signature}*

---

*Signatory*                                                                     *Date*
 *<Signatory Full Name>*
 *Phone: {Signatory Phone} / Cell Phone: {Signatory Cell Phone}*

**Confidentiality Agreement**



**U.S. Equal Employment Opportunity Commission**
**{Accountable EEOC Office}**

{Office Address Line 1}
{Office Address Line 2}
{Office City, State Zip Code}
{Office Main Phone}
TTY {Office TTY}
Fax: {Office Main Fax}

### *CONFIDENIALITY AGREEMENT*

*EEOC NUMBER: {Truncated EEOC Number}*

*1.       I agree to participate voluntarily in mediation in an effort to resolve the complaint(s) filed with the EEOC.*

*2.       I agree that all matters discussed during the mediation are confidential, unless otherwise discoverable, and cannot be used as evidence in any subsequent administrative or judicial proceeding. Confidentiality, however, will not extend to threats of imminent physical harm or incidents of actual violence that occur during the mediation.*

*3.       Any communications between the ADR Coordinator and the mediator(s) and/or the parties are considered dispute resolution communications with a neutral and will be kept confidential.*

*4.       I agree not to subpoena the mediator(s) or compel the mediator(s) to produce any documents provided by a party in any pending or future administrative or judicial proceeding. The mediator(s) will not voluntarily testify on behalf of a party in any pending or future administrative or judicial proceeding. The parties further agree that the mediator(s) will be held harmless for any claim arising from the mediation process.*

*5.       Mediation sessions will not be tape-recorded or transcribed by the EEOC, the mediator or any of the participants. All information including all notes, records, or documents generated during the course of the mediation shall be destroyed at the conclusion of the session. Parties or their representatives are not prohibited from retaining their own notes. However, EEOC will not maintain any such notes or records as part of its record keeping procedures.*

*6.       If a settlement is reached by all the parties, the agreement shall be reduced to writing and when signed shall be binding upon all parties to the agreement. If the complaint(s) is not resolved through mediation, it is understood by the parties that the complaint(s) will be assigned to an Administrative Judge for further processing.*

*{Signatory's Digital Signature}*                              *{Date of Signature}*

_____

*Signatory*                                                                                    *Date*
 *{Signatory}*



Equal Employment Opportunity Commission (EEOC)

# EEOC Public Portal User's Guide

## Vol 8 – Manage Case Information

January 29, 2020

# Table of Contents

Table of Contents ............................................................................................... i

**Introduction to the EEOC Public Portal** ............................................................... 1

**Chapter 1      Displaying Information About Your Case** ........................................ 2

  1.1      My Case Page .......................................................................................... 3

    1.1.1      My Case Page for Hearings/Appeals ............................................... 3

    1.1.2      My Case Page for Closed Cases ..................................................... 4

**Chapter 2      Manage Contact Information** ....................................................... 6

**Chapter 3      Manage Representatives** ............................................................ 8

  3.1      Add a Representative ............................................................................... 8

  3.2      Update/Delete a Representative ................................................................ 9

**Chapter 4      Submit and Receive Documents** ................................................. 10

  4.1      Submit Documents to the EEOC/Agency .................................................. 10

  4.2      View/Download Documents ..................................................................... 12

## Figures

Figure 1 – Example of My Cases Listing ................................................................. 2

Figure 2 – My Case Page for a Hearing Request ..................................................... 4

Figure 3 – My Case Page for a Closed Case ............................................................ 5

## Tables

Table 1 – Document Information Displayed on the Portal ......................................... 12

## Introduction to the EEOC Public Portal

The EEOC Public Portal is a secure, web-based application developed for individuals to interact with the EEOC regarding a complaint of employment discrimination. Using the EEOC Public Portal, you may file a complaint against an employer in the Private Sector (i.e. Business or non-profit) or a State or Local Government Agency. If you work or worked for the U.S. Federal Government as an employee or a contractor, or applied to work for the Federal Government, you may request a hearing with or appeal a decision to the EEOC regarding your formal EEO complaint. The EEOC Public Portal is the primary point of communication between you and the EEOC.

## About the User's Guide

The EEOC Public Portal User's Guide ("User's Guide") provides comprehensive guidance for using the EEOC Public Portal's features and functions. The User's Guide is published as individual documents, each of which covers a particular feature or related features of the EEOC Public Portal.

The following EEOC Public Portal User's Guide documents are available; the highlighted Document Name is the one you're reading right now:

- ❖ Vol 1 – Getting Started (learn about logging into the EEOC Public Portal, the Portal structure, and other basic information)

- ❖ Vol 2 – Submit an Online Inquiry to the EEOC

- ❖ Vol 3 – Post-Inquiry Tasks (learn about scheduling an interview with the EEOC, entering Supplemental Information, filing a Charge of Discrimination)

- ❖ Vol 4 – Post-Charge Tasks (learn how to check the status of your case, respond to an Invitation to Mediate, request/respond to a Respondent's Position Statement)

- ❖ Vol 5 – Charge Closure (learn what happens during the conclusion of an investigation/conciliation/closure and about your right to sue)

- ❖ Vol 6 – Hearings with the EEOC

- ❖ Vol 7 – Appealing Federal Agency Decisions to the EEOC

- ❖ Vol 8 – Manage Your Case/Charge Information (learn how to display information about your case, enter/update your personal information, add Representatives, and submit/receive documents associated with your case)

## Chapter 1    Displaying Information About Your Case

If you have requested a hearing or filed an appeal with the EEOC, as a federal sector employee, applicant or contractor, you can click on **My Cases** on the EEOC Public Portal to view the case information and associated documents. If you have more than one case filed with the EEOC, the **My Cases Listing** will display all your cases (see Figure 1). This screen displays a list of all the cases (hearings and appeals) you have filed with the EEOC and their status. If you have only one hearing or appeal you will be taken directly to the **My Case** page when you click on **My Cases** on the Portal's home page.

The **My Cases Listing** is sorted by submission date, with newest cases listed first. If you have a large number of cases, use the page navigation buttons ( `<<  <  >  >>` ) to move between pages. Select the case you wish to view by clicking on the **Case Number**; this will display the **My Case** page.

**Figure 1 – Example of My Cases Listing**



A hearing or appeal case will have different process status as the case progresses. You can find out about the status of your case at any time when you login to the EEOC Public Portal. The case status column displays as follows:

- For hearing requests, the status will be one of the following:
  - ○ **Open** – The hearing request has been submitted to the EEOC.
  - ○ **Referred to ADR** – An invitation to ADR has been sent to both parties and the EEOC is waiting for their response.
  - ○ **ADR Scheduling** – The EEOC is in the process of scheduling an ADR session with both parties.
  - ○ **ADR Scheduled** – The EEOC has scheduled an ADR session with both parties.
  - ○ **ADR Held** – The ADR session was held.
  - ○ **ADR Complete** – ADR has been completed.
  - ○ **ADR Successful** – The ADR session resulted in a resolution of the complaint.

- o **ADR Unsuccesful** – The ADR session did not result in a resolution of the complaint.
- o **Pending AJ Assignment** – The EEOC is in the process of assigning the complaint to an Administrative Judge to continue processing.
- o **Assigned to AJ** – The EEOC has assigned the complaint to an Administrative Judge to continue processing.
- o **Hearing Scheduled** – The EEOC has scheduled a hearing on the complant.
- o **Hearing Held** – The hearing on the complaint was concluded.
- o **Closure Document Issued** – A closure document was issued in the case.
- o **Closed**– The case is now closed.

- For appeals the status will be one of the following:

  - o **Appeal Received** – The appeal request has been received by the EEOC.
  - o **Complaint File Received** – The EEOC has received the complaint file from the agency.
  - o **Complaint File Not Received** – The EEOC has not received the complaint file from the agency.
  - o **Appeal Being Processed** – The EEOC is working on the appeal.
  - o **Appeal Closed/Issued** – The EEOC has issued a decision and closed the appeal.

## 1.1  My Case Page

The My Case page provides information for Hearings and Appeals, both open and closed cases. Each is discussed in the subsections that follow.

### 1.1.1   My Case Page for Hearings/Appeals

If you have requested a hearing or filed an appeal, the **My Case** page will appear as shown in Figure 2 below (the page shown illustrates the **My Case** page for a hearing request, but the **My Case** page for an appeal is identical). The page is divided into three sections: **My Case**, **My Representatives**, and **My Documents**. Descriptions of the numbered items follow Figure 2. *(NOTE: Numbers are not actually seen on the screen.)*

For hearing requests, you will see the following additional information on the **My Case** page:

- When a hearing status changes, a description will display on the **My Case** page between the **My Case** and **My Representatives** sections (e.g. "A hearing in the case is scheduled"). These are informative and do not require you to respond.

- If the hearing request is eligible for ADR, you will see the invitation to participate in ADR on the **My Case** page between the **My Case** and **My Representatives** sections. For details on accepting or rejecting an invitation to participate in ADR, refer to *EEOC Public Portal User's Guide Volume 6 – Hearings with the EEOC*.

**Figure 2 – My Case Page for a Hearing Request**



❶ **My Case**. This section displays the general information about your hearing/appeal and allows you to update your contact information. (Chapter 2)

❷ **My Representatives**. This section displays a table of the (legal or non-legal) representatives you have entered. You may add, update, or delete your representatives here. If you have not entered any representatives, the **My Representatives** section displays only the **Add Representative** button. (Chapter 3)

❸ **My Documents**. This section displays the documents associated with your hearing/appeal that you have submitted, the agency has submitted, or that the EEOC has sent to you (e.g. Report of Investigation, Initial Acknowledgement Notice). You may view, download, and/or submit documents here. (Chapter 4)

### 1.1.2 My Case Page for Closed Cases

You may continue to view information for your case after it has been closed. You may not make any changes to the case information or representatives, and you may not submit any documents (though downloading documents is permitted).

For a closed case a read-only version of the **My Case** page will appear as shown in Figure 3 below (the page shown illustrates the **My Case** page for a closed hearing, but the **My Case** page for a closed appeal is identical). Similar to the page for an open hearing/appeal, the page is divided into 3 sections: **My Case**, **My Representatives**, and **My Documents**.

**Figure 3 – My Case Page for a Closed Case**

## Chapter 2    Manage Contact Information

Please remember that it is your responsibility to ensure that the EEOC has your current address and contact information. On the **My Case** page, you can update your contact information (name, address, phone number, etc.). This allows you to keep the EEOC informed in the event that you have moved, or changed your phone number or email address. (For the example in this chapter, information for a hearing is shown but the process for appeals is identical.)

> ➢ **Tip!** *You cannot change your email address using the **Update My Information** button on the **My Case** page for a specific case. You must use the **Update Account** page as described in EEOC Public Portal User's Guide - Volume 1 – Getting Started.*

To update your contact information, perform the following steps:

**Step 1.**    On the **My Case** page, click on the **Update My Information** button.



**Step 2.**    On the **Complainant Information** page, your current contact information is displayed (initially you will see the information you entered when submitting your request). Make any needed changes.



**Step 3.** Click on the **Save** button. Click on the **Back** button to return to the **My Case** page.

**Step 4.** Click on **Update My Information** at any time to view/update the information.

## Chapter 3    Manage Representatives

If you have an attorney or another person representing you before the EEOC, you may enter information about the person who represents you on the **My Case** page. (For the examples in this chapter, information for a hearing is shown but the process for appeals is identical.)

> ➢  **Tip!** You may enter multiple representatives. The representatives you enter will be listed in the table in the **My Representatives** section on the **My Case** page.

### 3.1    Add a Representative

To add a representative, perform the following steps:

**Step 1.**    On the **My Case** page, click the **Add Representative** button.



**Step 2.**    The **Representative Information** page displays. Indicate if the person who represents you is an attorney by clicking on either the **Yes** or **No** button.

**Step 3.**    Enter the information for the representative.



> ➤ **Tip!** *When the **Zip Code** is entered, the city and state fields are automatically populated.*

**Step 4.** Click on the **Save** button. Click on the **Back** button to return to the **My Case** page.

**Step 5.** The representative you identified will be sent an email to confirm that he/she will be representing you.

**Step 6.** If the EEOC does not receive confirmation from the representative after 10 days, you may confirm by uploading a Notice of Representative signed by your representative, or you may designate a different representative.

## 3.2 Update/Delete a Representative

To update the information for or delete a representative, perform the following steps:

**Step 1.** On the **My Case** page, click on the **View/Update** button beside the representative's name in the **My Representatives** table (shown below).



**Step 2.** When the **Representative Information** page displays, make any necessary changes and click on the **Save** button.

**Step 3.** If you need to delete a representative, click on the **Delete** button. When the confirmation prompt displays, click on the **Yes** button to delete.

**Step 4.** Click on the **Back** button to return to the **My Case** page.

## Chapter 4    Submit and Receive Documents

### 4.1    Submit Documents to the EEOC/Agency

In the **My Documents** section of the **My Case** page, you may upload documents supporting your hearing or appeal. Please wait for further instructions from the Administrative Judge. **Submissions that do not follow the Judges' instructions may result in the Administrative Judge not considering the submission.**

When you upload documents in the Portal, they will be available for you, the EEOC and the agency to read. Once you have uploaded a document, you can open or save it. An uploaded document cannot be deleted.

To upload a document, perform the following steps (for this example, uploading a document for an appeal is shown but the process for hearings is identical):

**Step 1.**    On the **My Case** page, click on the **Upload** button.

---

**My Documents**

You will be able to upload documents as your case progresses. Please wait for further instructions from the Administrative Judge. **Please note that submissions that do not follow the Judges' instructions may result in the Administrative Judge not considering the submission.**

| Upload | | |
|---|---|---|
| **Name** | **Type** | **Added On** |
| 2018000670_Appellant_Acknowledgement_Letter.pdf | Complainant Acknowledgement Letter | 09/25/2018 |

---

**Step 2.**    The **Upload Document** window displays.

---

Type of Document: *     :  [                          ⌄ ]

Select file to upload: *     :  [ Attach Document ]

[ Upload ]  [ Cancel ]

Note:  Fields are mandatory. Please consolidate submissions into as few files as possible and **DO NOT UPLOAD PASSWORD PROTECTED DOCUMENTS.**

---

**Step 3.**    Select the **Type of Document** from the drop-down list.



**Step 4.**   Select the file to upload by clicking on the **Attach Document** button.



Navigate to the file in the **Choose File to Upload** window and click on **OK**.

**Step 5.**   Click on the **Upload** button in the **Upload Document** window.



**Step 6.** The document you uploaded is displayed at the top of the **My Documents** list (documents are listed by **Added On** date, in reverse chronological order, with the most recently uploaded documents listed first).

## 4.2   View/Download Documents

In the **My Documents** section of the **My Case** page, you will see a list of the documents associated with your case that you have sent to the EEOC and those that the EEOC or the agency has sent to you. You may download a copy of a document to view it at any time. You may also save the document to your computer.

The information displayed for each document in the **My Documents** list is shown in Table 1 below.

Table 1 – Document Information Displayed on the Portal

| Column Name | Description |
|---|---|
| Name | The name of the document. Identical to the document's file name minus the file extension. |
| Type | The document type (e.g. "Complainant Appeal Brief"). |
| Added On | The date the document was uploaded. |

To download a document, perform the following steps:

**Step 1.** On the **My Case** page, in the **My Documents** section, locate in the list of documents the one you want to download and click on the **Name** to start downloading it.

**Step 2.** The document will be downloaded. Choose to open it, or save the file to your computer or a shared drive, as shown below:



Do you want to open or save **2018000670_Appellant_Acknowledgement_Letter.pdf** from 66.16.86.169?      Open      Save  ▾      Cancel

If you choose to save it, you will be asked to select a location on your computer where you want it saved. (You may also rename the document if you choose to save it.)

**Be sure to save all documents related to your hearing, or appeal, including Email correspondence.**

# Attempts at Informal Resolution – Not Available

Appellate Activity – Not Available

## COMPLAINANT'S AFFIDAVIT
### Daniel Hamann

I HAVE BEEN ADVISED OF THE FOLLOWING:

I have an obligation to cooperate fully with the investigator, who has been assigned to conduct a thorough and impartial investigation of my complaint of discrimination. Therefore, I must provide a statement for the investigative record, which is true and complete to the best of my knowledge, and belief and which fully addresses the issues accepted for investigation. My statement must be specific with regard to names, dates, places, circumstances and related events, and disclose my firsthand knowledge of any directly related information, which is relevant to the issue(s). My statement, along with my Informal Complaint, Counselor's Summary Report, my Formal Complaint, and the description of the issue(s) for investigation shall serve as the basis for the investigation. While I may voluntarily submit any additional documents or information to the investigator for consideration, it will be the investigator's responsibility to determine what evidence shall actually become part of the investigative report. If there are any documents or facts, which substantiate my allegations, I must provide them to the investigator, or make them known to the investigator. I may suggest witnesses to be interviewed by the investigator. However, the investigator will decide which witnesses to interview based on relevant information he or she feels will be furnished.

My statement is made under oath (or affirmation), without a pledge of confidentiality, in accordance with the rules, regulations, policies, and procedures of the Equal Employment Opportunity Commission and the Department of Interior. This means that any employee(s) whom I accuse of discrimination or other acts of impropriety may be shown this statement or relevant portions and be given an opportunity to respond. Agency officials responsible for processing complaints of discrimination will have access to the entire investigative report. If discrimination is found, any employee accused of discrimination will have an opportunity to review a sanitized version of the report. If discrimination is found and disciplinary action is proposed, the employee accused of discrimination will have an opportunity to review the report in its entirety without deletions. Participants in the discrimination complaint process are specifically protected by law and the EEO regulations from any acts of reprisal, discrimination, coercion, harassment, restraint, or inference for their participation in the investigation and other phases of complaint processing.

I have the right to be represented by a person of my choice during presentation of my complaint and preparation of my statement (so long as my choice does not result in a conflict of interest). I have ___ have not _X_ chosen a personal representative at this stage of my complaint. In the event I have not chosen a representative but obtain a representative at a later date, I will advise the investigator and the Director of the Civil Rights Center in writing.

I have the right to review my statement prior to signing it, and may make initialed corrections if it is incomplete or inaccurate. I have a right to receive a copy of the signed statement.

Having reviewed the preceding information with the investigator, I solemnly _X_ swear

1

_DWA_
(Initials)

____affirm that the statement, which follows, is true and complete to the best of my knowledge and belief, and fully addresses the issues and allegations raised by me in my EEO complaint.

On August 12, 2020, approximately 1:00 p.m., EEO Investigator Shirley Cain telephonically interviewed Daniel Hamann regarding the EEO complaint he filed on December 21, 2019, amended May 22, 2020.

1. Please state and spell your name.
   **A. Daniel Walter Hamann; D-A-N-I-E-L W-A-L-T-E-R H-A-M-A-N-N**

2. Do you have a representative? Is he/she present with you today?
   **A. No**

3. What is your email address?
   **A. dhamann@usbr.gov**

4. What is your telephone number?
   **A. 720-428-9543**

5. When did you begin your employment with the BOR? Month/year.
   **A. September 21, 2015**

6. What is your position title, job series, and grade?
   **A. Electrical Engineer, GS-0850-11**

7. Briefly describe your duties.
   **A. I design electrical systems for BOR facilities.**

8. Who was your first level supervisor from September 2015 to May 22, 2020?
   **A. Jay Boggess**

9. Who was your second level supervisor from September 2015 to May 22, 2020?
   **A. William McStraw from approximately December 2017 through the current date, pending his upcoming retirement.**
   **George Girgis from September 2015-approximatley December 2017**

10. Who are the management officials you allege discriminated against you?
    **A. Jay Boggess; George Girgis (ret); William McStraw (pending retirement); Thomas Luebke (ret), Deputy Director Technical Service Center (TSC); David Palumbo, Commission to BOR; Brenda Burman, Commissioner; David Bernhadt, Secretary of Interior; and, Ryan Zinke, former Secretary of Interior.**

11. What is your date of birth?
    **A. April █ 1953**

2

*DWH*
(Initials)

12. Are the management officials you allege discriminated against you aware of your age? If so, how did they become aware?

**A. Yes; I believe I told them. They also have access to my personal information.**

13. What was the main issue and basis for the complaint?

**A. There is a culture of favoritism towards younger employees. The behavior of favoritism is widespread throughout the TSC, which I believe starts at the top of the Department of Interior.**

14. Which management officials were involved in the activity?

**A. Jay Boggess; George Girgis (ret); William McStraw (pending retirement); Thomas Luebke, Deputy Director TSC (ret); David Palumbo, Commissioner to BOR; Brenda Burman, Commissioner; David Bernhadt, Secretary of Interior; and, Ryan Zinke, former Secretary of Interior.**

**1. Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on March 6, 2020, his supervisor did not assign him a project manager role.**

15. Is this an accurate description of the alleged event?

**A. No; disparate treatment in this context started at the beginning of my employment in 2015 and continues to date. I believe the date of March 6, 2020, mischaracterizes the issue of this pervasive and ongoing pattern of behavior that has existed since I started my employment.**

16. Who was the supervisor that did not assign you to be a project manager?

**A. Jay Boggess**

17. What does the project manager role consist of?

**A. When TSC establishes service agreements, the first-line supervisor assigns a Project Manager (PM) who is responsible for carrying out project management tasks, as delineated in BOR policy. The PM is listed in the Electronic Service Agreement Module (ESAM) system for the service agreement. I am the only Engineer in the ESAM who has not been assigned as a PM; employees hired after me have held the role, some who are recent graduates with very little experience in comparison to my 30 plus years' experience.**

18. Was there a vacancy announcement for this position?

**A. No; there are no vacancy announcements for PM positions. I do not understand how they are assigned. I am not aware of any procedures for assignment; it appears it is based on favoritism. I have requested numerous times to be assigned as a PM with negative results.**

19. Who was assigned to be a project manager?

.

3


(Initials)

A. All other younger engineers in my group were assigned to be PMs. I am the only person in my group who has not been assigned to the role and I am the oldest person in my group.

20. What was his/her age?
A. They are of varied ages ranging from 20's to 50's.

21. Did you address your concerns with your supervisor? If so, what exactly did you say?
A. Yes; I asked him during various performance reviews to be assigned as PM.

22. What was his response?
A. He either ignored me, told me he would consider it or look into it, or said, "maybe".

23. Did you speak to any other management official regarding this alleged event? If so, who?
A. Thomas Luebke was made aware of my request during ADR. I did not feel this was the appropriate venue to discuss this issue.

24. What did you say?
A. I recall telling management I had not been assigned a PM role.

25. What was his/her response?
A. They did not respond to me.

26. Why do you believe this event was discrimination towards you because of your age?
A. Because I believe DOI promotes and encourages favoritism towards younger workers.

27. Do you believe you were treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding these events? If so, how and who?
A. Yes; however, the requirement that individuals be at the same series and grade is not required for substantiating age discrimination.

28. What is their name, title, position, and age?
A. Luke Buchholz, Lisa Gentry, and Eric Mendlin; they are all engineers. I do not know their exact ages, but would estimate them to be in their 30's.

29. Do you have anything else to add to these events?
A. No

2. **Whether Complainant has been subjected to a hostile work environment based on age (YOB: 1953) when, in addition to the foregoing:**

   a. **Starting in September 2015, his supervisor has not given him rotation opportunities;**

4

$\mathcal{DWA}$
(Initials)

30. Is this an accurate description of the alleged events?
   A. **Generally, yes. However, I do not view these events as a hostile work environment, I believe it was disparate treatment based on my age.**

31. What are rotations?
   A. **The Technical Service Center (TSC) Rotation Program Guide does not define the term rotation explicitly. A rotation is an assignment to an employee that is away from their home base duty station lasting 3 to 6 months. A field assignment is outside the TSC, i.e., an assignment to the regional office. As a result of not getting a rotation, I did not receive my career promotion when I expected it.**

32. You allege you have not been afforded the opportunity to work rotations as far back as September 2015. What are the circumstances regarding this alleged event?
   A. **The rotations were mentioned in the vacancy announcement when I applied for the job. I did not mention the lack of the rotation to my supervisor because I had not been advised on how the program worked when I started. I did not know I was supposed to ask for the rotation, I believed the supervisor would assign the rotation as part of his responsibilities. The TSC Rotation Program Guide delineates specific responsibilities. For example, the supervisor identifies group mentors and the Career Advisor identifies career mentors. The manual states, "A funding request should be submitted by the home base supervisor through the Rotation Program Committee to the TSC business manager." In my case, none of this occurred. In fact, the first indication I have of receiving the TSC Rotation Program Guide was March 18, 2016, nearly six months after I started with BOR. I should have been assigned a rotation within 30 days of my starting date with BOR. Rotations were mentioned at my interview and I chose to participate, but I was never provided an opportunity. Management made very little effort to do what is required of them.**

33. How many rotation opportunities were not offered to you?
   A. **I do not know how many rotations I have not been offered since starting with the Agency, it would be any and all potential rotations. My supervisor made to effort to assign a rotation as required by the program. Rotations are a requirement in order to receive a career promotion at the 6-month period versus the 12-month period. I was required to complete two rotations in order to be promoted to my full target grade of GS-11; one at the GS-9 level and one at the GS-11 level. My supervisor's failure to ensure I was offered and completed the rotations delayed by career promotion at the 6-month mark, resulting in a loss of income.**

34. When you became aware you were not being offered rotations, did you address your concerns with your supervisor? If so, what did you say?
   A. **I did not have any guidance on the program so I did not know there was a problem until after contacting Human Resources for guidance sometime after I started in my position. Thus, I didn't know what to address. I didn't know what I was supposed to be do. I simply assumed that the supervisor was following through on his responsibilities.**

5


(Initials)

35. What was his response?

   **A. I addressed the issue with Mr. Boggess during my first performance review. He admitted he dropped the ball and apologized. He never told me he would arrange for the rotation. I did not get the guidance on the rotation until approximately 6 months after I started when I contacted HR. I received the information regarding the rotation program in approximately 2016. After reviewing the guidance, I had a discussion with my supervisor. I recall he told me I would get the promotion at the 12-month time.**

36. Did you speak to any other management official regarding this event? If so, who?

   **A. Rolando Smith-Salazar, Human Resources Specialist in Denver, CO.**

37. What did you say?

   **A. I asked him for agency guidance as it related to rotations.**

38. What was his/her response?

   **A. He sent me the guidance regarding rotational engineers.**

39. Why do you believe this event was harassment towards you based on your age?

   **A. I do not believe this event was harassment, I believe it was disparate treatment because younger engineers were assigned rotations. At the time, I suspected there was a problem, but I was not comfortable addressing my concerns with Mr. Boggess. As time went on, it became clear I was not getting the rotations and the younger employees were.**

40. Do you believe you were treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding this event? If so, how and who?

   **A. Absolutely, the younger engineers were given rotation assignments whereas, I was not. I don't know precise information, because I heard passing comments, saw notes on whiteboards indicating an individual was out. There isn't repository with the names of rotation engineers.**

41. What do you believe their names, titles/position, and age to be?

   **A. Lisa Billy; Jahwill Daily; Kasi Miller; Kasey Nunes; Olivia Cordova; Luke Buchholz; Sam Wiafe; Roland Cheng; and, Victor Millan.**

   **b. Starting in September 2015, his supervisor has given him less training opportunities than his coworkers.**

42. How did you become aware your supervisor gave you less training opportunities than your co-workers?

   **A. I noticed a training bulletins on a printer; I saw notes on a whiteboard from individuals stating they were in training; I became aware during passing conversations with coworkers indicating they were in training; I had conversations with coworkers indicating training was occurring, etc. We do get regular emails**

6

(Initials)

about training, some of which requires funding, but it is not really clear what kind of funding is available. It is highly likely that supervisors have conversations with specific employees offering them insight to training. I am aware of a conversation that was overheard by a coworker who was in an adjoining cube between Mr. Boggess and Eric Mendlin wherein Mr. Bogges told him he wanted Mr. Mendlin to shadow him to assist him in promoting to a supervisor. This is considered on-the-job training. DOI Talent is the on-line system that lists our mandatory training, as well as optional training. If I wanted to take a certain training, I would have to make a request for it. However, I believe the training that is given to certain employees based on the supervisor approaching them and recommending training to them. I do not have proof of this, but I do see evidence that leads me to believe individuals are not requesting the training, it is being given to them so they can be promoted in the Agency. I discovered one particular employee received an enormous amount of training in the ESAM system. Over the years, I observed a pattern of favored employees, who are younger than me, are given training for the purpose of promoting them.

43. Are you aware of which training opportunities were not afforded to you? If so, which training was not afforded to you?
   A. I cannot say exactly which training I was not offered, as I do not know all of the training offered to my co-workers other than a training bulletins on a printer, seeing a note on a whiteboard that a person states they are in training, a passing conversation from a coworker indicating they are in training, and conversations with coworkers that indicate that training is occurring.

44. How did the lack of training opportunities affect your ability to perform the duties of your position? Do you know what kind of training these individuals were receiving?
   A. I cannot say because I do not know of all the training I was not afforded. I believe some of it was PM training. I believe the training is given to favored employees who tend to be younger.

45. Did you address your concerns with your supervisor? If so, what did you say?
   A. I may have had passing conversations. I do not recall specific conversation.

46. What was his response?
   A. I do not recall specifically. When I inquired, I received a canned response.

47. Did you speak to any other management official regarding this event? If so, who?
   A. I do not recall. I do not believe I would have brought it up with anyone other than my first-line supervisor.

48. Why do you believe this event was harassment towards you based on your age?
   A. I believe this event was disparate treatment because there is a pattern of younger employees getting the training.

7


(Initials)

49. Do you believe you were treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding this event? If so, how and who?

A. **Yes; I was given far less training opportunities. Younger employees were given PM positions whereas, I have not been assigned as a PM on any projects.**

50. What is their name, title, position, and age?

A. **Younger people that I believe may have received training include Lisa Billy; Jahwill Daily; Kasi Miller; Kasey Nunes; Olivia Cordova; Luke Buchholz; Sampson Wiafe; Roland Cheng; and, Victor Millan.**

   c. **Starting in September 2015, his supervisor has assigned him tasks below his skill level, held him to a higher standard than his coworkers and excluded him from recognition.**

51. What tasks did your supervisor assign to you that are below your skill level?

A. **I assigned AutoCAD work, which is below my skill level. The work was assigned by sub-group leads, who are not supervisors, but work directly with Mr. Boggess.**

52. How has your supervisor held you to a higher standard than your coworkers?

A. **I have been given very challenging design projects with tight budgets whereas, younger Engineers have been given very liberal budgets to simply review documents. For example, Mr. Buchholtz, was given PM authority for reviewing documents produced by other engineers with a budget of $250,000. I was expected to complete a project using 3D modeling software - Revit. Largely, I had trained myself in Revit. I had never completed a project before using Revit. In fact, in the TSC, many designers are not fluent in Revit. Thus, there is very little empirical information about how long it takes to do a Revit project. However, the narrative on this project has been framed as me not being able to stay within budget. I don't see other younger Engineers held to that standard. Mr. Buchholtz was not required to be versed in any 3D software such as AutoCAD or Revit. However, I was given assignments to design documents, which were very technical and included generating documents in the software. I was given these assignments with a substantially smaller budget. I believe other employees were provided opportunities to appear to be exemplary employees unless one were to look at the underlaying factors.**

53. How has your supervisor excluded you from recognition?

A. **There was an instance where Mr. Boggess recognized two other staff for their "expertise" with Revit. However, I was the second person in our group to complete a project in Revit and was fairly competent with the use of the software, a fact Mr. Boggess ignored. Although I received one or two group awards, I have not been recognized for an individual TOA or cash award since I have been employed with BOR.**

8


(Initials)

54. Did you address your concerns with your supervisor? If so, what did you say?

**A. I probably had many conversations with Mr. Boggess about training, I do not recall what was said verbatim. I was discouraged from bringing my concerns to his attention because the lack of response was demoralizing. I eventually did receive the information through a FOIA request.**

55. Did you speak to any other management official regarding this event?

**A. No; I believed I would lose favor if I went above my supervisor's head.**

56. Why do you believe this event was harassment towards you based on your age?

**A. Because I witnessed younger employees getting awards.**

57. Do you believe you were treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding this event? If so, how and who?

**A. Yes; the younger employees continued to receive individual recognition, whereas I was only recognized once or twice in a group award.**

58. What is their name, title, position, and age?

**A. Darryl Liscomb; Kasey Nunes; Luke Buchholtz; Eric Mellin; and, Lisa Gentry. They are Engineers; I believe they are in their 30s.**

**d. Starting in September 2015 and continuing through July 22, 2019, his supervisor has not given him project manager opportunities;**

59. What were the circumstances surrounding the alleged events from September 2015 through July 22, 2019?

**A. I have never been assigned as a PM which continues to be an issue up to the present date.**

60. Did you address your concerns with your supervisor? If so, what did you say?

**A. Yes; approximately five times. During my most recent mid-year review, I asked Mr. Boggess if there was a possibility of me becoming a PM.**

61. What was his response?

**A. I do not recall; he was very dismissive.**

62. Did you speak to any other management official regarding this event? If so, who?

**A. Yes; I believe I mentioned it to Tom Luebke during ADR.**

63. What did you say?

**A. I told him I had never been assigned as PM.**

64. What was his/her response?

**A. He just stared at the desk.**

9

DWD

65. What harm came to you by not serving in the role of project manager?
   A. **Psychological demoralization; financial; I never get the opportunity to use my skills to the fullest; I am viewed as a subpar employee who doesn't have the skills to complete the duties of my position because no one sees that I have more advanced technical skills than my co-workers. I have used these skills in my prior employment and was successful in my former positions.**

66. Why do you believe this event was harassment towards you based on your age?
   A. **I do not believe these events were harassment, but disparate treatment because younger workers receive PM positions when they clearly are not qualified.**

67. Do you believe you were treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding this event? If so, how and who?
   A. **Yes**

68. What is their name, title, position, and age?
   A. **Lucas Adams; Mathew Becker; Lisa Billy; Wesley Bower; Luke Buchholz; Jeremiah Bradshaw; Alejandro Buitrago; Zachary Cepak; Roland Cheng; Kyle Converse; Jahwill Daily; Patrick Dawson; Meghan Diubaldo; Eric Eastment; Randy Egan; Lisa Gentry; Katherine Guerra; Ryan Hogg; Jeff Hoss; Peter Irey; Zach Johnson; Ryan Kent; David Kresin; Gabe Ledezma; Darryl Liscomb; Eric Mendlin; Victor Millan Aguilar; Kasandra Miller; Shannon Monahan; Michelle Norris; Lisa Orgren; Eric Paquette; Andres Quiniones; Adrian Santiago Alvarado; Michael Shepherd; Nicole Smith; Valerie Batista Stariha; Rolf Swainston; Kenneth Tindall; Adam Toothman; Bradley Vanotterloo; Eric Vaugh; Henry Vu; Matthew Westerdale; and, Sampson Wiafe. They are Engineers and I believe in their mid 30s.**

   e. **In 2016, his supervisor did not provide him the opportunity to apply for a Supervisory Control and Data Acquisition Position;**

69. How did your supervisor prevent you from applying for the position of Supervisory Control and Data Acquisition in 2016?
   A. **This was a collateral duty position which the incumbent is responsible for specialized engineering duties under Supervisory Control and Data Acquisition (SCDA). I have more background in SCDA than any other Engineer in our group. The duty was arbitrarily assigned to a co-worker who is approximately half my age. I do not believe my supervisor told any of the engineers about the opportunity.**

70. Was the position announced through your agency?
   A. **No**

71. How did you become aware that the position had been filled?
   A. **I heard about it in passing conversations. There was never a formal vacancy announcement.**

10

$\mathcal{DWA}$
(Initials)

72. When did you become aware?
   **A. I do not recall the exact time, I believe it was approximately 2016.**

73. Who was selected for the position?
   **A. Lisa Gentry**

74. Are you aware of the age of the person selected? If so, what do you believe it to be? How do you know this?
   **A. No; based on her appearance, I would say mid-thirties.**

75. Do you believe you would have been selected for this position if you were younger? Why or why not?
   **A. Probably because management clearly shows favoritism towards younger employees.**

76. Who do you believe discriminated against you when you were not selected for the position?
   **A. I do not know; it could have been Jay Boggess.**

77. Did you inform him/her of your concerns?
   **A. I spoke to him informally during one of my performance reviews. I advised him of my previous work experience and told him he should be utilizing my skills.**

78. What was his/her response?
   **A. He was dismissive.**

79. Why do you believe this event was harassment towards you based on your age?
   **A. I do not believe this event was harassment; I believe it was disparate treatment related to my age because I have the most experience of all the Engineers. I do not see any other differential between us.**

80. Do you believe you were treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding this event? If so, how and who?
   **A. Of course**

81. What is their name, title, position, and age?
   **A. Lisa Gentry, Engineer; I believe she is in her mid-thirties.**

   **f. In 2016, his supervisor delayed his career-ladder promotion to GS-9, which further delayed future career-ladder and competitive promotions;**

82. How did your supervisor delay your career-ladder promotion in 2016?
   **A. He did not give me a rotation assignment. When I applied for my position, the vacancy announcement stated the opportunity for accelerated career promotions upon the completion of rotations. Mr. Boggess's failure to give me a rotation delayed my career promotion at the 6-month mark, and I did not receive it until 12-**

11

*DWA*
(Initials)

months after being hired. This delay resulted in my other career promotions being delayed.

83. Which month was it due?
A. According to the vacancy announcement, I should have received it in March 2016.

84. Why do you believe he delayed it?
A. He failed to give me a rotation assignment.

85. Did you address your concerns with your supervisor? If so, what did you say?
A. Yes; I asked him about the rotation assignment prior to March 2016 in passing and reminded him my 6-month anniversary was approaching. I told him I had not received a rotation. I believe I also addressed it with him during my mid-year review in March or April 2016.

86. What was his response?
A. He apologized however, he never made mention of giving me the rotation in order to get my career ladder promotion.

87. Did you speak to any other management official regarding this event?
A. No

88. When did you get the career-ladder promotion?
A. September 2016

89. Why do you believe this event was harassment towards you based on your age?
A. I do not believe this event was harassment; I believe it was disparate treatment because younger employees have received preferential treatment, and may have gotten promotions.

90. Do you believe you were treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding this event? If so, how and who?
A. Yes; because I did not receive a rotation and the younger Engineers did, including those who were hired after me.

91. What is their name, title, position, and age?
A. Lisa Billy; Jahwill Daily; Kasi Miller; Kasey Nunes; Olivia Cordova; Luke Buchholz; Sampson Wiafe; Roland Cheng; and, Victor Millan all received rotations. I believe them to be in their mid-30s.

    h. On October 31, 2018, and in fiscal year 2018, fiscal year 2017, and fiscal year 2016, his supervisor put him on a performance standard that did not comply with the Department of Interior's policies;

12

$\mathcal{DWB}$
(Initials)

92. Which performance standards did your supervisor use for your performance evaluations on October 31, 2018 and fiscal years 2018, 2017 and 2016?

A. **Performance is measured utilizing form DI-3100. The issue of performance standards was stated in my formal complaint to demonstrate that employees are promoted in the organization based on favoritism. When I researched the DOI performance system, it became apparent that employee appraisals are easily fabricated; protected by privacy; and, they cannot be viewed by anyone other than a rating official. I believe individuals are simply elevated in status and favoritism, and not bona fide performance.**

93. Which performance standards should have been used?

A. **The performance standards used are boiler plate used for all Engineers. I believe I should be rated on standards that actually measure performance.**

94. Are you aware of the correct performance standards required for your position?

A. **No**

95. How did this event not comply with DOI policies?

A. **A critical element of the performance standard is work assignment or responsibility. It is broad and subjective to the point I do not know the actual duties they are required. I believe the Employee Performance Appraisal Program (EPAP) is the same for all Engineers. A rating is based on the information my supervisor, and/or other individuals, enter on the EPAP; numerical ratings are assigned without any type of substantial information which does not have to be verified and could be false. The final rating stands and there is no recourse within the Agency to object to the EPAP.**

96. How did this affect your performance evaluation?

A. **The system is not accurate which resulted in my being rated at a level 3. I refused to sign my 2019 EPAP because of these inaccuracies.**

97. Do you believe you would have received a higher rating with different performance standards?

A. **Yes; I believe it there was an individualized performance standard instead of a boiler plate, I would have been accurately evaluated based on my accomplishments.**

98. Did you address this issue with your supervisor?

A. **Yes**

99. What did you say?

A. **I told him my EPAP was out of compliance.**

100. What was his response?

A. **He refused to discuss it with me.**

(Initials)

101. Did you speak to any other management official regarding this event? If so, who?
   **A. I do not recall.**

102. Why do you believe this event was harassment towards you based on your age?
   **A. I do not believe this event was harassment, but was disparate treatment based on age because the EPAP system is developed in a manner which allows younger employees to be rated higher resulting in them being promoted.**

103. Do you believe you were treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding this event? If so, how and who?
   **A. Yes; I believe my performance reviews were arbitrarily chosen before the performance occurred and I was given neutral ratings whereas younger employees were given higher ratings.**

104. What is their name, title, position, and age?
   **A. Luke Buchholtz; Lisa Gentry; and, Eric Mendlin who I believe are in their mid-30s.**

   **i. On February 21, 2019, his supervisor failed to address his concern regarding the difficulty of his project assignments.**

105. Please describe the circumstances of the alleged event.
   **A. During that time, I was working on the Durango Pumping plant project using the Revit (3D) software. I was the first person in our group to generate documents using Revit. I taught myself how to use the software and was able to complete a project. However, younger engineers are not tasked with the same type of responsibility. When I brough this up to Mr. Boggess, he didn't seem to care.**

106. What were your concerns?
   **A. I was beginning to run out of budget, and I was trying to explain my concerns to Mr. Boggess and my team lead. They did not appear to care about my concerns about the difficulty of the assignment. I was only one of two people on our group using the Revit software.**

107. Were the project assignments too difficult in relation to your position requirements?
   **A. It was a matter of being assigned to complete difficult tasks with a limited budget whereas younger Engineers were not held to the same standard. For example, Mr. Buchholtz was given less complex assignments with a much larger budget.**

108. Did you speak to any other management official regarding this event? If so, who?
   **A. No**

109. Why do you believe this event was harassment towards you based on your age?
   **A. I do not believe this event was harassment; I believe it was disparate treatment towards me because younger engineers were not held to the same standard.**

(Initials)

110. Do you believe you were treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding this event? If so, how and who?

A. **Yes; the younger Engineers are not required to complete the more difficult projects or learn the software. For instance, Mr. Buchholtz is only required to review documents of projects and not to generate solicitation documents provided by an outside entity.**

111. What is their name, title, position, and age?

A. **Luke Buchholtz. There is only one other Engineer in the department was not expected to learn the software or generate documentation.**

j. **On March 3, 2020, February 21, 2019, October 4, 2018, and February 14, 2018, he was cut off from speaking during meetings;**

112. Please describe the event that took place on February 14, 2018.

A. **During the meeting, I was trying to explain an incident that occurred. While I was speaking, Mr. Boggess continued to cut me off. At some point, I told him he had to stop cutting me off and let me talk. He finally let me talk.**

113. Please describe the event that took place on October 4, 2018.

A. **I called this meeting to resolve some issues regarding the Shasta project. The expectation was that I would run the meeting since I was the one that called it. I was cut off by a Lisa Orgren, who is a team lead, several times, it was as if she didn't want me to talk and continued to talk over me. After the meeting, another team lead who had cut me off during the meeting, noticed my demeanor and apologized.**

114. Please describe the event that took place on February 21, 2019.

A. **I believe this meeting was related to the budget for the Durango Pumping Plant project. I pointed out the fact that at the beginning of a project Engineers generate a task-based estimate and I was trying to convey this information was not a guarantee to the other people present, but Mr. Boggess did not want me to say this because he believed the project budget was based on the estimate and should not deviate from that information regardless of any unanticipated obstacles we would run into.**

115. Please describe the event that took place on March 3, 2020.

A. **This was another meeting regarding the Shasta Dam Barrier Gate project where Ms. Orgren, who is a team lead and younger than me, continued to cut me off while I was speaking. At one point, I very forcibly told her it was important to use decorum and allow others to speak. She appeared to be offended and started to walk out of the room when a supervisor convinced her to come back to the meeting.**

116. Did you address this issue with your supervisor?

A. **No**

(Initials)

117. Did you speak to any other management official regarding this event? If so, who?
   **A. Yes; I sent Mr. McStraw an email and told him this rude pattern of behavior habitually occurs at the TSC. I told him it had the appearance of people trying to stifle others who do not share the same opinion.**

118. What was his/her response?
   **A. He responded to my email, but I do not believe there was any type of investigation conducted into the behavior.**

119. Why do you believe these events were harassment towards you based on your age?
   **A. I believe these events were harassment and disparate treatment based on my age because younger employees were trying to cut me off. I did not observe them trying to cut each other off, only me as the older employee.**

120. Do you believe you were treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding these events? If so, how and who?
   **A. Yes**

121. What is their name, title, position, and age?
   **A. Mr. Mendlin; Ms. Orgren; and, Mr. Boggess.**

   **k. On an unspecified date, the Agency failed to allocate him enough budget to charge overtime.**

122. When, approximately, did this event occur?
   **A. It occurred sometime in March 2020 after we started teleworking due to COVID. I believe another employee has been granted overtime.**

123. How did the Agency fail to allocate enough budget to charge overtime?
   **A. I did not request overtime. This issue is my attempt to point out that Mr. Buchholtz has been charging 40 hours of overtime every pay period for most of 2020; I believe he is the only employee in our group that has been permitted to charge overtime. Mr. Boggess is the approving official for overtime. I believe Mr. Buckholtz, who is a younger employee, is allocated very liberal budgets which allow him to charge the overtime hours. It appears there is widespread fraud being committed. There was no action taken by the Agency when I reported it.**

124. Why did you need to charge overtime?
   **A. I did not need to charge overtime.**

125. Did you work overtime? If so, were you ever compensated?
   **A. No**

16


(Initials)

126. Did you speak to anyone in management regarding this issue?
   **A. No; there are so many issues I am dealing with right now, I am buried documenting things.**

127. Why do you believe this event was harassment towards you based on your age?
   **A. Because a younger employee has been allocated liberal budgets with no accountability for overtime whereas my budgets have been limited. I have not been afforded the same opportunity as the younger employee with regard to budgeting.**

128. Do you believe you were treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding this event? If so, how?
   **A. Yes; Luke Buchholtz**

129. What is their name, title, position, and age?
   **A. Luke Buchholtz, Engineer; I believe he is in his mid-thirties.**

   I. **On unspecified dates, the Agency failed to assign him project manager authority on the LNFH Surface Intake and Fish Passage (F061A) project and the NIIP Pumping Plan G7.5LA HVAC Addition (UC64) project.**

130. Did you request to be assigned as Project Manager for the LNFH Surface Intake and Fish Passage and NIIP Pumping Plan projects?
   **A. No; I do not believe I will be assigned as a PM, so I don't ask. The situation is very adversarial. I believe Mr. Boggess does not believe I am worthy of having a lead position. Engineers take on various roles defined by BOR when working on projects. One example is a Technical Approval (TA) role; to serve in this role Engineers need to have a Professional Engineer (PE) Registration in any state. I was the TA assigned to one of these projects which included direct control of the project and responsibility for the design. I was carrying out my duties as per the regulation. Mr. Boggess is not well versed in relation to regulations and arbitrarily decides who will be in charge of the projects. I told him I had responsibilities as a TA and in response he told me I was not the team lead. I told him I would not sign off on the project as the TA unless I was the team lead.**

131. Did you speak to anyone in management regarding this issue? If so, who did you speak to? What exactly did you tell him/her? What was his/her response?
   **A. No; I do not believe there was any point because Mr. Boggess made it clear I would not be a PM regardless of who I talked to.**

132. Why do you believe this event was harassment towards you based on your age?
   **A. Because lead and authority positions were given to younger Engineers who did not have the experience I do, such as a PE registration. It is another example of someone younger given authority on the projects, even though the regulation states I had authority based on my role as TA.**

*DWB*
(Initials)

133. Do you believe you were treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding this event? If so, how?

**A. Yes; because younger Engineers were assigned to be PM positions. They were making mistakes and I was catching them.**

134. What is their name, title, position, and age?

**A. Fish Hatchery-Shannon Monahan, Civil Engineer for another group, I believe her to be in her late 20's or early 30s.**
**NHP Pumping Plan-Rafal Jankowski, Engineer for another group, I believe he is in his 30s.**

135. Do you have anything else to add to this event?

**A. No**

**3. Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on unspecified dates between July 23, 2019 and May 22, 2020, the agency did not assign him project manager authority on the following projects:**

  **a. Cle Elum Gate Hoist Construction Support (CEGHI)**
  **b. Shasta Dam Crest Road Vehicle Barrier Construction Support (SDCRV)**

136. Was anyone assigned to PM on these projects?

**A. Yes; Zachary Cepak was assigned to the Cle Elum project and Luke Buchholtz was assigned to the Shasta Dam project.**

137. Were you offered to be project manager on these projects?

**A. On March 3, 2020, Al Burnstein, a supervisor from another group, approached me and told me he was going to recommend I be assigned as PM for the Shasta Dam project. However, Mr. Boggess assigned Mr. Buchholtz as the PM. I believe he was assigned because he is younger and less experienced therefore, he would be more willing to carry out tasks assigned by Mr. Boggess that may violate law or regulation. I was never approached about being assigned as PM for the Cle Elum project.**

138. Did you ever address the issue of not being assigned PM to the Shasta Dam project with your supervisor?

**A. No; I did file a whistleblower complaint with the DOI/OIG, because I discovered misconduct by several individuals on the project, but it was not investigated. I received a response from an OIG investigator March 23, 2020, stating the complaint was reviewed and they deemed it would be best addressed by the BOR. This whistleblower complaint was not related to the age discrimination issue in my complaint. However, the issues are interconnected because I exposed misconduct of other personnel assigned to the project.**

(Initials)

139. Did you speak to anyone in management regarding this issue?
    **A. No; I am seeking to file a civil complaint against to BOR.**

140. Why do you believe these events were discrimination towards you based on your age?
    **A. Because the younger employees assigned as PM do not possess the same experience and skills I do. They are more willing to do what their supervisor tells them to do regardless of law or regulation.**

141. Do you believe you were treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding these events? If so, how?
    **A. Yes**

142. What is their name, title, position, and age?
    **A. Mr. Buchholtz, who I believe is in his mid-thirties.**

143. Do you have anything else to add to this event?
    **A. This is an issue of the Agency continuing to assign younger less experienced Engineers to projects over me.**

    **4. Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on or about January 7, 2020, he was not selected for an Electrical Engineer position advertised under the following vacancy announcement numbers:**
       **a. BR-DO-2019-193 (DEU-BM)**
       **b. BR-DO-2019-194 (DEU-BM)**
       **c. BR-DO-2019-195 (MPP-BM)**
       **d. BR-DO-2019-196 (DEU-BM)**

144. Did you apply for an Electrical Engineer position under vacancy announcement numbers BR-DO-2019-193, BR-DO-2019-194, BR-DO-2019-195, and BR-DO-2019-196?
    **A. Yes; I believe I applied to all of them because the position was announced both internally and externally. Originally, they were going to were going to fill four positions and there was an announcement for each position one. Later, Mr. Boggess decided to fill only two of the positions.**

145. What grade is the position?
    **A. GS-12**

146. What is your current grade?
    **A. GS-11**

147. Please explain your Agency's application procedures.
    **A. Mr. Boggess sent an email to all GS-11s informing us there were four vacancy announcements posted on USAJOBS for the position. I applied on-line by completing the application and responding to the questions listed in each announcement. I submitted all four applications on-line through USAJOBS.**

19

*DWB*

148. If so, how and when did you apply?  (Merit promotion, Delegated Examining, VRA, etc.)
    **A. Merit promotion and delegated examining; I do not recall the exact date.**

149. Do you have a record of your applications?
    **A. Yes**

150. Do you have any documentation that shows your application was received and processed?
    **A. Yes**

151. Were you found qualified for the position?
    **A. Yes**

152. If so, were you among the best qualified applicants?
    **A. No**

153. Were you informed why you were not found best qualified?
    **A. No**

154. Was the position filled?
    **A. Yes**

155. If so, how and when did you become aware?
    **A. I was told by Mr. Boggess, I do not recall the date he informed me.**

156. Do you know who reviewed the applications?
    **A. No**

157. Who was selected for the position?
    **A. Luke Buchholtz and Chris Purdy**

158. Are you aware of the age of the person selected?  If so, what do you believe it to be?  How
    do you know this?
    **A. Based on their appearance, I believe they are in their mid-thirties**

159. Did you speak to anyone in management about this vacancy, either before or after a selection
    was made?  If yes, who?  When?  What was the contest of your conversation?
    **A. Prior to these announcements, it was a requirement that applicants be PE
    registered.  However, when the positions were announced, that was no longer a
    requirement.  When I spoke to Mr. McStraw about it, I told him it was obvious
    what was going on by them dropping the PE requirement for this announcement.
    He responded by sending a blanket email stating the position was hard to fill which
    was the reason the PE was no longer required.**

160. Why do you believe you were not best qualified for this position because of your age?
    **A. Because I am the best qualified applicant; there is only one thing that distinguishes
    us, and that is age.**

20

*DWB*

161. Why do you believe this event was discrimination towards you based on your age?
   **A. Clearly, I am more qualified for the position; the regulation states the Agency is required to hire the best qualified person for the position, but they chose to hire younger engineers who were less qualified.**

162. Do you believe you were treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding this event? If so, how?
   **A. Yes**

163. What is their name, title, position, and age?
   **A. Luke Buchholtz and Chris Purdy. Based on appearance, I believe Mr. Buchholtz is in his mid-thirties. I do not know Mr. Purdy's age, but I am aware he graduated from college in 2015 and spent time in the military.**

164. Do you have anything else to add to this event?
   **A. I submitted a FOIA request related to this issue. My request was only partially approved; I am appealing the information the Agency denied.**

*General Harassment/HWE Questions:*

170. Have you received training on anti-harassment training while employed by the agency? If so, when?
   **A. I completed a training on EEO and Preventing Discrimination in the Federal Workplace in August 2016. I also completed Creating a Culture of Civility in the Federal Workplace in January 2019. I recall having training in a classroom setting with Human Resources related to Anti-Harassment, but it is not reflected in my training record.**

171. Is there any type of anti-harassment training mandatory for all employees? If so, how often?
   **A. I am fairly certain there is; I do not know how often it is required.**

172. To the best of your knowledge, what are you supposed to do if you believe that you have been harassed?
   **A. Report it to my supervisor.**

173. Did you tell anyone that you felt that you were being harassed due to your age? If so, who, when, what did you say/do?
   **A. I talked to Mr. McStraw about the issue of being cut off at meetings. I do not recall his response. Nothing ever came of my complaint about being cut off at meetings.**

174. Did you follow the procedures in regard to being harassed? If so, what did you do and when?
   **A. Yes; I spoke to Mr. McStraw.**

*DWB*
(Initials)

175. Did you take advantage of any preventive or corrective opportunities provided by management or tried to avoid harm otherwise?
A. **The agency did not provide any such opportunities.**

176. How did the alleged harassment affect you?
A. **It was demoralizing and made me reluctant to participate in meetings because there is always a sense that I will be cut off again.**

177. Did you suffer from any physical and/or emotional harm came to you from the alleged harassment?
A. **I was treated for Irritable Bowel Syndrome (IBS) over the last few years which both my doctor and psychiatrist said were related to anxiety.**

178. Did you seek medical help because of this? If so, when did you seek medical help?
A. **Yes; the first time was in September 2018 and March of 2020. I first saw the psychiatrist in June 2020. I have requested job modifications for a reduced work schedule of six days per week, five days per week from March 23, 2020, through March 23, 2021, under FMLA, which was approved on March 25, 2020.**

179. Was there an internal investigation conducted into the claim of harassment?
A. **To the best of my knowledge, there was no investigation.**

180. The allegations in this claim go back to September 2015, what is significant about that date?
A. **That is when I started working at BOR.**

181. Why did you wait until September 2019, 4 years, to contact the EEO Office about the alleged harassment?
A. **At the time it was occurring, I was not aware of the requirements of EEOC and the merit systems principles. It was not apparent to me that age discrimination was occurring until I started researching the regulation. At some point, it became apparent to me these issues were clearly age discrimination which is when I filed the complaint.**

182. What relief are you seeking in this matter?
A. **Equitable treatment; recovery of differential pay; and, liquidated damages.**

183. Do you know of other individuals, not yet discussed, who may have knowledge pertaining to your allegations? If so, whom and what relevant information do they have?
A. **J. Daly and Adrian Santiago-Alvardo; I believe they think I have been working below my skill level.**

184. Do you have any documentation to submit in support of your testimony?
A. **I cannot think of anything other than what I have already submitted to the investigator.**

22


(Initials)

185. Is there anything else you believe is relevant to the investigation I have not asked you about in this interview?

   **A. In March 23, 2020, I sent an email to the EEO Counselor to inform him I believe my claims are as per 29 CFR §1614.105 references the 45-day time limit when individuals were not notified or were not aware of them related to the discrimination exceeded 45-days of filing. I was not aware of the discriminatory activity until after I researched the issue and realized everything that occurred was discrimination. Other facts surfaced at a later date, such as individuals receiving cash awards. I believe I should be permitted to make the claims for the incidents that occurred after the 45-day time limit, because I did not reasonably know the discrimination occurred until after the 45-day period. The Agency has ignored my request to have these issues included in my claim of disparate treatment. As a result, I filed a complaint of improper handling of my EEO complaint due to the Agency's refusal to accept my complaint of disparate treatment based on my age. Also, the Merit Systems Principals state favoritism and arbitrary actions are prohibited by law. In the course of giving preferential treatment to younger employees, the Agency is violating the Merit Systems Principals. The Agency's rebuttal is that the younger employees were promoted based on merit, but there is no evidence of their claim. The Agency violated the Merit Systems Principals in the course of discriminating against me.**

186. May I contact you in the future if I have additional questions?

   **A. Yes**

I have reviewed this statement, which consists of twenty-three (23) pages, and hereby solemnly swear that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

DANIEL HAMANN  Digitally signed by DANIEL HAMANN Date: 2020.08.19 19:22:01 -06'00'          8/19/20

Signature of Affiant                                     Date

23

*DWH*
(Initials)

Table of Contents

1. Vacancy announcement for Electrical Engineer (Open March 20, 2015 through September 10, 2015)
2. EEOC Hearing Request, dated August 1, 2020
3. Explanation of Relief, dated August 2, 2020
4. Various emails dated October 28, 2015 through December 28, 2017

# Electrical Engineer, GS-0850-05/07/09/11 (PO-DEU)

## BUREAU OF RECLAMATION

few vacancies in the following location:

📍 Lakewood, CO

Work Schedule is FULL TIME - PERMANENT

Opened Friday 3/20/2015
(571 day(s) ago)

🕓 Closed Thursday 9/10/2015
(397 day(s) ago)

**Salary Range**
$36,379.00 to $81,706.00 / Per Year

**Series & Grade**
GS-0850-05/11

**Promotion Potential**
11

**Supervisory Status**
No

**Who May Apply**
All United States Citizens and U.S. Nationals.

**Control Number**
398386500

**Job Announcement Number**
BR-DO-2015-041

## Job Summary

About the Agency

This is an open continuous vacancy. Qualified applicants may be referred as early as April 10, 2015 through September 10, 2015. The cut-off dates for referrals are as follows: April 10, 2015, May 10, 2015, August 10, 2015 and September 10, 2015.

To be considered, applications submitted through the online application process must be received by 11:59 p.m. eastern time the day before a referral certificate of candidates is issued.

**This position is being advertised concurrently under BR-DO-2015-042, for current federal employees serving under a competitive service career or career-conditional appointment or reinstatement eligible. If you are interested in applying under both announcement numbers, you must submit application packages for each.**

Reclamation is seeking a career professional looking for an opportunity to capitalize on his/her expertise as a Electrical Engineer. You can make a difference in the West by providing professional review on electrical systems, review designs, participate on field inspections, provide troubleshooting support, and develop performance data on generating units and electrical systems.

Here is a great opportunity to join a great organization with excellent growth potential!

You can progress from $36K to $62K in 4 years! Year 1 - $36,379 (GS-5), Year 2 - $45,057 (GS-7), Year 3 - $55,116 (GS-9) and Year 4 - $62,850 (GS-11). Promotions to the next grade/salary level are neither guaranteed nor automatic, but based on supervisor initiation.

This position is an entry-level engineer hired under the requirements and provisions of Reclamation's Rotation Engineer Program (Program). The program provides for intensive training and professional development. A program participant may be promoted from GS-5 to GS-7 or from GS-7 to the GS-9 after a minimum of 6 months of intensive training and evidence of professional development as documented through successful performance in the program. Only 1 accelerated promotion may be granted and promotions are neither guaranteed nor automatic, but initiated at the request of the supervisory official.

LOCATION: Hydropower Diagnostics and SCADA, Lakewood, CO

Relocation expenses are not authorized for this position. However, the possibility exists that a recruitment incentive may be paid to a selectee.

DOI uses E-Verify to confirm the employment eligibility of all newly hired employees. To learn more about E-Verify, including your rights and responsibilities, please visit www.dhs.gov/E-Verify.

## Duties

-Researches power apparatus evaluation, diagnostics, field testing, and operation and maintainance.
-Participates on periodic field inspections, operations and maintenance reviews and special-examinations of the Region's power and

pumping facilities.
-Provides troubleshooting engineering support and consultation on equipment failures and malfunctions of electrical and mechanical equipment.
-Develops performance data on generating units and other electrical systems.
-Prepares engineering reports, estimates, design summaries and other related engineering documents.

## Travel Required

- 25% or Greater

- Travel is required for this position.

## Relocation Authorized

- No

## Key Requirements

- U.S. Citizenship or U.S. National

- Suitable for Federal Employment, determined by background investigation.

- You must submit resume and supporting documentation (See How to Apply)

- You must meet specialized experience requirements; (See Qualifications)

- For veterans consideration, submit document(s) under Required documents

-

## Qualifications

To qualify for this position you must possess:

**Basic Requirements:**
**A. Degree:** Professional Engineering. To be acceptable, the curriculum must: (1) be in a school of engineering with at least one curriculum accredited by the Accreditation Board for Engineering and Technology (ABET) as a professional engineering curriculum; or (2) include differential and integral calculus and courses (more advanced than first-year physics and chemistry) in five of the following seven areas of engineering science or physics: (a) statics, dynamics; (b) strength of materials (stress-strain relationships); (c) fluid mechanics, hydraulics; (d) thermodynamics; (e) electrical fields and circuits; (f) nature and properties of materials (relating particle and aggregate structure to properties); and (g) any other comparable area of fundamental engineering science or physics, such as optics, heat transfer, soil mechanics, or electronics.

**OR**

**B. Combination of education and experience** -- college-level education, training, and/or technical experience that furnished (1) a thorough knowledge of the physical and mathematical sciences underlying professional engineering, and (2) a good understanding, both theoretical and practical, of the engineering sciences and techniques and their applications to one of the branches of engineering. The adequacy of such background must be demonstrated by one of the following:

**Professional registration** -- Current registration as a professional engineer by any State, the District of Columbia, Guam, or Puerto Rico. Absent other means of qualifying under this standard, those applicants who achieved such registration by means other than written test (e.g., State grandfather or eminence provisions) are eligible only for positions that are within or closely related to the specialty field of their registration. For example, an applicant who attains registration through a State Board's eminence provision as a manufacturing engineer typically would be rated eligible only for manufacturing engineering positions.

**Written Test** -- Evidence of having successfully passed the Engineer-in-Training (EIT) examination, or the written test required for professional registration, which is administered by the Boards of Engineering Examiners in the various States, the District of Columbia, Guam, and Puerto Rico. Applicants who have passed the EIT examination and have completed all the requirements for either (a) a bachelor's degree in engineering technology (BET) from an accredited college of university that included 60 semester hours of courses in the physical, mathematical, and engineering sciences, or (b) a BET from a program accredited by the Accreditation Board for Engineering and Technology (ABET) may be rated eligible for certain engineering positions at GS-5. Eligibility is limited to positions that are within or closely related to the specialty field of the engineering technology program. Applicants for positions that involve highly technical research, development, or similar functions requiring an advanced level of competence in basic science must meet the basic requirements in paragraph A.

Because of the diversity in kind and quality of BET programs, graduates of other BET programs are required to complete at least 1 year of additional education or highly technical work experience of such nature as to provide reasonable assurance of the possession of the knowledge, skills, and abilities required for professional engineering competence. The adequacy of this background must be

demonstrated by passing the EIT examination.

***Specified academic courses*** -- Successful completion of at least 60 semester hours of courses in the physical, mathematical, and engineering sciences and in engineering that included the courses specified in the basic requirements. The courses must be fully acceptable toward meeting the requirements of a professional engineering curriculum as described in paragraph A.

***Related curriculum*** — Successful completion of a curriculum leading to a bachelor's degree in engineering technology or in an appropriate professional field, e.g., physics, chemistry, architecture, computer science, mathematics, hydrology, or geology, may be accepted in lieu of a degree in engineering, provided the applicant has had at least 1 year of professional engineering experience acquired under professional engineering supervision and guidance. Ordinarily there should be either an established plan of intensive training to develop professional engineering competence, or several years of prior professional engineering-type experience, e.g., in interdisciplinary positions. (The above examples of related curricula are not all-inclusive.)

### In addition to meeting Basic Requirements, all applicants must possess one year of specialized experience as defined below:

**DEFINITION OF SPECIALIZED EXPERIENCE:** To meet specialized experience, your resume must describe experience that demonstrates the particular knowledge, skills, and abilities as defined below:

**GS-05:** Successfully completed, or will complete by entrance on duty, a full 4-year course of study in an accredited college or university leading to a professional engineering degree **OR** I have completed a combination of education and experience as described under BASIC REQUIREMENTS above.

**GS-07:** One year of specialized experience equivalent in difficulty and complexity to at least the GS-05 level in the Federal service which includes assisting with applying basic principles, theories, or established practices in the areas related to power apparatus evaluation, diagnostics, field testing, research, or operation or maintenance associated with large motors, generators, power plant or switchyard equipment, or associated control systems.

**GS-09:** One year of specialized experience equivalent in difficulty and complexity to at least the GS-07 level in the Federal service which includes applying basic principles, theories, and established practices in the areas related to power apparatus evaluation, diagnostics, field testing, research, or operation and maintenance associated with large motors, generators, power plant or switchyard equipment, or associated control systems; identifying problems and recommending corrective action to electrical engineering systems.

**GS-11:** One year of specialized experience equivalent in difficulty and complexity to at least the GS-09 level in the Federal service which includes reviewing electrical systems in a water control facility under closer supervision; reviewing designs before construction or equipment procurement under closer supervision; participating in field inspections under closer supervision; providing technical support to others on equipment failures under closer supervision; and gathering data from electrical systems or generating units under closer supervision.

#### Substitution of Education for Experience:
**GS-5:** 4 years of undergraduate education leading to a bachelor's degree. (Meeting of the basic educational requirements).

**GS-7:** 1 year of graduate-level education *or* superior academic achievement (SAA) at the baccalaureate level in a professional engineering curriculum is qualifying for GS-7.

**GS-9:** 2 years of progressively higher level graduate education leading to a master's degree *or* master's or equivalent graduate degree.

**GS-11:** 3 years of progressively higher level graduate education leading to a Ph.D. degree *or* Ph.D. or equivalent doctoral degree.

Superior Academic Achievement: The superior academic achievement provision is to be used to determine eligibility for applicable GS-7 level positions of persons who have completed (or expect to complete within 9 months) all the requirements for a bachelor's degree from an accredited college or university with a qualifying G.P.A., class standing, or honors society. For more information please visit http://archive.opm.gov/qualifications/policy/ApplicationOfStds-04.asp#e4f This position has a mandatory education requirement; you must furnish a copy of your transcript of college work completed (unofficial copy is acceptable). Transcripts must include the name of the college or university and date the degree was conferred. Non-submission will result in you being rated not qualified for the position.

Foreign Education: To receive credit for education completed outside the United States, applicants must show proof that the education has been submitted to a private organization that specializes in interpretation of foreign educational credentials and such education has been deemed at least equivalent to that gained in conventional U.S. education programs. You must meet all qualification requirements by the reporting date. To be considered for this position, you must submit a copy of your current transcripts with your application (See Required Document Section). **If a degree is not yet completed but will be by the reporting date, if selected, you must submit final transcripts OR an official letter (on letterhead) from your university's registrar's office indicating your graduation date.**

## Security Clearance

Q - Nonsensitive

## What To Expect Next

After all application packages have been received, resumes and transcripts will be reviewed to ensure applicants meet the basic qualification requirements. Each applicant who meets the basic qualifications will be further evaluated on the information provided in the Assessment Questionnaire. Best-qualified applicants will be referred to the selecting official. After making a tentative job offer, a suitability and/or security background investigation will be conducted. A final job offer is typically made within 40 days after the deadline for applications. Applicants should monitor their status for positions with the Bureau of Reclamation, by regularly checking their public status notifications in their USAJOBS profile.

## BENEFITS
Review our benefits

## Other Information

--The Bureau of Reclamation has determined that the duties of this position are suitable for telework and the selectee may be allowed to telework with supervisor approval.

--Selective Service: If you are a male applicant born after December 31, 1959, you must certify that you have registered with the Selective Service System, or are exempt from having to do so under the Selective Service Law. For more information visit: http://www.sss.gov.

--Equal Employment Opportunity: The United States Government does not discriminate in employment on the basis of race, color, religion, sex, national origin, political affiliation, sexual orientation, gender identity, marital status, disability and genetic information, age, membership in an employee organization, or other non-merit factor.

--Background Investigation: This position requires the completion and favorable adjudication of a low risk background investigation. This is a condition of employment.

--Driver's License: This position requires a valid driver's license. This is a condition of employment.

Applications (resume and assessment questionnaire) for this vacancy MUST be received online BEFORE midnight Eastern Time (Washington D.C. time) on the closing date of this announcement. When you're ready to apply, click the blue APPLY ONLINE button at the side of this page.

This vacancy is being announced through Bureau of Reclamation's Hiring System--HireMe. For more information about the HireMe system and the registration process, visit: http://www.usbr.gov/pmts/hr/hireme.html.

As part of the on-line application process, applicants may be required to submit supporting documents. Failure to submit the requested supporting documents may result in your not being considered for this position.

Options for submitting supporting documentation include Auto Requested Fax or uploading from your USAJOBS profile - instructions provided during the online application process. In addition, you may E-mail your supporting documentation to codo@usbr.gov, fax directly to the HR Office at 303-445-6349, mail to (DFC) 6th and Kipling Building 67, Rm 348, Denver, CO 80225, OR hand-deliver to HR Office: Denver Federal Center (DFC) 6th and Kipling, Bldg 67, Rm 348, Denver, CO 80225. Include your name and the vacancy number on the supporting document(s).

This agency provides reasonable accommodation to applicants with disabilities. If you need a reasonable accommodation for any part of the application and hiring process, please notify us at the phone number shown at the bottom of this page. The decision on granting reasonable accommodation will be on a case-by-case basis.

## How You Will Be Evaluated

Category rating and selection procedures will be used for evaluating this position. If you meet the basic qualification requirements, your on-line responses to the vacancy assessment questionnaire will be used to determine the quality and extent of your experience,

                            000239          Exhibit F-1 - page 28 of 56

education, training, etc., for placement in one of the following categories: 1) Best Qualified, 2) Well Qualified and 3) Qualified. Qualified candidates will be assigned a numerical score on a scale of 70-100 and Veterans with preference will be placed at the top of their respective category. The assessment questionnaire will take you approximately 30 minutes to complete.

Applicants will be further evaluated on the following "Knowledge, Skills and Abilities (KSAs)" :

1. Skill in modifying standard practices and adapt equipment or techniques to solve a variety of engineering problems.

2. Knowledge of theory, practice, and techniques of power engineering.

3. Ability to plan, design, troubleshoot, and develop solutions to problems with electrical systems associated with power generation and pumping plant equipment and systems.

4. Ability to clearly communicate verbally and prepare well-written, clear, and concise technical analysis reports and related correspondence.

5. Ability to use automated control systems and applications to prepare engineering and related documents.

Applicant's answers to questions will be verified against information provided in their online resume. Be sure that the resume clearly supports the responses to all the questions by addressing experience, education and/or training relevant to this position. Applicants must make a fair and accurate assessment of their qualifications. If a determination is made that you have rated yourself higher than is apparent in your description of experience, competencies, skills, and/or education/training OR that your resume/application is incomplete, you may be rated ineligible or your score may be lowered.
**To preview questions please click here.**

To be considered for this position, applicants are required to submit a resume (with dates of employment, i.e. years and months), an on-line assessment questionnaire, and the following supporting documents, as appropriate:

--TRANSCRIPT(S): All applicants MUST furnish a copy of your college transcript(s), if applicable. If selected, you will be required to provide official college transcripts to verify your educational qualifications prior to reporting for work.

**--If a degree is not yet completed but will be by the reporting date, if selected, you must submit final transcripts OR an official letter (on letterhead) from your university's registrar's office indicating your graduation date.**

--DD-214, CERTIFICATE OF RELEASE FROM ACTIVE DUTY: If you are entitled to veterans' preference, you must provide a copy of your DD-214, and you should indicate the type of veterans' preference you are claiming on your resume. Your veterans' preference entitlement will be verified by the employing agency.

--For 5-point veterans' preference, submit a copy of your DD-214 (Member 4 Copy), or an official statement of service from your command if you are currently on active duty, or other official documentation (e.g., documentation of receipt of a campaign badge or expeditionary medal) that proves your military service was performed under honorable conditions.

--For 10-point veterans' preference, please submit a Standard Form (SF) 15, Application for 10-Point Veteran Preference, DD-214, and the required documentation requested by this form.

--For information on veteran's eligibility visit: http://www.opm.gov/policy-data-oversight/veterans-services/vet-guide/.

--CTAP/ICTAP provides placement assistance to permanent Federal employees who are surplus, displaced or involuntarily separated. Applicants claiming CTAP-ICTAP eligibility must submit a copy of their most recent performance appraisal, proof of eligibility and most current SF-50 noting position, grade level, and duty location with their application. To be considered under CTAP/ICTAP, applicants must be well-qualified, i.e. meet the minimum qualification requirements, including selective factors, education and experience requirements and score at least 90 on the assessment questionnaire as established, and be able to perform the duties of the position upon entry. For information on CTAP/ICTAP, visit: http://www.opm.gov/ctap/index.asp.

000240          Exhibit F-1 - page 29 of 56



**U.S. DEPARTMENT OF THE INTERIOR**
**Bureau of Reclamation**

# Department Of The Interior

## Bureau of Reclamation

### Contact

HR Service Center
Phone: 303-445-2684
Email: codo@usbr.gov

### Address

Bureau of Reclamation
P.O. Box 25007
DFC, Bldg. 67
Denver
CO
US
303-445-6349

000241          Exhibit F-1 - page 30 of 56

## EEOC HEARING REQUEST

Re: *Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior*, Agency Case No. DOI-BOR-19-0764

I am requesting a hearing before an Equal Employment Opportunity Commission (EEOC) Administrative Law Judge, pursuant to 29 C.F.R. § 1614.108(g). I hereby certify that more than 180 days have passed from the date I filed my complaint.

Agency Case Number: **DOI-BOR-19-07604**

Name: **Daniel W Hamann**

Address: **10799 W ALAMEDA AVE UNIT 150032**

City, State, Zip: **LAKEWOOD CO 80215-7402**

Phone Number: **720-428-9543**

☒ In accordance with § 1614.108(g), I have sent this request to the following EEOC District Office:

> Equal Employment Opportunity Commission
> Phoenix District Office
> 3300 N. Central Avenue, Suite 690
> Phoenix, AZ 85012

☒ In accordance with § 1614.108(g), I have also sent a copy of this request for a hearing to the Bureau of Reclamation Civil Rights Division at:

> Manager, Civil Rights Division
> Bureau of Reclamation
> P.O. Box 25007 (84-11000)
> Denver, CO 80225

☒ In accordance with § 1614.108(g), I have also sent a copy of this request for a hearing to the U.S. Department of the Interior Office of Civil Rights Director at:

> Director, Office of Civil Rights
> U.S. Department of the Interior
> 1849 C Street NW (MS-4309)
> Washington, D.C. 20240

_Daniel W. Hamann_
_____
Signature

**08/01/2020**
_____
Date

The relief sought under this claim includes equitable treatment, recovery of differential pay, and liquated damages are.

Equitable treatment herein means pay commensurate with skill level. To achieve that an employee should be compensated at a grade level that is commensurate with skill level.

Calculations are based on me working through 2025 as an anticipated last year before retirement.

When I started working at the Bureau of Reclamation on September 21st 2015, I was under the assumption there was myriad of skills and techniques that I had to learn to be fully skillful in government work. However, over time, I realized I had nearly all the skills needed, and actually had many more skills than most of my coworkers. It also became apparent that the government often carried out work using obsolete techniques.

Thus, in retrospect, it became apparent that from the day I started I had the skill level of at least a GS-13, and actually knew considerably more about our type of work than my GS-14 supervisor and my GS-15 second line supervisor. To-wit: the typical responsibilities of a GS-13, include responsible charge of design, project management, intimate technical knowledge, and communication skills. I had these skills. To that end, my experience goes back almost 30 years, which covers the span that is greater the nearly any other span of experience of any other individual in my group.

However, it became apparent very early on that I was being held back, and others advanced, not because of skills, but because of personal favoritism.

In quantifying the recovery of differential pay, the years 2016 through 2020 establish the time period for differential back pay, while the years 2021 through 2025 establish a time frame for differential front pay. However, if I am instated as a GS-13, the claim for differential front pay would be vacated.

In establishing, differential front pay, single step promotions are assumed for each year along with a cost of living increase of three percent. Thus, the first year of differential front pay is based on the most recent pay table, assuming a single step increase coupled with a three percent cost of living. Thereafter, for the years 2022 through 2025, the salaries are derived using the parameters.

The liquidated damages have been set based on the maximum allowed, which is the differential front pay over the years 2016 through 2020. The liquidated damages will offset the psychological effects, such as demoralization, physiological effects leading in treatment by a medical provider, compensation for time incurred pursing this claim, et al.

Summarizing, the lost differential backpay is approximated at $154,000 for the years 2016 through 2020, with an equal amount for liquidated damages. The differential front pay is set at 2021 through 2025 at $136,772 which would be vacated in the event of instatement to a grade level commensurate with my skill level. These are summarized as follows with a grand total of $444,772: (see table on next page).

Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior
Agency Case No.DOI-BOR-19-0764
Explanation of Relief
Dan Hamann
August 2, 2020`

**SUMMARY OF RELIEF**

| Description | Amount |
|---|---|
| Differential Back Pay | $154,000 |
| Differential Front Pay | $136,772 |
| Liquidated Damages | $136,772 |
| **Total** | **$427,544** |

Refer to the spreadsheet at the end. The calculation are based on that spreadsheet using the following column headers, explained as follows:

**SPREADSHEET COLUMN NAMES**

| FY: | Fiscal Year |
|---|---|
| Grade DH | Grade at which I was paid (DH = Dan Hamann). |
| Grade ET | Grade of equitable treatment based on skill level (ET = Equitable Treatment). |
| Table DH | Represents the value from the pay table for that period |
| COL DH | Pay based on cost of living. For past years, this is equal to the pay table. |
| Table ET | Represents the value from the pay table for that period for equitable treatment. |
| COL ET | Adjusts the pay for cost of living increase at three percent for future years. |
| Diff | Difference between actual pay and equitable treatment pay |
| % | Percent different between actual pay and equitable treatment pay |

**SPREADSHEET EXPLANATION**

Bracketed words refer to columns from which value was derived. Annual pay increases are assumed in the sequences shown under [Grade DH] and [Grade ET]. The first row is explained as follows, which can then be used for and explanation of subsequent rows.

I was hired as a GS-7 step 1. Using the pay table that was effective at that time, a GS-7 step 1 [Grade DH] salary level was $43,037 [Table DH]. For a GS 13 step one [Grade ET], the salary is listed is $90,779 [Table ET]. This results in a differential of $47,742 [Diff]. Each year thereafter was figured in that manner.

Fiscal years 2021 to 2025 are used to calculate front pay. To establish a basis for each of the annual pay levels, values from the most current pay schedule are used as starting point where each and then those numbers are adjusted upward for 3% cost-of-living increases, which is, of course, cumulative.

For example in fiscal year 2021, had I been receiving single step pay increases, my grade level will be GS-11 step 4 [Grade DH]. Had I started at the rate I was qualified for, which was a GS-13 step one [Grade ET], in 2016, by 2021 that would have increased to a GS 13 step 6. Using a cost-of-living increase based on the most recent pay table, the pay level for a GS 11 step four is $92,004 [Table DH]. The pay rate for a GS 13 step 6 is $115,403 [Table ET].

Each of those values is adjusted upward at 3%, for cost of living increases, resulting in $94,764 [COL DH], for a GS-11 step 4 and $118,865 [COL ET] for a GS 13.6. The differentials between those two salary rates, is $24,101 [Diff]. Each year thereafter the calculations are similar, although obviously each cost of living increase, is cumulative from the previous year.

## SPREADSHEET

| FY | Grade DH | Grade ET | Table DH | COL DH | Table ET | COL ET | Diff |
|------|----------|----------|----------|-----------|-----------|-----------|-----------|
| 2016 | GS-7.1 | GS-13.1 | $43,037 | $43,037 | $90,779 | $90,779 | $47,742 |
| 2017 | GS-9.1 | GS-13.2 | $53,912 | $53,912 | $96,068 | $96,068 | $42,156 |
| 2018 | GS-11.1 | GS-13.3 | $83,135 | $83,135 | $103,359 | $103,359 | $20,224 |
| 2019 | GS-11.2 | GS-13.4 | $86,097 | $86,097 | $107,359 | $107,359 | $21,262 |
| 2020 | GS-11.3 | GS-13.5 | $90,164 | $90,164 | $112,780 | $112,780 | $22,616 |
| | | | | | | | **$154,000** |
| | | | | | | | |
| 2021 | GS-11.4 | GS-13.6 | $92,004 | $94,764 | $115,403 | $118,865 | $24,101 |
| 2022 | GS-11.5 | GS-13.7 | $93,844 | $99,559 | $118,026 | $125,214 | $25,655 |
| 2023 | GS-11.6 | GS-13.8 | $95,684 | $104,556 | $120,649 | $131,836 | $27,280 |
| 2024 | GS-11.7 | GS-13.9 | $97,524 | $109,764 | $123,272 | $138,744 | $28,980 |
| 2025 | GS-11.8 | GS-13.10 | $99,364 | $115,190 | $125,895 | $145,947 | $30,757 |
| | | | | | | | **$136,772** |

| From: | Smith-Salazar, Rolando N |
|---|---|
| To: | Hamann, Daniel (Dan) W |
| Cc: | Boggess, Jay S |
| Subject: | Re: Rotational Engineer Program Requirements |
| Date: | Wednesday, October 28, 2015 10:20:43 AM |
| Importance: | High |

Dan,

We can certainly wait a week. Please send it as soon as you can. This documentation is necessary to track your rotations and verification of compliance when your name is submitted for grade increases ($).

Thank you,

Rolando Smith-Salazar
HR Specialist (HR Development)
Bureau of Reclamation
Human Resources Division
Denver/Washington Learning Office
303-445-2655/office
303-445-6349/fax

On Wed, Oct 28, 2015 at 9:24 AM, Hamann, Daniel (Dan) <dhamann@usbr.gov> wrote:
Rolando - Any possibility of getting a one-week extension? - Dan Hamann

On Wed, Oct 28, 2015 at 7:59 AM, Smith-Salazar, Rolando <rsmithsalazar@usbr.gov> wrote:

Dan,

This is a reminder that your IDP is due today October 28, 2015. As a requirement of your appointment under the Rotational Engineer program you must meet with your supervisor to discuss your development and create an IDP. Please see the attached memo that was sent to you last month. Please submit a copy of the IDP to the Human Resources Learning Office, Mail Code, 84-52200. You may submit it electronically. If you have any questions or require assistance, I can be reached at the phone number below.

Thank you,

Rolando Smith-Salazar
HR Specialist (HR Development)
Bureau of Reclamation
Human Resources Division
Denver/Washington Learning Office
303-445-2655/office

303-445-6349/fax

--
Dan Hamann, PE
Phone: 303-445-2891
Electrical Engineer
Bureau of Reclamation - TSC - Electrical & Mechanical Engineering Division - Electrical Design Group

Dan,

This documentation was due October 28, 2015. Has he been gone all this month? Do you have anyone acting for him that can sign the IDP? This documentation is necessary for the Rotation Engineer program's scheduled promotions.

Thank you,

Rolando Smith-Salazar
HR Specialist (HR Development)
Bureau of Reclamation
Human Resources Division
Denver/Washington Learning Office
303-445-2655/office
303-445-6349/fax

On Fri, Nov 20, 2015 at 9:27 AM, Hamann, Daniel (Dan) <dhamann@usbr.gov> wrote:
Rolando - I think the short answer to the "when" would be after Jay Boggess returns. He is out of the office until December 12th. - Dan

On Thu, Nov 19, 2015 at 3:10 PM, Smith-Salazar, Rolando <rsmithsalazar@usbr.gov> wrote:
Dan,
We have not yet received your IDP. Do you have any information for us as to when we can expect it?

Thank you,

Rolando Smith-Salazar
HR Specialist (HR Development)
Bureau of Reclamation
Human Resources Division
Denver/Washington Learning Office
303-445-2655/office
303-445-6349/fax

Dan Hamann, PE
Phone: 303-445-2891
Electrical Engineer

Bureau of Reclamation
Technical Service Center
Electrical & Mechanical Engineering Division
Electrical Design Group

Great! I will let you know when the next update is due.

Thank you,

Rolando Smith-Salazar
HR Specialist (HR Development)
Bureau of Reclamation
Human Resources Division
Denver/Washington Learning Office
303-445-2655/office
303-445-6349/fax

On Mon, Dec 14, 2015 at 10:12 AM, Hamann, Daniel (Dan) <dhamann@usbr.gov> wrote:
Rolando - My signed IDP is attached for your review. - Dan

--
Dan Hamann, PE
Phone: 303-445-2891
Electrical Engineer

Bureau of Reclamation
Technical Service Center
Electrical & Mechanical Engineering Division
Electrical Design Group

| | |
|---|---|
| **From:** | Hamann, Daniel (Dan) W |
| **To:** | Hamann, Daniel (Dan) W |
| **Subject:** | Fw: IDP Update |
| **Date:** | Wednesday, August 19, 2020 6:57:28 AM |
| **Attachments:** | Rotation Program.pdf |
| | Summary of Rotation Engineer Program Requirements.docx |

**From:** Smith-Salazar, Rolando N <RSmithSalazar@usbr.gov>
**Sent:** Friday, March 18, 2016 8:23 AM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Subject:** Re: IDP Update

Dan,
Here are a couple of documents that have some details on the program. Your office may have an updated version of the TSC guide, this one is from 2010. Please let me know if you need any more information.

Thank you,

Rolando Smith-Salazar
HR Specialist (HR Development)
Bureau of Reclamation
Human Resources Division
Denver/Washington Learning Office
303-445-2655/office
303-445-6349/fax

On Fri, Mar 18, 2016 at 8:10 AM, Hamann, Daniel (Dan) <dhamann@usbr.gov> wrote:
Rolando - I will get the updated IDP to you by 3/28/16. As a follow-up to the voice mail I left yesterday - is there any documentation available that describes the rotational program more thoroughly? - Dan

On Tue, Mar 15, 2016 at 2:18 PM, Smith-Salazar, Rolando <rsmithsalazar@usbr.gov> wrote:
Dan,

This is a reminder that the update to your IDP will be due soon. Now is the time to meet with your supervisor to discuss your development and to update your IDP. Please submit the updated IDP to the Human Resources Learning Office, Mail Code, 84-52200, by Monday, March 28, 2016. If you have any questions or require assistance, I can be reached at the phone number below.

Thank you,

Rolando Smith-Salazar
HR Specialist (HR Development)

Bureau of Reclamation
Human Resources Division
Denver/Washington Learning Office
303-445-2655/office
303-445-6349/fax


--
Dan Hamann, PE
Phone: 303-445-2891
Electrical Engineer

Bureau of Reclamation
Technical Service Center
Electrical & Mechanical Engineering Division
Electrical Design Group

| | |
|---|---|
| **From:** | Hamann, Daniel (Dan) W |
| **To:** | Hochhalter, Dianne D |
| **Subject:** | Fwd: IDP Update |
| **Date:** | Monday, March 21, 2016 8:34:20 AM |
| **Attachments:** | Rotation Program.pdf |
| | Summary of Rotation Engineer Program Requirements.docx |
| **Importance:** | High |

Dianne - Do you know if we have an **updated version of the TSC guide for Rotation Engineers**? See below. - Thanks. Dan

---------- Forwarded message ----------
From: **Smith-Salazar, Rolando** <rsmithsalazar@usbr.gov>
Date: Fri, Mar 18, 2016 at 8:23 AM
Subject: Re: IDP Update
To: "Hamann, Daniel (Dan)" <dhamann@usbr.gov>


Dan,
Here are a couple of documents that have some details on the program. Your office may have an updated version of the TSC guide, this one is from 2010. Please let me know if you need any more information.

Thank you,

Rolando Smith-Salazar
HR Specialist (HR Development)
Bureau of Reclamation
Human Resources Division
Denver/Washington Learning Office
303-445-2655/office
303-445-6349/fax

On Fri, Mar 18, 2016 at 8:10 AM, Hamann, Daniel (Dan) <dhamann@usbr.gov> wrote:
Rolando - I will get the updated IDP to you by 3/28/16. As a follow-up to the voice mail I left yesterday - is there any documentation available that describes the rotational program more thoroughly? - Dan

On Tue, Mar 15, 2016 at 2:18 PM, Smith-Salazar, Rolando <rsmithsalazar@usbr.gov> wrote:
Dan,

This is a reminder that the update to your IDP will be due soon.  Now is the time to meet with your supervisor to discuss your development and to update your IDP.  Please submit the updated IDP to the Human Resources Learning Office, Mail Code, 84-52200, by  Monday, March 28, 2016. If you have any questions or require assistance, I can be reached at the phone number below.

Thank you,

Rolando Smith-Salazar
HR Specialist (HR Development)
Bureau of Reclamation
Human Resources Division
Denver/Washington Learning Office
303-445-2655/office
303-445-6349/fax

Dan Hamann, PE
Phone: 303-445-2891
Electrical Engineer

Bureau of Reclamation
 Technical Service Center
  Electrical & Mechanical Engineering Division
   Electrical Design Group

--
Dan Hamann, PE
Phone: 303-445-2891
Electrical Engineer

Bureau of Reclamation
 Technical Service Center
  Electrical & Mechanical Engineering Division
   Electrical Design Group

Dan,

The document is from the TSC. I don't have the appendix. You may want to ask your organization if they have the missing information.

Rolando Smith-Salazar
HR Specialist (HR Development)
Bureau of Reclamation
Human Resources Division
Denver/Washington Learning Office
303-445-2655/office
303-445-6349/fax

On Tue, Mar 22, 2016 at 9:24 AM, Hamann, Daniel (Dan) <dhamann@usbr.gov> wrote:
> Thanks, Rolando - Having read through the two documents (prior attachment), it appears
> that I may be missing some information. In the *Summary of Rotation Engineer Program
> Requirements* there is the following excerpt:

> **At least 40 hours of formal interactive training with training examples found in
> Appendix A, page A-4**

> I am unable to locate Appendix A. Can you give me some guidance on this? Thanks. - Dan
> Hamann

> On Fri, Mar 18, 2016 at 8:23 AM, Smith-Salazar, Rolando <rsmithsalazar@usbr.gov>
> wrote:
>> Dan,
>> Here are a couple of documents that have some details on the program. Your
>> office may have an updated version of the TSC guide, this one is from 2010. Please
>> let me know if you need any more information.

>> Thank you,

>> Rolando Smith-Salazar
>> HR Specialist (HR Development)
>> Bureau of Reclamation
>> Human Resources Division
>> Denver/Washington Learning Office
>> 303-445-2655/office
>> 303-445-6349/fax

>> On Fri, Mar 18, 2016 at 8:10 AM, Hamann, Daniel (Dan) <dhamann@usbr.gov> wrote:
>>> Rolando - I will get the updated IDP to you by 3/28/16. As a follow-up to the voice
>>> mail I left yesterday - is there any documentation available that describes the rotational

program more thoroughly? - Dan

On Tue, Mar 15, 2016 at 2:18 PM, Smith-Salazar, Rolando <rsmithsalazar@usbr.gov>
wrote:

Dan,

This is a reminder that the update to your IDP will be due soon. Now is the time to
meet with your supervisor to discuss your development and to update your
IDP. Please submit the updated IDP to the Human Resources Learning Office, Mail
Code, 84-52200, by Monday, March 28, 2016. If you have any questions or require
assistance, I can be reached at the phone number below.

Thank you,

Rolando Smith-Salazar
HR Specialist (HR Development)
Bureau of Reclamation
Human Resources Division
Denver/Washington Learning Office
303-445-2655/office
303-445-6349/fax

Dan Hamann, PE
Phone: 303-445-2891
Electrical Engineer

Bureau of Reclamation
Technical Service Center
Electrical & Mechanical Engineering Division
Electrical Design Group

Dan Hamann, PE
Phone: 303-445-2891
Electrical Engineer

Bureau of Reclamation
Technical Service Center
Electrical & Mechanical Engineering Division
Electrical Design Group

| From: | Smith-Salazar, Rolando N |
|---|---|
| To: | Hamann, Daniel (Dan) W |
| Subject: | Re: Dan Hamann IDP #2 |
| Date: | Monday, March 28, 2016 3:11:13 PM |
| Importance: | High |

Great!

Thank you,

Rolando Smith-Salazar
HR Specialist (HR Development)
Bureau of Reclamation
Human Resources Division
Denver/Washington Learning Office
303-445-2655/office
303-445-6349/fax

On Mon, Mar 28, 2016 at 1:38 PM, Hamann, Daniel (Dan) <dhamann@usbr.gov> wrote:
Rolando - Attached, please find my signed IDP #2. - Dan Hamann

--

Dan Hamann, PE
Phone: 303-445-2391
Electrical Engineer

Bureau of Reclamation
Technical Service Center
Electrical & Mechanical Engineering Division
Electrical Design Group

| From: | Smith-Salazar, Rolando N |
|---|---|
| To: | Hamann, Daniel (Dan) W; Hogg, Ryan S; Santiago Alvarado, Adrian A |
| Subject: | Rotation Engineer IDP Update |
| Date: | Thursday, September 29, 2016 9:16:25 AM |
| Importance: | High |

This is a reminder that your IDP update is due . As a requirement of your appointment under the Rotational Engineer program you must meet with your supervisor to discuss your development and update your IDP. The update must be signed by both you and your supervisor. Please submit a copy of the IDP to the Human Resources Learning Office, Mail Code, 84-52200. You may submit it electronically. If you have any questions or require assistance, I can be reached at the phone number below.

Thank you,

Rolando Smith-Salazar
HR Specialist (HR Development)
Bureau of Reclamation
Human Resources Division
Denver/Washington Learning Office
303-445-2655/office
303-445-6349/fax

| From: | Smith-Salazar, Rolando N |
| To: | Hamann, Daniel (Dan) W |
| Cc: | Adolf, Kellie J |
| Subject: | Re: IDP |
| Date: | Friday, October 28, 2016 7:42:50 AM |
| Importance: | High |

Dan,
I will make a note on your file that the IDP update will be submitted next week.

Thank you,

Rolando Smith-Salazar
HR Specialist (HR Development)
Bureau of Reclamation
Human Resources Division
Denver/Washington Learning Office
303-445-2655/office
303-445-6349/fax

On Fri, Oct 28, 2016 at 7:30 AM, Hamann, Daniel (Dan) <dhamann@usbr.gov> wrote:
> Kellie - Here is how it was presented to me. During my Skype interview, either
> Nate or Jay asked me (paraphrasing), "How about if we put you in the rotation
> program?" And my response was, "Um ... okay." I didn't really know what it
> was.
>
> But it's moot. I've decided that Glen Canyon or Parker or Davis might be great
> places to be in the winter or Boise might be a great place to be in the summer.
> And I've heard good things about both locations from an engineering
> standpoint.
>
> So how about I get my IDP to you one week from today? Will that work? I
> might be able to get some face time with my supervisor in between now and
> then, to get his review and signature. - Dan

On Thu, Oct 27, 2016 at 3:47 PM, Adolf, Kellie <kadolf@usbr.gov> wrote:
> Well, not sure how it could have been presented to you as and "option" as you applied,
> were selected and hired off the Rotational Engineer Program announcement and your offer
> letter states the same. Perhaps you applied to other positions at the same time and opted to
> pursue this one?
>
> There are advantages to being in the Rotational Engineer Program, so I'm not
> understanding why you are asking about exiting the program?
> ~Kellie

On Thu, Oct 27, 2016 at 1:40 PM, Hamann, Daniel (Dan) <dhamann@usbr.gov> wrote:

At the time I was hired, the rotational engineering position was presented as an option - not as a the only way I could be hired.

Thus, I'm not quite sure why I would have to leave federal service. It certainly wasn't what I was contemplating.

From the day I was hired, it was always my understanding it was optional, and there were certain advantages to being in the rotational program.

Am I missing something?

On Thu, Oct 27, 2016 at 11:47 AM, Adolf, Kellie <kadolf@usbr.gov> wrote:
Hi Dan,
I'm unclear why you would want to "exit" the program, as you have clear career progression to GS-11 that not all positions have? To "exit" the program would be to either leave Federal service or be reassigned to another GS-9 position within Reclamation, with no guarantee of promotion to GS-11. Is this what you are contemplating?
~Kellie

Kellie J.W. Adolf
Human Resources Specialist
Bureau of Reclamation - Denver/Washington Office
303-445-2663 Desk
602-206-1815 Cell
kadolf@usbr.gov

If you would like to provide feedback on my customer service, please contact my supervisor, Keith Anna, at 303-445-      or by email at kanna@usbr.gov.

On Thu, Oct 27, 2016 at 7:39 AM, Hamann, Daniel (Dan) <dhamann@usbr.gov> wrote:

Thanks, Rolando.

Much of the motivation for being in the rotation program is the 6 month promotion opportunity, which is obviously no longer available to me.

Is it possible for me to exit the rotation program?

On Wed, Oct 26, 2016 at 12:28 PM, Smith-Salazar, Rolando <rsmithsalazar@usbr.gov> wrote:
Dan,
The accelerated promotions are a feature of only the Rotation Engineer program. A Rotation Engineer is eligible for accelerated promotion only from GS-5 to GS-7 or from GS-7 to the GS-9. At the end of the program

there are no accelerated promotions available to the employees. Outside of the Rotation Engineer program, promotions may happen only after a full year in the position.

Thank you,

Rolando Smith-Salazar
HR Specialist (HR Development)
Bureau of Reclamation
Human Resources Division
Denver/Washington Learning Office
303-445-2655/office
303-445-6349/fax

On Wed, Oct 26, 2016 at 10:21 AM, Hamann, Daniel (Dan) <dhamann@usbr.gov> wrote:
Rolando - In response to your voice mail regarding the IDP ...and prior to submitting my IDP.. I have a question regarding promotions.

Referring to the original job posting:

**A program participant may be promoted from GS-5 to GS-7 or from GS-7 to the GS-9 after a minimum of 6 months ...**

Is it possible (as per HR guidance) to attain a promotion from GS-9 to GS-11 in 6 months?

Any information regarding this will be appreciated. - Dan


--
Dan Hamann, PE
Phone: 303-445-2819
Electrical Engineer

Bureau of Reclamation
Technical Service Center
Electrical & Mechanical Engineering Division
Electrical Design Group


--
Dan Hamann, PE
Phone: 303-445-2819
Electrical Engineer

Bureau of Reclamation

| From: | Hamann, Daniel (Dan) W |
| To: | Boggess, Jay S |
| Subject: | Re: IDP |
| Date: | Tuesday, November 8, 2016 1:08:20 PM |
| Importance: | High |

Thanks, Jay.

On Tue, Nov 8, 2016 at 12:56 PM, Boggess, Jay <jboggess@usbr.gov> wrote:
Dan/ Roando

IDP for Dan

jay

On Thu, Nov 3, 2016 at 7:41 AM, Smith-Salazar, Rolando <rsmithsalazar@usbr.gov> wrote:
Dan,
I will make a note.

Thank you,

Rolando Smith-Salazar
HR Specialist (HR Development)
Bureau of Reclamation
Human Resources Division
Denver/Washington Learning Office
303-445-2655/office
303-445-6349/fax

On Thu, Nov 3, 2016 at 7:23 AM, Hamann, Daniel (Dan) <dhamann@usbr.gov> wrote:
Jay - As a reminder ... I had promised Rolando I would get my IDP to him this week. - Dan

Rolando - Jay is out of the office this week, so it might be next week before I can get the IDP to you.

---------- Forwarded message ----------
From: **Hamann, Daniel (Dan)** <dhamann@usbr.gov>
Date: Tue, Nov 1, 2016 at 9:41 AM
Subject: IDP
To: Jay Boggess <jboggess@usbr.gov>

Jay - Attached please find IDP for your review and signature . Thanks. - Dan

Dan Hamann, PE
Phone: 303-445-2819
Electrical Engineer

Bureau of Reclamation
Technical Service Center
Electrical & Mechanical Engineering Division
Electrical Design Group

---

Dan Hamann, PE
Phone: 303-445-2819
Electrical Engineer

Bureau of Reclamation
Technical Service Center
Electrical & Mechanical Engineering Division
Electrical Design Group

--
**Dan Hamann, PE**
Phone: 303-445-2819
**Electrical Engineer**

Bureau of Reclamation
Technical Service Center
Electrical & Mechanical Engineering Division
Electrical Design Group

| From: | Smith-Salazar, Rolando N |
| To: | Boggess, Jay S |
| Cc: | Hamann, Daniel (Dan) W |
| Subject: | Re: IDP |
| Date: | Tuesday, November 8, 2016 1:08:55 PM |
| Importance: | High |

Great!

Thank you,

Rolando Smith-Salazar
HR Specialist (HR Development)
Bureau of Reclamation
Human Resources Division
Denver/Washington Learning Office
303-445-2655/office
303-445-6349/fax

On Tue, Nov 8, 2016 at 12:56 PM, Boggess, Jay <jboggess@usbr.gov> wrote:
  Dan/ Roando

  IDP for Dan

  jay

On Thu, Nov 3, 2016 at 7:41 AM, Smith-Salazar, Rolando <rsmithsalazar@usbr.gov> wrote:
  Dan,
  I will make a note.

  Thank you,

  Rolando Smith-Salazar
  HR Specialist (HR Development)
  Bureau of Reclamation
  Human Resources Division
  Denver/Washington Learning Office
  303-445-2655/office
  303-445-6349/fax

On Thu, Nov 3, 2016 at 7:23 AM, Hamann, Daniel (Dan) <dhamann@usbr.gov> wrote:
  Jay - As a reminder ... I had promised Rolando I would get my IDP to him
  this week. - Dan

  Rolando - Jay is out of the office this week, so it might be next week
  before I can get the IDP to you.

---------- Forwarded message ----------
From: **Hamann, Daniel (Dan)** <dhamann@usbr.gov>
Date: Tue, Nov 1, 2016 at 9:41 AM
Subject: IDP
To: Jay Boggess <jboggess@usbr.gov>

**Jay - Attached please find IDP for your review and signature . Thanks. - Dan**

--

Dan Hamann, PE
Phone: 303-445-2819
Electrical Engineer

Bureau of Reclamation
 Technical Service Center
  Electrical & Mechanical Engineering Division
   Electrical Design Group

--

Dan Hamann, PE
Phone: 303-445-2819
Electrical Engineer

Bureau of Reclamation
 Technical Service Center
  Electrical & Mechanical Engineering Division
   Electrical Design Group

| From: | Smith-Salazar, Rolando N |
|---|---|
| To: | Mendlin, Eric T |
| Cc: | Boggess, Jay S; Kelly, John T; Hamann, Daniel (Dan) W; Buchholz, Luke B; Griess, Todd W; Liscomb, Darryl E; Cass, Robert D; Vu, Henry; Kim Lien Dam; Hochhalter, Dianne D; Eric Vaughn; Daily, Jahwill; Bradshaw, Jeremiah L; Gentry, Lisa K; Wiafe, Sampson D; Santiago Alvarado, Adrian A; Patterson, James B; Atwater, Philip L; Maurer, Cory R |
| Subject: | Re: High Threat Security Training |
| Date: | Thursday, December 28, 2017 9:56:34 AM |
| Importance: | High |

I have spoken to the FSI registrar. They require your SS number for their records to initiate a new student enrollment. They also need your DOB and home address. All this information is PII. You do not have to put it on the SF-182, however, they still need it and you can call them and give it to them. This will limit the exposure to your PII. FSI is part of the State Department so I don't think that we are unduly exposing PII if we give the information to them verbally. Nevertheless, I will leave it up to you to decide what you want to do. Please let me know if you have any other questions.

Thank you,

Rolando Smith-Salazar
Learning Officer
Denver/Washington HR
Bureau of Reclamation, DOI
303-445-2655/office
303-445-6349/fax

On Thu, Dec 28, 2017 at 9:37 AM, Mendlin, Eric <emendlin@usbr.gov> wrote:
Jay,

Catherine Nugent informed me and Rolando (HR) that she plans on sending the SF-182 outside of the Government to the vendor. This is a PII issue. I got some guidance from Rolando about completing the SF-182 through DOI Learn. I would advise against putting any PII on the SF-182 that Catherine provided. The version in DOI Learn does list PII on the printable version.

We may want to contact Catherine via phone prior to completing these forms.

**Eric T. Mendlin, P.E.**

Electrical Engineer

Bureau of Reclamation
Technical Service Center
Denver Federal Center
Building 67, 7th Floor 86-68430
Denver, Colorado 80225
Phone: 303-445-2801

On Wed, Dec 20, 2017 at 3:14 PM, Boggess, Jay <jboggess@usbr.gov> wrote:
Guys!

I'm going to forward this to all of Bill's managers to see who all needs this training and get one of the admin assistants to wrangle it all.

On Wed, Dec 20, 2017 at 2:08 PM, Kelly, John <jkelly@usbr.gov> wrote:
FYI, from international travel coordinator.


---------- Forwarded message ----------
From: **Nugent, Catherine** <cnugent@usbr.gov>
Date: Wed, Dec 20, 2017 at 12:32 PM
Subject: High Threat Security Training
To: John Kelly <jkelly@usbr.gov>


Good morning,

I am contacting you because I know that you have traveled frequently as part of your duties. Due to the increased security concerns abroad prompted Department of State to add additional locations to the list of the countries requiring the security training (HTSOS). Effective in January 1, 2018, all countries in the Western Hemisphere will be added to the list.

So, you would need to take a mandatory online HTSOS training before your eCC is granted. I am not sure when your next trip is, but I figured that I could send you the info now so you can get started whenever. Feel free to share this with your team members who might be traveling to these countries with you in the future.

Please see attachments in this email for instructions, examples & forms to get you registered for the training.

Let me know if you have questions.

--
Catie Nugent
Foreign Travel Assistant
Native American & International Affairs Office
Bureau of Reclamation
202-540-8965



--
John Kelly
Electrical Design Group, TSC
303-445-2822
JKelly@usbr.gov
Monday-Friday, 6:00AM-2:30PM

## **RELEASE OF MEDICAL INFORMATION STATEMENT**

I, Daniel Hamann, hereby give my consent to Resolution Services, LLC, to review my medical information concerning my medical condition as it relates to my EEO complaint, case number DOI-BOR-2019-0764. I agree that this information may be included in the investigative file.

I also agree that the medical information provided in the investigative file may be reviewed by interested parties on a need to know basis for the limited purpose of further processing and responding to my complaint.

DANIEL HAMANN
Digitally signed by DANIEL HAMANN
Date: 2020.08.19 06:35:07 -06'00'

8/19/20

_____
Signature of Complainant

_____
Date

## **AGREEMENT TO EXTEND EEO INVESTIGATION PERIOD**

I, <u>Daniel Hamann, in connection with complaint # DOI-BOR-19-0764,</u> agree to a 60-day extension of the EEO investigation period to allow for completion of the Report of Investigation for the case.  It is understood and agreed that this extension does not affect my right to file a case in U.S. District Court after 180 days has passed since the individual complaint was filed.

## DANIEL
## HAMANN

Digitally signed by DANIEL
HAMANN
Date: 2020.05.21 12:46:22 -06'00'

_____     _____
(Complainant or Representative)                (Date)

## Opportunity for Rebuttal

### Daniel Hamann, Complainant

**ACCEPTED CLAIMS:**

1. Whether Complainant has been subjected to disparate treatment based on age (YOD: 1953) when on March 6, 2020, his supervisor did not assign him a project manager role;

2. Whether Complainant has been subjected to a hostile work environment based on age (YOB: 1953) when, in addition to the foregoing:

   a. Starting in September 2015, his supervisor has not given him rotation opportunities;

   b. Starting in September 2015, his supervisor has given him less training opportunities than his coworkers;

   c. Starting in September 2015, his supervisor has assigned him tasks below his skill level, held him to a higher standard than his coworkers and excluded him from recognition;

   d. Starting in September 2015 and continuing through July 22, 2019, his supervisor has not given him project manager opportunities;

   e. In 2016, his supervisor did not provide him the opportunity to apply for a Supervisory Control and Data Acquisition Position;

   f. In 2016, his supervisor delayed his career-ladder promotion to GS-9, which further delayed future career-ladder and competitive promotions;

   g. In or around April 2018, his supervisor did not provide him the opportunity to apply for a Supervisory Control and Data Acquisition position;

   h. On October 31, 2018, and in fiscal year 2018, fiscal year 2017, and fiscal year 2016, his supervisor put him on a performance standards that did not comply with the Department of Interior's policies;

   i. On February 21, 2019, his supervisor failed to address his concern regarding the difficulty of his project assignments; and

   j. On March 3, 2020, February 21, 2019, October 4, 2018, and February 13, 2018, he was cut off from speaking during meetings.

1

_____Initials

Check one:

[x] **I, Daniel Hamann, have chosen to provide the following rebuttal. See rebuttal below.**

[ ] **I, Daniel Hamann, have chosen to NOT provide a rebuttal to this affidavit.**

## Rebuttal of Statement for Management Official(s):

**Jay Boggess**


## I, Daniel Hamann, Complainant, have elected the following for the affidavit of:

1. Jay Boggess – **Rebuttal provided --- Circle one:** (YES)       **NO**
   I declare under penalty of perjury that my statement is true, correct, and complete to the best of my knowledge, information, and belief. I understand that the information given is not to be considered confidential and that it may be shown to the interested parties.


_Daniel W. Hamann_

Signature of Complainant

**9/15/2020**

Date

2

DWH _____Initials

Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior
Agency Case No.DOI-BOR-19-0764
Boggess Affidavit 1 Rebuttal
All other items excluding items 1-8
Dan Hamann
September 15, 2020

As a general comment with respect to sworn statements, it is apparent that management provides responses to their statements without providing any empirical and supporting evidence. This is precisely their modis operandi in the workplace. There is no expectation for them to do so. The burden is always on the subordinate. The subordinate must put in the extra time to bring for the truth. Management operates with an authoritarian approach. If they make a statement, then it is not be challenged. And when statements are made that can be proven false, and are proven false, there is no accountability.

Thus, all performance is measured accordingly. If a manager makes a statement about an employee, then this becomes the measure of performance. It is not done on precise empirical performance data. It is done on narrative. If a manager decides that an employee should receive an award, the act of receiving that award becomes the measure of performance. Thus, simply creating multiple supporting narratives, that are not based on empirical evidence, or even truth, is the manner in which performance is measured.

Likewise, if multiple disparaging statements are made, then these become the measure of performance. If the statements are examined individually, there is sparse truth to the statements. Often the statements, by a subordinate, because the subordinate knows that making a disparaging statement will please the rating official. This is the heart of the corruption that exists in the DOI DI-3100 performance system: a collaborated group of narratives, seen in the aggregate, that thus creates the appearance of performance, negative or positive.

## 18

With respect to Item (18) (1), as stated in previous affidavits, this a misunderstanding of my fundamental complaint. The issue is not predicated on a single incident that occurred March 6, 2020. The fundamental issue is that I have never been assigned a project manager role over the course of nearly five years, whereas project manager roles are routinely assigned to younger employees, with less experience. Thus, the response to in item 19 is moot because there was an error in the question in item 18.

## 22

With respect to (22), the respondent stated that I declined the rotation. There is no evidence that I declined a rotation at Parker Dam. On the contrary, the empirical evidence shows the opposite. Please see attached email dated March 29, 2016. I state in the email "I am still interested in pursuing a rotational position."

## 24

Stating that I have been provided an opportunity for a rotation is a mischaracterization. A bona fide opportunity would mean that the supervisor had made all the arrangements that are required of a first line supervisor. Had this happened, I likely would have actually gotten a rotation.

Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior
Agency Case No.DOI-BOR-19-0764
Boggess Affidavit 1 Rebuttal
All other items excluding items 1-8
Dan Hamann
September 15, 2020

## 26

Respondent does not answer the question.

## 27

I expressed my concerns to him at a performance meeting. I also requested documentation on the rotation program on 9/25/15 to which he never responded. See attached email.

## 29

It wasn't called a rotation. That was called a "90 day detail." Regardless, this issue is moot in 2020 because the promotions were only valid for when I started.

## 30

I doubt that any respondent would ever admit to age discrimination but apparently the question must be asked.

## 32

An example of less training would be in the case of the 3D modeling software, Revit. I taught my self Revit on my own time. However, other employees have attended Autodesk University. Regardless, I completed a solicitation using Revit, without any training from the agency.

## 34

I don't believe that it is up to the employee to research and request training. I believe that supervisors are instrumental in arranging training for favored employees. v

## 40

Using the excuse that I was hired as a GS-7 is not an excuse for relegating an individual with considerable more experience. Assigning technician tasks to engineers is a way to keep their status diminished within the agency.

## 41

The work is not evenly distributed. Favored engineers have liberal budgets with fewer demands, such as document review. Unfavored engineers are given meager budgets for projects with more difficult tasks, such as creating design documentation.

## 42

In this instance I am referring to the situation where I was not acknowledged as a Revit expert even though I had completed a job in Revit. The idea that any work is exemplary is subjective. The performance system does not actually have any bona fide metrics for measuring performance.

Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior
Agency Case No.DOI-BOR-19-0764
Boggess Affidavit 1 Rebuttal
All other items excluding items 1-8
Dan Hamann
September 15, 2020

48

The respondent is mischaracterizing the situation and diminishing the effect that this has on status within the agency. When employees are suppressed, and are not given equal opportunities, then they appear to be under performers.

50

It is simply unbelievable that project management positions are given to employees who seek those positions. Rather, supervisors assign project managers. Favored employees are assigned projects that will create the appearance of performance, based on collaborating statements. Often, these are on jobs that are likely to be more successful, due to liberal budgets, and less demanding tasks.

51

Again, it is not believable that employees are given project manager positions when they seek them. Adrian Santiago-Alvarado was assigned to a project management position even though he didn't want the positions. Managers assign project management roles. Boggess assign Luke Buchholz to be a project manager on the Shasta Dam project. Buchholz didn't see that position out.

57

I am not sure why Boggess is pretending that he didn't assign a SCADA position, and authority, to Lisa Gentry in 2016.

65

Of course it was delayed. I was not offered a rotation in the first six months. Had I received a rotation, I would have been eligible for a promotion after six months.

67

It was the fault of Boggess that the time frame was a year and not six months. He never arranged a rotation for me.

69

I addressed my concerns at a performance review.

73

The statement "g" appears to be in error.

80

My position with respect to the performance standards is that they are based on Critical Elements. Critical Elements are tasks or responsibilities. The Critical Elements that appear in my DI-3100 are broad and subjective. No performance measures with empirical evidence are actually used to assess performance. For example, there are no records of errors and omissions, which is a precise measure of

*DWH*

Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior
Agency Case No.DOI-BOR-19-0764
Boggess Affidavit 1 Rebuttal
All other items excluding items 1-8
Dan Hamann
September 15, 2020

design documentation. Supervisors rely entirely on word of mouth from others. This approach is entirely unreliable. For example, if I report misconduct on an employee, that employee will turn around make disparaging remarks about me. I made a list of 39 things that were supposed to happen that didn't happen at my performance review. Thus, decisions are largely arbitrary and based on favoritism. Both of these are prohibited by the Merit Systems Principles. Setting performance standards that violate these principles cannot possibly be in compliance.

## 84

The letter was sent to the commissioner because the guidance stated that the commissioner was responsible for insuring compliance.

## 85

Nothing has even been established that verifies the standards are fine. Rather, any effort to direct attention to the problems with the standards is ignored.

## 89

That is correct. It was the Durango Pumping Plant. I pointed out multiple difficulties that were occurring on the project. Both he and Eric Mendlin were disinterested in resolving these issues. It is the classic example of how managers set up employees for failure. This was the project where I collaborated with other disciplines in Revit. No recognition was given to this difficulty.

## 91

I am not alleging that he is giving me work above my skill level. I am alleging that there was no consideration given to the fact that the project was difficult. Difficult projects require more time. But Boggess simply ignored this knowing that the outcome would be that it appeared that busted the budget and was delayed. So, not it isn't about difficulty. It is about deliberately setting an employee up for failure.

## 95

I complained to my second line supervisor. A feeble attempt was made to address the issue but it eventually faded into obscurity. I sincerely believe that Boggess has no interest in whether I am cut off at meetings. He has done it himself.

## 99

There is no evidence that I was going off topic. It's simply not true. I was very much focused on the task at hand. Rather, allowing others to dominate meetings, and suppress unfavored employees, is simply another insidious technique that is used to elevate favored individuals. Again, this is simply a disparaging statement, that is made, without any proof, or basis in fact.

# Opportunity for Rebuttal

## Daniel Hamann, Complainant

**ACCEPTED CLAIMS:**

1. Whether Complainant has been subjected to disparate treatment based on age (YOD: 1953) when on March 6, 2020, his supervisor did not assign him a project manager role;

   k. On an unspecified date, the Agency failed to allocate him enough budget to charge overtime.

   l. On unspecified dates, the Agency failed to assign him to project manager authority on the LNFH Surface Intake and Fish Passage (F061A) project and the NIIP Pumping Plan G7.5LA HVAC Addition (UC684) project.

3. Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on unspecified dates between July 23, 2019 and May 22, 2020, the agency did not assign him project manager authority to the follow projects:
   a. Cle Elum Gate Hoist Construction Support (CEGHI)
   b. Shasta Dam Crest Road Vehicle Barrier Constructions Support (SDCRV)

4. Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on or about January 7, 2020, he was not selected for an Electrical Engineer position advertised under the follow vacancy announcement numbers:
   a. BR-DO-2019-193 (MPP-BM)
   b. BR-DO-2019-194 (DEU-BM)
   c. BR-DO-2019-195 (MPP-BM)
   d. BR-DO-2019-196 (DEU-BM)

   **Check one:**

   [X] **I, Daniel Hamann, have chosen to provide the following rebuttal. See rebuttal below.**

   [ ] **I, Daniel Hamann, have chosen to NOT provide a rebuttal to this affidavit.**

**Rebuttal of Statement for Management Official(s):**

**Jay Boggess**

**I, Daniel Hamann, Complainant, have elected the following for the affidavit of:**

1. Jay Boggess – **Rebuttal provided** --- **Circle one:** (YES)     NO
   I declare under penalty of perjury that my statement is true, correct, and complete to the best of my knowledge, information, and belief. I understand that the information given is not to be considered confidential and that it may be shown to the interested parties.

<div align="center">1</div>

_DWH_ Initials

_Dorcel W. Hamann_

**9/10/2020**

_____  
Signature of Complainant

_____  
Date

_DWH_ Initials

Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior
Agency Case No.DOI-BOR-19-0764
Boggess Affidavit Rebuttal
Overtime: Items 1-8
Dan Hamann
September 9, 2020

With respect to questions 1-8, these questions are based on a mischaracterization of the fundamental issue with respect to overtime. For example, in item k, the issue is stated that the agency did failed to allocate enough budget to charge overtime. Similarly, in item 1, it is not my position that my complaint is based solely on the time period in March 2020, when teleworking commenced for all employees.

Although these statements do reflect my complaint, they are a gross oversimplification. To clarify, this issue of overtime is part of a much broader pattern. Also, in item (4), it is not several hours. Through 2020 pay periods (1 -18), the total overtime charged has been (353) hours with as much as (49) hours of overtime charged in pay period (8). See attached summary.

The respondent states in item 2 that I did not make a request for overtime. This is an oversimplification. The salient point is that project must have adequate budget to absorb overtime.[1] As a further clarification to questions 1-8, the issue I am trying convey is described as follows.

Buchholz, as a younger employee, has, in essence, been allocated *slush funds* which allow him to charge overtime without any verification of producing work, or even actually performing work. In other words, the overtime that Buchholz has been charging appears to be time sheet fraud. The definition of a *slush fund*, in this context, is a project with a liberal budget and a less demanding deliverable. An example would be a project involving the review of documents, as opposed to the creation of documents.[2]

Shortly after the COVID restrictions were enacted, all Technical Service Center (TSC) employees begin teleworking full time. Thus, there is no way that a supervisor can verify that and employee is actually at their station working. Coincidentally, it was about this time that Buchholz begin charging overtime and Boggess begin approving the overtime. Additionally, the manner in which overtime was allocated does not reflect actual work patterns as much as it reflects filling in the appropriate boxes on the time sheet to pad the time sheet.

Additionally, it is my understanding that Buchholz is attending university classes. Thus, the amount of time that Buchholz charged during this time is simply not realistic.

It is highly unlikely that Boggess holds Buchholz accountable to producing any commensurate work. However, because Buchholz has always been granted very liberal budgets, with very little commensurate work, it would not be a requirement that Buchholz produce any work. I make this statement about Buchholz receiving liberal budgets based on empirical evidence, having reviewed the projects that he has been assigned, compared to the projects I have been assigned.

---

[1] Since March 2020, I have been working on a reduced work schedule, utilizing FMLA leave, due to a caustic work environment. Thus, I am not working overtime.

[2] A simple analogy: it is much more difficult to write a book than it is to review a book. The creation of design documentation used on Reclamation projects requires a broad range of skills, involving software skills, technical knowledge of the project infrastructure, document standards, et al. Document review does not require those skills.

*DWB*

Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior
Agency Case No.DOI-BOR-19-0764
Boggess Affidavit Rebuttal
Overtime: Items 1-8
Dan Hamann
September 9, 2020

However, on one project, Shasta Dam[3], the evidence is particularly egregious. This is a project I designed. As part of a construction support agreement with the client, I generated TBE to review the contractor's shop drawings (submittals) for a budget of about 15 staff days. When Buchholz was assigned project manager to that project, he immediately submitted a budget to the client for about 45 staff days, or triple my budget. In an email exchange with the client the client expressed displeasure. However, the client was advised to approve that change order by his superior.

Thus, Buchholz has often been assigned liberal budgets which, in essence, become slush funds, where he can bill his time, without having to produce commensurate work, which suggests that Buchholz is not actually doing any work at – he is just padding his time sheet.

Obviously, once proven, this could establish fraudulent behavior. But Buchholz, as a younger employee, is permitted to get away with this. Again, this establishes again, a pattern of age discrimination, in this case, for an egregious behavior, which is also disparate treatment.

---

[3] Shasta Dam - Crest Road Vehicle Barrier Replacement (FA715).

DWB

Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior
Agency Case No.DOI-BOR-19-0764
Boggess Affidavit Rebuttal
All other items excluding items 1-8
Dan Hamann
September 10, 2020

With respect to item, (9) (a) (t), there appears to be a misunderstanding by the investigating agency. I'm not making a claim that the agency failed to assign me as project manager on the LNFH Surface Intake and Fish Passage (F061A)and NIIP projects.

My claim is that these are projects that are representative of the assignment of younger engineers as project managers. This establishes, again, the pattern of age discrimination though disparate treatment in that younger engineers, with far less experience, are assigned to project management positions, yet to date, I have never been assigned a project management position. These are simply two project of many whereby this pattern is verified.

Items 13 – 19, again, just established a pattern of suppression of any effort to elevate my within the organization by refusing to assign me even a subordinate position such as team lead.

With item 20, I am in the process of establishing irrefutable evidence that the complaint filed by Patrick Dawson is fabricated and has not basis in fact. It is an ongoing campaign by the agency, in a collaborative manner, to engage in defamation. Although this will be proven under a separate civil action to be tortious activity by the agency, it is also proof of ongoing discrimination by disparate treatment.

In short, Dawson has made statements based on his feelings, rather that on facts, and truth. This has the effect of contributing to the age discrimination by disparate treatment. Again, prima facie, the only bona fide and visible difference is my age. There is no basis in fact to the complaints made by Dawson.

With respect to item (20) (3), the agency investigator has mischaracterized the primary issue. Again, similar to the (2) aforementioned projects, the two projects mentioned here establish, again, a pattern of age discrimination by the assignment of younger engineers as project management positions. My complaint is not because the agency did not assign me a project management position for these two projects. This is in error and is misunderstanding by the investigating agency.

Item 24, Bernstein, did tell me, to my face, at a meeting, that he was going to recommend me to be the project manager for this position. I was fully qualified. Any subsequent complaints that may have come from Bernstein were not disclosed to me, and in reading this affidavit, it is the first time that this information has been made known to me.

Boggess makes statements in item 24, about effective communication. I am in the process of exposing this as being statements that are misleading and mischaracterize the events. When Boggess reference to issues with the client, he is mischaracterizing the underlying issue.

Allegations against me had no basis in fact. These allegations establish defamation and are the subject of a separate legal action that is commencing and under development against the agency for tortious activity. In truth, it is my opinion that they client engaged, not in only in defamation, but in misconduct. Coincidentally, these individuals again, are younger than myself, which again, establishes a pattern of preferential treatment, by the agency, for younger employees, again verifying the pattern of age discrimination.

$\mathcal{DWA}$

Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior
Agency Case No.DOI-BOR-19-0764
Boggess Affidavit Rebuttal
All other items excluding items 1-8
Dan Hamann
September 10, 2020

With respect to item 25, a whistleblower complaint was filed but the investigating entity, the OIG, did to follow through, which has been a pattern for the OIG. The OIG, is also named as plaintiffs in another legal action. Suffice it to say, the widespread corruption within the agency, in my opinion, extends into the investigating agency, which has failed to execute its fiduciary duties.

And coincidentally, this behavior has again ratified a pattern of age discrimination within the agency.

With respect to item 27, I think it is highly unlikely that any individual would be candid about age discrimination. Furthermore, the supreme court has established rules that age discrimination simply must exist, prima facie, and that is the outcome of this situation, like many other situations, to which I have been exposed.

With respect to item 29, I have submitted considerable documentation to the solicitor that proves that the manager of the Cle Elum construction has grossly mischaracterized this situation, again establishing a basis for defamation. This information is extensive; if memory serves me, there was over 100 pages of documentation that was assimilated to prove this. This information can be made available to the investigators.

For items 30-31, the circumstances behind this situation are being assimilated. A FOIA request that was issued indicated a prohibited personnel practice. I also have information that strongly suggests that the successful candidate for this position appears to have lied about his experience. The successful candidate is younger, again establishing a pattern of age discrimination.

This is also being included in a separate legal action against the agency, which is under development. This applies to items up to 63.

With respect to item 63, I am in the process of disproving these numerous complaints. Within the agency, there is collaborative effort to disparage the character of employees who fall out of favor. This matter is extensive and is also part of a separate legal action that is currently being initiated. The corruption with the agency is widespread and extends to the very top.

With respect to my complaint of age discrimination, this widespread corruption envelopes age discrimination, by disparate treatment, which exists prima facie, which is what is necessary to establish a basis for age discrimination.

Due to time constraints, more information can be provided to verify all the claims made thus far. Assimilating this information is very time consuming. A single event, as mentioned earlier, too many hours to assimilate.

Additionally, my supervisor fabricated, in my opinion, a performance appraisal about a week ago for which I am having to defend myself. I have had to allocate my precious time to presenting evidence, that establishes the truth, and rebuts the fallacious statements made in the review. Thus, my time is very limited now in assimilating a rebuttal to theses affidavits. I believe this is deliberate on the part of my supervisor, to overload my precious time.

DWA

Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior
Agency Case No.DOI-BOR-19-0764
Boggess Affidavit Rebuttal
All other items excluding items 1-8
Dan Hamann
September 10, 2020

In of itself, this is unethical, again perpetuating the behavior of the agency, where the outcome is not only tortious, but establishes prima facie evidence of age discrimination.

Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior
Agency Case No.DOI-BOR-19-0764
Boggess Affidavit Rebuttal
Overtime Summary
Dan Hamann
September 9, 2020

| PP | Total | OT |
|---|---|---|
| 1 | 80 | 0 |
| 2 | 90 | 10 |
| 3 | 92 | 12 |
| 4 | 80 | 0 |
| 5 | 95 | 15 |
| 6 | 102 | 22 |
| 7 | 121 | 41 |
| 8 | 129 | 49 |
| 9 | 118 | 38 |
| 10 | 100 | 20 |
| 11 | 106 | 26 |
| 12 | 116 | 36 |
| 13 | 100 | 20 |
| 14 | 104 | 24 |
| 15 | 92 | 12 |
| 16 | 96 | 16 |
| 17 | 80 | 0 |
| 18 | 92 | 12 |
| **Total** | **1,793** | **353** |

*DWB*

# Opportunity for Rebuttal

## Daniel Hamann, Complainant

**ACCEPTED CLAIMS:**

1. Whether Complainant has been subjected to disparate treatment based on age (YOD: 1953) when on March 6, 2020, his supervisor did not assign him a project manager role;

2. Whether Complainant has been subjected to a hostile work environment based on age (YOB: 1953) when, in addition to the foregoing:

   a. Starting in September 2015, his supervisor has not given him rotation opportunities;

   b. Starting in September 2015, his supervisor has given him less training opportunities than his coworkers;

   c. Starting in September 2015, his supervisor has assigned him tasks below his skill level, held him to a higher standard than his coworkers and excluded him from recognition;

   d. Starting in September 2015 and continuing through July 22, 2019, his supervisor has not given him project manager opportunities;

   e. In 2016, his supervisor did not provide him the opportunity to apply for a Supervisory Control and Data Acquisition Position;

   f. In 2016, his supervisor delayed his career-ladder promotion to GS-9, which further delayed future career-ladder and competitive promotions;

   g. In or around April 2018, his supervisor did not provide him the opportunity to apply for a Supervisory Control and Data Acquisition position;

   h. On October 31, 2018, and in fiscal year 2018, fiscal year 2017, and fiscal year 2016, his supervisor put him on a performance standards that did not comply with the Department of Interior's policies;

   i. On February 21, 2019, his supervisor failed to address his concern regarding the difficulty of his project assignments; and

   j. On March 3, 2020, February 21, 2019, October 4, 2018, and February 13, 2018, he was cut off from speaking during meetings.

1

_DWS_ Initials

Check one:

☒ I, Daniel Hamann, have chosen to provide the following rebuttal. See rebuttal below.

☐ I, Daniel Hamann, have chosen to NOT provide a rebuttal to this affidavit.

**Rebuttal of Statement for Management Official(s):**

**William McStraw**

**I, Daniel Hamann, Complainant, have elected the following for the affidavit of:**

1. William McStraw – **Rebuttal provided** --- **Circle one:** (YES)      NO
   I declare under penalty of perjury that my statement is true, correct, and complete to the best of my knowledge, information, and belief. I understand that the information given is not to be considered confidential and that it may be shown to the interested parties.

Daniel W. Hamann                                    **9/15/2020**

Signature of Complainant                          Date

2

DWH ____Initials

Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior
Agency Case No.DOI-BOR-19-0764
McStraw Affidavit 1 Rebuttal
All other items excluding items 1-8
Dan Hamann
September 15, 2020

## 8

With respect to managing workloads, I am not aware of any incident where McStraw was involved in managing my workload. In fact, with respect to my first line supervisor, and second line supervisor McStraw, there is little, or no effort to manage workloads, especially when deadlines are looming, more work is piled on, and there is an appeal for additional resources. I can demonstrate instances, with empirical evidence, where such appeals have been ignored. With respect to managing workload, it is my opinion, that the only management that occurs, is ensuring that favored employees, are not overwork or overburdened, thus ensuring a higher likelihood of success. With respect to this claim, this bias is generally in the favor of younger employees.

## 20

It is interesting that management constantly repeats this refrain, "on time and within budget." There is no mention of quality. The quality of documents is not measured. It is not assessed. Thus, management can provide very liberal budgets, with less difficult tasks associated, to younger, favored employees, which then gives the appearance of success, when in reality, the deck was stacked in favor of the younger employee from the onset.

## 21

Project management is not, and cannot be a critical element, in my performance review. In other words, one cannot excel at a task, if one is not assigned to the role or project manager, which would be necessary to execute the task of project management. Thus, McStraw makes the statement that a promotion to GS-12 requires experience in leading teams. However, if one has never been afforded this opportunity , then it is not possible to establish any type of measurement. Project manager positions are routinely assigned to younger employees, with very little experience, and surely no basis in skills, that would establish their qualification. Prima facie, the only quality that is readily apparent is that they are younger.

## 22

This issue has been addressed previously in other sworn statements.

## 32

The respondent has had little no involvement in the assignment of my tasks. He would not have any knowledge of whether I was assigned tasks below my skill level.

## 33

The respondent has had little no involvement in the assignment of my tasks. He would not have any knowledge of whether I was held to a higher standard.

*DWS*

Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior
Agency Case No.DOI-BOR-19-0764
McStraw Affidavit 1 Rebuttal
All other items excluding items 1-8
Dan Hamann
September 15, 2020

## 34

Recognition is not based on performance.  It is based on narratives.  The respondent has had no involvement in my projects, so he would have no intimate knowledge of me being consistently late and over budget.  This is an example of where he relies entirely on a narrative, that is disparaging to my reputation, whereby, the narrative obviously came from my first line supervisor.  This is an example of how younger employees are elevated in status in the agency.

## 63

The respondent has no knowledge of whether I was proactive I approaching my first line supervisor.  My first line supervisor gave far more attention to younger, favored employees.

## 67

Again, this demonstrates how the repetition of narrative actually establishes the metric of performance.  The respondent repeats the narrative, which is not based on empirical evidence, but rather to disparage myself, as an older employee.  On the contrary, management will repeat narratives for younger employees in an effort to elevate their status within the agency.

## 83

This is interesting because Boggess, in his sworn statement, does not even acknowledge that there was such a position in 2016.  Thus, the respondent's answer, as second line supervisor, does not coincide with the statement made by my first line supervisor.  It appears that the respondent has simply fabricated a response, not based on any empirical evidence.  This is another demonstration of how narrative becomes the basis for performance, and in establishing narratives that favor younger employees, younger employees receive more opportunities and promotions.

## 107

I have no recollection of making the statement that I *didn't have any responsibility to provide feedback*.  On the contrary, I think I have been as vociferous as possible, in expressing the fact that the DI-3100 performance system is flawed.  This was the heart of the letter sent to the commissioner.  Again, the respondent appears to have fabricated a narrative, which again, establishes the basis for how younger employees are elevated in the agency.

## 144

I have no recollection of refusing to provide input for my evaluation.  Given the opportunity to express my opinions, I will readily do so.  Unfortunately, the opinions that I express do not hold management *in* a positive light.

DWA

Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior
Agency Case No.DOI-BOR-19-0764
McStraw Affidavit 1 Rebuttal
All other items excluding items 1-8
Dan Hamann
September 15, 2020

## 152

The respondent fails to mention that I received no response to my request for resources until I contacted the respondent as the second line supervisor. This is all documented in emails. The respondent demonstrates here that I am held to a higher standard. In other words, it is acceptable for first line supervisors, to ignore emails, which are official correspondence, and also establish a verifiable trail, but it is incumbent on me to call the first line supervisor, which does not establish a verifiable trail of empirical evidence.

I proceeded in the manner in which I did because it establishes a verifiable trail of communication that demonstrates how first line supervisors will set up an older employee, like myself, for failure.

## 165

The respondent was not proactive in resolving this issue. When an older employee, such as myself, is cut off while speaking, this has a discounting and demoralizing effect. It is my belief that management, by allowing this behavior to continue, allows younger employees to gain a psychological advantage over older employees. However, there is no question that this behavior violates the most basic rules of decorum.

## 174

As explained in previous sworn statements the letter was written to the commissioner because the commissioner is explicitly referenced as the individual responsible for ensuring the integrity of the performance system.

## 175

Again, the respondent repeats a narrative, about my not being proactive, which ratifies the fact that the agency promotes younger employees through narrative as opposed to bona fide performance.

## 178

The interview process for theGS-12 positions were likely skewed in favor of the selection of younger, favored employees. This is an ongoing complaint that is being investigated. FOIA responses have ratified this bias. It is my opinion that the offer to move to a different supervisor was a way of obfuscating the underlying problem: my first line supervisor. The deterioration with my first line supervisor was largely the result of my bringing forth the truth. I declined the offer because I could not partake in this type of unsavory behavior.



All ∨        ←    📧 Rotation    ✕                                    ∨    🔍

≡    New message          🗑 Delete    📁 Archive    🚫 Junk ∨    📁 Move to ∨    🏷 Categorize ∨    ⋯         ↑    ↓    ✕

∨  **Favorites**

🏠  Inbox                    **Request for Rotational Engineer Position**    [Rotation]

✏️  Drafts            1
                             Hamann, Daniel (Dan) W                                        👍  ↩  ↩  →  ⋯
📥  Archive
                             Fri 1/8/2016 9:09 AM
      Add favorite           **To:** Jackson, Matthew B
                             **Cc:** Boggess, Jay S
∨  **Folders**
                             Matthew – I am a recently hired rotational engineer. I am inquiring as to whether you may have any
                             rotational engineer positions available at Glen Canyon. I was referred to you by my supervisor Jay
∨  **Groups**                Boggess.

      Electrical Contr...  32    If you are in need of any additional information, such as my resume, I will be happy to email that to
      New group             you. Also, feel free to call me.
      Discover groups
                             Thanks. – Dan Hamann
      Manage groups
                             --
                             Dan Hamann, PE
                             Phone: 303-445-2891
                             Electrical Engineer

                             Bureau of Reclamation
                             Technical Service Center
                             Electrical & Mechanical Engineering Division
                             Electrical Design Group

                             Reply      Reply all      Forward

✉️   🗓   👥   ☑️

All ∨   ←  🏷 Rotation ✕

🗑 Delete   📥 Archive   🚫 Junk ∨   📁 Move to ∨   🏷 Categorize ∨   ···   ↑  ↓  ✕

**Favorites**

🔲 Inbox
✏ Drafts                1
🗄 Archive
   Add favorite

Folders

Groups

   Electrical Contr...  32
   New group
   Discover groups
   Manage groups

**Rotation Engineering Programs**  [Rotation]

Hamann, Daniel (Dan) W
Fri 9/25/2015 2:40 PM
To: Boggess, Jay S

Jay - I haven't been able to locate much information on the Rotation Engineering Programs. Can you help me out?
Thanks.
Dan Hamann

Reply   Forward

# Opportunity for Rebuttal

## Daniel Hamann, Complainant

**ACCEPTED CLAIMS:**

1. Whether Complainant has been subjected to disparate treatment based on age (YOD: 1953) when on March 6, 2020, his supervisor did not assign him a project manager role;

    k. On an unspecified date, the Agency failed to allocate him enough budget to charge overtime.

    l. On unspecified dates, the Agency failed to assign him to project manager authority on the LNFH Surface Intake and Fish Passage (F061A) project and the NIIP Pumping Plan G7.5LA HVAC Addition (UC684) project.

3. Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on unspecified dates between July 23, 2019 and May 22, 2020, the agency did not assign him project manager authority to the follow projects:
    a. Cle Elum Gate Hoist Construction Support (CEGHI)
    b. Shasta Dam Crest Road Vehicle Barrier Constructions Support (SDCRV)

4. Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on or about January 7, 2020, he was not selected for an Electrical Engineer position advertised under the follow vacancy announcement numbers:
    a. BR-DO-2019-193 (MPP-BM)
    b. BR-DO-2019-194 (DEU-BM)
    c. BR-DO-2019-195 (MPP-BM)
    d. BR-DO-2019-196 (DEU-BM)

    **Check one:**

    [X] **I, Daniel Hamann, have chosen to provide the following rebuttal. See rebuttal below.**

    [ ] **I, Daniel Hamann, have chosen to NOT provide a rebuttal to this affidavit.**

**Rebuttal of Statement for Management Official(s):**

**William McStraw**

**I, Daniel Hamann, Complainant, have elected the following for the affidavit of:**

1. William McStraw – **Rebuttal provided --- Circle one:** (YES)    NO
    I declare under penalty of perjury that my statement is true, correct, and complete to the best of my knowledge, information, and belief. I understand that the information given is not to be considered confidential and that it may be shown to the interested parties.

1                                    *DWF* Initials

_Daniel W. Hamann_
_____
Signature of Complainant

**9/3/2020**
_____
Date

2                                        _DWH_ Initials

In response 8, McStraw states that he manages workloads. I take exception to this. I have never seen McStraw make any effort to deal with workload, particularly in situations where the duration to the deadline was far too short for the amount of work and corresponding resources. Rather, McStraw, like many others in the agency, will ignore situations where there is excessive workload, seemingly to set up failure, for those who are held out of favor.

To clarify item 21, McStraw states that a GS-12 promotion would require experience in leading project teams. Management arbitrarily chooses younger, favorite and obsequious, employees, to lead teams, who generally have very little experience. When these favorite employees make errors they are not held accountable, in the same way as an employee held out of favor. This selection has nearly nothing to do with actual, measurable performance.

With respect to item 22, I didn't write a letter to the commissioner regarding the rotation. The letter I wrote exposed the fraudulent DI-3100 performance system.

With respect to item 34, McStraw states that I am consistently late and over budget on projects. This statement is a gross misrepresentation. First, McStraw provides no basis in fact for this statement. In his previous statements, he alludes to the fact he has had very little interaction with me. Thus, he has no first hand knowledge of this matter. Thus, McStraw is indicating a bias by making this statement.

With respect to item 63, McStraw makes the statement that I was not proactive in approaching the first line supervisor but cannot make this statement on any basis in fact. He has no knowledge of all of the interactions that I did have with my first line supervisor which were ignored. Thus, again, McStraw is arbitrarily demonstrating a bias against me, obviously not based on fact.

With respect to item 65, McStraw downplays the rotation issue as being a mistake with the agency. All the events indicate that the absence of a rotation suggest a bias against me, by way of negligence or conscious deliberation to ignore my attaining a rotation, having been hired as a rotation engineer. It is too coincidental that I am the only engineer who actually did not get a rotation.

It item 67, McStraw repeats the narrative that I am continually late and over budget on my jobs, again, indicating a bias against me, by attempting to develop and repeat a narrative, until it appears to be true. The repeating of narratives about employees is how the agency actually promotes favorite employees, and denigrates out-of-favor employees, as opposed to promoting based on actual measurable performance. Thus, performance is often a fabrication, which is commonplace in the agency.

It item 68, McStraw makes a statement that I stated I know project management better than most. It is true that I am the only employee, that I am aware of, that actual understands the concept of *resource loading*. I have never seen another schedule developed by another individual that utilizes this very basic concept. To date, the only resource loaded schedule that has ever been produced has been by me. Resource loading is fundamental to project management. I am assuming that McStraw, as chief, doesn't know what resource loading is.

Item 83: McStraw is grossly misinformed about this matter. The fact of the matter is that I had, and still have, far more controls experience, than any other engineer in our group. McStraw, like others in

management, is not interested in utilizing experienced personnel, to create an efficient workforce, as required by the *Merit System Principles*. Rather, like the management in general, their primary objective is to surround themselves with obsequious and malleable employees.

Item 107: I never made the statement that it was my responsibility to provide feedback regarding my performance. That is precisely why I wrote the letter to the commissioner, thus demonstrating that I am very proactive, whereas management is complacent.

Item 144. I never refused his offer to provide input into the performance rating. I likely explained to him that the DI-3100 does not require rating officials to comply with any of the guidance. Rather, rating officials can easily fabricate ratings, based on narratives, as opposed to bona fide metrics.

With respect to item 152, McStraw is being an apologist for misconduct for supervisors who report to him. Both supervisors were contacted by way of email. Email is official correspondence in the agency. If I don't respond to an email, I will be held accountable. McStraw does hold his subordinate supervisors to that same level of accountability. Phone calls are avoided because there is no written record of what was said. The emails establish an irrefutable trail for supervisors who will lie or mischaracterize conversations. Again, McStraw is demonstrating a clear bias against me.

With respect to item 160 and 165, this type of behavior constitutes misconduct in the agency. I reported misconduct to McStraw, as is required by the ethic systems principles.[1] McStraw is stating that he reminded me to keep a professional demeanor during meetings. Apparently, McStraw considers cutting me off while I am speaking, as being acceptable behavior. Again, McStraw is demonstrating a bias against me by holding others to a lower standard.

With respect to item 175, McStraw again mischaracterizes the letter I wrote to the commissioner which was intended primarily to expose malfeasance by rating officials. The commissioner is the person who is responsible for monitoring this type of behavior as per HRM 07-01. I have attached that letter for clarification and reference.

With respect to item 178, McStraw again mischaracterizes the idea that he did everything he could to advance my career to GS-12. McStraw did nothing. Rather, he allowed an employees to be promoted to GS-12, with far less experience than myself. He was instrumental in changing the policy[2] that a GS-12 position required professional engineering registration, which I have, but the successful candidate don't have.

With respect to item 178, teleworking is based on law. McStraw mischaracterizes teleworking as a privilege that management can dole out as they desire. The DOI policy is far more liberal in the

---

[1] The 14 General Principles of Ethical Conduct 5 C.F.R §2635.101 (b) (11). *Employees shall disclose waste, fraud, abuse, and corruption to the appropriate authorities.*
[2] See Friday, January 31, 2020 7:23:11 AM email from McStraw.

*DWA*

employees are only required to report to their duty station two days out of a pay period.[3] The TSC policy is arbitrary, has never been documented formally, and is not promulgated in a formal manner. In other words, McStraw and others in management can use the allocation of teleworking as another way of ensuring favored employees advance, while putting employees out of favor such as myself, in a more difficult situation, by restricting teleworking, which results in more commuting. The teleworking request was the result of my daughter needing a liver transplant. McStraw calls it a personal matter, again demonstrating how McStraw will mischaracterize the matter. Again, this shows a clear bias by McStraw against me.

With respect to the issue of moving me to another supervisor, McStraw was not dealing with the underlying problem which was the supervisor. Thus, McStraw engaged in misconduct by allowing a supervisor to continue to engage in misconduct. Moving me to another supervisor might suggest that I am the problem, which was a mischaracterization.

Attachments:

Letter to Commissioner dated November 27, 2019.

McStraw email dated Friday, January 31, 2020 7:23:11 AM.

Telework Program Personnel Bulletin 19-02

---

[3] Telework Program Personnel Bulletin 19-02 - Page 8 [emphasis added]: *An employee approved to telework must physically report to his or her official duty station at least **two full work days per bi-weekly pay period**, except for rare short-term circumstances or as a reasonable accommodation.*

DWH

**Dan Hamann**

10799 W Alameda Ave
Unit 150032
Lakewood CO 80215-7402
Cell:    720-428-9543
VoIP:   210-401-3583
email:  **r6y2r7@gmail.com**

November 27, 2019

CMRR: 9407110898765049187420

Brenda Burman
Commissioner
Bureau of Reclamation
1849 C Street NW,
Mail Code 91-00000
Washington, DC 20240-0001

Dear Madam Commissioner:

### As per Reclamation Manual Directives and Standards HRM 07-01 (my responses are in bold):

The Commissioner is responsible for: implementing, supporting, and communicating information to employees about Reclamation's Performance Management program; (2) establishing and communicating organizational performance and/or strategic goals; (3) holding subordinate managers and supervisors accountable for appraising employees accurately and consistently based on their accomplishments and contributions and ensuring that all covered employees receive timely performance plans and appraisals in accordance with the requirements of these procedures; and (4) establishing a method for an employee not covered by a collective bargaining agreement (or whose collective bargaining agreement does not contain reconsideration procedures) to request reconsideration of a performance rating.

**The rating official has not ensured that I have receive timely performance plans and appraisals in accordance with the requirements of these procedures.**

### As per Performance Management Handbook 370 DM 430 HB (my responses are in bold):

Timeline of Performance Management Activities, Performance Appraisals – Assign ratings and complete EPAP forms for prior fiscal year that ended on September 30, are to be completed between October 1 to 31.

**This never happened.**

Before the start of the appraisal period, rating officials (generally, an employee's immediate supervisor) and employees should begin developing written performance plans for the next appraisal period. The process must allow for employees to provide input into the plan development.

**This never happened.**

Feedback can come from many different sources, such as observation by rating officials and other managers, measurement systems, and feedback from peers, stakeholders and customers. The rating official is responsible for determining the types, sources, and means of collecting the data and feedback that most accurately gauge performance, to ensure that each employee receives accurate, effective, and timely performance feedback. Rating officials should maintain documentation of employee performance, both positive and when improvement is needed, throughout the year. This will allow the rating official to provide specific examples during regular feedback sessions, progress reviews, for the development of the rating of record, or at other appropriate times.

Feedback should be provided in a manner that will best help performance. This is not to say that feedback should be exaggerated or under-stated. On the contrary, feedback should be accurate, factual, and complete to most effectively reinforce what the employee has done well, and what the employee needs to do to improve his/her performance.

Exhibit F-1C - page 27 of 86

**No feedback or data was provided**

Critical elements must describe work assignments and responsibilities that are significantly influenced by an employee's work effort and within the employee's control. For most employees, this means that critical elements cannot describe a group's performance.

**My Critical Element 1 does not comply with the DOI standards in that it does not describe an assignment or responsibility. Rather, it is a very broad and vague description of tasks. In fact, it is nearly incomprehensible. The language includes verbs such as *support, provide, adherence, plan, organize, prioritize, monitor, and accomplish*, which are non specific and imprecise. This allows the rating official to be arbitrary in deciding what is an actual accomplishment.**

**My Critical Element 1 refers to Reclamation *Project Management Framework* as Strategic Goal 1 Alignment. Three documents are available from the Reclamation Project Management Framework webpage. These three documents consist of 102 pages. No time is provided to review these documents. No training is provided.**

**Because of the broad language, it is impossible to precisely determine what the explicit strategic goal is. Thus, the rating official can arbitrarily decide whether my accomplishments are aligned with strategic goals.**

Critical elements must describe work assignments and responsibilities that are significantly influenced by an employee's work effort and within the employee's control. For most employees, this means that critical elements cannot describe a group's performance.

**My Critical Element 1 describes a groups performance.**

**Conclusion**

Rating officials do not have to allocate time or charge codes to employees. Thus, the implication is that the employee will do the work required to complete the EPAP on their own time.

When I stated that I could not sign the 2019 EPAP, there was no further discussion. The meeting was terminated immediately by the rating official. No feedback was entertained by rating official.

I submitted a document that demonstrated all of the non-compliance issues with the EPAP.

The conclusions that I have drawing is that the rating official is not interested in receiving feedback. He is only interested in signatures. The tone of the emails that I have received imply that I am a pariah because I am the only one in the group who requested time and I am the only one in the group that would not sign the EPAP. This is a form of intimidation. The entire group is subjected to it and likely simply sign their EPAPs so as to not be on the receiving end of the pariah effect and to not be on the receiving end of the intimidation.

TSC upper management has shown no interest in addressing these matters.

Thank you.

Sincerely,

*Dan Hamann*

Dan Hamann

OFFICE: 303-445-2819, Building 67, 11th Floor, Denver Federal Center

**Attachments**

Emails describing the meetings, et al.

The email attachment showing noncompliance

Language excerpted from my 2020 EPAP.

**CC:**

Jay Boggess

William McStraw

Thomas Luebke

| From: | Boggess, Jay S |
| To: | Hamann, Daniel (Dan) W |
| Cc: | Pierce, Rona L |
| Subject: | Re: Here is your 2019 EPAP scan |
| Date: | Thursday, November 7, 2019 1:30:19 PM |
| Importance: | High |

Please respond by tomorrow morning whether you intend to sign your 2019 EPAP. It has to be turned into HR with the rest of the group's EPAPs tomorrow before noon due to the time off being provided to employees for Veterans Day.

Jay Boggess

On Thu, Nov 7, 2019 at 12:59 PM Hamann, Daniel (Dan) <dhamann@usbr.gov> wrote:
Jay - Actually, I haven't had a chance to look at it yet. I spent most of the morning (after our meeting) getting my replacement PIV card, getting access, etc. And I am just finishing lunch.

However, I am concerned about the tone of your email. This is starting to look like retaliation.

A similar event occurred when I requested Official Time, which you never granted, but was eventually granted by Bill McStraw. - Dan

On Thu, Nov 7, 2019 at 8:29 AM Boggess, Jay <jboggess@usbr.gov> wrote:
WIth my signature. Please let me know by COB today if you are or are not going to sign your 2019 EPAP.

My expectation is that you will not spend the whole work day studying your EPAP and charging to overhead.

Thank you.

Jay B.


--

**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819 (forwarded)

**Telework:** MWF 6-2:30 till 1/1/20 | Call 2819 | Schedule may vary | See Google Calendar

**Location:** Denver Fed Cntr, Bldg 67, 11th Floor, Cube 11-110W 25007 Denver CO 80225.

## U.S. DEPARTMENT OF THE INTERIOR
### Employee Performance Appraisal Plan

| Employee Name: Daniel W. Hamann | Title/Series/Grade: Electrical Engineer GS-850-11 | | |
|---|---|---|---|
| Duty Station: Denver TSC, Lakewood, Colorado | Appraisal Period: FY 2019 | From Date: October 1, 2018 | To Date: September 30, 2019 |

**Part A-1: Establishment of Performance Plan:** *Signatures certify that performance plan (Part E) was discussed with the employee*

| Employee: | Rating Official: | Reviewing Official (if applicable): |
|---|---|---|
| Date: 10-31-18 | Date: 31 - 0 | I am retracting these signatures. The rating official did not solicit my involvement nor did I receive training. I did not read it carefully at the time and did not want to upset my supervisor by not signing. Thus, I signed it. It was only later, after studying the DI-3100, that I realized my error. |

**Part A-2: Employee Input into Performance Plan Development:** *Signatures certify that the rating official solicited the employee's involvement in developing the performance plan*

| Employee: | Date: 10-31-18 | Rating Official: | Date: 31-Oct-18 |
|---|---|---|---|

**Part A-3: Employee Training:** *Signatures certify that the employee reviewed the Understanding Performance Management" guidance or was otherwise provided training on the performance management policy.*

| Employee: | Date: 10-31-18 | Rating Official: | Date: 31-Oct-18 |
|---|---|---|---|

**Part A-4: Individual Development Plan:** *Signatures certify that the employee's Individual Development Plan was created (Optional)*

| Employee: | Date: | Rating Official: | Date: |
|---|---|---|---|

**Part B: Progress Review:** *Signatures certify that performance was discussed.*

| Employee: | Date: 5/29/18 | Rating Official: | Date: 2-8-May-19 |
|---|---|---|---|

**Part C: Summary Rating Determination:** Assign the numerical rating level that accurately reflects the employee's performance for each of the critical elements (Use only whole numbers: Outstanding = 5 points; Exceeds Expectations = 4 points, Fully Successful = 3 points, and Unacceptable = 0 points.) *See next page for complete instructions.*

| Element Number | Numerical Rating |
|---|---|
| 1 | 3 |
| 2 | 3 |
| | 2 |
| | — |
| | — |
| Total: | 9 |

I am not signing this because the critical elements and performance measures do not meet the requirements of the 370 DM 430 HB. Furthermore, there is no data to back up, or to show, how these ratings were established. They appear to be completely arbitrary.

**Total Numerical Rating** 9 ÷ **Number of Elements** 3 = **Numeric Summary Rating** 3.0

**Part D: Summary Rating: Use conversion chart to determine rating. Check appropriate box:**

| | | |
|---|---|---|
| | Outstanding | 4.6 – 5.00 AND No Critical Element rated lower than "Exceeds Expectations" |
| | Exceeds Expectations | 3.6 – 4.59 AND No Critical Element rated "Unacceptable" |
| X | Fully Successful | 3.0 – 3.59 AND No Critical Element rated "Unacceptable" |
| | Unacceptable | One or more Critical Elements rated "Unacceptable" |

| Employee: | Rating Official: | Reviewing Official: (if applicable): |
|---|---|---|
| Date: | Date: 7-Nov-19 | Date: |

Check here if Interim Rating:
Performance Award: QSI _____ Cash: $ _____ or _____% of Pay Time Off _____

Department of the Interior                                                    DI-3100
Employee Performance Appraisal Plan                          October 2018 (previous edition obsolete)

The critical elements in this DI-3200 do not meet the
**Instructions for Co** requirements of the 370 DM 430 HB.          **Appraisal Plan (EPAP) Form**

### Establishing Critical Elements and Performance Standards

Critical elements (at least one, but not more than five) must be established for each employee at the start of the appraisal period. Through these elements, employees are held accountable for work assignments and responsibilities of their position. A critical element is an assignment or responsibility of such importance that Unacceptable performance in that element alone would result in the determination that the employee's overall performance is Unacceptable. Please see 370 DM 430 or the Performance Management Handbook for more detailed information.

Performance standards are management-approved expressions of the performance threshold(s), requirement(s), or expectation(s) that must be met to be appraised on a critical element at a particular level of performance. They must be focused on results and include credible measures such as quality, quantity, timeliness, cost effectiveness, etc. The attached Benchmark Standards describe general parameters of the standards. Federal regulations require, at a minimum, that a specific performance standard be established for the **Fully Successful** level for each critical element. Rating officials are strongly encouraged to develop spec    performance standards at additional levels to ensure that the employee has a clear understanding of the levels of performance expected.

At least one, and preferably all, critical elements must show how the element is linked to the strategic goal(s) of the organization. These goals should be aligned throughout the organization (i.e., show how the strategic goal cascades from the senior executive level down to the lowest non-supervisory levels). The employee should be able to clearly understand how the results they are held responsible for are linked to the results that those in their supervisory/managerial chain are held responsible for.

**Employee Involvement:** Employees must be provided an opportunity to participate in the development of their performance plans. Part A-2 of this form requires employee and rating official signatures certifying that employee input into the development of the plan was solicited.

**Individual Development Plan (IDP) (Optional):** The IDP provides a connection between the employee's career interests and needs to the organizational mission and priorities. The employee and the rating offic    should develop goals together.

**Progress Reviews:** A progress review discussion is required approximately midway through the appraisal period. Part B should be completed after the progress review. Any written feedback or recommended training can be noted on a separate sheet and attached to the EPAP form.

**Assigning the Summary Rating:** A specific rating is required for each critical element to reflect the level of performance demonstrated by the employee throughout the appraisal period. Only one numerical rating level is assigned for each critical element. Before the rating official assigns a summary rating, he/she should consider all interim appraisals received for the employee during the annual appraisal period. The summary rating is assigned as follows:

   A.  Assess how the employee performed relative to the described performance standards.

   B.  Document the employee's performance with a narrative that describes the achievements for the critical elements as compared to the performance standards. A narrative must be written for each critical element assigned a rating of Outstanding or Unacceptable to provide examples of the employee's performance that substantiate and explain how the performance falls within the level assigned. There is a block provided for the narrative for each critical element.

   C.  In Part C of this form, assign one of the numerical rating levels that accurately reflects the employee's performance for each of the critical elements. Use only whole numbers: Outstanding = 5 points, Exceeds Expectations= 4 points, Fully Successful = 3 points, and Unacceptable = 0 points.

   D.  Add up the numerical rating levels to get a total, and then divide the total by the number of critical elements that were rated to get an average. Elements that are not rated because an employee has not had a chance to perform them during the appraisal period are not assigned any points and should not be used to determine the average.

   E.  Assign a summary rating based on the table in Part D of this form. Employee and rating official sign the form certifying that the rating was discussed. *Summary ratings of Outstanding or Unacceptable must be reviewed and approved by the reviewing official prior to the rating official's discussion with the employee.*

**Note:** Whenever an employee is rated **Unacceptable** on one or more critical elements, the overall rating **must be Unacceptable** (regardless of total points). The rating official should immediately contact the servicing Human Resources Office for guidance and assistance on addressing Unacceptable performance.

2

This is language is not a description of a task or responsiblity.
Rather is it guidance on how to develop a critical element.

**Department of the Interior**
**Employee Performance Appraisal Plan**

DI-3100
October 2018 (previous edition obsolete)

**Part E: Critical Elements and Performance Standards:** *List each of the employee's critical elements (at least one, but not more than five) and their corresponding performance standards. If Benchmark Standards are used, indicate "Benchmark Standards are attached" in the space below, and ensure they are attached to this form. At a minimum, measurable criteria must be identified at the Fully Successful level. For at least one critical element, identify the strategic/mission goal that the critical element supports.*

| **Critical Element 1 Title:** | **Critical Element Description:** (Describe the results (e.g., product, service, duty) for which the employee is accountable and responsible) |
|---|---|
| This is titled as a "Performance Measure" but appears to describe a critical element that is general, vague and not measurable, as required by the 370 DM 430 HB. It actually describes a group's performance, which cannot be used as a critical element. | **Performance Measure:** Support Reclamation's program accomplishment within the TSC by providing quality service and products to internal and external clients, in part through adherence to the TSC Operating Guidelines. Plan, organize, prioritize, monitor, and accomplish work within established budget and schedule. Perform required administrative tasks and incorporate concern for safety and security in all work. |
| | **GPRA/Strategic Goal: Workload/Project Management** - Ensure continued implementation of Reclamation Project Management Framework and TSC Project Management and workload management practices to improve the timeliness and cost accountability of TSC products. |

| | **Performance Standards** |
|---|---|
| **Outstanding**<br><br>I requested a copy of these strategic goals but was not provided. I was not able to find where these are located.<br><br>There is no credible measure in terms of quality, quantity, timeliness, and cost effectiveness for these standards which is required by the 370 DM 430 HB. | **Employee plans and performs an exceptional quantity of work according to organizational priorities and schedules with little supervision.**<br>▪ No valid complaints or substantive supervisory interventions related to workload or project management during the rating period.<br>▪ With few exceptions completes tasks/jobs (including checks/reviews, etc) on time and often ahead of schedule and within or below agreed to budgets through the use of project management tools (such as earned value analysis, task based estimates, project management plans, etc) and reports cost effectiveness to supervisor.<br>▪ Positively influences and improves organizational collaboration and coordination with fellow employees, colleagues, supervisors/managers, and/or clients to prevent misunderstandings and plans for the unexpected.<br>▪ Proactive, self-starter and highly motivated to complete tasks successfully and improve processes; consistently exceeds clients' expectations (as documented in narrative summary).<br>▪ Successfully manages workload during the majority of rating period, of considerable complexity, controversy, and/or well beyond present grade level.<br>▪ Peer (and other) reviewers and checkers are with few exceptions afforded sufficient time to review employee's work.<br>See Benchmark standards attached. |
| **Exceeds Expectations**<br><br><br><br><br>There is no credible measure in terms of quality, quantity, timeliness, and cost effectiveness for these standards which is required by the 370 DM 430 HB. | **Employee plans and performs a high quantity of work according to organizational priorities and schedules with less than normal supervision.**<br>▪ No more than 1 valid complaint or substantive supervisory intervention related to workload or project management during the rating period<br>▪ Consistently completes tasks/jobs (including checks/reviews, etc) on time and often ahead of schedule and within agreed to budgets through the use of project management tools (such as earned value analysis, task based estimates, project management plans, etc)and reports cost effectiveness to supervisor.<br>▪ Self-starter and motivated to complete tasks successfully; generally exceeds clients' expectations (as documented in narrative summary).<br>▪ Effectively collaborates and coordinates with fellow employees, colleagues, supervisors/managers, and/or clients and handles difficult and unpredicted problems.<br>▪ Successfully manages workload during the majority of rating period, which is considered outside typical norms in terms of complexity, controversy, and/or beyond present grade level.<br>▪ Peer (and other) reviewers and checkers are consistently afforded sufficient time to review employee's work.<br>See Benchmark standards attached. |

3

| **Fully Successful** | In addition to attached Benchmark standards, the following measurable criteria apply: **Employee generally plans and performs workload/project management duties for assigned projects according to organizational priorities and schedules with mentoring.** |
|---|---|
| | • No more than 3 valid complaints or substantive supervisory interventions related to workload or project management duties during the rating period. |
| There is no credible measure in terms of quality, quantity, timeliness, and cost effectiveness for these standards which is required by the 370 DM 430 HB. | • Generally completes tasks/jobs (including checks/reviews, project status updates change management, and charge reconciliation) in a timely manner and within agreed to budgets through the use of project management tools (such as earned value analysis, task based estimates, project management plans, etc) |
| | • Demonstrates good, sound performance that meets organizational goals; consistently meets supervisor's, client's and project managers' product delivery expectations. |
| | • Peer (and other) reviewers and checkers are generally afforded sufficient time to review employee's work. |
| **Unacceptable** | Any performance that falls below that which is described as Fully Successful. See Benchmark standards attached. |

## Narrative Summary

Describe the employee's performance for the critical element. A narrative summary must be written for each element assigned a rating of Outstanding or Unacceptable.

In FY 2019, Dan worked on the Durango Pumping Plant Crest Gate Redesign, Boca Dam Seismic Modification Construction Support San Xavier Reliability Recovery Project, Cle Elum Gate Hoist project and Blackfeet Renewable Energy Opportunities study

**Rating for Critical Element 1:**

    [ ] Outstanding-5    [ ] Exceeds Expectations-4    [x] Fully Successful-3    [ ] Unacceptable-0

4

Part E: Critical Elements and Performance Standards: *List each of the employee's critical elements (at least one, but not more than five) and their corresponding performance standards If Benchmark Standards are used, indicate "Benchmark standards are attached" in the space below, and ensure they are attached to this form. At a minimum, measurable criteria must be identified at the Fully Successful level. For at least one critical element, identify the strategic/mission goal that the critical element supports.*

| Critical Element 2 Title: | Performance Measure: <u>Communication</u>. Organize and prepare, or coordinate the preparation of, materials such as specifications documents, reports, meeting minutes, travel reports, drawings, maps, graphs, or figures; deliver oral presentations or briefings; and participate in meetings – to communicate, promote TSC capabilities, and convey work status and findings to team leaders, team members, clients, superiors, and others. |
|---|---|

This is titled as a "Performance Measure" but appears to describe a critical element that is general, vague and not measurable, as required by the 370 DM 430 HB. It actually describes a group's performance, which cannot be used as a critical element.

GPRA/Strategic Goal: Contribute to the accomplishment of GPRA performance targets for Reclamation's goals for efficient use and delivery of water and hydropower through effective communication.

| **Performance Standards** | |
|---|---|

### Outstanding

I requested a copy of these strategic goals but was not provided. I was not able to find where these are located.

There is no credible measure in terms of quality, quantity, timeliness, and cost effectiveness for these standards which is required by the 370 DM 430 HB.

Employee communicates clearly and effectively on even complicated or controversial subjects.

- No valid complaints or substantive supervisory interventions related to communication during the rating period.
- With few exceptions provides exceptional quality written documents that require only minor additional data and/or clarification upon review.
- Provides high quality oral communication appropriately tailored to the target audience such that concepts and/or ideas are accurately, concisely, and persuasively articulated so that desired outcomes are achieved.
- With few exceptions seeks appropriate assistance on issues/concerns, including technical, in a timely manner, (i.e., effective networking) and often advises others (such as mentoring or coaching).
- Consistently exceeds clients', supervisor's, and team lead's expectations (as documented in narrative summary.)

May also contribute to organizational growth or recognition:
- Prepares peer-reviewed journal paper or serves as principal author of organizational guidelines or manual.
- Teaches an internal or external class.

See Benchmark standards attached.

### Exceeds Expectations

There is no credible measure in terms of quality, quantity, timeliness, and cost effectiveness for these standards which is required by the 370 DM 430 HB.

Employee communicates very clearly and effectively on even difficult subjects.

- No more than 1 valid complaint or substantive supervisory intervention related to communication during the rating period.
- Consistently provides high quality written documents that require only minor additional data and/or clarification upon review.
- Provides high quality oral communication appropriately tailored to a wide range of audiences such that concepts and/or ideas are accurately and concisely articulated.
- Consistently seeks appropriate assistance on issues/concerns, including technical, in a timely manner (i.e., effective networking) and occasionally advises others (such as mentoring or coaching).
- Generally exceeds clients', supervisor's, and team lead's expectations (as documented in narrative summary.)

May also contribute to organizational growth or recognition:
- Prepares or presents a technical paper or presentation for internal or external forums/events.
- Participates in agency-supported teams and activities

See Benchmark standards attached.

5

000304          Exhibit F-1C - page 35 of 86

| **Fully Successful** | In addition to attached Benchmark standards, the following measurable criteria Employee **generally** communicates clearly and effectively with supervisor, team leads, team members, co-workers, and clients. |
|---|---|
| | • No more than 3 valid complaints or substantive supervisory interventions related to communication during the rating period. |
| There is no credible measure in terms of quality, quantity, timeliness, and cost effectiveness for these standards which is required by the 370 DM 430 HB. | • Generally provides quality written documents that require only minor additional data and/or clarification upon review. |
| | • Provides quality oral communication appropriately tailored to a target audience. |
| | • Consistently seeks appropriate assistance on issues/concerns, including technical, in a timely manner, (i.e., effective networking). |
| | • Consistently meets clients', team leads', and supervisor's expectations with regards to communication on projects. |
| **Unacceptable** | Any performance that falls below that which is described as Fully Successful. See Benchmark standards attached. |

## Narrative Summary

Describe the employee's performance for the critical element. A narrative summary must be written for each element assigned a rating of Outstanding or Unacceptable.

Dan is fully successful in the communication critical element.

**Rating for Critical Element 2:**

[] Outstanding-5    [] Exceeds Expectations-4    [x] Fully Successful-3    [] Unacceptable-0

**Part E: Critical Elements and Performance Standards:** *List each of the employee's critical elements (at least one, but not more than five) and their corresponding performance standards. If Benchmark Standards are used, indicate "Benchmark Standards are attached" in the space below, and ensure they are attached to this form. At a minimum, measurable criteria must be identified at the Fully Successful level. For at least one critical element, identify the strategic/mission goal that the critical element supports.*

---

| **Critical Element 3 Title:** | **Performance Measure: Technical.** Perform, check, and/or assist others with analyses, investigations, or designs for assigned projects or studies. Such work may include data collection and evaluation, computations, analysis, modeling, or layouts. Maintain technical skills. |
|---|---|
| This is titled as a "Performance Measure" but appears to describe a critical element that is general, vague and not measurable, as required by the 370 DM 430 HB. It actually describes a group's performance, which cannot be used as a critical element. | **GPRA/Strategic Goal:** Contribute to the accomplishment of GPRA performance targets for Reclamation's goals for efficient use and delivery of water and hydropower by providing support activities, designs and analyses, and information that meet Reclamation needs. |

<table>
<tr><td colspan="2"><strong>Performance Standards</strong></td></tr>
<tr>
<td>

**Outstanding**

I requested a copy of these strategic goals but was not provided. I was not able to find where these are located.

There is no credible measure in terms of quality, quantity, timeliness, and cost effectiveness for these standards which is required by the 370 DM 430 HB.

</td>
<td>

**Employee demonstrates mastery of technical skills and a thorough understanding of the mission of the organization and has a fundamental impact on the completion of the job with little mentoring.**
- No valid complaints or substantive supervisory interventions related to technical aspects of work products during the rating period.
- Applies and leads or identifies the need for the development of appropriate technical codes, criteria, standards, guidelines to accomplish tasks/jobs.
- Analyses and results/products are with few exceptions very sound and accurate; peer review comments identify only minor errors.
- Products and performance are of such high quality that organizational goals have been achieved that would not have been otherwise.
- Proactive, self-starter and highly motivated to complete tasks successfully and improve processes and consistently exceeds clients' expectations (as documented in narrative summary).

**May also contribute to improving organization's technical capabilities or recognition:**
- Advances the state-of-practice and/or state-of-art through independently developing technical methods/ procedures for Group, Division, or TSC.

See Benchmark standards attached.

</td>
</tr>
<tr>
<td>

**Exceeds Expectations**

There is no credible measure in terms of quality, quantity, timeliness, and cost effectiveness for these standards which is required by the 370 DM 430 HB.

</td>
<td>

**Employee effectively applies comprehensive technical skills, understanding of the objectives, and knowledge of organizational procedures to get the job done and support organizational goals with less than normal mentoring.**
- No more than 1 valid complaint or substantive supervisory intervention related to technical aspects of work products during the rating period.
- Applies and assists in the development of appropriate technical codes, criteria, standards, guidelines to accomplish tasks/jobs.
- Performance is unusually good, analyses and results/products are consistently sound and accurate; peer review comments identify only minor errors
- Self-starter, motivated to complete tasks successfully, and generally exceeds clients' expectations (as documented in narrative summary).
- Serves on technical teams that are not part of the normal workload.

**May also contribute to improving organization's technical capabilities or recognition:**
- Advances the state-of-practice and/or state-of-art through participation in the development and implementation of technical methods/procedures within the Group, Division or TSC.

See Benchmark standards attached.

</td>
</tr>
</table>

000306          Exhibit F-1C - page 37 of 86

| **Fully Successful** | In addition to attached Benchmark standards, the following measurable criteria apply. Employee generally applies technical skills and organizational knowledge to perform and check analyses, investigations, or designs for assigned projects with mentoring. |
|---|---|
|  | ▪ No more than 3 valid complaints or substantive, supervisory interventions related to technical aspects of work products during the rating period |
| There is no credible measure in terms of quality, quantity, timeliness, and cost effectiveness for these standards which is required by the 370 DM 430 HB. | ▪ Applies appropriate technical codes, criteria, standards, guidelines in the accomplishment of tasks/jobs. |
|  | ▪ Analyses and results/products are generally sound and accurate; peer review comments identify only minor errors. |
|  | ▪ Demonstrates good, sound performance that meets organizational goals and consistently meets clients' expectations related to technical aspects of product. |
| **Unacceptable** | Any performance that falls below that which is described as Fully Successful. See Benchmark standards attached. |

## Narrative Summary

Describe the employee's performance for the critical element. A narrative summary must be written for each element assigned a rating of Outstanding, or Unacceptable.

Dan is fully successful in the area of the technical critical element.

**Rating for Critical Element 3:**

[] Outstanding-5     [] Exceeds Expectations-4     [x] Fully Successful-3     [] Unacceptable-0

8

| From: | Hamann, Daniel (Dan) W |
| To: | Boggess, Jay S |
| Cc: | Pierce, Rona L; McStraw, William D |
| Subject: | Re: Here is your 2019 EPAP scan |
| Date: | Friday, November 8, 2019 10:04:55 AM |
| Attachments: | commented EPAP.pdf |

Jay,

I was given two hours notice for my performance review yesterday. This could have been scheduled two weeks in advance, which would have given me time to prepare. Having taken leave on Wednesday, I came in yesterday (Thursday) at 6 AM, to see an invite for an 8 AM EPAP meeting. I already had a busy day scheduled but accepted the invite.

Throughout this meeting, I calmly provided feedback to you regarding the nature of my performance review and the DOI performance review system at large. I spoke openly and candidly. I never raised my voice - but you did. And it certainly isn't the first time.

Over the course of the last year, on my own time, I have researched policy, laws and regulations. I discovered that TSC does not comply with DOI policy. For example, yesterday's meeting occurred after the October 1 to 31 window, which is in the timeline in the 370 DM 430 HB. TSC does seem to have a problem with this.

Because I have developed a better understanding of the policy and the performance system, I now see it is ritualistic, and you actually seem to agree with me on that. Rather, there is a system of cronyism and favoritism that is the actual performance and promotion system, that is pervasive, particularly within our group - a system largely partially on obsequious behavior.

The meeting ended with you having (another) temper tantrum, when I indicated that I couldn't sign the EPAP. Quite frankly, this type of behavior is unbecoming for a rating official. As I told you, we could review each of the signature blocks, but you abruptly terminated the meeting at that point, emailed a copy of the EPAP to me, stating that "expectation is that you will not spend the whole work day studying your EPAP and charging to overhead".

What seemed to enrage you in particular was when I pointed out that my ratings are coincidentally all "3s," which is highly unlikely in a bona fide rating system. In my opinion, these ratings are arbitrary and assigned for convenience. There is no back up data provided to show that the calculations of the ratings were based on guidance in the 370 DM 430 HB, which shows ratings taken out to 2 decimal points.

This is hardly an environment conducive to a fluid exchange of information. It is hardly in compliance with the guidance of the 370 DM 430 HB which states "Giving and receiving feedback is one of the critical components of the performance appraisal process." Rather, this behavior smacks of bullying, and that has been the M.O., since I began working at TSC. As a rating official, it is my opinion you are more interested in getting signatures than in conducting bona fide performance reviews, and will use intimidation to achieve that.

I have attached a DI-3100, with my comments, where the intent is to show, more

specifically, the non-compliance issues with respect to DOI policy.

Dan

On Fri, Nov 8, 2019 at 8:39 AM Boggess, Jay <jboggess@usbr.gov> wrote:
Dan -
Per our IM conversation (Screen shot enclosed) I note that you are refusing to sign your
2019 EPAP.

Jay Boggess

On Thu, Nov 7, 2019 at 1:30 PM Boggess, Jay <jboggess@usbr.gov> wrote:
Please respond by tomorrow morning whether you intend to sign your 2019 EPAP. It has
to be turned into HR with the rest of the group's EPAPs tomorrow before noon
due to the time off being provided to employees for Veterans Day.

Jay Boggess

On Thu, Nov 7, 2019 at 12:59 PM Hamann, Daniel (Dan) <dhamann@usbr.gov> wrote:
Jay - Actually, I haven't had a chance to look at it yet. I spent most of the
morning (after our meeting) getting my replacement PIV card, getting access,
etc. And I am just finishing lunch.

However, I am concerned about the tone of your email. This is starting to look
like retaliation.

A similar event occurred when I requested Official Time, which you never
granted, but was eventually granted by Bill McStraw. - Dan

On Thu, Nov 7, 2019 at 8:29 AM Boggess, Jay <jboggess@usbr.gov> wrote:
WIth my signature. Please let me know by COB today if you are or are not going to
sign your 2019 EPAP.

My expectation is that you will not spend the whole work day studying your EPAP
and charging to overhead.

Thank you.

Jay B.

--

**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819 (forwarded)

**Telework:** MWF 6-2:30 till 1/1/20 | Call 2819 | Schedule may vary | See Google
Calendar

**Location:** Denver Fed Cntr, Bldg 67, 11th Floor, Cube 11-110W 25007 Denver CO

80225.

--

**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819 (forwarded)

**Telework:** MWF 6-2:30 till 1/1/20 | Call 2819 | Schedule may vary | See Google Calendar

**Location:** Denver Fed Cntr, Bldg 67, 11th Floor, Cube 11-110W 25007 Denver CO 80225.

| | |
|---|---|
| **From:** | Hamann, Daniel (Dan) W |
| **To:** | Boggess, Jay S |
| **Subject:** | Re: Re 2020 EPAPs |
| **Date:** | Wednesday, November 13, 2019 1:51:09 PM |

What WOID is to be used for this effort and how much time is allocated?

On Tue, Nov 12, 2019 at 2:33 PM Boggess, Jay <jboggess@usbr.gov> wrote:

Folks -

Everyone has their 2020 EPAP in their DOI Talent, awaiting review. Next step after you look it over (some of you have already done this) is to sit down with me and play a game of electronic signing I call "Electronic EPAP Battleship" or "Electronic EPAP Ping-Pong".

One concern someone brought up is that there does not seem to be any Performance Management training and therefore their signature on their EPAPs (Part A-3) should not have been requested. In the EPAP forms it states 'Signature certify that the employee reviewed the "Understanding Performance Management" guidance or was otherwise provided training on the performance management policy.' Appendix 1 is the "Understanding Performance Management." Therefore, you should ensure they review Appendix 1 at the time before signing the electronic version.

Jay Boggess

--

**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819 (forwarded)

**Telework:** MWF 6-2:30 till 1/1/20 | Call 2819 | Schedule may vary | See Google Calendar

**Location:** Denver Fed Cntr, Bldg 67, 11th Floor, Cube 11-110W 25007 Denver CO 80225.

| | |
|---|---|
| **From:** | Boggess, Jay S |
| **To:** | Hamann, Daniel (Dan) W |
| **Subject:** | WOID for 2020 |
| **Date:** | Wednesday, November 13, 2019 2:41:53 PM |
| **Importance:** | High |

No one has asked explicitly for time to review the 2020 EPAP, but I will give you 2-3 hours WCCAP for you to review your 2020 EPAP.

Jay Boggess

| From: | Boggess, Jay S |
| To: | Hamann, Daniel (Dan) W |
| Cc: | Pierce, Rona L |
| Subject: | Re Your 2020 EPAP |
| Date: | Tuesday, November 26, 2019 2:34:24 PM |

On the 7th of November, I informed you that your 2020 EPAP was ready for your electronic review in DOI Talent. It is now 26 November. Everyone else in 8430 has signed their 2020 EPAP. Please let me know by COB November 27 if you are going to sign or not sign your 2020 EPAP.

Thank you!

Jay Boggess

Critical Element 1 Title

> Workload/Project Management

Strategic Goal 1 Alignment

> Ensure continued implementation of Reclamation Project Management Framework and TSC Project Management and workload management practices to improve the timeliness and cost accountability of TSC products

Critical Element 1 Description

> Support Reclamation's program accomplishment within the TSC by providing quality service and products to internal and external clients, in part through adherence to the TSC Operating Guidelines. Plan, organize, prioritize, monitor, and accomplish work within established budget and schedule. Perform required administrative tasks and incorporate concern for safety and security in all work.

Outstanding

> Employee plans and performs an exceptional quantity of work according to organizational priorities and schedules with little supervision. § No valid complaints or substantive supervisory interventions related to workload or project management during the rating period. § With few exceptions completes tasks/jobs (including checks/reviews, etc) on time and often ahead of schedule and within or below agreed to budgets through the use of project management tools (such as earned value analysis, task based estimates, project management plans, etc) and reports cost effectiveness to supervisor. § Positively influences and improves organizational collaboration and coordination with fellow employees, colleagues, supervisors/managers, and/or clients to prevent misunderstandings and plans for the unexpected. § Proactive, self-starter and highly motivated to complete tasks successfully and improve processes; consistently exceeds clients' expectations (as documented in narrative summary). § Successfully manages workload during the majority of rating period, of considerable complexity, controversy, and/or well beyond present grade level. § Peer (and other) reviewers and checkers are with few exceptions afforded sufficient time to review employee's work. See Benchmark standards attached.

| From: | McStraw, William D |
| To: | BOR DRO TSC8430; BOR DRO TSC8440; BOR DRO TSC8450; BOR DRO TSC8460 |
| Cc: | Mendlin, Eric T; Dawson, Patrick K; Stephen, Ryan D; Holmes, Jill R; Myers, Nathan E; Boggess, Jay S; Pierce, Rona L |
| Subject: | PE Requirements for GS-12 Electrical Engineers in the TSC |
| Date: | Friday, January 31, 2020 7:23:11 AM |

It was recently reported to me that several of the electrical engineers were not aware that a GS-12 position for an electrical engineer position in the 8400 Division of the Technical Service Center does not always require a Professional Engineer registration. This email is being sent to all electrical engineers in the 8400 division in an attempt to dispel any rumors, and to clarify and make everyone aware of this.

Details of the requirements for Professional Engineering registration (PE) are outlined in Directives and Standards HRM 05-01, "Professional Registration for Engineers, Land Surveyors, Landscape Architects, and Architects" dated 04/06/2018.

A little background on how this exception for electrical engineer positions in the TSC evolved. Prior to the special rate salary for engineers that was implemented several years ago, the Bureau of Reclamation was having difficulty in the hiring and retention of electrical engineers due to the large pay discrepancy that was being offered in private industry and other government agencies that did not have a requirement for a PE for the GS-12 grade. In an effort to hire and retain qualified electrical engineers for Reclamation, the PE requirement for certain GS-12 electrical engineer positions was no longer required and that policy is still currently in effect.

HRM 05-01 specifically states, "Managers and Supervisors are responsible for determining, in conjunction with their servicing HR office, whether a position requires professional registration after comparing the duties of the position to the requirements of Directives and Standards HRM 05-01".

A position that requires a PE is identified as a "designated position", and these positions will specifically state that a PE is required in the position description. If a position is being advertised the vacancy announcement will also state that a PE is required, a PE will be used as a selective placement factor, and a copy of the PE registration is required to be provided in order to be eligible for the position.

In the Technical Service Center, a PE is required for any position that requires responsibility for "Technical Approval" of drawings, technical documents, memoranda, or construction documents. This responsibility is inherent in the position classification. For an electrical engineer in the Technical Service Center 8400 division, a PE is required to be a GS-13 and sign engineering documents and drawings "Technically Approved". In some cases, a PE will be required for a GS-12 electrical engineer position whose duties include peer review and technical approval of studies, analysis and other engineering documents and decisions that affect the life, health, property, and welfare of the public.

In summary, in most cases a PE is not required for a GS-12 electrical engineer position in the TSC, however, if a PE is required for a GS-12 electrical engineer "designated position" it will be included in the position description and the vacancy announcement for any open positions. It is strongly encouraged that PE registration be obtained which will benefit the TSC (more qualified technical approvers) and will enhance the career opportunities and potential promotions for those individuals with PE registration credentials.

Thank you and let me know if you have any additional questions.


Bill McStraw, Chief

Electrical and Mechanical Engineering Division

Technical Service Center



# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, DC 20240

**JUN 1 4 2019**

**PERSONNEL BULLETIN NO: 19-02**

**SUBJECT:** Telework Program

**1. Purpose.** This Personnel Bulletin (PB) establishes the policy, assigns responsibilities, and prescribes procedural requirements for the Department of the Interior's (DOI or Department) Telework Program. Consistent with the Telework Enhancement Act of 2010, this PB establishes the Departmental policy under which eligible employees may be authorized to telework to the extent that the arrangement does not diminish employee or organizational performance. This PB supersedes the existing policy in Departmental Manual (DM) Chapter 370 DM 226, Telework Program, until corresponding changes in the DM are made.

**2. Effective Date.** This policy is effective on July 15, 2019.

**3. Authorities.**

A. Title 5 of the United States Code (U.S.C.), Chapter 63
B. Title 5 of the U.S.C., Chapter 65
C. Title 5 of the U.S.C., Chapter 81
D. Title 40 of the U.S.C., Chapter 5, Section 587
E. Part 531 of Title 5 Code of Federal Regulations (CFR)
F. Part 550 of Title 5 CFR
G. Part 630 of Title 5 CFR
H. Part 2635 of Title 5 CFR
I. Part 1630 of Title 29 CFR
J. PB 18-04, Weather and Safety Leave, dated May 10, 2018
K. PB 14-01, Reasonable Accommodation for Individuals with Disabilities, dated February 20, 2014
L. 370 DM 771, Administrative Grievance Procedures

**4. Coverage.** This policy applies to all DOI employees, and supersedes any other Departmental or Bureau/Office policies or procedures that conflict with this policy. Bureaus/Offices may issue supplemental implementing procedures at their discretion. The Bureau/Office supplemental procedures must be forwarded to the Director of the Department's Office of Human Capital prior to implementation for concurrence.

**5. Definitions.**

A. <u>Alternative Worksite</u>. A location, other than the employee's official worksite, that has been approved for the performance of assigned official duties as designated on the telework agreement. It may be an employee's home, a telework center, or other approved worksite that is conducive to performing the official duties.

1

B. Concurring Management Official. The management official within the Bureau/Office, generally the second-level supervisor, with authority to review and approve employee requests for core telework arrangements.

C. Core Telework. A telework arrangement in which eligible employees telework from an approved alternative worksite on a recurring, scheduled basis—i.e., fixed day(s) per week or pay period.

D. Dependent Care. Care of children, elders, or other dependent adults. Employees cannot personally care for a dependent while teleworking and are responsible for securing appropriate arrangements for any dependents who are unable to care for themselves independently.

E. Hoteling. An arrangement in which employees are not assigned permanent, dedicated office space at a DOI location, but rather are provided office space by reservation, on an as-needed basis.

F. Mobile Work. Work that is characterized by routine and regular travel to conduct work in customer or other worksites as opposed to a single authorized alternative worksite. Examples of mobile work include site audits, site inspections, investigations, property management, and work performed while commuting, traveling between worksites, or on Temporary Duty (TDY). This category of work is not considered telework and is not covered by this policy.

G. Official Duty Station. The official worksite where the employee regularly performs his or her duties as determined under 5 CFR §531.605.

H. Official Disciplinary Action. Any disciplinary action that results in the placement of a document in an employee's electronic Official Personnel Folder (e.g., written reprimand, suspension, removal, reduction in grade/pay).

I. Remote Work. An arrangement in which an employee permanently performs duties from a geographic location which is different from that of the employing office, e.g., from another state. For a remote worker, the approved work location is the employee's official duty station for pay purposes, even if that location is his or her home. This category of work is not considered telework and is not covered by this policy.

J. Situational Telework. A telework arrangement in which eligible employees telework without a set schedule (e.g., telework as a result of inclement weather, personal appointment, special work assignment). An employee with an approved situational telework arrangement must obtain advance approval from his or her supervisor in order to telework on a particular day(s).

K. Telework. A work flexibility arrangement under which an employee performs the duties and responsibilities of his or her position, and other authorized activities, from an approved worksite other than the location from which the employee would otherwise work.

L. Telework Agreement (Form DI-3457). A written agreement that outlines the terms and conditions for an employee authorized to telework, as approved by the appropriate management

2

official(s). Telework agreements are mandatory for an employee's participation in the telework program. Bureaus/Offices may not alter, supplement or modify the Form DI-3457.

M. Teleworker. An eligible employee who has completed the required telework training, has an approved telework agreement in place, and has the required work necessities (e.g., equipment, materials) to effectively perform his or her duties at an approved alternative worksite. Also referred to as a "telework-ready" employee.

**6. Responsibilities.** As noted in Section 4, Bureaus/Offices may issue implementing procedures to add additional responsibilities to each of the below roles and/or identify additional roles within their organizational structures in order to implement this policy.

A. Deputy Assistant Secretary for Human Capital and Diversity. The Deputy Assistant Secretary for Human Capital and Diversity, as the Department's Telework Managing Officer, is responsible for:

> (1) Overseeing policy development and implementation related to the Department's Telework Program and submission of required reports to the U.S. Office of Personnel Management (OPM) or other government organizations as may be required.

> (2) Advising Departmental leadership on the administration of the DOI Telework Program and serving as the Department's primary liaison with OPM on telework matters.

B. Office of the Chief Information Officer is responsible for:

> (1) Developing strategies and providing guidance for enterprise information technology capabilities and data security required to support telework.

> (2) Overseeing the evaluation of new and emerging technologies that facilitate telework and approving them for Department-wide use, as appropriate.

> (3) Establishing criteria and guidelines for using and protecting Government furnished equipment (GFE) and non-GFE, including personally-owned equipment to access DOI information systems and networks to perform telework.

C. Departmental Telework Coordinator. Appointed by the Telework Managing Officer, the Departmental Telework Coordinator is responsible for:

> (1) Administering the DOI Telework Program in accordance with governing law and Departmental policies.

> (2) Serving as a resource for Bureau/Office telework coordinators on telework matters and advising on strategies to overcome barriers to implementing telework within the Bureaus/Offices.

> (3) Developing DOI Telework policy and coordinating policy and procedure changes with the Bureau telework coordinators.

3

(4) Assessing the Department's Telework Program.

(5) Preparing reports on employee telework participation rates and other related metrics, and providing information regarding employee telework agreements as required by OPM, other Federal agencies, Departmental leadership, and the Office of the Solicitor.

(6) In consultation with the Telework Managing Officer, establishing agency telework participation goals.

D. Bureau Directors and Equivalent Office Heads are responsible for:

(1) Ensuring that their organizations are in full compliance with the requirements of this policy.

(2) Establishing implementing procedures, as needed, to maximize appropriate use of telework as a work flexibility arrangement, to include integrating telework into continuity of operations (COOP) plans.

(3) Holding subordinate supervisors and managers accountable for implementing telework in accordance with this policy and applicable Bureau implementing procedures.

(4) Holding subordinate supervisors and managers accountable for evaluating teleworkers and non-teleworkers under the same performance management system and ensuring that teleworkers are afforded the same professional opportunities, assignments, and treatment as non-teleworkers with regard to duties assigned, periodic appraisal of employee performance, awards, training and developmental opportunities, promotions, and retention incentives.

E. Bureau Telework Coordinators. Each Bureau and equivalent Office will designate a Telework Coordinator to serve as the Bureau/Office contact for telework policy and program questions. This individual should be of sufficient position and grade as to allow him or her access to senior Bureau/Office officials and to speak with authority regarding telework. The Bureau Telework Coordinators are responsible for:

(1) Providing assistance and guidance to Bureau/Office employees and managers regarding telework.

(2) Preparing and submitting periodic reports to the Department's Office of Human Capital on the Bureau/Office telework eligibility and participation rates.

(3) Preparing and submitting reports to Bureau/Office leadership (e.g., Regional Directors or equivalent positions) on telework participation rates and providing information regarding employee telework agreements.

(4) Maintaining Bureau employee telework agreement records.

4

F. Servicing Human Resources Offices (HRO) are responsible for:

    (1) Ensuring vacancy announcements and position descriptions contain accurate information regarding the suitability of a position for telework.

    (2) Ensuring that all position and employee telework eligibility codes are correctly reflected in the Federal Personnel and Payroll System.

    (3) Providing assistance and guidance to Bureau/Office managers on managing and supervising teleworkers.

G. Concurring Management Officials are responsible for:

    (1) Reviewing and approving employee requests for core telework arrangements.

    (2) Holding subordinate supervisors and managers accountable for implementing telework in accordance with this policy and applicable Bureau/Office implementing procedures.

    (3) Holding subordinate supervisors and managers accountable for evaluating teleworkers and non-teleworkers under the same performance management system and ensuring that teleworkers are afforded the same professional opportunities, assignments, and treatment as non-teleworkers with regard to duties assigned, periodic appraisal of employee performance, awards, training and developmental opportunities, promotions, and retention incentives.

H. Supervisors are responsible for:

    (1) In consultation with the servicing HRO, determining an employee's eligibility for telework and notifying the employee, as appropriate. Generally, employees must be notified of their telework eligibility within 60 days of starting a new job.

    (2) In consultation with the servicing HRO, determining whether the duties of a position are suitable for telework. After an initial determination, this determination will be made each time the position description is modified.

    (3) Executing telework agreements with employees who request to and are permitted to telework; ensuring that required telework training is completed prior to allowing the employee to telework; and terminating telework agreements when employees are no longer eligible to telework or the teleworking arrangement fails to meet organizational needs.

    (4) Upon approval of a telework agreement, establishing and communicating clear expectations with employees regarding methods of communication (e.g., customer service, time frames for returning phone calls, email communication), meeting attendance, duty hours, the accurate coding of telework for time and attendance purposes, requesting leave while teleworking, and notification procedures for requesting situational and unscheduled telework.

5

(5) Establishing clearly defined performance standards and using existing quality and quantity standards to evaluate work performance of a teleworker. Managing the teleworker remains the same as for employees in the official worksite in that performance is measured by results.

(6) Treating teleworkers the same as non-teleworking employees concerning performance appraisals, work assignments and requirements, awards and recognition, training and developmental opportunities, promotions, retention, and other employment matters involving management discretion; and treating employees equitably when implementing telework in their organization.

(7) Actively supporting telework and working through minor problems or obstacles that may occur.

(8) Being cognizant of opportunities to achieve savings by monitoring and coordinating teleworker schedules to share office space. Supervisors will be proactive in pairing employees in the same location with opposite schedules (one employee present when another is not) to optimize the use of reduced office space.

(9) Ensuring employees protect and secure agency records and sensitive information consistent with established DOI policies.

(10) Reviewing and recertifying telework agreements annually to validate whether the arrangement is still effective and in the best interest of the agency.

(11) Executing a new telework agreement when an employee is assigned to a new position, a new supervisor, or to effect a permanent change to a telework arrangement (e.g., new alternative worksite, new core telework day).

(12) Ensuring adequate worksite office coverage during business hours so that mission operations continue to be carried out efficiently and effectively.

(13) Maintaining records of direct reports' current telework agreements.

I. Teleworkers are responsible for:

(1) Securing approval of their telework agreement and completing required telework training prior to teleworking.

(2) Providing the same level of support, availability, accessibility to customers, coworkers, and supervisor as if working at the official worksite. This includes meeting organizational and individual work requirements, participating in staff meetings, working assigned duty hours, and responding to phone calls, email, and voicemail in a timely manner.

(3) Ensuring there is no diminishment of individual performance or agency requirements and that they have sufficient work assignments conducive to telework.

6

(4) Complying with their approved telework agreement and adhering to Departmental policies while working at the alternative worksite. These policies include but are not limited to: Ethics and Standards of Conduct; Acceptable Use of the Internet; Conduct and Discipline; Time and Attendance; and Records Management.

(5) Obtaining advance approval from their supervisor for each instance of telework when teleworking under a situational agreement.

(6) Accurately coding their timesheet to reflect the hours teleworked.

(7) Conforming to office requirements for shared space at the employee's official duty location.

(8) Teleworking, if he or she has a telework agreement in place and is required to do so by the supervisor, when the employee is subject to an investigation or other administrative action that requires the employee to be taken out of the workplace.

(9) Teleworking when prevented from safely traveling to or performing work at their official worksite due to an act of God (e.g. snowstorm, flood) or other condition that prevents an employee or group of employees from safely traveling to or safely performing work at an approved location (e.g., building fire at the official worksite) if the telework site is not also impacted. This includes preparing and planning ahead, including taking necessary work equipment (e.g., laptop) to the alternative worksite, when severe weather or other emergency situations can be anticipated.

(10) Properly protecting and securing GFE and sensitive information in compliance with Departmental guidance.

(11) Ensuring the alternative worksite is safe, free from hazards, and provides an adequate work environment with regard to connectivity and technology. Employees are expected to provide internet service and other general utility costs at their own expense.

(12) Ensuring appropriate arrangements for the care of dependents while teleworking.

**7. Policy.** Telework is an effective strategy for mission accomplishment, ensuring COOP in a crisis, and recruiting and retaining valued talent. It is the policy of the DOI to promote telework that does not diminish employee performance or agency operations, or adversely affect the ability of the Department to achieve its mission. Employees do not have a presumptive right to telework. An employee's participation in the telework program is voluntary and must only be approved when it is deemed to be in the best interest of the agency.

There are two types of telework arrangements available at the Department:

- Core Telework
- Situational Telework

7

Employees, regardless of their telework arrangement, must have an approved telework agreement in place in order to participate in telework. Once the telework agreement is finalized, employees will be considered telework-ready.

An employee approved to telework must physically report to his or her official duty station **at least two full work days per bi-weekly pay period**, except for rare short-term circumstances or as a reasonable accommodation.

A. Telework Eligibility. To the extent that mission requirements are not jeopardized, management officials may permit eligible employees who exhibit suitable work performance and conduct, occupy positions suitable for telework, and have access to an appropriate alternative worksite to telework to the extent feasible. Telework eligibility criteria must be applied impartially and consistently and be based on appropriate business and organizational needs. While telework is a workplace flexibility, it is not an employee entitlement and not all employees are eligible to telework.

The following factors must be evaluated when determining telework eligibility:

(1) Position Suitability. In determining position suitability, supervisors should consider what duties and functions an employee performs, and not simply the occupation, pay plan, series, or grade level of the position. Positions suitable for telework must have:

- Quantifiable, project-oriented, or other portable job tasks that can be performed at the approved alternative worksite (e.g., reading reports, analyzing documents and studies, preparing written documents).
- Limited need for access to classified information.
- Off-site access to needed technology.

While many positions may be suitable for telework, there are certain positions that are not conducive to telework. Positions are not suitable for telework that require on a daily basis (every work day):

(a) Direct handling of classified or other secure materials determined to be inappropriate for telework by management.

(b) On-site activity that cannot be handled remotely or at an alternative worksite (e.g., face-to-face personal contacts; intake or distribution of mail; hands-on contact with machinery, equipment, or vehicles; law enforcement).

When an employee's position is determined not normally suitable for telework, there may be circumstances or portions of the employee's work (e.g., reading and analyzing documents and preparing reports or other types of correspondence, non-classified assignments) that may be considered for telework on a situational basis if the supervisor deems it to be in the best interest of the agency.

(2) Position Suitability - Supervisory Positions. Supervisory positions generally require frequent interpersonal interactions. As such, **supervisory positions are not suitable for**

8

**core telework**. On a case-by-case basis, supervisory positions may be considered for a situational telework arrangement if deemed in the best interest of the agency.

(3) Employee Eligibility. After ensuring that the position is suitable for telework, the supervisor must determine the employee's eligibility to telework. To be considered eligible for telework, an employee must demonstrate characteristics indicating his or her ability to effectively work away from the official worksite. Employees eligible for telework must display dependability, responsibility, and conscientiousness; the ability to work independently and without close supervision; self-motivation and self-discipline; and the ability to prioritize work and manage time wisely.

(4) Employee Ineligibility. Employees are ineligible to telework if:

(a) Their conduct has resulted in an official disciplinary action taken against them (e.g., written reprimand, suspension, removal, reduction in grade/pay) for any type of misconduct. Disciplined employees may remain ineligible to telework for a maximum of two years from the effective date of the official disciplinary action. When disciplined employees become eligible for telework, supervisors, after consultation with the servicing HRO, may allow disciplined employees to telework or may continue periods of telework ineligibility until a future date;

(b) Consistent with 5 U.S.C. § 6502(a)(2), they have been officially disciplined for:
- being absent without permission for more than five days in any calendar year; or
- violations of subpart G of the Standards of Ethical Conduct of Employees of the Executive Branch for reviewing, downloading or exchanging pornography, including child pornography on a Federal computer or while performing Federal Government duties

The period of ineligibility for employees who have been officially disciplined for misconduct indicated in Section 7.A(4)(b) depends on the type of action and whether a non-permanent or permanent record of the discipline is filed in the employee's electronic official personnel folder (eOPF). For non-permanent records (e.g., reprimand), the prohibition from telework exists until the document is removed. For permanent records (e.g., personnel actions documenting suspensions), the prohibition is permanent; or

(c) They have received less than a Fully Successful performance rating at any time during the rating period or been notified in writing of less than Fully Successful performance (e.g., by receipt of a Notice of Opportunity to Demonstrate Acceptable performance). On a case-by-case basis, employees who are formally notified during the performance year that their performance has improved to the Fully Successful level may resume teleworking, if the supervisor deems telework to be in the best interest of the agency.

9

Although the above criteria establish when an employee is eligible to participate in telework, eligibility does not equate to an entitlement to telework. The determination regarding the suitability of a position, eligibility of an employee to telework, or approval of an employee's participation in telework resides with management and will be based on the duties of the employee's position, business needs, and/or the employee's ability to fulfill his or her responsibilities as outlined in Section 6.I. Bureaus/Offices may not supplement these eligibility criteria in their implementing procedures.

B. Establishing a Telework Arrangement. If it is determined that telework is a viable option and in the best interest of the agency, the supervisor and the employee must complete the required training and execute a telework agreement before initiating a telework arrangement.

(1) Complete Telework Training.

(a) Prior to initiating a telework arrangement, employees and their supervisors must complete telework training. The required training courses for supervisors and employees are available via the Department's electronic learning management system. Employees must complete the course titled "Telework Fundamentals – Employee Training," and supervisors must complete the course titled, "Telework Fundamentals – Manager Training." This is a one-time requirement. Once completed, employees and supervisors do not need to repeat the training for the purposes of telework. If employees or supervisors have documentation demonstrating they completed previous training titled "Telework 101 for Employees," or "Telework 101 for Supervisors," or equivalent training, they do not need to complete these courses.

(b) Bureaus/Offices may establish organization-specific telework training to fulfill this requirement.

(2) Complete Telework Agreement.

(a) An approved telework agreement (Form DI-3457) must be in place before an employee is permitted to telework. The telework agreement documents the terms and conditions of the telework arrangement, including the type of telework arrangement approved and the particular days for which the employee is approved to telework, if applicable, and includes a safety checklist for the employee to use in assessing the overall safety of the alternative worksite. The final decision regarding the type of telework arrangement and days an employee is scheduled to telework rests with management. The telework agreement must be completed by the employee and the supervisor. **For core telework arrangements, the telework agreement must also be reviewed and approved by a concurring management official.** Supervisors and concurring management officials, if applicable, should strive to complete the telework agreement form within ten (10) business days of receipt from employee.

(b) A new telework agreement form must be initiated when the employee is assigned a new supervisor or new position.

10

(c) Telework agreements must be reviewed by the supervisor, concurring management official, if applicable, and teleworker on an annual basis to be revalidated, revised, or terminated as appropriate. During this annual review and recertification, the supervisor must verify that the employee is still eligible to participate in telework (e.g., review employee's most recent performance rating to ensure that it is at least Fully Successful). The annual review and recertification must occur on or before the one-year anniversary date that the telework agreement was originally approved. Failure to complete the annual recertification requirement will result in the termination of the telework agreement.

(3) Telework Denial and Termination. Telework requests may be denied and agreements terminated at any time by management. In addition, a telework agreement may be terminated at the employee's request.

(a) Denial or Termination of Telework Arrangement by Management. When an employee's request to telework is denied or an agreement is terminated by management, the reasons for denial or termination will be documented in writing on the Telework Agreement Form (Form DI-3457) and given to the employee. Denial or termination decisions must be based on mission-related reasons and what is in the best interest of the agency (e.g., telework arrangement fails to meet the organization's needs; employee's performance or conduct does not comply with the terms of the telework agreement; employee or his or her position no longer meets the eligibility criteria; staffing issues lead to inadequate office coverage).

(b) Termination of Telework Arrangement by Employee. Employees may voluntarily terminate their participation in a telework arrangement. Such requests must be submitted in writing to the employee's supervisor. Employees will normally provide at least two (2) weeks' notice so that arrangements can be made to accommodate their return to work at the official worksite, if necessary.

(c) Employee Appeal of Telework Denial or Termination. Employees may appeal the denial of telework or the termination of an existing telework agreement. Bargaining unit employees may file a grievance through negotiated grievance procedures, if provided for in their applicable collective bargaining agreement. If there is no collective bargaining agreement and/or negotiated grievance procedures in place, bargaining unit employees may be permitted to file in accordance with the Department's Administrative Grievance Procedures where the use of these procedures has been agreed to via a written agreement between the appropriate management and union representatives. Non-bargaining unit employees may file a grievance in accordance with the Department's Administrative Grievance Procedures.

C. Equipping for Telework. To the extent permitted by Bureau/Office policies and procedures, Bureaus/Offices may provide the equipment and supplies the supervisor determines necessary for the employee to telework from the approved alternative worksite. The equipment and

11

supplies should be deemed necessary for the performance of the employee's assigned duties, reasonably available, cost effective, and subject to availability of funding. The Bureau/Office agrees to service and maintain any GFE issued to the teleworker.

D. Teleworking from the Approved Alternative Worksite.

(1) Designated Workspace. Teleworkers must have a designated workspace that is safe and conducive for the performance of their duties at the approved alternative worksite. At a minimum, an employee must be able to send, receive and respond to electronic mail and communicate via telephone. The employee's communications from the alternative location should be seamless (e.g., customers should not be aware that the employee is teleworking). Management maintains the right to make on-site inspections of the employee's telework site. Such inspections will be by appointment during the teleworker's normal tour of duty and with advance notice of at least 24 hours.

(2) Dependent Care. Employees cannot personally care for a dependent while teleworking and are responsible for securing appropriate arrangements for any dependents who are unable to care for themselves independently. This does not preclude a teleworker from having a caregiver in the home who provides care to the dependent(s) while the employee teleworks, provided the arrangement does not disrupt the employee's ability to telework effectively. Also, a dependent may be permitted in the home, provided he or she does not require constant supervision or care (e.g. older child or adolescent) and his or her presence does not disrupt the employee's ability to telework effectively.

(3) Costs Associated with Telework at Home. Work-at-home telework may increase certain costs to the employee. The Department assumes no responsibility for any costs associated with the employee's home residence, including home maintenance, insurance, utilities, internet access, and telecommunication costs.

(4) Work-Related Injuries or Illnesses. Teleworkers are covered by the Federal Employees' Compensation Act when injured or suffering from work-related illnesses while conducting official Government business at the approved alternative worksite. Employees must inform their immediate supervisor of any on-the-job injury or occupational illness sustained at the approved alternative worksite at the earliest time possible and provide their supervisor all relevant medical documentation related to the injury or illness. Accidents and on-the-job injuries also should be reported using the Safety Management Information System to enable Bureau/Office Safety Managers to track and report incidents.

E. Tour of Duty While Teleworking. Employees who telework must perform official duties at their alternative worksite during their approved, scheduled tour of duty. Work schedules and hours of duty may be changed with the supervisor's approval and in accordance with established Bureau/Office procedures. Telework is compatible with standard and alternative work schedules (e.g., flexible and compressed work schedules). Bureaus/Offices may not establish implementing procedures that prohibit a teleworker from having an alternative work schedule.

12

F. Telework Schedule Modification. Supervisors may require teleworkers to report to the employee's official worksite on scheduled telework days to accommodate workload demands or for other operational requirements (e.g., to attend mandatory staff event). When possible, the employee will be provided advance notice in writing of any change to his or her scheduled telework. Requests by the employee to change his or her scheduled telework day in a particular week or biweekly pay period must be submitted in advance and approved by the supervisor. A permanent change in the telework arrangement requires a new telework agreement to be executed.

G. Telework During Emergency or Closure Situations. In the event the official worksite is closed due to an inclement weather event or other emergency condition (e.g., building fire), telework-ready employees must telework each regularly scheduled work day during the emergency situation. As such, telework-ready employees must prepare to telework when a weather or emergency event is forecasted or anticipated (e.g., a major snowstorm is predicted) by bringing home any necessary equipment (e.g., laptop computer) and work files. To the extent that an employee is unable to telework because he or she failed to make necessary preparations for reasonably anticipated conditions, the employee must use appropriate paid leave, paid time off, or leave without pay. In the event the employee is prevented from safely teleworking from the approved alternative worksite due to conditions related to the emergency (e.g., weather-related damage that makes occupying the employee's home telework site unsafe, loss of electrical power or internet service, evacuation by local authorities), the supervisor may, at his or her discretion, grant weather and safety leave consistent with Departmental policy.

(1) Unscheduled Telework Operating Status Announcements. When OPM, a local Federal Executive Board, or DOI local operating unit head announces that employees have the option for unscheduled telework or unscheduled leave, telework-ready employees may telework from their approved alternative worksite. When the option is announced, an employee must notify his or her supervisor of the intent to use unscheduled telework. Employees who are approved to perform unscheduled telework must have the necessary equipment and have a sufficient amount of work to complete in order to telework from the approved alternative worksite. If the employee does not have enough work, he or she must report to the official worksite or request appropriate unscheduled leave to account for hours not worked.

(2) Dependent Care Arrangements During Weather or Emergency Events. As provided for in Section 7.D(2), employees cannot personally care for a dependent while teleworking and are responsible for securing appropriate arrangements for any dependents who are unable to care for themselves. If a teleworker cannot arrange for appropriate dependent care because of the weather or emergency event affecting the official worksite, any time spent providing personal care to dependents cannot be considered hours of work. The employee is expected to accurately account for work and non-work hours during his or her tour of duty and to take the appropriate leave (paid or unpaid) to account for any time spent away from normal work-related duties during his or her scheduled tour of duty. Weather and safety leave may not be granted for this purpose.

H. COOP Planning. Telework can play a vital role for the Department's COOP plan by preserving essential functions and providing an option for designated employees to continue

13

working when a COOP plan has been activated. Bureaus/Offices may designate employees who are critical to operations and should inform employees of their COOP designation well in advance in anticipation of possible emergency events. Consistent with 5 U.S.C. § 6504(d), during any period that the Department is operating under a COOP plan, that plan will supersede the Departmental telework policy.

I. Hoteling. Employees who have core telework agreements for five or more days per bi-weekly pay period are expected to use hoteling when they report to the official worksite. If there is a business reason for providing a dedicated workspace, such as privacy needs of the position, the supervisor must document the reasons for the decision and maintain that documentation. Hoteling workspaces should be properly equipped and supplied to ensure employees can accomplish work assignments.

J. Reasonable Accommodation. Consistent with applicable law and Departmental policy, employees may request telework as a reasonable accommodation, and the Department must process such requests in accordance with applicable law and Departmental policy.

**8. Additional Telework Guidance**. Additional guidance regarding the telework program is provided in the Department of the Interior Telework Handbook. The Telework Handbook supplements the policy in this PB and is issued under the authority of the Director, Office of Human Capital.

**9. Labor-Management Obligations**. Bureaus/Offices are reminded to fulfill their labor-management obligations, as appropriate, in implementing the requirements set forth in this PB.

**10. Inquiries.** Any Department employee or employee representative seeking further information concerning this policy may contact their Bureau Telework Coordinator and/or servicing HRO. Bureau Telework Coordinators and servicing HROs may contact the Department's Office of Human Capital concerning questions related to this policy.


Raymond A. Limon
Deputy Assistant Secretary - Human Capital
and Diversity
Chief Human Capital Officer

14

# Opportunity for Rebuttal

## Daniel Hamann, Complainant

**ACCEPTED CLAIMS:**

1. Whether Complainant has been subjected to disparate treatment based on age (YOD: 1953) when on March 6, 2020, his supervisor did not assign him a project manager role;

    k. On an unspecified date, the Agency failed to allocate him enough budget to charge overtime.

    l. On unspecified dates, the Agency failed to assign him to project manager authority on the LNFH Surface Intake and Fish Passage (F061A) project and the NIIP Pumping Plan G7.5LA HVAC Addition (UC684) project.

3. Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on unspecified dates between July 23, 2019 and May 22, 2020, the agency did not assign him project manager authority to the follow projects:
    a. Cle Elum Gate Hoist Construction Support (CEGHI)
    b. Shasta Dam Crest Road Vehicle Barrier Constructions Support (SDCRV)

4. Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on or about January 7, 2020, he was not selected for an Electrical Engineer position advertised under the follow vacancy announcement numbers:
    a. BR-DO-2019-193 (MPP-BM)
    b. BR-DO-2019-194 (DEU-BM)
    c. BR-DO-2019-195 (MPP-BM)
    d. BR-DO-2019-196 (DEU-BM)

**Check one:**

[ x ] **I, Daniel Hamann, have chosen to provide the following rebuttal. See rebuttal below.**

[ ] **I, Daniel Hamann, have chosen to NOT provide a rebuttal to this affidavit.**

## Rebuttal of Statement for Management Official(s):

**Nathan Myers**

### I, Daniel Hamann, Complainant, have elected the following for the affidavit of:

1. Nathan Myers – **Rebuttal provided --- Circle one:**    (**YES**)    NO
   I declare under penalty of perjury that my statement is true, correct, and complete to the best of my knowledge, information, and belief. I understand that the information given is not to be considered confidential and that it may be shown to the interested parties.

1                                    _DW#_ Initials

_Darrell W. Damann_

**9/3/2020**

_____          _____
Signature of Complainant                          Date

2                                    _DWD_ Initials

In item 29, Myers indicates that he was provided with all questions to ask. I have requested these questions and responses through a FOIA request but the agency refused to provide this specific information. In my opinion, that denial had no basis and I have since appealed that denial. It is my position that the questions were created to favor the selection of favored younger candidates.

However, as part of the FOIA response, I did receive the resumes of the successful candidates. Prima facie, the resumes of the successful candidates clearly indicate that my experience and qualifications far exceeded the successful candidates. Thus, it is my opinion that the only way the younger candidates could have been selected was through a bias in the questions.

However, what is even worse, is that I am certain Buchholz misrepresented, perhaps lied, about his experience level. His response to the application questions indicated a level of experience that is nearly impossible for someone of his tenure. None of the rating officials questioned the experience he claimed to have. Not only does this ratify the basis for age discrimination, it establishes a pattern of misconduct by the rating official(s).

In question 30, Myers states that in many cases I did not answer the questions, but provides no basis in fact. Until I receive the questions and answers, requested in the FOIA, this can't be verified. To best of my recollection, I was asked questions, about skills or experience I have, but were not germane to work that our group historically has service agreements, and hence, funding, to perform. This suggested to me, that the questions were biased towards skills that desired candidates may have but were not a requirement of the work that our group would normally perform. During the interview process I believe I pointed out the fact that questions were being asked about skills our group does not utilize. Myers may have considered this refusing to answer the question.

With respect to 34, Myers admits that he is unsure if the selections were made in accordance with the agency's policies and procedures. In my opinion, the selections did not comply with the *merit systems principles*.[1]

With respect to 35, Myers admits that he is not sure if the references were checked.

With respect to 37, the questions were likely stacked in such a manner so as to create the appearance of others being more qualified.

With respect to 38: I take exception to this. The interviews were not conducted in a fair or impartial manner. In fact, the manner in which the interview was conducted violated prohibited personnel practices. [2]

---

[1] 5 U.S. Code § 2301 - Merit system principles (b) (8) *Employees should be— (A) protected against arbitrary action, personal favoritism ...*

[2] 5 USC § 2302(b) (6) *grant any preference or advantage not authorized by law, rule, or regulation to any employee or applicant for employment (including defining the scope or manner of competition or the requirements for any position) for the purpose of improving or injuring the prospects of any particular person for employment;*

With respect to 39: Myers states the selectees were the top candidates. This could only be possible if the selection process was biased. Again, prima facie, my experience, skills, qualifications, et al, are far superior to the successful candidates.

DWB

# Opportunity for Rebuttal

## Daniel Hamann, Complainant
## Agency Case Number: DOI-BOR-19-0764

**ACCEPTED CLAIMS:**

4. Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on or about January 7, 2020, he was not selected for an Electrical Engineer position advertised under the follow vacancy announcement numbers:
   a. BR-DO-2019-193 (MPP-BM)
   b. BR-DO-2019-194 (DEU-BM)
   c. BR-DO-2019-195 (MPP-BM)
   d. BR-DO-2019-196 (DEU-BM)

   **Check one:**

   **[x] I, Daniel Hamann, have chosen to provide the following rebuttal. See rebuttal below.**

   **[ ] I, Daniel Hamann, have chosen to NOT provide a rebuttal to this affidavit.**

**Rebuttal of Statement for Management Official(s):**

**Kyle Clair**

**I, Daniel Hamann, Complainant, have elected the following for the affidavit of:**

1. Kyle Clair **– Rebuttal provided --- Circle one:**   **(YES)**        **NO**
   I declare under penalty of perjury that my statement is true, correct, and complete to the best of my knowledge, information, and belief. I understand that the information given is not to be considered confidential and that it may be shown to the interested parties.

_Daniel W. Hamann_                          **9/29/2020**
_____          _____
Signature of Complainant                    Date


_DWH_
_____Initials

1

Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior
Agency Case No.DOI-BOR-19-0764
Clair Affidavit Rebuttal
All other items excluding items 1-8
Dan Hamann
September 29, 2020

## 16

The respondent indicates that he was given a set of questions and answers to ask each applicant. This ratifies what I already know: the questions were created in such a manner that they would give a preselected individual preferential treatment. When I issued a FOIA request for this information, it was denied on an exemption that was not relevant to the nature of the FOIA process. The merit systems principles indicate that selection is to be done in an open manner. Suppressing this information is not open. Rather, it indicates very strongly what I suspect: the questions were tailored to fit a specific individual. The FOIA responses I did get indicate strongly that the successful younger candidate misrepresented his experience.

## 23

The respondent states:

*It was clear who should have been selected as the strongest candidate given how they answered the interview questions.*

If it was clear, and me knowing the actual depth of the successful candidates skills, it again suggests strongly that the entire process was slanted in favor of a single, younger individual.

## 27

I would take exception to the statement:

*he seemed to get off track when responding to questions*

Every response I provided was in the context of the interview. This suggests that the respondent was expecting a very specific response, which would be the case, if the questions were set up to favor a specific, younger candidate.

The respondent states:

*There were times during the interview he spoke about the Agency in a negative light*

I'm not sure what statement he is responding to, but it does suggest that anyone who offers criticism to the agency, is seen in a negative light. If I offered any criticism of the agency, it was only in the context of the interview, and the respondent likely didn't make the connection. I suspect, due to the respondent's lack of understanding of issues, and because he was expecting a specific answer, then he was not able to grasp the issue at hand. But without knowing the precise nature of the statement, it is not possible to offer any additional information.

However, it might suggest that employees must ALWAYS demonstrate an unflinching loyalty to the agency, even if the loyalty comes at the expense of tolerating, or turning a blind eye to corruption within

Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior
Agency Case No.DOI-BOR-19-0764
Clair Affidavit Rebuttal
All other items excluding items 1-8
Dan Hamann
September 29, 2020

the agency. And it is this unflinching loyalty that is necessary to be in the inner circle. It is my opinion that the respondent knows, or senses this.

*Mr. Myers tried to redirect him back to responding to the questions.*

I believe at one point, I asked the Myers why the question was being posed. I believe his response was that he was only given the questions. Thus, once again, I pointed out, during the interview, that I suspected the questions had been selected or created to favor a predetermined younger candidate. They simply were not going to tolerate any digression from that plan which might expose the corruption.

## 28

The respondent states :

*My notes include "no experience" or "little experience in design" for 6 out of 16 interview questions. The selected individual answered the questions appropriately and outshined all other applicants when answering the interview questions.*

I know personally of the skill level of the successful younger candidate; we work in the same group. His experience, skills and knowledge are not close to mine. Thus, the only way the younger candidate could have been more successful is if the questions were preselected to favor the younger, successful candidate.

## 31

The respondent states:

*Our Agency is efficient at educating us on how to make selections for the strongest candidates without discriminating.*

I disagree. This is simply the respondents opinion and should be disregarded. Rather, the selection process is badly contaminated and it this known throughout the agency by many personnel. An interview of employees, past and present, would likely lead to a different conclusion. Additionally, surveys taken by the merit systems protection board lead to far different conclusions.

## 34

The respondent states:

*I would think that is completely false. I know the other individuals on the panel very well. We have always hired a very diverse workforce. We did not make our recommendation based on age and/or any other factors of discrimination.*

DWB

Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior
Agency Case No.DOI-BOR-19-0764
Clair Affidavit Rebuttal
All other items excluding items 1-8
Dan Hamann
September 29, 2020

Stating it is completely false has no basis in fact and is simply an embellishment. The federal government frequently pays out claims for discrimination. Furthermore, it is highly unlikely that an employee would admit to discrimination, even if it were true.

## 36

The respondent states:

*During the interview process, the selected individual responded to questions in a manner that indicated he led projects and was very involved in the Agency. Complainant did not respond as if he led projects or had experience in various areas.*

The younger selected individual was assigned project management authority having very little experience. This occurs frequently in the agency. It is my opinion that management finds younger employees to be more malleable, and hence assigns them project management authority. At least two younger coworkers have stated to me personally that they were assigned project manager positions, when they didn't want to be project managers.

I have never been assigned project management authority. It isn't for lack of knowledge, skills, ability or experience.

This, in and of itself, is prima facie evidence of discrimination.

Given the fact that I have never been assigned to a project manager position, it would have been impossible for me to have lead projects because of prior discrimination.

DWA

# Opportunity for Rebuttal

## Daniel Hamann, Complainant
## Agency Case Number: DOI-BOR-19-0764

**ACCEPTED CLAIMS:**

4. Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on or about January 7, 2020, he was not selected for an Electrical Engineer position advertised under the follow vacancy announcement numbers:
   a. BR-DO-2019-193 (MPP-BM)
   b. BR-DO-2019-194 (DEU-BM)
   c. BR-DO-2019-195 (MPP-BM)
   d. BR-DO-2019-196 (DEU-BM)

   **Check one:**

   [x] **I, Daniel Hamann, have chosen to provide the following rebuttal. See rebuttal below.**

   [ ] **I, Daniel Hamann, have chosen to NOT provide a rebuttal to this affidavit.**

**Rebuttal of Statement for Management Official(s):**

**Ashley Hannigan**

**I, Daniel Hamann, Complainant, have elected the following for the affidavit of:**

1. Ashley Hannigan – **Rebuttal provided --- Circle one:** (**YES**)   NO
   I declare under penalty of perjury that my statement is true, correct, and complete to the best of my knowledge, information, and belief. I understand that the information given is not to be considered confidential and that it may be shown to the interested parties.

*Daniel W. Hamann*                    **9/14/2020**
_____          _____
Signature of Complainant             Date

1

*DWH*
_____Initials

Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior
Agency Case No.DOI-BOR-19-0764
Hannigan Affidavit Rebuttal
All other items excluding items 1-8
Dan Hamann
September 14, 2020

With respect to item 21, the respondent states:

> *... did not display the initiative to volunteer for larger projects ...*

I can't imagine how she could have possibly come to this conclusion. The size of the project does not matter. In fact, larger projects are easier than small projects. The amount of effort is often underestimated for smaller projects. Additionally, managing multiple small projects is much harder than a single large project. The project manager must deal with multiple clients, multiple milestones, multiple WOIDs, et al. I readily welcome large projects.

Also, with respect to the statement in (21):

> *When a question was asked related to his experience in leading a team of Engineers during a project, I recall him saying he had not been given a project to lead in his current position.*

This demonstrates how prior discrimination fed into this. My supervisor discriminated against me by not giving me a project lead position while affording the same to younger engineers. There is no empirical evidence that would show I was not qualified to be a team lead nor is there any empirical evidence that would demonstrate a younger was qualified. This then creates the snowball effect where I prior discriminatory event, feeds into a future discriminatory event, thus compounding the effect of age discrimination.

With respect to item 28, it is true that it is my opinion, but my opinion is based on empirical evidence, which other candidates cannot produce. That empirical evidence is the considerable experience I have going back nearly three decades.



# Opportunity for Rebuttal

## Daniel Hamann, Complainant
## Agency Case Number: DOI-BOR-19-0764

**ACCEPTED CLAIMS:**

4.  Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on or about January 7, 2020, he was not selected for an Electrical Engineer position advertised under the follow vacancy announcement numbers:
    a.  BR-DO-2019-193 (MPP-BM)
    b.  BR-DO-2019-194 (DEU-BM)
    c.  BR-DO-2019-195 (MPP-BM)
    d.  BR-DO-2019-196 (DEU-BM)

    **Check one:**

    ☒ **I, Daniel Hamann, have chosen to provide the following rebuttal. See rebuttal below.**

    ☐ **I, Daniel Hamann, have chosen to NOT provide a rebuttal to this affidavit.**

**Rebuttal of Statement for Management Official(s):**

**Benjamin Few**

**I, Daniel Hamann, Complainant, have elected the following for the affidavit of:**

1.  Benjamin Few – **Rebuttal provided --- Circle one:** (**YES**)   NO
    I declare under penalty of perjury that my statement is true, correct, and complete to the best of my knowledge, information, and belief. I understand that the information given is not to be considered confidential and that it may be shown to the interested parties.

_Daniel W. Hamann_                                   **9/9/2020**

Signature of Complainant                             Date


1                                   _DWH_ Initials

With respect item 27, the respondent states that I interviewed poorly. He states that I did not give the *correct responses* to the questions.

This raises many questions. The idea that there is a "correct answer" to an interview question would suggest that the questions were tailored to a specific individual.[1]

Thus, for this reason, and after the candidate selection, I submitted a FOIA request for all information involved in making the candidate selection. Although the agency provided information, which has proven to be damning, the agency refused to provide the oral interview questions and responses. The refusal was based on *Deliberative Process Privilege* which is allowed under FOIA Exemption 5. Quoting:

> *The deliberative process privilege protects the decision-making process of government agencies and encourages the frank exchange of ideas on legal or policy matters by ensuring agencies are not forced to operate in a fishbowl. A number of policy purposes have been attributed to the deliberative process privilege. Among the most important are to: (1) assure that subordinates will feel free to provide the decisionmaker with their uninhibited opinions and recommendations; (2) protect against premature disclosure of proposed policies; and (3) protect against confusing the issues and misleading the public.*

The problem with this is that this exemption is disallowed under the Merit Systems Principles,[2] which states:

> *Recruitment should be from qualified individuals from appropriate sources in an endeavor to achieve a work force from all segments of society, and selection and advancement should be determined solely on the basis of relative ability, knowledge, and skills, after fair and open competition which assures that all receive equal opportunity.*

The operative word here is "open." This FOIA response strongly suggests they were hiding something – that the questions had been prepared to accommodate a specific individual. In fact, I suspected this the as the questions were being asked. To that end, I distinctly remember challenging the interviewers about the questions.

For example, I was asked about any cybersecurity training I had. I responded by saying that they were asking for a skill that is not required for the work that we do in our group.

At one point, I believe it was Myers, stated that he didn't know where the questions orginated. He was just given questions to ask.

In another instance, I was asked if I had ever developed a specification based on a standard. I said I would not develop a specification based on a standard for a very simple reason: it would be useless. Specifications must be developed on what is available in the industry. Manufacturers don't develop

---

[1] It is common knowledge that generally there are no *correct* job interview answers; there are *better* answers and *worse* answers. The exception would be a question involving a singular, correct answer, such as the date when a dam failed; typically, in interviews, such questions are rare to nonexistent.

[2] 5 U.S. Code § 2301 - Merit system principles (b) (1).

DWA

products based on standards. They develop products based on market demand. During the course of development process, the manufacturer will work to ensure the product complies with standards. Specification writers can, and do, issue specifications that no one in the industry will have product for. But this is a waste of time. Spec writers have to write specifications for what is readily available. It really demonstrates the abject naivety of inexperienced personnel who live within the bubble of the government who are not held accountable because their make-work efforts are so obfuscated that the average tax payer would have no idea that they are investing their time into efforts that have no practical application, other than to please their supervisor.

So why would the question even be asked? The favored and intended candidate likely had been given such an assignment. This is the most reasonable explanation.

Thus, I would not interview well. Why? I exposed the corruption. And whistle blowers are never seen in a positive light by the those that are being exposed.

Thus, the idea that there is a "correct answer" suggests that these questions were prepared for a specific individual who could give correct answers. Interview questions are nearly always subject and can contain a broad range of answers that more or less indicate that a person has certain qualifications.

I think Mr. Few has basically exposed this prohibited personnel practice with a slip of tongue.

Regardless, a younger employee was selected for this position, in an interview process that was tainted, and this establishes a prima facie case for age discrimination through disparate treatment. This entire process also shows the obfuscation of discrimination.

# Opportunity for Rebuttal

## Daniel Hamann, Complainant
## Agency Case Number: DOI-BOR-19-0764

**ACCEPTED CLAIMS:**

4. Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on or about January 7, 2020, he was not selected for an Electrical Engineer position advertised under the follow vacancy announcement numbers:
   a. BR-DO-2019-193 (MPP-BM)
   b. BR-DO-2019-194 (DEU-BM)
   c. BR-DO-2019-195 (MPP-BM)
   d. BR-DO-2019-196 (DEU-BM)

   **Check one:**

   [X] **I, Daniel Hamann, have chosen to provide the following rebuttal. See rebuttal below.**

   [ ] **I, Daniel Hamann, have chosen to NOT provide a rebuttal to this affidavit.**

**Rebuttal of Statement for Management Official(s):**

**Toby Steves**

**I, Daniel Hamann, Complainant, have elected the following for the affidavit of:**

1. Toby Steves – **Rebuttal provided --- Circle one:** ( **YES** )    **NO**
   I declare under penalty of perjury that my statement is true, correct, and complete to the best of my knowledge, information, and belief. I understand that the information given is not to be considered confidential and that it may be shown to the interested parties.

_Daniel W. Hamann_                          **9/9/2020**

Signature of Complainant                      Date

1

_DWH_ Initials

In question 35, the respondent states that cybersecurity was a *hard requirement* for the position. In reviewing the USA Jobs vacancy postings, this is not listed as a requirement. Thus, this would suggest that it was an obfuscated requirement, and not promulgated in the vacancy posting. This then suggests this requirement was known only to the interview panel. By mentioning the *hard requirement*, it appears the respondent has inadvertently exposed this possibility.

To the best of my knowledge, our group has never received a single request from a client to provide any type of cybersecurity work. In other words, there is no funding to do that work. There is no demand from clients.

Within ESAM, there is only one cybersecurity funded project, which is titled "ICS Cybersecurity Policy and Spec Development". In other words, there is only funded project, and Luke Buchholz is the project manager. And it is not to do work for a client; it is to develop policy and specifications. It is an overhead account, a *slush fund*, if you will.

Thus, the idea that cybersecurity is a *hard requirement* could only be true if it was a criteria that was implemented, not based on client demand, but because only one individual has background in it: Luke Buchholz. Clearly, this show that the questions were skewed and formulated based on a predetermined candidate.

Secondly, the respondent makes reference to the ability to work around dangerous electrical equipment. Recently, on a project on the Navajo Indian Irrigation Project (AKA NIIP) with work order ID (WOID) UC684, I exposed the fact that Buchholz had developed a task based estimate (TBE), and failed to address all the Reclamation requirements under the Facilities Instructions, Standards, & Techniques (FIST) 1-1, *Hazardous Energy Control Program*.

In short, Buchholz failed to address the work required in dealing with the life safety issues, such as arc flash hazards, in retrofitting high energy, 480 volt and 2,400 volt electrical equipment. He made no mention of it in his TBE.

When I started working on the project as the technical reviewer, I realized that there was no budget to do this work. This work required that an arc flash study be done on this equipment. None of this work was included in the service agreement that Reclamation established with the Bureau of Indian Affairs, the operator of NIIP.

When I exposed this fact, it was not received well. I was the messenger and every effort was made to discredit me as the messenger, such as referring to his oversight due to inexperience by Buchholz as harassment.

So, in short, the respondent's statement is absurd. All of this again ratifies the fact that the selection of Buchholz as a younger engineer, was the predetermined favorite. This establishes prima facie age discrimination by disparate treatment.

# Opportunity for Rebuttal

## Daniel Hamann, Complainant

**ACCEPTED CLAIMS:**

4. Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on or about January 7, 2020, he was not selected for an Electrical Engineer position advertised under the follow vacancy announcement numbers:
   a. BR-DO-2019-193 (MPP-BM)
   b. BR-DO-2019-194 (DEU-BM)
   c. BR-DO-2019-195 (MPP-BM)
   d. BR-DO-2019-196 (DEU-BM)

   **Check one:**

   ☒ **I, Daniel Hamann, have chosen to provide the following rebuttal. See rebuttal below.**

   ☐ **I, Daniel Hamann, have chosen to NOT provide a rebuttal to this affidavit.**

**Rebuttal of Statement for Management Official(s):**

**Benson Muthee**

**I, Daniel Hamann, Complainant, have elected the following for the affidavit of:**

1. Benson Muthee – **Rebuttal provided** --- **Circle one:**    (YES)    NO
   I declare under penalty of perjury that my statement is true, correct, and complete to the best of my knowledge, information, and belief. I understand that the information given is not to be considered confidential and that it may be shown to the interested parties.

_Daniel W. Hamann_
Signature of Complainant

**9/3/2020**
Date

1

_DWH_ Initials

Perhaps the most disturbing and revealing aspect of this affidavit is the fact that a certificate ostensibly was issued regarding minimum qualifications that were never validated.

In item 23, the respondent states:

> I reviewed the resumes and transcripts to ensure applicants met the minimum qualification and specialized experience requirement.

And in item 26:

> I only determine qualifications and whether applicants are best qualified.

I have attached responses to questions that Buchholz answered where there is compelling evidence that he lied, misrepresented or embellished his work experience.

Having worked in the same group as Buchholz for nearly five years, I am fairly familiar with the work that he does. Generally, he is assigned projects that require the review of documents, produced by others, as opposed to generating documentation himself.

In his responses to question five, of the vacancy questions, Buchholz indicates he has designed system-level layouts and configurations involving (25) types of systems and equipment

I have never seen a single diagram or drawing, nor am I aware of a single diagram or drawing that Buchholz has produced, much less producing system-level layouts and configurations involving (25) types of systems and equipment

Given this misrepresentation, how is it possible that Muthee could have actually reviewed the minimum qualification Buchholz presented, without any verification that Buchholz had actual experience?

If Buchholz was asked to provide proof, such as actual documents he has produced, that hence back up this claims of experience, it is highly unlikely that such documentation could be produced.

Lying on a federal job application has severe consequences. Worse, it appears a Human Resources Specialist reviewed the documentation, and determined the best qualified from this documentation, when the documentation likely contained a misrepresentation, or lies.

This indicates that the agency, in its totality, along with all of the processes that are there to verify the integrity of the vacancy selection process, will easily permit a younger, less experienced to selected for a position. There are no safeguards. There is no oversight.

These failures within the agency facilitate age discrimination.

Attachments:

    Luke Buchholz responses to qualifications obtained through FOIA request.

**BUREAU OF RECLAMATION**
**All Applicant Data Report**
**Announcement Number: BR-DO-2019-193**
**Position Title: Electrical Engineer, GS-0850-12 (MPP-BM)**
**Staging Area Number: SA-BOR-0001**
**Name: LUKE BUCHHOLZ**

**Name:** LUKE B BUCHHOLZ
**SSN:** (b) (6)
**MIDX:** (b) (6)
**Address1:** (b) (6)
**Address2:**
**City:** (b) (6)
**State:** (b) (6)
**Country:** (b) (6)
**Post Code:** (b) (6)
**Plus4:**
**Telephone 1:** (b) (6)
**Email:** (b) (6)
**United States Citizen:** Y
**Veterans' Preference:** (b)
**Military Service Dates (Start of Service - End of Service):**
05/29/2002 - 05/28/2006
**Location(s) Applied to:** Lakewood, CO(US)
**Series Applied To:** 0850

**Applicant Level Assessments:**
**Eligibility Questions and Responses**
1. Are you a vet who was separated from the armed forces under honorable conditions after completing an initial continuous tour of duty of 3 years (may have been released just short of 3 years)?
**Answers:**
1. (b)

(Note: If yes, or if you claim veteran's preference you will need to submit a copy of your DD-214, Certificate of Release or Discharge from Active Duty, or other proof of eligibility prior to interview and selection for a position. Additionally, persons claiming 10 point preference will need to submit SF-15.)

2. Are you a current Federal employee?
**Answers:**
1. Yes

3. Are you a current Federal employee serving under either a Veterans Readjustment Authority or Veterans Recruitment Authority (VRA) appointment?
**Answers:**
2. No

(Note: If you are unsure, refer to your most recent Notification of Personnel Action (SF-50) or ask your servicing personnel specialist.)

4. If you are a current Federal employee, by what agency and organization are you employed?
**Answers:**
1. Department of the Interior, U.S. Bureau of Reclamation

6. If you are a current Federal employee, what is your duty station? [City,State] (Enter N/A if not Applicable)
**Answers:** Lakewood, Colorado

7. If you are a Federal employee, under what type of appointment are you currently serving?
**Answers:**
1. Permanent-Career, competitive service

**Page 1 of 8**

(Note: If you are unsure, refer to your most recent Notification of Personnel Action (SF-50) or ask your servicing Personnel Specialist.)

**8.** Are you a student appointee under the Pathways Internship Program who has completed all requirements for graduation and conversion under the Pathways appointing authority and are in the 120 day period for non-competitive conversion to a term, career or career-conditional appointment?
**Answers:**
3. Not Applicable

**9.** If you are NOT currently serving in the competitive service as a permanent career or career conditional Federal employee, are you eligible for reinstatement based on career or career-conditional Federal status in the competitive service?
**Answers:**
3. Not Applicable

(Note: You will be asked to submit a copy of a SF-50 prior to selection as proof of your reinstatement eligibility.)

**10.** If you are, or ever were, a Federal civilian employee, please indicate pay plan of the highest graded position you held:
**Answers:**
1. GS

**12.** If you are, or ever were, a Federal civilian employee, please indicate the highest grade level you held (Enter NA if Not Applicable):
**Answers:** 11

**13.** If you are, or ever were, a Federal civilian employee, please indicate the dates of the highest graded position you held (MM-YYYY to MM-YYYY or Present, or NA if Not Applicable):
**Answers:** 04-2018 to Present

(Note: Time-In-Grade restrictions apply in relation to advancement to General Schedule positions of employees in the competitive service.)

**14.** If you are, or were, a Federal employee who held a permanent position in the competitive service, what is the highest full performance level of that position? (Enter NA if Not Applicable)
**Answers:** 11

**15.** May we contact your current supervisor for a reference?
**Answers:**
(b) (6)

**16.** Does the U.S. Bureau of Reclamation employ any member of your family?
**Answers:**
2. (b)

**17.** If yes to Question 16, please provide the name, relationship, organization in which employed, and location if known.
**Answers:** NA

**18.** If you are a male at least 18 years of age, born after December 31, 1959, have you registered with the Selective Service System?
**Answers:**
1. Yes

(Note: You will be asked to provide a copy of the exemption prior to interview and selection.)

**19.** If you are a male at least 18 years of age, born after December 31, 1959 AND you have NOT registered with the Selective Service System, do you have an approved exemption?
**Answers:**
3. Not Applicable

(Note: You will be asked to provide a copy of the exemption prior to interview and selection.)

**20.** Are you a retiree receiving a Federal annuity?
**Answers:**
2. No

(Note: If you are an annuitant, your salary or annuity may be reduced upon employment.)

**21.** Have you accepted a buyout from a Federal agency within the past 5 years?
**Answers:**
2. No

(you may be required to pay back part or all of the buyout if you accept a position)

**22.** Do you have a physical or mental impairment that limits one or more major life activities AND has been certified by the State Department of Vocational Services rendering you eligible for the Federal Employment Program for Persons with Disabilities?
**Answers:**
(b) (6)

(Note: You will be asked to provide a copy of the above certificate.)

**23.** Are you eligible for noncompetitive appointment under a Special Appointing Authority?
**Answers:**
1. Yes

(Note: For more information on Special Appointing Authorities, see the OPM website.)

**24.** If you are eligible for noncompetitive appointment under a Special Appointing Authority, what authority are you applying under?
**Answers:** VRA, VEOA

**25.** Displaced employee information:
**Answers:**
3. I am not a displaced employee from a Federal Agency.

(Note: If you are eligible for one of these plans, you will be asked to supply a copy of RIF separation notice, proposed removal for declining a directed reassignment outside of the local commuting area, or other official notification granting eligibility prior to interview and selection.)

**26.** In accordance with all of the eligibility requirements set forth in Public Law 114-47, are you a current or former employee of a Land Management agency/agencies (e.g., Forest Service, Bureau of Land Management, National Park Service, Fish and Wildlife Service, Bureau of Indian Affairs, or Bureau of Reclamation) who was (a) hired under competitive examining procedures for one or more time limited appointments, (b) served on such appointments totaling more than 24 months without a 2 or more year break, and (c) your performance was evaluated as being at an acceptable level of performance for the entire applicable period(s)?

**Page 3 of 8**

**Answers:**
2. No

**Vacancy Questions and Responses**
What locations do you wish to apply to?
Lakewood, CO(US)
What Grades do you wish to apply to?
12

**Grade: 12**

**1.** GS-12 Choose one answer which best describes your education and/or experience in accordance with requirements for engineering positions at this level.
**Answers:**
1. I have a professional engineering degree in a school of engineering with at least one curriculum accredited by the Accreditation Board for Engineering and Technology (ABET) as a professional engineering curriculum.

**2.** GS-12 In addition to meeting basic requirements for engineering positions, choose one answer which best describes your experience in accordance with requirements for engineering positions at this level.
**Answers:**
1. I have one full year of specialized experience equivalent in responsibility and scope to the GS-11 level as described in the vacancy announcement under specialized experience.

**3.** Select all of the following equipment or systems with which you have experience.
**Answers:**
1. Generators (Fixed - 5 MW or larger)
2. Generators (Fixed - lee than 5 MW)
3. Portable Generators (50-KVA or larger)
4. Governors
5. Hydroelectric Governors
6. Voltage Regulators
7. Excitation systems
8. Protective Relaying
9. 125 Vdc Battery Systems
10. 48 Vdc Battery Systems
11. Circuit Breakers (less than 600-Volt)
12. Circuit Breakers (600-Volt to 24-k Volt)
13. Power Circuit Breakers (air, vacuum, oil, of SF-6)
14. Transformers (10 MVA and larger)
15. Transformers (smaller than 10 MVA)
16. Auxiliary Equipment Controls, Power, and Indicators
17. Supervisory Control and Data Acquisition (SCADA)
18. Large Pumps (50 cfs or more)
19. Large Motors (500 horsepower or more)
20. HVAC
21. Current and Potential Transformers
22. Industrial Plant Automation or Control
23. Disconnect/Ground Switches
24. Programmable Logic Controllers
25. Instrumentation of Alarm Systems

**4.** Select the communication applications you have worked on as a regular part of your job.

**Answers:**

**Page 4 of 8**

1. Telephone data lines
2. Base Station radio
3. Mobile radio
4. Portable radio
5. Repeaters operating in various frequency bands
6. Telemetry (satellite and/or meteor burst)
7. Fiber optics
8. Microwave
9. R.F. Radian in-building communication

5. Select any of the following for which you have designed system-level layouts and configurations used to install the system/equipment.
**Answers:**
1. Networks
2. Firewalls
3. Routers
4. Ethernet Switches
5. Portable Generators (50-KVA or larger)
6. Wireless Bridges
7. Tower/Antennas
8. 125 Vdc Battery Systems
9. 48 Vdc Battery Systems
10. Circuit Breakers (less than 600-Volt)
11. Circuit Breakers (600-Volt to 24-kVolt)
12. Position sensors
13. Serial Data Interface (SDI) equipment
14. Transformers (smaller than 10 MVA)
15. Auxiliary Equipment Controls, Power, and Indicators
16. Supervisory Control and Data Acquisition (SCADA) Control System
17. Large pumps (50 cfs or more)
18. Data Loggers
19. HVAC controllers
20. Level and Flow sensors
21. Disconnect/Ground Switches
22. Programmable Logic Controllers (PLCs)
23. Remote Terminal Units (RTUs)
24. Alarm Systems
25. Modems
26. Fiber Optic Equipment

6. Select the responses that best describe your experience using digital based systems and software engineering tools to develop, test and install powerplant systems.
**Answers:**
1. I have experience with an operating system such as Windows 7, Windows XP, Windows Server, Linux, or Solaris UNIX.
2. I have experience with software development tools such as C, C++, VB, or VBA.
3. I have experience with communication protocols and networks such as TCP/IP, Modbus, DNP, or OPC.
4. I have experience in specialized automation development software such as GE iFIX or Cimplicity, Opto 22 automation tools, Allen-Bradley Factory Talk, Oracle or IEC 1131 programming languages.
5. I have experience in specialized power system control hardware and software such as Woodward, Cutler-Hammer, Basler, etc.
6. I have experience in microcontroller systems.
7. I have experience in test and measurement software such as Labview, DasyLab, Matlab, etc.
8. I have experience in powerplant protection equipment and software such as SEL, RTS, Megger, etc.

9. I have experience in preparing and developing equipment of software system for installation at a powerplant or other industrial environment.
10. I have experience in developing procedures and controls to secure a computer based system at a powerplant to meet Federal requirements.

7. Select the response that best describes your knowledge and experience in troubleshooting and isolating malfunctions, faults and breakdowns involving complex communications equipment.
**Answers:**
1. I have experience utilizing precision test equipment such as a digital voltmeter, frequency meter, radio test set, watt meter, cable fault tester, time domain reflector, insulation resistance tester, dielectric test set, ground resistance tester, oscilloscope and laptop software such as ProComm Plus, Hyperterm, etc. to troubleshoot electrical / electronic problems in an automatic control system for a large water storage facility.

8. Select the responses that reflect your experience with setting priorities, organizing workloads, and handling multiple power engineering assignments.
**Answers:**
1. I have planned and executed several power engineering tasks or activities.
2. I have completed power engineering tasks within tight and changing deadlines.
3. I have established priorities and organized multiple power engineering project workloads.
4. I have completed non-routine power engineering tasks within established deadlines.
5. I have served on teams in planning and executing power engineering tasks or activities.
6. I have worked independently in executing power engineering tasks or activities.
7. I have lead teams in planning and executing power engineering tasks or activities.

9. Select the one response that best describes your knowledge and experience in analyzing, diagnosing, and modifying a SCADA operating system database.
**Answers:**
1. I have experience and am proficient in analyzing, diagnosing and modifying problems within a SCADA operating system data base used in the operation of multiple powerplants or water storage facilities that provide for irrigation, municipal and industrial water, or flood control, with a mechanical, electrical, and hydraulic operation system.

10. Select the responses that reflect your experience with setting priorities, organizing workloads, and handling multiple assignments.
**Answers:**
1. I have planned and executed several engineering tasks or activities.
2. I have completed engineering tasks within tight and changing deadlines.
3. I have established priorities and organized multiple engineering project workloads.
4. I have completed non-routine engineering tasks within established deadlines.
5. I have served on teams to plan and execute engineering tasks or activities.
6. I have worked independently to execute engineering tasks or activities.
7. I have served as a team leader to plan or execute engineering tasks or activities.

11. Select the responses that describes your knowledge and experience in repairing and replacing electrical/electronic equipment in a power generation plant, industrial plant, water storage, water conveyance system, or military installation.
**Answers:**
1. I have experience analyzing complex electrical/electronic schematics and detailed wiring diagrams to identify and recommend appropriate corrective actions to prevent failures and malfunctions of specific electrical problems.
2. I have used electrical test equipment to compare electrical circuit values with expected or design values.
3. I have worked on a team to solve and correct specific problems when testing electrical equipment.
4. I have experience using test equipment for testing new or overhauled electrical

equipment.

**12.** Select the one response that best describes your level of experience in preparing and modifying electrical drawings for a variety of powerplant equipment and layouts.
**Answers:**
6. I have field experience with making drawing corrections, updating the changes, and preparing design drawings using computer aided drafting and design programs (such as AutoCAD).

**13.** Select the response(s) that describe your experience with plant automation and control.
**Answers:**
1. I have designed software or firmware for plant automation.
2. I have installed and tested software or firmware for plant automation.
3. I have debugged systems used for plant automation.
4. I have debugged software used for automation and control.
5. I have modified software to improve plant automation.
6. I have selected hardware used for plant automation.
7. I have debugged systems used for plant automation.
8. I have debugged software used for automation and control.
9. I have implemented PLC control equipment.
10. I have education and training in plant automation and control.

**14.** Select the responses that describe your work experience with writing the following.
**Answers:**
1. Operating procedures
2. Technical specifications
3. Formal instructions or directives
4. Technical documentation describing the design of equipment
6. Correspondence outside my organization
7. Documents describing the behavior of electrical circuits to be understood by non-engineers

**15.** Select the one response that best describes your level of experience or training in using blueprints, drawings, and manufacturers instructions to troubleshoot and repair SCADA systems equipment.
**Answers:**
5. I am highly skilled in using blueprints, drawings, and manufacturers instructions to troubleshoot and repair power system equipment in a SCADA system power generation facility and I have used these independently and routinely.

**All Grades**

**1.** Select all that apply for this vacancy.
**Answers:**
1. I have included a resume with my user profile in USAJOBS that will be used to support my answers to job specific questions. To be considered for the position your application must include a resume. Failure to submit a resume will result in an 'Ineligible' rating.
2. I am a veteran or other category of preference eligible. I will submit a DD-214, SF-15, and other documentation that verifies my eligibility for veterans or derived preference (e.g., VRA, VEOA, widow etc.). Failure to submit the required documents will remove my consideration as a preference eligible.
3. I am currently, or have been, a Federal employee with competitive status. I will submit a copy of my most recent SF-50, Notification of Personnel Action that verifies my competitive status. Failure to submit a SF-50 will result in loss of consideration as a current or previous Federal employee and may result in an 'Ineligible' rating.
8. I meet the educational requirements of this position as described in the vacancy announcement. I am submitting a copy of my transcripts, which include the name of the

college or university and date the degree was conferred, to verify my educational accomplishments. I understand that if I do not supply a copy of my transcripts, I will be found 'Not Qualified' for this position.

**2.** Where did you learn about this vacancy?
**Answers:**
24. OPM USAJOBS Internet Site

**3.** Provide specific information about your response to the previous question (i.e. professor's name and place of employment; college or university name; job/career fair and location held; friend's name; etc.).
**Answers:** Used a search filter on USAJOBS.gov

**4.** Are you a current permanent Department of Interior employee serving under a career or career-conditional appointment in the competitive service or CTAP eligible?
**Answers:**
1. Yes

## Affidavit of Witness
## Jay Boggess

On April 20, 2020, at approximately 12:30 PM EDT, Investigator Shirley Cain interviewed Witness, Jay Boggess regarding the EEO Discrimination complaint filed against the United States Department of Interior, Bureau of Reclamation (BOR) filed by Complainant, Daniel Hamann, DOI-BOR-19-0764.

1. Do you solemnly swear the statement which follows is true and complete to the best of your knowledge and belief, and addresses the issues and concerns raised with you by the investigator?
   A. Yes

2. Please state and spell your name.
   A. Jay Slavens Boggess

3. Do you have a representative? Is he/she present with you today?
   A. No

4. What is your duty location and address?
   A. Denver Technical Service Center, Lakewood, CO

5. What is your work email address?
   A. Jboggess@usbr.gov

6. What is your telephone number?
   A. 303-445-2933

7. What is your current position title, series, and grade?
   A. Supervisory Electrical Engineer, GS-850-14

8. Briefly describe your duties
   A. I supervise an Electrical Controls group of about 13 Electrical Engineers.

9. How long have you been in your current position? Month/year.
   A. July 2013

10. When did you begin your employment with the BOR? Month/year.
    A. June 2010

11. Who was your first level supervisor from September 2015 through March 6, 2020?
    A. George Girgis from September 2015 to September 2017; Bill McStraw since September 2017

12. Who was your second level supervisor from September 2015 through March 6, 2020?
    A. Tom Luebke, TSC Director

1

_JSB_
(Initials)

13. Do you know Complainant in this case, Daniel Hamann?
   A. Yes

14. How do you know Complainant?
   A. He is my employee.

15. What was your organizational relationship to Complainant from September 2015 through March 6, 2020?
   A. First level supervisor.

16. Are you aware of Complainant's age?
   A. In rough terms.

17. What do you believe it to be?
   A. I think 67

18. What is your age?
   A. 60

   1. Whether Complainant has been subjected to disparate treatment based on age (YOD: 1953) when on March 6, 2020, his supervisor did not assign him a project manager role:

19. What is your knowledge of, or role in the alleged event?
   A. Dan was being prepared to start a rotation in department 8450 Scada Group on April 1, 2020.

20. What is a project manager role?
   A. A project manager acts as a key contact for a TSC project shepherding the various engineering technical fields, usually as the key point of contact with a client.

21. Is it a collateral duty?
   A. Yes

   2. Whether Complainant has been subjected to a hostile work environment based on age (YOB: 1953) when, in addition to the foregoing:

      a. Starting in September 2015, his supervisor has not given him rotation opportunities:

22. What is your knowledge of, or role in this alleged event?
   A. In March 2016, the was a discussion with some people at Davis Parker Dam. I considered it a good rotation and offered it to Dan. He declined the rotation at that time. I believe he claimed because he was moving. In or around January 2020, he was given the opportunity for a rotation which he asked delay until April 2020. This rotation has been on hold due to COVID-19.

2


(Initials)

23. What are rotation opportunities?
   A. A rotation is a temporary assignment to assist employees in gaining experience with reclamation power plants or other offices in order to prepare them for positions of greater responsibility.

24. Has Complainant been provided the opportunity to work rotations?
   A. Yes

25. Have younger employees been provided the opportunity to work rotations?
   A. Yes, only because it is an opportunity provided to new employees, not younger employees. Most new employees are younger than Dan.

26. If so, why were they provided the opportunity over Complainant?
   A. The opportunity is are given to all GS-7 employees/new hires.

27. Did Complainant address his concerns with you?
   A. Not that I can recall.

28. Did Complainant speak to any other management officials about this? If so, who?
   A. Yes. It is my understanding he spoke with Tom Luebke and Bill McStraw as part of a mediation discussion. I don't know if he spoke to anyone prior to filing his complaint.

29. What was management's response?
   A. That is when they offered him the rotation that was scheduled to begin in April.

30. Complainant believes these events were harassment because of his age. Please respond.
   A. There was no harassment due to his age.

31. Do you believe Complainant was treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding these events? If so, how and who?
   A. No, he was not treated differently.

32. Is there anything you would like to add to this event?
   A. No

   b. Starting in September 2015, his supervisor has given him less training opportunities than his coworkers;

33. What is your knowledge of, or role in the alleged event?
   A. I don't agree. I authorized and encouraged training to all employees that pertains to their work.

?

JSβ
(Initials)

34. Complainant alleges he was provided with less training than his coworkers. Specifically, he recently became aware of a younger employee in his group receiving electrical training, but the opportunity was never offered to him. Please respond.
   **A. It is up to the employee to research for and request training. Just this past January, he requested training to visit a control system. I did approve this training.**

35. Did Complainant address this issue with you?
   **A. Not that I recall.**

36. Did Complainant speak to you or other any management officials about this? If so, who?
   **A. Not to my knowledge.**

37. Complainant believes these events were harassment because of his age. Please respond.
   **A. There was no harassment because of age.**

38. Do you believe Complainant was treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding these events? If so, how and who?
   **A. No**

39. Is there anything you would like to add to this event?
   **A. I don't think I have ever denied any of his training requests.**

   **c. Starting in September 2015, his supervisor has assigned him tasks below his skill level, held him to a higher standard than his coworkers and excluded him from recognition;**

40. Complainant alleges you assigned "technician" tasks to him that were below his skill level. He states he is often given tasks with less responsibility in comparison to his younger coworkers. Please respond.
   **A. He was hired as a GS-7. New employees are mentored on how to work at BOR in order to ensure they can perform the duties of their position at the GS-7 level in an effort to prepare them to work at a higher level and promoted to the next grade. The particular position has a target grade of GS-11. The work is evenly distributed amongst the electrical engineers.**

41. Complainant alleges you held him to a higher standard than his coworkers with projects assigned to him required a great deal of expertise, budget and project management while younger employees are not held to the same standard. Please respond.
   **A. The work is evenly distributed amongst all the electrical engineers, from the most mundane to the most complex.**

42. Complainant alleges you excluded him from recognition. Please respond.
   **A. I don't agree with that allegation. He has received group awards. He has not accomplished any kind of exemplary work that would warrant additional awards.**

4


(Initials)

44. Did Complainant address his concerns with you?
    A. Not that I recall.

45. Did Complainant speak to any other management officials about this? If so, who?
    A. I do not know.

46. Complainant believes these events were harassment because of his age. Please respond.
    A. I do not believe he was harassed because of his age.

47. Do you believe Complainant was treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding these events? If so, how and who?
    A. No

48. Is there anything you would like to add to this event?
    A. No

    d. **Starting in September 2015 and continuing through July 22, 2019, his supervisor has not given him project manager opportunities;**

49. Complainant alleges you have not given him project manager opportunities. Please respond
    A. Between those dates, he never sought out a project manager role. Being a project manager is not an essential duty of the 5/7/9/11 Electrical Engineer.

50. Were younger employees given the opportunity to perform the duties of project manager?
    A. It was not so much that younger employees were given the opportunity as it was newer employees who sought out PM roles.

51. Was Complainant provided the opportunity to perform the duties of project manager? If not, why?
    A. He didn't ask for the opportunity. We assign them when employees request them.

52. Did Complainant address his concerns with you?
    A. No

53. Did Complainant speak to any other management officials about this? If so who?
    A. I do not know.

54. Complainant believes these events were harassment because of his age. Please respond
    A. I do not believe he was harassment because of his age.

55. Do you believe Complainant was treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding these events? If so, how and who?
    A. No

5

JSB
(Initials)

56. Is there anything you would like to add to this event?
   A. No

      e. In 2016, his supervisor did not provide him the opportunity to apply for a
      Supervisory Control and Data Acquisition Position;

57. What was your knowledge of, or role in the alleged event?
   A. Without specific information, I do not know what he is referring to as there were no
   positions open during that time in which he was eligible to apply.

58. Please explain the process used to announce and select this position.
   A. I don't know what position he is referring to.

59. Did Complainant apply for this position?
   A. I don't know what position he is talking about.

60. Did Complainant speak to any other management officials about this? If so, who?
   A. I do not know.

61. Complainant believes these events were harassment because of his age. Please respond.
   A. I do not believe he was harassment because of his age.

62. Do you believe Complainant was treated differently, or less favorably, than similarly situated
   staff (same position title, series, grade, and under the same supervisor) regarding these
   events? If so, how and who?
   A. No

63. Is there anything you would like to add to this event?
   A. No

      f. In 2016, his supervisor delayed his career-ladder promotion to GS-9, which
      further delayed future career-ladder and competitive promotions;

64. What is your knowledge of, or role in the alleged event?
   A. I was his supervisor at the time.

65. Was Complainant's career promotion delayed in 2016?
   A. It was not. He was promoted to GS-9 in September 2016 after 1 year as a GS-7.

66. Complainant alleges you delayed his career promotion. Please respond
   A. I did not delay his career promotion.

67. Why was his career promotion delayed?
   A. He received his career promotion within the required timeframe.

6

JSB
(Initials)

68. When did he receive his career promotion?
    A. **September 2016.**

69. Did Complainant address his concerns with you?
    A. No

70. Did Complainant speak to any other management officials about this? If so, who?
    A. **I do not know.**

71. Complainant believes these events were harassment because of his age. Please respond
    A. **I do not believe he was harassment because of his age.**

72. Do you believe Complainant was treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding these events? If so, how and who?
    A. **No**

73. Is there anything you would like to add to this event?
    A. No

    g. **In or around April 2018, his supervisor did not provide him the opportunity to apply for a Supervisory Control and Data Acquisition position;**

74. What is your knowledge of, or role in the alleged event?
    A. **There was no position announced for which he was eligible to apply.**

75. Did Complainant address his concerns with you?
    A. No

76. Did Complainant speak to any other management officials about this? If so, who?
    A. **I do not know.**

77. Complainant believes these events were harassment because of his age. Please respond.
    A. **I do not believe he was harassed because of his age.**

78. Do you believe Complainant was treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding these events? If so, how and who?
    A. No

79. Is there anything else you would like to add to this event?
    A. No

    h. **On October 31, 2018, and in fiscal year 2018, fiscal year 2017, and fiscal year 2016, his supervisor put him on a performance standards that did not comply with the Department of Interior's policies;**

7

JSb
(initials)

80. What is your knowledge of, or role in the alleged events?

    A. **I was the supervisor of the department. I placed Dan on the same performance plan as all other electrical engineers.**

81. Was Complainant rated on incorrect performance standards?

    A. **No, he was placed on the same plan as the other electrical engineers as appropriate for the grade.**

82. Do they comply with the DOI policies?

    A. **Yes**

83. Did Complainant address his concerns with you?

    A. **Not directly.**

84. Did Complainant speak to any other management officials about this? If so, who?

    A. **He sent a letter to the Director of Reclamation.**

85. What was management's response?

    A. **It is my understanding that my standards were fine and did not require changing.**

86. Complainant believes these events were harassment because of his age. Please respond

    A. **I do not believe he was harassed because of his age.**

87. Do you believe Complainant was treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding these events? If so, how and who?

    A. **No**

88. Is there anything you would like to add to this event?

    A. **No**

        i. **On February 21, 2019, his supervisor failed to address his concern regarding the difficulty of his project assignments;**

89. What is your knowledge of, or role in the alleged event?

    A. **I'm not positive of what he is referring to. I think it may be when he was the electrical on the Durango Pumping Plant project.**

90. Did Complainant inform you he was concerned about the difficulty of his project assignments?

    A. **No**

91. Was Complainant assigned projects that were outside the requirements of his position description?

    A. **No. I am confused. In question 41, he alleges that I gave him work below his skill level. Here he alleges I gave him work above his skill level. Again, the work is**

8


(Initials)

evenly distributed amongst the electrical engineers at the skill level they demonstrate.

92. Did Complainant speak to any other management officials about this? If so, who?
A. I do not know.

93. Complainant believes these events were harassment because of his age. Please respond.
A. I do not believe he was harassed because of his age.

94. Do you believe Complainant was treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding these events? If so, how and who?
A. No

95. Is there anything else you would like to add to this event?
A. No

   j. On March 3, 2020, February 21, 2019, October 4, 2018, and February 13, 2018, he was cut off from speaking during meetings.

96. What is your knowledge of, or role in the alleged events?
A. I have no knowledge, nor was I in attendance at a meeting on February 13, 2018. I have no recollection of the specifics of the October 4, 2018 meeting. I had a meeting with Dan on February 21, 2019, but have no recollection of the specifics.
I was not in attendance for the March 3, 2020 meeting.

97. Did Complainant address his concerns with you?
A. I only have secondhand information for the two meetings in which I was not present. In the meetings I was present, I don't recall him addressing his concerns with me. He did send me an email about the March 3, 2020 meeting.

98. If so, what did he say?
A. This was the first time he brought it to my attention that he had been cut off.

99. What was your response?
A. I investigated with the parties at the meeting. They expressed that he kept going off topic and they were just trying to keep him on topic.

100. Did Complainant speak to any other management officials about this? If so, who?
A. I don't know.

101. Complainant believes these events were harassment because of his age. Please respond.
A. I do not believe he was harassed because of his age.


(Initials)

102. Do you believe Complainant was treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding these events? If so, how and who?

   A. No

103. Is there anything you would like to add to this event?

   A. **It has been expressed to me by many parties, on several occasions, that Dan takes things off topic during meetings and effort has to be made to redirect him to the subject matter.**

*General Harassment/HWE Questions:*

104. Have you received training on anti-harassment/hostile work environment while employed by the agency? If so, when?

   A. **Yes, December 2019.**

105. Is this training mandatory for all employees? If so, how often?

   A. **Yes, annually.**

106. To the best of your knowledge, what are you supposed to do if you believe that you have been harassed?

   A. **They can report to HR, a supervisor or file a complaint on their own.**

107. Did Complainant tell anyone he felt he was being harassed due to his age?

   A. **I don't know.**

108. Did Complainant follow the procedures in regard to being harassed? Why or why not?

   A. **I don't know.**

109. Did Complainant take advantage of any preventive or corrective opportunities provided by management or tried to avoid harm otherwise?

   A. **I don't know.**

110. Was there an investigation conducted into Complainant's harassment allegations? If so, when?

   A. **Not to my knowledge.**

111. Do you have any documentation you would like to submit in support of your testimony?

   A. No

112. Is there anything else you believe is relevant to the investigation I have not asked you about in this interview?

   A. No

113. May I contact you in the future if I have additional questions?

   A. **Yes**

10

$\Im 5 \emptyset$
(Initials)

Exhibit F-2 - page 10 of 22

I have reviewed this statement, which consists of eleven (11) pages, and hereby solemnly swear that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

_____     $5-6-2020$
Signature of Affiant                                Date

11

JSB
(Initials)

I, Jay Boggess, am an employee of the Bureau of Reclamation, located at the Denver Technical Services Center (TSC), Lakewood, CO in the capacity of Supervisory Electrical Engineer, GS-850-15, from July 2013 to the present date.

My telephone number during working hours is: (303) 445-2933

I HAVE BEEN ADVISED OF THE FOLLOWING
I am required by Federal regulations and the U.S. Department of Interior (DOI) policy to cooperate fully and promptly with the investigator who has been assigned to conduct a thorough and impartial investigation into a complaint of discrimination against the DOI. I must provide a statement for the investigative report which is true and complete to the best of my knowledge and which discloses all of my firsthand knowledge having a bearing on the merits of the complaint. My statement is provided under oath (or affirmation), without a pledge of confidentiality, in accordance with Equal Employment Opportunity Commission rules and regulations and DOI policy. In addition, the complainant and the appropriate Agency officials involved in the EEO complaint process will receive the entire investigative file. I have the right to review my statement prior to signing it and may make initialized corrections if it is incomplete or inaccurate. I have the right to receive a copy of the signed statement.

Having been advised of the above information about my role as a witness in the investigative process, I solemnly swear ___ X ___ affirm ___ the statement which follows is true and complete to the best of my knowledge and belief, and addresses the issues and concerns raised with me by the investigator.

1


(Initials)

## Supplemental Affidavit of Witness
### Jay Boggess

On August 20, 2020, at approximately 9:30 a.m., Investigator Shirley Cain interviewed witness Jay Boggess regarding the amended EEO Discrimination complaint filed against the United States Department of Interior, Bureau of Reclamation (BOR) filed by Complainant, Daniel Hamann, DOI-BOR-19-0764.

1. **Whether Complainant has been subjected to disparate treatment based on age (YOD: 1953) when on March 6, 2020, his supervisor did not assign him a project manager role;**

   k. **On an unspecified date, the Agency failed to allocate him enough budget to charge overtime.**

1 Complainant states since he started teleworking in approximately March 2020, he has not been given a budget that would allow him to charge overtime. Please respond.
   A. **BOR does not allocate in a budget for a person to be able to charge overtime on projects. I do not think that is a a practice in any agency. Work is expected to be completed in the time determined by the PM, and accepted by the client for a projects. OT is requested and approved on an as needed basis. Complainant has not requested overtime during this period. Additionally, any changes to a project budget, including additional staff hours needed, must be requested through the PM, and may need the client's approval in form of a change order. I am not aware of any requests made by him along these lines.**

2. Did Complainant make a request to you to charge overtime hours?
   A. **Complainant has not requested any overtime during the period indicated. If he made a request, I would have approved it. On June 29, 2020, I informed him that he could take overtime on Leavenworth and he declined it for personal reasons.**

3 Why did he need to charge overtime?
   A. **He never made a request for OT.**

4. Complainant states another Engineer, Luke Buchholz, has been permitted to charge several hours of overtime each pay period since approximately March 2020. Please respond.
   A. **All of my employees are permitted to request overtime as needed. Each engineer's workload is different and the need for overtime varies from project to project. Luke has requested, and I have approved, overtime due to his projects and workload.**

5. Did Complainant address his concerns with you?
   A. **No**

6 Did he speak to any other management officials about this issue?
   A. **Not that I am aware of.**

2

JSB
(Initials)

7. Complainant believes these events were harassment because of his age. Please respond.
  A. I am not aware of any instances where Complainant has requested OT since we started teleworking. If he had requested it, I would have approved it.

8. Do you believe Complainant was treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding these events? If so, how and who?
  A. No

9. Is there anything you would like to add to this event?
  A. No

   1. On unspecified dates, the Agency failed to assign him to project manager authority on the LNFH Surface Intake and Fish Passage (F061A) project and the NHP Pumping Plan G7.5LA HVAC Addition (UC684) project.

10. What is your role in, or knowledge of this alleged event?
  A. Other departments had authority over the projects, and I did not have the authority to assign PMs. The LNFH project was managed by Chou Cha who worked in the Civil Structures group. He was later promoted to another position and Shannon Monahan was then assigned as PM. The NHP project was managed by Rafal Jankowski in Mechanical Equipment group.

11. Did Complainant ever address his concerns regarding being assigned as a PM to these projects with you?
  A. No

12. Was Complainant offered to be PM of these projects? If not, why?
  A. No, PM authority is given to the group with the most budget. These projects did not fall under our department.

13. Did Complainant serve in a Technical Approval (TA) role for these projects?
  A. Yes

14. If so, what were his responsibilities?
  A. The TA is responsible for the technical information of the project.

15. Complainant states he was attempting to carry out the duties of TA when you advised him he was not the team lead. Please respond.
  A. TA and team lead are not the same. For example, on this project, there was another individual assigned as an Electrical Team Lead and Complainant was the TA.

16. Did Complainant address his concerns with you regarding this issue?
  A. He did discuss this issue with him either in an email or verbally, but I do not recall the specific conversation. I believe I told him he was not the team lead.

3

JSB
(Initials)

17. Did Complainant speak to anyone else in management regarding this issue?
    A. I do not know.

18. Complainant believes these events were harassment because of his age. Please respond.
    A. I completely disagree with that statement as I would never consider age in any decision I make as a manager.

19. Do you believe Complainant was treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding these events? If so, how and who?
    A. No

20. Is there anything you would like to add to this event?
    A. In reference to the NHP project, Patrick Dawson, the Mechanical Equipment Group Manager, had oversight of the project. He filed a formal complaint against Complainant due to his conduct and performance on the project. The investigation is on-going. Mr. Dawson requested Complainant's removal from the project due to those issues by stating in an email, "Seeing this as 8410-led project, as the GM of 8410, I have to say that I am not comfortable with Dan continuing on this project. The client's comments indicate a lack of trust and I have to look out for the best interests of the project." His complaint is currently under investigation by Employee Relations/Labor Relations (ER/LR).

    3. Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on unspecified dates between July 23, 2019 and May 22, 2020, the agency did not assign him project manager authority to the follow projects:
       a. Cle Elum Gate Hoist Construction Support (CEGHI)
       b. Shasta Dam Crest Road Vehicle Barrier Constructions Support (SDCRV)

21. What is your role in, or knowledge of these alleged events?
    A. I am Complainant's supervisor.

22. Did you offer for Complainant to be PM for these projects?
    A. No, because I was not the manager with oversight of the Cle Elum project; it was assigned to Zach Cepak, Mechanical Engineer who works in the Mechanical Equipment group.

23. If not, why wasn't he offered the opportunity to serve as PM on these projects?
    A. The project was assigned to the Mechanical Equipment group.

24. Complainant alleges Al Bernstein recommended that he be assigned as PM for the Shasta Dam project. What is your role in, or knowledge of this event?
    A. On March 3, 2020, Al Bernstein suggested that someone from 8430 (our department) may be a possible PM for Shasta. I definitely did not take it as a recommendation for Dan to be assigned as PM. No decisions were made on this at this point. Within 3 days, I had received complaints again from Al Bernstein,

I

$JSB$
(Initials)

Supervisor, Plant Services Group, and also observed contentious email traffic between Dan and the client. It became apparent that Dan Hamann was not effectively communicating with his clients, nor did he have the desire to maintain productive relationships. I did not want to create further conflict with region, so I assigned the job to someone who could work with people. There is a current conduct investigation into Dan's actions on this project in ER/LR. Also, at the point where our department (8430) took over PM responsibilities, Dan was scheduled to begin a rotation in the 8450 SCADA group. I did not assign the role because it was incompatible to him going on his rotation in April. This rotation was only postponed due to COVID.

25. Did Complainant address his concerns regarding not being assigned as PM to these projects?
    A. No; he did send me, Mr. McStraw and Rona Pierce, an email on March 6, 2020, stating he was going to file a Whistleblower complaint with OIG regarding the Shasta Dam project. I do not know if he followed through with the complaint.

26. Did Complainant speak to anyone else in management regarding his concerns? If so, who? When?
    A. I am only aware of the email sent to me, Mr. McStraw, and Ms. Pierce.

27. Complainant believes these events were discrimination because of his age. Please respond
    A. I disagree; I would never discriminate against anyone. When assigning projects I consider skills, ability, and workload.

28. Do you believe Complainant was treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding these events? If so, how and who?
    A. No

29. Is there anything you would like to add to this event?
    A. Complainant's actions on the Shasta Dam project led to a conduct investigation by the ER/LR office. On May 1, 2020, the manager of the Cle Elum construction site emailed Complainant to inform him he could not wait any longer for him to complete his work on the project and was going to assign someone else to it.

    4. Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on or about January 7, 2020, he was not selected for an Electrical Engineer position advertised under the follow vacancy announcement numbers:
       a. BR-DO-2019-193 (MPP-BM)
       b. BR-DO-2019-194 (DEU-BM)
       c. BR-DO-2019-195 (MPP-BM)
       d. BR-DO-2019-196 (DEU-BM)

30. What was your role in or knowledge of how this position was filled?
    A. Eric Mendlin, Electrical Equipment Group Supervisor and I were looking to fill these positions.

5


(Initials)

000371

Exhibit F-2 - page 16 of 22

31. Please explain the process of how the position was advertised and the process used to prepare the lists of eligible for consideration.
   A. The positions were announced both internally and externally. Candidates answer online questions during the application process that are scored by HR and that determines who are put forward to the hiring managers. The scores are shown by 90% or better, 80% or better, etc. In most instances, if enough candidates meet the 90% or better criteria, those are the only candidates put forward. It is my recollection that complainant did not meet the initial 90% or better level on 3 of the 4 vacancy announcements. On 12/04/19, I instructed HR to also consider 80% or better, which I believe is when complainant became eligible for consideration on all 4 vacancies. HR would have the records to confirm this.

32. Who requested the position be filled?
   A. Mr. Mendlin and me.

33. How many positions were advertised?
   A. There were two openings with four solicitations; two MPP and two DEU.

34. What were the opening and closing dates of the announcements?
   A. Approximately mid-October 2019 through November 13, 2019.

35. How many lists did you receive?
   A. Four

36. How many names were on each list?
   A. MPP: SCADA had four; Non-SCADA had five
      DEU: As I recall, both SCADA and non-SCADA both had five names

37. Which list was Complainant's name on?
   A. He was on both MPP lists; I did not look in detail at the DEU because we had enough candidates on MPP.

38. Did you conduct interviews?
   A. I did not. In order to ensure fairness, interviews were conducted by another group which was led by Nathan E. Myers, Manager of the Hydropower and Diagnostics and SCADA group. Mr. Medlin and I did not participate in the interviews. I do not know who the other members of the panel were.

39. If so, who determined who would be interviewed for the position?
   A. They interviewed all MPP candidates from both certificates.

40. What information did the panel review or consider to come to that decision?
   A. They interviewed all the candidates who scored 80% or better.

41. How many people were interviewed for the positions?
   A. Six

6

JSD
(Initials)

000372

Exhibit F-2 - page 17 of 22

42. Was Complainant interviewed?
   A. Yes

43. When were the interviews conducted?
   A. I do not know the exact date.

44. Where were they conducted?
   A. I do not know.

45. Who sat on the interview panels? Name and title.
   A. Mr. Myers; I do not know who the other individuals were.

46. Was there a chairperson of the panel? If yes, who?
   A. Mr. Myers

47. Do you know how the interview process was conducted? If so, please explain.
   A. No

48. What kind of questions were asked?
   A. The questions were the same we used in prior interviews; I do not have the specific questions.

49. Were the same questions asked of each individual? Do you have a copy?
   A. Yes, in general our policy is to always ask each individual the same questions. I do not have a copy.

50. Were the interviews scored?
   A. Yes, I do not have the details.

51. Who was the selecting official?
   A. Technically, Mr. Mendlin and I, but the interview team determined who were the best qualified candidates.

52. When were the selections made?
   A. Approximately January 2020

53. Who was selected for the positions?
   A. Luke Buchholz and Christopher T. Purdy

54. What was the ages of the persons selected?
   A. I do not have that information.

55. Were these selections made in accordance with your agency's policies and procedures? If so, which one (name and number)
   A. To my knowledge, yes. HR would have that information.

JSB
(Initials)

56. Were references checked on these applicants? All or just the two?
    A. Yes; for the selectees. However, we used the references for Mr. Buchholz from when he was hired with the Agency five years ago.

57. Complainant believes he was more qualified and had many more years of experience in this same job than either of the two persons selected. Can you speak to his belief?
    A. The interview team did not believe he was more qualified based on his responses during the interview. Complainant has stated that he has 31 years of experience as an Electrical Engineer and believes that is what makes him more qualified. However, all the experience he may have gained in the private sector does not always equate to him being more or the best qualified in a position with Government service. BOR is a fee-for-service Federal agency and our process with working project is different from what happens in the private sector. .

58. Was Complainant notified of his non-selection? If yes, when?
    A. I believe so, I do not know when.

59. Complainant believes he was not selected for this position because of his age. What is your response to that?
    A. I disagree with that statement. The two most qualified candidates from the panel interview were the ones selected.

60. He also believes the selections were motivated not by qualifications but because of age. Response? Is this information available during the application process?
    A. I disagree with that completely. Applicant ages are not a part of the application process; the panel did not have any information regarding the ages of the applicants.

61. Complainant alleges prior to these announcements, the position required the selectee be registered as a Professional Engineer however, that requirement was removed. Please respond.
    A. Since I have been employed with BOR in Denver, this has not been a requirement for the Electrical Engineers, GS-12 position. HR can confirm this information with prior announcements.

62. Complainant alleges the Agency shows favoritism towards younger employees. Please respond.
    A. I cannot speak for the entire Agency; however, I have other current and former employees over 40 who have never expressed a concern in this area.

63. Is there anything you believe is relevant to this investigation that I have not asked you about during this interview?
    A. Over the past year, I have had numerous complaints from PMs and team embers about Mr. Hamann's conduct, communication, and cooperation on projects. He continues to assert that his progress at BOR has been hindered on age. I would

᠊ᢏᢀ

8

JSB
(Initials)

assert, if anything his progress has been hindered by his inability to get along with others and be an effective team member.

64. Is there anything you would like to add to your statement?
   A. No

65. May I contact you if I have additional questions?
   A. Yes

I have reviewed this statement, which consists of eight (8) pages, and hereby solemnly swear that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

_Signature of Affiant_

9 -1 - 2020
Date

9

(Initials)

## Boggess, Jay S

| | |
|---|---|
| **From:** | Boggess, Jay S |
| **Sent:** | Friday, March 6, 2020 2:05 PM |
| **To:** | Perkes, Kent W A; Giles, Madelyn L; Gee, Robert W; Holmes, Stephen M; DERK, DAVID B; Celik, Erim; Cabral, John L; Hamann, Daniel (Dan) W; Buchholz, Luke B |
| **Cc:** | Bernstein, Alfred I; Orgren, Lisa F; McStraw, William D; Mendlin, Eric T |
| **Subject:** | Shasta Vehicle Barrier - Change of TSC Project Manager |

Since TSC's involvement of the Shasta Vehicle Barrier has grown quite limited with nearly no Civil/Structural concerns left AND that all the remaining concerns essentially being electrical, Al Bernstein & Lisa Orgren have asked us in TSC 8430 Electrical Controls Group to pick up the remaining PM responsibilities.

We have agreed and I have asked Luke Buchholz and he has accepted to be TSC Project Manager for what remains of TSC's involvement with Shasta Vehicle Barriers. Please consider Luke your primary TSC contact for Shasta Vehicle Barriers. Luke can be contacted at lbuchholz@usbr.gov 303-445-2702.

I'd like to thank Lisa Orgren and Al Bernstein for all their work on this project.

Jay Boggess
Manager, Electrical Controls Group – 86-68430
Denver TSC
303-445-2933 office
907-748-1103 cell

1

**Subject:** FW: NIIP (UC684) - Request of Info
**Date:** Thursday, August 20, 2020 at 12:50:33 PM Eastern Daylight Time
**From:** Boggess, Jay S <jboggess@usbr.gov>
**To:** Shirley Cain <scain@resolutionserv.com>

Shirley-

This is where Patrick Dawson requested Dan Hamann not be part of the NIIP project.

Jay Boggess
907 748 1103

**From:** Dawson, Patrick K <pdawson@usbr.gov>
**Sent:** Thursday, May 21, 2020 3:38 PM
**To:** Boggess, Jay S <jboggess@usbr.gov>
**Subject:** RE: NIIP (UC684) - Request of Info

Jay,

As a followup to this, on the call we had with the client this afternoon I had another concern raised. When discussing the arc flash study and as to whether it needed to be done prior to design (as Dan stated) or if it could be done after the fact, the client said, "I saw through what he (Dan) was trying to do. He was trying to get someone else to do the groundwork for him".

Seeing this is an 8410-lead project, as the GM of 8410, I have to say I am not comfortable with Dan continuing on this project. The clients comment's indicate a lack of trust and I have to look out for the best interest of the project.

Thanks and let me know if you would like to discuss further.

Patrick

## WITNESS AFFIDAVIT
### William McStraw

On April 16, 2020, at approximately 12:00 PM EDT, Investigator Shirley Cain interviewed Witness, William McStraw regarding the EEO Discrimination complaint filed against the United States Department of Interior, Bureau of Reclamation (BOR) filed by Complainant, Daniel Hamann, DOI-BOR-19-0764.

1. Do you solemnly swear the statement which follows is true and complete to the best of your knowledge and belief, and addresses the issues and concerns raised with you by the investigator?
   **A. Yes**

2. Please state your name for the record.
   **A. William Dean McStraw.**

3. Do you have a representative? Is he/she present with you today?
   **A. I do not.**

4. What is your duty location and address?
   **A. Bureau of Reclamation. Duty Station: Denver Federal Center, Denver, CO.**

5. What is your work email address?
   **A. wmcstraw@usbr.gov**

6. What is your telephone number?
   **A. (303) 445-2294**

7. What is your current position title, series, and grade?
   **A. Division Chief, Electrical Mechanical Engineering Division, GS-0801-15**

8. Briefly describe your duties.
   **A. I lead a division of six groups consisting of two Mechanical and four Electrical groups with 20 Engineers in each group for a total of approximately 102 employees. I manage workloads in order to ensure the organization is staffed appropriately.**

9. How long have you been in your current position? Month/year.
   **A. December 2017**

10. When did you begin your employment with the BOR? Month/year.
    **A. July 1979**

11. Who was your first level supervisor from September 2015 through March 6, 2020?
    **A. September 2015 through September 2017, it was George Girgis who has since retired. From September 2017 to present, it has been Tom Luebke, Director.**

1

*(Initials)*

12. Who was your second level supervisor from September 2015 through March 6, 2020?
    A. **From September 2015 through September 2017, it was Tom Luebke. From September 2017 to present, it has been David Palumbo, Assistant Commissioner for Operations.**

13. Do you know Complainant in this case, Daniel Hamann?
    A. **I know him.**

14. How do you know Complainant?
    A. **He is an employee in my division. Before I got the position in December 2017, I really had no interaction with him at all.**

15. What was your organizational relationship to Complainant from September 2015 through March 6, 2020?
    A. **I have been his second level supervisor since December 2017.**

16. Are you aware of Complainant's age?
    A. **I don't know his exact age.**

17. What do you believe it to be?
    A. **I would say he is in his middle 60's.**

18. What is your age?
    A. **I will be 60 on Tuesday.**

**The issues accepted for investigation are as follows:**

1. **Whether Complainant has been subjected to disparate treatment based on age (YOD: 1953) when on March 6, 2020, his supervisor did not assign him a project manager role;**

19. What is your knowledge of, or role in the alleged event?
    A. **I am not aware of this particular incident.**

20. What is a project manager role?
    A. **A project manager acts as the lead for the team assigned to a job. They ensure the jobs are completed on time and within budget.**

21. Is it a collateral duty?
    A. **Project management is a critical element for all of our engineers. In order to promote to GS-12, management would want them to have some experience in leading project teams.**

2. **Whether Complainant has been subjected to a hostile work environment based on age (YOB: 1953) when, in addition to the foregoing:**

2


(Initials)

    a. **Starting in September 2015, his supervisor has not given him rotation opportunities;**

22. What is your knowledge of, or role in this alleged event?
**A. I only became aware of this in the fall of 2019. Dan did not come to me with the issues, instead he wrote a letter directly to the Commissioner. The Commissioner responded to him informing him to go through his chain of command. At that point, Dan started involving me with his concerns. I wasn't involved in this incident because it occurred in 2016 prior to my arrival.**

23. What are rotation opportunities?
**A. BOR has a rotation program which allows employees to work in different groups to give them experience with various different aspects of how the agency works. In the program, employees can promote from GS-7 to GS-9 in six months instead of twelve.**

24. Has Complainant been provided the opportunity to work rotations?
**A. The opportunity would not apply because it occurred in 2016. I am thinking his complaint revolves around the fact he didn't receive the rotation back in 2016, which he believes affected all of his promotion potential forward.**

    b. **Starting in September 2015, his supervisor has given him less training opportunities than his coworkers;**

25. What is your knowledge of, or role in the alleged event?
**A. Since filing his complaint, he met with the Director in an effort to informally resolve his complaint. He was offered a 90-day detail assignment to give him extra experience in a different group. Once the events involving COVID-19 ensued, we contacted him to tell him it would be on hold and he responded that it seemed suspicious.**

26. Was Complainant provided with less training than his coworkers?
**A. I am not aware of him receiving less training.**

27. Did Complainant speak to you or other any management officials about this? If so, who?
**A. I do not know whether he spoke to anyone regarding this particular event.**

28. Complainant believes these events were harassment because of his age. Please respond.
**A. I do not believe he was harassed because of his age.**

29. Do you believe Complainant was treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding these events? If so, how and who?
**A. No**

30. Is there anything else you would like to add to this event?
**A. No**


(Initials)

c. **Starting in September 2015, his supervisor has assigned him tasks below his skill level, held him to a higher standard than his coworkers and excluded him from recognition;**

31. What is your knowledge of, or role in the alleged events?
    A. **I do not have firsthand knowledge of this event.**

32. Complainant alleges his supervisor assigned tasks to him that were below his skill level. Please respond.
    A. **I do not believe he singled out for certain tasks.**

33. Complainant alleges you held him to a higher standard than his coworkers. Please respond.
    A. **I do not believe he was held to a higher standard.**

34. Complainant alleges his supervisor excluded him from recognition. Please respond.
    A. **Recognition is based on performance. Dan is consistently late and over budget on jobs assigned to him. This type of performance does not warrant extra recognition.**

62. Did Complainant address his concerns with you?
    A. **No**

63. Did Complainant speak to any other management officials about this? If so, who?
    A. **No, he hasn't. He wasn't very proactive in approaching his first level supervisor about these issues either.**

64. Complainant believes these events were harassment because of his age. Please respond.
    A. **I don't believe that to be true.**

65. Do you believe Complainant was treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding these events? If so, how and who?
    A. **No, I do think somehow there is a mistake with the Agency regarding the rotation assignment. I don't know how he was overlooked, but it wasn't because of his age.**

66. Is there anything else you would like to add to this event?
    A. **No**

d. **Starting in September 2015 and continuing through July 22, 2019, his supervisor has not given him project manager opportunities;**

67. What is your knowledge of, or role in the alleged event?
    A. **I am only aware that he is continually late and over budget on his jobs. The requirements of a project manager include meeting deadlines and schedules. In my opinion, there would be some reluctance in assigning him as a project manager due to these issues.**

4

(Initials)

68. Did Complainant address his concerns with you?
    **A. Yes, in a meeting I had with him and an ER/LR representative in which he stated that he knows project management better than most.**

69. Did Complainant speak to any other management officials about this? If so, who?
    **A. Not to my knowledge.**

70. Complainant believes these events were harassment because of his age. Please respond.
    **A. I do not agree with this belief.**

71. Do you believe Complainant was treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding these events? If so, how and who?
    **A. No**

71. Is there anything else you would like to add to this event?
    **A. No**

    **e. In 2016, his supervisor did not provide him the opportunity to apply for a Supervisory Control and Data Acquisition Position;**

83. What was your knowledge of, or role in the alleged event?
    **A. In my opinion, he believes he didn't get the opportunity to apply for this position because his supervisor didn't give him the rotation and the accelerated promotion to a GS-9, so he was not eligible to apply for the position.**

84. Did Complainant address his concerns with you?
    **A. No**

85. Did Complainant speak to any other management officials about this? If so, who?
    **A. I do not know.**

86. Complainant believes these events were harassment because of his age. Please respond.
    **A. I do not agree with his belief.**

87. Do you believe Complainant was treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding these events? If so, how and who?
    **A. No**

88. Is there anything else you would like to add to this event?
    **A. No**

    **f. In 2016, his supervisor delayed his career-ladder promotion to GS-9, which further delayed future career-ladder and competitive promotions;**

5


(Initials)

105. What is your knowledge of, or role in the alleged event?
   A. **I do not have any firsthand knowledge of this event.**

   g. **In or around April 2018, his supervisor did not provide him the opportunity to apply for a Supervisory Control and Data Acquisition position;**

106. What is your knowledge of, or role in the alleged event?
   A. **I don't have any firsthand knowledge of this event.**

   h. **On October 31, 2018, and in fiscal year 2018, fiscal year 2017, and fiscal year 2016, his supervisor put him on a performance standards that did not comply with the Department of Interior's policies;**

107. What is your knowledge of, or role in the alleged events?
   A. **I believe he has an issue with the federal government performance evaluation system. I had a conversation with him and asked how he felt we could improve the standard in relation to his concerns. I offered for him to provide information to be included in his evaluation. He stated he didn't think it was his responsibility to provide feedback for his performance.**

140. Was Complainant rated on incorrect performance standards?
   A. **No. He is on the same performance program standards as the other approximately 400 Engineers in the Technical Service Center of the Bureau of Reclamation.**

141. What performance should he be rated on?
   A. **The same standards as all Electrical Engineers employed with the Technical Service Center of the Bureau of Reclamation.**

142. Do they comply with the DOI policies?
   A. **Yes**

143. Did Complainant address his concerns with you?
   A. **Yes**

144. If so, what did he say?
   A. **He told me he wasn't happy with the evaluation system, but refused my offer for him to provide input for his performance rating.**

145. What was your response?
   A. **I provided him with the opportunity to give input for his evaluation which he refused.**

146. Did Complainant speak to any other management officials about this? If so, who?
   A. **I do not know.**

6


(Initials)

147. Complainant believes these events were harassment because of his age. Please respond.
    A. I do not agree with his belief.
148. Do you believe Complainant was treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding these events? If so, how and who?
    A. No

149. Do you have anything you would like to add to this event?
    A. No

    i. **On February 21, 2019, his supervisor failed to address his concern regarding the difficulty of his project assignments;**

152. What is your knowledge of, or role in the alleged event?
    A. **He was working with two different supervisors, Mr. Boggess (his first line supervisor) and Eric Mendlin on three tasks. He asked for help from both supervisors because he felt he was not going to meet the milestone dates. Mr. Mendlin responded to his request and advised him who he could contact for help. Dan said he didn't get a response from Mr. Boggess. He reached out to me stating his supervisors did not respond to him and he felt like he was being set up for failure. I did talk to Mr. Boggess about responding to emails. I also spoke to Dan and asked if he followed up with his first line supervisor with a phone call and he told me no. I advised him that it would have been appropriate for him to follow up with a phone call if he did not get a response from his initial email contact.**

153. Was Complainant assigned projects that were outside the requirements of his position description?
    A. No

154. Did Complainant address his concerns with you?
    A. Yes

155. If so, what did he say?
    A. **He told me he reached out to the supervisors via email and did not receive a response.**

156. What was your response?
    A. **I asked him if he followed up with a phone call and he told me he did not. I also spoke to Mr. Boggess and expressed the importance of responding to concerns expressed by employees.**

157. Did Complainant speak to any other management officials about this? If so, who?
    A. I don't know.

158. Complainant believes these events were harassment because of his age. Please respond.
    A. I don't agree with his belief.

7

_Bm_
(Initials)

159. Do you believe Complainant was treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding these events? If so, how and who?
   A. No

160. Is there anything else you would like to add to this event?
   A. No

   j. **On March 3, 2020, February 21, 2019, October 4, 2018, and February 13, 2018, he was cut off from speaking during meetings.**

165. What is your knowledge of, or role in the alleged events?
   A. **He did talk to me about it. I was not there and have no firsthand knowledge of the meetings. I did speak to his supervisor and reminded him keep a professional demeanor during meetings.**

166. Did Complainant speak to any other management officials about this? If so, who?
   A. **I do not know.**

167. Complainant believes these events were harassment because of his age. Please respond.
   A. **I do not agree with his belief.**

168. Do you believe Complainant was treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding these events? If so, how and who?
   A. No

169. Do you have anything else you would like to add to these events?
   A. No

*General Harassment/HWE Questions:*

170. Have you received training on anti-harassment/hostile work environment while employed by the agency? If so, when?
   A. **Yes, during annual training on May 27, 2019.**

171. Is this training mandatory for all employees? If so, how often?
   A. **Yes, managers are required to complete it annually. I'm not sure how often non-management employees are required to complete the training.**

172. To the best of your knowledge, what are you supposed to do if you believe that you have been harassed?
   A. **They need to go to their supervisor. If they are not comfortable with that, their second line supervisor, HR or EEO.**

8


(Initials)

173. Did Complainant tell anyone he felt he was being harassed due to his age?
   A. **I don't know firsthand if he told anyone other than when I received the letter from the Commissioner.**

174. Did Complainant follow the procedures in regard to being harassed? Why or why not?
   A. **I would say no because he bypassed his second line supervisor and went straight to the Commissioner.**

175. Did Complainant take advantage of any preventive or corrective opportunities provided by management or tried to avoid harm otherwise?
   A. **I don't think he was very proactive in approaching his first line supervisor. The Agency did offer him the detail assignment opportunity after mediation, which he accepted. It is the intention of the agency to follow through with the detail after COVID-19 restrictions are lifted.**

176. Was there an investigation conducted into Complainant's harassment allegations? If so, when?
   A. **No, other than the EEO, there has been no investigation.**

177. Do you have any documentation you would like to submit in support of your testimony?
   A. **Yes, I will send them to you.**

178. Is there anything else you believe is relevant to the investigation I have not asked you about in this interview?
   A. **We did have two GS-12 positions advertised in the fall. I ensured the interview panel consisted of individuals that did not have involvement in his complaint. Dan had issues with how the panel interviews were conducted. I believe I did everything I could to help him advance in his career to GS-12. I believe his manager has assisted him with some personal issues and has allowed him to telework three days a week to help him out, when normally he would have teleworked only one day a week. I did make an offer for Dan to move to a different supervisor due to the deterioration of his relationship with his first line supervisor and he declined the offer.**

179. May I contact you in the future if I have additional questions?
   A. **Absolutely**

I have reviewed this statement, which consists of nine (9) pages, and hereby solemnly
  _X_ swear ___ affirm that it is true and complete to the best of my knowledge and belief. I
understand that the information I have given will not be held confidential and may be shown to
the interested parties as well as made a permanent part of the record of investigation.

WILLIAM MCSTRAW   WILLIAM MCSTRAW
                   2020.04.28 11:54:26 -06'00'
_____          _____
Signature of Affiant                          Date

9


(Initials)

Dan,

Thank you for meeting with me on Tuesday to discuss concerns you had regarding incidents in which your verbal participation in meetings has been cut off while stating your thoughts and sharing information.

I have followed up with your supervisor, Jay Boggess to make him cognizant of your concerns and experiences and have also copied him on this email. I communicated with him to take measures to insure that all participants in future meetings are treated with respect and are allowed to freely speak and state their opinions without being interrupted. If there are situations in which there is a disagreement or difference of opinion in a meeting with multiple individuals present (such as the project team or group) that will significantly affect the purpose, agenda and length of the meeting, I encourage the participants to arrange further discussions outside of the formal meeting and that these items of concern will be discussed and addressed in a professional manner by all participants involved.

Please notify me if you have any similar experiences in the future so we can address and resolve them in a timely manner.

Sincerely,

Bill McStraw, Chief
Electrical and Mechanical Engineering Division

| From: | Hamann, Daniel (Dan) W |
|---|---|
| To: | McStraw, William D |
| Cc: | Boggess, Jay S; Luehke, Thomas A; Myers, Nathan E |
| Subject: | Proposed 90-day Detail for 8430 Employee |
| Date: | Friday, December 13, 2019 12:03:24 PM |
| Attachments: | Proposed 90 day detail for 8430 employee.docx |

All – I am keenly interested in the attached *Proposed 90-day Detail for 8430 Employee.* I do have some time constraints in initiating the startup. Would it be possible to schedule a meeting to address this and other issues? – Dan

**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819 (forwarded)
**Telework:** TuWeTh 6-2:30 till 1/1/20 | Call 2819 | Schedule may vary | See Calendar
**Location:** Denver Fed Cntr, Bldg 67, 11th Floor, Cube 11-110W 25007 Denver CO 80225.

## Proposed 90-day Detail for 8430 Employee

1) Provide a 90-day detail assignment to the SCADA team located in the Hydropower Diagnostics and SCADA Group, 86-68450 under the direction of the Group Manager, Nate Myers. The 8450 group offers program consultation, training, unique in-house support services, and design and installation support for plant Supervisory Control and Data Acquisition (SCADA) systems including several of the following projects*:

- SCADA system and Programmable Logic Controller (PLC) system design
- Establish a mock SCADA system utilizing standardized parts, including programming, wiring, to emulate a SCADA system within Reclamation
- SCADA system evaluation, analysis, software support, and security accreditation
- Work on Optimization system installed throughout Reclamation to effectively increase the efficiency of our power generation equipment
- Aid with the Glen Canyon historian project, including programing and installation

*Note: Projects are dependent upon funding, workload, and customer needs. Scheduling within the group indicate these are the most probable projects, but they could change based on variables outside of the control of the group.

2) Training – In addition to the on the job training provided by the SCADA team, the following formal training classes are recommended as part of the 90-day detail assignment:

- Training class 1 (ICS-CERT 301 Training: This course provides extensive hands-on training on understanding, protecting, and securing industrial control systems (ICSs) from cyber-attacks and includes a Red Team/Blue Team exercise conducted within an actual control systems environment. In order to understand how to best defend a system, trainees will learn about common vulnerabilities and the importance of understanding the environment they are tasked to protect. March 16-20, 40 hours)

- Training class 2 (Rockwell Automation Studio 5000 Logix Designer: ControlLogix System Fundamentals Level 1 and Basic Ladder Logic Programming Level 2: After completing this course, you should be able to perform basic ControlLogix and Studio 5000 Logix Designer™ tasks, such as creating and configuring a project as well as communicating with a controller. This course will assist you in developing and building a solid foundation with a fundamental knowledge of ControlLogix® and other Logix5000™ systems. This is a skill-building course that provides you with the resources and hands-on practice required to program basic ladder logic instructions for any Logix5000™ controller. You will have an opportunity to use the Studio 5000 Logix Designer™ application to perform basic software tasks to meet the requirements of a given functional specification as well as set up a sequencer

to run equipment through a predefined procedure and separate production procedure from equipment control. February 11-14, 32 hours)

- Training class 3 (Visual Basic Courses and Training through LinkedIn: When programming within our group, Visual Basic is critical to interface with many of our applications. Based on the engineer's knowledge of Visual Basic, it would be recommended to pay for a 3-month subscription to LinkedIn's online learning service. The courses are online and offer the ability to learn at their own pace. The courses range in time from minutes to hours and appear to cover a wide variety of topics from beginner to advanced. Online courses are available 24 hours per day and range in duration.)

3) Mentoring and guidance for the detail will be provided by Toby Steves, the subgroup team lead, as well as other members of the SCADA team.

4) The employee will be performing the following tasks/assignments while on the detail and will be evaluated to document proficiency:

1) Designing and implementing a mockup of a SCADA system. This will allow the engineering to learn how to program the different components within the system and how to interconnect the equipment.

2) Design and program a graphical user interface to allow for the control of the mockup SCADA system. This will demonstrate proficiency using Visual Basic and other programming languages used within the team.

3) Work with the team on Optimization and/or Historian projects within Reclamation. These will allow the engineer to gain a better understanding of operating constraints and real-time systems used within the organization to improve performance and collect data critical to the future operation of our systems.

| | |
|---|---|
| **From:** | Hamann, Daniel (Dan) W |
| **To:** | McStraw, William D |
| **Cc:** | Pierce, Rona L |
| **Subject:** | FW: request for resources |
| **Date:** | Friday, January 24, 2020 7:47:21 AM |
| **Attachments:** | RE Shasta Veh. Barriers - RSN 34.40 10-1 Vehicle Barrier Installation Plan Drawings.msg |
| | RE Shasta Veh. Barriers - RSN 34.40 10-1 Vehicle Barrier Installation Plan Drawings.msg |
| **Importance:** | High |

Bill – As per the email below, I requested additional resources to meet deadlines. Neither Jay or Eric responded to this email. A week later, I mentioned this again in my 1/21 email to you. Eric did stop by my cube on Tuesday, (1/21) to ask if I needed assistance on Flathead but by this time I was so far into the report, it wasn't going to help to have someone assist.

In addition to the deadlines mentioned in the attached email, the EEO is requesting information from me. They initially requested that I respond by 1/17. I've already delayed that a week to 1/24 but I am not going to be able to meet that date, either.
The Flathead trip report is now three days overdue; I am hoping to finish that today. I was able to finish the Shasta submittal review on 1/21, which was a day late. The Boca submittal is due at the end of next week and I am not sure I will be able to meet this date.

What am I supposed to do to rectify this situation? Why are the managers not responding to email requests? I did reach out early enough to try to prevent delays in deliverables. However, delays are occurring now. And to the team leads for the delayed projects, it simply appears that I am not meeting my deadlines when there is a backstory to this. This, then becomes a performance issue, where the narrative that is presented is that I did not deliver in a timely fashion. And this is the narrative that gets passed on to the rating official.

I sent that email request for resources because I saw the problem coming early and I wanted to head off the problem. I might be the only engineer in my group who places all of his milestones into MS Project schedule to try to head off bottlenecks that can lead to delays. All of my effort to schedule my time, and avoid delays, is an exercise in futility if a request for resources, is ignored.

But I can't ignore the possibility that this is very convenient, if the goal, conscious or otherwise, is for some to fail, and others to succeed. That has certainly be my observation in my tenure here. I am not alone in this perception. Surveys by the MSPB indicate that biases are, indeed, held by rating officials. – Dan
PS: I have requested a Read Receipt (screenshot). It would be appreciated if that was acknowledged.

☑ Request a Delivery Receipt

Use Voting
Buttons ▾    ☑ Request a Read Receipt

Tracking

**From:** Hamann, Daniel (Dan) W

**Sent:** Tuesday, January 14, 2020 11:38 AM
**To:** Boggess, Jay S <JBoggess@usbr.gov>; Mendlin, Eric T <emendlin@usbr.gov>
**Subject:** request for resources

I have several deadlines for deliverables coming up and am requesting additional resources to that end:

Fri (1/17)      Shasta (SDCRV)      RSN 34 40 10-1, Vehicle Barrier Installation Plan & Drawings
Tue (1/21)      Flathead (CFPPS)      Trip Report Write-up (fairly complex issue involving pumps, substation, protection, et al)
Fri (1/31)      Boca (BDSC2)      RSN 01 86 26-1-4 Approval Drawings and Data
I've attached emails on the Shasta RSN. 8430 is being asked to review a barrier gate submittal which is a mix of electrical, mechanical, structural, security and traffic control. I'm not sure if I should be reviewing work outside our discipline. At a minimum, it might be good to have a mechanical and structural review respective documentation.

**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819 (forwarded)
**Telework:**  TuWeTh 6-2:30  | Call 2819 | Schedule may vary | See Calendar
**Location:**  Denver Fed Cntr, Bldg 67, 11th Floor, Cube 11-110W 25007 Denver CO
80225.

| From: | Hamann, Daniel (Dan) W |
| To: | McStraw, William D |
| Subject: | RE: proposed detail to 8460 group |
| Date: | Monday, January 27, 2020 11:03:09 AM |

Bill – As stated in my 1/21 email, "I can continue to work with Jay if Jay is fully cognizant of my intentions" Given that appears to be the case, and given that there have been further discussions on the issue of responding to emails, et al, I see no reason to make that change now.

However, thank you for making that opportunity available. - Dan

**From:** McStraw, William D <WMcstraw@usbr.gov>
**Sent:** Monday, January 27, 2020 9:55 AM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Subject:** proposed detail to 8460 group

Dan,

Have you made a decision on the proposal of a detail to the 8460 group through September 30, 2020?

| From: | McStraw, William D |
|---|---|
| To: | Hamann, Daniel (Dan) W |
| Cc: | Pierce, Rona L |
| Bcc: | Mendlin, Eric T; Boggess, Jay S; Myers, Nathan E |
| Subject: | RE: meeting follow up |
| Date: | Friday, January 31, 2020 2:28:00 PM |

Dan,

As promised in our meeting I have reviewed the interview questions, vacancy announcement, and makeup of the interview panel and have the following comments regarding what you stated was your perception that the selection process was tailored for a certain individual:

1. Interview and vacancy announcement questions were developed for both positions to address the type of work each specific group performs and to seek qualified candidates with the type of engineering experience for the specific electrical equipment and SCADA systems each group has responsibilities for that would meet those needs.

2. The majority of the interview questions are questions that have been used for multiple vacancies and in prior interview panels (for GS-12 and GS-13 positions) and were not tailored towards benefitting a specific individual. My review and opinion are that the questions were reasonable and do not indicate bias towards any particular candidate. The interview questions were developed to ascertain whether each candidate had skills in the areas of technical ability, leadership, ability to work with others, communication skills, teamwork, safety, project management, and mentoring, which are inherent to and expected of a GS-12 electrical engineer position.

   Many of the questions were presented in such a way that a candidate would have had multiple opportunities to share what their experience was with each type of electrical equipment and SCADA systems, including their specialized experience with design work including specifications, drawings and estimates and familiarity with design standards and references. A firm knowledge and understanding of specific electrical equipment and SCADA systems is beneficial and essential to be able to develop specifications and associated drawings. Some of the questions on where a candidate could expound on these specific skills are listed below:

   - Question 1 – Outline experience you have had with any of the following specialized electrical engineering fields: Transformers, for hydroelectric generators, generators, circuit breakers, switchgear, and any other electrical equipment that would be applicable (8460 Vacancy)

   - Question 1 – Outline experience you have had in any and all aspects of a SCADA project, Cyber security, fire detection/alarm systems/protection and Generator/pumping plant/ or other industrial process controls, hardwire, digital or HMI, etc. (8430 Vacancy)

   - Question 2 – How would you describe your skillset fitting into the Electrical

Controls Group based on the position you have applied for (SCADA)?

- Question 3 – Describe how you would use an IEEE/ICS standard for design and construction of a SCADA system?

- Question 8 – Tell us about how your workload and project types have evolved throughout your time with Reclamation or other government agency.

- Question 9 – What supplemental training or project experience makes your skills applicable to leading teams, project management, and electrical specification and design work associated with hydro and water conveyance engineering?

3. Each of the interview panels consisted of two GS-13 electrical engineers and one GS-14 Electrical Engineer Group Manager with extensive backgrounds in electrical engineering, electrical equipment and SCADA systems. All of these individuals are from other groups in the TSC and did not include individuals from the 8430 and 8460 groups, which further demonstrates that the panel was impartial and performed the interviews and evaluations based on the results of the interview. The interview panel did not deviate from the list of questions provided and all the interview questions were presented and applied equally to all candidates.

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Wednesday, January 29, 2020 11:25 AM
**To:** McStraw, William D <WMcstraw@usbr.gov>
**Cc:** Pierce, Rona L <rpierce@usbr.gov>
**Subject:** meeting follow up

Bill - As a follow up to our meeting this morning, I offer the following.

As mentioned in my 1/21 email, I am pursuing an OSC complaint with respect to prohibited personnel practices. I believe the GS-12 vacancy filled by Luke Buchholz was tailored in such a manner to favor his selection, and injure my own. It appears Buchholz was the pre-selected candidate in mind when the vacancies were created and the selection process was tailored to favor the selection of Buchholz.

During my tenure I have observed behavior patterns between Jay Boggess and Buchholz that indicated favoritism towards Buchholz by Boggess. To-wit, Boggess spent considerable time in Buchholz's cube when Buchholz's cube was next to mine. Buchholz was elevated from a GS-5 to a GS-11, over my tenure, in spite of the fact that Buchholz had neither an electrical engineering degree or P.E.

Flags were raised when Buchholz was selected for the GS-12 vacancy. I suspected that the job announcement and the interview process were designed to favor Buchholz. I also believe the selection process was obfuscated by creating four vacancies and numerous vacancy questions. Using multiple interviewers also obfuscated the process. During the oral interview I asked one of the interviewers, why questions were being asked for qualifications of work we never perform in our group, 8430. The response was that he was simply asking the questions.

Additionally, the vacancy questions in the announcements pertained to experience for tasks that we don't typically performed in 8430. Having done a cursory review of service agreements, for which 8430 receives funding, it became apparent that clients, and other groups, generally fund 8430 to create solicitations and studies. Solicitations require the ability to generate estimates, plans and specifications. Specifications are always in CSI format. Drawings are always generated in AutoCAD, Revit, or similar software. These are major deliverables for which 8430 is funded.

Yet, there were limited questions on the vacancy announcements pertaining to skills or experience in generating estimates and solicitations. Rather many of the questions pertained to skills or experience for which 8430 receives no funding. The questions in the oral interview were similar in that respect.

These observations serve as prima facie evidence, for me, that the vacancy and selection process were tailored for Buchholz.

I am providing this information, in the event that administrative remedies are available, which may be required prior to pursuing certain legal actions.

Other issues were discussed this morning, but due to deadlines on other tasks, for which I am employed, this is the most I can offer at this time. - Dan

**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819 (forwarded)
**Telework:** Tue & Thu 6-2:30  | Call 2819 | Schedule may vary | See Calendar
**Location:**   Denver Fed Cntr, Bldg 67, 11th Floor, Cube 11-110W 25007 Denver CO 80225.

I, William McStraw, am an employee of the Bureau of Reclamation, located at the Denver Federal Center, Denver, CO in the capacity of Division Chief, Electrical Mechanical Engineering Division, GS-0801-15 from December 2017 to the present date.

My telephone number during working hours is: (303) 476-1574

I HAVE BEEN ADVISED OF THE FOLLOWING:
I am required by Federal regulations and the U.S. Department of Interior (DOI) policy to cooperate fully and promptly with the investigator who has been assigned to conduct a thorough and impartial investigation into a complaint of discrimination against the DOI. I must provide a statement for the investigative report which is true and complete to the best of my knowledge and which discloses all of my firsthand knowledge having a bearing on the merits of the complaint. My statement is provided under oath (or affirmation), without a pledge of confidentiality, in accordance with Equal Employment Opportunity Commission rules and regulations and DOI policy. In addition, the complainant and the appropriate Agency officials involved in the EEO complaint process will receive the entire investigative file. I have the right to review my statement prior to signing it and may make initialized corrections if it is incomplete or inaccurate. I have the right to receive a copy of the signed statement.

Having been advised of the above information about my role as a witness in the investigative process, I solemnly swear __X_ affirm _____ the statement which follows is true and complete to the best of my knowledge and belief, and addresses the issues and concerns raised with me by the investigator.

1


(Initials)

On August 21, 2020, at approximately 12:00 p.m., Investigator Shirley Cain interviewed witness William McStraw regarding the amended EEO Discrimination complaint filed against the United States Department of Interior, Bureau of Reclamation (BOR) filed by Complainant, Daniel Hamann, DOI-BOR-19-0764.

1. **Whether Complainant has been subjected to disparate treatment based on age (YOD: 1953) when on March 6, 2020, his supervisor did not assign him a project manager role;**

    I. **On unspecified dates, the Agency failed to assign him to project manager authority on the LNFH Surface Intake and Fish Passage (F061A) project and the NIIP Pumping Plan G7.5LA HVAC Addition (UC684) project.**

1. Do you have any knowledge of why Complainant was not assigned as PM for these projects? If so, please explain.
    A. **I am unaware of the details related to Complainant not being assigned as the PM. I do know these projects were led by two different groups which Complainant is not a part of. The group leads from Civil Engineering assigned someone from their group to be PM.**

2. Did Complainant ever address his concerns regarding being assigned as a PM to these projects with you?
    A. **No, not in reference to these specific jobs.**

3. Was Complainant offered to be PM of these projects? If not, why?
    A. **No; the projects were assigned to other groups within TSC.**

4. Did Complainant serve in a Technical Approval (TA) role for these projects?
    A. **He did serve as TA for the LNHF job; however he was removed from the responsibility because he failed to meet milestone dates which would have jeopardized the scheduled completion date (email justification attached). He also accused the PM of misconduct; his allegation was reviewed by the group manager and determined to be unfounded.**

    **He was assigned to be the peer review for the electrical design work on the NIIP job. A complaint was made regarding his performance and conduct related to his interactions with the project manager, Rafal Jankowski, by the group manager Patrick Dawson (email dated May 21, 2020 attached) . Complainant was removed from his role after over-stepping his assigned role as peer reviewer and demanding an arc flash analysis be completed prior to the work for this job being completed (email dated May 15, 2020, from Mr. Boggess is attached).**

2

(Initials)

5. Did Complainant address his concerns with you regarding this issue?
   A. No


6. Did Complainant speak to anyone else in management regarding this issue?
   A. No

7. Complainant believes these events were harassment because of his age. Please respond.
   A. **His removal from these projects was was related to conduct and performance issues; it had nothing to do his age.**

8. Do you believe Complainant was treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding these events? If so, how and who?
   A. No

9. Is there anything you would like to add to this event?
   A. No

   **3. Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on unspecified dates between July 23, 2019 and May 22, 2020, the agency did not assign him project manager authority to the follow projects:**
   **a. Cle Elum Gate Hoist Construction Support (CEGHI)**
   **b. Shasta Dam Crest Road Vehicle Barrier Constructions Support (SDCRV)**

10. Do you have any firsthand knowledge of this alleged event? If so, please explain.
    A. **I have no knowledge related to the Cle Elum project. I was made aware of the issues with the Shasta Dam project by the group manager after the fact. It is my understanding when the construction support work of the civil word was completed, Al Bernstein asked for someone from the electrical Design group take over PM responsibilities to complete the remaining electrical work. Mr. Boggess assigned Luke Buchholz to the PM role.**

11. Was Complainant offered to be the PM for these projects?
    A. No

12. If not, why wasn't he offered the opportunity to serve as PM on these projects?
    A. **These two specific jobs were led by different groups at TSC; the group lead from those groups assigned the PM.**

13. Complainant alleges Al Bernstein recommended that he be assigned as PM for the Shasta Dam project. What is your role in, or knowledge of this event?
    A. **I was not aware of this until after the fact.**

3

_bm_
(Initials)

14. Who was assigned as PM to the Shasta Dam project?

A. **I was originally Lisa Ogren, who works in Mr. Bernstein's group however, once their portion of the project was complete, he asked for someone from the Electrical group be assigned to complete the remaining Electrical work. Mr. Boggess assigned Mr. Buchholtz to complete the project.**

15. Why was that individual assigned as PM?

A. **At the time, Complainant had accused BOR staff of incompetence and also accused the contractor of misrepresentation and deceptive practices; he also filed a complaint with the Inspector General. Additionally, Complainant was scheduled to be assigned to a 90-day rotation to another group, but it was later delayed due to the COVID19 pandemic resulting in the use of maximum telework schedules by BOR.**

16. Did Complainant send you an email addressing his concerns regarding not being assigned as PM to these projects? If so, what did he say? What was your response?

A. **He sent me an email related his concerns and the alleged misconduct going on with the project, but he did not address his concerns about not being the PM.**

17. Did Complainant speak to anyone else in management regarding his concerns? If so, who? When?

A. **No**

18. Complainant believes these events were discrimination because of his age. Please respond.

A. **I do not agree.**

19. Do you believe Complainant was treated differently, or less favorably, than similarly situated staff (same position title, series, grade, and under the same supervisor) regarding these events? If so, how and who?

A. **No**

20. Is there anything you would like to add to this event?

A. **No**

**4. Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on or about January 7, 2020, he was not selected for an Electrical Engineer position advertised under the follow vacancy announcement numbers:**

a. **BR-DO-2019-193 (MPP-BM)**
b. **BR-DO-2019-194 (DEU-BM)**
c. **BR-DO-2019-195 (MPP-BM)**
d. **BR-DO-2019-196 (DEU-BM)**

21. What was your role in or knowledge of how this position was filled?

A. **I recommended an independent panel outside of the Electrical Design groups be assigned to review the applications and conduct panel interviews in order to ensure there could be no questions as to whether the process was fair and equitable.**

4


(Initials)

22. Please explain the process of how the position was advertised and the process used to prepare the lists of eligible for consideration.

**A. The group managers worked with HR to create the vacancy announcements to post the positions both internally and externally.**

23. Who requested the position be filled?

**A. Eric Mendlin for the non-SCDA position and Mr. Boggess for the SCADA position.**

24. How many positions were advertised?

**A. I believe four, two for each group.**

25. What were the opening and closing dates of the announcements?

**A. I do not have that exact information.**

26. How many lists were generated?

**A. I do not have that information; I know there was an A list and B list based on how applicants scored, with the highest scoring applicants on the A list. I believe there were a total of five applicants.**

27. How many names were on each list?

**A. I do not know.**

28. Which list was Complainant's name on?

**A. He was not in the BQ or A list for either the SCADA or non-SCADA; he was included on the B list.**

29. Were interviews conducted for the positions?

**A. Yes, the independent panel conducted interviews for both positions.**

30. If so, who determined who would be interviewed for the position?

**A. Nate Myers, Toby Steves, Kyle Clair, Asley Hannigan, and Ben Few.**

31. What information did they review when considering which applicants to interview?

**A. The panel decided to interview all applicants from both the A and B lists in order to give all of those applicants opportunity to be considered.**

32. How many people were interviewed for the positions?

**A. I believe five, but I am not sure.**

33. Was Complainant interviewed?

**A. Yes; he was interviewed for both the SCADA and non-SCADA position.**

34. When were the interviews conducted?

**A. I do not know.**

_bm_
(Initials)

35. Where were they conducted?
    A. **I am not sure.**

36. Who sat on the interview panels? Name and title.
    A. **The panel for the SCADA position consisted of Mr. Myers, Electrical Engineer, GS-14; Toby Steves, Electrical Engineer, GS-13; and Kyle Clair, Electrical Engineer, GS-13. The panel for the non-SCADA position consisted of Mr. Myers; Ashley Hannigan, Electrical Engineer, GS-13; and, Mr. Few, Electrical Engineer, GS-13.**

37. Was there a chairperson of the panel? If yes, who?
    A. **Yes, Mr. Myers served as chairperson for both panels.**

38. Do you know how the interview process was conducted? If so, please explain.
    A. **Each candidate was interviewed in person and asked the same questions from a prepared list.**

39. What kind of questions were asked?
    A. **Electrical Engineer questions based on SCADA and other electrical design equipment questions which were used in previous interviews for GS-12 and Gs-13 Electrical Engineers.**

40. Were the same questions asked of each individual? Do you have a copy?
    A. **Yes; I do not have a copy however Mr. Myers may have one.**

41. Were the interviews scored?
    A. **Yes; points were assigned by each panel member based on the candidate responses. Mr. Myers should have copies of the score sheets.**

42. Who was the selecting official?
    A. **Mr. Boggess and Mr. Mendlen**

43. When were the selections made?
    A. **Shortly after the interviews**

44. Who was selected for the positions?
    A. **Luke Buchholtz and Chris Purdy were selected for the SCADA positions. The non-SCADA panel did not believe any of the candidates were qualified to complete the duties of the position at the GS-12 level.**

45. What was the ages of the persons selected?
    A. **I do not know. If I were to guess, I'd say 30s**

46. Were these selections made in accordance with your agency's policies and procedures? If so, which one (name and number).
    A. **I believe so, we worked with HR throughout the whole process. I do not know the policy name and number.**

6


(Initials)

47. Were references checked on these applicants? All or just the two?
    **A. I there was a reference check conducted on Mr. Purdy because he was an outside applicant.**

48. Complainant believes he was more qualified and had many more years of experience in this same job than either of the two persons selected. Can you speak to his belief?
    **A. He has more years in the electrical engineering field, but he did not articulate his experience in his application or the interview process.**

49. Was Complainant notified of his non-selection? If yes, when?
    **A. Yes; I do not know when.**

50. Complainant believes he was not selected for this position because of his age. What is your response to that?
    **A. I do not agree with his belief. I recommended for the panel to interview the A and B lists to ensure Complainant was afforded a fair opportunity to be considered for the position.**

51. He also believes the selections were motivated not by qualifications but because of age. Response? Is this information available during the application process?
    **A. I do not agree with his belief. I do not know if the applicant ages were available to the interview panel.**

52. Complainant alleges prior to these announcements, the position required the selectee be registered as a Professional Engineer however, that requirement was removed. Please respond.
    **A. That is untrue; the Electrical Engineers assigned to the TSC are not required to have a PE in order to promote the the GS-12 level. This has been a longstanding practice since the early 2000s. I did send an email to the TSC to clarify why a PE was not required for the GS-12 level.**

53. Complainant alleges the Agency shows favoritism towards younger employees. Please respond.
    **A. I do not agree with that allegation. The selections were based on performance and technical expertise displayed in the applications and during the interviews. All Agency personnel actions are based on the same criteria.**

54. Is there anything you believe is relevant to this investigation that I have not asked you about during this interview?
    **A. Complainant sent me an email alleging the interview process was biased towards certain applicants. I responded to his concerns stating the panel was impartial and the questions asked during the panel interview have been used in prior vacancy announcements. There are on-going internal investigations being conducted by ERLR regarding conduct issues.**

7

_BM_
(Initials)

55. Is there anything you would like to add to your statement?
    A. No

56. May I contact you if I have additional questions?
    A. Yes

I have reviewed this statement, which consists of eleven (11) pages, and hereby solemnly swear that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

_____          _8/25/20_
Signature of Affiant                      Date

8

_Bwy_
(Initials)

| | |
|---|---|
| **From:** | McStraw, William D |
| **Sent:** | Friday, January 31, 2020 7:23 AM |
| **To:** | BOR DRO TSC8430; BOR DRO TSC8440; BOR DRO TSC8450; BOR DRO TSC8460 |
| **Cc:** | Mendlin, Eric T; Dawson, Patrick K; Stephen, Ryan D; Holmes, Jill R; Myers, Nathan E; Boggess, Jay S; Pierce, Rona L |
| **Subject:** | PE Requirements for GS-12 Electrical Engineers in the TSC |

It was recently reported to me that several of the electrical engineers were not aware that a GS-12 position for an electrical engineer position in the 8400 Division of the Technical Service Center does not always require a Professional Engineer registration. This email is being sent to all electrical engineers in the 8400 division in an attempt to dispel any rumors, and to clarify and make everyone aware of this.

Details of the requirements for Professional Engineering registration (PE) are outlined in Directives and Standards HRM 05-01, "Professional Registration for Engineers, Land Surveyors, Landscape Architects, and Architects" dated 04/06/2018.

A little background on how this exception for electrical engineer positions in the TSC evolved. Prior to the special rate salary for engineers that was implemented several years ago, the Bureau of Reclamation was having difficulty in the hiring and retention of electrical engineers due to the large pay discrepancy that was being offered in private industry and other government agencies that did not have a requirement for a PE for the GS-12 grade. In an effort to hire and retain qualified electrical engineers for Reclamation, the PE requirement for certain GS-12 electrical engineer positions was no longer required and that policy is still currently in effect.

HRM 05-01 specifically states, "Managers and Supervisors are responsible for determining, in conjunction with their servicing HR office, whether a position requires professional registration after comparing the duties of the position to the requirements of Directives and Standards HRM 05-01".

A position that requires a PE is identified as a "designated position", and these positions will specifically state that a PE is required in the position description. If a position is being advertised the vacancy announcement will also state that a PE is required, a PE will be used as a selective placement factor, and a copy of the PE registration is required to be provided in order to be eligible for the position.

In the Technical Service Center, a PE is required for any position that requires responsibility for "Technical Approval" of drawings, technical documents, memoranda, or construction documents. This responsibility is inherent in the position classification. For an electrical engineer in the Technical Service Center 8400 division, a PE is required to be a GS-13 and sign engineering documents and drawings "Technically Approved". In some cases, a PE will be required for a GS-12 electrical engineer position whose duties include peer review and technical approval of studies, analysis and other engineering documents and decisions that affect the life, health, property, and welfare of the public.

In summary, in most cases a PE is not required for a GS-12 electrical engineer position in the TSC, however, if a PE is required for a GS-12 electrical engineer "designated position" it will be included in the position description and the vacancy announcement for any open positions. It is strongly encouraged that PE registration be obtained which will benefit the TSC (more qualified technical approvers) and will enhance the career opportunities and potential promotions for those individuals with PE registration credentials.

Thank you and let me know if you have any additional questions.

1

Bill McStraw, Chief

Electrical and Mechanical Engineering Division

Technical Service Center

**Boggess, Jay S**

| | |
|---|---|
| **From:** | Boggess, Jay S |
| **Sent:** | Friday, May 15, 2020 4:10 PM |
| **To:** | Hamann, Daniel (Dan) W |
| **Subject:** | RE: NIIP (UC684) - Request of Info |

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | Hamann, Daniel (Dan) W | Read: 5/18/2020 6:36 AM |
| | Pierce, Rona L | Read: 5/16/2020 4:48 AM |
| | Dawson, Patrick K | Read: 5/15/2020 4:12 PM |
| | McStraw, William D | Read: 5/15/2020 4:11 PM |

Dan - please stop work on NIIP for the time being.  Patrick and I are evaluating where we are.  You were assigned as peer reviewer of 8430 electrical work for the NIIP
HVAC project and not as the lead electrical.

Jay Boggess
Manager, Electrical Controls Group

1

**From:** McStraw, William D <WMcstraw@usbr.gov>
**Sent:** Thursday, July 16, 2020 3:12 PM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>; Boggess, Jay S <jboggess@usbr.gov>
**Cc:** Mendlin, Eric T <emendlin@usbr.gov>; Pierce, Rona L <rpierce@usbr.gov>
**Subject:** RE: LNFH Sharepoint and specs and drawings

Dan,

Eric Mendlin has been assigned to replace you as the technical approver for the Leavenworth National Fish Hatchery project to ensure that the work for this project meets the deadline for the SPEC B date of July 27, 2020. The internal deadline of July 10, 2020 for delivery of completed specifications and drawings to Sharepoint was missed. By July 15, 2020, Jay Boggess did not see adequate progress on the specifications that you were responsible for and was justified in his decision to reassign the technical approver responsibilities.

In response to your claim of violations of FAC 03-03 by replacing you as the technical approver for this job:
Eric Mendlin more than meets the criteria you cited from FAC 03-03 regarding the technical approval role. Eric is the manager for Kasey Nunes, who has been working on the Revit modeling and performing the roles as the designer and draftsman for the drawings for Leavenworth. Eric helped develop the TBE for this project and has been following the progress of this project over the past year as the supervisor of Kasey Nunes.

In June, Eric Mendlin reviewed the SpecD package to review the project status and provide comments to Kasey and to you. Eric found some technical items that needed to be corrected and also participated in a meeting with yourself, Kasey, and Jay to discuss the project status and the engine generator back up power configuration. Eric recommended two ways to provide backup power to the loads and one of his configurations was implemented by Kasey. Eric Mendlin worked directly with Kasey on the technical details so that the drawings could be updated accordingly. Eric also provided a specification section to you for the double throw disconnect switch. Following Kasey's edits, Eric reviewed the drawings for technical purposes and provided comments on the conductor sizing and equipment on the drawings. The single line diagram and electrical design of the project has changed since SpecD and Eric has been involved with directing Kasey on the new design.
Based on these factors, Eric Mendlin qualifies as the technical approver and meets the requirements for FAC 03-03 you stated in your email message (referenced below) as a responsible charge and has been intimately involved with the preparation of the design and drawings and providing supervisory direction and control authority in his role as the group manager.:
*"The individual assuming this responsibility shall have been in responsible charge and intimately involved in the preparation of the design and the drawing. The individual must be familiar with the basic data, criteria, and procedures used to develop the results shown on the drawing."*

From Section 12-25-102(14), C.R.S (emphasis added):
*"Responsible charge" of engineering shall mean that degree of control an engineer is required to maintain over engineering decisions made personally or by others **over which the engineer exercises supervisory direction and control authority**.*

In conclusion, Eric Mendlin's assignment to be the technical approver for the Leavenworth job does not violate any of the requirements of the FAC 03-03.

**From:** Hamann, Daniel (Dan) W.
**To:** McStraw, William D; LaFond, Richard W
**Cc:** Mendlin, Eric T; Pierce, Rona L; Boggess, Jay S
**Subject:** RE: LNFH Sharepoint and specs and drawings
**Date:** Friday, July 17, 2020 8:00:02 AM
**Attachments:** ResourceLoading2.pdf

Bill - Eric Mendlin does not qualify as technical approver for this project. Eric Mendlin was NOT intimately involved in the preparation of the design and the drawing. He is NOT intimately familiar with the basic data, criteria, and procedures used to develop the results shown on the drawing. He has too many projects under his purview where that would even be possible. It can't even be a realistic expectation. That is why FAC 03-03 does not require peer reviewers to have that depth of knowledge. So, to make that statement that he qualifies as a TA is absurd.

However, I was intimately involved in the design of the project. The proof is empirical. If one looks at my calendar, and looks at the numerous emails, and the fact that I sat through numerous meetings, where Eric was not present, it becomes evident that I had intimate knowledge of the design intent.

Yes, the internal deadline of July 10, 2020 for delivery of completed specifications and drawings to SharePoint was missed. The TASPEC deadline was also missed.

**This was due entirely to the failure of the 8430 and 8460 supervisors to allocate adequate resources to the project early on. I don't have that authority..**

The attached schedule shows the amount of resources that was needed to complete the work. Thus, it may be true Jay Boggess did not see adequate progress on the specifications for which I was ostensibly responsible. But assigning a massively excessive workload to a single individual, that is not realistic, and then stating that the individual could not meet that schedule, is unethical. Restated, allowing a small fraction of time required to complete the work and demanding an employee complete that work in that duration is abuse.

**Thus, the aforementioned has all the appearances that the real intent has been to shift blame to me, for the failure of the supervisors to adequately staff the project. This is highly unethical.**

It is also a false statement that Eric helped prepare the TBE. The TBE was prepared by myself and Lisa Gentry. Eric did the peer review.

I met with Kasey Nunes over the course of months regarding the Revit modeling. He did not prosecute the work in a manner that allowed the project to move forward even though the design intent was clarified by me as the TA. There are instances where Kasey did not even respond to invites. It was not always clear if he was going to participate. Often times during meetings, he didn't even appear to be listening.

The Revit model was not coordinated with the rest of the team. The MEP model was supposed to be linked into the coordination model. I discovered this by contacting Gabriel Ledezma. I facilitated that process.

The MEP model was not accessible on numerous occasions. I documented all of this thoroughly in my notes including screenshots. I made copies of the Revit models as they existed in time. Even today, the MEP model has corrupted links inside. Thus, the Revit model was not maintained properly. The level of design in the Revit model is scant at best.

It is not true that Eric found technical items that needed to be corrected. The technical issue was load shedding. Eric presented a method that compromised life safety. Eric finally agreed to my design approach which involved using a separate panelboard.

This is also testament that Eric does not qualify as the TA. He does not have intimate knowledge of the design intent. He does not have intimate knowledge, as I do, of the desires of the end user, which was the future potential to put new loads on the system. And new loads are always added. Thus, it's incumbent upon registered professional engineers to build life safety into their designs. This is the essence of the model engineering code. Eric missed this because he did not have the same intimate knowledge of the design intent as I did.

As far as Eric providing a question to me for the double throw disconnect switch, there is nothing to suggest that this rendered my design as inadequate. It simply achieved the same thing in a different manner. As TA, I had responsible charge, and thus, made that decision, which is afforded to me as TA under FAC 03-03. To assume, that there was something inadequate in the design schema I was proposing, is false.

Unfortunately, what has been demonstrated in the course of the development of this project is simply part of a larger dynamic.

During the tenure of my employment at BOR, there has been an ongoing effort to marginalize my character, based on false statements and narratives based on fabrications. This is tantamount to defamation. I don't make these statements lightly. All of the empirical evidence exists to verify what I have said.

This type of behavior, and this type of activity, by management is a violation of the General Principles of Ethical Conduct under 5 C.F.R §2635.101 (b). Thus, under item 11 under those principles, I am reporting this to authorities in the chain of command, as abuse. I will allow the TSC a limited amount of time to resolve this matter before proceeding up the chain of command.

It is a perpetuation of behavior that is documented in empirical evidence since the day I started working at BOR.

On the issue of signatories on design documents, it is widely known, and accepted in the TSC, that signatures are often placed, only for the sake of signing. I know this for a fact, because I was asked to sign a document I never prepared, and I refused. When the deadlines are impending, management puts extreme pressure on designers, who, by way of a intimidation, will put out marginal work and/or sign it, so as to lose favor. I am certain today, that I could get the testimony of many individuals who have found themselves in this position. This is highly unethical. To bring the point home, nearly every designer I talk to has never even seen the FAC 03-03. But having signed and sealed documents with my own seal, I am keenly aware of what that seal and signature stand for.

So strongly do I believe that this abuse and corruption exists that I am preparing civil actions at this time. I would not present anything to the courts for which I did not have valid evidence, or any evidence that can be exposed through discovery. FOIA statements I have issued and received responses to, also validate the evidence.

The deleterious effect that this has on the individual, who is on the receiving end of this, is devastating. I also make these statements based on guidance from professionals. The effect of personal injury and financial loss is extensive.

All correspondence, such as this email, is official correspondence, and subject to discovery. Through this email, I am establishing that the TSC management, and HR, have been made aware of the underlying dynamics of what has actually transpired, as opposed to the narratives that have been presented. – Dan

**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819
**Telework:** Everyday until restrictions are lifted. Office phone forwarded to home phone.
**Location:** Working from home until restrictions are lifted.

**Boggess, Jay S**

| | |
|---|---|
| **From:** | Perkes, Kent W A |
| **Sent:** | Thursday, March 5, 2020 10:39 AM |
| **To:** | Hamann, Daniel (Dan) W; Giles, Madelyn L |
| **Cc:** | Gee, Robert W; Boggess, Jay S; Aguirre, Gabriel; Orgren, Lisa F; Bernstein, Alfred I; Holmes, Stephen M; DERK, DAVID B; Celik, Erim; Cabral, John L |
| **Subject:** | Re: RFI 5, Contractor comment |

Dan,

Thanks for letting us know where you are coming from.

Kent Perkes
Office Engineering Division Chief
Mid-Pacific Construction Office
1140 W. Wood Street
Willows, CA 95988
(530) 892-6259
kperkes@usbr.gov

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Thursday, March 5, 2020 9:23 AM
**To:** Perkes, Kent W A <KPerkes@usbr.gov>; Giles, Madelyn L <mgiles@usbr.gov>
**Cc:** Gee, Robert W <RGee@usbr.gov>; Boggess, Jay S <jboggess@usbr.gov>; Aguirre, Gabriel <gaguirre@usbr.gov>; Orgren, Lisa F <lorgren@usbr.gov>; Bernstein, Alfred I <abernstein@usbr.gov>; Holmes, Stephen M <SHolmes@usbr.gov>; DERK, DAVID B <DDerk@usbr.gov>; Celik, Erim <ecelik@usbr.gov>; Cabral, John L <jcabral@usbr.gov>
**Subject:** RE: RFI 5, Contractor comment

Kent – Answer is as follow:

The intro to the principles starts with:

> *The following general principles apply to every employee.*

So, regardless of position the principles apply. Item 5:

> *5. Employees shall put forth honest effort in the performance of their duties.*

To that end, it is my opinion an honest effort would involve preparing for a meeting by becoming familiar with the subject matter of the meeting. Item 11:

> *Employees shall disclose waste, fraud, abuse, and corruption to the appropriate authorities.*

In the context of participating in meetings, it is a waste of time to others, if we are having to discuss aspects of the contract, that should be intimately familiar to all. Going back to the intro:

> *Where a situation is not covered by the standards set forth in this part, employees shall apply the principles set forth in this section in determining whether their conduct is proper.*

To that end, I have applied the principles set forth in this section to determine whether my own conduct is proper. By pointing out the inefficiencies of conducting meetings, such as the meeting yesterday, I believe my conduct is proper. I didn't curse in my statement, I didn't use any ad hominin statements about anyone's character, nor did I mince words. I simply stated my opinion, directly and to the point.

So … I'm curious … where's the hostile language? Here is my statement:

1

*Also, it is my opinion, that anyone who participates in a meeting, addressing these issues, as we did yesterday, should be intimately familiar with the specifications and drawings. Although we are all capable of reading and interpreting contract documents, such was not the case*

Parsing:

*… anyone who participates in a meeting, addressing these issues, as we did yesterday, should be intimately familiar with the specifications and drawings*

Is that a hostile statement? No. It is an opinion rendered for the sake of having more efficient meetings. And to that end, I quote <u>Merit Systems Principle #5</u>:

*(5)The Federal work force should be used efficiently and effectively.*

That's not an opinion: that is codified into federal law. Continuing with the second part of my statement:

*… we are all capable of reading and interpreting contract documents, such was not the case.*

Is that hostile? No That is a statement of fact. And believe it or not, <u>the basic act of reading contract documents, is something that is often remiss.</u>

So, please tell me. Where is the hostility? It would be quite a stretch, of any interpretation, to state that there is any hostility in that statement.

Finally, there is a construction contract that is being executed that involves a contractor who is badly in breach. Time is of the essence. To ensure that taxpayers money and government resources are not wasted, statements must be direct, and to the point, to bring this matter to a head. I'm perhaps more intimately acquainted with this project than any other person in Reclamation. It is incumbent upon me to bring these issues forth - Dan

---

**From:** Perkes, Kent W A <KPerkes@usbr.gov>
**Sent:** Thursday, March 5, 2020 9:38 AM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>; Giles, Madelyn L <mgiles@usbr.gov>
**Cc:** Gee, Robert W <RGee@usbr.gov>; Boggess, Jay S <jboggess@usbr.gov>; Aguirre, Gabriel <gaguirre@usbr.gov>; Orgren, Lisa F <lorgren@usbr.gov>; Bernstein, Alfred I <abernstein@usbr.gov>; Holmes, Stephen M <SHolmes@usbr.gov>; DERK, DAVID B <DDerk@usbr.gov>; Celik, Erim <ecelik@usbr.gov>; Cabral, John L <jcabral@usbr.gov>
**Subject:** Re: RFI 5, Contractor comment

Dan,

Which of the 14 principles are you referring to in this case?

Kent Perkes
Office Engineering Division Chief
Mid-Pacific Construction Office
1140 W. Wood Street
Willows, CA 95988
(530) 892-6259
kperkes@usbr.gov

---

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Thursday, March 5, 2020 8:22 AM
**To:** Giles, Madelyn L <mgiles@usbr.gov>
**Cc:** Gee, Robert W <RGee@usbr.gov>; Boggess, Jay S <jboggess@usbr.gov>; Aguirre, Gabriel <gaguirre@usbr.gov>; Orgren, Lisa F <lorgren@usbr.gov>; Bernstein, Alfred I <abernstein@usbr.gov>; Holmes, Stephen M <SHolmes@usbr.gov>; Perkes, Kent W A <KPerkes@usbr.gov>; DERK, DAVID B <DDerk@usbr.gov>; Celik, Erim

2

<ecelik@usbr.gov>; Cabral, John L <jcabral@usbr.gov>
**Subject:** RE: RFI 5, Contractor comment

Madelyn - Hostile? What language is hostile? I'm stating an opinion. Meeting aren't productive if we are having to review information. If one participates in a meeting, it is a <u>reasonable expectation</u> that all parties who contribute are familiar with the subject matter under discussion.

And to that end, I am simply trying to adhere to the *14 General Principles of Ethical Conduct* [5 C.F.R §2635.101 (b)]. (Attached) – Dan

**From:** Giles, Madelyn L <mgiles@usbr.gov>
**Sent:** Thursday, March 5, 2020 8:55 AM
**To:** Gee, Robert W <RGee@usbr.gov>; Hamann, Daniel (Dan) W <dhamann@usbr.gov>; Boggess, Jay S <jboggess@usbr.gov>; Aguirre, Gabriel <gaguirre@usbr.gov>; Orgren, Lisa F <lorgren@usbr.gov>; Bernstein, Alfred I <abernstein@usbr.gov>; Holmes, Stephen M <SHolmes@usbr.gov>; Perkes, Kent W A <KPerkes@usbr.gov>; DERK, DAVID B <DDerk@usbr.gov>; Celik, Erim <ecelik@usbr.gov>; Cabral, John L <jcabral@usbr.gov>
**Subject:** Re: RFI 5, Contractor comment

I am sensing real hostility in the following from Dan's email:

*"Also, it is my opinion, that anyone who participates in a meeting, addressing these issues, as we did yesterday, should be <u>intimately familiar</u> with the specifications and drawings. Although we are all capable of reading and interpreting contract documents, such was not the case."*

Madelyn Giles
Contracts Manager/Civil Engineer
Willows Construction Office
1140 W. Wood Street
Willows, CA 95988
(530) 892-6231
mgiles@usbr.gov

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Thursday, March 5, 2020 6:51 AM
**To:** Aguirre, Gabriel <gaguirre@usbr.gov>
**Cc:** Giles, Madelyn L <mgiles@usbr.gov>; Orgren, Lisa F <lorgren@usbr.gov>; Gee, Robert W <RGee@usbr.gov>; Boggess, Jay S <jboggess@usbr.gov>; Bernstein, Alfred I <abernstein@usbr.gov>
**Subject:** RE: RFI 5, Contractor comment

Thanks, Gabriel. I will do a review of the specifications and the drawings, assimilate specific references, to show where the language is in the contract documents, for each of the issues below. I feel certain the language, drawings, images, et al, are all there, especially considering the number of reviews that the specifications and drawings went through. To-wit:

- Peer Review.
- ReviewC.
- Assimilation of drawings and specifications by the spec writer.
- Bidding on the project and execution of the contract.

There was plenty of opportunity to address ambiguity, by multiple parties – from designer to contractor.

3

Rather, it is obvious the contractor simply has not read the specifications, much less, become familiarized with the contract documents at large. Worse, the contractor appears to have misrepresented themselves as being qualified AMAG installers and resellers. To that end, the contractor simply wants to rewrite the contract to suit their needs and qualifications. **Misrepresentation to the federal government is a very serious matter**.

In my opinion, this is not an issue of errors and omissions. **It is more likely to be a matter of non-performance and deceptive practices by the contractor.**

Also, it is my opinion, that anyone who participates in a meeting, addressing these issues, as we did yesterday, should be intimately familiar with the specifications and drawings. Although we are all capable of reading and interpreting contract documents, such was not the case.

I am working on this task this morning and will have it done ASAP. – Dan

**From:** Aguirre, Gabriel <gaguirre@usbr.gov>
**Sent:** Wednesday, March 4, 2020 6:04 PM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Cc:** Giles, Madelyn L <mgiles@usbr.gov>; Orgren, Lisa F <lorgren@usbr.gov>; Gee, Robert W <RGee@usbr.gov>
**Subject:** Re: RFI 5, Contractor comment

Hi Dan,

I would like to summarize the work associated with the control panel:

The pushbuttons on the control panel will interface with an AMAG I/O card. It may be that we have spare I/O on our existing I/O cards, or it may be that the contractor will have to purchase an additional I/O card. Either way, the software has to be programmed with the functions of the new I/O.

Also, if the control room in the 6th floor of the powerplant is going to be able to disable the control panel in the guard house, then some modifications will have to be made in the control room. Those modifications will most likely be an additional pushbutton in the control room, which will be an additional I/O, as well as a change to the HMI the security guards use to interface with the system. Again, this will be additional programming and possibly additional hardware.

I am just trying to anticipate what the contractor will have to do versus what we will have to do. Am I correct in assuming that we are pushing for the contractor to be responsible for all the hardware as well as all the programming? Because if that is not the case, then I need to start rounding up resources. I have not made any inquiries about purchasing hardware, and although the programming may be easy, our IT department should be given a heads-up on what to expect.

Thanks,
Gabriel


Gabriel Aguirre
Electrical Engineer
US Bureau of Reclamation
Northern California Area Office
16349 Shasta Dam Blvd

4

Shasta Lake City, CA 96019
530-247-8627

**From:** Giles, Madelyn L <mgiles@usbr.gov>
**Sent:** Wednesday, March 4, 2020 1:35 PM
**To:** Orgren, Lisa F <lorgren@usbr.gov>; Hamann, Daniel (Dan) W <dhamann@usbr.gov>; DERK, DAVID B <DDerk@usbr.gov>; Cabral, John L <jcabral@usbr.gov>; Aguirre, Gabriel <gaguirre@usbr.gov>; Boggess, Jay S <jboggess@usbr.gov>; Perkes, Kent W A <KPerkes@usbr.gov>; Celik, Erim <ecelik@usbr.gov>; Gee, Robert W <RGee@usbr.gov>; Holmes, Stephen M <SHolmes@usbr.gov>; Bernstein, Alfred I <abernstein@usbr.gov>
**Subject:** Re: RFI 5, Contractor comment

Thank you Lisa. The layout you attached helped me see the locations of the card readers, and I agree with removing that part of the response.

Also, thank you for the additional information you included in your email. It will be helpful.

Madelyn Giles
Contracts Manager/Civil Engineer
Willows Construction Office
1140 W. Wood Street
Willows, CA 95988
(530) 892-6231
mgiles@usbr.gov

**From:** Orgren, Lisa F <lorgren@usbr.gov>
**Sent:** Wednesday, March 4, 2020 1:24 PM
**To:** Giles, Madelyn L <mgiles@usbr.gov>; Hamann, Daniel (Dan) W <dhamann@usbr.gov>; DERK, DAVID B <DDerk@usbr.gov>; Cabral, John L <jcabral@usbr.gov>; Aguirre, Gabriel <gaguirre@usbr.gov>; Boggess, Jay S <jboggess@usbr.gov>; Perkes, Kent W A <KPerkes@usbr.gov>; Celik, Erim <ecelik@usbr.gov>; Gee, Robert W <RGee@usbr.gov>; Holmes, Stephen M <SHolmes@usbr.gov>; Bernstein, Alfred I <abernstein@usbr.gov>
**Subject:** RE: RFI 5, Contractor comment

Hi Madelyn,

I agree with the revised response to RFI 2 minus the statement that the card readers are adjacent to the guard houses (see my attached edit). Two of the card readers are farther down the road from the guard houses (see the existing layout shown in 214-D-60005, also attached).

I also agree that we could have been more specific in the specifications to say that the control panels needed to go inside the guard houses. However, in case we need to strengthen our position on the specs as they are written, the specs are consistent with using the words "card reader" to mean the controls at the card readers, and "control panels" to mean the controls inside the guard house. I also think the fact that the card readers are not all located at the guard houses could make anything "at" the guard house imply something other than the card readers.

Please let me know if you have any additional questions.

Thanks,
Lisa

5

**From:** Giles, Madelyn L <mgiles@usbr.gov>
**Sent:** Wednesday, March 4, 2020 2:01 PM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>; DERK, DAVID B <DDerk@usbr.gov>; Cabral, John L <jcabral@usbr.gov>; Aguirre, Gabriel <gaguirre@usbr.gov>; Orgren, Lisa F <lorgren@usbr.gov>; Boggess, Jay S <jboggess@usbr.gov>; Perkes, Kent W A <KPerkes@usbr.gov>; Celik, Erim <ecelik@usbr.gov>; Gee, Robert W <RGee@usbr.gov>; Holmes, Stephen M <SHolmes@usbr.gov>; Bernstein, Alfred I <abernstein@usbr.gov>
**Subject:** Re: RFI 5, Contractor comment

Please review the attached draft revised response to RFI 02 and comment accordingly by COB today Wed. 3/4/20. I need to get it to the contractor ASAP before the meeting tomorrow at 10:00am.

Spec Section 01 11 00 1.02 G. says "Furnish and install control panel **'at'** Guard Houses" not 'in', and Spec Section 01 86 26 1.02 A. says "A control panel located **'at'** each of the guard houses will allow the guards to open and close gates".

I don't see where it says to install "in" the guard house.

*Madelyn Giles*
*Contracts Manager/Civil Engineer*
*Willows Construction Office*
*1140 W. Wood Street*
*Willows, CA 95988*
*(530) 892-6231*
*mgiles@usbr.gov*


**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Wednesday, March 4, 2020 11:04 AM
**To:** Giles, Madelyn L <mgiles@usbr.gov>; DERK, DAVID B <DDerk@usbr.gov>; Cabral, John L <jcabral@usbr.gov>; Aguirre, Gabriel <gaguirre@usbr.gov>
**Subject:** RFI 5, Contractor comment


**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819 (forwarded)
**Telework:** Tue & Thu 6-2:30 | Call 2819 | Schedule may vary | See Calendar
**Location:** Denver Fed Cntr, Bldg 67, 11th Floor, Cube 11-110W 25007 Denver CO 80225.

6

**Boggess, Jay S**

| | |
|---|---|
| **From:** | Dawson, Patrick K |
| **Sent:** | Thursday, May 21, 2020 3:38 PM |
| **To:** | Boggess, Jay S |
| **Subject:** | RE: NIIP (UC684) - Request of Info |

Jay,

As a followup to this, on the call we had with the client this afternoon I had another concern raised. When discussing the arc flash study and as to whether it needed to be done prior to design (as Dan stated) or if it could be done after the fact, the client said, "I saw through what he (Dan) was trying to do. He was trying to get someone else to do the groundwork for him".

Seeing this is an 8410-lead project, as the GM of 8410, I have to say I am not comfortable with Dan continuing on this project. The clients comment's indicate a lack of trust and I have to look out for the best interest of the project.

Thanks and let me know if you would like to discuss further.

Patrick


**From:** Dawson, Patrick K
**Sent:** Friday, May 15, 2020 4:05 PM
**To:** Boggess, Jay S <JBoggess@usbr.gov>
**Subject:** RE: NIIP (UC684) - Request of Info

Jay, After our meeting with Dan and the NIIP team yesterday and carefully reviewing this email again, you and I should discuss what is being provided by Dan because I have serious concerns about it.

Thanks,

Patrick

**From:** Dawson, Patrick K
**Sent:** Thursday, May 14, 2020 11:01 AM
**To:** Boggess, Jay S <JBoggess@usbr.gov>
**Cc:** McStraw, William D <WMcstraw@usbr.gov>; Pierce, Rona L <rpierce@usbr.gov>
**Subject:** RE: NIIP (UC684) - Request of Info

Jay,

I unfortunately feel compelled by Dan's response to file a complaint with you on both his performance and his conduct. Below is my reasoning in response to specific verbiage he used, and I separated them by category:

Communication Issues: THe following content displays poor communication on behalf of Dan all of which are a detriment to the success of this project:

- *I will be bringing this matter to the attention of the Division Chief and HR. The cause of the problem is being obfuscated; I have seen it happen too many times at TSC.*
  - This is not relevant to the conversation and is inflammatory.

1

- *I have the sense that you would prefer to push the cause of the problem under the carpet. That's not going to happen on my clock.*
  - Incorrectly speculates on the actions of the PM. There is nothing to substantiate this. In fact, Rafal has given Dan and 8430 (as can be shown through many e-mails) the benefit of the doubt that this work is req'd.
- *Please save the innuendo on being professional. It distorts the matter.*

  - It appears that Dan perhaps does not understand what innuendo means. I cannot identify any innuendo in Rafal's communication, and his demeaning manner of communication displayed is not effective in progressing the project.

- *The justification was an error.*

  - Unclear what justification is being referenced. Poor communication


Project Management Issues: The following content displays poor project management on behalf of Dan all of which are a detriment to the success of this project:

- *We will proceed with the letter.*
  - The letter is addressed from you, not Dan, so he doesn't have the authority to give direction on this. If Rafal as the PM acted as directed by Dan it could cause substantial project issues if you did not agree with the content.
- *We will proceed with the TBE.*
  - As the project manager, Rafal has the authority to decide to correct path forward regarding change orders. Dan's role on this project is simply the Peer Reviewer for Adrian. This comment indicates he does not understand basic project roles.


In addition to issues with performance, Dan's e-mail also displays micro aggression towards Rafal that are inappropriate from a conduct standpoint:

- *"Weekly" additional work requests are avoided by exerting due diligence to do it right the first time.*
  - This insinuates that it was Rafal did not exert due diligence or did not "do it right the first time". Obviously, any potential content issues with the 8430 TBE are not a failing on Rafal's part as PM so this type of accusation is inappropriate.
- *Although you might be willing, I have no intention to take a "whipping" for being the messenger.*
  - The "although you might be willing" is an unnecessary accusation and could be offensive to the recipient.
- *Standing together as a group requires honesty and clarity. I have the sense that you would prefer to push the cause of the problem under the carpet. That's not going to happen on my clock.*
  - The inherent accusation is that Rafal is not operating with honesty and clarity. This is incorrect as displayed through numerous actions performed by Rafal, and is offensive.


This is not a one time thing, and I have witnessed similar behavior by Dan on other project. If Dan does not change his behavior after our 1100 meeting today, I respectfully request he be removed from this project.


Thanks and please feel free to followup with me.

2

Patrick Dawson, P.E.
Mechanical Equipment Group Manager
U.S. Bureau of Reclamation
Technical Service Center
PO Box 25007 (86-68410)
Denver, CO 80225
pdawson@usbr.gov
Phone: (303) 445-2310
Cell: (720) 514-3060

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Thursday, May 14, 2020 7:49 AM
**To:** Jankowski, Rafal M <rjankowski@usbr.gov>
**Cc:** Dawson, Patrick K <pdawson@usbr.gov>; Boggess, Jay S <jboggess@usbr.gov>; Santiago Alvarado, Adrian A <asantiagoalvarado@usbr.gov>; McStraw, William D <WMcstraw@usbr.gov>; Pierce, Rona L <rpierce@usbr.gov>
**Subject:** RE: NIIP (UC684) - Request of Info

Rafal – There are two issues in play:

1. Moving forward with the service agreement: It is a serious matter when a client is confronted with additional charges due to an internal error.

2. The reason for the error is in the original 8430 TBE: I will be bringing this matter to the attention of the Division Chief and HR. The cause of the problem is being obfuscated; I have seen it happen too many times at TSC.

The client's needs must be addressed **and** the source of the problem must be addressed. Response to your statements are as follows:

- Standing together as a group requires honesty and clarity. I have the sense that you would prefer to push the cause of the problem *under the carpet*. That's not going to happen on my clock.

- Please save the innuendo on being professional. It distorts the matter.

- The justification was an error.

- We will proceed with the letter.

- We will proceed with the TBE. As mentioned previously, the *additional* electrical design work can't be determined because the scope of the work described in the original TBE is ambiguous. The entire TBE needs to be redone. The additional time will be the difference.

- Although you might be willing, I have no intention to take a "whipping" for being the messenger.

- "Weekly" additional work requests are avoided by exerting due diligence to do it right the first time.

Hopefully that helps to clarify my position. – Dan

**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819
**Telework:** Everyday until restrictions are lifted. Office phone forwarded to home phone.
**Location:** Working from home until restrictions are lifted.

**From:** Jankowski, Rafal M <rjankowski@usbr.gov>
**Sent:** Wednesday, May 13, 2020 9:15 PM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Cc:** Dawson, Patrick K <pdawson@usbr.gov>; Boggess, Jay S <jboggess@usbr.gov>; Santiago Alvarado, Adrian A

3

<asantiagoalvarado@usbr.gov>
**Subject:** RE: NIIP (UC684) - Request of Info

Dan,

Thank you for the clarification. While I understand the issues with TBE, the Service Agreement was agreed upon and executed, so now we as a group need to stand behind it and collectively work to solve this problem.
In the eyes of the client we are the professionals who prepared the SOW and the cost. Therefore, if there is significant change order request, which looks like it is going to be, the least we can do is to provide justification to the client so the client can explain the reasons for the change order to BIA and all the parties can make an informed decision. TSC TBE issues are not the client or BIA's concern.
Per the client's request, I still would like to receive the official letter for the Arc Flash Study, which is separate from 8430 work. However, before sending the letter to the client I need to have all the info for any additional electrical work from 8430, so hopefully I am taking only "one whipping" and not surprising the client weekly with yet another additional work request. I hope this clarifies the situation.

Thank you.
Regards,

**Rafal Jankowski, PE, PMP, CEM**
Mechanical Engineer
Mechanical Equipment Group
Bureau of Reclamation, Technical Service Center
(P) 303.445.2852
(C) 720.541.3969
rjankowski@usbr.gov

Denver Federal Center
Building 67, Floor 11
PO Box 25007, 86-68410
Denver CO 80225-0007

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Wednesday, May 13, 2020 2:16 PM
**To:** Jankowski, Rafal M <rjankowski@usbr.gov>
**Cc:** Dawson, Patrick K <pdawson@usbr.gov>; Boggess, Jay S <jboggess@usbr.gov>; Santiago Alvarado, Adrian A <asantiagoalvarado@usbr.gov>
**Subject:** RE: NIIP (UC684) - Request of Info

Rafal –Adrian and I spent several hours looking at this situation this morning. Comments are as follows:

1. We have reviewed the 8430 TBE that was used to develop the PMP.

2. We have been unable to locate a peer reviewed copy although we did find peer reviewed copies for other disciplines.

3. Thus, the assumption is the TBE spreadsheet (path below) with all disciplines contains the 8430 TBE information (this matches ESAM: 28 SDs). See attached PDFs.

4. However, that TBE describes milestones and not tasks. The deliverables are not clearly delineated.

4

5. Since, we are not sure what deliverables were intended under the original TBE, and hence, can't determine what is *additional* work. However, we have compiled a list of potential missing design work from TBE, and that is attached.

6. Obviously, the current as-built information is inadequate. We do know at this point that it will be necessary to document existing conditions, which will require a site visit, and then the generation of documents that show the existing conditions, so a contractor could bid from the solicitation documents.

7. Thus, to state that there is a need to justify a change order is a mischaracterization. This is remedial work to fix omissions in a TBE that was used to generate a PMP. To-wit:

8. No time was allocated in the TBE to determine how power could be obtained for the new loads from existing medium voltage distribution system. This is an extensive task.

9. In your Wednesday, May 6, 2020 2:05 PM email, you requested an official letter. That draft has been prepared and has been passed off to Dianne Hochhalter. Is that letter still necessary? I hope so because it has consumed time.

TBEs should be done comprehensively. Clients shouldn't be getting surprises because of missed design scope. – Dan

Path to TBE spreadsheet:
**T:\Jobs\UC\G7.5 LA Pumping Plant\2019-PDC-HVAC Modernization\FIN\PM\PMP\**
Document title:
**NIIP Evap Coolers Project_PMP Budget - 2019-1106 for FY20to22.xlsm**

**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819
**Telework:** Everyday until restrictions are lifted. Office phone forwarded to home phone.
**Location:** Working from home until restrictions are lifted.

**From:** Jankowski, Rafal M <rjankowski@usbr.gov>
**Sent:** Tuesday, May 12, 2020 11:33 AM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>; Santiago Alvarado, Adrian A <asantiagoalvarado@usbr.gov>
**Cc:** Dawson, Patrick K <pdawson@usbr.gov>; Boggess, Jay S <jboggess@usbr.gov>
**Subject:** RE: NIIP (UC684) - Request of Info

Dan and Adrian,

As more electrical design work is needed, per info you provided, I need to reach out to the client with the estimate of the proposed change order, updated schedule, and justification of the change order. Please have internal discussion to make sure all the scope is included. Please provide the following:
1. Proposed and final additional scope of work
2. Staff days
3. Schedule
4. Justification of the change order

I would like to discuss the change order with Emma this week so I would need the above from you by COB this Thursday. In addition to the act flash study and now this proposed change order, I expect the change order to be a surprise to Emma. She will have to have conversation with BIA to explain the additional request so BIA can consider it and decide how to move forward.

Thank you.
Regards,

**Rafal Jankowski, PE, PMP, CEM**
Mechanical Engineer

5

Mechanical Equipment Group
Bureau of Reclamation, Technical Service Center
(P) 303.445.2852
(C) 720.541.3969
rjankowski@usbr.gov

Denver Federal Center
Building 67, Floor 11
PO Box 25007, 86-68410
Denver CO 80225-0007

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Monday, May 11, 2020 11:20 AM
**To:** Holmes, Jill R <JRHolmes@usbr.gov>; Jankowski, Rafal M <rjankowski@usbr.gov>
**Cc:** Santiago Alvarado, Adrian A <asantiagoalvarado@usbr.gov>; Hogg, Ryan S <rhogg@usbr.gov>
**Subject:** RE: NIIP (UC684) - Request of Info

Jill – The new work would include new 2400V feeder and breaker to a new 2400-480V transformer feeding new panelboard. Intuitively , the new load would be under 50HP but we would recommend at least 100HP (100kVA) capacity. (A new 50HP compressor can use half that.)

And, yes: we would request recommendations for the feeder breaker, transformer, relays, CTs, PTs. 8430 can provide a 480V panelboard spec. Hence, staff days should be included for that effort.

And yes: with respect to on-site safety personnel, I would recommend several staff days for Ryan (or whoever is trained and certified) so we can meet all the FIST 1-1 requirements.

Rafal - These little projects are the worst ones because there is tendency to think that they don't need much time. But they really do. This project is especially problematic because of the lack of manufacturer's as-builts. – Dan

**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819
**Telework:** Everyday until restrictions are lifted. Office phone forwarded to home phone.
**Location:** Working from home until restrictions are lifted.

**From:** Holmes, Jill R <JRHolmes@usbr.gov>
**Sent:** Monday, May 11, 2020 10:09 AM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>; Jankowski, Rafal M <rjankowski@usbr.gov>
**Cc:** Santiago Alvarado, Adrian A <asantiagoalvarado@usbr.gov>; Hogg, Ryan S <rhogg@usbr.gov>
**Subject:** RE: NIIP (UC684) - Request of Info

Rafal,

Dan is correct that he wouldn't want us developing his sketches. Having not done his work, we are likely to miss things that he needs. We can certainly share the pictures that we take and can be sure to take any additional pictures for him that he requests while we are on site collecting data. We will need as much equipment de-energized during our site visit, as possible so that we can collect all the necessary data throughout the facility. If a full plant outage is possible, that would be ideal.

Dan, I think 8440 should probably have some staff days on your cost estimate to assist with equipment recommendations for the breaker. Is there also a new transformer going in? Do you need recommendations from us for

6

that, as well? Are there any new relays, CTs, or PTs going in that you need recommendations from us for? We could also include some days for Ryan Hogg (8440) if you would like assistance from him regarding safety issues.

Thanks,
-Jill-

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Monday, May 11, 2020 9:57 AM
**To:** Jankowski, Rafal M <rjankowski@usbr.gov>; Holmes, Jill R <JRHolmes@usbr.gov>
**Cc:** Santiago Alvarado, Adrian A <asantiagoalvarado@usbr.gov>; Hogg, Ryan S <rhogg@usbr.gov>
**Subject:** RE: NIIP (UC684) - Request of Info

To that end, we would need field documentation, sketches, et al, from which we could develop accurate models (Revit or CAD) from which we could generate solicitation drawings.

Our solicitation drawings would be developed from these sketches and would contain dimensioned equipment shown on layouts and elevations.

I would think 8440 would have their hands full documenting electrical characteristics of the existing equipment, taking pictures, documenting nameplates, et al. 8430 would develop the single line, schematics, etc, from this info.

I think having a designer on site would serve the project well, in terms of mounting new equipment, designing raceway, etc.

**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819
**Telework:** Everyday until restrictions are lifted. Office phone forwarded to home phone.
**Location:** Working from home until restrictions are lifted.

**From:** Jankowski, Rafal M <rjankowski@usbr.gov>
**Sent:** Monday, May 11, 2020 9:48 AM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>; Holmes, Jill R <JRHolmes@usbr.gov>
**Cc:** Santiago Alvarado, Adrian A <asantiagoalvarado@usbr.gov>; Hogg, Ryan S <rhogg@usbr.gov>
**Subject:** RE: NIIP (UC684) - Request of Info

Dan and Jill,

Regarding the Paragraph 1 below: can this work be done/included during the arc flash study by 8440?

Thank you.
Regards,

**Rafal Jankowski, PE, PMP, CEM**
Mechanical Engineer
Mechanical Equipment Group
Bureau of Reclamation, Technical Service Center
(P) 303.445.2852
(C) 720.541.3969
rjankowski@usbr.gov

Denver Federal Center

Building 67, Floor 11
PO Box 25007, 86-68410
Denver CO 80225-0007

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Monday, May 11, 2020 9:10 AM
**To:** Jankowski, Rafal M <rjankowski@usbr.gov>
**Cc:** Holmes, Jill R <JRHolmes@usbr.gov>; Santiago Alvarado, Adrian A <asantiagoalvarado@usbr.gov>; Hogg, Ryan S <rhogg@usbr.gov>
**Subject:** RE: NIIP (UC684) - Request of Info

Rafal – I see no need for an analysis on the single phase distribution system. These new loads will be upstream from the point where single phase loads are derived. All the information referenced in the PMP is needed to develop power distribution.

However, additional design work will be needed **outside** the AFS. To-wit:

1. The mounting of the feeder breaker for the new transformer. This should be in the existing switchgear. In the absence of manufacturer's drawings, a safety clearance, et al, would have to be established. Qualified personnel would then go on site, open the switchgear, and document, as much as possible, the existing conditions, with the intent of finding a location, in the switchgear, to mount the breaker, make connections to the 2400V switchgear bus, et al. This as-built documentation would then be used to develop elevation(s) and sections, of the existing switchgear. This means a lot of sketching on-site. Taking dimensions. Then we have to find a feeder breaker that will mount in that old switchgear.

2. We would be looking for support from 8440 in establishing the characteristics of that feeder breaker.

3. A new switchgear section, would have to be set, that houses the new transformer and panelboard. Again, we would need support from 8440 for the electrical characteristics, et al, for this equipment. And of course, we would need to establish a precise footprint, coordinated with existing equipment. This can be done at the same time as the work in #1 is done.

4. Raceway from the new feeder breaker to the new switchgear section would have to be designed, to carry the 2400V feed.

I would suggest a PMP from Ryan Hogg's group (safety) as well. – Dan

Ryan – I can give you a little more insight into this project via a Teams meeting. – Dan

**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819
**Telework:**  Everyday until restrictions are lifted. Office phone forwarded to home phone.
**Location:**  Working from home until restrictions are lifted.

**From:** Jankowski, Rafal M <rjankowski@usbr.gov>
**Sent:** Sunday, May 10, 2020 9:50 AM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>; Santiago Alvarado, Adrian A <asantiagoalvarado@usbr.gov>
**Cc:** Holmes, Jill R <JRHolmes@usbr.gov>
**Subject:** FW: NIIP (UC684) - Request of Info

Adrian and Dan,

8

Please see PMP for arc flush study from Jill. Please review and let me know if the scope include all necessary work to resolve your questions and concerns about the system so you can proceed with electrical design. The arc flash analysis covers only three-phase AC equipment. Do we need to have single-phase equipment to be included( if it is on the site)? If you have any questions, please reach out and coordinate directly with Jill. Before I provide the cost to the client, we need to make sure that all is covered in the AFS to eliminate the risk of any potential change orders.

Thank you.
Regards,

**Rafal Jankowski, PE, PMP, CEM**
Mechanical Engineer
Mechanical Equipment Group
Bureau of Reclamation, Technical Service Center
(P) 303.445.2852
(C) 720.541.3969
rjankowski@usbr.gov

Denver Federal Center
Building 67, Floor 11
PO Box 25007, 86-68410
Denver CO 80225-0007

**From:** Holmes, Jill R <JRHolmes@usbr.gov>
**Sent:** Friday, May 8, 2020 2:45 PM
**To:** Jankowski, Rafal M <rjankowski@usbr.gov>
**Subject:** RE: NIIP (UC684) - Request of Info

Hi Rafal,

Attached is a PMP cost estimate for doing the arc flash study for NIIP G7.5LA Pumping Plant. The timeline will be contingent upon when we can actually travel to the facility to collect the data for the study.

Please let me know if you or the client have any questions or concerns regarding the costs, timeline or what is included in the study. If they approve of this cost estimate, I will need the WBS and Fund information to get the service agreement set up. I'll also need a contact person to coordinate the site visit.

Thanks and have a great weekend!
-Jill-

**From:** Jankowski, Rafal M <rjankowski@usbr.gov>
**Sent:** Thursday, May 7, 2020 1:56 PM
**To:** Holmes, Jill R <JRHolmes@usbr.gov>
**Subject:** RE: NIIP (UC684) - Request of Info

Jill,

Great! The client contact is:

Emma Manzanares, O&M Chief

9

EManzanares@usbr.gov
Mechanical Engineer
Bureau of Reclamation
1235 La Plata Hwy
Farmington, NM 87401
505/324-5017

Thank you.
Regards,

**Rafal Jankowski, PE, PMP, CEM**
Mechanical Engineer
Mechanical Equipment Group
Bureau of Reclamation, Technical Service Center
(P) 303.445.2852
(C) 720.541.3969
rjankowski@usbr.gov

Denver Federal Center
Building 67, Floor 11
PO Box 25007, 86-68410
Denver CO 80225-0007

**From:** Holmes, Jill R <JRHolmes@usbr.gov>
**Sent:** Thursday, May 7, 2020 11:33 AM
**To:** Jankowski, Rafal <rjankowski@usbr.gov>
**Subject:** RE: NIIP (UC684) - Request of Info

Hi Rafal,

Thanks for checking in. I think I should be able to have an estimate to you early next week (I'm actually shooting for tomorrow, but I don't want to promise that). Can you tell me who the project contact will be for the PMP?

-Jill-

**From:** Jankowski, Rafal M <rjankowski@usbr.gov>
**Sent:** Thursday, May 7, 2020 10:21 AM
**To:** Holmes, Jill R <JRHolmes@usbr.gov>
**Subject:** RE: NIIP (UC684) - Request of Info

Jill,

I am just check if you can please let me know when you will be able to provide the estimate for the cost and schedule for the arc flush study at NIIP Pumping Plant G7.5L.

Thank you for your help.

Thank you.
Regards,

10

**Rafal Jankowski, PE, PMP, CEM**
Mechanical Engineer
Mechanical Equipment Group
Bureau of Reclamation, Technical Service Center
(P) 303.445.2852
(C) 720.541.3969
rjankowski@usbr.gov

Denver Federal Center
Building 67, Floor 11
PO Box 25007, 86-68410
Denver CO 80225-0007

**From:** Jankowski, Rafal M
**Sent:** Tuesday, May 5, 2020 7:10 PM
**To:** Holmes, Jill R <JRHolmes@usbr.gov>; Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Cc:** Santiago Alvarado, Adrian A <asantiagoalvarado@usbr.gov>; Billy, Lisa M <lbilly@usbr.gov>
**Subject:** RE: NIIP (UC684) - Request of Info

Jill,

You are correct. Unfortunately and to my surprise, the Navajo Nations have been hit pretty hard by the virus. Farmington office works remotely and there should be no request to travel, until it is safe to do so ( at least by the government standards). O&M service group for the pumping plant has been working without interruptions.
The client tossed around the idea of hiring outside A/E to perform the arc flash study due to their concerns of TSC availability. So would like to have more accurate estimate (cost and time) ready to the client so TSC is preferred provider for this service if the TSC proposed timeline works for the client.

Thank you.
Regards,

**Rafal Jankowski, PE, PMP, CEM**
Mechanical Engineer
Mechanical Equipment Group
Bureau of Reclamation, Technical Service Center
(P) 303.445.2852
(C) 720.541.3969
rjankowski@usbr.gov

Denver Federal Center
Building 67, Floor 11
PO Box 25007, 86-68410
Denver CO 80225-0007

**From:** Holmes, Jill R <JRHolmes@usbr.gov>
**Sent:** Tuesday, May 5, 2020 9:43 AM
**To:** Jankowski, Rafal M <rjankowski@usbr.gov>; Hamann, Daniel (Dan) W <dhamann@usbr.gov>

11

**Cc:** Santiago Alvarado, Adrian A <asantiagoalvarado@usbr.gov>; Billy, Lisa M <lbilly@usbr.gov>
**Subject:** RE: NIIP (UC684) - Request of Info

Hi Rafal,

I'll work on getting a cost estimate put together by one of my Studies Team members. Can you tell me what the status is of COVID-19 in this area? Is travel possible? I've heard some of the Navajo Nations have been hit pretty hard by the virus. We usually require a site visit to collect data, especially in a case like this where the single line looks dated so actual equipment on site may vary quite a bit from the single line.

-Jill-

**From:** Jankowski, Rafal M <rjankowski@usbr.gov>
**Sent:** Monday, May 4, 2020 7:19 PM
**To:** Holmes, Jill R <JRHolmes@usbr.gov>; Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Cc:** Santiago Alvarado, Adrian A <asantiagoalvarado@usbr.gov>; Billy, Lisa M <lbilly@usbr.gov>
**Subject:** RE: NIIP (UC684) - Request of Info

Jill,

Thank you for the clarification. Please see attached single line to help you with the cost estimate. If case you need more info, Dan and Adrian should have it. Additionally, the client expressed concern about the availability of the TCS team to perform the arc flash study. Based on the single line, what would be the possible timeline for performing the arc flash study and what is the availability of your team? It looks like the time is of the essence with completing this project for the client.

I appreciate your help with this.

Thank you.
Regards,

**Rafal Jankowski, PE, PMP, CEM**
Mechanical Engineer
Mechanical Equipment Group
Bureau of Reclamation, Technical Service Center
(P) 303.445.2852
(C) 720.541.3969
rjankowski@usbr.gov

Denver Federal Center
Building 67, Floor 11
PO Box 25007, 86-68410
Denver CO 80225-0007

**From:** Holmes, Jill R <JRHolmes@usbr.gov>
**Sent:** Monday, May 4, 2020 2:44 PM
**To:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Cc:** Jankowski, Rafal M <rjankowski@usbr.gov>; Santiago Alvarado, Adrian A <asantiagoalvarado@usbr.gov>; Billy, Lisa M <lbilly@usbr.gov>
**Subject:** RE: NIIP (UC684) - Request of Info

12

Hi Dan,

Arc flash studies are not required to go through the TSC. FIST 5-14 includes requirements for arc flash analysis studies including that they must be performed by a qualified engineer with a PE license, detailed training, experience and intimate knowledge of the subject matter and experience with generation, electrical systems studies and low- to high-voltage equipment.

They can also contact me if they would like more information regarding what we include in our arc flash studies. The quotes I've seen from other vendors can run the gamut from very pricey to very cheap in comparison to us. We include a lot of very useful additional information in our studies that clients have been very pleased with. I can also be contacted to give them a more accurate estimate on what an arc flash study would cost for their facility. I would need a single line drawing and a discussion about scope to get us started.

Thanks,
-Jill-

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Monday, May 4, 2020 2:00 PM
**To:** Holmes, Jill R <JRHolmes@usbr.gov>
**Cc:** Jankowski, Rafal M <rjankowski@usbr.gov>; Santiago Alvarado, Adrian A <asantiagoalvarado@usbr.gov>; Billy, Lisa M <lbilly@usbr.gov>
**Subject:** NIIP (UC684) - Request of Info

Jill – The client on this project was inquiring as to whether they could solicit an arc flash study from a third party. Does policy permit this? Thanks .- Dan

**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819
**Telework:** Everyday until restrictions are lifted. Office phone forwarded to home phone.
**Location:** Working from home until restrictions are lifted.

13

| From: | McStraw, William D |
| To: | Hamann, Daniel (Dan) W |
| Cc: | Pierce, Rona L |
| Bcc: | Mendlin, Eric T; Boggess, Jay S; Myers, Nathan E |
| Subject: | RE: meeting follow up |
| Date: | Friday, January 31, 2020 2:28:00 PM |

Dan,

As promised in our meeting I have reviewed the interview questions, vacancy announcement, and makeup of the interview panel and have the following comments regarding what you stated was your perception that the selection process was tailored for a certain individual:

1. Interview and vacancy announcement questions were developed for both positions to address the type of work each specific group performs and to seek qualified candidates with the type of engineering experience for the specific electrical equipment and SCADA systems each group has responsibilities for that would meet those needs.

2. The majority of the interview questions are questions that have been used for multiple vacancies and in prior interview panels (for GS-12 and GS-13 positions) and were not tailored towards benefitting a specific individual. My review and opinion are that the questions were reasonable and do not indicate bias towards any particular candidate. The interview questions were developed to ascertain whether each candidate had skills in the areas of technical ability, leadership, ability to work with others, communication skills, teamwork, safety, project management, and mentoring, which are inherent to and expected of a GS-12 electrical engineer position.

   Many of the questions were presented in such a way that a candidate would have had multiple opportunities to share what their experience was with each type of electrical equipment and SCADA systems, including their specialized experience with design work including specifications, drawings and estimates and familiarity with design standards and references. A firm knowledge and understanding of specific electrical equipment and SCADA systems is beneficial and essential to be able to develop specifications and associated drawings. Some of the questions on where a candidate could expound on these specific skills are listed below:

   - Question 1 – Outline experience you have had with any of the following specialized electrical engineering fields: Transformers, for hydroelectric generators, generators, circuit breakers, switchgear, and any other electrical equipment that would be applicable (8460 Vacancy)

   - Question 1 – Outline experience you have had in any and all aspects of a SCADA project, Cyber security, fire detection/alarm systems/protection and Generator/pumping plant/ or other industrial process controls, hardwire, digital or HMI, etc. (8430 Vacancy)

   - Question 2 – How would you describe your skillset fitting into the Electrical

Controls Group based on the position you have applied for (SCADA)?

- Question 3 – Describe how you would use an IEEE/ICS standard for design and construction of a SCADA system?

- Question 8 – Tell us about how your workload and project types have evolved throughout your time with Reclamation or other government agency.

- Question 9 – What supplemental training or project experience makes your skills applicable to leading teams, project management, and electrical specification and design work associated with hydro and water conveyance engineering?

3. Each of the interview panels consisted of two GS-13 electrical engineers and one GS-14 Electrical Engineer Group Manager with extensive backgrounds in electrical engineering, electrical equipment and SCADA systems. All of these individuals are from other groups in the TSC and did not include individuals from the 8430 and 8460 groups, which further demonstrates that the panel was impartial and performed the interviews and evaluations based on the results of the interview. The interview panel did not deviate from the list of questions provided and all the interview questions were presented and applied equally to all candidates.

**From:** Hamann, Daniel (Dan) W <dhamann@usbr.gov>
**Sent:** Wednesday, January 29, 2020 11:25 AM
**To:** McStraw, William D <WMcstraw@usbr.gov>
**Cc:** Pierce, Rona L <rpierce@usbr.gov>
**Subject:** meeting follow up

Bill - As a follow up to our meeting this morning, I offer the following.

As mentioned in my 1/21 email, I am pursuing an OSC complaint with respect to prohibited personnel practices. I believe the GS-12 vacancy filled by Luke Buchholz was tailored in such a manner to favor his selection, and injure my own. It appears Buchholz was the pre-selected candidate in mind when the vacancies were created and the selection process was tailored to favor the selection of Buchholz.

During my tenure I have observed behavior patterns between Jay Boggess and Buchholz that indicated favoritism towards Buchholz by Boggess. To-wit, Boggess spent considerable time in Buchholz's cube when Buchholz's cube was next to mine. Buchholz was elevated from a GS-5 to a GS-11, over my tenure, in spite of the fact that Buchholz had neither an electrical engineering degree or P.E.

Flags were raised when Buchholz was selected for the GS-12 vacancy. I suspected that the job announcement and the interview process were designed to favor Buchholz. I also believe the selection process was obfuscated by creating four vacancies and numerous vacancy questions. Using multiple interviewers also obfuscated the process. During the oral interview I asked one of the interviewers, why questions were being asked for qualifications of work we never perform in our group, 8430. The response was that he was simply asking the questions.

Additionally, the vacancy questions in the announcements pertained to experience for tasks that we don't typically performed in 8430. Having done a cursory review of service agreements, for which 8430 receives funding, it became apparent that clients, and other groups, generally fund 8430 to create solicitations and studies. Solicitations require the ability to generate estimates, plans and specifications. Specifications are always in CSI format. Drawings are always generated in AutoCAD, Revit, or similar software. These are major deliverables for which 8430 is funded.

Yet, there were limited questions on the vacancy announcements pertaining to skills or experience in generating estimates and solicitations. Rather many of the questions pertained to skills or experience for which 8430 receives no funding. The questions in the oral interview were similar in that respect.

These observations serve as prima facie evidence, for me, that the vacancy and selection process were tailored for Buchholz.

I am providing this information, in the event that administrative remedies are available, which may be required prior to pursuing certain legal actions.

Other issues were discussed this morning, but due to deadlines on other tasks, for which I am employed, this is the most I can offer at this time. - Dan

**Dan Hamann, PE** | Electrical Engineer | Reclamation | 303-445-2819 (forwarded)
**Telework:** Tue & Thu 6-2:30 | Call 2819 | Schedule may vary | See Calendar
**Location:** Denver Fed Cntr, Bldg 67, 11th Floor, Cube 11-110W 25007 Denver CO 80225.

I, Nathan Myers, am an employee of the Bureau of Reclamation, located at the Denver Technical Services Center (TSC), Lakewood, CO in the capacity of Manager of the Hydropower Diagnostics and SCADA Group, GS-0850-14, from approximately May 2012 to the present date.

My telephone number during working hours is: (303) 445-2643

I HAVE BEEN ADVISED OF THE FOLLOWING:
I am required by Federal regulations and the U.S. Department of Interior (DOI) policy to cooperate fully and promptly with the investigator who has been assigned to conduct a thorough and impartial investigation into a complaint of discrimination against the DOI. I must provide a statement for the investigative report which is true and complete to the best of my knowledge and which discloses all of my firsthand knowledge having a bearing on the merits of the complaint. My statement is provided under oath (or affirmation), without a pledge of confidentiality, in accordance with Equal Employment Opportunity Commission rules and regulations and DOI policy. In addition, the complainant and the appropriate Agency officials involved in the EEO complaint process will receive the entire investigative file. I have the right to review my statement prior to signing it and may make initialized corrections if it is incomplete or inaccurate. I have the right to receive a copy of the signed statement.

Having been advised of the above information about my role as a witness in the investigative process, I solemnly swear __X_ affirm _____ the statement which follows is true and complete to the best of my knowledge and belief, and addresses the issues and concerns raised with me by the investigator.

(Initials)

1

On August 25, 2020, at approximately 1:15 p.m., Investigator Shirley Cain interviewed witness Nathan Myers regarding the amended EEO Discrimination complaint filed against the United States Department of Interior, Bureau of Reclamation (BOR) filed by Complainant, Daniel Hamann, DOI-BOR-19-0764.

1. Please state and spell your name.
   **A. Nathan E. Myers; N-A-T-H-A-N E M-Y-E-R-S**

2. Please state your current position title, grade and series.
   **A. Electrical Engineering Manager, GS-0850-14**

3. Please state your current working unit and location.
   **A. Hydropower Diagnostics and SCADA Group; Denver Federal Center, Building 56, Area 2730, Lakewood, CO.**

4. Since when have you been in this position?
   **A. Approximately May 2012**

5. What is your phone number and email address?
   **A. 303-445-2643; NMyers@usbr.gov**

6. Briefly describe the duties of your position.
   **A. I manage a group of 15 electrical engineers. My technical duties include visiting power plants to perform testing and train employees on equipment used in the hydropower industry. I also facilitate annual safety training for all employees within my division.**

7. What was your working unit and location on January 7, 2020?
   **A. Denver Federal Center**

8. Since when have you been employed by the DOI?
   **A. May 2002**

9. Since when have you been with the Federal Government?
   **A. May 2002**

10. Who is your first line supervisor? Dates?
    **A. William McStraw, since approximately the fall of 2016.**

11. Who is your second line supervisor? Dates?
    **A. The has been vacant since April 2020 due to a retirement. Dr. David Rafe, Chief Engineer TSC, would be the next in my line for me to report to.**

2


(Initials)

12. Were these individuals your first and second-line supervisors on January 7, 2020?
    **A. William McStraw was my first-line supervisor. Mr. Luebke (ret) was my second-line supervisor at that time.**

13. What positions, if any, do you supervise?
    **A. GS-5 through GS-14 Technical Engineering positions and one secretary.**

14. Do you know Complainant in this case, Daniel Hamann?
    **A. Yes; I was on the initial interview board when he was hired with BOR. I have also served in an acting capacity that included being his supervisor for a period of time.**

15. Are you aware of Complainant's age?
    **A. I was not aware of his age until I received the document related to this interview stating his year of birth.**

16. What is your month and year of birth?
    **A. February 1979**

    **The issue accepted for investigation is as follows:**

    **4. Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on or about January 7, 2020, he was not selected for an Electrical Engineer position advertised under the following vacancy announcement numbers:**
       **a. BR-DO-2019-193 (DEU-BM)**
       **b. BR-DO-2019-194 (DEU-BM)**
       **c. BR-DO-2019-195 (MPP-BM)**
       **d. BR-DO-2019-196 (DEU-BM)**

17. What was your role in or knowledge of how this announcement?
    **A. I was not a part of the announcement; I was only involved in the interviews and served as the chairman of the panels.**

18. Please explain the process of how the position was advertised and the process used to prepare the lists of eligible for consideration. MP vs. DEU?
    **A. To the best of my knowledge, the positions were announced through USAJOBS.**

19. Who requested the position be filled?
    **A. Jay Boggess**

20. How many positions were advertised?
    **A. I do not know.**

21. What were the opening and closing dates of the announcements?
    **A. I do not know.**

3


(Initials)

22. How many applications did you receive for each?
    **A. I do not know.**

23. What review process was used with the applications?
    **A. Typically that procedure is performed by HR; I was not involved in the process.**

24. Was Complainant found qualified for the position? If so, was he among the best qualified applicants?
    **A. Yes; he was interviewed, so I believe he was among the best qualified applicants.**

25. Was his name sent to the selecting official?
    **A. The selecting official received the certificates with the qualified applicants from HR.**

26. Who were the lists sent to?
    **A. The lists/certificates should have been sent to Jay Boggess as he initiated the announcement. They were shared with Eric Mendlin.**

27. Were interviews conducted for the position?
    **A. Yes**

28. Who served on the interview panel?
    **A. Ashley Hannigan, Benjamin Few, and I were on the non-SCADA interview panel; the SCADA interviews were conducted by me, Toby Steves, and Kyle Clair.**

29. How did you determine who would be interviewed?
    **A. Mr. Boggess gave me the names on the certificates and Mr. McStraw asked me to conduct the interviews. I was also provided with all of the questions to ask. All the interviewees were asked questions in the same fashion.**

30. How did Complainant's interview compared to selectee(s)?
    **A. In many cases, he did not answer the questions that the panel asked.**

31. Who was the selecting official?
    **A. Jay Boggess and Eric Mendlen**

32. Were selections made for the position? When were the selections made?
    **A. Yes; two selections were made. I do not know when they were made.**

33. Who was selected for the positions?
    **A. There were two selections for Supervisory Control and Data Acquisition (SCADA) position. The committee referred Luke Buchholtz and Chris Purdy for selection recommendation.**

4


(Initials)

34. Were these selections made in accordance with your agency's policies and procedures? If so, which one (name and number).
   **A. I believe so. I do not know the policy or its number.**

35. Were references checked on the individuals interviewed?
   **A. I believe references were checked on the individuals that were recommended for selection.**

36. Was Complainant notified of his non-selection?
   **A. I am not sure. I believe he was, but I did not notify him.**

37. Complainant states he is more qualified than the individuals selected for the position. Please respond.
   **A. Based on the responses to the questions he provided during his interview, I would say that is not true.**

38. Complainant believes he was discriminated against when he was not selected for the position because of his age. What is your response to that?
   **A. The interviews were conducted in a firm, fair, and impartial matter. Age did not come into play. The recommendations were made based on how the individuals responded the questions that were asked during the panel interview.**

39. Is there anything else you would like to add to your statement?
   **A. Once the interviews were completed, we met with the hiring officials and briefed them on the process and applicants interviewed. We made our recommendations and they made their selection. I do know the selectees were the top candidates recommended by the panel.**

40. Is there anything you believe is relevant to this case that I have not asked you about during this interview?
   **A. The only thing I would add is when Complainant was hired with the BOR, age was never an issue. The selected was based on qualifications.**

41. May I contact you if I have additional questions?
   **A. Yes**

I have reviewed this statement, which consists of five (5) pages, and hereby solemnly __X__ swear ___ affirm that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

| *Nathan Eugene Myers* <br> Digitally signed by NATHAN MYERS <br> Date: 2020.08.26 12:04:17 -06'00' | 08/26/2020 |
|---|---|
| Signature of Affiant | Date |


(Initials)

I, Kyle Clair, am an employee of the Bureau of Reclamation, located at the Denver Technical Services Center (TSC), Control System and Analysis Group, Denver Federal Center, Denver, CO in the capacity of Electrical Engineer, GS-0850-13, from approximately January 2006 to the present date.

My telephone number during working hours is: (303) 445-2813

I HAVE BEEN ADVISED OF THE FOLLOWING:

I am required by Federal regulations and the U.S. Department of Interior (DOI) policy to cooperate fully and promptly with the investigator who has been assigned to conduct a thorough and impartial investigation into a complaint of discrimination against the DOI. I must provide a statement for the investigative report which is true and complete to the best of my knowledge and which discloses all of my firsthand knowledge having a bearing on the merits of the complaint. My statement is provided under oath (or affirmation), without a pledge of confidentiality, in accordance with Equal Employment Opportunity Commission rules and regulations and DOI policy. In addition, the complainant and the appropriate Agency officials involved in the EEO complaint process will receive the entire investigative file. I have the right to review my statement prior to signing it and may make initialized corrections if it is incomplete or inaccurate. I have the right to receive a copy of the signed statement.

Having been advised of the above information about my role as a witness in the investigative process, I solemnly swear __X_ affirm _____ the statement which follows is true and complete to the best of my knowledge and belief, and addresses the issues and concerns raised with me by the investigator.

I

*KC*
Affiant's Initials

**Affidavit of Witness**
**Kyle Clair**

On September 1, 2020, at approximately 1:00 p.m., Investigator Shirley Cain interviewed witness Kyle Clair regarding the amended EEO Discrimination complaint against the United States Department of Interior, Bureau of Reclamation (BOR) filed by Complainant, Daniel Hamann, DOI-BOR-19-0764.

1. Please state and spell your name.
   **A. Kyle William Clair; K-Y-L-E W-I-L-L-I-A-M C-L-A-I-R**

2. Please state your current phone number and email address.
   **A. 303-445-2813; kwclair@usbr.gov**

3. Please state your current position title, grade and series.
   **A. Electrical Engineer, GS-0850-13**

4. Please state your current working unit and location.
   **A. TSC, Power Systems Analysis and Controls Group; Denver Federal Center, Bldg. 56, Room 2730**

5. Since when have you been in this position?
   **A. Approximately January 2006**

6. When did you begin employment with DOI?
   **A. Approximately January 2006**

7. Who is your first line supervisor? Dates?
   **A. Jill Holmes; she has been my supervisor for approximately one year.**

8. Who is your second line supervisor? Dates?
   **A. Bill McStraw for approximately 4 to 5 years. He just retired.**

9. Were these individuals your first and second-line supervisors on January 7, 2020?
   **A. Yes**

10. What was your working unit and location on January 7, 2020?
    **A. TSC, Power Systems Analysis and Controls Group; Denver Federal Center, Bldg. 56, Room 2730**

11. Briefly describe the duties of your position.
    **A. I collect data at various sites. That information is compiled and used to write technical reports. As a team lead, I train the younger employees, assist team**

2

*KC*
Affiant's Initials

members when needed, produce the annual team budget, and participate in interviews.

12. What positions, if any, do you supervise?
    A. **Not officially. As a team lead, I do keep employees on task.**

13. Do you know Complainant in this case, Daniel Hamann?
    A. **No, I had never met him prior to the panel interview.**

14. Are you aware of Complainant's age?
    A. **No**

15. What is your month and year of birth?
    A. **June 1983**

**The issue accepted for investigation is as follows:**

4. **Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on or about January 7, 2020, he was not selected for an Electrical Engineer position advertised under the following vacancy announcement numbers:**
   a. **BR-DO-2019-193 (MPP-BM)**
   b. **BR-DO-2019-194 (DEU-BM)**
   c. **BR-DO-2019-195 (MPP-BM)**
   d. **BR-DO-2019-196 (DEU-BM)**

16. What was your role in, or knowledge of how this position was filled?
    A. **The only role I played was related to the interview process. I was given a set of questions and answers to ask each applicant in the panel interview.**

17. Do you have any knowledge of the process used to announce the position and prepare the lists of eligible for consideration MP vs. DEU?
    A. **No, I did not see the announcement.**

18. Who requested the position be filled?
    A. **I believe it was the manager of the Electrical Design Center. I think it was Jay Boggess.**

19. How many positions were advertised?
    A. **Not sure**

20. What were the opening and closing dates of the announcements?
    A. **Not sure**

3

*KC*
Affiant's Initials

21. Was Complainant found qualified for the position? If so, was he among the best qualified applicants?
   **A. Yes**

22. Were interviews conducted for the position? If so, did you serve on the interview panel?
   **A. Yes; I served on the SCADA panel interview.**

23. How did the interview panel determine who would be interviewed?
   **A. The panel did not determine who would be interviewed. I believe the hiring manager made the determination. I was provided a list of applicants to interview. I reviewed the applicant resumes prior to interviewing them. The panel provided the scores for all applicants based on how they responded to questions during their interview. It was clear who should have been selected as the strongest candidate given how they answered the interview questions.**

24. How many applicants were interviewed?
   **A. I believe there were four interviews for the SCADA position.**

25. Was Complainant among the applicants interviewed?
   **A. Yes**

26. Were the same questions asked of all the interviewees?
   **A. Yes, they were asked the exact same questions.**

27. How did Complainant interview in comparison to the other applicants?
   **A. I thought he seemed to get off track when responding to questions by not responding to the actual questions. There were times during the interview he spoke about the Agency in a negative light which was a waste of his valuable interview time. The information he was providing was not relevant to the questions for all interview questions. Several times, Mr. Myers tried to redirect him back to responding to the questions.**

28. Complainant states he is more qualified than the individual(s) selected for the position. Please respond.
   **A. I would say he has more years of experience; but, based on the responses he provided during the interview, he did not score very well. My notes include "no experience" or "little experience in design" for 6 out of 16 interview questions. The selected individual answered the questions appropriately and outshined all other applicants when answering the interview questions.**

29. Were selections made? If so, who was selected?
   **A. Yes; I think there was one or two selections. The internal selection was Luke Buchholz.**

4

*KC*
Affiant's Initials

30. Who was the selecting official?
    **A. I believe the information was given to Jay Boggess.**

31. Were these selections made in accordance with your agency's policies and procedures? If so, which one (name and number).
    **A. I believe so. Our Agency is efficient at educating us on how to make selections for the strongest candidates without descriminating.**

32. Were references checked on these applicants?
    **A. I do not know.**

33. Was Complainant notified of his non-selection?
    **A. I do not know. The interview information was given to the hiring manager. I don't know what happened after that point.**

34. He believes he was discriminated against when he was not selected for the position because of his age. What is your response to that?
    **A. I would think that is completely false. I know the other individuals on the panel very well. We have always hired a very diverse workforce. We did not make our recommendation based on age and/or any other factors of discrimination.**

35. Is there anything else you would like to add to your statement?
    **A. During the interview process, the selected individual responded to questions in a manner that indicated he led projects and was very involved in the Agency. Complainant did not respond as if he led projects or had experience in various areas.**

36. May I contact you if I have additional questions?
    **A. Yes**

I have reviewed this statement, which consists of five (5) pages, and hereby solemnly
__X__ swear ___ affirm that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

_____        9/16/2020
Signature of Affiant                      Date

5

KC
Affiant's Initials

I, Ashley Hannigan, am an employee of the Bureau of Reclamation, located at the Denver Technical Services Center (TSC), Power Systems Analysis and Controls Group, Denver Federal Center, Denver, CO in the capacity of Electrical Engineer, GS-0850-13, from May 2009 to the present date.

My telephone number during working hours is: (303) 445-2838

I HAVE BEEN ADVISED OF THE FOLLOWING:
I am required by Federal regulations and the U.S. Department of Interior (DOI) policy to cooperate fully and promptly with the investigator who has been assigned to conduct a thorough and impartial investigation into a complaint of discrimination against the DOI. I must provide a statement for the investigative report which is true and complete to the best of my knowledge and which discloses all of my firsthand knowledge having a bearing on the merits of the complaint. My statement is provided under oath (or affirmation), without a pledge of confidentiality, in accordance with Equal Employment Opportunity Commission rules and regulations and DOI policy. In addition, the complainant and the appropriate Agency officials involved in the EEO complaint process will receive the entire investigative file. I have the right to review my statement prior to signing it and may make initialized corrections if it is incomplete or inaccurate. I have the right to receive a copy of the signed statement.

Having been advised of the above information about my role as a witness in the investigative process, I solemnly swear __X__ affirm _____ the statement which follows is true and complete to the best of my knowledge and belief, and addresses the issues and concerns raised with me by the investigator.

1

AMH
Affiant's Initials

**Affidavit of Witness**
**Ashley Hannigan**

On September 2, 2020, at approximately 10:00 a.m., Investigator Shirley Cain interviewed witness Ashley Hannigan regarding the amended EEO Discrimination complaint against the United States Department of Interior, Bureau of Reclamation (BOR) filed by Complainant, Daniel Hamann, DOI-BOR-19-0764.

1. Please state and spell your name.
   **A. Ashley Hannigan; A-S-H-L-E-Y H-A-N-N-I-G-A-N**

2. Please state your current phone number and email address.
   **A. 303-445-2838; ahannigan@usbr.gov**

3. Please state your current position title, grade and series.
   **A. Electrical Engineer, GS-0850-13**

4. Please state your current working unit and location.
   **A. Technical Services Center, Power Systems Analysis and Controls Group, Denver Federal Center, Denver, CO**

5. Since when have you been in this position?
   **A. May 2009**

6. When did you begin employment with DOI?
   **A. May 2009**

7. Who is your first line supervisor? Dates?
   **A. Jill Holmes; July 2019 to present**

8. Who is your second line supervisor? Dates?
   **A. Bill McStraw; he has been my second line supervisor for approximately three years. He recently retired.**

9. Were these individuals your first and second-line supervisors on January 7, 2020?
   **A. Yes**

10. What was your working unit and location on January 7, 2020?
    **A. Technical Services Center, Power Systems Analysis and Controls Group, Denver Federal Center, Denver, CO**

11. Briefly describe the duties of your position.
    **A. I review power system equipment in power plants and conduct studies on the equipment installed to ensure it is adequately rated.**

2

AMH
—————————
Affiant's Initials

12. What positions, if any, do you supervise?
    A. **I do not supervise any positions.**

13. Do you know Complainant in this case, Daniel Hamann?
    A. **I have heard of him. I met him when we conducted the panel interview. I have not worked with him on any projects.**

14. Are you aware of Complainant's age?
    A. **I did not know at the time of the panel interview. Since receiving information related to this case, I became aware of his year of birth.**

15. What is your month and year of birth?
    A. **May 1987**

**The issue accepted for investigation is as follows:**

4. **Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on or about January 7, 2020, he was not selected for an Electrical Engineer position advertised under the following vacancy announcement numbers:**
   a. **BR-DO-2019-193 (MPP-BM)**
   b. **BR-DO-2019-194 (DEU-BM)**
   c. **BR-DO-2019-195 (MPP-BM)**
   d. **BR-DO-2019-196 (DEU-BM)**

16. What was your role in, or knowledge of how this position was filled?
    A. **I do not know how it was filled. My involvement was to be a participate on in the panel interviews.**

17. Do you have any knowledge of the process used to announce the position and prepare the lists of eligible for consideration MP vs. DEU?
    A. **No**

18. Who requested the position be filled?
    A. **Jay Boggess, supervisor for the Electrical Control Group and Eric Mendlen supervisor for the Electrical Equipment Group. They gave us the names of the individuals to interview.**

19. How many positions were advertised?
    A. **One for each of the groups for a total of two positions.**

20. What were the opening and closing dates of the announcements?
    A. **No**

3

AMH
Affiant's Initials

21. Was Complainant found qualified for the position? If so, was he among the best qualified applicants?

**A. Yes; but he was not amongst the best qualified applicants.**

22. Were interviews conducted for the position? If so, did you serve on the interview panel?

**A. Yes; I served on the Electrical Equipment Group interview panel.**

23. How did the interview panel determine who would be interviewed?

**A. The panel did not determine who would be interviewed. We received a list of applicants to interview. I believe Mr. Boggess and Mr. Mendlen determined who would be interviewed based on the list they received from HR.**

24. How many applicants were interviewed on the Electrical Equipment Group panel?

**A. Five**

25. Was Complainant among the applicants interviewed?

**A. Yes**

26. Were the same questions asked of all the interviewees?

**A. Yes; all the questions were asked in the same order by the panel member assigned to the particular question.**

27. How did Complainant interview in comparison to the other applicants?

**A. I think he interviewed about the same as all the others in that he was able to provide answers to the questions. As far as the content of his answers, we found he did not meet the requirements for a promotion. My notes indicate he shows potential, but he did not display the initiative to volunteer for larger projects during the interview. The position he was interviewing for required applicants possessed experience with responsibility for large projects. I did not believe he had the skills and knowledge required for the position. When a question was asked related to his experience in leading a team of Engineers during a project, I recall him saying he had not been given a project to lead in his current position.**

28. Complainant states he is more qualified than the individual(s) selected for the position. Please respond.

**A. I think that is a personal opinion. I do not believe he was more qualified than the person selected.**

29. Were selections made? If so, who was selected?

**A. Yes; I believe Luke Buchholz was selected for the Electrical Control Group. I do not think anyone was selected for the other position.**

30. Who was the selecting official?

**A. I believe it was Mr. Boggess and Mr. Mendlen**

4

31. Were these selections made in accordance with your agency's policies and procedures? If so, which one (name and number).

   **A. The panel interview was very professional; we were in a quiet conference and maintained the same quality of interviews for all five applicants. I believe I completed a form related to conducting the panel interview. I do not know the agency policy name and number related to selections.**

32. Were references checked on these applicants?

   **A. I do not know.**

33. Was Complainant notified of his non-selection?

   **A. I do not know.**

34. He believes he was discriminated against when he was not selected for the position because of his age. What is your response to that?

   **A. I believe in general the panel consisted of people of different ages and backgrounds. I believe individuals selected for positions should have the knowledge and skills for the position. Age was not a consideration when making our recommendation.**

35. Is there anything else you would like to add to your statement?

   **A. No**

36. May I contact you if I have additional questions?

   **A. Yes**

I have reviewed this statement, which consists of five (5) pages, and hereby solemnly _X_ swear ___ affirm that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

_Ashley M Hannigan_      9/3/2020

Signature of Affiant      Date

5

I, Benjamin Few, am an employee of the Bureau of Reclamation, located at the Denver Technical Services Center (TSC), Lakewood, CO in the capacity of Electronical Engineer, GS-0850-13, from May 2009 to the present date.

My telephone number during working hours is: (303) 264-4262

I HAVE BEEN ADVISED OF THE FOLLOWING:

I am required by Federal regulations and the U.S. Department of Interior (DOI) policy to cooperate fully and promptly with the investigator who has been assigned to conduct a thorough and impartial investigation into a complaint of discrimination against the DOI. I must provide a statement for the investigative report which is true and complete to the best of my knowledge and which discloses all of my firsthand knowledge having a bearing on the merits of the complaint. My statement is provided under oath (or affirmation), without a pledge of confidentiality, in accordance with Equal Employment Opportunity Commission rules and regulations and DOI policy. In addition, the complainant and the appropriate Agency officials involved in the EEO complaint process will receive the entire investigative file. I have the right to review my statement prior to signing it and may make initialized corrections if it is incomplete or inaccurate. I have the right to receive a copy of the signed statement.

Having been advised of the above information about my role as a witness in the investigative process, I solemnly swear __X__ affirm _____ the statement which follows is true and complete to the best of my knowledge and belief, and addresses the issues and concerns raised with me by the investigator.

1

Affiant's Initials

## Affidavit of Witness
## Benjamin Few

On August 28, 2020, at approximately 9:00 a.m., Investigator Shirley Cain interviewed witness Benjamin Few regarding the amended EEO Discrimination complaint filed against the United States Department of Interior, Bureau of Reclamation (BOR) filed by Complainant, Daniel Hamann, DOI-BOR-19-0764.

1. Please state and spell your name.
   **A. Benjamin Albert Few; B-E-N-J-A-M-I-N A-L-B-E-R-T F-E-W**

2. Please state your current phone number and email address.
   **A. 303-264-4262; bfew@usbr.gov**

3. Please state your current position title, grade and series.
   **A. Electrical Engineer, GS-0850-13**

4. Please state your current working unit and location.
   **A. TSC, Denver Federal Center, Bldg. 56, Room 2730**

5. Since when have you been in this position?
   **A. May 2009**

6. When did you begin employment with DOI?
   **A. May 2009**

7. Who is your first line supervisor? Dates?
   **A. Nathan Myers, since approximately August 2015**

8. Who is your second line supervisor? Dates?
   **A. Bill McStraw, since approximately September 2017**

9. Were these individuals your first and second-line supervisors on January 7, 2020?
   **A. Yes**

10. What was your working unit and location on January 7, 2020?
    **A. TSC, Denver Federal Center, Bldg. 56, Room 2730**

11. Briefly describe the duties of your position.
    **A. I am team lead for a diagnostics group; we perform field testing and diagnostics of equipment failures.**

2

Affiant's Initials

12. What positions, if any, do you supervise?
   A. **I do not supervise any staff. As a team lead, I direct work, mentor people, and provide input for evaluations.**

13. Do you know Complainant in this case, Daniel Hamann? If so, how do you know him? When did you first meet him?
   A. **I have seen him at work related functions but did not meet until serving on the interview panel for the Electrical Engineer position.**

14. Are you aware of Complainant's age?
   A. **Prior to receiving the letter for this interview, I did not know his age.**

15. What is your month and year of birth?
   A. **September 1978**

   **The issue accepted for investigation is as follows:**

   4. **Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on or about January 7, 2020, he was not selected for an Electrical Engineer position advertised under the following vacancy announcement numbers:**
      a. **BR-DO-2019-193 (MPP-BM)**
      b. **BR-DO-2019-194 (DEU-BM)**
      c. **BR-DO-2019-195 (MPP-BM)**
      d. **BR-DO-2019-196 (DEU-BM)**

16. What was your role in, or knowledge of how this position was announced and filled?
   A. **Yes; I served on the interview panels.**

17. Do you have any knowledge of the process used to announce the position and prepare the lists of eligibles for consideration MP vs. DEU?
   A. **I was not involved in the process of announcing the position.**

18. Who requested the position be filled?
   A. **I do not know; from what I recall, there was potential for several candidates to be selected across a couple different supervisors.**

19. How many positions were advertised?
   A. **I do not know.**

20. What were the opening and closing dates of the announcements?
   A. **I do not know.**

3

Affiant's Initials

21. Was Complainant found qualified for the position? If so, was he among the best qualified applicants?

**A. I don't think he was found qualified during the interview.**

22. Were interviews conducted for the position? If so, did you serve on the interview panel?

**A. Yes; yes**

23. How did the interview panel determine who would be interviewed?

**A. I do not know. I was asked to participate in the panel interview and given a list of resumes to review.**

24. How many applicants were interviewed?

**A. I believe we interviewed eight or nine applicants in two separate panel interview.**

25. Was Complainant among the applicants interviewed?

**A. Yes**

26. Were the same questions asked of all the interviewees?

**A. Yes**

27. How did Complainant interview in comparison to the individuals?

**A. He ranked the lowest; he interviewed poorly. He did not give correct responses to the questions.**

28. Complainant states he is more qualified than the individual(s) selected for the position. Please respond.

**A. I was frustrated for him during the interview because the work experience listed in his resume indicated he was very qualified, but he did not interview well. He was not able to answer any of the questions during the interview. I tried to redirect him by asking follow-up questions, with no success.**

29. Were selections made? If so, who was selected?

**A. From what I recall, only one position was filled.**

30. Who was the selecting official?

**A. I do not know.**

31. Were these selections made in accordance with your agency's policies and procedures? If so, which one (name and number).

**A. As far as I know, this was one of the more organized announcements and interview sessions I have seen.**

32. Were references checked on these applicants?

**A. I do not know.**

4

Affiant's Initials

33. Was Complainant notified of his non-selection? If yes, when?
   A. **I do not know.**

34. He believes he was discriminated against when he was not selected for the position because of his age. What is your response to that?
   A. **I feel bad that he believes that. I respect individuals with the experience and knowledge his has, and would not rule him out based on his age. If his responses during the interview reflected what was on his resume, I would have placed him at the top of recommendations.**

35. Do you believe there is anything relevant to this investigation that I have not asked you about during this interview?
   A. **No**

36. Is there anything else you would like to add to your statement?
   A. **No**

37. Documentation
   A. **No**

38. May I contact you if I have additional questions?
   A. **Yes**

I have reviewed this statement, which consists of five (5) pages, and hereby solemnly
 _X_ swear ___affirm that it is true and complete to the best of my knowledge and belief. I
understand that the information I have given will not be held confidential and may be shown to
the interested parties as well as made a permanent part of the record of investigation.

_Benjamin Fei_                          _8/28/2020_
Signature of Affiant                     Date

5

Affiant's Initials

I, Toby Steves, am an employee of the Bureau of Reclamation, located at the Denver Federal Center, Denver, CO in the capacity of Electrical Engineer, GS-0850-13, from approximately April or May 2004 to the present date.

My telephone number during working hours is: (303) 445-3258

I HAVE BEEN ADVISED OF THE FOLLOWING:
I am required by Federal regulations and the U.S. Department of Interior (DOI) policy to cooperate fully and promptly with the investigator who has been assigned to conduct a thorough and impartial investigation into a complaint of discrimination against the DOI. I must provide a statement for the investigative report which is true and complete to the best of my knowledge and which discloses all of my firsthand knowledge having a bearing on the merits of the complaint. My statement is provided under oath (or affirmation), without a pledge of confidentiality, in accordance with Equal Employment Opportunity Commission rules and regulations and DOI policy. In addition, the complainant and the appropriate Agency officials involved in the EEO complaint process will receive the entire investigative file. I have the right to review my statement prior to signing it and may make initialized corrections if it is incomplete or inaccurate. I have the right to receive a copy of the signed statement.

Having been advised of the above information about my role as a witness in the investigative process, I solemnly swear __X_ affirm ____ the statement which follows is true and complete to the best of my knowledge and belief, and addresses the issues and concerns raised with me by the investigator.

1

_TS_
Affiant's Initials

**Affidavit of Witness**
**Toby Steves**

On September 1, 2020, at approximately 9:00 a.m., Investigator Shirley Cain interviewed witness Toby Steves regarding the amended EEO Discrimination complaint filed against the United States Department of Interior, Bureau of Reclamation (BOR), by Complainant Daniel Hamann, case number DOI-BOR-19-0764.

1. Please state and spell your name.
   **A. Toby Steves; T-O-B-Y S-T-E-V-E-S**

2. Please state your current phone number and email address.
   **A. 303-445-3258; tsteves@usbr.gov**

3. Please state your current position title, grade and series.
   **A. Electrical Engineer, GS-0850-13**

4. Please state your current working unit and location.
   **A. Hydro-Power Diagnostics and SCADA team at the Denver Federal Center.**

5. Since when have you been in this position?
   **A. May 2003**

6. When did you begin employment with DOI?
   **A. Approximately April or May 2004; I was a contractor for the first year.**

7. Who is your first line supervisor? Dates?
   **A. Nathan Myers has been my supervisor for a few years. I do not recall the exact month and year.**

8. Who is your second line supervisor? Dates?
   **A. Bill McStraw has been my supervisor for approximately 3 years. He retired on August 31, 2020; I am not sure who is taking his place.**

9. Were these individuals your first and second-line supervisors on January 7, 2020?
   **A. Yes**

10. What was your working unit and location on January 7, 2020?
    **A. Hydro-Power Diagnostics and SCADA team at the Denver Federal Center.**

11. Briefly describe the duties of your position.
    **A. I am a team leader for three employees. Our job includes designing, building, repairing, and installing control systems for power plants.**

2

*TS*
Affiant's Initials

12. What positions, if any, do you supervise?

**A. I am not an official supervisor. I do have team lead duties which include workload and project management.**

13. Do you know Complainant in this case, Daniel Hamann? If so, how do you know him? When did you first meet him?

**A. I know of him; I do not know him personally. I had a couple of meetings with him. The first time I met him was in a meeting for a job approximately two years ago.**

14. Are you aware of Complainant's age?

**A. No**

15. What is your month and year of birth?

**A. August 1979**

**The issue accepted for investigation is as follows:**

**4. Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on or about January 7, 2020, he was not selected for an Electrical Engineer position advertised under the following vacancy announcement numbers:**
   **a. BR-DO-2019-193 (MPP-BM)**
   **b. BR-DO-2019-194 (DEU-BM)**
   **c. BR-DO-2019-195 (MPP-BM)**
   **d. BR-DO-2019-196 (DEU-BM)**

16. What was your role in, or knowledge of how this position was filled?

**A. My only role was to interview applicants and provide a recommendation for selection to Mr. Myers, who in turn provided the information to the selecting official.**

17. Do you have any knowledge of the process used to announce the position and prepare the lists of eligible for consideration MP vs. DEU?

**A. No**

18. Who requested the position be filled?

**A. No**

19. How many positions were advertised?

**A. No**

20. What were the opening and closing dates of the announcements?

**A. I do not know.**

3

Affiant's Initials

21. Was Complainant found qualified for the position?
   **A. I do not know.**

22. Were interviews conducted for the position? If so, did you serve on the interview panel?
   **A. Yes; I did serve on a SCADA interview panel.**

23. How did the interview panel determine who would be interviewed?
   **A. I do not know. I was provided with the names of individuals to be interviewed. I believe I reviewed their resumes prior to the interviews.**

24. How many applicants were interviewed?
   **A. I believe we interviewed four people.**

25. Was Complainant among the applicants interviewed?
   **A. Yes**

26. Were the same questions asked of all the interviewees?
   **A. Yes**

27. How did Complainant interview in comparison to the other individuals you interviewed?
   **A. He did not interview as well as the other individuals. He did not seem to be as well versed in the field.**

28. Complainant states he is more qualified than the individual(s) selected for the position. Please respond.
   **A. I disagree with that statement.**

29. Were selections made? If so, who was selected?
   **A. I believe so. I think Luke Buchholz was selected.**

30. Who was the selecting official?
   **A. I do not know.**

31. Were these selections made in accordance with your agency's policies and procedures?
   **A. I do not have any information regarding how selections were made.**

32. Were references checked on these applicants?
   **A. I did not check references. I do not know if someone else conducted reference checks.**

33. Was Complainant notified of his non-selection?
   **A. I do not know.**

4


Affiant's Initials

34. He believes he was discriminated against when he was not selected for the position because of his age. What is your response to that?

**A. I would say that is incorrect. He was not selected because another applicant was more qualified.**

35. Is there anything else you would like to add to your statement?

**A. I believe Complainant displayed he was not qualified for the position during the panel interview. Based on the evaluation metric I used, he ranked the lowest of all the applicants in two key areas. The first being cyber security, which is a hard requirement for the position. Applicants needed to display they were well versed in this area and Complainant expressed a disregard for the cyber security principles implemented by the Agency. The second area was the ability to work around dangerous electrical equipment. He did not appear to be well-qualified in this area either.**

36. May I contact you if I have additional questions?

**A. Yes**

I have reviewed this statement, which consists of five (5) pages, and hereby solemnly __X__ swear ___ affirm that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

TOBY STEVES   Digitally signed by TOBY STEVES
Date: 2020.09.02 08:54:54 -06'00'

_____        _____
Signature of Affiant                    Date

5

TS
Affiant's Initials

**WITNESS AFFIDAVIT**

I, Benson Muthee, am an employee of the Bureau of Reclamation, located in Lakewood, CO in the capacity of Human Resources Specialist, GS-0201-11 from October 2016 to the present date.

My telephone number during working hours is: (303) 445-3949

I HAVE BEEN ADVISED OF THE FOLLOWING:
I am required by Federal regulations and the U.S. Department of Interior (DOI) policy to cooperate fully and promptly with the investigator who has been assigned to conduct a thorough and impartial investigation into a complaint of discrimination against the DOI. I must provide a statement for the investigative report which is true and complete to the best of my knowledge and which discloses all of my firsthand knowledge having a bearing on the merits of the complaint. My statement is provided under oath (or affirmation), without a pledge of confidentiality, in accordance with Equal Employment Opportunity Commission rules and regulations and DOI policy. In addition, the complainant and the appropriate Agency officials involved in the EEO complaint process will receive the entire investigative file. I have the right to review my statement prior to signing it and may make initialized corrections if it is incomplete or inaccurate. I have the right to receive a copy of the signed statement.

Having been advised of the above information about my role as a witness in the investigative process, I solemnly swear __X__ affirm _____ the statement which follows is true and complete to the best of my knowledge and belief, and addresses the issues and concerns raised with me by the investigator.

1

__BRM____
(Initials)

On August 17, 2020, at approximately 8:00 a.m., EEO Investigator Shirley Cain conducted a telephonic interview with Benson Muthee regarding the EEO complaint filed by Daniel Hamann against the Bureau of Reclamation, Case Number DOI-BOR-19-0764.

*Background:*

1. Please state and spell your name.
   **A. Benson Muthee; B-E-N-S-O-N M-U-T-H-E-E**

2. Please state your current position title, grade and series.
   **A. Human Resources Specialist, GS-0201-11**

3. Please state your current working unit and location.
   **A. Human Resources Operation Office, Lakewood, CO. However, I work remotely from my home in Sacramento, CA.**

4. Since when have you been in this position?
   **A. October 2016**

5. What is your phone number and email address?
   **A. 303-445-3949; bmuthee@usbr.gov**

6. Briefly describe the duties of your position.
   **A. I work in the staffing and classification group; my primary roles are to post jobs on USAJOBS, process personnel actions, review applications, extend offers of employment, and onboard new employees. I also classify position descriptions.**

7. What was your working unit and location on January 7, 2020?
   **A. Human Resources Operation Office, Lakewood, CO. I work remotely from my home.**

8. Since when have you been employed by the DOI?
   **A. October 2016**

9. Since when have you been with the Federal Government?
   **A. I previously worked for SSA from May 2016 through September 2016.**

10. Who is your first line supervisor? Dates?
    **A. Kelli Adolff, Supervisory HRS, from 2018 to current.**

11. Who is your second line supervisor? Dates?
    **A. Heidi Murphy, HR Officer, from 2018 to current.**

12. Were these individuals your first and second-line supervisors on January 7, 2020?
    **A. Yes**

2

___BRM_____
(Initials)

13. What positions, if any, do you supervise?
    **A. I do not supervise any positions.**

14. Do you know Complainant in this case, Daniel Hamann?
    **A. No**

15. Are you aware of Complainant's age?
    **A. No**

16. What is your month and year of birth?
    **A. October 1988**

**The issue accepted for investigation is as follows:**

**4. Whether Complainant has been subjected to disparate treatment based on age (YOB: 1953) when on or about January 7, 2020, he was not selected for an Electrical Engineer position advertised under the following vacancy announcement numbers:**
   **a. BR-DO-2019-193 (DEU-BM)**
   **b. BR-DO-2019-194 (DEU-BM)**
   **c. BR-DO-2019-195 (MPP-BM)**
   **d. BR-DO-2019-196 (DEU-BM)**

17. What was your role in or knowledge of how this announcement?
    **A. I was the servicing HRS for this announcement.**

18. Please explain the process of how the position was advertised and the process used to prepare the lists of eligible for consideration. MP vs. DEU?
    **A. BR-DO-2019-193 was a merit promotion announcement, not DEU. I received the staffing request from the supervisor with two position descriptions. He wanted to advertise both ways one as Supervisory Control and Data Acquisition (SCADA) and the other was a non-SCADA. Announcements 193 and 194 were SCADA announcements; 195 and 196 are non-SCADA. We posted four announcements to target a larger applicant pool. Before the announcements** BRM **were posted, I met with the selecting official and someone from the Civil Rights office to discuss how to diversify the workforce, such as how to hire individuals with disabilities, minorities, and methods we could use to increase the applicant pool. The Merit Promotion ~~Principals~~ Principles were also discussed during this** BRM **meeting. The Civil Rights Manager signed the Pre-Recruitment Consultation form. When we met for this position, James Kirkland, Mr. Boggess, and I were present. ~~When certificates are issues, a Statement of Understanding is sent to the~~** BRM **~~selecting official advising him/her how to make selections.~~ When the certificates were issued, I advised the selecting official of the selection rules and sent an interview panel statement of understanding that identifies the instructions and requirement for conducting interview.**

19. Who requested the position be filled?
    **A. Jay Boggess**                                   3

                                                          ___BRM____
                                                          (Initials)

20. How many positions were advertised?
    A. **When I met with the supervisor to discuss the announcements, it was our** BRM
    **intention ~~was~~ to fill two positions.**

21. What were the opening and closing dates of the announcements?
    A. **October 15, 2019 through November 2, 2019, but it was extended to November 13, 2019.**

22. How many applications did you receive for each?
    A. **There was a total of 10 applicants for all four announcements. 193: 3; 194: 7; 195: 1; 196: 2. Some of the applicants applied under multiple announcements.**

23. What review process was used with the applications?
    A. **I reviewed the applications on approximately November 20, ~~2020~~, 2019 to ensure** BRM
    **all necessary documents were included; I reviewed the resumes and transcripts to**
    **ensure applicants met the minimum qualification and specialized experience** BRM
    **requirement. Applicants were issued a computer-generated score based on the**
    **information they entered in the system when applying for the job and were placed**
    **in categories based on their score (A included scores of 90-100, B included scores**
    **of 80-89.99, C included scores of 70-79.99).**

24. Was Complainant found qualified for the position? If so, was he among the best qualified applicants?
    A. **Yes; he was listed on certificate 194, which was a DEU certificate and included**
    **preference eligible veterans, Complainant is not a veteran. We have changed**
    **systems since this announcement, so I do not have access to all of the certificates.**
    **The information I am providing is based on emails I sent to Mr. Boggess.**
    **Complainant was not listed on the other DEU certificate (196).**

25. Was his name sent to the selecting official?
    A. **Yes**

26. Complainant states he is more qualified than the individuals selected for the position. Please respond.
    A. **I cannot respond to that because I only determine qualifications and whether**
    **applicants are best qualified. I do not make a determination as to whether one**
    **applicant is more qualified than another on the BQ certificate, that determination**
    **would be made by the selecting official.**

27. Who were the lists sent to?
    A. **Mr. Boggess**

28. Who was the selecting official?
    A. **Mr. Boggess**

4

29. Were selections made for the position?  When were the selections made?
   **A. Mr. Boggess sent me an email on January 8, 2020, stating two selections were made from certificate 193.**

30. Who was selected for the positions?
   **A. Luke Buchholtz and Chris Purdy**

31. Were these selections made in accordance with your agency's policies and procedures?If so, which one (name and number).
   **A. Yes; the Merit Promotion Hiring Desk Guide,** ~~I am not sure of the policy number.~~                    BRM

32. Were interviews conducted for the position?
   **A. Interviews were conducted per the selecting official.** ~~To my knowledge, there were no interviews.~~        BRM

33. Were references checked on these applicants?
   **A. Yes; I do not know what Complainant scored on the reference check.**

34. Was Complainant notified of his non-selection?
   **A. Yes**

35. If yes, when?
   **A. I do not have access to the system to give an exact date.  Usually the notification is made through USAJOBS within a few days of the selection.**

36. He believes he was discriminated against when he was not selected for the position because of his age.  What is your response to that?
   **A. I do not have a comment on this.**

37. Is there anything else you would like to add to your statement?
   **A. No**

38. May I contact you if I have additional questions?
   **A. Yes**

I have reviewed this statement, which consists of six (6) pages, and hereby solemnly
_X_swear ___affirm that it is true and complete to the best of my knowledge and belief.  I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

BENSON MUTHEE  Digitally signed by BENSON MUTHEE
                Date: 2020.08.26 18:20:54 -06'00'
_____        08/26/2020
Signature of Affiant                    Date

5

___BRM____
(Initials)

 

# United States Department of the Interior

BUREAU OF RECLAMATION
P.O. Box 25007
Denver, CO 80225-0007

IN REPLY REFER TO:

84-11000
1.1.2

## Memorandum

To:  Shirley Cain, EEO Investigator
Resolution Services, LLC

From:  Chris Romero, EEO Specialist
Bureau of Reclamation

Subject:  Response to Request for Production of Documents
*Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior*
Agency Case No. DOI-BOR-19-0764

Enclosed is Reclamation's response to your request for production of documents sent April 13, 2020. Please don't hesitate to contact me if you have any questions or concerns.

1. Organizational Chart of Complainant's work unit as of September 13, 2019, please include his chain of command.
   a. **Attached**

2. Workforce Profile for Complainant's entire unit as of September 13, 2019, supervisory and non-supervisory, including name, title/position, series, grade, and DOB.
   a. **Attached**

3. Copy of Complainant's position description.
   a. **Attached**

4. Copy of position description for Project Manager.
   a. **Agency Response: The Denver/Washington DC Office does not have "Project Manager" position descriptions or titles with the exception of IT Specialist positions, and Mr. Hamann is not an IT Specialist.**

5. Documentation of rotations since September 2015, including names, position/title, and DOB of individuals included in rotations.
   a. **Agency Response: No documentation. Please contact Complainant's supervisor directly.**

6. Copy of training opportunities from September 2015 through September 13, 2019, for Complainant's work unit, including names, position/title, and DOB of selectees.
    a. **Agency Response: This represents a burdensome request. The HR Training Section not maintain a list of all training announcements that go out year to year, nor do they maintain lists of selectees for each training announcement.**

7. Copy of project manager assignments from September 2015 through July 22, 2019, including names, position/title, and DOB.
    a. **Agency Response: No documentation. Please contact Complainant's supervisor directly.**

8. Copy of any documentation related to the delay of Complainant's 2016 career-ladder promotion to the GS-9 level.
    a. **Attached**

9. Copy of the merit promotion packets for the Supervisory Control and Data Acquisition position from 2016 and April 2018 to include:
    a. Request for Personnel Action, SF-52, requesting recruitment
    b. Vacancy Announcement
    c. Copy of the rating, ranking, scoring sheets documenting eligibility on all applicants for the above listed position
    d. Documentation regarding the recommending panel, including notes, score sheets, etc., (if applicable)
    e. Position Description for the above listed position
    f. Notification of Personnel Action, SF-50(s), effecting selection(s) at issue
    g. Documentation of Complainant's notification of non-selection/non-referral
    h. Agency policy pertaining to Merit Promotion procedures, to include rating, ranking and scoring of applications
    i. Any other documentation used in generating a Merit Promotion and/or Exception Certificate
        a. **Agency Response:**
            i. **For requests 9(a)-(c);9(e)-(g); and 9(i) - This is an extremely burdensome request without the actual announcement number(s). First, "Supervisory Control and Data Acquisition" is not an official position title. Only official position titles are announced. Second, the Denver/Washington DC Office announces hundreds of positions (announcements) each calendar year. Third, with each announcement there are anywhere from one to hundreds of applicants. Fourth, each applicant's application package may consist of up to 20 or more pages of documentation resulting in potentially hundreds of applicants and thousands of documents.**
            ii. **For request 9(d) – No documentation. Please contact Complainant's supervisor directly.**
            iii. **For request 9(h) – See response to request 16.**
        b. **EEO Specialist Note: I directly asked Complainant for the vacancy announcement numbers and he stated he was not aware of any. Please see the attached email correspondence.**

10. Copy of Complainant's performance evaluations for fiscal years 2016, 2017, and 2018.
    a. **Attached**

11. Copy of Complainant's performance standards for fiscal years 2016, 2017, and 2018.
    a. **See response to request 10.**

12. Copy of any correspondence related to Complainant's February 21, 2019, claim that his supervisor failed to address his concern regarding the difficulty of his project assignments. Please include management's response.
    a. **Agency Response: No documentation. Please contact Complainant's supervisor directly.**

13. Copy of any correspondence related to Complainant's claim that he was cut off from speaking during meetings on March 3, 2020, February 21, 2019, October 4, 2018, and February 14, 2018. Please include management's response.
    a. **Agency Response: No documentation. Please contact Complainant's supervisor directly.**

14. Copy of agency negotiated agreements, if Complainant is a member of the bargaining unit, that apply to harassment/hostile work environment.
    a. **Agency Response: No documentation. Complainant is not a member of the bargaining unit.**

15. Copy of agency negotiated agreements, if Complainant is a member of the bargaining unit, that apply to merit promotion.
    a. **Agency Response: No documentation. Complainant is not a member of the bargaining unit.**

16. Copy of agency Merit Promotion policy.
    a. **Attached**

17. Copy of agency Anti-Discrimination and Harassment policy.
    a. **Attached**

18. Copy of training records for Complainant, Jay Boggess, William McStraw, and Thomas Luebke showing completion of Anti-Discrimination and Harassment training.
    a. **Attached**

3

 

# United States Department of the Interior

BUREAU OF RECLAMATION
P.O. Box 25007
Denver, CO 80225-0007
August 27, 2020

IN REPLY REFER TO:

84-11000
1.1.2

## Memorandum

To:     Shirley Cain, EEO Investigator
        Resolution Services

From:   Chris Romero, EEO Specialist
        Bureau of Reclamation

Subject: Response to Supplemental Request for Production of Documents
         *Daniel Hamann v. David Bernhardt, Secretary, U.S. Department of the Interior*
         Agency Case No. DOI-BOR-19-0764

Enclosed is Reclamation's response to your supplemental request for production of documents.
Please don't hesitate to contact me if you have any questions or concerns.

1. Copy of any documentation related to budget allocation to charge overtime for
   Complainant from 2016 through May 22, 2020.

   **Attached.**

2. Copy of any documentation related to the Agency's failure to assign Complainant with
   Project Manager authority for the following projects:
   a. LNFH Surface Intake and Fish Passage (F061A) project

      **Attached**

   b. NIIP Pumping Plan G7.5LA HVAC Addition (UC6845) project

      **Attached**

   c. Cle Elum Gate Hoist Construction Support (CEGHI1)

      **Attached**

   d. Shasta Dam Crest Road Vehicle Barrier Construction Support (SDCRV)

      **Attached**

3. Copy of the merit promotion packet for the Electrical Engineer position under vacancy announcement numbers BR-DO-2019-193 (DEU-BM); BR-DO-2019-194 (DEU-BM); BR-DO-2019-195 (MPP-BM); and, BR-DO-2019-196 (DEU-BM). Please include the following documents for **EACH** announcement:

   a. Organizational chart for the organizational unit in which the non-selection(s) in question occurred

      **Attached – same org chart for all.**

   b. Statistical breakdown of the organizational unit where the position(s) in question is located as of the date of the non-selection. Provide name, position title/series/grade, and application EEO category for all employees

      **Attached – same workforce profile for all.**

   c. Information regarding all selections made by the selecting official going back 2 years from the date of the action in question to include the position title/series/grade, date of selection, and EEO category(s) of the selectee(s)

      **Attached**

   d. Request for Personnel Action, SF-52, requesting recruitment

      **No documentation. The electronically submitted SF-52 is turned into the electronic SF-50 Notification of Personnel Action, once the selection is processed in FPPS and Monster, and is no longer a separate document.**

   e. Vacancy Announcement

      **Attached**

   f. Applications and all other documents submitted for the positions in question as follows: If Complainant was not referred, submit this information for all applicants who were referred and Complainant. If Complainant was referred, submit this information for selectees and Complainant only.

      **Attached. Please note, Complainant was not referred for BR-DO-2019-196.**

   g. Copy of the rating, ranking, scoring sheets documenting eligibility on all applicants for the above listed position

      **Attached.**

   h. Documentation regarding the recommending panel, including notes, score sheets, etc., (if applicable)

**HR is unable to provide this information. Please consult selecting official and hiring panel members. Emails from the selecting official concerning selections and closing out the certificates have been provided.**

i.  Copy of reference checking documentation on applicant (if applicable)

   **Attached.**

j.  Referral certificate and selection method(s) for the position in question annotated to reflect candidates' EEO category(s). The certificate should clearly identify the selectee(s) and the selecting and approving officials

   **Attached.**

k.  Position Description for the above listed position

   **Attached. Please note: PD #T00256A is specific to BR-DO-2019-193 and 194 (SCADA); PD #0800122 is specific to BR-DO-2019-0195 and 196 (non-SCADA).**

l.  Notification of Personnel Action, SF-50(s), effecting selection(s) at issue

   **Attached**

m.  Documentation of Complainant's notification of non-selection/non-referral

   **Attached**

n.  Agency policy pertaining to Merit Promotion procedures, to include rating, ranking and scoring of applications

   **Attached**

o.  Any other documentation used in generating a Merit Promotion and/or Exception Certificate

   **Attached**

3

**POSITION DESCRIPTION** *(Please Read Instructions on the Back)*

| 1. Agency Position No. |
|---|
| 0800074 |

**2. Reason for Submission**
[X] Redescription  [ ] New  [X] Hdqtre  [ ] Field
[ ] Reestablishment  [X] Other

Explanation (Show any positions replaced)
Updates T00262A. Replaces T00262A/B/C/D.

**3. Service** [X] Hdqtrs [ ] Field

**4. Employing Office Location** Lakewood, CO

**5. Duty Station** Lakewood, CO

**6. OPM Certification No.**

**7. Fair Labor Standards Act**
[X] Exempt  [X] Nonexempt

**8. Financial Statements Required**
[ ] Executive Personnel / Financial Disclosure
[ ] Employment and Financial Interest

**9. Subject to IA Action**
[X] Yes  [ ] No

**10. Position Status**
[X] Competitive
[ ] Excepted (Specify in Remarks)
[ ] SES (Gen.)  [ ] SES (CR)

**11. Position is**
[ ] Supervisory
[ ] Managerial
[X] Neither

**12. Sensitivity**
[X] 1—Non-Sensitive  [ ] 3—Crit.
[ ] 2—Noncritical Sensitive  [ ] 4—Special Sensitive

**13. Competitive Level Code**
GS-11: R42

**14. Agency Use**
FPL: GS-11

| 15. Classified/Graded by | Official Title of Position | Pay Plan | Occupational Code | Grade | Initials | Date |
|---|---|---|---|---|---|---|
| a. Office of Personnel Management | | | | | | |
| b. Department, Agency or Establishment | Electrical Engineer | GS | 0850(14) | 5/7/ | JLH | 04/17/2014 |
| c. Second Level Review | | | | | | |
| d. First Level Review | | | | | | |
| e. Recommended by Supervisor or Initiating Office | Electrical Engineer | GS | 850 | 11 | | |

**16. Organizational Title of Position (if different from official title)**

**17. Name of Employee (if vacant, specify)**

**18. Department, Agency, or Establishment**
Dept. of the Interior

a. First Subdivision
Bureau of Reclamation

b. Second Subdivision
Technical Services Center

c. Third Subdivision  Electrical & Mechanical Engineering
Infrastructure Services Division Division

d. Fourth Subdivision
Hydropower Diagnostics and SCADA (86-68450)

e. Fifth Subdivision

Signature of Employee (optional)

**19. Employee Review—This is an accurate description of the major duties and responsibilities of my position.**

**20. Supervisory Certification.** I certify that this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships, and that the position is necessary to carry out Government functions for which I am responsible. This certification is made with the knowledge that this information is to be used for statutory purposes relating to appointment and payment of public funds, and that false or misleading statements may constitute violations of such statutes or their implementing regulations.

a. Typed Name and Title of Immediate Supervisor
Nathan Myers
Supervisory Electrical Engineer

Signature  Date  1/1/14

b. Typed Name and Title of Higher-Level Supervisor or Manager (optional)

Signature  Date

**21. Classification/Job Grading Certification.** I certify that this position has been classified/graded as required by Title 5, U.S. Code, in conformance with standards published by the U.S. Office of Personnel Management or, if no published standards apply directly, consistently with the most applicable published standards.

Typed Name and Title of Official Taking Action
Jennifer Harris
HR Specialist

Signature  Date 4/17/14

**22. Position Classification Standards Used in Classifying/Grading Position**
Professional Work in the Engineering and Architecture Group, 0800 November 2008.

Information for Employees. The standards, and information on their application, are available in the personnel office. The classification of the position may be reviewed and corrected by the agency or the U.S. Office of Personnel Management. Information on classification/job grading appeals, and complaints on exemption from FLSA, is available from the personnel office or the U.S. Office of Personnel Management.

| 23. Position Review | Initials | Date | Initials | Date | Initials | Date | Initials | Date | Initials | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Employee (optional) | | | | | | | | | | |
| b. Supervisor | | | JSB | 4-2-18 | | | | | | |
| c. Classifier | KA | 12/10/16 | KA | 4/2/2018 | | | | | | |

**24. Remarks**
BUS: 7777  CLC GS-9: A91  Cybersecurity codes: 641, 671
Risk Low  CLC GS-7: A83  CLC GS-5: F31
✗ FLSA Non-Exempt GS-9 and below.
Not to be used for Rotation Engineer Training Program. KAdolf  Drug Testing: NO

**25. Description of Major Duties and Responsibilities (See Attached)**

NSN 7540-00-634-4265  Previous Edition Usable  5008-106

OF 8 (Rev. 1-85)
U.S. Office of Personnel Management
FPM Chapter 295

TECHNICAL SERVICE CENTER
Infrastructure Services Division
Hydropower Diagnostics and SCADA
Electrical Engineer
GS-0850-11
PN: T00282A  QR0X074  KM 4/2/18

## INTRODUCTION

The Hydropower Technical Services Group functions within the Infrastructure Services Division to provide research and development, engineering, technical, and other specialized consulting and field services concerned with operating and maintaining water and power projects, structures, and facilities. It also serves as the contact for unusual conditions and emergency situations for facilities in operation and maintenance status.

The primary purpose of the position is to perform a variety of power engineering functions which are unique to the operational requirements of the Hydropower Technical Services program. This is highly specialized technical engineering work to support project and policy staff.

**Collaborative Level II** – Through regular communication establishes a collaborative working relationship with stakeholders to ensure that their needs are heard and addressed. Identifies and analyzes problems; distinguishes between relevant and irrelevant information to make logical decisions and develop solutions. Is able to communicate effectively with all levels and types of organizations and audiences. Uses partnerships to achieve collaborative solutions and resolve complex problems. Uses project management, conflict management, mediation, team building, and negotiation tools to achieve results in a collaborative spirit. Analyzes diverse viewpoints to make planning decisions and solve work problems.

**Telework Determination:** The Bureau of Reclamation has determined that the duties of this position are suitable for telework only during and emergency or natural disaster.

## MAJOR DUTIES AND RESPONSIBILITIES

**(50%)** The incumbent serves as an electrical engineer performing duties on electric power projects and related research in the areas of power apparatus evaluation, diagnostics, field testing, research, and operation and maintenance associated with large motors and generators, power plant and switchyard equipment, and associated control systems. The incumbent performs analytical calculations employing standard mathematical and engineering disciplines relative to the design, construction, control, modeling, maintenance, and operation of electrical systems and equipment as well as field acceptance and diagnostic testing. The incumbent performs specific assignments as outlined by team leaders within the technical areas covering power system engineering, control, automation, instrumentation, insulation, computers, operation and maintenance support, and field acceptance and diagnostic testing. The incumbent conducts routine projects with limited general instruction and guidance from the team leader and assists more experienced engineers with more complex projects including collection and analysis of pertinent data and preparation of corresponding diagrams, drawings, and reports.

(15%) Working under the technical supervision of team leaders or more experienced researchers, incumbent plans, constructs, tests, analyzes, and reports on prototype and feasibility related research efforts. Performs laboratory and field tests in support of power system high-voltage and high-power research, development, diagnostics, operation and maintenance activities. This includes operation of complex test, measurement, and data acquisition equipment, use of all appropriate field site and laboratory safety procedures and directions, including the appropriate use of personal and hazardous energy control-related protective equipment. Works in a laboratory and field environment to program and function test data acquisition equipment. This includes hardware items (such as microcontrollers, A/D boards, PLCs, and RTUs) and the associated software programs. Prepares test equipment, procedures, and schedules for performance of laboratory and field testing.

(10%) Designs complex measurement and test equipment using state-of-the-art software design programs and fundamental electrical/electronic design theory. Tests and calibrates complex test equipment for project, research, and developmental work. This includes design, fabrication, and/or operation of hardware and software-driven equipment.

(25%) Travels to the field as appropriate to support client programs including testing, data gathering, inspection, coordination, installation, and participation on client-led engineering teams. Implementation of the work can require being on travel status as much as 25 percent of the time. Prepares reports, engineering recommendations, estimates, design summaries, and designers' operating criteria for features within the group's area of responsibility. This may include field test reports, research reports, and associated schematics, drawings, and diagrams to document research activities, field activities, new test methods, and new test equipment. The reports and criteria may involve complex concepts and ideas that require considerable investigation for preparation. Performs studies that are pertinent to and contribute to Reclamation's mission and objectives. Keeps abreast of standards, codes, catalogs, handbooks, and new developments in the industry related to the work for the purpose of adapting new procedures and suggesting improvements.

Performs other related duties as assigned.

**FACTORS**

**Knowledge Required by the Position**                    **Level 1-7, 1,250 points**

Maintain professional engineering knowledge concerned with utilizing/exploring electrical and electronic phenomena and the motion, emissions, conduction, and behavior of electrical energy currents; designing electrical equipment, components, or systems; and generating and transmitting electrical energy in an efficient manner.

Skill to modify standard practices and adapt equipment or techniques to solve a variety of engineering problems; adapt precedents; or make significant departures from previous approaches to accommodate the specialized requirements as they relate to an assignment.

Basic knowledge in the theory, practice, and techniques of power engineering. Ability to clearly communicate verbally and to prepare well-written, clear, and concise technical analysis reports and related correspondence.

Ability to consistently develop and sustain cooperative working relationships. Provide or presents information clearly and communicates effectively calling upon or seeking assistance

from supervisors or others when additional information is needed or should be shared. Be a principal contributor on team-based projects or coordinate team projects, providing technical oversight and direction through sound engineering judgment and experience.

**Supervisory Controls**                                    **Level 2-4, 450 points**

Incumbent is given assignments by the project team leader requiring the application of mathematical and engineering disciplines. Assignments are technically complex and require the application of engineering skills and principles based on experience. Although duties are performed under the immediate technical supervision of the team leader, the incumbent conducts projects mostly independently, only occasionally requiring specific instructions and guidance regarding the conduct of the assignment. Work is generally not checked as it progresses, but is reviewed for adequacy and compliance with instructions upon completion. If problems should arise, the incumbent shall resolve a majority if the conflicts independently while keeping the supervisor informed of progress and potentially controversial problems and concerns.

**Guidelines**                                               **Level 3-3, 275 points**

Incumbent seeks out guidelines concerning overall requirements, objectives, and priorities from the group manager or team leader, as required. Other guidelines may include industrial standards and practices, technical publications, Reclamation policies, on-site conditions at facilities, manufacturer's catalogs and handbooks, and job precedent. The incumbent may be required to utilize general guidelines requiring engineering judgment to adapt guidance or develop new guidance to understand complex issues. Higher-level engineers and the supervisor are available for consultation and guidance as needed with respect to more complex and demanding assignments.

**Complexity**                                               **Level 4-4, 225 points**

Assignments involve working from field data, design criteria, Reclamation, industry, and national standards. Work often deviates from prescribed methods, procedures, practices, and standard engineering principles so incumbent must use judgment in selecting appropriate guides and demonstrates resourcefulness in planning the details of assignments. Work will involve a moderate level of complex analysis, development, and theory.

**Scope and Effect**                                         **Level 5-3,150 points**

The purpose of this position is to provide engineering support to the various programs in the Hydropower Diagnostics and SCADA Group. The purpose of the work is to investigate and analyze any of a variety of problems or conditions and to provide recommendations for resolution. The engineering determinations affect the design or operation of equipment or facilities with regard to economy, efficiency, and safety of the systems involved.

**Personal Contacts**                                        **Level 6-2, See Purpose**

Contacts are with Reclamation employees at various levels from management and design engineers through project technicians and craft employees. Similar contacts outside Reclamation include other agencies, electric utilities, universities, technical societies, architecture-engineering firms, contractors, and equipment manufacturers.

**Purpose of Contacts**                                    Level 7-B, 75 points

Contacts are for the purpose of planning and coordinating work efforts, discussing technical equipment requirements with manufacturers, discussing contract requirements, resolving questions from field personnel, and exchanging necessary information to accomplish assigned projects.

**Physical Demands**                                       Level 8-3, 50 points

The work is mostly sedentary with some long periods of standing, walking, and lifting materials up to 75 pounds, driving tight vehicles and a mobile laboratory van, soldering, and occasionally operating small machine tools such as a drill press, grinder, band saw, etc. On travel to field facilities, substantial walking, bending, lifting, and climbing may be involved as well as crouching and crawling in restrictive areas such as generator air housings, transformers, etc.

**Work Environment**                                       Level 9-2, 20 points

Most of the work is performed in an office setting or sophisticated electrical/electronic laboratory with high-voltage testing facilities and small machine tool shop. Personal safety devices must be worn such as safety shoes and eye protection for certain work. Field work may require additional safety precautions such as wearing a safety hardhat and adhering to established onsite safety procedure. Field work will often expose the incumbent to potentially hazardous situations involving high-voltage, high-power equipment, laboratory settings, high noise levels, dust climbing, high winds and high or low temperatures, nasty spiders, adverse weather conditions and chemicals that may require special safety precautions.

A valid driver's license is required. The incumbent must maintain compliance with the Infrastructure Services Safety Certification Program.

**TOTAL POINTS: 2,495**
**POINT RANGE: 2,355-2,750**
**GRADE: GS-11**

This is a banded position with promotion potential to the full performance level of GS-11. Noncompetitive promotion to the GS-11 level is contingent upon completion of all qualification requirements, recommendation by the supervisor, and demonstrated performance in the manner and level of difficulty described at the GS-9 level.

## DUTIES AND RESPONSIBILITIES

The duties of this position are similar to those of the target position, GS-11, except that closer direction and guidance are provided.

This is a banded position with promotion potential to the full performance level of GS-11. Noncompetitive promotion to the GS-09 level is contingent upon completion of all qualification requirements, recommendation by the supervisor, and demonstrated performance in the manner and level of difficulty described at the GS-07 level.

## DUTIES

As a trainee, the electrical engineer assists higher-grade electrical engineers with program/project activities carried out in compliance with Federal, State, and local regulations, laws, and standards. Problems are readily solved by application of basic principles, theories, and established practices. At this level tasks may be similar to those of nonprofessional employees but are assigned primarily for training or development purposes. The duties require some judgment in recognizing situations which may require referral to others, planning work procedures, and selecting standard practices and data to be applied to specific problems where precedents are applicable.

Knowledge Required                                    Level 1-6, 950 points

At this level the work requires a professional knowledge of conventional methods and techniques of electrical engineering that would enable the engineer to independently perform assignments of moderate difficulty; i.e., those that do not require significant deviation from established methods and precedents.

Supervisory Controls                                  Level 2-2, 125 points

The supervisor/team leader provides continuing or individual assignments by indicating generally what is to be done, limitations, quality and quantity expected, deadlines, and priority of assignments. The employee uses initiative in carrying out recurring assignments independently without specific instructions, but refers deviations, problems, and unfamiliar situations not

covered by instructions to the supervisor/team leader for direction. The supervisor/team leader provides additional, specific instructions for new, difficult or unusual assignments including suggested work methods or advice on source material available. The supervisor assures that finished work and methods used are technically accurate and in compliance with instructions or established procedures. Review of the work increases with more difficult assignments if the employee has not previously performed such assignments.

<u>Guidelines</u>                                                        Level 3-2, 125 points

The employee uses a number of established procedures and guidelines directly applicable to assignments. Guidelines prescribe established procedures and provide clear precedents. The employee is expected to exercise judgment in selecting and applying the most appropriate guideline.

<u>Complexity</u>                                                        Level 4-2, 75 points

Work consists of related steps, processes, and methods in completing assignments. The employee chooses the appropriate approach from among established methods and procedures to complete recurring assignments. The employee follows prescribed processes and methods as assignments increase in difficulty and recognizes the different actions to be taken depending on the source of information or any factual differences.

<u>Scope and Effect</u>                                                    Level 5-2, 75 points

Work involves applying specific rules, regulations, and procedures related to engineering and performing clearly defined assignments. Work affects the accuracy, quality, and timeliness of the processes or services of the unit.

Factors 6, 7, 8, and 9 are similar to those of the target position.

**TOTAL POINTS: 1,495**
**POINT RANGE: 1,355-1,600**
**GRADE: GS-7       :**

<div align="center">

**STATEMENT OF DIFFERENCE**
**Electrical Engineer**
**GS-0850-05**
PN: ~~T00262D~~ 0800074

</div>

This is a banded position with promotion potential to the full performance level of GS-11. Noncompetitive promotion to the GS-7 level is contingent upon completion of all qualification requirements, recommendation by the supervisor, and demonstrated performance in the manner and level of difficulty described at the GS-5 level.

**DUTIES AND RESPONSIBILITIES**

The duties of this position are similar to those of the target position, GS-11, except that much closer direction and guidance are provided.

**FES EVALUATION STATEMENT**
**TECHNICAL SERVICE CENTER**
**Infrastructure Services Division**
**Hydropower Diagnostics and SCADA**
**Electrical Engineer**
**GS-0850-11**
PN: TO82b2A 0800074

**PROPOSED TITLE, SERIES, AND GRADE:** Electrical Engineer, GS-850-11

**ORGANIZATION AND LOCATION:** Technical Services Center, Infrastructure Services Division, Hydropower Diagnostics and SCADA (86-68450).

**REFERENCES USED:** Professional Work in the Engineering and Architecture Group, 0800 November 2008.

**BACKGROUND INFORMATION:** The Hydropower Technical Services Group functions within the Infrastructure Services Division to provide research and development, engineering, technical, and other specialized consulting and field services concerned with operating and maintaining water and power projects, structures, and facilities. It also serves as the contact for unusual conditions and emergency situations for facilities in operation and maintenance status. The primary purpose of the position is to perform a variety of power engineering functions which are unique to the operational requirements of the Hydropower Technical Services program. This is highly specialized technical engineering work to support project and policy staff.

**TITLE AND SERIES DETERMINATION:** The 850 series covers positions managing, supervising, leading, and/or performing professional engineering and scientific work concerned with utilizing and exploring electrical and electronic phenomena and the motion, emissions, conduction, and behavior of electrical energy currents; designing electrical equipment, components, or systems; and generating and transmitting electrical energy in an efficient manner. The basic title for this position is *Electrical Engineer*. Additionally this position requires a functional code identifying further specifics of the position. This position has been determined to fit the function code of Testing and Evaluation (14). The Professional Work in the Engineering and Architecture Group, 0800 November 2008 classification standard was used to determine grade and series.

**GRADE DETERMINATION:**

| Evaluation Factors | Level Assigned | Points Assigned |
|---|---|---|
| 1. Knowledge Required by the Position | 1-7 | 1,250 |
| **Requirements of factor 1-6:** Broad professional knowledge of, and skill in applying, a wide range of engineering or architectural theories, concepts, principles, standards, and methods sufficient to determine and/or execute actions for a wide range of assignments involving combinations of complex features; devise, customize, operate, oversee, and/or evaluate specialized information technology systems, processes, and applications pertaining to the performed work and the delivery of its design, end products, or services; formulate, execute, advise on, and explain recommendations or solutions to modify standard practices, equipment, devices, processes, and techniques and resolve a wide variety of complex problems; adapt precedents or existing strategies to meet unusual needs or special demands; act as a principal contributor on team-based projects or coordinate a team project and provide technical oversight and direction; and prepare, present, and evaluate plans, designs, reports, and correspondence. | | |
| **Characteristics of Current Position:** Maintain professional engineering knowledge concerned | | |

with utilizing/exploring electrical and electronic phenomena and the motion, emissions, conduction, and behavior of electrical energy currents; designing electrical equipment, components, or systems; and generating and transmitting electrical energy in an efficient manner. Skill to modify standard practices and adapt equipment or techniques to solve a variety of engineering problems; adapt precedents; or make significant departures from previous approaches to accommodate the specialized requirements as they relate to an assignment. Basic knowledge in the theory, practice, and techniques of power engineering. Ability to clearly communicate verbally and to prepare well-written, clear, and concise technical analysis reports and related correspondence. Ability to consistently develop and sustain cooperative working relationships. Provide or presents information clearly and communicates effectively calling upon or seeking assistance from supervisors or others when additional information is needed or should be shared. Be a principal contributor on team-based projects or coordinate team projects, providing technical oversight and direction through sound engineering judgment and experience.

This position does not meet factor 1-8 because the incumbent does not have to possess mastery of, and skill in applying expertise in advanced engineering theories, principles, concepts, standards, and methods.

| 2. Supervisory Controls | 2-4 | 450 |
|---|---|---|

Requirements of Factor 2-4: The supervisor outlines overall objectives and available resources. The employee and supervisor, in consultation, discuss scope of the assignment, approaches, time frames, and possible execution phases. The employee plans and carries out the assignment; resolves most conflicts independently; coordinates the work with others as necessary; interprets policy and regulatory requirements in terms of established objectives; keeps the supervisor informed of progress and potentially controversial problems, concerns, issues, or other matters; develops changes to plans and/or methodology; and provides recommendations for improvements in order to meet program objectives. The supervisor reviews completed work for soundness of overall approach, effectiveness in meeting requirements or producing expected results, the feasibility of recommendations, and adherence to requirements.

Characteristics of Current Position: Incumbent is given assignments by the project team leader requiring the application of mathematical and engineering disciplines. Assignments are technically complex and require the application of engineering skills and principles based on experience. Although duties are performed under the immediate technical supervision of the team leader, the incumbent conducts projects mostly independently, only occasionally requiring specific instructions and guidance regarding the conduct of the assignment. Work is generally not checked as it progresses, but is reviewed for adequacy and compliance with instructions upon completion. If problems should arise, the incumbent shall resolve a majority if the conflicts independently while keeping the supervisor informed of progress and potentially controversial problems and concerns.

This position does not meet factor 2-5 because the incumbent does not only receive administrative and policy direction from the supervisor.

| 3. Guidelines | 3-3 | 275 |
|---|---|---|

Requirements of Factor 3-3: The employee uses a wide variety of reference materials and manuals which are not always directly applicable to the work and may have gaps in specificity. Precedents are available outlining the preferred approach to more general problems or issues. The employee considers precedents and uses judgment to research, select, interpret, modify, adapt, and apply available guidelines to specific problems or issues.

Characteristics of Current Position: Incumbent seeks out guidelines concerning overall requirements, objectives, and priorities from the group manager or team leader, as required.

Other guidelines may include industrial standards and practices, technical publications, Reclamation policies, on-site conditions at facilities, manufacturer's catalogs and handbooks, and job precedent. The incumbent may be required to utilize general guidelines requiring engineering judgment to adapt guidance or develop new guidance to understand complex issues. Higher-level engineers and the supervisor are available for consultation and guidance as needed with respect to more complex and demanding assignments.

This position does not meet factor 3-4 because the employee does not use very general guidelines and precedents which are often insufficient, inapplicable to the assignment, or have gaps in specificity requiring considerable interpretation and/or adaptation for application to the particular issues and problems.

| 4. Complexity | 4-4 | 225 |
|---|---|---|

Requirements of Factor 4-4: Work consists of a variety of assignments involving many different and unrelated engineering or architecture processes and methods. The employee decides what needs to be done by researching, analyzing, testing, and evaluating information, unusual circumstances, unconventional issues, conditions, and problems; considering different, incomplete, and often conflicting information and alternatives; and determining efficient, effective, and feasible solutions to meet the project or situation requirements and constraints. The employee exercises judgment and originality in planning and prioritizing the sequence, direction, and progress of the work; devising solutions and actions to resolve issues, conditions, and problems; justifying actions, determinations, and recommendations; and modifying, adapting, and/or refining existing applications, processes, precedents, and techniques.

Characteristics of Current Position: Assignments involve working from field data, design criteria, Reclamation, industry, and national standards. Work often deviates from prescribed methods, procedures, practices, and standard engineering principles so incumbent must use judgment in selecting appropriate guides and demonstrate resourcefulness in planning the details of assignments. Work will involve a moderate level of complex analysis, development, and theory.

This position does not meet factor 4-5 because the work does not consist of in-depth analysis of controversial or high visibility issues.

| 5. Scope and Effect | 5-3 | 150 |
|---|---|---|

Requirements of Factor 5-3: Work consists of routine electrical systems studies and advisory services associated with construction, repair, and maintenance of facilities such as medical centers or utilities. Work results affect the efficiency, cost, and performance requirements for electrical systems and equipment in serviced facilities; and adequacy and adaptability of new and existing electrical equipment and systems for current and future needs.

Characteristics of Current Position: The purpose of this position is to provide engineering support to the various programs in the Hydropower Technical Services Group. The purpose of the work is to investigate and analyze any of a variety of problems or conditions and to provide recommendations for resolution. The engineering determinations affect the design or operation of equipment or facilities with regard to economy, efficiency, and safety of the systems involved.

This position does not meet factor 5-4 because the work of the position does not affect the operations of other agencies.

| 6. Personal Contacts | Level 2 | See #7 |
|---|---|---|

Requirements for Factor 2: Employees in the same agency and/or the general public in a moderately structured setting. Contacts may include professionals and specialists from other occupations or functions (e.g., scientists, legal professionals, contractors, and client organizational representatives). Contacts within the agency may be with people at various levels, such as headquarters or field offices.

**Characteristics of Current Position:** Contacts are with Reclamation employees at various levels from management and design engineers through project technicians and craft employees. Similar contacts outside Reclamation include other agencies, electric utilities, universities, technical societies, architecture-engineering firms, contractors, and equipment manufacturers.

**This position does not meet factor 3** because typically contacts do not include individuals or groups from outside the agency, including consultants, contractors, or representatives of the media or professional associations, in moderately unstructured settings.

| 7. Purpose of Contacts | Level B | 75 |
|---|---|---|

**Requirements for Factor B:** To plan, coordinate, or advise on work efforts, or to resolve issues or operating problems. Contacts involve influencing or persuading people who have a cooperative attitude and mutual goals. Discussions typically involve identifying options for resolving problems.

**Characteristics of Current Position:** Contacts are for the purpose of planning and coordinating work efforts, discussing technical equipment requirements with manufacturers, discussing contract requirements, resolving questions from field personnel, and exchanging necessary information to accomplish assigned projects.

**This position does not meet factor level C** because the purpose of the contacts is not to influence and persuade persons or groups to comply with established policies or to accept established methods using persuasion or negotiation, or by establishing rapport to gain information.

| 8. Physical Demands | 8-3 | 50 |
|---|---|---|

**Comments:** The work is mostly sedentary with some long periods of standing, walking, and lifting materials up to 75 pounds, driving light vehicles and a mobile laboratory van, soldering, and occasionally operating small machine tools such as a drill press, grinder, band saw, etc. On travel to field facilities, substantial walking, bending, lifting, and climbing may be involved as well as crouching and crawling in restrictive areas such as generator air housings, transformers, etc. This fully meets the requirements of factor 8-3.

| 9. Work Environment | 9-2 | 20 |
|---|---|---|

**Comments:** Most of the work is performed in an office setting or sophisticated electrical/electronic laboratory with high-voltage testing facilities and small machine tool shop. Personal safety devices must be worn such as safety shoes and eye protection for certain work. Field work may require additional safety precautions such as wearing a safety hardhat and adhering to established onsite safety procedure. Field work will often expose the incumbent to potentially hazardous situations involving high-voltage, high-power equipment, laboratory settings, high noise levels, dust climbing, high winds and high or low temperatures, nasty spiders, adverse weather conditions and chemicals that may require special safety precautions. This fully meets the requirements for factor 9-2.

| Total Points: 2,495 |
|---|

**POINT RANGE: 2,355–2,750**

**Final Grade Allocation: GS-11**

**CLASSIFICATION DECISION: Electrical Engineer, GS-850-11**

Exempt

/s/ Jennifer Harris
Human Resources Specialist
4/17/14



**RECLAMATION**
*Managing Water in the West*

## FAIR LABOR STANDARDS ACT (FLSA) DESIGNATION WORKSHEET (5 CFR Part 551)
(Reference *Instructions* when completing this form)

Position Title/Pay Plan/Series/Grade: Electrical Engineer, GS-0850-11

Position#/Region/Office/OrgCode: TSC; Hydropower Diagnostics & SCADA 86-68450     PN# 08.0074

**I. Salary-based nonexemption (§551.203) and/or nonexemption of certain employees (§551.204)** (unless §551.208(c) and (d), or §551.211, or §551.212 exemption criteria apply)

- ☐ Annual rate of basic pay is less than $23,660 (proposed rule change increases this to $47,476)
- ☐ Equipment operating or protective occupations
- ☐ Clerical occupations
- ☐ Technician work below GS-09 and many, but not all, of those positions that are at or above GS-09
- ☐ Nonsupervisory employees in the Federal Wage System (or comparable systems)
- ☐ Employee/position requires highly specialized, technical skills and knowledge that can only be acquired through prolonged job training and experience, such as Air Traffic Control or Aircraft Operation (applies to nonsupervisory white-collar employees).

If any of these boxes are checked, the employee/position is nonexempt and exemption criteria need not be evaluated.
**Comments:**

**II. Exemption Criteria.** The employee is Exempt from FLSA if his/her duties/position meet the "terms and spirit" of one or more of the exemption criteria below (*see General Principles* §551.202).
**Primary Duty:** the duty that constitutes the major part (over 50 percent) of an employee's work. A duty constituting less than 50 percent of an employee's work may be credited as the primary duty if the work: 1) constitutes a substantial, regular part of the work assigned and performed; 2) is the reason for the existence of the position; and 3) is clearly exempt work in terms of the basic nature of the work, the frequency with which the employee must exercise discretion and independent judgment, and the significance of the decisions made. (§551.104 *Primary Duty*)

**A. Executive Exemption (§551.205)** – all three boxes must be checked in order to apply this exemption criteria

- ☐ Primary duty is management (defined by §551.104 *Management*) of a Federal agency or any subdivision thereof; **AND**
- ☐ Customarily and regularly directs the work of two or more other employees – must have "operating authority" over employees. This does not include those who merely assist the manager or supervise in the manager's absence; **AND**
- ☐ Has authority to hire or fire other employees **OR** whose suggestions and recommendations of such are given particular weight.

Particular Weight: When the employee's suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are: 1) part of the employee's job duties; 2) regular and recurring in frequency; and 3) regularly relied upon for decision making, even if higher level manager's recommendations have more importance and if the employee does not have authority to make the ultimate decision as to the "supervised" employee's change in status.
**Justification:**

**B. Administrative Exemption (§551.206)** – both boxes must be checked in order to apply this exemption criteria

- ☐ Primary duty is the performance of office or non-manual work directly related to the management or general business operations, as distinguished from production functions, of the employer or the employer's customers; **AND**
- ☐ Primary duty includes the exercise of discretion and independent judgment on matters of significance.

Management or general business operations: to meet this requirement, the employee must perform work directly related to assisting with the running or servicing of the "business." Examples include: finance, accounting, budgeting, auditing, purchasing, procurement, safety and health, human resource management, computer network and database administration, legal and regulatory compliance. Depending upon the purpose of the work and the organizational context (line or staff), work in certain occupations may be either exempt or nonexempt (§551.206(h)) (i.e., investigators or inspectors could perform either line or staff work and must be evaluated within the context of assigned duties and organizational context). (DOL Fact Sheet #17C) (Federal Register page 52758)

Discretion and independent judgment: implies that the employee has authority to make an independent choice, even if the decisions or recommendations are reviewed at a higher level and, upon occasion, revised or reversed. Examples include, but are not limited to: 1) authority to formulate, affect, interpret, or implement management policies or operating practices; 2) carries out major assignments; 3) performs work that affects the organization's operations to a substantial degree; 4) authority to commit the employer in matters that have significant financial impact; 5) authority to waive or deviate from established policies and procedures without prior approval; 6) authority to negotiate and bind the organization on significant matters; 7) provides consultation or expert advice to management; 8) involved in planning long or short-term objectives; 9) investigates and resolves matters of significance on behalf of management; and 10) represents the organization in handling complaints, arbitrating disputes, or resolving grievances. (§551.206(b) and (c))
**Justification:**

**C. Professional Exemption (§551.207)** – in order to apply this exemption criteria, must check this box **AND** all the boxes of at least one of the two professionals listed below; **OR** check all the boxes listed for Computer Employees below

☑ Primary duty must be the performance of work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction or requiring invention, imagination, originality, or talent in a recognized field of artistic or creative endeavor

**1. Learned Professionals (§551.208)** – all boxes must be checked in order to apply this exemption criteria

☑ Primary duty must be the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; **AND**

☑ Perform work requiring advanced knowledge (cannot be attained at high school level) which is predominantly intellectual in character and includes work requiring the consistent exercise of discretion and judgment; **AND**

☑ The advanced knowledge must be in a field of science or learning which includes the traditional professions of physical, chemical, and biological sciences, accounting, actuarial computation, engineering, architecture, law, medicine, theology, teaching, and other occupations as distinguished from mechanical arts or skilled trades; **AND**

☑ The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction which restricts the exemption to professions where specialized academic training is a standard prerequisite for entrance into the profession. On unusual occasions, engineering technicians performing work comparable to that performed by professional engineers on the basis of advanced knowledge may also be exempt (§551.208(3)(f)); however, they are also an example of an occupation that would not meet this particular criteria (§551.208(3)).

**Justification:**
Advanced knowledge in Electrical Engineering and underlying components (SCADA). *However, nonexempt at GS-05 through GS-09.*

**2. Creative Professionals (§551.209)** – must check the box in order to apply this exemption criteria

☐ Primary duty must be the performance of work requiring invention, imagination, originality, or talent in a recognized field of artistic or creative endeavor as opposed to routine mental, manual, mechanical, or physical work. Examples include actors, musicians, composers, conductors, soloists. Painters who, at most, are given the subject matter of their painting and writers who choose their own subject may also be included. Employees engaged in the work of newspapers, magazines, television, or other media are not exempt creative professionals if they only collect, organize, and record information that is routine or already public.

**Justification:**

**3. Computer Employees (§551.210)** – all three boxes must be checked in order to apply this exemption criteria

☐ Employee's annual salary is not less than $23,660 (proposed to be $47,476), or hourly pay rate is not less than $27.63; **AND**

☐ The employee must work as a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker in the computer field, performing duties described under primary duties below; **AND**

☐ Primary duty must consist of: 1) the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications; 2) the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications; 3) the design, documentation, testing, creation, or modification of computer programs related to machine operating systems; **OR** 4) a combination of the aforementioned duties, the performance of which requires the same level of skills.

The computer employee exemption does not include employees engaged in the manufacture or repair of computer hardware and related equipment and does not include employees whose work is highly dependent upon, or facilitated by, the use of computers and computer software programs, and who are not primarily engaged in computer systems analysis and programming or other similarly skilled computer-related occupations.

**Justification:**

*See Notes Above.   KA 4/2/18*

| Final Designation of FLSA Exemption Status: | ☑ Exempt   ☒ Nonexempt |
|---|---|
| If exempt, which exemption criteria applies? §551.208 Professional | |
| Name/Title of Evaluator: Jennifer McCollum, Human Resources Specialist | |
| Date of Determination: 4/2/2018 | |

# Management Survey

(For position risk designation)

| Position Location | Lakewood, CO |
|---|---|
| Position Title | Electrical Engineer |
| Grade and Series/Pay Band | GS-0850-11 |
| Manager/Supervisor/Lead Name and Telephone Number | Jay Boggess x2933 |

**Instructions:** As someone intimately familiar with agency needs and expectations in your workgroup, your input is essential in determining the appropriate risk designation level and investigative requirements for the above position. Please provide responses to the following questions.

1. Does this position require access or eligibility for access to classified information? ☐ YES ☒ NO

   If yes, please specify the level of access:

2. Does the position involve other National Security duties? ☐ YES ☒ NO

   If yes, please specify:

3. Does the position involve fiduciary responsibilities? ☐ YES ☒ NO

   If yes, please specify the level: ☐ More than $50 million ☐ $10 to 50 million

   ☐ Under $2 million ☐ $2 to 10 million

4. What level of supervision does this position receive?

   ☐ <u>Limited:</u> Occasional review to ensure adherence to major policies; however, the individual conducting the review is not a technical expert.

   ☐ <u>Periodic:</u> Ongoing spot review to ensure adherence to organizational policy and other concerns; the reviewer has relevant technical expertise.

   ☒ <u>Close Technical:</u> All work is reviewed by a technical expert.

5. Does the position involve public contact/interaction duties? ☐ YES ☒ NO
   If yes, please explain the extent of interaction:

6. Does the position involve access to or control over personal, private, sensitive but unclassified, controlled unclassified, or proprietary information? ☒ YES ☐ NO
   If yes, please explain:
   research until patents filled.

7. Other (to be specified by the position risk designator):

8. Manager/Supervisor/Lead additional comments or additional duties/factors warranting consideration:

Signature: _____ Date: 2-Apr-2018

# Investigate

## Position Designation Record

| | |
|---|---|
| Agency | DOI; Bureau of Reclamation |
| Position Title | Electrical Engineer |
| Series and Grade/Pay Band | GS-0850-11 |
| Position Description Number | TBD   0800074 |
| Designator's Name & Title | Jennifer McCollum, Human Resources Specialist |

| Investigation | Form Required |
|---|---|
| T1 | SF 85 |

| Sensitivity | Risk Level |
|---|---|
| Non-Sensitive | Low Risk |

Signature: _Jennifer McCollum_     Date: 4/02/2018

Name: _Jennifer McCollum_

000483     Exhibit F-11 - page 16 of 20

### Determining Which Positions Should File A Confidential Financial Disclosure Report:  A Worksheet

This job aid is designed to assist supervisors in determining whether a career employee should file a Confidential Financial Disclosure Report (OGE Form 450). If you have questions about the criteria listed below, contact Tia Barner at tia.barner@sol.doi.gov.  On a very rare occasion, a GS-12 or below may be a filer, this worksheet will help you determine if a GS-12 or below should be a filer.

| **I. Pay** | | |
|---|---|---|
| 1. ❑ Is the employee's position classified at least a GS-13 level? <br><br> OR <br><br> ❑ Employee is below GS-13 but exercises significant judgment without supervisory review | ❑ **Yes** <br> Go to question 2. | ☒ **No** <br> Employee does not need to file UNLESS, employee is GS-12 or below who exercises significant judgment without supervisory review, continue with worksheet to determine if employee needs to file |
| **II. Type of Work Done By the Employee** | | |
| 2. Does the employee's work involve at least one of the following: <br><br> ❑ contracting or procurements above $150,000; <br> Example: A GS-7 Office Automation Clerk is issued a purchase card to buy office supplies for her work unit as needed. Such an employee is generally excluded from filing. <br> ❑ administering, awarding, monitoring, or making determinations regarding grants, subsidies, licenses, or other federal benefits; <br> ❑ regulating, auditing, or inspecting non-federal entities*; <br> ❑ performing other activities, when those activities will have a direct and substantial effect on the financial interests of non-federal entities. <br> *Non-federal entities include, for example, businesses, non-profit organizations, and state and local governments. | ❑ **Yes** <br> Go to question 4. | ❑ **No** <br> Go to question 3. |
| 3. Is the employee serving in any other position where there is a potential for conflict of interest, appearance of favoritism or loss of impartiality? <br><br> Examples include: <br> ❑ investigating or prosecuting violations of criminal or civil law; <br> ❑ representing the United States in litigation or other proceedings; <br> ❑ scientific or social science research, when the research will have a direct and substantial effect on the financial interests of non-federal entities. | ❑ **Yes** <br> Go to question 4. | ❑ **No** <br> If you said "no" to questions 2 and 3, the employee does not need to file. |

| 4. Does the employee: | ❑ **Yes**<br>The employee does not need to file a confidential financial disclosure report. | ❑ **No**<br>Go to question 5. |
|---|---|---|
| ❑ only provide information?<br>Example: A GS-13 librarian for the Patent and Trademark Office (PTO) shows PTO staff members how to research the uniqueness of an invention and design complex search queries of the agency's electronic databases. The librarian does not make decisions on the patentability of the invention.<br>**OR**<br>❑ only work on administrative or peripheral matters?<br>**Example:** A draftsman prepares the drawings to be used by an agency in soliciting bids for construction work on a bridge. He is not involved in the contracting process associated with the construction.<br>**Example:** An agency has just hired a GS-5 Procurement Assistant who is responsible for typing and processing procurement documents, answering status inquiries from the public, performing office support duties such as filing and copying, and maintaining an online contract database. The Assistant has no actual contracting or procurement responsibilities. | | |

**III. Employee's Level of Responsibility**

| 5. Does the employee: | ❑ **Yes**<br>Go to question 6. | ❑ **No**<br>The employee does not need to file a confidential financial disclosure report. |
|---|---|---|
| ❑ engage in the work activity identified in Section II by exercising significant judgment in performing any of the following job functions?<br>❑ making decisions;<br>❑ approving or disapproving;<br>❑ making recommendations;<br>❑ conducting investigations;<br>❑ rendering advice or opinions.<br>**OR**<br>❑ actively supervise a subordinate's performance of any of the above-listed job functions? | | |

| 6. Does the employee receive substantial supervisory review? | ❑ **Yes**<br>The employee does not need to file a confidential financial disclosure report. | ❑ **No**<br>The employee should file a confidential financial disclosure report. |
|---|---|---|
| **Example:** A GS-13 employee at an independent grant making agency conducts the initial agency review of grant applications from nonprofit organizations and advises the Deputy Assistant Chairman for Grants and Awards about the merits of each application. Although the process of reviewing the grant applications entails significant judgment, the employee's analysis and recommendations are reviewed by the Deputy Assistant Chairman, and the Assistant Chairman, before the Chairman decides what grants to award. | | |

7-2674 (08-17)
Bureau of Reclamation



## CYBERSECURITY DATA STANDARD CODE
## DETERMINATION CHECKLIST

**RECLAMATION**
*Managing Water in the West*

### Position Description

Pay Plan, Series, Grade: GS-0850-11 (XX-XXXX-XX)    Official Title: ELECTRICAL ENGINEER

PD Number: ~~T00262A~~  0800074  KA 4/2/18    Organization: ELECTRICAL DESIGN GROUP

### Step 1

Does this position include the performance of Information Technology, Cybersecurity, or Cyber-related functions?

☒ Yes - Move to Step 2        ☐ No - Position is coded "Not Applicable" OPM Code "000"
                                          Move to Step 4. Manager and HR signatures only.

### Step 2

Using the Guidance for Making Federal Cybersecurity Coding Determinations, which Category(ies) are relevant to this position? Table B in Section 2 provides Category Descriptions. Once you have the Category(ies) identified, move to Step 3.

☒ Securely Provision    ☐ Operate & Maintain    ☐ Oversee & Govern    ☐ Protect & Defend

☐ Analyze    ☐ Collect & Operate    ☐ Investigate

### Step 3

Using the Guidance for Making Federal Cybersecurity Coding Determinations to determine the relevant Speciality Areas and Work Roles associated with the Category(ies) identified in Step 2. Table A in Section 1 provides pre-established determinations for specific Reclamation positions. Table C in Section 2 provides the entire framework including Work Role Descriptions.

Select the most critical Work Roles (up to three). Rank in most critical, descending order (i.e., most critical function is listed first).

| Rank | Category | Specialty Area | Work Role | OPM Code |
|------|----------|----------------|-----------|----------|
| 1 | Securely Provision | Systems Requirements Planning | Systems Requirements Planner | 641 |
| 2 | Securely Provision | Test & Evaluation | System Testing and Evaluation Specialist | 671 |
| 3 |  |  |  |  |

### Step 4

Information Resources Management Council Official's Signature        Date: 3/23/18

**JAY BOGGESS**    Digitally signed by JAY BOGGESS
                   Date: 2018.03.15 15:42:20 -06'00'        3-15-2018
Manager/Supervisor's Signature                              Date:

Human Resources Signature                                   Date: MAR 2 3 2018

Page 1 of 2

RECLAMATION
*Managing Water in the West*

---

**Instructions**

This Checklist is to be attached to every position description (PD) at the full performance level (FPL). The specific Cybersecurity Data Standard Codes (OPM Codes or Cybersecurity Codes) for a specific PD are to be entered into the Federal Personnel/Payroll System(FPPS) for every employee and vacancy assigned to that PD. The OPM Code(s) for the FPL are to be used for employees and vacancies at all developmental grade levels below the PD's FPL. Servicing Human Resources (HR) offices are responsible for coordinating the completion of the Checklists, ensuring that the Checklists are attached to the PDs, and entering the OPM Code(s) into FPPS. Servicing HR offices, Information Resources Management Council (IRMC) members, and supervisors and managers are all responsible for collaboratively determining the appropriate OPM Code(s) for every position. The servicing HR offices and the positions' supervisors/managers must sign all Checklists. The designated IRMC members must sign the Checklists with OPM Code determinations in the range of "100-999" - they do not need to sign determinations of "000 – Not Applicable".

---

Department of the Interior
Employee Performance Appraisal Plan

DI-3100
September 2012 (previous edition obsolete)

## U.S. DEPARTMENT OF THE INTERIOR
### Employee Performance Appraisal Plan

| Employee Name: Daniel W. Hamann | | Title/Series/Grade: GS-850-07 | |
|---|---|---|---|
| Duty Station: Denver TSC, Lakewood CO | Appraisal Period: P ~ 010 | From: October 1, 2015 | To: September 30, 2016 |

**Part A-1: Notification of Standards:** *Signatures certify that Critical elements/standards were discussed. (Part E)*

| Employee: *Dan* | Rating Official: | Reviewing Official (if applicable*): |
|---|---|---|
| Date: 11-4-15 | Date: 2-Nov-2015 | Date: |

**Part A-2: Employee Input into Development of Standards:** *Signatures certify employee involvement was solicited by supervisor:*

| Employee: *Dan Hamann* | 1-4-15 | Rating Official: | Date: 2-Nov-2015 |
|---|---|---|---|

**Part A-3: Employee Training:** *Signatures certify employee was provided training in Performance Management System*

| Employee: *Dan Hamann* | Date: 11-4-15 | Rating Official: | Date: 2-Nov-2015 |
|---|---|---|---|

**Part A-4: Individual Development Plan:** *Signatures certify that employee's individual development plan was created (Optional)*

| Employee: | Date: 12-13-16 | Rating Official: | Date: 13-Dec-2015 |
|---|---|---|---|

**Part B: Progress Review:** *Signatures certify that performance was discussed.*

| Employee: | Date 4-20-16 | Rating Official: | Date: 20-Apr-2016 |
|---|---|---|---|

**Part C: Summary Rating Determination:** Assign the numerical rating level that accurately reflects the employee's performance for each of the Critical elements (Use only whole numbers: **Exceptional = 5 points; Superior = 4 points, Fully Successful = 3 points, Minimally Successful = 2 points, and Unsatisfactory = 0 points.**) *See reverse for complete instructions.*

| Element Number | Numerical Rating |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| Total: | |

**Total Numerical Rating** _____ ÷ **Number of Elements** _____ = **Numeric Summary Rating** _____

**Part D: Summary Rating:** Use conversion chart to determine rating. **Check appropriate box:**

| | | |
|---|---|---|
| | Exceptional | 4.6 – 5.00 AND No Critical element rated lower than "Superior" |
| | Superior | 3.6 – 4.59 AND No Critical element rated lower than "Fully Successful". |
| | Fully Successful | 3.0 – 3.59 AND No Critical element rated lower than "Fully Successful". |
| | Minimally Successful | 2.0 – 2.99 AND No Critical element rated lower than "Minimally Successful". |
| | Unsatisfactory | One or more Critical elements rated "Unsatisfactory". |

| Employee: | Rating Official: | Reviewing Official: (if applicable): |
|---|---|---|
| Date: | Date: | Date: |

Check here if Interim Rating: _____
Performance Award:    QSI _____        Cash: $ _____ or _____ % of pay        Time Off _____

## Instructions for Completing the Employee Performance Appraisal Plan

**Establishing Critical elements and Performance standards**

Critical elements (at least one, but not more than five) must be established for each employee at the start of the performance year. Through these elements, employees are held accountable for work assignments and responsibilities of their position. A Critical element is an assignment or responsibility of such importance that Unsatisfactory performance in that element alone would result in a determination that the employee's overall performance is Unsatisfactory. Please see the Performance Appraisal Handbook for more detailed information.

Performance standards are expressions of the performance threshold(s), requirement(s), or expectation(s) that must be met for each element at a particular level of performance. They must be focused on results and include credible measures. You may use the attached Benchmark Performance standards to describe general parameters of the standards, but must augment those benchmarks with specific, measurable criteria such as quality, quantity, timeliness and/or cost effectiveness, for the "Fully Successful" level for each element. Rating officials are strongly encouraged to develop specific performance standards at additional levels to ensure that the employee has a clear understanding of the levels of performance expected. *At least one, and preferably all, Critical elements must show how the element is linked to strategic goals, such as Government Performance Results Act (GPRA) or mission related goals of the organization. These goals should be aligned throughout the organization (i.e., show how the strategic goal cascades from the SES down to the lowest non-supervisory levels.) The employee should be able to clearly understand how the results they are held responsible for are linked to the results that those in their supervisory/managerial chain are held responsible for.*

**Employee Involvement:** Employees must be involved in the development of their performance plans. Part A-2 of this form requires employee and supervisor signatures certifying that employee input into the development of the plan was solicited.

**Individual Development Plan: (Optional)** The IDP provides a connection between the employee's career interests and needs to the organizational mission and priorities. The employee and the rating official should develop goals together.

**Progress Reviews:** A progress review is required approximately mid-way through the rating period. Part B should be completed after the progress review. Any written feedback or recommended training can be noted on a separate sheet and attached to the employee performance appraisal plan (EPAP).

**Assigning the Summary Rating:** A specific rating is required for each Critical element to reflect the level of performance demonstrated by the employee throughout the rating period. Only one numerical rating level is assigned for each Critical element. Before the rating official assigns a summary rating, he/she should consider all interim summary ratings received for the employee during the annual appraisal period. The summary rating is assigned as follows:

A.  Assess how the employee performed relative to the described performance standards.

B.  Document the employee's performance with a narrative that describes the achievements for the Critical elements as compared to the performance standards. A narrative must be written for each Critical element assigned a rating of Exceptional, Minimally Successful, or Unsatisfactory, to provide examples of the employee's performance that substantiate and explain how the performance falls within the level assigned. There is a block provided in the narrative for each Critical element.

C.  In Part C of this form, assign one of the numerical rating levels that accurately reflects the employee's performance for each of the Critical elements (Use only whole numbers: Exceptional = 5 points, Superior= 4 points, Fully Successful = 3 points, Minimally Successful = 2 points, and Unsatisfactory = 0 points).

D.  Add up the numerical rating levels to get a total, and then divide the total by the number of Critical elements to get an average. (Elements that are "not rated" because an employee has not had a chance to perform them during the rating year are not assigned any points and should not be used to determine the average rating.)

E.  Assign a summary rating based on the table in Part D of this form. Employee and supervisor sign the form certifying that the rating was discussed. Reviewing Official's signature is required for Exceptional, Minimally Successful and Unsatisfactory ratings.

**Note:** Whenever an employee is rated **"Unsatisfactory"** on one or more critical elements, the overall rating **must** be **"Unsatisfactory"** (regardless of total points). **The rating official should immediately contact the servicing Human Resources Office.** Whenever an employee is rated **"Minimally Successful"** on one or more Critical elements, the overall rating may not be higher than **"Minimally Successful"** (regardless of total points).

**Part E: Critical Elements and Performance Standards:** *List each of the employee's Critical elements (at least one, but not more than five) and their corresponding performance standards. If Benchmark standards are used, indicate "Benchmark standards are attached" in the space below, and ensure they are attached to this form. Identify the GPRA/strategic/mission goal that the Critical element supports. **At a minimum, measurable criteria must be identified at the Fully Successful level.***

| Critical Element 1: | **GPRA/Strategic Goal:** Ensure continued implementation of TSC Project Management and workload management practices to improve the timeliness and cost accountability of TSC products.<br><br>**Performance Measure: <u>Workload Management</u>.** Support Reclamation's program accomplishment within the TSC by providing quality service and products to internal and external clients, in part through adherence to the TSC Operating Guidelines. Plan, organize, prioritize, monitor, and accomplish work within established budget and schedule. *Perform required administrative tasks and incorporate concern for safety and security in all work.* |
|---|---|
| | **Performance Standards** |
| **Exceptional** | See Benchmark standards attached. |
| **Superior** | See Benchmark standards attached. |
| **Fully Successful** | In addition to attached Benchmark standards, the following measurable criteria apply.<br>• <u>Generally</u> completes tasks/jobs (including checks/reviews) in a timely manner and within agreed to budgets through the use of project management tools (such as earned value analysis, task based estimates, project management plans, etc.)<br><br>• Collaborates and coordinates with fellow employees, colleagues, supervisors/managers, and/or clients.<br><br>• Demonstrates good, sound performance that meets organizational goals; <u>consistently</u> meets clients' expectations.<br><br>• Peer (and other) reviewers and checkers are <u>generally</u> afforded sufficient time to review employee's work. |
| **Minimally Successful** | See Benchmark standards attached. |
| **Unsatisfactory** | See Benchmark standards attached. |

**Narrative Summary**

Describe the employee's performance for each Critical element. A narrative summary must be written for each element assigned a rating of Exceptional, Minimally Successful, or Unsatisfactory.

Dan started with us in September 2015. He has worked on a variety of projects as he learns the ropes of Reclamation. Some of these were: Antioch Fish Release, Black Canyon, Boca Dam, Folsom UHA MS Project schedule, GC TPP switching diagram update, Hungry Horse eDraws issues, Minidoka submittal review, Morrow Pt drawings, Truckee Canal work and Yuma Desalting Plant chlorine containment.

**Rating for Critical Element 1:**

[] Exceptional-5    [] Superior-4    [X] Fully Successful-3    [] Minimally Successful-2    [] Unsatisfactory-0

**Part E: Critical Elements and Performance Standards:** *List each of the employee's Critical elements (at least one, but not more than five) and their corresponding performance standards. If Benchmark standards are used, indicate "Benchmark standards are attached" in the space below, and ensure they are attached to this form. Identify the GPRA/strategic/mission goal that the Critical element supports.* ***At a minimum, measurable criteria must be identified at the Fully Successful level.***

| Critical Element 2: | **GPRA/Strategic Goal:** 4 C's: communication, consultation, and cooperation, all in the service of conservation. |
|---|---|
| | **Performance Measure: Communication and Collaboration:** Organize and prepare, or direct and coordinate the preparation of, materials such as specifications documents, reports, meeting minutes, travel reports, drawings, maps, graphs, or figures; deliver oral presentations or briefings; and participate in meetings – to communicate, promote TSC capabilities, and convey work status and findings to team members, clients, superiors, and others. |

| Performance Standards | |
|---|---|
| **Exceptional** | See Benchmark standards attached. |
| **Superior** | See Benchmark standards attached. |
| **Fully Successful** | In addition to attached Benchmark standards, the following measurable criteria apply. <ul><li><u>Generally</u> provides quality written documents that require only minor additional data and/or clarification upon review.</li><li>Provides quality oral communication appropriately tailored to a target audience.</li><li><u>Consistently</u> seeks appropriate assistance on issues/concerns, including technical, in a timely manner, (i.e., effective networking).</li><li><u>Consistently</u> meets clients' expectations.</li><li>Demonstrates respect for team members and clients.</li></ul> |
| **Minimally Successful** | See Benchmark standards attached. |
| **Unsatisfactory** | See Benchmark standards attached. |

## Narrative Summary

Describe the employee's performance for each Critical element. A narrative summary must be written for each element assigned a rating of Exceptional, Minimally Successful, or Unsatisfactory.

Dan is communicating effectively with co-workers and has kept the client and supervisor apprised of the work he is performing. Dan consistently seeks appropriate assistance when issues or concerns arise in a timely manner.

**Rating for Critical Element 2:**

[] Exceptional-5     [] Superior-4     [X] Fully Successful-3     [] Minimally Successful-2     [] Unsatisfactory-0

**Part E: Critical Elements and Performance Standards:** *List each of the employee's Critical elements (at least one, but not more than five) and their corresponding performance standards. If Benchmark standards are used, indicate "Benchmark standards are attached" in the space below, and ensure they are attached to this form. Identify the GPRA/strategic/mission goal that the Critical element supports.* **At a minimum, measurable criteria must be identified at the Fully Successful level.**

| Critical Element 3: | **GPRA/Strategic Goal:** Contribute to the accomplishment of GPRA performance targets for Reclamation's goals for efficient use and delivery of water and hydropower by providing support activities, analyses, and information that meet Reclamation needs.<br><br>**Performance Measure:** **Technical.** Perform, check, and/or assist others with analyses, investigations, or designs for assigned projects or studies. Such work may include data collection and evaluation, computations, analysis, modeling, or layouts. *Maintain technical skills.* |
|---|---|
| **Performance Standards** ||
| **Exceptional** | See Benchmark standards attached. |
| **Superior** | See Benchmark standards attached. |
| **Fully Successful** | In addition to attached Benchmark standards, the following measurable criteria apply.<br>▪ Applies appropriate technical codes, criteria, standards, guidelines in the accomplishment of tasks/jobs.<br>▪ Analyses and results/products are <u>generally</u> sound and accurate; peer review comments identify only minor errors.<br>▪ Demonstrates good, sound performance that meets organizational goals and <u>consistently</u> meets clients' expectations. |
| **Minimally Successful** | See Benchmark standards attached. |
| **Unsatisfactory** | See Benchmark standards attached. |

**Narrative Summary**

Describe the employee's performance for each Critical element. A narrative summary must be written for each element assigned a rating of Exceptional, Minimally Successful, or Unsatisfactory.

Dan is developing his technical skills in multiple areas. He came to us knowing AutoCAD and is quickly picking up BOR standards and procedures. He is learning TBE's and equipment estimates. He participated in the P.K. Sen advanced electric machines classes and organized study sessions to help the "youngsters" get the most out of the class.

Dan has many years of different electrical engineering experience he is now applying to the BOR's goals of water delivery and electric power generation and exhibits a sustained support of organizational goals. Dan is quickly adapting to the Bureau of Reclamation type of work. He demonstrates good sound performance that meets organizational goals.

**Rating for Critical Element 3:**

[ ] Exceptional-5    [X] Superior-4    [ ] Fully Successful-3    [ ] Minimally Successful-2    [ ] Unsatisfactory-0

**Privacy Act Notice:** Chapter 43 of Title 5, U.S.C., authorizes collection of this information. The primary use of this information is by management and your servicing human resources office to issue and record your performance rating. Additional disclosures of this information may be: To MSPB, Office of Special Counsel, EEOC, the FLRA, or an arbitrator in connection with administrative proceedings; to the Department of Justice or other Federal agency, courts, or party to litigation when the Government is a party to or has an interest in the judicial or administrative proceeding; to a congressional office in response to an inquiry made on behalf of an individual; to the appropriate Federal, State, or local government agency investigating potential violations of civil or criminal law or regulation; and to Federal State, local and professional licensing boards in determining qualifications of individuals seeking to be licensed.

If your agency used the information furnished on this form for purposes other than those indicated above, it may provide you with an additional statement reflecting those purposes.

**Refusal to sign:** In cases where the employee refuses to sign the EPAP, the supervisor has the authority to implement the performance standards and rating without employee agreement. Supervisor's should identify in the employee's signature block that the "Employee Refused to sign."

## Benchmark Employee Performance Standards

**Exceptional:**

**Employee:** The employee demonstrates particularly excellent performance that is of such high quality that organizational goals have been achieved that would not have been otherwise. The employee demonstrates mastery of technical skills and a thorough understanding of the mission of the organization and has a fundamental impact on the completion of program objectives.

The employee exerts a major positive influence on management practices, operating procedures and/or program implementation, which contribute substantially to organizational growth and recognition. The employee plans for the unexpected and uses alternate ways of reaching goals. Difficult assignments are handled intelligently and effectively. The employee has produced an exceptional quantity of work, often ahead of established schedules and with little supervision.

The employee's oral and written communications are exceptionally clear and effective. He/she improves cooperation among participants in the workplace and prevents misunderstandings. Complicated or controversial subjects are presented or explained effectively to a variety of audiences so that desired outcomes are achieved.

**Superior:**

**Employee:** The employee demonstrates unusually good performance that exceeds expectations in critical areas and exhibits a sustained support of organizational goals. The employee shows a comprehensive understanding of the objectives of the job and the procedures for meeting them.

Effective planning by the employee improves the quality of management practices, operating procedures, task assignments and/or program activities. The employee develops and/or implements workable and cost-effective approaches to meeting organizational goals.

The employee demonstrates an ability to get the job done well in more than one way while handling difficult and unpredicted problems. The employee produces a high quantity of work, often ahead of established schedules with less than normal supervision.

The employee writes and speaks clearly on difficult subjects to a wide range of audiences and works effectively with others to accomplish organizational objectives.

**Fully Successful:**

**Employee:** The employee demonstrates good, sound performance that meets organizational goals. All critical activities are generally completed in a timely manner and supervisor is kept informed of work issues, alterations and status. The employee effectively applies technical skills and organizational knowledge to get the job done. The employee successfully carries out regular duties while also handling any difficult special assignments. The employee plans and performs work according to organizational priorities and schedules. The employee communicates clearly and effectively.

**Minimally Successful:**

**Employee:** The employee's work is marginal and is somewhat less than fully successful. The employee's performance demonstrates that generally assigned work requires some but not a substantial amount of supervisory assistance for the quality level and timeliness, much beyond the initial assignment, to insure that a certain level of functions are performed in addition to periodic status memos, there is a need for more than the usual amount of communication, as well as the self effort to get the operations, as required. The quantity of work produced is often marginal, and maybe completed a few errors, and are not always timely obtained or kept to meet Agency Office goals. Objectives of the critical duties and accomplishments are only limited due periods of work product.

**Unsatisfactory:**

**Employee:** The employee's performance is unsatisfactory. The quality and quantity of the employee's work are not adequate for the position. Work products do not meet the minimum requirements expected.

The employee demonstrates little or no contribution to organizational goals; failure to meet work objectives; inattention to organizational priorities and administrative requirements; poor work habits resulting in missed deadlines and/or incomplete work products; strained work relationships; failure to respond to client needs; and/or lack of response to supervisor's corrective efforts.

# Understanding Performance Management

**An Employee's Duties** – Your supervisor should provide you with a copy of the position description for your job. Your position description is the official record of your main duties and responsibilities and is used in developing performance appraisal criteria. Take some time to read through your position description. Ask your supervisor about anything that is not clear to you. Your supervisor should review your position description with you at least once a year to ensure that it accurately reflects your main duties and responsibilities. Keep a copy of your position description and refer to it from time to time. You may want to make notes on your copy when your job changes, so that you can discuss the changes with your supervisor.

**Employee Performance Appraisal Plan (EPAP)** – The Employee Performance Appraisal Plan (EPAP) is the form used by the Department to evaluate the work performance of its employees under the 5-level appraisal system When used effectively, the EPAP is a valuable communication tool for both employee development and organizational accomplishments.

Managers and supervisors are responsible for the following:

1. Complying with provisions of the U.S Department of the Interior's Performance Appraisal Departmental Manual and Handbook (370 DM 430).
2. Establishing performance elements and performance standards that are linked to organizational goals and position descriptions.
3. Monitoring employee performance, communicating with employees about their performance and resolving performance problems.
4. Approving or reviewing ratings recommended by supervisors or rating officials.

The EPAP has several important goals:

1. Clarifying how the employee's performance requirements link to the strategic mission of their organization;
2. Increasing individual productivity by giving employees the information they need to do their jobs effectively;
3. Improving individual/organizational productivity by promoting communication between employees and supervisors about job-related matters, so that better and more efficient methods of operation can be developed; and,
4. Providing a process to recognize employees for good performance and their contributions to the organization.

**Appraisal Period** – The appraisal period begins October 1 and ends September 30 of each year, except where specific exceptions have been granted The minimum period on which an appraisal may be based is 90 calendar days. During the appraisal period, your supervisor may periodically discuss your work with you and let you know how you are doing. In addition, before the end of the appraisal period, the supervisor will conduct one formal progress review with you. This progress review is another opportunity for you and your supervisor to discuss your progress, review your position description, identify any training needs or improvements, or to revise your critical performance elements and performance standards.

**Performance Elements and Performance Standards** – Your supervisor will explain your duties and responsibilities to you and discuss what is expected of you in order to achieve satisfactory performance. To further define your performance expectations, your supervisor will establish performance elements and performance standards for your job. Employee input into this process is required.

Performance elements tell you what work assignments and responsibilities need to be accomplished during the appraisal period. All employees must have one performance element that is linked to the strategic mission or Government Performance Results Act goals of the organization. Between one and five performance elements can be established for a position. These elements are all considered critical elements. They are of such importance to the position that unsatisfactory performance in one element alone would result in a determination that the employee's overall performance is Unsatisfactory.

Performance standards tell employees how well performance elements must be done by defining achievable rating levels for: Exceptional, Superior, Fully Successful, Minimally Successful, and Unsatisfactory performance. These five rating levels focus on results and include credible measures such as quality, quantity, timeliness, cost effectiveness, etc.

Your overall performance is evaluated by your supervisor or rating official using these performance standards. A determination that an employee's overall performance is Unsatisfactory could result in remedial action and unsatisfactory performance may be the basis for removal or reduction in grade. Minimally Successful performance may result in the denial of a within-grade increase.

**The Rating Process** – At the end of the appraisal period, your supervisor will carefully review the performance elements and standards for your position. Based on your actual performance, one of five rating levels may be assigned. The rating will be presented to you during the formal performance discussion between you and your supervisor. The appraisal will be completed with your signature and a copy provided to you. This rating is documented on the EPAP form and is considered as your Rating of Record. Your rating of record is directly linked to your eligibility for certain types of pay increases and awards.

**Rewarding Performance** – Rewarding performance means recognizing good performance and providing incentives to employees for their work efforts and contributions to the organization. At the end of the appraisal period, your supervisor may consider you for an award based on your performance and rating of record as follows:

- Exceptional – Eligible for an individual cash award up to 5% of base pay; a Quality Step Increase; Time-Off Award; or other appropriate equivalent recognition.
- Superior – Eligible for an individual cash award up to 3% of base pay; Time-Off Award, non-monetary award, or other appropriate equivalent recognition.
- Fully Successful – Not eligible for any performance award, but may receive monetary, non-monetary, Time-off, or other appropriate incentive awards for specific accomplishments throughout the year.
- Minimally Successful and Unsatisfactory – Ineligible for any performance recognition.

**How to get the most out of your Employee Performance Appraisal Plan**
1. Ask for Feedback throughout the appraisal period.

How do you know if you are learning how to do your job and meeting your performance expectations? Talk to your supervisor throughout the appraisal period. Your supervisor wants you to succeed and is available to provide guidance to help you learn how to effectively do your job. Communicating regularly with your supervisor gives you the opportunity to understand the job expectations. It also lets your supervisor know what type of assistance or resources you need to perform your work, and it is a good way to get feedback.

Feedback is information that helps you know how you are progressing in learning the duties and responsibilities of your job. Employees who seek feedback from their supervisors learn their jobs more quickly and with fewer wrong turns than employees who shy away from feedback. Employees who seek feedback spend less time redoing work and turn in work with fewer mistakes. As a result, they improve their work performance.

Getting and using feedback is one of the most important keys to learning your job. As you do your work, ask for feedback from your supervisor to see if you are on track. At first you may feel uncomfortable asking for feedback. But, remember that your supervisor wants you to succeed. As you master your job and get to know your supervisor, you will soon feel more comfortable asking for and receiving feedback.

2. Preparation

a. Before your supervisor prepares your appraisal:
    1. Prepare a list of key work accomplishments and give it to your supervisor for consideration in preparing your rating.
    2. If you have specific issues come prepared to discuss them. Give your supervisor a "heads up" so that they can also prepare to discuss the issues.
    3. Write down any key points and questions you may have.

b. During your performance discussion:
    1. Don't be shy about asking for clarification, especially about your supervisor's expectations.
    2. Refer to your notes, so that you don't overlook any points that are important to you.
    3. Tell your supervisor how you feel things are progressing and if you need any additional information or materials.
    4. Let your supervisor know what your short/long-term career goals are.
    5. Ask for feedback.

If you still have questions about the Employee Performance Appraisal Plan, please consult with your supervisor.

### Supervisor's Guide to Developing Individual Development Plans

The Individual Development Plan (IDP) is a valuable performance enhancement tool for any federal employee. The IDP can be of great assistance to those who want to enhance skills and strengths and learn more about matters of interest that are relevant to the performance of the agency. Bureaus/Offices may require the use of an IDP at their discretion. Check with your Human Resources Office for the IDP or other appropriate form to be used by your Bureau/Office for documenting employee development needs.

The following is a brief outline of the definition, steps and goals of an IDP.

**Goals:** The employee and the rating official develop goals together. The IDP provides a connection between the employee's career interests and needs to the organizational mission and priorities. The most common goals of an IDP are to:

- Learn new skills to improve current job performance
- Maximize current performance in support of organizational requirements
- Increase interest, challenge, and satisfaction in current position
- Obtain knowledge, skills and abilities necessary for career growth

**Definition:** An IDP identifies a broad spectrum of developmental opportunities for the employee, including on-the-job training, distance learning, formal classroom training, details, shadow assignments and self-development. It addresses the needs of the organization and of the employee beginning with a focus on maximizing employee performance in the current job.

An IDP is a guide to help individuals reach career goals within the context of organizational objectives. It is a developmental action plan to move employees from their current place to where they want to go. It provides the systematic steps to improve and to build on strengths as individuals improve job performance and pursue career goals.

An IDP is a partnership between the employee and the rating official in personal development. Preparing an IDP involves open feedback, clarification and discussion about developmental needs, goals, and plans. Periodic communication between the rating official and the employee is the key to the currency and success of an IDP.

***An IDP is not a:***

- *Performance appraisal. It is not used to determine pay, awards or other personnel actions based on performance.*

- *Contract for training. Final approval of training opportunities is made based on factors such as timing and budget availability.*

- *Position description. It is not used for clarifying discrepancies in the duties as described.*

- *Guarantee for promotion or for reassignment to another position. While the developmental experiences identified in an IDP may have some training that might qualify the employee for another position or grade, there is no guarantee of advancement.*

**Responsibilities:** As in all aspects of the employee/supervisor relationship, direct and open communication is the key to the success of an IDP. The following responsibilities address the IDP process specifically.

The **employee** is responsible for:

- Assessing personal skills necessary for performing the current position
- Suggesting developmental experiences which would enhance the skills necessary for performing the current position and for the desired career goals
- Identifying personal career goals
- Understanding what skills are necessary for meeting the career goals
- Participating in open discussions with the rating official concerning the elements of the IDP
- Completing the developmental experiences in the IDP as approved by the rating official
- Alerting the rating official when the IDP needs review and updating

The **rating official** is responsible for:

- Providing constructive feedback to the employee about skills necessary for performing the current position
- Suggesting and reviewing employee suggestions for developmental experiences which would enhance the skills necessary for performing the current position
- Counseling the employee about career goals
- Identifying developmental experiences which would enhance the skills necessary for performing in the next type of position toward the employee's career goal
- Participating in open discussions with the employee concerning the elements of the IDP, in periodic updates and reviews of the IDP for currency
- Giving final approval to specific developmental experiences
- Monitoring the progress of the employee in completing the developmental experiences agreed upon in the IDP

Individual Development Plan *(Bureaus/Offices may require the use of an IDP at their discretion. Check with your Human Resources Office for the IDP or other appropriate form to be used by your Bureau/Office for the IDP or other appropriate form to be used by your Bureau/Office for documenting employee developmental needs).*

Individual Development Plan                          Plan Performance Year

| Employee's Name | Position Title/Grade | Office Phone | Office Fax | Email Address |
|---|---|---|---|---|
| Current Supervisor's Name | Supervisor's Title | Office Phone | Office Fax | Email Address |
| Goals for Successful Performance in Current Position | Short-term Career Goals (2-3 years) | Long-term Goals (3+ years) | | |
| Developmental Objectives: What do you need to do this year to work towards your goals? | Developmental Activities (training, assignments, projects, details, etc.) | Proposed Dates | Estimated Costs | Date Completed |
| Notes: | | Employee's Signature/Date | | |
| | | Supervisor's Signature/Date | | |

1

### Instructions for completing the Individual Development Plan

**Employee Development and Career Goals** – the employee and supervisor work together to complete the goals for successful performance in the employee's current position and the employee's short- and long-term career goals on the IDP.

**Developmental Objectives** – describe what the employee needs to do this year to work toward his/her goals. Objectives describe what the employee needs to learn or achieve in order to reach his/her goals.

**Determine a method of training and a training time frame** – determine what type of training or activity is needed to accomplish the employee's developmental goals. It could be on-the-job training, a detail, or a formal training course or a combination of methods. Identify the proposed dates for the training or activity in the "Proposed Dates" column. Enter the actual or estimated cost of the activity in the "Estimated Costs" column. This column can be used in preparing your office's annual budget. Once the training is completed, write the date in the "Date Completed" column.

Methods of Training:

**On-the-job training** – this can include coaching by a skilled individual or details into positions that will give the employee the skills and knowledge needed.

**Details** – temporary assignments to another location and/or position to gain specific knowledge and/or experience.

**Courses** – formal training courses, e.g., from your agency, local universities, commercial vendors.

**Satellite Broadcasts/Computer/Web Based Learning** – a variety of topics available through your agency via satellite broadcasts, software packages, and on-line training.

**Discuss the Development Plan with your Employee** – discuss the IDP with the employee and make any necessary modifications. The supervisor and employee should sign and date the plan. This plan should be completed within 60 days from the beginning of the performance year.

**Review and Modifications** – the plan should be reviewed at each performance review and modified as situations or needs change.

2

## U.S. DEPARTMENT OF THE INTERIOR
### Employee Performance Appraisal Plan

| Employee Name:<br>Daniel W. Hamann | | Title/Series/Grade: GS-850-09<br>ELECTRICAL ENGINEER | |
|---|---|---|---|
| Duty Station:<br>Denver TSC, Lakewood CO | Appraisal Period:<br>FY 2017 | From: October 1, 2016 | To: September 30,2017 |

**Part A-1: Notification of Standards:** *Signatures certify that Critical elements/standards were discussed. (Part E)*

| Employee: | Rating Official: | Reviewing Official (if applicable*): |
|---|---|---|
| Date: 11-18-16 | Date: 18-Nov-2016 | Date: |

**Part A-2: Employee Input into Development of Standards:** *Signatures certify employee involvement was solicited by supervisor:*

| Employee: | Date: 11-18-16 | Rating Official: | Date: 18-Nov-2016 |
|---|---|---|---|

**Part A-3: Employee Training:** *Signatures certify employee was provided training in Performance Management System.*

| Employee: | Date: 11-18-16 | Rating Official: | Date: 18-Nov-2016 |
|---|---|---|---|

**Part A-4: Individual Development Plan:** *Signatures certify that employee's individual development plan was created (Optional)*

| Employee: | Date: 11-18-16 | Rating Official: | Date: 18-Nov-2016 |
|---|---|---|---|

**Part B: Progress Review:** *Signatures certify that performance was discussed.*

| Employee: | Date: 5-31-17 | Rating Official: | Date: 31-Mg-17 |
|---|---|---|---|

**Part C: Summary Rating Determination:** Assign the numerical rating level that accurately reflects the employee's performance for each of the Critical elements (Use only whole numbers: **Exceptional = 5 points; Superior = 4 points, Fully Successful = 3 points, Minimally Successful = 2 points, and Unsatisfactory = 0 points.)** *See reverse for complete instructions.*

| Element Number | Numerical Rating |
|---|---|
| 1 | 3 |
| 2 | 3 |
| 3 | 4 |
| 4 | — |
| 5 | — |
| Total: | 10 |

**Total Numerical Rating** 10 ÷ **Number of Elements** 3 = **Numeric Summary Rating** 3.33

**Part D: Summary Rating: Use conversion chart to determine rating. Check appropriate box:**

| | | |
|---|---|---|
| | Exceptional | 4.6 – 5.00 AND No Critical element rated lower than "Superior". |
| | Superior | 3.6 – 4.59 AND No Critical element rated lower than "Fully Successful". |
| X | Fully Successful | 3.0 – 3.59 AND No Critical element rated lower than "Fully Successful". |
| | Minimally Successful | 2.0 – 2.99 AND No Critical element rated lower than "Minimally Successful". |
| | Unsatisfactory | One or more Critical elements rated "Unsatisfactory". |

| Employee: | Rating Official: | Reviewing Official: (if applicable): |
|---|---|---|
| Date: 11-7-17 | Date: 27-Oct-2017 | Date: |

Check here if Interim Rating: _____
Performance Award:   QSI _____     Cash: $ _____ or _____% of pay     Time Off _____

## Instructions for Completing the Employee Performance Appraisal Plan

**Establishing Critical elements and Performance standards**

Critical elements (at least one, but not more than five) must be established for each employee at the start of the performance year. Through these elements, employees are held accountable for work assignments and responsibilities of their position. A Critical element is an assignment or responsibility of such importance that Unsatisfactory performance in that element alone would result in a determination that the employee's overall performance is Unsatisfactory. Please see the Performance Appraisal Handbook for more detailed information.

Performance standards are expressions of the performance threshold(s), requirement(s), or expectation(s) that must be met for each element at a particular level of performance. They must be focused on results and include credible measures. You may use the attached Benchmark Performance standards to describe general parameters of the standards, but must augment those benchmarks with specific, measurable criteria such as quality, quantity, timeliness and/or cost effectiveness, for the "Fully Successful" level for each element. Rating officials are strongly encouraged to develop specific performance standards at additional levels to ensure that the employee has a clear understanding of the levels of performance expected. *At least one, and preferably all, Critical elements must show how the element is linked to strategic goals, such as Government Performance Results Act (GPRA) or mission related goals of the organization. These goals should be aligned throughout the organization (i.e., show how the strategic goal cascades from the SES down to the lowest non-supervisory levels.) The employee should be able to clearly understand how the results they are held responsible for are linked to the results that those in their supervisory/managerial chain are held responsible for.*

**Employee Involvement**: Employees must be involved in the development of their performance plans. Part A-2 of this form requires employee and supervisor signatures certifying that employee input into the development of the plan was solicited.

**Individual Development Plan: (Optional)** The IDP provides a connection between the employee's career interests and needs to the organizational mission and priorities. The employee and the rating official should develop goals together.

**Progress Reviews:** A progress review is required approximately mid-way through the rating period. Part B should be completed after the progress review. Any written feedback or recommended training can be noted on a separate sheet and attached to the employee performance appraisal plan (EPAP).

**Assigning the Summary Rating:** A specific rating is required for each Critical element to reflect the level of performance demonstrated by the employee throughout the rating period. Only one numerical rating level is assigned for each Critical element. Before the rating official assigns a summary rating, he/she should consider all interim summary ratings received for the employee during the annual appraisal period. The summary rating is assigned as follows:

A.    Assess how the employee performed relative to the described performance standards.

B.    Document the employee's performance with a narrative that describes the achievements for the Critical elements as compared to the performance standards. A narrative must be written for each Critical element assigned a rating of Exceptional, Minimally Successful, or Unsatisfactory, to provide examples of the employee's performance that substantiate and explain how the performance falls within the level assigned. There is a block provided for the narrative for each Critical element.

C.    In Part C of this form, assign one of the numerical rating levels that accurately reflects the employee's performance for each of the Critical elements (Use only whole numbers: Exceptional = 5 points, Superior= 4 points, Fully Successful = 3 points, Minimally Successful = 2 points, and Unsatisfactory = 0 points).

D.    Add up the numerical rating levels to get a total, and then divide the total by the number of Critical elements to get an average. (Elements that are "not rated" because an employee has not had a chance to perform them during the rating year are not assigned any points and should not be used to determine the average rating.)

E.    Assign a summary rating based on the table in Part D of this form. Employee and supervisor sign the form certifying that the rating was discussed. Reviewing Official's signature is required for Exceptional, Minimally Successful and Unsatisfactory ratings.

**Note:** Whenever an employee is rated **"Unsatisfactory"** on one or more critical elements, the overall rating **must** be **"Unsatisfactory"** (regardless of total points). **The rating official should immediately contact the servicing Human Resources Office.** Whenever an employee is rated **"Minimally Successful"** on one or more Critical elements, the overall rating may not be higher than **"Minimally Successful"** (regardless of total points).

**Part E: Critical Elements and Performance Standards:** *List each of the employee's Critical elements (at least one, but not more than five) and their corresponding performance standards. If Benchmark standards are used, indicate "Benchmark standards are attached" in the space below, and ensure they are attached to this form. Identify the GPRA/strategic/mission goal that the Critical element supports. At a minimum, measurable criteria must be identified at the Fully Successful level.*

| Critical Element 1: | **GPRA/Strategic Goal:** Ensure continued implementation of TSC Project Management and workload management practices to improve the timeliness and cost accountability of TSC products.<br><br>**Performance Measure: Workload Management.** Support Reclamation's program accomplishment within the TSC by providing quality service and products to internal and external clients, in part through adherence to the TSC Operating Guidelines. Plan, organize, prioritize, monitor, and accomplish work within established budget and schedule. *Perform required administrative tasks and incorporate concern for safety and security in all work.* |
|---|---|

### Performance Standards

| Exceptional | See Benchmark standards attached. |
|---|---|
| Superior | See Benchmark standards attached. |
| Fully Successful | In addition to attached Benchmark standards, the following measurable criteria apply.<br>• <u>Generally</u> completes tasks/jobs (including checks/reviews) in a timely manner and within agreed to budgets through the use of project management tools (such as earned value analysis, task based estimates, project management plans, etc.)<br>• Collaborates and coordinates with fellow employees, colleagues, supervisors/managers, and/or clients.<br>• Demonstrates good, sound performance that meets organizational goals; <u>consistently</u> meets clients' expectations.<br>• Peer (and other) reviewers and checkers are <u>generally</u> afforded sufficient time to review employee's work. |
| Minimally Successful | See Benchmark standards attached. |
| Unsatisfactory | See Benchmark standards attached. |

### Narrative Summary

Describe the employee's performance for each Critical element. A narrative summary must be written for each element assigned a rating of Exceptional, Minimally Successful, or Unsatisfactory.

Dan has worked on a variety of projects this year. Some of these were: Yuma Desalting Plant Chlorine Containment (let us discuss "you touch it, you own it"), Truckee Final Design, Cle Elem Radial Gate Hoist w/ VE Additions (lets also discuss "Force Account"), Boca Dam, YDP Br-Pipe Replacement, San Pasqual Renewable Energy and Cle Elem Fish Passage.

**Rating for Critical Element 1:**

[ ] Exceptional-5     [ ] Superior-4     ☑ Fully Successful-3     [ ] Minimally Successful-2     [ ] Unsatisfactory-0

**Part E: Critical Elements and Performance Standards:** *List each of the employee's Critical elements (at least one, but not more than five) and their corresponding performance standards. If Benchmark standards are used, indicate "Benchmark standards are attached" in the space below, and ensure they are attached to this form. Identify the GPRA/strategic/mission goal that the Critical element supports.* **At a minimum, measurable criteria must be identified at the Fully Successful level.**

| Critical Element 2: | GPRA/Strategic Goal:  4 C's: communication, consultation, and cooperation, all in the service of conservation. |
|---|---|
| | **Performance Measure: Communication and Collaboration:** Organize and prepare, or direct and coordinate the preparation of, materials such as specifications documents, reports, meeting minutes, travel reports, drawings, maps, graphs, or figures; deliver oral presentations or briefings; and participate in meetings – to communicate, promote TSC capabilities, and convey work status and findings to team members, clients, superiors, and others. |

| Performance Standards | |
|---|---|
| **Exceptional** | See Benchmark standards attached. |
| **Superior** | See Benchmark standards attached. |
| **Fully Successful** | In addition to attached Benchmark standards, the following measurable criteria apply. <br>• Generally provides quality written documents that require only minor additional data and/or clarification upon review. <br>• Provides quality oral communication appropriately tailored to a target audience. <br>• Consistently seeks appropriate assistance on issues/concerns, including technical, in a timely manner, (i.e., effective networking). <br>• Consistently meets clients' expectations. <br>• Demonstrates respect for team members and clients. |
| **Minimally Successful** | See Benchmark standards attached.. |
| **Unsatisfactory** | See Benchmark standards attached. |

### Narrative Summary

Describe the employee's performance for each Critical element.  A narrative summary must be written for each element assigned a rating of Exceptional, Minimally Successful, or Unsatisfactory.

Dan is communicating effectively with co-workers and has kept the client and supervisor apprised of the work he is performing.   Dan consistently seeks appropriate assistance when issues or concerns arise in a timely manner.

**Rating for Critical Element 2:**

[ ] Exceptional-5     [ ] Superior-4     [X] Fully Successful-3     [ ] Minimally Successful-2     [ ] Unsatisfactory-0

**Part E: Critical Elements and Performance Standards:** *List each of the employee's Critical elements (at least one, but not more than five) and their corresponding performance standards. If Benchmark standards are used, indicate "Benchmark standards are attached" in the space below, and ensure they are attached to this form. Identify the GPRA/strategic/mission goal that the Critical element supports.* **At a minimum, measurable criteria must be identified at the Fully Successful level.**

| Critical Element 3: | **GPRA/Strategic Goal:** Contribute to the accomplishment of GPRA performance targets for Reclamation's goals for efficient use and delivery of water and hydropower by providing support activities, analyses, and information that meet Reclamation needs. |
| | **Performance Measure:** __Technical.__ Perform, check, and/or assist others with analyses, investigations, or designs for assigned projects or studies. Such work may include data collection and evaluation, computations, analysis, modeling, or layouts. *Maintain technical skills.* |

| Performance Standards | |
|---|---|
| **Exceptional** | See Benchmark standards attached. |
| **Superior** | See Benchmark standards attached. |
| **Fully Successful** | In addition to attached Benchmark standards, the following measurable criteria apply.<br>▪ Applies appropriate technical codes, criteria, standards, guidelines in the accomplishment of tasks/jobs.<br>▪ Analyses and results/products are generally sound and accurate; peer review comments identify only minor errors.<br>▪ Demonstrates good, sound performance that meets organizational goals and consistently meets clients' expectations. |
| **Minimally Successful** | See Benchmark standards attached. |
| **Unsatisfactory** | See Benchmark standards attached. |

**Narrative Summary**

Describe the employee's performance for each Critical element. A narrative summary must be written for each element assigned a rating of Exceptional, Minimally Successful, or Unsatisfactory.

Dan has many years of different electrical engineering experience he is now applying to the BOR's goals of water delivery and electric power generation and exhibits a sustained support of organizational goals. Dan is quickly adapting to the Bureau of Reclamation type of work. He demonstrates good sound performance that meets organizational goals.

**Rating for Critical Element 3:**

[ ] Exceptional-5    [x] Superior-4    [ ] Fully Successful-3    [ ] Minimally Successful-2    [ ] Unsatisfactory-0

**Privacy Act Notice:** Chapter 43 of Title 5, U.S.C., authorizes collection of this information. The primary use of this information is by management and your servicing human resources office to issue and record your performance rating. Additional disclosures of this information may be: To MSPB, Office of Special Counsel, EEOC, the FLRA, or an arbitrator in connection with administrative proceedings; to the Department of Justice or other Federal agency, courts, or party to litigation when the Government is a party to or has an interest in the judicial or administrative proceeding; to a congressional office in response to an inquiry made on behalf of an individual; to the appropriate Federal, State, or local government agency investigating potential violations of civil or criminal law or regulation; and to Federal State, local and professional licensing boards in determining qualifications of individuals seeking to be licensed.

If your agency used the information furnished on this form for purposes other than those indicated above, it may provide you with an additional statement reflecting those purposes.

**Refusal to sign:** In cases where the employee refuses to sign the EPAP, the supervisor has the authority to implement the performance standards and rating without employee agreement. Supervisor's should identify in the employee's signature block that the "Employee Refused to sign."

## Benchmark Employee Performance Standards

### Exceptional:

**Employee:** The employee demonstrates particularly excellent performance that is of such high quality that organizational goals have been achieved that would not have been otherwise. The employee demonstrates mastery of technical skills and a thorough understanding of the mission of the organization and has a fundamental impact on the completion of program objectives.

The employee exerts a major positive influence on management practices, operating procedures and/or program implementation, which contribute substantially to organizational growth and recognition. The employee plans for the unexpected and uses alternate ways of reaching goals. Difficult assignments are handled intelligently and effectively. The employee has produced an exceptional quantity of work, often ahead of established schedules and with little supervision.

The employee's oral and written communications are exceptionally clear and effective. He/she improves cooperation among participants in the workplace and prevents misunderstandings. Complicated or controversial subjects are presented or explained effectively to a variety of audiences so that desired outcomes are achieved.

### Superior:

**Employee:** The employee demonstrates unusually good performance that exceeds expectations in critical areas and exhibits a sustained support of organizational goals. The employee shows a comprehensive understanding of the objectives of the job and the procedures for meeting them.

Effective planning by the employee improves the quality of management practices, operating procedures, task assignments and/or program activities. The employee develops and/or implements workable and cost-effective approaches to meeting organizational goals.

The employee demonstrates an ability to get the job done well in more than one way while handling difficult and unpredicted problems. The employee produces a high quantity of work, often ahead of established schedules with less than normal supervision.

The employee writes and speaks clearly on difficult subjects to a wide range of audiences and works effectively with others to accomplish organizational objectives.

### Fully Successful:

**Employee:** The employee demonstrates good, sound performance that meets organizational goals. All critical activities are generally completed in a timely manner and supervisor is kept informed of work issues, alterations and status. The employee effectively applies technical skills and organizational knowledge to get the job done. The employee successfully carries out regular duties while also handling any difficult special assignments. The employee plans and performs work according to organizational priorities and schedules. The employee communicates clearly and effectively.

### Minimally Successful:

**Employee:** The employee's performance reflects a performance level less than fully successful. The employee's performance demonstrates that generally assigned work requires some, but not a substantial amount of supervisory assistance for the grade level, and supervisory input beyond the initial assignment and occasional substantive questions are expected in addition to periodic status checks. Work assignment delays, (that are more than minor, but not so significant so as to adversely affect organizational operations), will be tolerated. The quality of work products are normally acceptable, contain few errors, and are thorough and organized enough so that Agency/Office goals, objectives or outcomes can be accomplished with only limited expenditure of further resources.

### Unsatisfactory:

**Employee:** The employee's performance is unsatisfactory. The quality and quantity of the employee's work are not adequate for the position. Work products do not meet the minimum requirements expected.

The employee demonstrates little or no contribution to organizational goals; failure to meet work objectives; inattention to organizational priorities and administrative requirements; poor work habits resulting in missed deadlines and/or incomplete work products; strained work relationships; failure to respond to client needs; and/or lack of response to supervisor's corrective efforts.

# Understanding Performance Management

**An Employee's Duties** – Your supervisor should provide you with a copy of the position description for your job. Your position description is the official record of your main duties and responsibilities and is used in developing performance appraisal criteria. Take some time to read through your position description. Ask your supervisor about anything that is not clear to you. Your supervisor should review your position description with you at least once a year to ensure that it accurately reflects your main duties and responsibilities. Keep a copy of your position description and refer to it from time to time. You may want to make notes on your copy when your job changes, so that you can discuss the changes with your supervisor. `

**Employee Performance Appraisal Plan (EPAP)** – The Employee Performance Appraisal Plan (EPAP) is the form used by the Department to evaluate the work performance of its employees under the 5-level appraisal system. When used effectively, the EPAP is a valuable communication tool for both employee development and organizational accomplishments.
Managers and supervisors are responsible for the following:

> 1. Complying with provisions of the U.S. Department of the Interior's Performance Appraisal Departmental Manual and Handbook (370 DM 430).
> 2. Establishing performance elements and performance standards that are linked to organizational goals and position descriptions.
> 3. Monitoring employee performance, communicating with employees about their performance and resolving performance problems.
> 4. Approving or reviewing ratings recommended by supervisors or rating officials.

The EPAP has several important goals:

> 1. Clarifying how the employee's performance requirements link to the strategic mission of their organization;
> 2. Increasing individual productivity by giving employees the information they need to do their jobs effectively;
> 3. Improving individual/organizational productivity by promoting communication between employees and supervisors about job-related matters, so that better and more efficient methods of operation can be developed; and,
> 4. Providing a process to recognize employees for good performance and their contributions to the organization.

**Appraisal Period** – The appraisal period begins October 1 and ends September 30 of each year, except where specific exceptions have been granted. The minimum period on which an appraisal may be based is 90 calendar days. During the appraisal period, your supervisor may periodically discuss your work with you and let you know how you are doing. In addition, before the end of the appraisal period, the supervisor will conduct one formal progress review with you. This progress review is another opportunity for you and your supervisor to discuss your progress, review your position description, identify any training needs or improvements, or to revise your critical performance elements and performance standards.

**Performance Elements and Performance Standards** – Your supervisor will explain your duties and responsibilities to you and discuss what is expected of you in order to achieve satisfactory performance. To further define your performance expectations, your supervisor will establish performance elements and performance standards for your job. Employee input into this process is required.

Performance elements tell you what work assignments and responsibilities need to be accomplished during the appraisal period. All employees must have one performance element that is linked to the strategic mission or Government Performance Results Act goals of the organization. Between one and five performance elements can be established for a position. These elements are all considered critical elements. They are of such importance to the position that unsatisfactory performance in one element alone would result in a determination that the employee's overall performance is Unsatisfactory.

Performance standards tell employees how well performance elements must be done by defining achievable rating levels for: Exceptional, Superior, Fully Successful, Minimally Successful, and Unsatisfactory performance. These five rating levels focus on results and include credible measures such as quality, quantity, timeliness, cost effectiveness, etc.

Your overall performance is evaluated by your supervisor or rating official using these performance standards. A determination that an employee's overall performance is Unsatisfactory could result in remedial action and unsatisfactory performance may be the basis for removal or reduction in grade. Minimally Successful performance may result in the denial of a within-grade increase.

**The Rating Process** – At the end of the appraisal period, your supervisor will carefully review the performance elements and standards for your position. Based on your actual performance, one of five rating levels may be assigned. The rating will be presented to you during the formal performance discussion between you and your supervisor. The appraisal will be completed with your signature and a copy provided to you. This rating is documented on the EPAP form and is considered as your Rating of Record. Your rating of record is directly linked to your eligibility for certain types of pay increases and awards.

**Rewarding Performance** – Rewarding performance means recognizing good performance and providing incentives to employees for their work efforts and contributions to the organization. At the end of the appraisal period, your supervisor may consider you for an award based on your performance and rating of record as follows:

- Exceptional – Eligible for an individual cash award up to 5% of base pay; a Quality Step Increase; Time-Off Award; or other appropriate equivalent recognition.
- Superior – Eligible for an individual cash award up to 3% of base pay; Time-Off Award, non-monetary award, or other appropriate equivalent recognition.
- Fully Successful – Not eligible for any performance award, but may receive monetary, non-monetary, Time-off, or other appropriate incentive awards for specific accomplishments throughout the year.
- Minimally Successful and Unsatisfactory – Ineligible for any performance recognition.

**How to get the most out of your Employee Performance Appraisal Plan**
1.  Ask for Feedback throughout the appraisal period.

How do you know if you are learning how to do your job and meeting your performance expectations? Talk to your supervisor throughout the appraisal period. Your supervisor wants you to succeed and is available to provide guidance to help you learn how to effectively do your job. Communicating regularly with your supervisor gives you the opportunity to understand the job expectations. It also lets your supervisor know what type of assistance or resources you need to perform your work, and it is a good way to get feedback.

Feedback is information that helps you know how you are progressing in learning the duties and responsibilities of your job. Employees who seek feedback from their supervisors learn their jobs more quickly and with fewer wrong turns than employees who shy away from feedback. Employees who seek feedback spend less time redoing work and turn in work with fewer mistakes. As a result, they improve their work performance.

Getting and using feedback is one of the most important keys to learning your job. As you do your work, ask for feedback from your supervisor to see if you are on track. At first you may feel uncomfortable asking for feedback. But, remember that your supervisor wants you to succeed. As you master your job and get to know your supervisor, you will soon feel more comfortable asking for and receiving feedback.

2.  Preparation

a.  Before your supervisor prepares your appraisal:
   1.  Prepare a list of key work accomplishments and give it to your supervisor for consideration in preparing your rating.
   2.  If you have specific issues come prepared to discuss them. Give your supervisor a "heads up" so that they can also prepare to discuss the issues.
   3.  Write down any key points and questions you may have.

b.  During your performance discussion:
   1.  Don't be shy about asking for clarification, especially about your supervisor's expectations.
   2.  Refer to your notes, so that you don't overlook any points that are important to you.
   3.  Tell your supervisor how you feel things are progressing and if you need any additional information or materials.
   4.  Let your supervisor know what your short/long-term career goals are.
   5.  Ask for feedback.

If you still have questions about the Employee Performance Appraisal Plan, please consult with your supervisor.

## Supervisor's Guide to Developing Individual Development Plans

The Individual Development Plan (IDP) is a valuable performance enhancement tool for any federal employee. The IDP can be of great assistance to those who want to enhance skills and strengths and learn more about matters of interest that are relevant to the performance of the agency. Bureaus/Offices may require the use of an IDP at their discretion. Check with your Human Resources Office for the IDP or other appropriate form to be used by your Bureau/Office for documenting employee development needs.

The following is a brief outline of the definition, steps and goals of an IDP.

**Goals:** The employee and the rating official develop goals together. The IDP provides a connection between the employee's career interests and needs to the organizational mission and priorities. The most common goals of an IDP are to:

- Learn new skills to improve current job performance
- Maximize current performance in support of organizational requirements
- Increase interest, challenge, and satisfaction in current position
- Obtain knowledge, skills and abilities necessary for career growth

**Definition:** An IDP identifies a broad spectrum of developmental opportunities for the employee, including on-the-job training, distance learning, formal classroom training, details, shadow assignments and self-development. It addresses the needs of the organization and of the employee beginning with a focus on maximizing employee performance in the current job.

An IDP is a guide to help individuals reach career goals within the context of organizational objectives. It is a developmental action plan to move employees from their current place to where they want to go. It provides the systematic steps to improve and to build on strengths as individuals improve job performance and pursue career goals.

An IDP is a partnership between the employee and the rating official in personal development. Preparing an IDP involves open feedback, clarification and discussion about developmental needs, goals, and plans. Periodic communication between the rating official and the employee is the key to the currency and success of an IDP.

**An IDP is not a:**

- *Performance appraisal. It is not used to determine pay, awards or other personnel actions based on performance.*

- *Contract for training. Final approval of training opportunities is made based on factors such as timing and budget availability.*

- *Position description. It is not used for clarifying discrepancies in the duties as described.*

- *Guarantee for promotion or for reassignment to another position. While the developmental experiences identified in an IDP may have some training that might qualify the employee for another position or grade, there is no guarantee of advancement.*

**Responsibilities:** As in all aspects of the employee/supervisor relationship, direct and open communication is the key to the success of an IDP. The following responsibilities address the IDP process specifically.

The employee is responsible for:

- Assessing personal skills necessary for performing the current position
- Suggesting developmental experiences which would enhance the skills necessary for performing the current position and for the desired career goals
- Identifying personal career goals
- Understanding what skills are necessary for meeting the career goals
- Participating in open discussions with the rating official concerning the elements of the IDP
- Completing the developmental experiences in the IDP as approved by the rating official
- Alerting the rating official when the IDP needs review and updating

The **rating official** is responsible for:

- Providing constructive feedback to the employee about skills necessary for performing the current position
- Suggesting and reviewing employee suggestions for developmental experiences which would enhance the skills necessary for performing the current position
- Counseling the employee about career goals
- Identifying developmental experiences which would enhance the skills necessary for performing in the next type of position toward the employee's career goal
- Participating in open discussions with the employee concerning the elements of the IDP, in periodic updates and reviews of the IDP for currency
- Giving final approval to specific developmental experiences
- Monitoring the progress of the employee in completing the developmental experiences agreed upon in the IDP

**Individual Development Plan** *(Bureaus/Offices may require the use of an IDP at their discretion. Check with your Human Resources Office for the IDP or other appropriate form to be used by your Bureau/Office for the IDP or other appropriate form to be used by your Bureau/Office for documenting employee developmental needs).*

Individual Development Plan                    Plan Performance Year                    _____

| Employee's Name | Position Title/Grade | Office Phone | Office Fax | Email Address |
|---|---|---|---|---|
| Current Supervisor's Name | Supervisor's Title | Office Phone | Office Fax | Email Address |
| Goals for Successful Performance in Current Position | Short-term Career Goals (2-3 years) | Long-term Goals (3+ years) | | |
| Developmental Objectives: What do you need to do this year to work towards your goals? | Developmental Activities (training, assignments, projects, details, etc.) | Proposed Dates | Estimated Costs | Date Completed |
| Notes: | | Employee's Signature/Date | | |
| | | Supervisor's Signature/Date | | |

1

## Instructions for completing the Individual Development Plan

**Employee Development and Career Goals** – the employee and supervisor work together to complete the goals for successful performance in the employee's current position and the employee's short- and long-term career goals on the IDP.

**Developmental Objectives** – describe what the employee needs to do this year to work toward his/her goals. Objectives describe what the employee needs to learn or achieve in order to reach his/her goals.

**Determine a method of training and a training time frame** – determine what type of training or activity is needed to accomplish the employee's developmental goals. It could be on-the-job training, a detail, or a formal training course or a combination of methods. Identify the proposed dates for the training or activity in the "Proposed Dates" column. Enter the actual or estimated cost of the activity in the "Estimated Costs" column. This column can be used in preparing your office's annual budget. Once the training is completed, write the date in the "Date Completed" column.

Methods of Training:

**On-the-job training** – this can include coaching by a skilled individual or details into positions that will give the employee the skills and knowledge needed.

**Details** – temporary assignments to another location and/or position to gain specific knowledge and/or experience.

**Courses** – formal training courses, e.g., from your agency, local universities, commercial vendors.

**Satellite Broadcasts/Computer/Web Based Learning** – a variety of topics available through your agency via satellite broadcasts, software packages, and on-line training.

**Discuss the Development Plan with your Employee** – discuss the IDP with the employee and make any necessary modifications. The supervisor and employee should sign and date the plan. This plan should be completed within 60 days from the beginning of the performance year.

**Review and Modifications** – the plan should be reviewed at each performance review and modified as situations or needs change.

2

## U.S. DEPARTMENT OF THE INTERIOR
### Employee Performance Appraisal Plan

| Employee Name: Daniel W. Hamann | | Title/Series/Grade: Electrical Engineer GS-850-11 | |
|---|---|---|---|
| Duty Station: Denver TSC, Lakewood, CO | Appraisal Period: FY 2018 | From: October 1, 2017 | To: September 30, 2018 |

**Part A-1: Notification of Standards:** *Signatures certify that Critical elements/standards were discussed. (Part E)*

| Employee: | Rating Official: | Reviewing Official (if applicable*): |
|---|---|---|
| Date: 12-5-17 | Date: 5-Dec-2017 | Date: |

**Part A-2: Employee Input into Development of Standards:** *Signatures certify employee involvement was solicited by supervisor:*

| Employee: | Date: 12.5.17 | Rating Official: | Date: 5-Dec-2017 |
|---|---|---|---|

**Part A-3: Employee Training:** *Signatures certify employee was provided training in Performance Management System.*

| Employee: | 12-5-17 | Rating Official: | Date: 5-Dec-2017 |
|---|---|---|---|

**Part A-4: Individual Development Plan:** *Signatures certify that employee's Individual development plan was created (Optional)*

| Employee: | Date: | Rating Official: | Date: |
|---|---|---|---|

**Part B: Progress Review:** *Signatures certify that performance was discussed.*

| Employee: | Date: 5/31/18 | Rating Official: | Date: 31-May-18 |
|---|---|---|---|

**Part C: Summary Rating Determination:** Assign the numerical rating level that accurately reflects the employee's performance for each of the Critical elements (Use only whole numbers: **Exceptional = 5 points; Superior = 4 points, Fully Successful = 3 points, Minimally Successful = 2 points, and Unsatisfactory = 0 points.**) *See reverse for complete instructions.*

| Element Number | Numerical Rating |
|---|---|
| 1 | 3 |
| 2 | 3 |
| 3 | 3 |
| 4 | — |
| 5 | — |
| Total: | 9 |

Total Numerical Rating  9  +  Number of Elements  3  =  Numeric Summary Rating  3

**Part D: Summary Rating:** Use conversion chart to determine rating. Check appropriate box:

| | | |
|---|---|---|
| | Exceptional | 4.6 – 5.00 AND No Critical element rated lower than "Superior". |
| | Superior | 3.6 – 4.59 AND No Critical element rated lower than "Fully Successful". |
| X | Fully Successful | 3.0 – 3.59 AND No Critical element rated lower than "Fully Successful". |
| | Minimally Successful | 2.0 – 2.99 AND No Critical element rated lower than "Minimally Successful". |
| | Unsatisfactory | One or more Critical elements rated "Unsatisfactory". |

| Employee: | Rating Official: | Reviewing Official: (if applicable): |
|---|---|---|
| Date: 10·31-18 | Date: Oct 31, 2018 | Date: |

Check here if Interim Rating: _____
Performance Award:   QSI _____   Cash: $ _____  or _____ % of pay   Time Off _____

**Part E: Critical Elements and Performance Standards:** *List each of the employee's Critical elements (at least one, but not more than five) and their corresponding performance standards. If Benchmark standards are used, indicate "Benchmark standards are attached" in the space below, and ensure they are attached to this form. Identify the GPRA/strategic/mission goal that the Critical element supports.* **At a minimum, measurable criteria must be identified at the Fully Successful level.**

| Critical Element 1: | **GPRA/Strategic Goal: Workload/Project Management** - Ensure continued implementation of Reclamation Project Management Framework and TSC Project Management and workload management practices to improve the timeliness and cost accountability of TSC products.

**Performance Measure:** Support Reclamation's program accomplishment within the TSC by providing quality service and products to internal and external clients, in part through adherence to the TSC Operating Guidelines.  Plan, organize, prioritize, monitor, and accomplish work within established budget and schedule.  Perform required administrative tasks and incorporate program concern for safety and security in all work. |
|---|---|
| | **Performance Standards** |
| Exceptional | **Employee plans and performs an exceptional quantity of work according to organizational priorities and schedules with little supervision.**
▪ No valid complaints or substantive supervisory interventions related to workload or project management during the rating period.
▪ <u>With few exceptions</u> completes tasks/jobs (including checks/reviews, etc) on time and often ahead of schedule and within or below agreed to budgets through the use of project management tools (such as earned value analysis, task based estimates, project management plans, etc) and reports cost effectiveness to supervisor.
▪ Positively influences and improves organizational collaboration and coordination with fellow employees, colleagues, supervisors/managers, and/or clients to prevent misunderstandings and plans for the unexpected.
▪ Proactive, self-starter and highly motivated to complete tasks successfully and improve processes; <u>consistently</u> exceeds clients' expectations (as documented in narrative summary).
▪ Successfully manages workload during the majority of rating period, of considerable complexity, controversy, and/or well beyond present grade level.
▪ Peer (and other) reviewers and checkers are <u>with few exceptions</u> afforded sufficient time to review employee's work.
See Benchmark standards attached. |
| Superior | **Employee plans and performs a high quantity of work according to organizational priorities and schedules with less than normal supervision.**
▪ No more than 1 valid complaint or substantive supervisory intervention related to workload or project management during the rating period
▪ <u>Consistently</u> completes tasks/jobs (including checks/reviews, etc) on time and often ahead of schedule and within agreed to budgets through the use of project management tools (such as earned value analysis, task based estimates, project management plans, etc)and reports cost effectiveness to supervisor.
▪ Self-starter and motivated to complete tasks successfully; <u>generally</u> exceeds clients' expectations (as documented in narrative summary).
▪ Effectively collaborates and coordinates with fellow employees, colleagues, supervisors/managers, and/or clients and handles difficult and unpredicted problems.
▪ Successfully manages workload during the majority of rating period, which is considered outside typical norms in terms of complexity, controversy, and/or beyond present grade level.
▪ Peer (and other) reviewers and checkers are <u>consistently</u> afforded sufficient time to review employee's work.
See Benchmark standards attached. |

| Fully Successful | In addition to attached Benchmark standards, the following measurable criteria apply: **Employee generally plans and performs workload/project management duties for assigned projects according to organizational priorities and schedules with mentoring.**<br>▪ No more than 3 valid complaints or substantive supervisory interventions related to workload or project management duties during the rating period.<br>▪ Generally completes tasks/jobs (including checks/reviews, project status updates, change management, and charge reconciliation) in a timely manner and within agreed to budgets through the use of project management tools (such as earned value analysis, task based estimates, project management plans, etc.)<br>▪ Demonstrates good, sound performance that meets organizational goals; consistently meets supervisor's, client's and project managers' product delivery expectations.<br>▪ Peer (and other) reviewers and checkers are generally afforded sufficient time to review employee's work. |
|---|---|
| Minimally Successful | Employee is occasionally able to perform workload management duties for assigned projects with more than normal supervision. No more than 5 valid complaints or substantive supervisory interventions related to workload or project management occur during the rating period. See TSC Benchmark standards attached. |
| Unsatisfactory | Any performance that falls below that which is described as Minimally Successful. See Benchmark standards attached. |

**Narrative Summary**

Describe the employee's performance for each Critical element. A narrative summary must be written for each element assigned a rating of Exceptional, Superior, Minimally Successful, or Unsatisfactory.


Dan has worked on a variety of projects this year. These include Black Canyon Switchyard Modifications & Safety Upgrade, Blackfeet Renewable Energy Planning Study, Shasta Dam Crest Road Vehicle Barrier, Glen Canyon Blackstart E-G Set Electrical Distribution design, Elephant Butte 115kV Electrical Equipment Replacement, Durango Pumping Plant Crest Gate Redesign and the Navajo Dam Valve and Gate Rehab.

Dan has expressed interest in expanded responsibility. We will try that out in the 2018 FY.
2019

---

**Rating for Critical Element 1:**

[] Exceptional-5   [] Superior-4   [x] Fully Successful-3   [] Minimally Successful-2   [] Unsatisfactory-0

**Part E: Critical Elements and Performance Standards:** *List each of the employee's Critical elements (at least one, but not more than five) and their corresponding performance standards. If Benchmark standards are used, indicate "Benchmark standards are attached" in the space below, and ensure they are attached to this form. Identify the GPRA/strategic/mission goal that the Critical element supports.* **At a minimum, measurable criteria must be identified at the Fully Successful level.**

| Critical Element 2: | **GPRA/Strategic Goal**: Contribute to the accomplishment of GPRA performance targets for Reclamation's goals for efficient use and delivery of water and hydropower through effective communication.<br><br>**Performance Measure:** <u>Communication.</u> Organize and prepare, or coordinate the preparation of, materials such as specifications documents, reports, meeting minutes, travel reports, drawings, maps, graphs, or figures; deliver oral presentations or briefings; and participate in meetings – to communicate, promote TSC capabilities, and convey work status and findings to team leaders, team members, clients, superiors, and others. |
|---|---|
| | **Performance Standards** |
| **Exceptional** | **Employee communicates clearly and effectively on even complicated or controversial subjects.**<br>▪ No valid complaints or substantive supervisory interventions related to communication during the rating period.<br>▪ <u>With few exceptions</u> provides exceptional quality written documents that require only minor additional data and/or clarification upon review.<br>▪ Provides high quality oral communication appropriately tailored to the target audience such that concepts and/or ideas are accurately, concisely, and persuasively articulated so that desired outcomes are achieved.<br>▪ <u>With few exceptions</u> seeks appropriate assistance on issues/concerns, including technical, in a timely manner, (i.e., effective networking) and often advises others (such as mentoring or coaching).<br>▪ <u>Consistently</u> exceeds clients', supervisor's, and team lead's expectations (as documented in narrative summary.)<br>**May also contribute to organizational growth or recognition:**<br>▪ Prepares peer-reviewed journal paper or serves as principal author of organizational guidelines or manual.<br>▪ Teaches an internal or external class.<br>See Benchmark standards attached. |
| **Superior** | **Employee communicates very clearly and effectively on even difficult subjects.**<br>• No more than 1 valid complaint or substantive supervisory intervention related to communication during the rating period.<br>• <u>Consistently</u> provides high quality written documents that require only minor additional data and/or clarification upon review.<br>• Provides high quality oral communication appropriately tailored to a wide range of audiences such that concepts and/or ideas are accurately and concisely articulated.<br>• <u>Consistently</u> seeks appropriate assistance on issues/concerns, including technical, in a timely manner (i.e., effective networking) and occasionally advises others (such as mentoring or coaching).<br>• <u>Generally</u> exceeds clients', supervisor's, and team lead's expectations (as documented in narrative summary.)<br>**May also contribute to organizational growth or recognition:**<br>• Prepares or presents a technical paper or presentation for internal or external forums/events.<br>• Participates in agency-supported teams and activities.<br>See Benchmark standards attached. |

| Fully Successful | In addition to attached Benchmark standards, the following measurable criteria **Employee generally communicates clearly and effectively with supervisor, team leads, team members, co-workers, and clients.** <br> • No more than 3 valid complaints or substantive supervisory interventions related to communication during the rating period. <br> • Generally provides quality written documents that require only minor additional data and/or clarification upon review. <br> • Provides quality oral communication appropriately tailored to a target audience. <br> • Consistently seeks appropriate assistance on issues/concerns, including technical, in a timely manner, (i.e., effective networking). <br> • Consistently meets clients', team leads', and supervisor's expectations with regards to communication on projects. |
|---|---|
| Minimally Successful | Employee is able to communicate effectively on occasion for assigned projects; no more than 5 valid complaints or substantive supervisory interventions related to communication during the rating period.  See TSC Benchmark standards attached. |
| Unsatisfactory | Any performance that falls below that which is described as Minimally Successful. See Benchmark standards attached. |

## Narrative Summary

Describe the employee's performance for each Critical element.  A narrative summary must be written for each element assigned a rating of Exceptional, Superior, Minimally Successful, or Unsatisfactory.


Dan is communicating effectively with co-workers and has kept the client, his subgroup lead and supervisor apprised of the work he is performing.   Dan consistently seeks appropriate assistance when issues or concerns arise in a timely manner.


**Rating for Critical Element 2:**

[ ] Exceptional-5    [ ] Superior-4    [x] Fully Successful-3    [ ] Minimally Successful-2    [ ] Unsatisfactory-0

**Part E: Critical Elements and Performance Standards:** *List each of the employee's Critical elements (at least one, but not more than five) and their corresponding performance standards. If Benchmark standards are used, indicate "Benchmark standards are attached" in the space below, and ensure they are attached to this form. Identify the GPRA/strategic/mission goal that the Critical element supports.* **At a minimum, measurable criteria must be identified at the Fully Successful level.**

| Critical Element 3: | GPRA/Strategic Goal: Contribute to the accomplishment of GPRA performance targets for Reclamation's goals for efficient use and delivery of water and hydropower by providing support activities, designs and analyses, and information that meet Reclamation needs.<br><br>Performance Measure: <u>Technical.</u>  Perform, check, and/or assist others with analyses, investigations, or designs for assigned projects or studies.  Such work may include data collection and evaluation, computations, analysis, modeling, or layouts. Maintain technical skills. |
|---|---|
| | **Performance Standards** |
| Exceptional | **Employee demonstrates mastery of technical skills and a thorough understanding of the mission of the organization and has a fundamental impact on the completion of the job with little mentoring.**<br>▪ No valid complaints or substantive supervisory interventions related to technical aspects of work products during the rating period.<br>▪ Applies and leads or identifies the need for the development of appropriate technical codes, criteria, standards, guidelines to accomplish tasks/jobs.<br>▪ Analyses and results/products are <u>with few exceptions</u> very sound and accurate; peer review comments identify only minor errors.<br>▪ Products and performance are of such high quality that organizational goals have been achieved that would not have been otherwise.<br>▪ Proactive, self-starter and highly motivated to complete tasks successfully and improve processes and <u>consistently</u> exceeds clients' expectations (as documented in narrative summary).<br>**May also contribute to improving organization's technical capabilities or recognition:**<br>● Advances the state-of-practice and/or state-of-art through independently developing technical methods/ procedures for Group, Division, or TSC.<br>See Benchmark standards attached. |
| Superior | **Employee effectively applies comprehensive technical skills, understanding of the objectives, and knowledge of organizational procedures to get the job done and support organizational goals with less than normal mentoring.**<br>▪ No more than 1 valid complaint or substantive supervisory intervention related to technical aspects of work products during the rating period<br>▪ Applies and assists in the development of appropriate technical codes, criteria, standards, guidelines to accomplish tasks/jobs.<br>▪ Performance is unusually good, analyses and results/products are <u>consistently</u> sound and accurate; peer review comments identify only minor errors<br>▪ Self-starter, motivated to complete tasks successfully, and <u>generally</u> exceeds clients' expectations (as documented in narrative summary).<br>▪ Serves on technical teams that are not part of the normal workload.<br>**May also contribute to improving organization's technical capabilities or recognition:**<br>● Advances the state-of-practice and/or state-of-art through participation in the development and implementation of technical methods/procedures within the Group, Division or TSC.<br>See Benchmark standards attached. |

| Fully Successful | In addition to attached Benchmark standards, the following measurable criteria apply. **Employee _generally_ applies technical skills and organizational knowledge to perform and check analyses, investigations, or designs for assigned projects with mentoring.**<br>▪ No more than 3 valid complaints or substantive, supervisory interventions related to technical aspects of work products during the rating period<br>▪ Applies appropriate technical codes, criteria, standards, guidelines in the accomplishment of tasks/jobs.<br>▪ Analyses and results/products are _generally_ sound and accurate; peer review comments identify only minor errors.<br>▪ Demonstrates good, sound performance that meets organizational goals and consistently meets clients' expectations related to technical aspects of product. |
|---|---|
| Minimally Successful | Employee is _occasionally_ able to perform or check analyses, investigations, or designs for assigned projects with mentoring; no more than 5 valid complaints or substantive, supervisory interventions related to technical aspects of work products during the rating period. See TSC Benchmark standards attached. |
| Unsatisfactory | Any performance that falls below that which is described as Minimally Successful. See Benchmark standards attached. |

## Narrative Summary

Describe the employee's performance for each Critical element. A narrative summary must be written for each element assigned a rating of Exceptional, Superior, Minimally Successful, or Unsatisfactory.

Dan has many years of different electrical engineering experience he is now applying to the BOR's goals of water delivery and electric power generation and exhibits a sustained support of organizational goals. Dan is quickly adapting to the Bureau of Reclamation type of work. He demonstrates good sound performance that meets organizational goals.

Dan will be taking NEC class this fall

**Rating for Critical Element 3:**

[ ] Exceptional-5   [ ] Superior-4   [x] Fully Successful-3   [ ] Minimally Successful-2   [ ] Unsatisfactory-0

## U.S. DEPARTMENT OF THE INTERIOR
### Employee Performance Appraisal Plan

| Employee Name:<br>Daniel W. Hamann | Title/Series/Grade:<br>Electrical Engineer GS-850-11 | | |
|---|---|---|---|
| Duty Station:<br>Denver TSC, Lakewood, Colorado | Appraisal Period:<br>FY 2019 | From Date:<br>October 1, 2018 | To Date:<br>September 30, 2019 |

**Part A-1: Establishment of Performance Plan:** *Signatures certify that performance plan (Part E) was discussed with the employee.*

| Employee:<br>Date: 10-31-18 | Rating Official:<br>Date: 31-Oct-2018 | Reviewing Official (if applicable):<br>Date: |
|---|---|---|

**Part A-2: Employee Input into Performance Plan Development:** *Signatures certify that the rating official solicited the employee's involvement in developing the performance plan.*

| Employee:<br>Date: 10-31-18 | Rating Official:<br>Date: 31-Oct-18 |
|---|---|

**Part A-3: Employee Training:** *Signatures certify that the employee reviewed the "Understanding Performance Management" guidance or was otherwise provided training on the performance management policy.*

| Employee:<br>Date: 10-31-18 | Rating Official:<br>Date: 31-Oct-18 |
|---|---|

**Part A-4: Individual Development Plan:** *Signatures certify that the employee's Individual Development Plan was created. (Optional)*

| Employee: | Date: | Rating Official: | Date: |
|---|---|---|---|

**Part B: Progress Review:** *Signatures certify that performance was discussed.*

| Employee:<br>Date: 5/29/18 | Rating Official:<br>Date: 2-9-May-19 |
|---|---|

**Part C: Summary Rating Determination:** Assign the numerical rating level that accurately reflects the employee's performance for each of the critical elements (Use only whole numbers: **Outstanding = 5 points; Exceeds Expectations = 4 points, Fully Successful = 3 points, and Unacceptable = 0 points.)** *See next page for complete instructions.*

| Element Number | Numerical Rating |
|---|---|
| 1 | 3 |
| 2 | 3 |
| 3 | 3 |
| 4 | --- |
| 5 | --- |
| Total: | 9 |

**Total Numerical Rating** 9 ÷ **Number of Elements** 3 = **Numeric Summary Rating** 3.0

**Part D: Summary Rating: Use conversion chart to determine rating. Check appropriate box:**

| | | |
|---|---|---|
| | Outstanding | 4.6 – 5.00 AND No Critical Element rated lower than "Exceeds Expectations" |
| | Exceeds Expectations | 3.6 – 4.59 AND No Critical Element rated "Unacceptable" |
| X | Fully Successful | 3.0 – 3.59 AND No Critical Element rated "Unacceptable" |
| | Unacceptable | One or more Critical Elements rated "Unacceptable" |

| Employee: EMPLOYEE<br>Date: REFUSED TO<br>SIGN 8-Nov-19 | Rating Official:<br>Date: 7-Nov-19 | Reviewing Official: (if applicable):<br>Date: |
|---|---|---|

Check here if Interim Rating: _____

Performance Award:   QSI _____        Cash: $ _____  or _____% of pay        Time Off _____

## Instructions for Completing the Employee Performance Appraisal Plan (EPAP) Form

**Establishing Critical Elements and Performance Standards**

Critical elements (at least one, but not more than five) must be established for each employee at the start of the appraisal period. Through these elements, employees are held accountable for work assignments and responsibilities of their position. A critical element is an assignment or responsibility of such importance that Unacceptable performance in that element alone would result in the determination that the employee's overall performance is Unacceptable. Please see 370 DM 430 or the Performance Management Handbook for more detailed information.

Performance standards are management-approved expressions of the performance threshold(s), requirement(s), or expectation(s) that must be met to be appraised on a critical element at a particular level of performance. They must be focused on results and include credible measures such as quality, quantity, timeliness, cost effectiveness, etc. The attached Benchmark Standards describe general parameters of the standards. **Federal regulations require, at a minimum, that a specific performance standard be established for the Fully Successful level for each critical element. Rating officials are strongly encouraged to develop specific performance standards at additional levels to ensure that the employee has a clear understanding of the levels of performance expected.**

At least one, and preferably all, critical elements must show how the element is linked to the strategic goal(s) of the organization. These goals should be aligned throughout the organization (i.e., show how the strategic goal cascades from the senior executive level down to the lowest non-supervisory levels). The employee should be able to clearly understand how the results they are held responsible for are linked to the results that those in their supervisory/managerial chain are held responsible for.

**Employee Involvement:** Employees must be provided an opportunity to participate in the development of their performance plans. Part A-2 of this form requires employee and rating official signatures certifying that employee input into the development of the plan was solicited.

**Individual Development Plan (IDP) (Optional):** The IDP provides a connection between the employee's career interests and needs to the organizational mission and priorities. The employee and the rating official should develop goals together.

**Progress Reviews:** A progress review discussion is required approximately midway through the appraisal period. Part B should be completed after the progress review. Any written feedback or recommended training can be noted on a separate sheet and attached to the EPAP form.

**Assigning the Summary Rating:** A specific rating is required for each critical element to reflect the level of performance demonstrated by the employee throughout the appraisal period. Only one numerical rating level is assigned for each critical element. Before the rating official assigns a summary rating, he/she should consider all interim appraisals received for the employee during the annual appraisal period. The summary rating is assigned as follows:

A. Assess how the employee performed relative to the described performance standards.

B. Document the employee's performance with a narrative that describes the achievements for the critical elements as compared to the performance standards. A narrative must be written for each critical element assigned a rating of Outstanding or Unacceptable to provide examples of the employee's performance that substantiate and explain how the performance falls within the level assigned. There is a block provided for the narrative for each critical element.

C. In Part C of this form, assign one of the numerical rating levels that accurately reflects the employee's performance for each of the critical elements. Use only whole numbers: Outstanding = 5 points, Exceeds Expectations= 4 points, Fully Successful = 3 points, and Unacceptable = 0 points.

D. Add up the numerical rating levels to get a total, and then divide the total by the number of critical elements that were rated to get an average. Elements that are not rated because an employee has not had a chance to perform them during the appraisal period are not assigned any points and should not be used to determine the average.

E. Assign a summary rating based on the table in Part D of this form. Employee and rating official sign the form certifying that the rating was discussed. *Summary ratings of Outstanding or Unacceptable must be reviewed and approved by the reviewing official prior to the rating official's discussion with the employee.*

**Note:** Whenever an employee is rated **Unacceptable** on one or more critical elements, the overall rating **must** be **Unacceptable** (regardless of total points). **The rating official should immediately contact the servicing Human Resources Office for guidance and assistance on addressing Unacceptable performance.**

2

**Part E: Critical Elements and Performance Standards:** *List each of the employee's critical elements (at least one, but not more than five) and their corresponding performance standards. If Benchmark Standards are used, indicate "Benchmark Standards are attached" in the space below, and ensure they are attached to this form. At a minimum, measurable criteria must be identified at the Fully Successful level. For at least one critical element, identify the strategic/mission goal that the critical element supports.*

| Critical Element 1 Title: | Critical Element Description: (Describe the results (e.g., product, service. duty) for which the employee is accountable and responsible) |
|---|---|
| | **Performance Measure:** Support Reclamation's program accomplishment within the TSC by providing quality service and products to internal and external clients, in part through adherence to the TSC Operating Guidelines.  Plan, organize, prioritize, monitor, and accomplish work within established budget and schedule.  Perform required administrative tasks and incorporate concern for safety and security in all work. |
| | **GPRA/Strategic Goal: Workload/Project Management** - Ensure continued implementation of Reclamation Project Management Framework and TSC Project Management and workload management practices to improve the timeliness and cost accountability of TSC products. |

| Performance Standards | |
|---|---|
| Outstanding | **Employee plans and performs an exceptional quantity of work according to organizational priorities and schedules with little supervision.**<br>• No valid complaints or substantive supervisory interventions related to workload or project management during the rating period.<br>• <u>With few exceptions</u> completes tasks/jobs (including checks/reviews, etc) on time and often ahead of schedule and within or below agreed to budgets through the use of project management tools (such as earned value analysis, task based estimates, project management plans, etc) and reports cost effectiveness to supervisor.<br>• Positively influences and improves organizational collaboration and coordination with fellow employees, colleagues, supervisors/managers, and/or clients to prevent misunderstandings and plans for the unexpected.<br>• Proactive, self-starter and highly motivated to complete tasks successfully and improve processes; <u>consistently</u> exceeds clients' expectations (as documented in narrative summary).<br>• Successfully manages workload during the majority of rating period, of considerable complexity, controversy, and/or well beyond present grade level.<br>• Peer (and other) reviewers and checkers are <u>with few exceptions</u> afforded sufficient time to review employee's work.<br>See Benchmark standards attached. |
| Exceeds Expectations | **Employee plans and performs a high quantity of work according to organizational priorities and schedules with less than normal supervision.**<br>• No more than 1 valid complaint or substantive supervisory intervention related to workload or project management during the rating period<br>• <u>Consistently</u> completes tasks/jobs (including checks/reviews, etc) on time and often ahead of schedule and within agreed to budgets through the use of project management tools (such as earned value analysis, task based estimates, project management plans, etc)and reports cost effectiveness to supervisor.<br>• Self-starter and motivated to complete tasks successfully; <u>generally</u> exceeds clients' expectations (as documented in narrative summary).<br>• Effectively collaborates and coordinates with fellow employees, colleagues, supervisors/managers, and/or clients and handles difficult and unpredicted problems.<br>• Successfully manages workload during the majority of rating period, which is considered outside typical norms in terms of complexity, controversy, and/or beyond present grade level.<br>• Peer (and other) reviewers and checkers are <u>consistently</u> afforded sufficient time to review employee's work.<br>See Benchmark standards attached. |

3

| Fully Successful | In addition to attached Benchmark standards, the following measurable criteria apply: **Employee generally plans and performs workload/project management duties for assigned projects according to organizational priorities and schedules with mentoring.**<br>• No more than 3 valid complaints or substantive supervisory interventions related to workload or project management duties during the rating period.<br>• Generally completes tasks/jobs (including checks/reviews, project status updates, change management, and charge reconciliation) in a timely manner and within agreed to budgets through the use of project management tools (such as earned value analysis, task based estimates, project management plans, etc.)<br>• Demonstrates good, sound performance that meets organizational goals; consistently meets supervisor's, client's and project managers' product delivery expectations.<br>• Peer (and other) reviewers and checkers are generally afforded sufficient time to review employee's work. |
|---|---|
| Unacceptable | Any performance that falls below that which is described as Fully Successful. See Benchmark standards attached. |

## Narrative Summary

Describe the employee's performance for the critical element. A narrative summary must be written for each element assigned a rating of Outstanding or Unacceptable.

In FY 2019, Dan worked on the Durango Pumping Plant Crest Gate Redesign, Boca Dam Seismic Modification Construction Support, San Xavier Reliability Recovery Project, Cle Elum Gate Hoist project and Blackfeet Renewable Energy Opportunities study.

**Rating for Critical Element 1:**

[ ] Outstanding-5    [ ] Exceeds Expectations-4    [x] Fully Successful-3    [ ] Unacceptable-0

4

**Part E: Critical Elements and Performance Standards:** *List each of the employee's critical elements (at least one, but not more than five) and their corresponding performance standards. If Benchmark Standards are used, indicate "Benchmark standards are attached" in the space below, and ensure they are attached to this form.* ***At a minimum, measurable criteria must be identified at the Fully Successful level.*** *For at least one critical element, identify the strategic/mission goal that the critical element supports.*

| Critical Element 2 Title: | **Performance Measure: <u>Communication</u>.** Organize and prepare, or coordinate the preparation of, materials such as specifications documents, reports, meeting minutes, travel reports, drawings, maps, graphs, or figures; deliver oral presentations or briefings; and participate in meetings – to communicate, promote TSC capabilities, and convey work status and findings to team leaders, team members, clients, superiors, and others. |
|---|---|
| | **GPRA/Strategic Goal:** Contribute to the accomplishment of GPRA performance targets for Reclamation's goals for efficient use and delivery of water and hydropower through effective communication. |

| Performance Standards | |
|---|---|
| Outstanding | **Employee communicates clearly and effectively on even complicated or controversial subjects.**<br>• No valid complaints or substantive supervisory interventions related to communication during the rating period.<br>• <u>With few exceptions</u> provides exceptional quality written documents that require only minor additional data and/or clarification upon review.<br>• Provides high quality oral communication appropriately tailored to the target audience such that concepts and/or ideas are accurately, concisely, and persuasively articulated so that desired outcomes are achieved.<br>• <u>With few exceptions</u> seeks appropriate assistance on issues/concerns, including technical, in a timely manner, (i.e., effective networking) and often advises others (such as mentoring or coaching).<br>• <u>Consistently</u> exceeds clients', supervisor's, and team lead's expectations (as documented in narrative summary.)<br>**May also contribute to organizational growth or recognition:**<br>• Prepares peer-reviewed journal paper or serves as principal author of organizational guidelines or manual.<br>• Teaches an internal or external class.<br>See Benchmark standards attached. |
| Exceeds Expectations | **Employee communicates very clearly and effectively on even difficult subjects.**<br>• No more than 1 valid complaint or substantive supervisory intervention related to communication during the rating period.<br>• <u>Consistently</u> provides high quality written documents that require only minor additional data and/or clarification upon review.<br>• Provides high quality oral communication appropriately tailored to a wide range of audiences such that concepts and/or ideas are accurately and concisely articulated.<br>• <u>Consistently</u> seeks appropriate assistance on issues/concerns, including technical, in a timely manner (i.e., effective networking) and occasionally advises others (such as mentoring or coaching).<br>• <u>Generally</u> exceeds clients', supervisor's, and team lead's expectations (as documented in narrative summary.)<br>**May also contribute to organizational growth or recognition:**<br>• Prepares or presents a technical paper or presentation for internal or external forums/events.<br>• Participates in agency-supported teams and activities.<br>See Benchmark standards attached. |

5

| Fully Successful | In addition to attached Benchmark standards, the following measurable criteria **Employee <u>generally</u> communicates clearly and effectively with supervisor, team leads, team members, co-workers, and clients.**<br>• No more than 3 valid complaints or substantive supervisory interventions related to communication during the rating period.<br>• <u>Generally</u> provides quality written documents that require only minor additional data and/or clarification upon review.<br>• Provides quality oral communication appropriately tailored to a target audience.<br>• <u>Consistently</u> seeks appropriate assistance on issues/concerns, including technical, in a timely manner, (i.e., effective networking).<br>• <u>Consistently</u> meets clients', team leads', and supervisor's expectations with regards to communication on projects. |
| --- | --- |
| Unacceptable | Any performance that falls below that which is described as Fully Successful. See Benchmark standards attached. |

## Narrative Summary

Describe the employee's performance for the critical element. A narrative summary must be written for each element assigned a rating of Outstanding or Unacceptable.

Dan is fully successful in the communication critical element.

**Rating for Critical Element 2:**

[ ] Outstanding-5    [ ] Exceeds Expectations-4    [x] Fully Successful-3    [ ] Unacceptable-0

6

**Part E: Critical Elements and Performance Standards:** *List each of the employee's critical elements (at least one, but not more than five) and their corresponding performance standards. If Benchmark Standards are used, indicate "Benchmark Standards are attached" in the space below, and ensure they are attached to this form.* **At a minimum, measurable criteria must be identified at the Fully Successful level.** *For at least one critical element, identify the strategic/mission goal that the critical element supports.*

| **Critical Element 3 Title:** | **Performance Measure: <u>Technical.</u>** Perform, check, and/or assist others with analyses, investigations, or designs for assigned projects or studies. Such work may include data collection and evaluation, computations, analysis, modeling, or layouts. Maintain technical skills. |
|---|---|
| | **GPRA/Strategic Goal:** Contribute to the accomplishment of GPRA performance targets for Reclamation's goals for efficient use and delivery of water and hydropower by providing support activities, designs and analyses, and information that meet Reclamation needs. |

| **Performance Standards** ||
|---|---|
| **Outstanding** | **Employee demonstrates mastery of technical skills and a thorough understanding of the mission of the organization and has a fundamental impact on the completion of the job with little mentoring.**<br>■ No valid complaints or substantive supervisory interventions related to technical aspects of work products during the rating period.<br>■ Applies and leads or identifies the need for the development of appropriate technical codes, criteria, standards, guidelines to accomplish tasks/jobs.<br>■ Analyses and results/products are <u>with few exceptions</u> very sound and accurate; peer review comments identify only minor errors.<br>■ Products and performance are of such high quality that organizational goals have been achieved that would not have been otherwise.<br>■ Proactive, self-starter and highly motivated to complete tasks successfully and improve processes and <u>consistently</u> exceeds clients' expectations (as documented in narrative summary).<br>**May also contribute to improving organization's technical capabilities or recognition:**<br>● Advances the state-of-practice and/or state-of-art through independently developing technical methods/ procedures for Group, Division, or TSC.<br>See Benchmark standards attached. |
| **Exceeds Expectations** | **Employee effectively applies comprehensive technical skills, understanding of the objectives, and knowledge of organizational procedures to get the job done and support organizational goals with less than normal mentoring.**<br>■ No more than 1 valid complaint or substantive supervisory intervention related to technical aspects of work products during the rating period<br>■ Applies and assists in the development of appropriate technical codes, criteria, standards, guidelines to accomplish tasks/jobs.<br>■ Performance is unusually good, analyses and results/products are <u>consistently</u> sound and accurate; peer review comments identify only minor errors<br>■ Self-starter, motivated to complete tasks successfully, and <u>generally</u> exceeds clients' expectations (as documented in narrative summary).<br>■ Serves on technical teams that are not part of the normal workload.<br>**May also contribute to improving organization's technical capabilities or recognition:**<br>● Advances the state-of-practice and/or state-of-art through participation in the development and implementation of technical methods/procedures within the Group, Division or TSC.<br>See Benchmark standards attached. |

7

| Fully Successful | In addition to attached Benchmark standards, the following measurable criteria apply. **Employee <u>generally</u> applies technical skills and organizational knowledge to perform and check analyses, investigations, or designs for assigned projects with mentoring.**<br>■ No more than 3 valid complaints or substantive, supervisory interventions related to technical aspects of work products during the rating period<br>■ Applies appropriate technical codes, criteria, standards, guidelines in the accomplishment of tasks/jobs.<br>■ Analyses and results/products are <u>generally</u> sound and accurate; peer review comments identify only minor errors.<br>■ Demonstrates good, sound performance that meets organizational goals and <u>consistently</u> meets clients' expectations related to technical aspects of product. |
|---|---|
| Unacceptable | Any performance that falls below that which is described as Fully Successful. See Benchmark standards attached. |

## Narrative Summary

Describe the employee's performance for the critical element. A narrative summary must be written for each element assigned a rating of Outstanding, or Unacceptable.

Dan is fully successful in the area of the technical critical element.

---

**Rating for Critical Element 3:**

[ ] Outstanding-5    [ ] Exceeds Expectations-4    [x] Fully Successful-3    [ ] Unacceptable-0

8

**Privacy Act Notice:** Chapter 43 of Title 5, U.S.C., authorizes collection of this information. The primary use of this information is by management and your servicing human resources office to issue and record your performance rating. Additional disclosures of this information may be: To the U.S. Merit Systems Protection Board, U.S. Office of Special Counsel, U.S. Equal Employment Opportunity Commission, U.S. Federal Labor Relations Authority, or an arbitrator in connection with administrative proceedings; to the U.S. Department of Justice or other Federal agency, courts, or party to litigation when the Government is a party to or has an interest in the judicial or administrative proceeding; to a congressional office in response to an inquiry made on behalf of an individual; to the appropriate Federal, State, or local government agency investigating potential violations of civil or criminal law or regulation; and to Federal, State, local and professional licensing boards in determining qualifications of individuals seeking to be licensed.

If your bureau/office used the information furnished on this form for purposes other than those indicated above, it may provide you with an additional statement reflecting those purposes.

**Refusal to Sign:** In cases where the employee refuses to sign the Employee Performance Appraisal Plan (EPAP) form, the rating official has the authority to implement the performance plan and rating without employee agreement. Rating officials should identify in the employee's signature block that the "Employee refused to sign."

9

## Benchmark Employee Performance Standards

#### Outstanding:

The employee demonstrates exceptional performance in all aspects of the critical element that is of such high quality that organizational goals have been achieved that would not have been otherwise. The employee consistently achieved expectations at the highest level of quality possible and accomplished objectives even when faced with unanticipated challenges.

The employee demonstrates mastery of technical skills and a thorough understanding of the mission of the organization and has a fundamental impact on the completion of program objectives. The employee exerts a major positive influence on management practices, operating procedures and/or program implementation, which contribute substantially to organizational growth and recognition. The employee plans for the unexpected and uses alternate ways of reaching goals. Difficult assignments are handled intelligently and effectively. The employee has produced an exceptional quantity of work, often ahead of established schedules and with little supervision.

The employee's oral and written communications are exceptionally clear and effective. He/she improves cooperation among participants in the workplace and prevents misunderstandings. Complicated or controversial subjects are presented or explained effectively to a variety of audiences so that desired outcomes are achieved.

Indicators of performance at this level include outcomes/results that consistently exceed the Exceeds Expectations performance standard for the critical element.

#### Exceeds Expectations:

The employee demonstrates a high level of performance that exceeds expectations in significant areas of the critical element and exhibits a sustained support of organizational goals.

The employee shows a comprehensive understanding of the objectives of the job and the procedures for meeting them. Effective planning by the employee improves the quality of management practices, operating procedures, task assignments and/or program activities. The employee develops and/or implements workable and cost-effective approaches to improving organizational operations/results.

The employee effectively balances accomplishing work while handling difficult and unpredicted problems. The employee produces a high quantity of work, often ahead of established schedules with less than normal supervision. The employee works productively and strategically with others in non-routine matters, some of which may be complex and sensitive. The employee writes and speaks clearly on difficult subjects to a wide range of audiences.

Indicators of performance at this level include outcomes/results that consistently exceed the Fully Successful performance standard for the critical element.

#### Fully Successful:

The employee demonstrates consistently successful performance that contributes positively to organizational goals. The employee effectively applies technical skills and organizational knowledge to deliver results based on measures of quality, quantity, efficiency, and/or effectiveness within agreed-upon deadlines, keeping the rating official informed of work issues, alterations, and status. The employee successfully carries out regular duties while also handling any special assignments and identifying opportunities to improve organizational operations/results that consider stakeholder perspectives. The employee plans and performs work according to organizational priorities and schedules. The employee communicates clearly and effectively and works effectively with others to accomplish organizational objectives.

#### Unacceptable:

The employee's performance is unacceptable. The quality and/or quantity of the employee's work are not adequate for the position. Work products do not meet the requirements expected.

The employee demonstrates little or no contribution to organizational goals; failure to meet work objectives; inattention to organizational priorities and administrative requirements; poor work habits resulting in missed deadlines and/or incomplete work products; strained work relationships; failure to respond to client needs; and/or lack of response to rating official's corrective efforts.

10

## Appendix 1: Understanding Performance Management

**Position Duties** – Your rating official, normally your immediate supervisor, should provide you with a copy of the position description for your job. Your position description is the official record of your primary duties and responsibilities and is used in developing your performance plan. Take some time to read through your position description. Ask your rating official about anything that is not clear to you. Your rating official should review your position description with you at least once a year to ensure that it accurately reflects your main duties and responsibilities. Keep a copy of your position description and refer to it from time to time. You may want to make notes on your copy when your job changes, so that you can discuss the changes with your rating official.

**Employee Performance Appraisal Plan** – The Employee Performance Appraisal Plan (EPAP) form is the authorized form used by the Department to document the work performance of its employees under the four-level appraisal system. When used effectively, the EPAP form is a valuable communication tool for both employee development and organizational accomplishments.

Managers and supervisors are responsible for the following:

1. Complying with provisions of the U.S. Department of the Interior's Performance Management System policy (370 DM 430) and supplemental guidance provided in the Department's Performance Management Handbook;

2. Establishing critical elements and performance standards that are linked to organizational goals;

3. Monitoring employee performance, communicating with employees about their performance and addressing performance problems; and

4. Approving or reviewing ratings recommended by supervisors or rating officials.

The EPAP form has several important goals:

1. Clarifying how the employee's performance requirements link to the strategic goals of their organization;

2. Increasing individual productivity by giving employees the information they need to do their jobs effectively;

3. Improving individual/organizational productivity by promoting communication between employees and rating officials about job-related matters, so that better and more efficient methods of operation can be developed; and

4. Providing the basis for recognizing employees for good performance and their contributions to the organization.

**Appraisal Period** – The appraisal period begins October 1 and ends September 30 of each year, except where specific exceptions have been granted. The minimum period on which an appraisal may be based is 90 calendar days. During the appraisal period, your rating official may periodically discuss your work with you and let you know how you are doing. In addition, before the end of the appraisal period, the rating official will conduct one formal progress review with you. This progress review is another opportunity for you and your rating official to discuss your progress, review your performance plan, identify any training needs or improvements, or to revise your critical elements and performance standards.

**Critical Elements and Performance Standards** – Your rating official will explain your duties and responsibilities to you and discuss what is expected of you in order to achieve satisfactory performance. To further define your performance expectations, your rating official will establish critical elements and performance standards for your job. Employees must be afforded an opportunity to provide input into the development of the critical elements and performance standards. You are encouraged to participate in this process.

Critical elements tell you what work assignments and responsibilities need to be accomplished during the appraisal period. All employees must have at least one critical element that is linked to the strategic goals of the organization. Between one and five critical elements can be established for a position. These elements are considered critical because they are of such importance to the position that Unacceptable performance in one element alone would result in a determination that the employee's overall performance is Unacceptable.

Performance standards tell employees how well critical elements must be accomplished by defining achievable rating levels for: Outstanding, Exceeds Expectations, Fully Successful, and Unacceptable. These four rating levels focus on results and include credible measures such as quality, quantity, timeliness, cost effectiveness, etc.

Your overall performance is evaluated by your rating official using these performance standards. A determination that an employee's overall performance is Unacceptable will result in remedial action and may be the basis for removal from Federal service or reduction in grade.

11

**The Rating Process** – At the end of the appraisal period, your rating official will carefully review the critical elements and performance standards for your position. Based on your actual performance, one of four rating levels may be assigned. The rating will be presented to you during the formal performance discussion between you and your rating official. The appraisal will be completed with your signature and a copy provided to you. This rating is documented on the EPAP form and is considered as your rating of record. Your rating of record is directly linked to your eligibility for certain types of pay increases and awards.

**Rewarding Performance** – Rewarding performance means recognizing good performance and providing incentives to employees for their work efforts and contributions to the organization. At the end of the appraisal period, your rating official may consider you for an award based on your performance and rating of record as follows:

- Outstanding – Must be considered for an individual cash award, a Quality Step Increase, Time-Off Award, or other appropriate equivalent recognition.
- Exceeds Expectations – Eligible for an individual cash award, Time-Off Award, or other appropriate equivalent recognition.
- Fully Successful – Eligible for an individual cash award, Time-Off Award, or other appropriate equivalent recognition.
- Unacceptable – Ineligible for any performance-based recognition.

The Department's performance-based award policy is explained in 370 DM 451.2. Bureaus/Offices may have additional guidance governing the distribution of performance-based awards.

### How to Get the Most Out of the Performance Management Process

1. Ask for Feedback Throughout the Appraisal Period

How do you know if you are learning how to do your job and meeting your performance expectations? Talk to your rating official throughout the appraisal period. Your rating official wants you to succeed and is available to provide guidance to help you learn how to effectively do your job. Communicating regularly with your rating official gives you the opportunity to understand the job expectations. It also lets your rating official know what type of assistance or resources you need to perform your work, and it is a good way to get feedback.

Feedback is information that helps you know how well you are accomplishing the duties and responsibilities of your job. Employees who seek feedback from their rating officials learn their jobs more quickly and with fewer wrong turns than employees who shy away from feedback. Employees who seek feedback spend less time redoing work and turn in work with fewer mistakes. As a result, they improve their work performance.

Getting and using feedback is one of the most important keys to learning your job. As you do your work, ask for feedback from your rating official to see if you are on track. At first you may feel uncomfortable asking for feedback, but remember that your rating official wants you to succeed. As you master your job and get to know your rating official, you will soon feel more comfortable asking for and receiving feedback.

2. Preparation for the Appraisal Discussion

a. Before your rating official prepares your appraisal:

1. Prepare a list of key work accomplishments and give it to your rating official for consideration in preparing your rating.
2. If you have specific issues come prepared to discuss them. Give your rating official a "heads up" so that he/she can also prepare to discuss the issues.
3. Write down any key points and questions you may have.

b. During your performance discussion:

1. Don't be shy about asking for clarification, especially about your rating official's expectations.
2. Refer to your notes, so that you don't overlook any points that are important to you.
3. Tell your rating official how you feel things are progressing and if you need any additional information or materials.
4. Let your rating official know what your short/long-term career goals are.
5. Ask for feedback.

If you still have questions about the EPAP form, please consult with your rating official.

12

## Appendix 2: Supervisor's Guide to Developing Individual Development Plans

The Individual Development Plan (IDP) is a valuable performance enhancement tool for all federal employees. The IDP can assist those who want to enhance their skills and strengths, learn more about issues relevant to the performance of the agency, and grow personally and professionally. Bureaus/Offices may require the use of an IDP at their discretion. Check with your Human Resources Office for the IDP or other appropriate form used by your Bureau/Office to document employee development needs.

The following is a brief outline of the goals, definition, and steps in creating an IDP.

**Goals:** The employee and the supervisor should develop goals together. The IDP should connect the employee's career interests with the organizational mission and priorities. The most common goals of an IDP are to:

- Learn new skills to improve current job performance
- Maximize performance in support of organizational requirements
- Increase interest level, challenge, and satisfaction in current position
- Establish a career path, identifying the knowledge, skills, and abilities necessary for professional growth

**Definition:** An IDP may identify a broad spectrum of developmental activities, including on-the-job training, distance learning, formal classroom training, details, shadow assignments and self-development. It balances the needs of the organization and of the employee beginning with a focus on maximizing employee performance in the current job.

An IDP is a guide to help employees reach individual career goals within the context of organizational objectives. It is a developmental action plan to grow employees from their current state by providing systematic steps to improve and build on strengths. An IDP is a partnership between the employee and the supervisor for personal and professional development. Preparing an IDP involves open feedback, clarification, and discussion about developmental needs, goals, and plans. Periodic communication between the supervisor and the employee is key to ensure currency and relevance of an IDP.

***An IDP is not a:***
- Performance appraisal. It is not used to determine pay, awards or other personnel actions based on performance.
- Contract for training. Final approval of training opportunities is made based on factors such as timing and budget availability.
- Position description. It is not used for clarifying discrepancies in the job duties.
- Guarantee of promotion or reassignment to another position. While the developmental activities in an IDP may include training that might qualify the employee for another position or grade, there is no guarantee of advancement.

**Responsibilities:** As in all aspects of the employee/supervisor relationship, direct and open communication is the key to the success of an IDP. The following responsibilities address the IDP process specifically.

The **employee** is responsible for:
- Assessing their own skills necessary for performing the current position
- Suggesting developmental experiences which would enhance the skills necessary for performing in the current position and to achieve desired career goals
- Identifying personal career goals
- Understanding what skills are necessary for meeting career goals
- Participating in open discussions with the supervisor concerning the elements of the IDP
- Completing the developmental experiences in the IDP as approved by the supervisor
- Alerting the supervisor when the IDP needs review and updating

The **supervisor** is responsible for:
- Providing constructive feedback to the employee about skills necessary to perform the duties of the current position
- Reviewing employee suggestions for developmental experiences and making additional suggestions which would enhance the skills necessary to perform in the current position
- Coaching the employee about stated career goals
- Identifying developmental experiences which would enhance the skills necessary for performing in subsequent positions aligned with the employee's career goals
- Participating in open discussions with the employee concerning the elements of the IDP, and periodically reviewing and updating the IDP
- Giving final approval for specific developmental experiences
- Monitoring the progress of the employee in completing training and the developmental experiences in the IDP

13

## Appendix 3: Individual Development Plan (IDP)

Bureaus/Offices may require the use of an IDP at their discretion. Check with your Human Resources Office for the IDP or other appropriate form to be used by your Bureau/Office for documenting employee developmental needs.

**IDP Performance Year:** _____

| Employee's Name | Position Title/Grade | Office Phone | Office Fax | Email Address |
|---|---|---|---|---|
| Current Supervisor's Name | Supervisor's Title | Office Phone | Office Fax | Email Address |

| Goals for Successful Performance in Current Position | Short-term Career Goals (2-3 years) | Long-term Goals (3+ years) | | |
|---|---|---|---|---|

| Developmental Objectives: What do you need to do this year to work towards your goals? | Developmental Activities (training, assignments, projects, details, etc.) | Proposed Dates | Estimated Costs | Date Completed |
|---|---|---|---|---|

| Notes: | Employee's Signature/Date | | | |
|---|---|---|---|---|
| | Supervisor's Signature/Date | | | |

## Instructions for Completing the IDP

**Employee Development and Career Goals** – The employee and supervisor work together to complete the goals for successful performance in the employee's current position and the employee's short- and long-term career goals.

**Developmental Objectives** – Describe what the employee needs to do this year to work toward his/her goals. Objectives describe what the employee needs to learn or achieve in order to reach his/her goals.

**Method of Training and Time Frame** – Determine what type of training or activity is needed to accomplish the employee's developmental goals. It could be on-the-job training, a detail, a formal training course or a combination of methods. Identify the proposed dates for the training or activity in the "Proposed Dates" column. Enter the actual or estimated cost of the activity in the "Estimated Costs" column. This column can be used in preparing your office's annual budget. Once the training is completed, write the date in the "Date Completed" column.

Methods of Training:
- On-the-Job Training – Can include coaching by a skilled individual or details into positions that will give the employee the skills and knowledge needed.
- Details – Temporary assignments to another location and/or position to gain specific knowledge and/or experience.
- Courses – Formal training courses, e.g., from your bureau/office, local universities, commercial vendors.
- Webcasts/Computer-Based/Online Learning – A variety of topics are available through your Bureau/Office via webcasts, software packages, and online training.

**Discussing the Development Plan** – Supervisors should discuss the IDP with the employee and make any necessary modifications. The supervisor and employee should sign and date the plan. The IDP should be completed within 45 days from the beginning of the performance year.

**Review and Modifications** – The IDP should be reviewed at each performance review and modified as situations or needs change.

15

## Hamann, Daniel (Dan)

🎥 ✗ 👤+    More ▼

**me:** Dan - are you on line?

Sent at 8:14 AM on Friday

**Daniel:** I am.

**me:** Have you decided to sign or not sign your EPAP?

Sent at 8:31 AM on Friday

**Daniel:** I am not signing and I will be submitting the reasons why shortly. The EPAP is out of compliance with the requirements of the 370 DM 430 HB. I will submit the EPAP with comments showing the specific issues of non-compliance.

**me:** Okay. Thank you.

**Daniel:** You are welcome.

Sent at 8:34 AM on Friday

Pop-in ✓

| | |
|---|---|
| **From:** | Barrett, Kaci |
| **To:** | Adolf, Kellie J |
| **Cc:** | Peterson, Laura A |
| **Subject:** | Re: 2 TSC employees ready for promotion |
| **Date:** | Monday, September 12, 2016 12:23:30 PM |
| **Importance:** | High |

Their supervisor has signed the probationary period notices and I got them back. Their wigis are on schedule and will auto-generate.

On Mon, Sep 12, 2016 at 12:17 PM, Adolf, Kellie <kadolf@usbr.gov> wrote:
> Yep, I agree as well. We'll need to process their WGI actions before the promotions. They
> should also be coming up on completing their initial probationary period. I'm lgap'ing the
> actions today.
> ~Kellie

On Fri, Sep 2, 2016 at 11:16 AM, Peterson, Laura <lpeterson@usbr.gov> wrote:
> I spoke with Jay today and he is going to have the actions initiated for their promotions,
> hopefully before he leaves today, or arrange to have them initiated/approved by another
> supervisor in his absence.
>
> I agree with Kaci, these must've fallen through the cracks during the abandon ship period.
> Luckily we didn't go beyond the one year mark, he indicated they had not completed
> enough rotations to be promoted in the first 6 months.
>
> Laura

On Thu, Sep 1, 2016 at 8:24 PM, Adolf, Kellie <kadolf@usbr.gov> wrote:
> Kaci and Laura,
> I have not had a chance to contact Jay about these 2 employees. Laura, can you send
> Jay an email or call him about his intentions on promoting these guys? I hear he's out of
> the office for 2 weeks after tomorrow, so if you could contact him Friday that would be
> very helpful!
>
> Meanwhile, Keith is aware of his staffing request questions. Thanks mucho!
> ~Kellie

On Mon, Aug 29, 2016 at 2:40 PM, Barrett, Kaci <kbarrett@usbr.gov> wrote:
> Jay Boggess called me and let me know that Daniel Hamann and Jahwill Daily are
> coming due for their career ladder promotions on 09/20/16. He had not seen anything
> from HR on these reminding him of the actions. I'm sure with all the changes in staff
> things got off track. Can you touch base with him on these and also he said he had a
> few other things he wanted to talk about. Thanks!

They are both rotational engineers and have tickler dates of 03/20/16 (6 months) for their promotions in their initial hire actions so Patty would have contacted Mr. Boggess back then to see if he wanted to give them their promos. They are coming up on their one year mark on 09/20/16.

Hamann was hired as a GS-07 , Daily was hired as a GS-07

--
Kaci Barrett, HR Assistant
phone 303-445-2665
email KBarrett@usbr.gov

If you would like to provide feedback on my customer service, please contact my supervisor, Keith Anna, at 303-44!      , or by email at kanna@usbr.gov.

**CONFIDENTIALITY NOTICE:**
The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

EXHIBIT F-14

**ESAM Modernization v3.0.1-b151:** Service Agreement List   Billable Rates   Reports.   signed in as: jboggess(PROJECT_MGR|TSC)   Logout

GO TO PREVIOUS SERVICE AGREEMENT

**Account Summary**

| | | | | | |
|---|---|---|---|---|---|
| **Title** | LNFH Surface Intake and Fish Passage | **Account Type** | SERVICE_AGREEMENT | **Realm** | TSC |
| | | **WOID** | F061A | **WOID Status** | OPEN |
| **Account Status** | APPROVED | **Resources Available** | Yes | **Project Category** | COMPLEX |
| **Client Approved** | Yes | | | | |

BRC

Advanced Planned: No Year:

Cancel   Print

**Detail**   Schedule   Budget   History   Completion   Attachments

Scope

01-29-2020 Change Order No. 3 adds $1,078,926 FY20 budget so TSC design teams can complete design through 100% and Pre-Val cost estimate. This deducts $40,880 for the Water Conveyance Group staff days to Team Lead the pipe rehab as part of Phase 2 design and construction contract. 11-25-2019 change order No. 2 to add $250,000 as part of FY20 budget through to January, 2021 due to continuing resolution. Remainder budget will be added by a future change order. 10-01-2019 Carry over remaining FY19 budget of $170,337.36 into FY20. 6-07-2019 Add the remaining $218,752 meeting the FY19 design budget. 4-5-2019 The Bureau of Reclamation Technical Service Center (TSC) will complete the final designs and specifications for the Leavenworth National Fish Hatchery Surface Intake Fish Screen and Fish Passage design package. A final design concept for the intake and fish screen will include the following structures: • Intake diversion roughen channel and fish passage structure • Intake headworks trashrack and sluice channel • Intake headworks fish screen • Intake pipeline replacement and retrofit

FBMS Accounting String

| Type | WBS | Number | | FBMS Status | | FBMS Description | |
|---|---|---|---|---|---|---|---|
| | | | XXXR4524KS-RR4888FAPN1900401 (8) | | Open | TSFAPN19004 LNFH SURFACE WTR INTAKE | |

Client

| **Group** | PN | **Office** | CCAO |
|---|---|---|---|
| **Account Manager** | NORRIS, MICHELLE L | **Contact** | Child, David |

Project Manager

| **Name** | CHA, CHOU | **Cost Center** | RR85815000 |
|---|---|---|---|

Comment

**ESAM Modernization v3.0.1-b151:** Service Agreement List   Billable Rates   Reports

signed in as: jboggess(PROJECT_MGR|TSC)   Logout

GO TO PREVIOUS SERVICE AGREEMENT

Account Summary

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | NIIP Pumping Plant G7.5LA HVAC Addition | **Account Type** | SERVICE_AGREEMENT | **Realm** | TSC |
| **Title** | | **WOID** | UC684 | **WOID Status** | OPEN |
| | | **Resources Available** | Yes | **Project Category** | BASIC |
| **Account Status** | APPROVED | | | | |
| **Client Approved** | Yes | | | | |

BRC

Advanced Planned: No Year:

[ Cancel ]   [ Print ]

**Detail**   Schedule   Budget   History   Completion   Attachments

Scope

The Navajo Indian Irrigation Project Pumping Plant G7.5LA was designed by the TSC in the early 1980s. At the time, not Heating, Ventilation and Air Conditioning (HVAC) systems were included in the plant. Overtime, this has become problematic and the pumps are continually overheating and shutting off. The client has requested that evaporative coolers be added to the plant to address the heat issues. See attached PMP for additional details.

FBMS Accounting String

| Type | WBS | Number | | FBMS Status | | FBMS Description | |
|---|---|---|---|---|---|---|---|
| | | 18XR2301EC-RA080912510019328 (4) | **FBMS Status** | Open | **FBMS Description** | LATERALS G7.5L DSGN PLC PRBM CRRT | |

Client

| **Group** | UC | **Office** | FARM/NAVGAL |
|---|---|---|---|
| **Account Manager** | OLIVER, KARRI JANIENE | **Contact** | Manzanares, emma |

Project Manager

**Name**   JANKOWSKI, RAFAL MARCIN   **Cost Center**   RR85841000

Comment

**ESAM Modernization v3.0.1-b151:**   Service Agreement List   Billable Rates   Reports          signed in as: jboggess(PROJECT_MGR|TSC)   Logout

**Account Summary**

| | | | | | | |
|---|---|---|---|---|---|---|
| **Title** | Cle Elum Gate Hoist Construction Support (1) | **Account Type** | SERVICE_AGREEMENT | **Realm** | TSC |
| | | **WOID** | CEGH1 | **WOID Status** | OPEN |
| **Account Status** | APPROVED | **Resources Available** | Yes | **Project Category** | BASIC |
| **Client Approved** | Yes | | | | |

BRC

Advanced Planned: No Year:

[ Cancel ]  [ Print ]

**Detail**   Schedule   Budget   History   Completion   Attachments

Scope

Provide Construction Support for the Cle Elum Gate Hoist project in reviewing submittals and providing input to construction issues. Includes issuance of an addendum to incorporate contractor-submitted modifications to the specs and drawings that were accepted by the client. CO #1 - extend into FY20

FBMS Accounting String

| **Type** | **WBS** | **Number** | XXXR0680W4-RP003353113241200 (1) | | **FBMS Status** | Open | **FBMS Description** | STORAGE SYSTEM MP EOM-ASSGD FR 5655(PC) |
|---|---|---|---|---|---|---|---|---|

Client

| **Group** | PN | | **Office** | YAK |
|---|---|---|---|---|
| **Account Manager** | NORRIS, MICHELLE L | **Contact** | Galayde, Aaron | |

Project Manager

**Name**   CEPAK, ZACHARY D   **Cost Center**   RR85841000

Comment

there will be 4 woids for this project

**U.S Department of the Interior**

**Bureau of Reclamation**

**Time and Attendance System**

| | |
|---|---|
| **Report** | Official or Corrected Timesheet |
| **Printed by:** | jboggess |
| **Printed on:** | Tuesday, Aug 11, 2020 |
| **Pages:** | 280 |
| **Description** | Report on the official or corrected timesheet for a specified Pay Period. |
| **Comments:** | This report was generated for the employee HAMANN, DANIEL W for the Pay Period starting 201601 and ending 202011. |

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act. This document may not be altered or destroyed except as authorized.

The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

**Go to the next page to view the report**

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201601     Pay Period Beginning Date: 12/13/2015     Pay Period Ending Date: 12/26/2015

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Dec 13 | Mon Dec 14 | Tue Dec 15 | Wed Dec 16 | Thu Dec 17 | Fri Dec 18 | Sat Dec 19 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 4:00 | 0:30 | 2:30 | 3:45 | 1:45 | | 12:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.2 | 061 | | | | | | | 7:00 | 1:00 | | | | 08:00 | | | | | |
| 1.3 | 010 | | | | | | 2:00 | 0:30 | 2:30 | 1:00 | 0:45 | | 06:45 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.4 | 010 | | | | | | 1:00 | | | 2:00 | 5:00 | | 08:00 | | A970F | RR4888FAPN1500401 | XXXR4524KS | Black Canyon Powerplant & Swyd Procurement Stage |
| 1.5 | 010 | | | | | | 1:00 | | | | | | 01:00 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 1.6 | 010 | | | | | | | | 2:00 | 1:00 | 0:15 | | 03:15 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.7 | 010 | | | | | | | | | 0:15 | 0:15 | | 00:30 | | GCPGR | RP5222165400193DV | XXXR0680U5 | Grand Coulee Third Powerplant - GSU Transformer Replacements |
| | | Totals: | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Dec 20 | Mon Dec 21 | Tue Dec 22 | Wed Dec 23 | Thu Dec 24 | Fri Dec 25 | Sat Dec 26 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 3:30 | 2:30 | 4:00 | | | | 10:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.2 | 010 | | | | | | 1:00 | 1:30 | | | | | 02:30 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.3 | 010 | | | | | | 2:30 | 2:30 | 2:00 | | | | 07:00 | | A970F | RR4888FAPN1500401 | XXXR4524KS | Black Canyon Powerplant & Swyd Procurement Stage |
| 2.4 | 050 | | | | | | | | | 4:00 | 8:00 | | 12:00 | | | | | |
| 2.5 | 020 | | | | | | | | | 4:00 | | | 04:00 | | | | | |
| 2.6 | 010 | | | | | | 0:45 | | 1:00 | | | | 01:45 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 2.7 | 010 | | | | | | | 1:30 | | | | | 01:30 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201601     Pay Period Beginning Date: 12/13/2015     Pay Period Ending Date: 12/26/2015

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Dec 20 | Mon Dec 21 | Tue Dec 22 | Wed Dec 23 | Thu Dec 24 | Fri Dec 25 | Sat Dec 26 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.8 | 010 | | | | | | 0:15 | | 1:00 | | | | 01:15 | | GCPGR | RP5222165400193DV | XXXR0680U5 | Grand Coulee Third Powerplant - GSU Transformer Replacements |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

**Timekeeper Messages to Payroll**

**Pay Period Comments**

**Overtime Justification**

| Certified By | Date Certified | Approved By | Date Approved |
|---|---|---|---|
| HAMANN, DANIEL W | 12/22/2015 | BOGGESS, JAY S. | 12/23/2015 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201602     Pay Period Beginning Date: 12/27/2015     Pay Period Ending Date: 01/09/2016

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Dec 27 | Mon Dec 28 | Tue Dec 29 | Wed Dec 30 | Thu Dec 31 | Fri Jan 01 | Sat Jan 02 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|------|---|---|---|---|---|---|---|---|---|---|---|------|---|---|---|---|---|
| 1.1 | 020 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 1.2 | 050 | | | | | | | | | | 8:00 | | 08:00 | | | | | |
| 1.3 | 101 | | | | | | | 6:00 | 8:00 | 8:00 | | | 22:00 | | | | | |
| 1.4 | 231 | | | | | | | 2:00 | | | | | 02:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jan 03 | Mon Jan 04 | Tue Jan 05 | Wed Jan 06 | Thu Jan 07 | Fri Jan 08 | Sat Jan 09 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|------|---|---|---|---|---|---|---|---|---|---|---|------|---|------|---|---|---|
| 2.1 | 010 | | | | | | 3:00 | 1:00 | | 2:15 | 3:00 | | 09:15 | | A970F | RR4888FAPN1500401 | XXXR4524KS | Black Canyon Powerplant & Swyd Procurement Stage |
| 2.2 | 010 | | | | | | 0:30 | | | 0:15 | 1:00 | | 01:45 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.3 | 010 | | | | | | | 3:00 | 3:30 | 4:00 | 3:30 | 3:00 | | 17:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.4 | 010 | | | | | | | 1:30 | 3:00 | 1:00 | 2:00 | 1:00 | | 08:30 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.5 | 230 | | | | | | 0:30 | | | | | | 00:30 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.6 | 230 | | | | | | | 0:30 | | | | | 00:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.7 | 010 | | | | | | | 0:30 | 3:00 | | | | 03:30 | | NMWWR | RX191049933220000 | 16XR0680A5 | New Melones Waste Water Lift Station Repairs Construction Support |
| 2.8 | 230 | | | | | | | 0:15 | | 0:15 | | | 00:30 | | A970F | RR4888FAPN1500401 | XXXR4524KS | Black Canyon Powerplant & Swyd Procurement Stage |
| | Totals: | | | | | 0:00 | 8:30 | 8:45 | 8:00 | 8:15 | 8:00 | 0:00 | 41:30 | | | | | |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201602                 Pay Period Beginning Date: 12/27/2015                 Pay Period Ending Date: 01/09/2016

Cost Center: RR85843000        Department: IN            Bureau: 07            Subureau: 08            Location Code: DO1

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total | |
|---|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:30 | 16:45 | 16:00 | 16:15 | 16:00 | 0:00 | 81:30 | |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 01/08/2016 | | BOGGESS, JAY S. | 01/11/2016 |

## Official Timesheet for HAMANN, DANIEL W

### PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only.  Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201603  
Pay Period Beginning Date: 01/10/2016  
Pay Period Ending Date: 01/23/2016  

Cost Center: RR85843000  
Department: IN  
Bureau: 07  
Suburau: 08  
Location Code: DO1  

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jan 10 | Mon Jan 11 | Tue Jan 12 | Wed Jan 13 | Thu Jan 14 | Fri Jan 15 | Sat Jan 16 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|------|---|---|---|---|---|---|---|---|---|---|---|------|---|-------|-------------|------|-------------|
| 1.1 | 010 | | | | | | 2:00 | 3:00 | | | 0:30 | | 05:30 | | A970F | RR4888FAPN1500401 | XXXR4524KS | Black Canyon Powerplant & Swyd Procurement Stage |
| 1.2 | 010 | | | | | | 5:30 | 4:30 | 4:00 | 5:00 | 6:45 | | 25:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.3 | 230 | | | | | | 0:30 | 0:30 | | | | | 01:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.4 | 010 | | | | | | | | 4:00 | 3:00 | | | 07:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.5 | 010 | | | | | | 0:30 | 0:30 | | | 0:45 | | 01:45 | | GCPGR | RP5222165400193DV | XXXR0680U5 | Grand Coulee Third Powerplant - GSU Transformer Replacements |
| Totals: | | | | | | 0:00 | 8:30 | 8:30 | 8:00 | 8:00 | 8:00 | 0:00 | 41:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jan 17 | Mon Jan 18 | Tue Jan 19 | Wed Jan 20 | Thu Jan 21 | Fri Jan 22 | Sat Jan 23 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|------|---|---|---|---|---|---|---|---|---|---|---|------|---|-------|-------------|------|-------------|
| 2.1 | 050 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 2.2 | 010 | | | | | | 2:00 | | | | | | 02:00 | | A970F | RR4888FAPN1500401 | XXXR4524KS | Black Canyon Powerplant & Swyd Procurement Stage |
| 2.3 | 010 | | | | | | | 4:00 | 6:45 | 4:45 | 4:00 | | 19:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.4 | 230 | | | | | | | | | | | | 00:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.5 | 010 | | | | | | | 1:00 | 0:15 | 3:00 | 3:30 | | 07:45 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.6 | 010 | | | | | | | 1:00 | | | | | 01:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.7 | 230 | | | | | | | | 0:15 | | | | 00:15 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.8 | 010 | | | | | | | | 1:00 | | | | 01:00 | | FMSGR | RA191031810019300 | 16XR0680U5 | Folsom UHA Switchgear Pre- and Post-Award |
| 2.9 | 010 | | | | | | | | | 0:15 | 0:30 | | 00:45 | | GCPGR | RP5222165400193DV | XXXR0680U5 | Grand Coulee Third Powerplant - GSU Transformer |

## Official Timesheet for HAMANN, DANIEL W
### PRIVACY ACT DOCUMENT - RESTRICTED ACCESS
Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201603

Pay Period Beginning Date: 01/10/2016

Pay Period Ending Date: 01/23/2016

Cost Center: RR85843000

Department: IN

Bureau: 07

Suburea: 08

Location Code: DO1

**Week 2**

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jan 17 | Mon Jan 18 | Tue Jan 19 | Wed Jan 20 | Thu Jan 21 | Fri Jan 22 | Sat Jan 23 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | | Replacements |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:15 | 8:00 | 8:00 | 0:00 | 40:15 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:30 | 16:30 | 16:15 | 16:00 | 16:00 | 0:00 | 81:15 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 01/22/2016 | | BOGGESS, JAY S. | 01/25/2016 |

**Official Timesheet for HAMANN, DANIEL W**

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201604     Pay Period Beginning Date: 01/24/2016     Pay Period Ending Date: 02/06/2016

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jan 24 | Mon Jan 25 | Tue Jan 26 | Wed Jan 27 | Thu Jan 28 | Fri Jan 29 | Sat Jan 30 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|------|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 1:45 | 3:00 | 3:00 | 3:00 | 3:00 | | 13:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KS | K88 - LAB UNIQUE COSTS |
| 1.2 | 010 | | | | | | 4:15 | 5:00 | 2:00 | 0:30 | 0:15 | | 12:00 | | FMSGR | RA191031810019300 | 16XR0680A5 | Folsom UHA Switchgear Pre- and Post-Award |
| 1.3 | 010 | | | | | | 2:00 | | 2:00 | 1:30 | 0:15 | | 05:45 | | A970F | RR4888FAPN1500401 | XXXR4524KS | Black Canyon Powerplant & Swyd Procurement Stage |
| 1.4 | 230 | | | | | | 0:45 | | 0:45 | | | | 01:30 | | FMSGR | RA191031810019300 | 16XR0680A5 | Folsom UHA Switchgear Pre- and Post-Award |
| 1.5 | 010 | | | | | | | | 1:00 | 1:00 | 1:15 | | 03:15 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 1.6 | 010 | | | | | | | | | 1:00 | 1:15 | | 02:15 | | GCPGR | RP5222165400193DV | XXXR0680U5 | Grand Coulee Third Powerplant - GSU Transformer Replacements |
| 1.7 | 010 | | | | | | | | | 1:00 | 1:00 | | 02:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.8 | 010 | | | | | | | | | | 1:00 | | 01:00 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| | Totals: | | | | | 0:00 | 8:45 | 8:00 | 8:45 | 8:00 | 8:00 | 0:00 | 41:30 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jan 31 | Mon Feb 01 | Tue Feb 02 | Wed Feb 03 | Thu Feb 04 | Fri Feb 05 | Sat Feb 06 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|------|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 0:15 | 0:30 | 1:00 | 2:00 | 1:30 | | 05:15 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.2 | 010 | | | | | | 3:45 | 1:00 | 3:15 | 2:15 | 2:00 | | 12:15 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.3 | 030 | | | | | | 2:00 | | | | | | 02:00 | | | | | |
| 2.4 | 061 | | | | | | 1:00 | 2:00 | | | | | 03:00 | | | | | |
| 2.5 | 010 | | | | | | 0:15 | 1:00 | 0:30 | 1:00 | 1:30 | | 04:15 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 2.6 | 010 | | | | | | 0:45 | 1:15 | 2:00 | 1:00 | 1:30 | | 06:30 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |

## Official Timesheet for HAMANN, DANIEL W

### PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201604     Pay Period Beginning Date: 01/24/2016     Pay Period Ending Date: 02/06/2016

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jan 31 | Mon Feb 01 | Tue Feb 02 | Wed Feb 03 | Thu Feb 04 | Fri Feb 05 | Sat Feb 06 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.7 | 010 | | | | | | | 0:30 | 0:15 | 0:15 | | | 01:00 | | GCPGR | RP5222165400193DV | XXXR0680U5 | Grand Coulee Third Powerplant - GSU Transformer Replacements |
| 2.8 | 010 | | | | | | | 1:45 | 1:00 | 1:30 | 1:30 | | 05:45 | | HHSSD | RP0447139600193CS | XXXR0680U5 | HH Station Service 2300V Dist |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:45 | 16:00 | 16:45 | 16:00 | 16:00 | 0:00 | 81:30 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 02/05/2016 | | BOGGESS, JAY S. | 02/05/2016 |

## Official Timesheet for HAMANN, DANIEL W
### PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201605    Pay Period Beginning Date: 02/07/2016    Pay Period Ending Date: 02/20/2016

Cost Center: RR85843000    Department: IN    Bureau: 07    Subureau: 08    Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Feb 07 | Mon Feb 08 | Tue Feb 09 | Wed Feb 10 | Thu Feb 11 | Fri Feb 12 | Sat Feb 13 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 0:30 | 3:45 | 1:30 | 1:00 | 1:15 | | 08:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.2 | 010 | | | | | | 0:15 | 2:30 | 1:30 | 0:30 | | | 04:45 | | GCPGR | RP5222165400193DV | XXXR0680U5 | Grand Coulee Third Powerplant - GSU Transformer Replacements |
| 1.3 | 010 | | | | | | 2:00 | | 2:45 | | 1:45 | | 06:30 | | HHSSD | RP0447139600193CS | XXXR0680U5 | HH Station Service 2300V Dist |
| 1.4 | 010 | | | | | | 2:00 | 1:45 | 2:15 | | 5:00 | | 11:00 | | A830F | RR4888FALC1500901 | XXXR4524KK | Yuma Desalting Plant Chlorine Containment Facility |
| 1.5 | 010 | | | | | | 3:15 | | | 1:15 | | | 04:30 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 1.6 | 010 | | | | | | | | 1:30 | | | | 01:30 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.7 | 030 | | | | | | | | 0:45 | | | | 00:45 | | | | | |
| 1.8 | 010 | | | | | | | | 0:30 | | | | 00:30 | | MDMC3 | RX1183A2340019309 | 15XR0680A5 | Minidoka Dam Modifications - Construction Closeout #3 |
| 1.9 | 010 | | | | | | | | 2:30 | | | | 02:30 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Feb 14 | Mon Feb 15 | Tue Feb 16 | Wed Feb 17 | Thu Feb 18 | Fri Feb 19 | Sat Feb 20 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 050 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 2.2 | 010 | | | | | | | 2:15 | 1:00 | | 1:15 | | 04:30 | | WCDEV | RX4888TINE1020000 | XXXR4524KK | DEVELOPMENT OF PROPOSALS |
| 2.3 | 010 | | | | | | | 1:30 | 2:45 | | 1:15 | | 05:30 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.4 | 010 | | | | | | | 1:30 | | 3:15 | 1:15 | | 06:00 | | MDMC3 | RX1183A2340019309 | 15XR0680A5 | Minidoka Dam Modifications - Construction Closeout #3 |

**Official Timesheet for HAMANN, DANIEL W**
PRIVACY ACT DOCUMENT - RESTRICTED ACCESS
Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201605          Pay Period Beginning Date: 02/07/2016          Pay Period Ending Date: 02/20/2016
Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

## Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Feb 14 | Mon Feb 15 | Tue Feb 16 | Wed Feb 17 | Thu Feb 18 | Fri Feb 19 | Sat Feb 20 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.5 | 010 | | | | | | | 2:15 | 2:00 | 1:15 | 1:30 | | 07:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.6 | 010 | | | | | | | 0:30 | 0:15 | | 1:15 | | 02:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.7 | 230 | | | | | | | 0:30 | | | | | 00:30 | | HHSSD | RP0447139600193CS | XXXR0080U5 | HH Station Service 2300V Dist |
| 2.8 | 230 | | | | | | | | 0:30 | | | | 00:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.9 | 010 | | | | | | | | 2:00 | 3:30 | 1:30 | | 07:00 | | HHSSD | RP0447139600193CS | XXXR0080U5 | HH Station Service 2300V Dist |
| | Totals: | | | | | 0:00 | 8:00 | 8:30 | 8:30 | 8:00 | 8:00 | 0:00 | 41:00 | | | | | |

| | | Row | From | From | From | From | From | From | From | Work Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| | | 2.2 | To | To | To | To | To | To | To | Antioch Fish Release kick-off meeting and orientation. |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:30 | 16:30 | 16:00 | 16:00 | 0:00 | 81:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

| Certified By | Date Certified | Approved By | Date Approved |
|---|---|---|---|
| | | BOGGESS, JAY S. | 02/19/2016 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201606    Pay Period Beginning Date: 02/21/2016    Pay Period Ending Date: 03/05/2016

Cost Center: RR85843000    Department: IN    Bureau: 07    Subureau: 08    Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Feb 21 | Mon Feb 22 | Tue Feb 23 | Wed Feb 24 | Thu Feb 25 | Fri Feb 26 | Sat Feb 27 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 0:45 | | | | | | 00:45 | | WCDEV | RX4888TINE1020000 | XXXR4524KK | DEVELOPMENT OF PROPOSALS |
| 1.2 | 010 | | | | | | 1:00 | 3:00 | | | 1:00 | | 05:00 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 1.3 | 010 | | | | | | 1:00 | | | | 1:00 | | 02:00 | | GCPGR | RP5222165400193DV | XXXR0680U5 | Grand Coulee Third Powerplant - GSU Transformer Replacements |
| 1.4 | 010 | | | | | | 2:30 | | | 1:15 | 1:00 | | 04:45 | | HHSSD | RP0447139600193CS | XXXR0680U5 | HH Station Service 2300V Dist |
| 1.5 | 010 | | | | | | 0:45 | 2:30 | 2:00 | 0:30 | | | 05:45 | | MDMC3 | RX1183A2340019309 | 15XR0680A5 | Minidoka Dam Modifications - Construction Closeout #3 |
| 1.6 | 010 | | | | | | 1:00 | 1:00 | 0:45 | 1:15 | 1:00 | | 05:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.7 | 010 | | | | | | 1:00 | | | 5:00 | 3:00 | | 09:00 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 1.8 | 010 | | | | | | | 1:30 | 1:15 | | 1:00 | | 03:45 | | A830F | RR4888FALC1500901 | XXXR4524KK | Yuma Desalting Plant Chlorine Containment Facility |
| 1.9 | 010 | | | | | | | | 4:00 | | | | 04:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | | Row | From | From | From | From | From | From | From | Work Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| | | 1.1 | To | To | To | To | To | To | To | Antioch Fish Release |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Feb 28 | Mon Feb 29 | Tue Mar | Wed Mar | Thu Mar | Fri Mar | Sat Mar | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 0:30 | 2:30 | 1:45 | 1:00 | 1:00 | | 06:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.2 | 010 | | | | | | | 0:15 | | | | | 00:15 | | GCPGR | RP5222165400193DV | XXXR0680U5 | Grand Coulee Third Powerplant - GSU Transformer |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201606　　　Pay Period Beginning Date: 02/21/2016　　　Pay Period Ending Date: 03/05/2016

Cost Center: RR85843000　　　Department: IN　　　Bureau: 07　　　Subureau: 08　　　Location Code: DO1

**Week 2**

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Feb 28 | Mon Feb 29 | Tue Mar | Wed Mar | Thu Mar | Fri Mar | Sat Mar | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.3 | 010 | | | | | | 1:30 | 3:30 | 6:00 | 3:30 | 2:00 | | 16:30 | | HHSSD | RP0447139600193CS | XXXR0680U5 | HH Station Service 2300V Dist |
| 2.4 | 010 | | | | | | | | | | 0:30 | | 00:30 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.5 | 010 | | | | | | | 1:15 | | | 0:30 | | 01:45 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.6 | 010 | | | | | | 6:00 | 0:30 | 0:15 | 0:30 | 1:00 | | 08:15 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 2.7 | 230 | | | | | | | | | 1:30 | | | 01:30 | | HHSSD | RP0447139600193CS | XXXR0680U5 | HH Station Service 2300V Dist |
| 2.8 | 010 | | | | | | | | | 3:00 | | | 03:00 | | WCSAH | RX4888TINE1300000 | XXXR4524KK | TSC SAFETY AND HEALTH ACTVS |
| 2.9 | 230 | | | | | | | | | | 1:00 | | 01:00 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 2.10 | 010 | | | | | | | | | | 3:00 | | 03:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 9:30 | 9:00 | 0:00 | 42:30 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 17:30 | 17:00 | 0:00 | 82:30 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

### Official Timesheet for HAMANN, DANIEL W
PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201606     Pay Period Beginning Date: 02/21/2016     Pay Period Ending Date: 03/05/2016

Cost Center: RR85843000     Department: IN     Bureau: 07     Suburau: 08     Location Code: DO1

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 03/04/2016 | | BOGGESS, JAY S. | 03/07/2016 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201607  Pay Period Beginning Date: 03/06/2016  Pay Period Ending Date: 03/19/2016
Cost Center: RR85843000  Department: IN  Bureau: 07  Subureau: 08  Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Mar | Mon Mar | Tue Mar | Wed Mar | Thu Mar | Fri Mar | Sat Mar | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 2:45 | 2:15 | 1:30 | | | | 06:30 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 1.2 | 010 | | | | | | 1:15 | 4:00 | 2:30 | 4:00 | 1:00 | | 12:45 | | HHSSD | RP04471396000193CS | XXXR0680U5 | HH Station Service 2300V Dist |
| 1.3 | 010 | | | | | | 3:15 | | 0:45 | | | | 04:00 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 1.4 | 010 | | | | | | 0:45 | 1:45 | 1:15 | 2:00 | 0:30 | | 06:15 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.5 | 010 | | | | | | | | 0:30 | | | | 00:30 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.6 | 010 | | | | | | | | 1:30 | 2:00 | 6:30 | | 10:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.7 | 230 | | | | | | | | | 0:30 | | | 00:30 | | HHSSD | RP04471396000193CS | XXXR0680U5 | HH Station Service 2300V Dist |
| 1.8 | 230 | | | | | | | | | | 0:15 | | 00:15 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:30 | 8:15 | 0:00 | 40:45 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Mar | Mon Mar | Tue Mar | Wed Mar | Thu Mar | Fri Mar | Sat Mar | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 2:15 | 0:30 | | | 3:00 | | 05:45 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.2 | 010 | | | | | | 3:00 | | 2:00 | | 1:00 | | 06:00 | | HHSSD | RP04471396000193CS | XXXR0680U5 | HH Station Service 2300V Dist |
| 2.3 | 230 | | | | | | 1:00 | | | | | | 01:00 | | HHSSD | RP04471396000193CS | XXXR0680U5 | HH Station Service 2300V Dist |
| 2.4 | 010 | | | | | | 0:45 | | | | 1:00 | | 01:45 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.5 | 010 | | | | | | 2:00 | 3:45 | 2:30 | 3:30 | 2:00 | | 13:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.6 | 010 | | | | | | | 3:45 | 2:00 | 2:45 | 1:00 | | 09:30 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.7 | 010 | | | | | | | | 1:00 | | | | 01:00 | | GCPGR | RX5222165400193DV | XXXR0680U5 | Grand Coulee Third Powerplant - GSU Transformer |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201607     Pay Period Beginning Date: 03/06/2016     Pay Period Ending Date: 03/19/2016

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Mar | Mon Mar | Tue Mar | Wed Mar | Thu Mar | Fri Mar | Sat Mar | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|------|------|---|---|---|---|---|---|---|---|---|---|---|------|---|------|------|------|------|
| 2.8 | 010 | | | | | | | | 0:30 | 0:30 | | | 01:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY Replacements |
| 2.9 | 230 | | | | | | | | 0:15 | | | | 00:15 | | NIMBU | RA19103100019300 | 16XR0680A5 | Nimbus Ladder and Flume Fishway |
| 2.10 | 230 | | | | | | | | 0:15 | | 0:30 | | 00:45 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.11 | 010 | | | | | | | | | 1:15 | | | 01:15 | | NIMBU | RA191031000019300 | 16XR0680A5 | Nimbus Ladder and Flume Fishway |
| Totals: | | | | | | 0:00 | 9:00 | 8:00 | 8:30 | 8:00 | 8:30 | 0:00 | 42:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 17:00 | 16:00 | 16:30 | 16:30 | 16:45 | 0:00 | 82:45 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 03/18/2016 | | BOGGESS, JAY S. | 03/21/2016 |

## Official Timesheet for HAMANN, DANIEL W
PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201608　　Pay Period Beginning Date: 03/20/2016　　Pay Period Ending Date: 04/02/2016

Cost Center: RR85843000　　Department: IN　　Bureau: 07　　Subureau: 08　　Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Mar | Mon Mar | Tue Mar | Wed Mar | Thu Mar | Fri Mar | Sat Mar | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 2:00 | 1:00 | | | 4:00 | | 07:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.2 | 010 | | | | | | 6:00 | 2:00 | | 5:30 | 4:00 | | 17:30 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.3 | 230 | | | | | | 0:30 | | | 0:30 | | | 01:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.4 | 010 | | | | | | | 1:00 | | | | | 01:00 | | MDMC3 | RX1183A2340019309 | 15XR0680A5 | Minidoka Dam Modifications - Construction Closeout #3 |
| 1.5 | 010 | | | | | | | 1:00 | | | | | 01:00 | | A800F | RR4888FASC1500201 | XXXR4524KK | Boca Dam Security Final Design |
| 1.6 | 010 | | | | | | | 3:00 | | | | | 03:00 | | WCSAH | RX4888TINE1300000 | XXXR4524KK | TSC SAFETY AND HEALTH ACTVS |
| 1.7 | 230 | | | | | | | 1:30 | | | | | 01:30 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.8 | 061 | | | | | | | | 8:00 | 2:00 | | | 10:00 | | | | | |
| 1.9 | 230 | | | | | | | | | | 1:30 | | 01:30 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 1.10 | 020 | | | | | | | | | 0:30 | | | 00:30 | | | | | |
| | Totals: | | | | | 0:00 | 8:30 | 9:30 | 8:00 | 8:30 | 9:30 | 0:00 | 44:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Mar | Mon Mar | Tue Mar | Wed Mar | Thu Mar | Fri Apr 01 | Sat Apr 02 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 4:30 | 2:30 | 0:45 | 1:15 | 0:45 | | 09:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.2 | 010 | | | | | | 1:00 | 4:00 | 3:00 | 4:00 | 3:00 | | 15:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.3 | 010 | | | | | | | | | 0:45 | 1:45 | | 02:30 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.4 | 010 | | | | | | 1:00 | 1:30 | 3:00 | | | | 05:30 | | MDMC3 | RX1183A2340019309 | 15XR0680A5 | Minidoka Dam Modifications - Construction Closeout #3 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201608     Pay Period Beginning Date: 03/20/2016     Pay Period Ending Date: 04/02/2016

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Mar | Mon Mar | Tue Mar | Wed Mar | Thu Mar | Fri Apr 01 | Sat Apr 02 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.5 | 010 | | | | | | | | 1:15 | 2:00 | 1:15 | | 04:30 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.6 | 010 | | | | | | 1:30 | | | | | | 01:30 | | WCSAH | RX4888TINE1300000 | XXXR4524KK | TSC SAFETY AND HEALTH ACTVS |
| 2.7 | 010 | | | | | | | | | | 1:00 | | 01:00 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 2.8 | 010 | | | | | | | | | | 0:15 | | 00:15 | | GCPGR | RP5222165400193DV | XXXR0680U5 | Grand Coulee Third Powerplant - GSU Transformer Replacements |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:30 | 17:30 | 16:00 | 16:30 | 17:30 | 0:00 | 84:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| | | | BOGGESS, JAY S. | 04/04/2016 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201609  Pay Period Beginning Date: 04/03/2016  Pay Period Ending Date: 04/16/2016

Cost Center: RR85843000  Department: IN  Bureau: 07  Subureau: 08  Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Apr 03 | Mon Apr 04 | Tue Apr 05 | Wed Apr 06 | Thu Apr 07 | Fri Apr 08 | Sat Apr 09 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 0:45 | 2:00 | | 0:45 | | | 03:30 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 1.2 | 010 | | | | | | 0:15 | 1:45 | 0:45 | 0:30 | | | 03:15 | | NMWWR | RX191049933220000 | 16XR0880A5 | New Melones Waste Water Lift Station Repairs Construction Support |
| 1.3 | 010 | | | | | | 1:30 | 2:30 | 2:30 | 1:45 | 0:30 | | 08:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.4 | 010 | | | | | | 3:30 | 0:15 | 3:15 | 3:45 | 2:00 | | 12:45 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.5 | 230 | | | | | | | 0:30 | | | | | 00:30 | | NMWWR | RX191049933220000 | 16XR0880A5 | New Melones Waste Water Lift Station Repairs Construction Support |
| 1.6 | 010 | | | | | | 0:30 | 1:15 | | | | | 01:45 | | GCPGR | RP5222165400193DV | XXXR0880U5 | Grand Coulee Third Powerplant - GSU Transformer Replacements |
| 1.7 | 010 | | | | | | 0:30 | 0:15 | 1:30 | 1:15 | 5:30 | | 09:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.8 | 010 | | | | | | 1:00 | | | | | | 01:00 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 1.9 | 230 | | | | | | | | 0:45 | | | | 00:45 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.10 | 230 | | | | | | | | | 1:00 | | | 01:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| | Totals: | | | | | 0:00 | 8:00 | 8:30 | 8:45 | 9:00 | 8:00 | 0:00 | 42:15 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Apr 10 | Mon Apr 11 | Tue Apr 12 | Wed Apr 13 | Thu Apr 14 | Fri Apr 15 | Sat Apr 16 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 2:30 | 2:30 | 1:30 | 1:45 | 2:00 | | 10:15 | | GCPGR | RP5222165400193DV | XXXR0880U5 | Grand Coulee Third Powerplant - GSU Transformer Replacements |

**Official Timesheet for HAMANN, DANIEL W**

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201609    Pay Period Beginning Date: 04/03/2016    Pay Period Ending Date: 04/16/2016

Cost Center: RR85843000    Department: IN    Bureau: 07    Subureau: 08    Location Code: DO1

## Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Apr 10 | Mon Apr 11 | Tue Apr 12 | Wed Apr 13 | Thu Apr 14 | Fri Apr 15 | Sat Apr 16 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.2 | 010 | | | | | | 0:30 | 1:00 | 2:00 | 0:15 | | | 03:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.3 | 010 | | | | | | 0:15 | 2:00 | 1:45 | | 2:00 | | 06:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.4 | 010 | | | | | | 0:45 | | | | 1:00 | | 01:45 | | A919F | RR4888FAMP140040 003 | XXXR4524KS | Truckee Canal - Correction Action Study |
| 2.5 | 010 | | | | | | 4:00 | 2:30 | 1:00 | 3:15 | | | 10:45 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.6 | 230 | | | | | | | 1:30 | | | | | 01:30 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.7 | 010 | | | | | | | | 1:00 | 0:45 | 2:00 | | 03:45 | | NMWWR | RX191049933220000 | 16XR0680A5 | New Melones Waste Water Lift Station Repairs Construction Support |
| 2.8 | 010 | | | | | | | | 0:45 | | 1:00 | | 01:45 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.9 | 010 | | | | | | | | | 2:00 | | | 02:00 | | A931F | RR4888FALC1503501 | XXXR4524KS | YDP Aluminum Bronze Pipe Replacement |
| | Totals: | | | | | 0:00 | 8:00 | 9:30 | 8:00 | 8:00 | 8:00 | 0:00 | 41:30 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| **Pay Period Totals:** | 0:00 | 16:00 | 18:00 | 16:45 | 17:00 | 16:00 | 0:00 | 83:45 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201609        Pay Period Beginning Date: 04/03/2016        Pay Period Ending Date: 04/16/2016

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| | | | BOGGESS, JAY S. | 04/15/2016 |

**Official Timesheet for HAMANN, DANIEL W**

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201610     Pay Period Beginning Date: 04/17/2016     Pay Period Ending Date: 04/30/2016

Cost Center: RR85843000     Department: IN     Bureau: 07     Suburau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Apr 17 | Mon Apr 18 | Tue Apr 19 | Wed Apr 20 | Thu Apr 21 | Fri Apr 22 | Sat Apr 23 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 2:30 | 6:30 | 2:45 | 1:45 | 2:45 | | 16:15 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 1.2 | 010 | | | | | | 3:15 | 1:00 | | 0:30 | 0:30 | | 05:15 | | GCPGR | RP5222165400193DV | XXXR0680U5 | Grand Coulee Third Powerplant - GSU Transformer Replacements |
| 1.3 | 010 | | | | | | 0:15 | | 1:15 | 1:30 | | | 03:00 | | NMWWR | RX191049933220000 | 16XR0680A5 | New Melones Waste Water Lift Station Repairs Construction Support |
| 1.4 | 010 | | | | | | 1:00 | 0:30 | 3:30 | 1:45 | 0:45 | | 07:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.5 | 010 | | | | | | 1:00 | | | 2:30 | 2:15 | | 05:45 | | A931F | RR4888FALC1503501 | XXXR4524KS | YDP Aluminum Bronze Pipe Replacement |
| 1.6 | 230 | | | | | | 1:00 | | | | | | 01:00 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 1.7 | 230 | | | | | | | | 0:30 | 1:30 | | | 02:00 | | GCPGR | RP5222165400193DV | XXXR0680U5 | Grand Coulee Third Powerplant - GSU Transformer Replacements |
| 1.8 | 010 | | | | | | | | 0:30 | | | | 00:30 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.9 | 230 | | | | | | | | 0:15 | | | | 00:15 | | NMWWR | RX191049933220000 | 16XR0680A5 | New Melones Waste Water Lift Station Repairs Construction Support |
| 1.10 | 230 | | | | | | | | | 0:15 | | | 00:15 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.11 | 230 | | | | | | | | | | 1:45 | | 01:45 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 1.12 | 010 | | | | | | | | | | 1:45 | | 01:45 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| Totals: | | | | | | 0:00 | 9:00 | 8:00 | 8:45 | 9:45 | 9:45 | 0:00 | 45:15 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Apr 24 | Mon Apr 25 | Tue Apr 26 | Wed Apr 27 | Thu Apr 28 | Fri Apr 29 | Sat Apr 30 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201610      Pay Period Beginning Date: 04/17/2016      Pay Period Ending Date: 04/30/2016

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Apr 24 | Mon Apr 25 | Tue Apr 26 | Wed Apr 27 | Thu Apr 28 | Fri Apr 29 | Sat Apr 30 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 1:00 | | | | | | 01:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.2 | 010 | | | | | | 0:45 | 4:30 | 5:00 | 6:00 | | | 16:15 | | A800F | RR4888FASC1500201 | XXXR4524KG | Boca Dam Security Final Design |
| 2.3 | 010 | | | | | | 1:00 | | | | | | 01:00 | | NMWWR | RX191049933220000 | 16XR0680A5 | New Melones Waste Water Lift Station Repairs Construction Support |
| 2.4 | 010 | | | | | | 0:45 | 0:30 | 1:00 | | | | 02:15 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.5 | 010 | | | | | | 4:30 | 3:00 | 0:30 | 2:00 | | | 10:00 | | A931F | RR4888FALC1503501 | XXXR4524KS | YDP Aluminum Bronze Pipe Replacement |
| 2.6 | 010 | | | | | | | | 1:30 | | | | 01:30 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.7 | 230 | | | | | | 0:45 | 2:00 | 0:45 | 2:00 | | | 05:30 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.8 | 020 | | | | | | | | | | 8:00 | | 08:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:45 | 10:00 | 8:45 | 10:00 | 8:00 | 0:00 | 45:30 | | | | | |

| | | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|---|
| | Pay Period Totals: | 0:00 | 17:45 | 18:00 | 17:30 | 19:45 | 17:45 | 0:00 | 90:45 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201610     Pay Period Beginning Date: 04/17/2016     Pay Period Ending Date: 04/30/2016

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 04/27/2016 | | BOGGESS, JAY S. | 05/02/2016 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201611     Pay Period Beginning Date: 05/01/2016     Pay Period Ending Date: 05/14/2016

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun May | Mon May | Tue May | Wed May | Thu May | Fri May | Sat May | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 020 | | | | | | 8:00 | 8:00 | | | | | 16:00 | | | | | |
| 1.2 | 231 | | | | | | | | 8:00 | 8:00 | 8:00 | | 24:00 | | | | | |
| Totals: | | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun May | Mon May | Tue May | Wed May | Thu May | Fri May | Sat May | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 6:30 | 1:15 | 3:30 | 3:30 | 2:00 | | 16:45 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.2 | 010 | | | | | | 0:45 | 2:30 | 3:30 | 3:30 | 5:00 | | 15:15 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.3 | 010 | | | | | | 0:45 | 2:30 | 1:00 | 1:00 | 1:00 | | 06:15 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.4 | 010 | | | | | | | 1:45 | | | | | 01:45 | | NMWWR | RX191049933220000 | 16XR0680A5 | New Melones Waste Water Lift Station Repairs Construction Support |
| 2.5 | 230 | | | | | | | 0:30 | | | | | 00:30 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 2.6 | 230 | | | | | | | 0:30 | | 2:00 | 2:00 | | 04:30 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.7 | 230 | | | | | | | | 2:00 | | | | 02:00 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| Totals: | | | | | | 0:00 | 8:00 | 9:00 | 10:00 | 10:00 | 10:00 | 0:00 | 47:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 17:00 | 18:00 | 18:00 | 18:00 | 0:00 | 87:00 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201611          Pay Period Beginning Date: 05/01/2016          Pay Period Ending Date: 05/14/2016
Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

| Timekeeper Messages to Payroll |
| --- |
| |

| Pay Period Comments |
| --- |
| |

| Overtime Justification |
| --- |
| |

| Certified By | Date Certified | | Approved By | Date Approved |
| --- | --- | --- | --- | --- |
| HAMANN, DANIEL W | 05/13/2016 | | BOGGESS, JAY S. | 05/13/2016 |

### Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201612      Pay Period Beginning Date: 05/15/2016      Pay Period Ending Date: 05/28/2016

Cost Center: RR85843000      Department: IN      Bureau: 07      Suburbeau: 08      Location Code: DO1

**Week 1**

| Row | Pay Code | S C | E H | S R | OC/OCM | Sun May | Mon May | Tue May | Wed May | Thu May | Fri May | Sat May | Totals | TW | Key/WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|--------|---------|---------|---------|---------|---------|---------|---------|--------|----|----------|-----------------|------|-------------|
| 1.1 | 010 | | | | | | 1:30 | 1:45 | 0:30 | 2:00 | 1:00 | | 06:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.2 | 010 | | | | | | 0:15 | | | | | | 00:15 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.3 | 010 | | | | | | 6:15 | 6:15 | 3:15 | 1:30 | 1:00 | | 18:15 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.4 | 230 | | | | | | 1:30 | 0:45 | | 1:00 | | | 03:15 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.5 | 010 | | | | | | | | 0:15 | 2:00 | 1:00 | | 03:15 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 1.6 | 010 | | | | | | | | 3:30 | 2:15 | 4:00 | | 09:45 | | NMWWR | RX191049933220000 | 16XR0680A5 | New Melones Waste Water Lift Station Repairs Construction Support |
| 1.7 | 230 | | | | | | | | 1:00 | | 2:00 | | 03:00 | | NMWWR | RX191049933220000 | 16XR0680A5 | New Melones Waste Water Lift Station Repairs Construction Support |
| 1.8 | 010 | | | | | | | | 0:30 | 0:15 | 1:00 | | 01:45 | | A918F | RR4888FAMP140040002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| | Totals: | | | | | 0:00 | 9:30 | 8:45 | 9:00 | 9:00 | 10:00 | 0:00 | 46:15 | | | | | |

**Week 2**

| Row | Pay Code | S C | E H | S R | OC/OCM | Sun May | Mon May | Tue May | Wed May | Thu May | Fri May | Sat May | Totals | TW | Key/WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|--------|---------|---------|---------|---------|---------|---------|---------|--------|----|----------|-----------------|------|-------------|
| 2.1 | 010 | | | | | | 2:00 | 2:15 | 2:00 | 4:30 | 2:00 | | 12:45 | | NMWWR | RX191049933220000 | 16XR0680A5 | New Melones Waste Water Lift Station Repairs Construction Support |
| 2.2 | 010 | | | | | | 1:00 | 1:00 | 0:30 | 0:30 | 1:00 | | 04:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.3 | 010 | | | | | | 1:30 | | | | | | 01:30 | | A931F | RR4888FALC1503501 | XXXR4524KS | YDP Aluminum Bronze Pipe Replacement |
| 2.4 | 010 | | | | | | 3:30 | 3:45 | 2:00 | 1:45 | 2:00 | | 13:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201612    Pay Period Beginning Date: 05/15/2016    Pay Period Ending Date: 05/28/2016

Cost Center: RR85843000    Department: IN    Bureau: 07    Subureau: 08    Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun May | Mon May | Tue May | Wed May | Thu May | Fri May | Sat May | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.5 | 230 | | | | | | 0:45 | | | | | | 00:45 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.6 | 230 | | | | | | 0:30 | | | | | | 00:30 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 2.7 | 010 | | | | | | | 0:30 | 3:30 | 1:15 | 2:00 | | 07:15 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.8 | 230 | | | | | | | 1:45 | 0:30 | | 1:30 | | 03:45 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.9 | 010 | | | | | | | 0:30 | | | 1:00 | | 01:30 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 2.10 | 230 | | | | | | | | 0:30 | | | | 00:30 | | NMWWR | RX191049933220000 | 16XR0680A5 | New Melones Waste Water Lift Station Repairs Construction Support |
| Totals: | | | | | | 0:00 | 9:15 | 9:45 | 9:00 | 8:00 | 9:30 | 0:00 | 45:30 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 18:45 | 18:30 | 18:00 | 17:00 | 19:30 | 0:00 | 91:45 |

| Timekeeper Messages to Payroll |
|---|
| |
| |

| Pay Period Comments |
|---|
| |
| |

| Overtime Justification |
|---|
| |
| |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 05/27/2016 | | BOGGESS, JAY S. | 05/31/2016 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201613　　　　　Pay Period Beginning Date: 05/29/2016　　　　　Pay Period Ending Date: 06/11/2016

Cost Center: RR85843000　　　　　Department: IN　　　　　Bureau: 07　　　　　Suburea: 08　　　　　Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/OCM | Sun May | Mon May | Tue May | Wed Jun 01 | Thu Jun 02 | Fri Jun 03 | Sat Jun 04 | Totals | TW | Key/WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 050 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 1.2 | 010 | | | | | | | 1:00 | 1:00 | 2:00 | 0:30 | | 04:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.3 | 010 | | | | | | | 2:00 | | | | | 02:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.4 | 010 | | | | | | | 2:00 | 7:00 | 6:00 | 7:30 | | 22:30 | | FA010 | RR4888FAMP150280 1 | XXXR4524KS | New Melones SCADA Design2 |
| 1.5 | 010 | | | | | | | 3:00 | | | | | 03:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.6 | 110 | | | | | | | 1:45 | 1:00 | 2:00 | 2:00 | 4:00 | 10:45 | | FA010 | RR4888FAMP150280 1 | XXXR4524KS | New Melones SCADA Design2 |
| | Totals: | | | | | 0:00 | 8:00 | 9:45 | 9:00 | 10:00 | 10:00 | 4:00 | 50:45 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/OCM | Sun Jun 05 | Mon Jun 06 | Tue Jun 07 | Wed Jun 08 | Thu Jun 09 | Fri Jun 10 | Sat Jun 11 | Totals | TW | Key/WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 5:45 | 1:00 | | 0:30 | | | 07:15 | | FA010 | RR4888FAMP150280 1 | XXXR4524KS | New Melones SCADA Design2 |
| 2.2 | 010 | | | | | | 1:15 | 2:00 | 1:00 | | 1:00 | | 05:15 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.3 | 010 | | | | | | | 1:00 | 2:00 | 3:00 | 3:00 | | 09:00 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 2.4 | 110 | | | | | | | 2:00 | | | | | 02:00 | | FA010 | RR4888FAMP150280 1 | XXXR4524KS | New Melones SCADA Design2 |
| 2.5 | 010 | | | | | | | | 2:00 | 4:00 | 2:45 | 4:00 | 12:45 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.6 | 010 | | | | | | | 1:00 | | 3:45 | | | 04:45 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.7 | 110 | | | | | | | | 1:00 | 1:00 | | | 02:00 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 2.8 | 110 | | | | | | | | 1:00 | 1:00 | 2:00 | 2:00 | 06:00 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.9 | 010 | | | | | | | | | 1:00 | | | 01:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201613     Pay Period Beginning Date: 05/29/2016     Pay Period Ending Date: 06/11/2016

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

**Week 2**

| Row | Pay Code | S C H | E H | S R | OC/ OCM | Sun Jun 05 | Mon Jun 06 | Tue Jun 07 | Wed Jun 08 | Thu Jun 09 | Fri Jun 10 | Sat Jun 11 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Totals: | | | | | 0:00 | 10:00 | 8:00 | 10:00 | 10:00 | 10:00 | 2:00 | 50:00 | | | | | |

| | | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | | 0:00 | 18:00 | 17:45 | 19:00 | 20:00 | 20:00 | 6:00 | 100:45 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| Project deadline. |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 06/11/2016 | | BOGGESS, JAY S. | 06/13/2016 |

### Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201614     Pay Period Beginning Date: 06/12/2016     Pay Period Ending Date: 06/25/2016
Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

#### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jun 12 | Mon Jun 13 | Tue Jun 14 | Wed Jun 15 | Thu Jun 16 | Fri Jun 17 | Sat Jun 18 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 4:00 | 2:00 | 1:00 | 1:30 | 1:00 | | 09:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.2 | 010 | | | | | | 4:00 | 6:00 | 7:00 | 6:30 | 4:30 | | 28:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.3 | 110 | | | | | | 0:15 | 1:30 | 1:00 | 1:30 | 1:00 | | 05:15 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.4 | 010 | | | | | | | | | | 2:30 | | 02:30 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| | Totals: | | | | | 0:00 | 8:15 | 9:30 | 9:00 | 9:30 | 9:00 | 0:00 | 45:15 | | | | | |

#### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jun 19 | Mon Jun 20 | Tue Jun 21 | Wed Jun 22 | Thu Jun 23 | Fri Jun 24 | Sat Jun 25 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 1:00 | | | | | | 01:00 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.2 | 010 | | | | | | 0:30 | 0:30 | 0:30 | | 2:00 | | 03:30 | | NMWWR | RX191049933220000 | 16XR0680A5 | New Melones Waste Water Lift Station Repairs Construction Support |
| 2.3 | 010 | | | | | | 6:30 | 6:30 | 0:30 | 4:00 | 2:00 | | 19:30 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.4 | 110 | | | | | | 1:00 | 2:00 | | 2:00 | | | 05:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.5 | 010 | | | | | | | 1:00 | 6:00 | 4:00 | 2:00 | | 13:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.6 | 010 | | | | | | | | 1:00 | | 2:00 | | 03:00 | | A919F | RR4888FAMP140040 003 | XXXR4524KS | Truckee Canal - Correction Action Study |
| 2.7 | 110 | | | | | | | | 1:15 | | | | 01:15 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.8 | 110 | | | | | | | | | | 0:30 | | 00:30 | | NMWWR | RX191049933220000 | 16XR0680A5 | New Melones Waste Water Lift Station Repairs Construction Support |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201614      Pay Period Beginning Date: 06/12/2016      Pay Period Ending Date: 06/25/2016

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jun 19 | Mon Jun 20 | Tue Jun 21 | Wed Jun 22 | Thu Jun 23 | Fri Jun 24 | Sat Jun 25 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Totals: | | | | | | 0:00 | 9:00 | 10:00 | 9:15 | 10:00 | 8:30 | 0:00 | 46:45 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 17:15 | 19:30 | 18:15 | 19:30 | 17:30 | 0:00 | 92:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| Deadline |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 06/24/2016 | | BOGGESS, JAY S. | 06/27/2016 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201615      Pay Period Beginning Date: 06/26/2016      Pay Period Ending Date: 07/09/2016

Cost Center: RR85843000      Department: IN      Bureau: 07      Subbureau: 08      Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jun 26 | Mon Jun 27 | Tue Jun 28 | Wed Jun 29 | Thu Jun 30 | Fri Jul 01 | Sat Jul 02 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 6:30 | | | | 2:00 | | 08:30 | | NMWWR | RX191049933220000 | 16XR0680A5 | New Melones Waste Water Lift Station Repairs Construction Support |
| 1.2 | 010 | | | | | | 0:30 | 2:00 | 2:00 | 7:30 | 1:00 | | 13:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.3 | 010 | | | | | | 1:00 | 6:00 | 2:00 | | | | 09:00 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 1.4 | 110 | | | | | | 1:30 | | | 1:00 | | | 02:30 | | NMWWR | RX191049933220000 | 16XR0680A5 | New Melones Waste Water Lift Station Repairs Construction Support |
| 1.5 | 110 | | | | | | | 0:15 | 1:45 | | | | 02:00 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 1.6 | 010 | | | | | | | | 1:30 | | | | 01:30 | | WCHRS | RX4888TINE1320000 | XXXR4524KK | TSC HUMAN RESOURCES SERVICES |
| 1.7 | 010 | | | | | | | | 0:30 | 0:30 | | | 01:00 | | A919F | RR4888FAMP140040 003 | XXXR4524KS | Truckee Canal - Correction Action Study |
| 1.8 | 010 | | | | | | | | 2:00 | | | | 02:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.9 | 060 | | | | | | | | | | 3:00 | | 03:00 | | | | | |
| 1.10 | 010 | | | | | | | | | | 2:00 | | 02:00 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| | Totals: | | | | | 0:00 | 9:30 | 8:15 | 9:45 | 9:00 | 8:00 | 0:00 | 44:30 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jul 03 | Mon Jul 04 | Tue Jul 05 | Wed Jul 06 | Thu Jul 07 | Fri Jul 08 | Sat Jul 09 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 050 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 2.2 | 231 | | | | | | | 8:00 | | | | | 08:00 | | | | | |
| 2.3 | 010 | | | | | | | | 4:00 | 8:00 | 7:00 | | 19:00 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.4 | 010 | | | | | | | | 4:00 | | 1:00 | | 05:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |

### Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201615        Pay Period Beginning Date: 06/26/2016        Pay Period Ending Date: 07/09/2016

Cost Center: RR85843000        Department: IN        Bureau: 07        Subureau: 08        Location Code: DO1

**Week 2**

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jul 03 | Mon Jul 04 | Tue Jul 05 | Wed Jul 06 | Thu Jul 07 | Fri Jul 08 | Sat Jul 09 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.5 | 110 | | | | | | | | 0:30 | 1:30 | | | 02:00 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:30 | 9:30 | 8:00 | 0:00 | 42:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 17:30 | 16:15 | 18:15 | 18:30 | 16:00 | 0:00 | 86:30 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| 6/27/16-1:30-check/verify eDRAWS versions-as-builts-NMWWR.<br>6/28/16-0:15-developed plans & specs-DesignC/60%-A918F.<br>6/29/16-1:45-developed plans & specs-DesignC/60%-A918F.<br>6/30/16-1:00-edited/fixed title block -as-builts-NMWWR.<br>7/6/16-0:30-develop quantities-SpecD/90%-A800F<br>7/7/16-1:30-develop quantities-SpecD/90%-A800F |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 07/08/2016 | | HUMMEL, TERRY L | 07/08/2016 |

## Official Timesheet for HAMANN, DANIEL W
PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201616     Pay Period Beginning Date: 07/10/2016     Pay Period Ending Date: 07/23/2016

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jul 10 | Mon Jul 11 | Tue Jul 12 | Wed Jul 13 | Thu Jul 14 | Fri Jul 15 | Sat Jul 16 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 7:00 | 7:00 | 5:00 | 3:00 | | | 22:00 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 1.2 | 110 | | | | | | 1:15 | 1:15 | | 1:30 | | | 04:00 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 1.3 | 010 | | | | | | 1:00 | 1:00 | 2:00 | 0:30 | 3:00 | | 07:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.4 | 010 | | | | | | | | 1:00 | | | | 01:00 | | MDMC3 | RX1183A2340019309 | 15XR0680A5 | Minidoka Dam Modifications - Construction Closeout #3 |
| 1.5 | 010 | | | | | | | | | 4:30 | 1:00 | | 05:30 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.6 | 110 | | | | | | | | | 0:30 | | | 00:30 | | A919F | RR4888FAMP140040 003 | XXXR4524KS | Truckee Canal - Correction Action Study |
| 1.7 | 010 | | | | | | | | | 4:00 | | | 04:00 | | A919F | RR4888FAMP140040 003 | XXXR4524KS | Truckee Canal - Correction Action Study |
| | Totals: | | | | | 0:00 | 9:15 | 9:15 | 8:00 | 9:30 | 8:30 | 0:00 | 44:30 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jul 17 | Mon Jul 18 | Tue Jul 19 | Wed Jul 20 | Thu Jul 21 | Fri Jul 22 | Sat Jul 23 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 1:30 | 3:00 | 1:00 | 3:00 | 2:00 | | 10:30 | | WCLUC | RX4888TINE1200000 | | K88 - LAB UNIQUE COSTS |
| 2.2 | 010 | | | | | | 1:30 | 5:00 | 1:30 | 0:15 | 4:00 | | 12:15 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.3 | 010 | | | | | | 1:00 | | | | | | 01:00 | | MDMC3 | RX1183A2340019309 | 15XR0680A5 | Minidoka Dam Modifications - Construction Closeout #3 |
| 2.4 | 010 | | | | | | 2:00 | | 1:45 | | | | 03:45 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.5 | 010 | | | | | | 2:00 | | 1:15 | 0:30 | | | 03:45 | | A919F | RR4888FAMP140040 003 | | Truckee Canal - Correction Action Study |
| 2.6 | 110 | | | | | | 0:45 | | | | | | 00:45 | | A919F | RR4888FAMP140040 003 | | Truckee Canal - Correction Action Study |
| 2.7 | 110 | | | | | | | 1:45 | | | | | 01:45 | | A800F | RR4888FASC1500201 | | Boca Dam Security Final Design |
| 2.8 | 030 | | | | | | | | 2:30 | | | | 02:30 | | | | | |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201616　　Pay Period Beginning Date: 07/10/2016　　Pay Period Ending Date: 07/23/2016

Cost Center: RR85843000　　Department: IN　　Bureau: 07　　Suburbau: 08　　Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jul 17 | Mon Jul 18 | Tue Jul 19 | Wed Jul 20 | Thu Jul 21 | Fri Jul 22 | Sat Jul 23 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.9 | 010 | | | | | | | | | 4:15 | 2:00 | | 06:15 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| | Totals: | | | | | 0:00 | 8:45 | 9:45 | 8:00 | 8:00 | 8:00 | 0:00 | 42:30 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 18:00 | 19:00 | 16:00 | 17:30 | 16:30 | 0:00 | 87:00 |

### Timekeeper Messages to Payroll

### Pay Period Comments

### Overtime Justification

7/11-1:15. Develop 90% quantities. A800F.
7/12-1:15. Develop 90% quantities. A800F.
7/14-1:30. Develop 90% quantities. A800F.
7/15-0:30. Develop feasibility quantities. A919F
7/18-0:45. Develop feasibility quantities. A919F
7/19-1:45. Develop 90% quantities.  A800F

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 07/22/2016 | | BOGGESS, JAY S. | 07/22/2016 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201617     Pay Period Beginning Date: 07/24/2016     Pay Period Ending Date: 08/06/2016

Cost Center: RR85843000     Department: IN     Bureau: 07     Suburbau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jul 24 | Mon Jul 25 | Tue Jul 26 | Wed Jul 27 | Thu Jul 28 | Fri Jul 29 | Sat Jul 30 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 1:30 | 6:00 | 7:00 | 7:00 | 7:00 | | 28:30 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 1.2 | 010 | | | | | | 2:45 | | 1:00 | 1:00 | 1:00 | | 05:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.3 | 010 | | | | | | 3:45 | 1:00 | | | | | 04:45 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.4 | 010 | | | | | | | 0:30 | | | | | 00:30 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 1.5 | 010 | | | | | | | 0:30 | | | | | 00:30 | | A931F | RR4888FALC1503501 | XXXR4524KS | YDP Aluminum Bronze Pipe Replacement |
| | | Totals: | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jul 31 | Mon Aug | Tue Aug | Wed Aug | Thu Aug | Fri Aug | Sat Aug | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 6:15 | 4:00 | 4:15 | 5:30 | 5:00 | | 25:00 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.2 | 010 | | | | | | 1:15 | 1:00 | 0:30 | 1:00 | 1:00 | | 04:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.3 | 010 | | | | | | 0:30 | | | 1:30 | 1:00 | | 03:00 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 2.4 | 110 | | | | | | 1:00 | 1:00 | | | | | 02:00 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.5 | 010 | | | | | | | 0:45 | 3:15 | | | | 04:00 | | MDMC3 | RX1183A2340019309 | 15XR0680A5 | Minidoka Dam Modifications - Construction Closeout #3 |
| 2.6 | 010 | | | | | | | 1:15 | | | | | 01:15 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.7 | 010 | | | | | | | 1:00 | | | 1:00 | | 02:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| | | Totals: | | | | 0:00 | 9:00 | 9:00 | 8:00 | 8:00 | 8:00 | 0:00 | 42:00 | | | | | |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201617

Pay Period Beginning Date: 07/24/2016

Pay Period Ending Date: 08/06/2016

Cost Center: RR85843000

Department: IN

Bureau: 07

Subureau: 08

Location Code: DO1

|  | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 17:00 | 17:00 | 16:00 | 16:00 | 16:00 | 0:00 | 82:00 |

| Timekeeper Messages to Payroll |
|---|
|  |

| Pay Period Comments |
|---|
|  |

| Overtime Justification |
|---|
| 8/1/16 1:00-90% SpecD plans & specs. A800F.<br>8/2/16 1:00-90% SpecD plans & specs. A800F. |

| Certified By | Date Certified | Approved By | Date Approved |
|---|---|---|---|
| HAMANN, DANIEL W | 08/08/2016 | BOGGESS, JAY S. | 08/05/2016 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201618     Pay Period Beginning Date: 08/07/2016     Pay Period Ending Date: 08/20/2016

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Aug | Mon Aug | Tue Aug | Wed Aug | Thu Aug | Fri Aug | Sat Aug | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 6:00 | | 4:00 | 5:45 | 6:00 | | 21:45 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 1.2 | 010 | | | | | | 1:00 | | | | | | 01:00 | | WCCAD | RX4888TINE100CADS | XXXR4524KK | TSC CAD Steering Committee |
| 1.3 | 010 | | | | | | 1:00 | 7:00 | 1:00 | 1:30 | 1:00 | | 11:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KS | K88 - LAB UNIQUE COSTS |
| 1.4 | 110 | | | | | | 1:00 | | | | 1:15 | | 02:15 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 1.5 | 010 | | | | | | | 1:00 | 3:00 | 0:45 | 1:00 | | 05:45 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| | Totals: | | | | | 0:00 | 9:00 | 8:00 | 8:00 | 8:00 | 9:15 | 0:00 | 42:15 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Aug | Mon Aug | Tue Aug | Wed Aug | Thu Aug | Fri Aug | Sat Aug | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 3:00 | 3:00 | 6:15 | 2:00 | | | 14:15 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.2 | 110 | | | | | | 1:30 | 1:15 | 1:15 | | | | 04:00 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.3 | 010 | | | | | | 1:45 | 0:15 | 1:15 | 1:00 | | | 04:15 | | WCLUC | RX4888TINE1200000 | | K88 - LAB UNIQUE COSTS |
| 2.4 | 010 | | | | | | 1:00 | 4:30 | | 2:00 | 4:00 | | 11:30 | | A918F | RR4888FAMP140040002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 2.5 | 010 | | | | | | 2:15 | 0:15 | 0:30 | 3:00 | 4:00 | | 10:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.6 | 110 | | | | | | | | | 1:15 | 2:15 | | 03:30 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.7 | 110 | | | | | | | | | | | 2:00 | 02:00 | | A918F | RR4888FAMP140040002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| | Totals: | | | | | 0:00 | 9:30 | 9:15 | 9:15 | 9:15 | 10:15 | 2:00 | 49:30 | | | | | |

### Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201618     Pay Period Beginning Date: 08/07/2016     Pay Period Ending Date: 08/20/2016

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

|  | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| **Pay Period Totals:** | 0:00 | 18:30 | 17:15 | 17:15 | 17:15 | 19:30 | 2:00 | 91:45 |

| **Timekeeper Messages to Payroll** |
|---|
|  |

| **Pay Period Comments** |
|---|
|  |

| **Overtime Justification** |
|---|
| 8/08 1:00 90% SpecD plans & spec A800F<br>8/12 1:15 90% SpecD plans & spec A800F<br>8/15 1:30 90% SpecD plans & spec A800F<br>8/16 1:15 45% SpecD plans & spec A800F<br>8/17 1:15 90% SpecD plans & spec A800F<br>8/18 1:15 45% Basis of Design Narrative A830F<br>8/19 2:15 45% Basis of Design Narrative A830F<br>8/20 2:00 Prepare for site visit A918F |

| **Certified By** | **Date Certified** |  | **Approved By** | **Date Approved** |
|---|---|---|---|---|
| HAMANN, DANIEL W | 08/19/2016 |  | BOGGESS, JAY S. | 08/22/2016 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201619    Pay Period Beginning Date: 08/21/2016    Pay Period Ending Date: 09/03/2016

Cost Center: RR85843000    Department: IN    Bureau: 07    Subureau: 08    Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Aug | Mon Aug | Tue Aug | Wed Aug | Thu Aug | Fri Aug | Sat Aug | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|---------|---------|---------|---------|---------|---------|---------|--------|----|-----------|-----------------|------|-------------|
| 1.1 | 010 | | | | | | 8:00 | 8:00 | 8:00 | 3:00 | 6:00 | | 33:00 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 1.2 | 010 | | | | | | | | | 1:00 | 2:00 | | 03:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.3 | 110 | | | | | | 4:45 | 3:15 | 1:00 | | | 1:30 | 10:30 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 1.4 | 030 | | | | | | | | | 3:00 | | | 03:00 | | | | | |
| 1.5 | 010 | | | | | | | | | 1:00 | | | 01:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KS | K88 - LAB UNIQUE COSTS |
| 1.6 | 110 | | | | | | | | | | | 1:15 | 01:15 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| | Totals: | | | | | 0:00 | 12:45 | 11:15 | 9:00 | 8:00 | 8:00 | 2:45 | 51:45 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Aug | Mon Aug | Tue Aug | Wed Aug | Thu Sep 01 | Fri Sep 02 | Sat Sep 03 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|---------|---------|---------|---------|------------|------------|------------|--------|----|-----------|-----------------|------|-------------|
| 2.1 | 030 | | | | | | 1:15 | | | | | | 01:15 | | | | | |
| 2.2 | 010 | | | | | | 1:00 | 1:00 | 2:30 | 3:00 | 1:00 | | 08:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KS | K88 - LAB UNIQUE COSTS |
| 2.3 | 010 | | | | | | 5:45 | 5:15 | 3:45 | 4:45 | 5:00 | | 24:30 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 2.4 | 110 | | | | | | 1:00 | 0:30 | 0:30 | 1:00 | 2:00 | | 05:00 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 2.5 | 010 | | | | | | | 1:15 | 1:15 | 0:15 | 2:00 | | 04:45 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.6 | 010 | | | | | | | 0:30 | | | | | 00:30 | | A919F | RR4888FAMP140040 003 | XXXR4524KS | Truckee Canal - Correction Action Study |
| 2.7 | 010 | | | | | | | | 0:30 | | | | 00:30 | | NMWWR | RX191049933220000 | 16XR0680A5 | New Melones Waste Water Lift Station Repairs Construction Support |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201619 | Pay Period Beginning Date: 08/21/2016 | Pay Period Ending Date: 09/03/2016

Cost Center: RR85843000 | Department: IN | Bureau: 07 | Subureau: 08 | Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Aug | Mon Aug | Tue Aug | Wed Aug | Thu Sep 01 | Fri Sep 02 | Sat Sep 03 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|---------|---------|---------|---------|------------|------------|------------|--------|----|-----------|-----------------|------|-------------|
| | Totals: | | | | | 0:00 | 9:00 | 8:30 | 8:30 | 9:00 | 10:00 | 0:00 | 45:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|-----|-----|-----|-----|-----|-----|-----|-----|-------|
| Pay Period Totals: | 0:00 | 21:45 | 19:45 | 17:30 | 17:00 | 18:00 | 2:45 | 96:45 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| Week 1:<br>8/22 4:45 travel time, site-survey A918F<br>8/23 3:15 site-survey A918F<br>8/24 1:00 site-survey, travel A918F<br>8/27 1:30 scan receipts, Concur update A918F<br>8-27 Spec D 90% review: Boca Dam<br><br>Week2:<br>8/29 1:00 TA Spec deadline A918F<br>8/30 0:30 TA Spec deadline A918F<br>8/31 0:30 TA Spec deadline A918F<br>9/01 1:00 TA Spec deadline A918F<br>9/02 2:00 TA Spec deadline A918F |

| Certified By | Date Certified | | Approved By | Date Approved |
|--------------|----------------|--|-------------|---------------|
| HAMANN, DANIEL W | 09/02/2016 | | HUMMEL, TERRY L | 09/06/2016 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201620     Pay Period Beginning Date: 09/04/2016     Pay Period Ending Date: 09/17/2016

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Sep 04 | Mon Sep 05 | Tue Sep 06 | Wed Sep 07 | Thu Sep 08 | Fri Sep 09 | Sat Sep 10 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 050 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 1.2 | 010 | | | | | | | 2:00 | 0:30 | 1:00 | | | 03:30 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 1.3 | 010 | | | | | | | 2:15 | 0:30 | 4:00 | 2:15 | | 09:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KS | K88 - LAB UNIQUE COSTS |
| 1.4 | 010 | | | | | | | 2:15 | 6:30 | 1:30 | 5:45 | | 16:00 | | A919F | RR4888FAMP140040 003 | XXXR4524KS | Truckee Canal - Correction Action Study |
| 1.5 | 110 | | | | | | | 1:30 | 1:15 | 1:45 | 1:15 | | 05:45 | | A919F | RR4888FAMP140040 003 | XXXR4524KS | Truckee Canal - Correction Action Study |
| 1.6 | 010 | | | | | | | 1:00 | 0:15 | | | | 01:15 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.7 | 160 | | | | | | | 0:30 | | 1:00 | | | 01:30 | | | | | |
| 1.8 | 010 | | | | | | | | 0:15 | 0:30 | | | 00:45 | | MDMC3 | RX1183A2340019309 | 15XR0680A5 | Minidoka Dam Modifications - Construction Closeout #3 |
| | Totals: | | | | | 0:00 | 8:00 | 9:30 | 9:15 | 9:45 | 9:15 | 0:00 | 45:45 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Sep 11 | Mon Sep 12 | Tue Sep 13 | Wed Sep 14 | Thu Sep 15 | Fri Sep 16 | Sat Sep 17 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 0:15 | | 1:00 | 1:00 | 1:00 | | 03:15 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.2 | 010 | | | | | | 6:00 | 2:00 | 1:00 | 1:00 | 1:00 | | 11:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KS | K88 - LAB UNIQUE COSTS |
| 2.3 | 010 | | | | | | 1:30 | 4:30 | 6:00 | 2:00 | 5:00 | | 19:00 | | A919F | RR4888FAMP140040 003 | XXXR4524KS | Truckee Canal - Correction Action Study |
| 2.4 | 160 | | | | | | 0:15 | 0:30 | | 4:00 | | | 04:45 | | | | | |
| 2.5 | 110 | | | | | | 1:15 | 1:30 | 1:00 | 1:00 | 1:00 | | 05:45 | | A919F | RR4888FAMP140040 003 | XXXR4524KS | Truckee Canal - Correction Action Study |
| 2.6 | 010 | | | | | | | 1:00 | | | 1:00 | | 02:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| | Totals: | | | | | 0:00 | 9:15 | 9:30 | 9:00 | 9:00 | 9:00 | 0:00 | 45:45 | | | | | |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only.  Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201620      Pay Period Beginning Date: 09/04/2016      Pay Period Ending Date: 09/17/2016

Cost Center: RR85843000      Department: IN      Bureau: 07      Suburea: 08      Location Code: DO1

|  | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| **Pay Period Totals:** | 0:00 | 17:15 | 19:00 | 18:15 | 18:45 | 18:15 | 0:00 | 91:30 |

| Timekeeper Messages to Payroll |
|---|
|  |

| Pay Period Comments |
|---|
|  |

| Overtime Justification |
|---|
| Week 1 |
| 9/06 1:30 TA Spec Deadline-specifications A919F |
| 9/07 1:15 TA Spec Deadline-specifications A919F |
| 9/08 1:45 TA Spec Deadline-specifications A919F |
| 9/09 1:15 TA Spec Deadline-specifications A919F |
| Week 2 |
| 9/12 1:15 TA Spec Deadline-design & coord. A919F |
| 9/13 1:30 TA Spec Deadline-design & coord. A919F |
| 9/14 1:00 TA Spec Deadline-design & coord. A919F |
| 9/15 1:00 TA Spec Deadline-design & coord. A919F |
| 9/16 1:00 TA Spec Deadline-design & coord. A919F |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 09/14/2016 | | HUMMEL, TERRY L | 09/14/2016 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201621      Pay Period Beginning Date: 09/18/2016      Pay Period Ending Date: 10/01/2016

Cost Center: RR85843000      Department: IN      Bureau: 07      Suburbau: 08      Location Code: DO1

**Week 1**

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Sep 18 | Mon Sep 19 | Tue Sep 20 | Wed Sep 21 | Thu Sep 22 | Fri Sep 23 | Sat Sep 24 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 3:00 | 3:00 | 3:00 | 3:00 | 3:00 | | 15:00 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 1.2 | 110 | | | | | | | | | 1:00 | 1:00 | | 02:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.3 | 010 | | | | | | 3:00 | 3:00 | 3:00 | 3:00 | 3:00 | | 15:00 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 1.4 | 110 | | | | | | | 1:00 | 1:00 | | | | 02:00 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 1.5 | 010 | | | | | | 2:00 | 2:00 | 2:00 | 2:00 | 2:00 | | 10:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.6 | 110 | | | | | | 1:00 | | | | | | 01:00 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| | Totals: | | | | | 0:00 | 9:00 | 9:00 | 9:00 | 9:00 | 9:00 | 0:00 | 45:00 | | | | | |

**Week 2**

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Sep 25 | Mon Sep 26 | Tue Sep 27 | Wed Sep 28 | Thu Sep 29 | Fri Sep 30 | Sat Oct 01 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 110 | | | | | | | | | 1:00 | 1:00 | | 02:00 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 2.2 | 110 | | | | | | | 1:00 | 1:00 | | | | 02:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.3 | 010 | | | | | | 3:00 | 3:00 | 3:00 | 3:00 | 3:00 | | 15:00 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.4 | 010 | | | | | | 3:00 | 3:00 | 3:00 | 3:00 | 3:00 | | 15:00 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 2.5 | 010 | | | | | | 2:00 | 2:00 | 2:00 | 2:00 | 2:00 | | 10:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.6 | 110 | | | | | | 1:00 | | | | | | 01:00 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201621     Pay Period Beginning Date: 09/18/2016     Pay Period Ending Date: 10/01/2016
Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 2

| Row | Pay Code | S C H | E H | S R | OC/ OCM | Sun Sep 25 | Mon Sep 26 | Tue Sep 27 | Wed Sep 28 | Thu Sep 29 | Fri Sep 30 | Sat Oct 01 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Totals: | | | | | 0:00 | 9:00 | 9:00 | 9:00 | 9:00 | 9:00 | 0:00 | 45:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 18:00 | 18:00 | 18:00 | 18:00 | 18:00 | 0:00 | 90:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| All OT was approved by supervisor before the work/time was done. |

| Overtime Justification |
|---|
| Week 1<br>9/19 1:00 SpecB Deadline A800F<br>9/20 1:00 TA Spec Deadline A918F<br>9/21 1:00 TA Spec Deadline A918F<br>9/22 1:00 60% Deadline A830F<br>9/23 1:00 60% Deadline A830F<br><br>Week 2<br>9/26 1:00 Deadline A800F<br>9/27 1:00 TA Spec Deadline A918F<br>9/28 1:00 TA Spec Deadline A918F<br>9/29 1:00 60% Deadline A830F<br>9/30 1:00 60% Deadline A830F |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 10/12/2016 | | BOGGESS, JAY S. | 10/03/2016 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201622     Pay Period Beginning Date: 10/02/2016     Pay Period Ending Date: 10/15/2016

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Oct 02 | Mon Oct 03 | Tue Oct 04 | Wed Oct 05 | Thu Oct 06 | Fri Oct 07 | Sat Oct 08 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 2:00 | 1:30 | 1:00 | 1:00 | 1:00 | | 06:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.2 | 010 | | | | | | 6:00 | 2:00 | 7:00 | 6:00 | 5:00 | | 26:00 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 1.3 | 010 | | | | | | | | 1:45 | | | | 01:45 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.4 | 010 | | | | | | | 2:45 | | | 2:00 | | 04:45 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.5 | 230 | | | | | | | | 1:00 | | | | 01:00 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 1.6 | 010 | | | | | | | | | 1:00 | | | 01:00 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 9:00 | 8:00 | 8:00 | 0:00 | 41:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Oct 09 | Mon Oct 10 | Tue Oct 11 | Wed Oct 12 | Thu Oct 13 | Fri Oct 14 | Sat Oct 15 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 050 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 2.2 | 010 | | | | | | | 2:00 | 1:00 | 1:00 | 1:00 | | 05:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.3 | 160 | | | | | | | 2:00 | | | | | 02:00 | | | | | |
| 2.4 | 010 | | | | | | | 2:30 | | | 1:00 | | 03:30 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.5 | 010 | | | | | | | | | 4:30 | | | 04:30 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.6 | 230 | | | | | | | | 2:00 | | 1:45 | | 03:45 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.7 | 010 | | | | | | | | 6:00 | | 4:00 | | 10:00 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.8 | 010 | | | | | | | 1:30 | 1:00 | | 2:00 | | 04:30 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 2.9 | 010 | | | | | | | | | 2:30 | | | 02:30 | | FA154 | RR4888FALC1600801 | XXXR4524KS | YDP AI Br-Pipe Replacement Final Design FY16-17 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201622     Pay Period Beginning Date: 10/02/2016     Pay Period Ending Date: 10/15/2016

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Oct 09 | Mon Oct 10 | Tue Oct 11 | Wed Oct 12 | Thu Oct 13 | Fri Oct 14 | Sat Oct 15 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 10:00 | 8:00 | 9:45 | 0:00 | 43:45 | | | | | |

| | | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Pay Period Totals: | 0:00 | 16:00 | 16:00 | 19:00 | 16:00 | 17:45 | 0:00 | 84:45 | |

### Timekeeper Messages to Payroll

### Pay Period Comments

All OT was approved by supervisor before the work/time was done.

### Overtime Justification

Week 1
10/05 - 1:00 - Design documents for SpecB Deadline - A800F

Week 2
10/12 - 2:00 - Design documents for SpecB Deadline - A800F
10/14 - 1:45 - Design documents for SpecB Deadline - A800F

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 10/14/2016 | | BOGGESS, JAY S. | 10/17/2016 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201623                           Pay Period Beginning Date: 10/16/2016                Pay Period Ending Date: 10/29/2016

Cost Center: RR85843000           Department: IN            Bureau: 07            Subureau: 08            Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Oct 16 | Mon Oct 17 | Tue Oct 18 | Wed Oct 19 | Thu Oct 20 | Fri Oct 21 | Sat Oct 22 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 2:45 | 3:00 | 0:30 | | | | 06:15 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 1.2 | 010 | | | | | | 1:30 | | | | | | 01:30 | | FA2B2 | RR4888FALC1602101 | XXXR4524KS | San Pasqual Tribe Renewable Energy FY17 |
| 1.3 | 010 | | | | | | 1:30 | | 5:00 | 0:45 | 3:45 | | 11:00 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 1.4 | 010 | | | | | | .1:30 | 3:00 | 0:45 | 7:15 | 2:45 | | 15:15 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K8B - LAB UNIQUE COSTS |
| 1.5 | 160 | | | | | | 0:45 | | | | | | 00:45 | | | | | |
| 1.6 | 110 | | | | | | 0:30 | 0:15 | | | | 1:30 | 02:15 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 1.7 | 010 | | | | | | | 2:00 | 1:45 | | 1:30 | | 05:15 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.8 | 110 | | | | | | | | | | 1:15 | | 01:15 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| | Totals: | | | | | 0:00 | 8:30 | 8:15 | 8:00 | 8:00 | 9:15 | 1:30 | 43:30 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Oct 23 | Mon Oct 24 | Tue Oct 25 | Wed Oct 26 | Thu Oct 27 | Fri Oct 28 | Sat Oct 29 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 2:45 | 3:30 | 3:00 | 1:00 | 1:00 | | 11:15 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K8B - LAB UNIQUE COSTS |
| 2.2 | 010 | | | | | | 2:30 | 0:30 | | 2:00 | 4:00 | | 09:00 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 2.3 | 010 | | | | | | 2:45 | 4:00 | 2:30 | 4:00 | 3:00 | | 16:15 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.4 | 110 | | | | | | | 0:45 | | | | | 00:45 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.5 | 160 | | | | | | | | 2:00 | | | | 02:00 | | | | | |
| 2.6 | 010 | | | | | | | | 0:30 | 1:00 | | | 01:30 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |

## Official Timesheet for HAMANN, DANIEL W
PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201623     Pay Period Beginning Date: 10/16/2016     Pay Period Ending Date: 10/29/2016

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Oct 23 | Mon Oct 24 | Tue Oct 25 | Wed Oct 26 | Thu Oct 27 | Fri Oct 28 | Sat Oct 29 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Totals: | | | | | 0:00 | 8:00 | 8:45 | 8:00 | 8:00 | 8:00 | 0:00 | 40:45 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:30 | 17:00 | 16:00 | 16:00 | 17:15 | 1:30 | 84:15 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| Notes: 10/05 1:30 charged to WCCAP should be charged to New Melones NMWWR for completing as-builts. WOID is not open. Team lead will be contacted . |

| Overtime Justification |
|---|
| Week 1 10/17 - 0:30 - Design documents for SpecB Deadline - A800F 10/18 - 0:15 - Design documents for SpecB Deadline - A800F 10/21 - 1:15 - Design documents for SpecD Deadline - A830F 10/22 - 1:30 - Design documents for SpecB Deadline - A800F<br><br>Week 2 10/25 - 0:45 - Design documents for SpecD Deadline - A830F |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 10/27/2016 | | BOGGESS, JAY S. | 10/28/2016 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201624     Pay Period Beginning Date: 10/30/2016     Pay Period Ending Date: 11/12/2016

Cost Center: RR85843000     Department: IN     Bureau: 07     Suburau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Oct 30 | Mon Oct 31 | Tue Nov | Wed Nov | Thu Nov | Fri Nov | Sat Nov | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 0:15 | 0:45 | 5:45 | 2:45 | 2:00 | | 11:30 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 1.2 | 010 | | | | | | 2:00 | 1:00 | 1:00 | | | | 04:00 | | FA154 | RR4888FALC1600801 | XXXR4524KS | YDP Al Br-Pipe Replacement Final Design FY16-17 |
| 1.3 | 010 | | | | | | 1:45 | 2:15 | | 2:30 | 3:00 | | 09:30 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.4 | 010 | | | | | | 4:00 | 4:00 | 1:15 | 2:45 | 3:00 | | 15:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.5 | 230 | | | | | | | 0:45 | | | 1:30 | | 02:15 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.6 | 230 | | | | | | | | | | | | 00:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.7 | 230 | | | | | | | | 1:30 | 1:15 | | | 02:45 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| | Totals: | | | | | 0:00 | 8:00 | 8:45 | 9:30 | 9:15 | 9:30 | 0:00 | 45:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Nov | Mon Nov | Tue Nov | Wed Nov | Thu Nov | Fri Nov | Sat Nov | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 5:00 | 3:00 | 7:00 | 6:00 | | | 21:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.2 | 010 | | | | | | 1:30 | 4:00 | 0:30 | 1:00 | | | 07:00 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 2.3 | 010 | | | | | | 1:30 | 1:00 | 0:30 | 1:00 | | | 04:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.4 | 050 | | | | | | | | | | 8:00 | | 08:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201624  Pay Period Beginning Date: 10/30/2016  Pay Period Ending Date: 11/12/2016
Cost Center: RR85843000  Department: IN  Bureau: 07  Subureau: 08  Location Code: DO1

|  | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |  |
|---|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:45 | 17:30 | 17:15 | 17:30 | 0:00 | 85:00 |  |

| Timekeeper Messages to Payroll |
|---|
|  |

| Pay Period Comments |
|---|
|  |

| Overtime Justification |
|---|
| Week 1 |
| 11/1 0:45 90% Deadline A830F |
| 11/2 1:30 90% Deadline A918F |
| 11/3 1:15 90% Deadline A918F |
| 11/4 1:30 90% Deadline A918F |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 11/09/2016 | | BOGGESS, JAY S. | 11/10/2016 |

### Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201625

Pay Period Beginning Date: 11/13/2016

Pay Period Ending Date: 11/26/2016

Cost Center: RR85843000　　　　Department: IN　　　　Bureau: 07　　　　Subureau: 08　　　　Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Nov | Mon Nov | Tue Nov | Wed Nov | Thu Nov | Fri Nov | Sat Nov | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 4:00 | 6:00 | 7:00 | 7:00 | 3:00 | | 27:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.2 | 010 | | | | | | 2:00 | | | | 4:00 | | 06:00 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 1.3 | 010 | | | | | | | 2:00 | 1:00 | 1:00 | 1:00 | 1:00 | 06:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.4 | 010 | | | | | | | 1:00 | | | | | 01:00 | | CEFP4 | RRR0331010151IPC8 | XXXR0680R1 | Cle Elum Fish Passage - Intake Project - Package 4 |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Nov | Mon Nov | Tue Nov | Wed Nov | Thu Nov | Fri Nov | Sat Nov | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 7:00 | 5:00 | 4:00 | | 7:00 | | 23:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.2 | 010 | | | | | | | 1:00 | 1:00 | 1:00 | | 1:00 | 04:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.3 | 160 | | | | | | | 2:00 | | | | | 02:00 | | | | | |
| 2.4 | 060 | | | | | | | | 3:00 | | | | 03:00 | | | | | |
| 2.5 | 050 | | | | | | | | | 8:00 | | | 08:00 | | | | | |
| 2.6 | 110 | | | | | | | 1:15 | | | | | 01:15 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| | Totals: | | | | | 0:00 | 8:00 | 9:15 | 8:00 | 8:00 | 8:00 | 0:00 | 41:15 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 17:15 | 16:00 | 16:00 | 16:00 | 0:00 | 81:15 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201625
Pay Period Beginning Date: 11/13/2016
Pay Period Ending Date: 11/26/2016

Cost Center: RR85843000
Department: IN
Bureau: 07
Subureau: 08
Location Code: DO1

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| Overtime approved by supervisor in advance. |

| Overtime Justification |
|---|
| 11/22 - 1:15 - 90% deadline - A830F |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 11/22/2016 | | BOGGESS, JAY S. | 11/23/2016 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201626      Pay Period Beginning Date: 11/27/2016      Pay Period Ending Date: 12/10/2016

Cost Center: RR85843000      Department: IN      Bureau: 07      Suburbeau: 08      Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Nov | Mon Nov | Tue Nov | Wed Nov | Thu Dec 01 | Fri Dec 02 | Sat Dec 03 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 7:00 | 7:00 | 7:00 | 7:00 | 7:00 | | 35:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.2 | 010 | | | | | | 1:00 | 1:00 | 1:00 | 1:00 | 1:00 | | 05:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.3 | 110 | | | | | | | | 0:45 | | | | 00:45 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:45 | 8:00 | 8:00 | 0:00 | 40:45 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Dec 04 | Mon Dec 05 | Tue Dec 06 | Wed Dec 07 | Thu Dec 08 | Fri Dec 09 | Sat Dec 10 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 8:00 | 8:00 | 7:00 | 7:00 | 7:00 | | 37:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.2 | 110 | | | | | | 1:30 | | | | | | 01:30 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.3 | 010 | | | | | | | | 1:00 | 1:00 | 1:00 | | 03:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| | Totals: | | | | | 0:00 | 9:30 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 41:30 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 17:30 | 16:00 | 16:45 | 16:00 | 16:00 | 0:00 | 82:15 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201626       Pay Period Beginning Date: 11/27/2016       Pay Period Ending Date: 12/10/2016

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

| Overtime Justification |
| --- |
| Week 1 |
| 11/30 0:45 Deadline for TA Spec - A830F |
| Week 2 |
| 12/05 1:30 Deadline for TA Spec - A830F |

| Certified By | Date Certified | | Approved By | Date Approved |
| --- | --- | --- | --- | --- |
| HAMANN, DANIEL W | 12/09/2016 | | BOGGESS, JAY S. | 12/12/2016 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201701      Pay Period Beginning Date: 12/11/2016      Pay Period Ending Date: 12/24/2016

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Dec 11 | Mon Dec 12 | Tue Dec 13 | Wed Dec 14 | Thu Dec 15 | Fri Dec 16 | Sat Dec 17 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 5:00 | 5:00 | 5:00 | 5:00 | 5:00 | | 25:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.2 | 010 | | | | | | 3:00 | 3:00 | 3:00 | 3:00 | 3:00 | | 15:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Dec 18 | Mon Dec 19 | Tue Dec 20 | Wed Dec 21 | Thu Dec 22 | Fri Dec 23 | Sat Dec 24 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 2:00 | 1:00 | 6:00 | 5:00 | 5:00 | | 19:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.2 | 010 | | | | | | 6:00 | 2:00 | 1:00 | 1:00 | | | 10:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.3 | 010 | | | | | | | 5:00 | 1:00 | | | | 06:00 | | A918F | RR4888FAMP140040 002 | XXXR4524KS | Truckee Canal - Design Support for Short-term Risk Reduction Activities |
| 2.4 | 030 | | | | | | | | | 2:00 | | | 02:00 | | | | | |
| 2.5 | 060 | | | | | | | | | | 3:00 | | 03:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201701

Pay Period Beginning Date: 12/11/2016

Pay Period Ending Date: 12/24/2016

Cost Center: RR85843000

Department: IN

Bureau: 07

Subureau: 08

Location Code: DO1

| Overtime Justification |
|---|
|  |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 12/22/2016 | | MYERS, NATHAN EUGENE | 12/23/2016 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201702     Pay Period Beginning Date: 12/25/2016     Pay Period Ending Date: 01/07/2017

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Dec 25 | Mon Dec 26 | Tue Dec 27 | Wed Dec 28 | Thu Dec 29 | Fri Dec 30 | Sat Dec 31 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | | 4:00 | 4:00 | 5:45 | 5:15 | | 19:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.2 | 050 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 1.3 | 010 | | | | | | | 4:00 | 4:00 | 0:45 | 0:45 | | 09:30 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.4 | 030 | | | | | | | | | 1:30 | | | 01:30 | | | | | |
| 1.5 | 060 | | | | | | | | | | 2:00 | | 02:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jan 01 | Mon Jan 02 | Tue Jan 03 | Wed Jan 04 | Thu Jan 05 | Fri Jan 06 | Sat Jan 07 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | | 7:00 | 7:00 | 5:00 | 6:00 | | 25:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.2 | 050 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 2.3 | 010 | | | | | | | 1:00 | 1:00 | 1:00 | 2:00 | | 05:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.4 | 061 | | | | | | | | | 2:00 | | | 02:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201702     Pay Period Beginning Date: 12/25/2016     Pay Period Ending Date: 01/07/2017

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

| Pay Period Comments |
| --- |
| |
| |

| Overtime Justification |
| --- |
| |
| |

| Certified By | Date Certified | | Approved By | Date Approved |
| --- | --- | --- | --- | --- |
| HAMANN, DANIEL W | 01/06/2017 | | MYERS, NATHAN EUGENE | 01/09/2017 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201703        Pay Period Beginning Date: 01/08/2017        Pay Period Ending Date: 01/21/2017

Cost Center: RR85843000      Department: IN      Bureau: 07      Suburbau: 08      Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jan 08 | Mon Jan 09 | Tue Jan 10 | Wed Jan 11 | Thu Jan 12 | Fri Jan 13 | Sat Jan 14 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 2:00 | 3:00 | 4:00 | 1:00 | | | 10:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.2 | 010 | | | | | | 2:00 | 1:00 | 4:00 | | | | 07:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.3 | 010 | | | | | | 4:00 | 4:00 | | 6:30 | | | 14:30 | | FA343 | RR4888FAMP160250 003 | XXXR4524KS | Truckee Final Design Task 3 |
| 1.4 | 010 | | | | | | | | | 0:30 | | | 00:30 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 1.5 | 020 | | | | | | | | | | 8:00 | | 08:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jan 15 | Mon Jan 16 | Tue Jan 17 | Wed Jan 18 | Thu Jan 19 | Fri Jan 20 | Sat Jan 21 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 050 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 2.2 | 010 | | | | | | | 2:30 | 2:30 | 1:45 | 1:00 | | 07:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.3 | 010 | | | | | | | 2:30 | | | | | 02:30 | | GCCAM | RP522194200193DC | XXXR0680U5 | GC Compressed Air Upgrade Construction Support |
| 2.4 | 010 | | | | | | | | 3:00 | 5:30 | 4:45 | 7:00 | 20:15 | | FA343 | RR4888FAMP160250 003 | XXXR4524KS | Truckee Final Design Task 3 |
| 2.5 | 010 | | | | | | | | | 1:30 | | | 01:30 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201703          Pay Period Beginning Date: 01/08/2017          Pay Period Ending Date: 01/21/2017
Cost Center: RR85843000      Department: IN          Bureau: 07          Subureau: 08          Location Code: DO1

| Pay Period Comments |
|---|
| |
| |

| Overtime Justification |
|---|
| |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 01/20/2017 | | MYERS, NATHAN EUGENE | 01/23/2017 |

## Official Timesheet for HAMANN, DANIEL W
PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201704　　　　　Pay Period Beginning Date: 01/22/2017　　　　　Pay Period Ending Date: 02/04/2017
Cost Center: RR85843000　　　Department: IN　　　　Bureau: 07　　　　Subureau: 08　　　　Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jan 22 | Mon Jan 23 | Tue Jan 24 | Wed Jan 25 | Thu Jan 26 | Fri Jan 27 | Sat Jan 28 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 5:00 | 5:00 | 7:00 | 8:00 | 6:00 | | 31:00 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 1.2 | 010 | | | | | | 1:00 | 1:00 | 1:00 | | 2:00 | | 05:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.3 | 030 | | | | | | 2:00 | | | | | | 02:00 | | | | | |
| 1.4 | 010 | | | | | | | 2:00 | | | | | 02:00 | | FA343 | RR4888FAMP160250 003 | XXXR4524KS | Truckee Final Design Task 3 |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jan 29 | Mon Jan 30 | Tue Jan 31 | Wed Feb 01 | Thu Feb 02 | Fri Feb 03 | Sat Feb 04 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 020 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 2.2 | 010 | | | | | | | 4:00 | | | | | 04:00 | | A800F | RR4888FASC1500201 | XXXR4524KS | Boca Dam Security Final Design |
| 2.3 | 010 | | | | | | | 4:00 | 8:00 | 6:00 | 8:00 | | 26:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.4 | 061 | | | | | | | | | 2:00 | | | 02:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201704          Pay Period Beginning Date: 01/22/2017          Pay Period Ending Date: 02/04/2017

Cost Center: RR85843000          Department: IN          Bureau: 07          Subureau: 08          Location Code: DO1

| Overtime Justification |
|---|
|  |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 02/03/2017 | | MYERS, NATHAN EUGENE | 02/06/2017 |

### Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201705　　　　　Pay Period Beginning Date: 02/05/2017　　　　　Pay Period Ending Date: 02/18/2017

Cost Center: RR85843000　　　Department: IN　　　Bureau: 07　　　Subureau: 08　　　Location Code: DO1

#### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Feb 05 | Mon Feb 06 | Tue Feb 07 | Wed Feb 08 | Thu Feb 09 | Fri Feb 10 | Sat Feb 11 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 8:00 | 7:00 | 8:00 | 6:00 | 7:00 | | **36:00** | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.2 | 030 | | | | | | | 1:00 | | | | | **01:00** | | | | | |
| 1.3 | 010 | | | | | | | | | 2:00 | 1:00 | | **03:00** | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

#### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Feb 12 | Mon Feb 13 | Tue Feb 14 | Wed Feb 15 | Thu Feb 16 | Fri Feb 17 | Sat Feb 18 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 6:00 | 4:30 | 8:00 | 6:00 | 6:00 | | **30:30** | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.2 | 030 | | | | | | 1:00 | | | | | | **01:00** | | | | | |
| 2.3 | 010 | | | | | | 1:00 | 2:00 | | 2:00 | 2:00 | | **07:00** | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.4 | 160 | | | | | | | 1:30 | | | | | **01:30** | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| **Timekeeper Messages to Payroll** |
|---|
| |
| |

| **Pay Period Comments** |
|---|
| |
| |

### Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201705      Pay Period Beginning Date: 02/05/2017      Pay Period Ending Date: 02/18/2017
Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

| Overtime Justification |
| --- |
|  |

| Certified By | Date Certified | | Approved By | Date Approved |
| --- | --- | --- | --- | --- |
| HAMANN, DANIEL W | 02/17/2017 | | BOGGESS, JAY S. | 02/17/2017 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201706      Pay Period Beginning Date: 02/19/2017      Pay Period Ending Date: 03/04/2017

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Feb 19 | Mon Feb 20 | Tue Feb 21 | Wed Feb 22 | Thu Feb 23 | Fri Feb 24 | Sat Feb 25 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 050 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 1.2 | 010 | | | | | | | 7:00 | 7:00 | 7:00 | | | 21:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 1.3 | 010 | | | | | | | 1:00 | 1:00 | 1:00 | | | 03:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.4 | 020 | | | | | | | | | | 8:00 | | 08:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Feb 26 | Mon Feb 27 | Tue Feb 28 | Wed Mar | Thu Mar | Fri Mar | Sat Mar | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 030 | | | | | | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | | 40:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201706      Pay Period Beginning Date: 02/19/2017      Pay Period Ending Date: 03/04/2017

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 03/02/2017 | | BOGGESS, JAY S. | 03/06/2017 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201707　　　　Pay Period Beginning Date: 03/05/2017　　　　Pay Period Ending Date: 03/18/2017

Cost Center: RR85843000　　　Department: IN　　　Bureau: 07　　　Suburau: 08　　　Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/OCM | Sun Mar | Mon Mar | Tue Mar | Wed Mar | Thu Mar | Fri Mar | Sat Mar | Totals | TW | Key/WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|--------|---------|---------|---------|---------|---------|---------|---------|--------|----|----------|-----------------|------|-------------|
| 1.1 | 010 | | | | | | 2:00 | 2:00 | 1:00 | 1:00 | | | 06:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.2 | 010 | | | | | | 6:00 | 5:00 | 4:30 | 5:00 | 6:00 | | 26:30 | | FA343 | RR4888FAMP160250 003 | XXXR4524KS | Truckee Final Design Task 3 |
| 1.3 | 020 | | | | | | | | 1:30 | | 1:00 | | 02:30 | | | | | |
| 1.4 | 030 | | | | | | | 1:00 | 1:00 | 2:00 | 1:00 | | 05:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/OCM | Sun Mar | Mon Mar | Tue Mar | Wed Mar | Thu Mar | Fri Mar | Sat Mar | Totals | TW | Key/WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|--------|---------|---------|---------|---------|---------|---------|---------|--------|----|----------|-----------------|------|-------------|
| 2.1 | 010 | | | | | | 4:00 | | | | | | 04:00 | | FA343 | RR4888FAMP160250 003 | XXXR4524KS | Truckee Final Design Task 3 |
| 2.2 | 030 | | | | | | 4:00 | 8:00 | 8:00 | 8:00 | 8:00 | | 36:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|-----|-----|-----|-----|-----|-----|-----|-------|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201707                    Pay Period Beginning Date: 03/05/2017                    Pay Period Ending Date: 03/18/2017

Cost Center: RR85843000          Department: IN          Bureau: 07          Subureau: 08          Location Code: DO1

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 03/15/2017 | | BOGGESS, JAY S. | 03/20/2017 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201708    Pay Period Beginning Date: 03/19/2017    Pay Period Ending Date: 04/01/2017

Cost Center: RR85843000    Department: IN    Bureau: 07    Subureau: 08    Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Mar | Mon Mar | Tue Mar | Wed Mar | Thu Mar | Fri Mar | Sat Mar | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 030 | | | | | | 8:00 | 3:00 | | | | | 11:00 | | | | | |
| 1.2 | 010 | | | | | | | 1:00 | 1:00 | 1:00 | 2:00 | | 05:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.3 | 010 | | | | | | | 4:00 | 7:00 | 7:00 | 4:00 | | 22:00 | | FA343 | RR4888FAMP160250 003 | XXXR4524KS | Truckee Final Design Task 3 |
| 1.4 | 061 | | | | | | | | | | 1:00 | | 01:00 | | | | | |
| 1.5 | 030 | | | | | | | | | | 1:00 | | 01:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Mar | Mon Mar | Tue Mar | Wed Mar | Thu Mar | Fri Mar | Sat Apr 01 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | | 1:00 | 1:00 | 1:00 | 1:00 | | 04:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.2 | 010 | | | | | | | 7:00 | 7:00 | 4:00 | 3:00 | | 21:00 | | FA343 | RR4888FAMP160250 003 | XXXR4524KS | Truckee Final Design Task 3 |
| 2.3 | 010 | | | | | | | | | 4:00 | 4:00 | | 08:00 | | A830F | RR4888FALC1500901 | XXXR4524KS | Yuma Desalting Plant Chlorine Containment Facility |
| 2.4 | 030 | | | | | | | | 2:00 | | | | 02:00 | | | | | |
| 2.5 | 020 | | | | | | | | 1:00 | | 4:00 | | 05:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201708      Pay Period Beginning Date: 03/19/2017      Pay Period Ending Date: 04/01/2017

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

| Pay Period Comments |
| --- |
|  |

| Overtime Justification |
| --- |
|  |

| Certified By | Date Certified |
| --- | --- |
| HAMANN, DANIEL W | 03/31/2017 |

| Approved By | Date Approved |
| --- | --- |
| BOGGESS, JAY S. | 04/03/2017 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201709     Pay Period Beginning Date: 04/02/2017     Pay Period Ending Date: 04/15/2017

Cost Center: RR85843000     Department: IN     Bureau: 07     Suburau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Apr 02 | Mon Apr 03 | Tue Apr 04 | Wed Apr 05 | Thu Apr 06 | Fri Apr 07 | Sat Apr 08 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 6:00 | 6:00 | 6:00 | 6:00 | 6:00 | | 30:00 | | FA343 | RR4888FAMP160250 003 | XXXR4524KS | Truckee Final Design Task 3 |
| 1.2 | 010 | | | | | | 2:00 | 2:00 | 2:00 | 2:00 | 2:00 | | 10:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Apr 09 | Mon Apr 10 | Tue Apr 11 | Wed Apr 12 | Thu Apr 13 | Fri Apr 14 | Sat Apr 15 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | | 3:00 | | | | | 03:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.2 | 010 | | | | | | 7:00 | 4:00 | 7:00 | 7:00 | 6:00 | | 31:00 | | FA343 | RR4888FAMP160250 003 | XXXR4524KK | Truckee Final Design Task 3 |
| 2.3 | 010 | | | | | | 1:00 | 1:00 | 1:00 | 1:00 | 1:00 | | 05:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.4 | 060 | | | | | | | | | | 1:00 | | 01:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201709       Pay Period Beginning Date: 04/02/2017       Pay Period Ending Date: 04/15/2017

Cost Center: RR85843000       Department: IN       Bureau: 07       Subureau: 08       Location Code: DO1

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 04/14/2017 | | BOGGESS, JAY S. | 04/14/2017 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201710      Pay Period Beginning Date: 04/16/2017      Pay Period Ending Date: 04/29/2017

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Apr 16 | Mon Apr 17 | Tue Apr 18 | Wed Apr 19 | Thu Apr 20 | Fri Apr 21 | Sat Apr 22 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 1:00 | 1:00 | 1:00 | 1:00 | 1:00 | | 05:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.2 | 010 | | | | | | 7:00 | 7:00 | 7:00 | 7:00 | 7:00 | | 35:00 | | FA343 | RR4888FAMP160250 003 | XXXR4524KS | Truckee Final Design Task 3 |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Apr 23 | Mon Apr 24 | Tue Apr 25 | Wed Apr 26 | Thu Apr 27 | Fri Apr 28 | Sat Apr 29 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 110 | | | | | 2:00 | | | | | | | 02:00 | | WCCAP | RX4888TINE0900200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.2 | 010 | | | | | | 7:00 | 7:00 | 7:00 | 7:00 | 7:00 | | 35:00 | | FA343 | RR4888FAMP160250 003 | XXXR4524KS | Truckee Final Design Task 3 |
| 2.3 | 010 | | | | | | 1:00 | 1:00 | 1:00 | 1:00 | 1:00 | | 05:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.4 | 110 | | | | | | 1:00 | 1:00 | 1:00 | 1:00 | 1:00 | 2:00 | 07:00 | | FA343 | RR4888FAMP160250 003 | XXXR4524KS | Truckee Final Design Task 3 |
| | Totals: | | | | | 2:00 | 9:00 | 9:00 | 9:00 | 9:00 | 9:00 | 2:00 | 49:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 2:00 | 17:00 | 17:00 | 17:00 | 17:00 | 17:00 | 2:00 | 89:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201710      Pay Period Beginning Date: 04/16/2017      Pay Period Ending Date: 04/29/2017

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

| Overtime Justification |
| --- |
| 4/23: 2 Hrs Overtime to complete safety testing, which was set aside to complete Truckee deadline.<br>4/24 - 4/29: Overtime to meet Truckee 5/1 quantity estimate. 1 hr on weekdays. 2 hours on Saturday. |

| Certified By | Date Certified | | Approved By | Date Approved |
| --- | --- | --- | --- | --- |
| HAMANN, DANIEL W | 04/24/2017 | | BOGGESS, JAY S. | 04/27/2017 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201711     Pay Period Beginning Date: 04/30/2017     Pay Period Ending Date: 05/13/2017

Cost Center: RR85843000     Department: IN     Bureau: 07     Suburau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Apr 30 | Mon May | Tue May | Wed May | Thu May | Fri May | Sat May | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 1:00 | 2:30 | 0:30 | 0:30 | 1:00 | | 05:30 | | CERGH | RX003356553228000 | 17XR0680A5 | Cle Elum Radial Gate Hoist with VE additions |
| 1.2 | 010 | | | | | | 4:00 | 1:30 | 2:45 | 3:00 | 3:00 | | 14:15 | | FA343 | RR4888FAMP160250 003 | XXXR4524KS | Truckee Final Design Task 3 |
| 1.3 | 010 | | | | | | 3:00 | 4:00 | 4:45 | 4:30 | 4:00 | | 20:15 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun May | Mon May | Tue May | Wed May | Thu May | Fri May | Sat May | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 020 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 2.2 | 010 | | | | | | | 6:00 | 6:00 | 4:00 | 2:00 | | 18:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KS | K88 - LAB UNIQUE COSTS |
| 2.3 | 010 | | | | | | | 1:00 | 1:00 | 4:00 | 6:00 | | 12:00 | | CERGH | RX003356553228000 | 17XR0680A5 | Cle Elum Radial Gate Hoist with VE additions |
| 2.4 | 110 | | | | | | | 0:30 | | | | | 00:30 | | FA343 | RR4888FAMP160250 003 | XXXR4524KS | Truckee Final Design Task 3 |
| 2.5 | 010 | | | | | | | 1:00 | 1:00 | | | | 02:00 | | FA343 | RR4888FAMP160250 003 | XXXR4524KS | Truckee Final Design Task 3 |
| | Totals: | | | | | 0:00 | 8:00 | 8:30 | 8:00 | 8:00 | 8:00 | 0:00 | 40:30 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:30 | 16:00 | 16:00 | 16:00 | 0:00 | 80:30 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201711          Pay Period Beginning Date: 04/30/2017          Pay Period Ending Date: 05/13/2017

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

| Overtime Justification |
| --- |
| 5/9/17: 0:30 Deadline passed due. |

| Certified By | Date Certified | | Approved By | Date Approved |
| --- | --- | --- | --- | --- |
| HAMANN, DANIEL W | 05/12/2017 | | BOGGESS, JAY S. | 05/12/2017 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201712  Pay Period Beginning Date: 05/14/2017  Pay Period Ending Date: 05/27/2017

Cost Center: RR85843000  Department: IN  Bureau: 07  Subureau: 08  Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun May | Mon May | Tue May | Wed May | Thu May | Fri May | Sat May | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|---------|---------|---------|---------|---------|---------|---------|--------|----|-----------|-----------------|------|-------------|
| 1.1 | 010 | | | | | | 2:00 | 2:00 | 2:00 | 2:00 | | | 08:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.2 | 010 | | | | | | 3:00 | 3:00 | 3:00 | 3:00 | | | 12:00 | | CERGH | RX003356553228000 | 17XR0680A5 | Cle Elum Radial Gate Hoist with VE additions |
| 1.3 | 010 | | | | | | 3:00 | 3:00 | 3:00 | 3:00 | | | 12:00 | | FA343 | RR4888FAMP160250 003 | XXXR4524KS | Truckee Final Design Task 3 |
| 1.4 | 020 | | | | | | | | | | 8:00 | | 08:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun May | Mon May | Tue May | Wed May | Thu May | Fri May | Sat May | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|---------|---------|---------|---------|---------|---------|---------|--------|----|-----------|-----------------|------|-------------|
| 2.1 | 010 | | | | | | 3:00 | 1:00 | 1:00 | 1:00 | | | 06:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.2 | 010 | | | | | | 1:00 | | | | | | 01:00 | | CERGH | RX003356553228000 | 17XR0680A5 | Cle Elum Radial Gate Hoist with VE additions |
| 2.3 | 010 | | | | | | 2:00 | 7:00 | 7:00 | 7:00 | | | 23:00 | | FA343 | RR4888FAMP160250 003 | XXXR4524KS | Truckee Final Design Task 3 |
| 2.4 | 020 | | | | | | | | | | 8:00 | | 08:00 | | | | | |
| 2.5 | 010 | | | | | | 2:00 | | | | | | 02:00 | | WCCAP | RX4888TINE0980200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|--|-----|-----|-----|-----|-----|-----|-----|-------|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201712     Pay Period Beginning Date: 05/14/2017     Pay Period Ending Date: 05/27/2017

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

| Overtime Justification |
|---|
| |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 05/24/2017 | | BOGGESS, JAY S. | 05/30/2017 |

**Official Timesheet for HAMANN, DANIEL W**

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201713      Pay Period Beginning Date: 05/28/2017      Pay Period Ending Date: 06/10/2017

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

**Week 1**

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun May | Mon May | Tue May | Wed May | Thu Jun 01 | Fri Jun 02 | Sat Jun 03 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|---------|---------|---------|---------|-----------|-----------|-----------|--------|----|-----------|-----------------|------|-------------|
| 1.1 | 050 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 1.2 | 010 | | | | | | | 1:00 | 4:00 | 3:30 | | | 08:30 | | FA343 | RR4888FAMP160250 003 | XXXR4524KS | Truckee Final Design Task 3 |
| 1.3 | 010 | | | | | | | 6:30 | 2:45 | 1:00 | | | 10:15 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.4 | 231 | | | | | | | | | | 8:00 | | 08:00 | | | | | |
| 1.5 | 010 | | | | | | | 0:30 | | | | | 00:30 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.6 | 010 | | | | | | | | 1:15 | 3:30 | | | 04:45 | | CERGH | RX003356553228000 | 17XR0680A5 | Cle Elum Radial Gate Hoist with VE additions |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

**Week 2**

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jun 04 | Mon Jun 05 | Tue Jun 06 | Wed Jun 07 | Thu Jun 08 | Fri Jun 09 | Sat Jun 10 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|-----------|-----------|-----------|-----------|-----------|-----------|-----------|--------|----|-----------|-----------------|------|-------------|
| 2.1 | 010 | | | | | | 1:00 | 2:30 | 2:45 | | | | 06:15 | | CERGH | RX003356553228000 | 17XR0680A5 | Cle Elum Radial Gate Hoist with VE additions |
| 2.2 | 010 | | | | | | 1:00 | | | | | | 01:00 | | FA343 | RR4888FAMP160250 003 | XXXR4524KS | Truckee Final Design Task 3 |
| 2.3 | 010 | | | | | | 6:00 | 5:30 | 5:15 | 8:00 | | | 24:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.4 | 231 | | | | | | | | | | 8:00 | | 08:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|-----|-----|-----|-----|-----|-----|-----|-------|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| **Timekeeper Messages to Payroll** |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201713          Pay Period Beginning Date: 05/28/2017          Pay Period Ending Date: 06/10/2017
Cost Center: RR85843000          Department: IN          Bureau: 07          Subureau: 08          Location Code: DO1

| Pay Period Comments |
| --- |
|  |

| Overtime Justification |
| --- |
|  |

| Certified By | Date Certified | Approved By | Date Approved |
| --- | --- | --- | --- |
| HAMANN, DANIEL W | 06/08/2017 | BOGGESS, JAY S. | 06/12/2017 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201714      Pay Period Beginning Date: 06/11/2017      Pay Period Ending Date: 06/24/2017

Cost Center: RR85843000      Department: IN      Bureau: 07      Suburoau: 08      Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jun 11 | Mon Jun 12 | Tue Jun 13 | Wed Jun 14 | Thu Jun 15 | Fri Jun 16 | Sat Jun 17 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|---------|-----|-----|-----|---------|-----|-----|-----|-----|-----|-----|-----|--------|----|-----|----|----|----|
| 1.1 | 010 | | | | | | 7:30 | 7:30 | 6:00 | 6:00 | | | 27:00 | | CERGH | RX003356553228000 | 17XR0680A5 | Cle Elum Radial Gate Hoist with VE additions |
| 1.2 | 010 | | | | | | 0:30 | 0:30 | 1:00 | 1:00 | | | 03:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.3 | 010 | | | | | | | | 1:00 | 1:00 | | | 02:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.4 | 020 | | | | | | | | | | 8:00 | | 08:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jun 18 | Mon Jun 19 | Tue Jun 20 | Wed Jun 21 | Thu Jun 22 | Fri Jun 23 | Sat Jun 24 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|---------|-----|-----|-----|---------|-----|-----|-----|-----|-----|-----|-----|--------|----|-----|----|----|----|
| 2.1 | 010 | | | | | | 4:00 | 7:00 | 7:30 | 7:30 | | | 26:00 | | CERGH | RX003356553228000 | 17XR0680A5 | Cle Elum Radial Gate Hoist with VE additions |
| 2.2 | 010 | | | | | | 4:00 | 1:00 | 0:30 | 0:30 | | | 06:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.3 | 020 | | | | | | | | | | 8:00 | | 08:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|-----|-----|-----|-----|-----|-----|-----|-------|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201714          Pay Period Beginning Date: 06/11/2017                    Pay Period Ending Date: 06/24/2017

Cost Center: RR85843000          Department: IN          Bureau: 07          Subureau: 08          Location Code: DO1

| Overtime Justification |
|------------------------|
|                        |

| Certified By | Date Certified | | Approved By | Date Approved |
|--------------|----------------|---|-------------|---------------|
| HAMANN, DANIEL W | 06/21/2017 | | BOGGESS, JAY S. | 06/26/2017 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201715  Pay Period Beginning Date: 06/25/2017  Pay Period Ending Date: 07/08/2017
Cost Center: RR85843000  Department: IN  Bureau: 07  Subureau: 08  Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jun 25 | Mon Jun 26 | Tue Jun 27 | Wed Jun 28 | Thu Jun 29 | Fri Jun 30 | Sat Jul 01 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 7:30 | 7:30 | 1:00 | 7:30 | | | 23:30 | | CERGH | RX003356553228000 | 17XR0680A5 | Cle Elum Radial Gate Hoist with VE additions |
| 1.2 | 010 | | | | | | 0:30 | 0:30 | 1:00 | 0:30 | | | 02:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.3 | 020 | | | | | | | | | | 8:00 | | 08:00 | | | | | |
| 1.4 | 010 | | | | | | | | 6:00 | | | | 06:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| | | Totals: | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jul 02 | Mon Jul 03 | Tue Jul 04 | Wed Jul 05 | Thu Jul 06 | Fri Jul 07 | Sat Jul 08 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | | | | 1:00 | 1:00 | | 02:00 | | CERGH | RX003356553228000 | 17XR0680A5 | Cle Elum Radial Gate Hoist with VE additions |
| 2.2 | 010 | | | | | | | | 0:30 | 0:30 | 0:30 | | 01:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.3 | 020 | | | | | | 8:00 | | 3:00 | | | | 11:00 | | | | | |
| 2.4 | 010 | | | | | | | | | | | | 00:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.5 | 050 | | | | | | | 8:00 | | | | | 08:00 | | | | | |
| 2.6 | 010 | | | | | | | | 4:30 | 6:30 | 6:30 | | 17:30 | | FA343 | RX4888FAMP160250 003 | XXXR4524KS | Truckee Final Design Task 3 |
| | | Totals: | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201715     Pay Period Beginning Date: 06/25/2017     Pay Period Ending Date: 07/08/2017

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

| Pay Period Comments |
| --- |
| |

| Overtime Justification |
| --- |
| |

| Certified By | Date Certified | Approved By | Date Approved |
| --- | --- | --- | --- |
| HAMANN, DANIEL W | 07/10/2017 | BOGGESS, JAY S. | 07/07/2017 |

## Official Timesheet for HAMANN, DANIEL W
PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201716     Pay Period Beginning Date: 07/09/2017     Pay Period Ending Date: 07/22/2017

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jul 09 | Mon Jul 10 | Tue Jul 11 | Wed Jul 12 | Thu Jul 13 | Fri Jul 14 | Sat Jul 15 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 2:30 | 2:00 | 2:00 | 5:00 | 4:00 | | 15:30 | | CERGH | RX003356553228000 | 17XR0680A5 | Cle Elum Radial Gate Hoist with VE additions |
| 1.2 | 010 | | | | | | 0:15 | 1:30 | 6:00 | 3:00 | 4:00 | | 14:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.3 | 010 | | | | | | 5:15 | 4:30 | | | | | 09:45 | | FA343 | RX4888FAMP160250 003 | XXXR4524KS | Truckee Final Design Task 3 |
| 1.4 | 010 | | | | | | | | | | | | 00:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jul 16 | Mon Jul 17 | Tue Jul 18 | Wed Jul 19 | Thu Jul 20 | Fri Jul 21 | Sat Jul 22 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 030 | | | | | | 2:00 | | | | | | 02:00 | | | | | |
| 2.2 | 010 | | | | | | 3:00 | 5:00 | 5:00 | 6:00 | | | 19:00 | | CERGH | RX003356553228000 | 17XR0680A5 | Cle Elum Radial Gate Hoist with VE additions |
| 2.3 | 010 | | | | | | 3:00 | 3:00 | 1:30 | 2:00 | | | 09:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.4 | 010 | | | | | | | | 1:30 | | | | 01:30 | | WCHRS | RX4888TINE1320000 | XXXR4524KK | TSC HUMAN RESOURCES SERVICES |
| 2.5 | 020 | | | | | | | | | | 3:30 | | 03:30 | | | | | |
| 2.6 | 231 | | | | | | | | | | 4:30 | | 04:30 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201716      Pay Period Beginning Date: 07/09/2017      Pay Period Ending Date: 07/22/2017

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

| Pay Period Comments |
|---|
|  |

| Overtime Justification |
|---|
|  |

| Certified By | Date Certified | Approved By | Date Approved |
|---|---|---|---|
| HAMANN, DANIEL W | 07/20/2017 | BOGGESS, JAY S. | 07/21/2017 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201717  Pay Period Beginning Date: 07/23/2017  Pay Period Ending Date: 08/05/2017
Cost Center: RR85843000  Department: IN  Bureau: 07  Subureau: 08  Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jul 23 | Mon Jul 24 | Tue Jul 25 | Wed Jul 26 | Thu Jul 27 | Fri Jul 28 | Sat Jul 29 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 030 | | | | | | 8:00 | 8:00 | 8:00 | 4:00 | | | 28:00 | | | | | |
| 1.2 | 010 | | | | | | | | | 1:00 | 7:00 | | 08:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.3 | 010 | | | | | | | | | 3:00 | 1:00 | | 04:00 | | CERGH | RX003356553228000 | 17XR0680A5 | Cle Elum Radial Gate Hoist with VE additions |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jul 30 | Mon Jul 31 | Tue Aug | Wed Aug | Thu Aug | Fri Aug | Sat Aug | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 7:00 | 8:00 | 5:00 | 6:00 | 8:00 | | 34:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.2 | 010 | | | | | | 1:00 | | | | | | 01:00 | | CERGH | RX003356553228000 | 17XR0680A5 | Cle Elum Radial Gate Hoist with VE additions |
| 2.3 | 030 | | | | | | | | 3:00 | 2:00 | | | 05:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| WCLUC for finishing the finish the truckee project. |

| Overtime Justification |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201717       Pay Period Beginning Date: 07/23/2017       Pay Period Ending Date: 08/05/2017

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 08/04/2017 | | BOGGESS, JAY S. | 08/07/2017 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201718

Pay Period Beginning Date: 08/06/2017

Pay Period Ending Date: 08/19/2017

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Aug | Mon Aug | Tue Aug | Wed Aug | Thu Aug | Fri Aug | Sat Aug | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|---------|---------|---------|---------|---------|---------|---------|--------|----|-----------|-----------------|------|-------------|
| 1.1 | 030 | | | | | | 2:00 | 8:00 | 2:00 | 1:30 | 3:00 | | 16:30 | | | | | |
| 1.2 | 010 | | | | | | 6:00 | | 6:00 | 6:30 | 5:00 | | 23:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.3 | 010 | | | | | | | | | | | | 00:00 | | CERGH | RX003356553228000 | 17XR0680A5 | Cle Elum Radial Gate Hoist with VE additions |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Aug | Mon Aug | Tue Aug | Wed Aug | Thu Aug | Fri Aug | Sat Aug | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|---------|---------|---------|---------|---------|---------|---------|--------|----|-----------|-----------------|------|-------------|
| 2.1 | 010 | | | | | | 6:00 | 8:00 | 6:00 | 5:30 | | | 25:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.2 | 010 | | | | | | | | 0:30 | 0:30 | | | 01:00 | | CERGH | RX003356553228000 | 17XR0680A5 | Cle Elum Radial Gate Hoist with VE additions |
| 2.3 | 030 | | | | | | 2:00 | | 1:30 | 2:00 | | | 05:30 | | | | | |
| 2.4 | 020 | | | | | | | | | | 8:00 | | 08:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|-----------------|------|-------|-------|-------|-------|-------|------|-------|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201718  Pay Period Beginning Date: 08/06/2017  Pay Period Ending Date: 08/19/2017
Cost Center: RR85843000  Department: IN  Bureau: 07  Subureau: 08  Location Code: DO1

| Overtime Justification |
|---|
| |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 11/28/2017 | | MYERS, NATHAN EUGENE | 08/18/2017 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201719      Pay Period Beginning Date: 08/20/2017      Pay Period Ending Date: 09/02/2017

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Aug | Mon Aug | Tue Aug | Wed Aug | Thu Aug | Fri Aug | Sat Aug | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|---------|---------|---------|---------|---------|---------|---------|--------|----|-----------|-----------------|------|-------------|
| 1.1 | 020 | | | | | | | | 1:00 | | | | 01:00 | | | | | |
| 1.2 | 030 | | | | | | 5:15 | | | 2:00 | | | 07:15 | | | | | |
| 1.3 | 010 | | | | | | 2:45 | 3:00 | 5:00 | 1:00 | 2:00 | | 13:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.4 | 010 | | | | | | | 5:00 | 3:00 | 4:00 | 6:00 | | 18:00 | | CERGH | RX003356553228000 | 17XR0680A5 | Cle Elum Radial Gate Hoist with VE additions |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Aug | Mon Aug | Tue Aug | Wed Aug | Thu Aug | Fri Sep 01 | Sat Sep 02 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|---------|---------|---------|---------|---------|------------|------------|--------|----|-----------|-----------------|------|-------------|
| 2.1 | 030 | | | | | | 1:00 | | 1:00 | | | | 02:00 | | | | | |
| 2.2 | 010 | | | | | | 2:00 | 1:00 | 2:00 | 4:00 | 3:00 | | 12:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.3 | 010 | | | | | | 5:00 | 7:00 | 5:00 | 4:00 | 4:00 | | 25:00 | | CERGH | RX003356553228000 | 17XR0680A5 | Cle Elum Radial Gate Hoist with VE additions |
| 2.4 | 020 | | | | | | | | | | 1:00 | | 01:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|--|-----|-----|-----|-----|-----|-----|-----|-------|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|--------------------------------|
| |

| Pay Period Comments |
|---------------------|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201719          Pay Period Beginning Date: 08/20/2017          Pay Period Ending Date: 09/02/2017
Cost Center: RR85843000          Department: IN          Bureau: 07          Subureau: 08          Location Code: DO1

| Overtime Justification |
|---|
|  |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 09/01/2017 | | MYERS, NATHAN EUGENE | 09/01/2017 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201720      Pay Period Beginning Date: 09/03/2017      Pay Period Ending Date: 09/16/2017
Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Sep 03 | Mon Sep 04 | Tue Sep 05 | Wed Sep 06 | Thu Sep 07 | Fri Sep 08 | Sat Sep 09 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|------|--|--|--|--|------|------|------|------|------|------|------|-------|--|-------|----------------|------|-------------|
| 1.1 | 050 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 1.2 | 020 | | | | | | | 8:00 | | | | | 08:00 | | | | | |
| 1.3 | 010 | | | | | | | | 7:30 | 7:30 | 6:00 | | 21:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.4 | 010 | | | | | | | | | 0:30 | 2:00 | | 02:30 | | CERGH | RX003356553228000 | 17XR0880A5 | Cle Elum Radial Gate Hoist with VE additions |
| 1.5 | 030 | | | | | | | | 0:30 | | | | 00:30 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Sep 10 | Mon Sep 11 | Tue Sep 12 | Wed Sep 13 | Thu Sep 14 | Fri Sep 15 | Sat Sep 16 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|------|--|--|--|--|------|------|------|------|------|------|------|-------|--|-------|----------------|------|-------------|
| 2.1 | 030 | | | | | | | | | 1:30 | | | 01:30 | | | | | |
| 2.2 | 010 | | | | | | 8:00 | 8:00 | 7:00 | 6:30 | 8:00 | | 37:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.3 | 010 | | | | | | | | 1:00 | | | | 01:00 | | CERGH | RX003356553228000 | 17XR0880A5 | Cle Elum Radial Gate Hoist with VE additions |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|--|-----|-----|-----|-----|-----|-----|-----|-------|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|--------------------------------|
| |

| Pay Period Comments |
|---------------------|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201720          Pay Period Beginning Date: 09/03/2017          Pay Period Ending Date: 09/16/2017
Cost Center: RR85843000          Department: IN          Bureau: 07          Subureau: 08          Location Code: DO1

| Overtime Justification |
|---|
|  |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 09/13/2017 | | BOGGESS, JAY S. | 09/14/2017 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201721      Pay Period Beginning Date: 09/17/2017      Pay Period Ending Date: 09/30/2017

Cost Center: RR85843000      Department: IN      Bureau: 07      Suburaeu: 08      Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Sep 17 | Mon Sep 18 | Tue Sep 19 | Wed Sep 20 | Thu Sep 21 | Fri Sep 22 | Sat Sep 23 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|------|---|---|---|-----|------|------|------|------|------|------|------|-------|----|-------|-----------------|------|-------------|
| 1.1 | 010 | | | | | | 7:00 | 7:00 | 7:00 | 7:00 | 7:00 | | 35:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.2 | 010 | | | | | | 1:00 | 1:00 | 1:00 | 1:00 | 1:00 | | 05:00 | | CERGH | RX003356553228000 | 17XR0680A5 | Cle Elum Radial Gate Hoist with VE additions |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Sep 24 | Mon Sep 25 | Tue Sep 26 | Wed Sep 27 | Thu Sep 28 | Fri Sep 29 | Sat Sep 30 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|------|---|---|---|-----|------|------|------|------|------|------|------|-------|----|-------|-----------------|------|-------------|
| 2.1 | 010 | | | | | | 5:00 | 7:00 | 6:00 | 7:00 | 7:00 | | 32:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.2 | 010 | | | | | | 1:00 | 1:00 | 1:00 | 1:00 | 1:00 | | 05:00 | | CERGH | RX003356553228000 | 17XR0680A5 | Cle Elum Radial Gate Hoist with VE additions |
| 2.3 | 030 | | | | | | 2:00 | | 1:00 | | | | 03:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|-----------------|------|------|------|------|------|------|------|-------|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201721          Pay Period Beginning Date: 09/17/2017          Pay Period Ending Date: 09/30/2017
Cost Center: RR85843000          Department: IN          Bureau: 07          Subureau: 08          Location Code: DO1

| Certified By | Date Certified |
| --- | --- |
| HAMANN, DANIEL W | 09/07/2017 |

| Approved By | Date Approved |
| --- | --- |
| BOGGESS, JAY S. | 10/02/2017 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201722      Pay Period Beginning Date: 10/01/2017      Pay Period Ending Date: 10/14/2017

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Oct 01 | Mon Oct 02 | Tue Oct 03 | Wed Oct 04 | Thu Oct 05 | Fri Oct 06 | Sat Oct 07 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 8:00 | 8:00 | 6:30 | 8:00 | 8:00 | | 38:30 | | G7XTI | RX596898311150000 | 178R5065C6 | FY17 Eng Tech Mgt Special Inq Anal&Activities |
| 1.2 | 010 | | | | | | | | 1:30 | | | | 01:30 | | CERGH | RX003356553228000 | 17XR0680A5 | Cle Elum Radial Gate Hoist with VE additions |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Oct 08 | Mon Oct 09 | Tue Oct 10 | Wed Oct 11 | Thu Oct 12 | Fri Oct 13 | Sat Oct 14 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 050 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 2.2 | 010 | | | | | | | 8:00 | 7:00 | 6:00 | 8:00 | | 29:00 | | G7XTI | RX596898311150000 | 178R5065C6 | FY17 Eng Tech Mgt Special Inq Anal&Activities |
| 2.3 | 010 | | | | | | | | 1:00 | 1:00 | | | 02:00 | | FA588 | RR4888FAGP1704601 | XXXR4524KS | St. Mary Diversion Dam and Headworks Replacement and Modifications |
| 2.4 | 010 | | | | | | | | | 1:00 | | | 01:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:30 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| All hours coded for G7XTI for this pay period were incurred working on the Glen Canyon Blackstart project for which a PMP is pending. |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201722                Pay Period Beginning Date: 10/01/2017                Pay Period Ending Date: 10/14/2017
Cost Center: RR85843000        Department: IN        Bureau: 07        Subureau: 08        Location Code: DO1

| Overtime Justification |
|---|
|  |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 10/16/2017 | | BOGGESS, JAY S. | 10/16/2017 |

### Corrected Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201723      Pay Period Beginning Date: 10/15/2017      Pay Period Ending Date: 10/28/2017

Cost Center: RR85843000     Department: IN     Bureau: 07     Suberau: 08     Location Code: DO1

#### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Oct 15 | Mon Oct 16 | Tue Oct 17 | Wed Oct 18 | Thu Oct 19 | Fri Oct 20 | Sat Oct 21 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | | 40:00 | | UC586 | RX059451215441053 | XXXR4081X5 | Glen Canyon Blackstart Engine Generator Electrical Distribution Design |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

#### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Oct 22 | Mon Oct 23 | Tue Oct 24 | Wed Oct 25 | Thu Oct 26 | Fri Oct 27 | Sat Oct 28 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 030 | | | | | | 1:30 | | | 2:00 | 1:30 | | 05:00 | | | | | |
| 2.2 | 010 | | | | | | 6:30 | 7:15 | 5:00 | 2:30 | 6:30 | | 27:45 | | UC586 | RX059451215441053 | XXXR4081X5 | Glen Canyon Blackstart Engine Generator Electrical Distribution Design |
| 2.3 | 020 | | | | | | | 0:45 | | 0:30 | | | 01:15 | | | | | |
| 2.4 | 010 | | | | | | | | 3:00 | 1:00 | | | 04:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.5 | 010 | | | | | | | | | 2:00 | | | 02:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |
| |

| Pay Period Comments |
|---|
| All charges to G8XTI for this pay period are to be charged to Glen Canyon Blackstart upon completion of PMP. |

## Corrected Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201723          Pay Period Beginning Date: 10/15/2017          Pay Period Ending Date: 10/28/2017
Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

| Overtime Justification |
|---|
|  |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
|  |  | | SNODGRASS, ELIZABETH A | 01/26/2018 |

## Corrected Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201724    Pay Period Beginning Date: 10/29/2017    Pay Period Ending Date: 11/11/2017

Cost Center: RR85843000    Department: IN    Bureau: 07    Subureau: 08    Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Oct 29 | Mon Oct 30 | Tue Oct 31 | Wed Nov | Thu Nov | Fri Nov | Sat Nov | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 7:00 | 3:00 | 0:45 | | 1:00 | | 11:45 | | UC586 | RX059451215441053 | XXXR4081X5 | Glen Canyon Blackstart Engine Generator Electrical Distribution Design |
| 1.2 | 010 | | | | | | 1:00 | 4:00 | 4:15 | | 1:15 | | 10:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.3 | 010 | | | | | | | | 0:30 | | | | 00:30 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.4 | 010 | | | | | | | 1:00 | 3:00 | 7:30 | 5:45 | | 17:15 | | UC553 | RA071100030019300 | XXXR4081X5 | Navajo Dam Valve and Gate Rehabilitation |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Nov | Mon Nov | Tue Nov | Wed Nov | Thu Nov | Fri Nov | Sat Nov | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 050 | | | | | | | | | 8:00 | | | 08:00 | | | | | |
| 2.2 | 010 | | | | | | 5:45 | | 1:45 | 1:00 | | | 08:30 | | UC586 | RX059451215441053 | XXXR4081X5 | Glen Canyon Blackstart Engine Generator Electrical Distribution Design |
| 2.3 | 010 | | | | | | 2:15 | 5:00 | | 4:00 | | | 11:15 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.4 | 010 | | | | | | | | 1:00 | | | | 01:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.5 | 010 | | | | | | | 3:00 | 5:15 | 3:00 | | | 11:15 | | UC553 | RA071100030019300 | XXXR4081X5 | Navajo Dam Valve and Gate Rehabilitation |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

## Corrected Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201724     Pay Period Beginning Date: 10/29/2017     Pay Period Ending Date: 11/11/2017

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

| Pay Period Comments |
| --- |
| All charges to G8XTI for this pay period are to be charged to Glen Canyon Blackstart upon completion of PMP. |

| Overtime Justification |
| --- |
|  |

| Certified By | Date Certified | | Approved By | Date Approved |
| --- | --- | --- | --- | --- |
|  |  |  | SNODGRASS, ELIZABETH A | 01/26/2018 |

## Corrected Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201725      Pay Period Beginning Date: 11/12/2017      Pay Period Ending Date: 11/25/2017

Cost Center: RR85843000      Department: IN      Bureau: 07      Suburbau: 08      Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Nov | Mon Nov | Tue Nov | Wed Nov | Thu Nov | Fri Nov | Sat Nov | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|---------|---------|---------|---------|---------|---------|---------|--------|----|-----------|-----------------|------|-------------|
| 1.1 | 010 | | | | | | | | 2:30 | | | | 02:30 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.2 | 030 | | | | | | 8:00 | 2:30 | 1:45 | | | | 12:15 | | | | | |
| 1.3 | 010 | | | | | | 4:15 | | 1:15 | 4:15 | 3:00 | | 12:45 | | UC586 | RX059451215441053 | XXXR4081X5 | Glen Canyon Blackstart Engine Generator Electrical Distribution Design |
| 1.4 | 010 | | | | | | 3:45 | | 1:45 | 2:00 | 5:00 | | 12:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Nov | Mon Nov | Tue Nov | Wed Nov | Thu Nov | Fri Nov | Sat Nov | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|---------|---------|---------|---------|---------|---------|---------|--------|----|-----------|-----------------|------|-------------|
| 2.1 | 050 | | | | | | | | | 8:00 | | | 08:00 | | | | | |
| 2.2 | 010 | | | | | | 8:00 | 4:00 | 1:00 | | 3:00 | | 16:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.3 | 060 | | | | | | | | 3:00 | | | | 03:00 | | | | | |
| 2.4 | 010 | | | | | | | 2:00 | 1:00 | | 3:00 | | 06:00 | | UC586 | RX059451215441053 | XXXR4081X5 | Glen Canyon Blackstart Engine Generator Electrical Distribution Design |
| 2.5 | 010 | | | | | | | 2:00 | 2:00 | | 2:00 | | 06:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.6 | 030 | | | | | | | | 1:00 | | | | 01:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|--|-----|-----|-----|-----|-----|-----|-----|-------|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

## Corrected Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201725          Pay Period Beginning Date: 11/12/2017          Pay Period Ending Date: 11/25/2017
Cost Center: RR85843000          Department: IN          Bureau: 07          Subureau: 08          Location Code: DO1

| Timekeeper Messages to Payroll |
| --- |
| |

| Pay Period Comments |
| --- |
| All charges to G8XTI for this pay period are to be charged to Glen Canyon Blackstart upon completion of PMP except for 1 hour on Monday, 11/13/17 which is to be charged to the Blackfeet Nation/St. Marys Renewable Energy Value Planning Study upon completion of PMP and availability of WOID. |

| Overtime Justification |
| --- |
| |

| Certified By | Date Certified | | Approved By | Date Approved |
| --- | --- | --- | --- | --- |
| | | | SNODGRASS, ELIZABETH A | 01/26/2018 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201726    Pay Period Beginning Date: 11/26/2017    Pay Period Ending Date: 12/09/2017

Cost Center: RR85843000    Department: IN    Bureau: 07    Subureau: 08    Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Nov | Mon Nov | Tue Nov | Wed Nov | Thu Nov | Fri Dec 01 | Sat Dec 02 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|---------|---------|---------|---------|---------|------------|------------|--------|----|-----------|-----------------|------|-------------|
| 1.1 | 010 | | | | | | 2:00 | 2:00 | 2:00 | 2:00 | 0:30 | | 08:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.2 | 010 | | | | | | 3:00 | 3:00 | 3:00 | 3:00 | 3:00 | | 15:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.3 | 030 | | | | | | | | | | 1:30 | | 01:30 | | | | | |
| 1.4 | 010 | | | | | | 3:00 | 3:00 | 3:00 | 3:00 | 3:00 | | 15:00 | | UC586 | RX059451215441053 | XXXR4081X5 | Glen Canyon Blackstart Engine Generator Electrical Distribution Design |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Dec 03 | Mon Dec 04 | Tue Dec 05 | Wed Dec 06 | Thu Dec 07 | Fri Dec 08 | Sat Dec 09 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|------------|------------|------------|------------|------------|------------|------------|--------|----|-----------|-----------------|------|-------------|
| 2.1 | 020 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 2.2 | 010 | | | | | | | 5:30 | 3:00 | 5:45 | 5:00 | | 19:15 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.3 | 010 | | | | | | | 1:00 | 1:00 | | | | 02:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.4 | 030 | | | | | | | | | 2:15 | 3:00 | | 05:15 | | | | | |
| 2.5 | 010 | | | | | | | 1:30 | 4:00 | | | | 05:30 | | UC586 | RX059451215441053 | XXXR4081X5 | Glen Canyon Blackstart Engine Generator Electrical Distribution Design |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|-----|-----|-----|-----|-----|-----|-----|-------|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201726      Pay Period Beginning Date: 11/26/2017      Pay Period Ending Date: 12/09/2017

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

| Pay Period Comments |
| --- |
| |

| Overtime Justification |
| --- |
| |

| Certified By | Date Certified | | Approved By | Date Approved |
| --- | --- | --- | --- | --- |
| HAMANN, DANIEL W | 12/08/2017 | | BOGGESS, JAY S. | 12/11/2017 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201801      Pay Period Beginning Date: 12/10/2017      Pay Period Ending Date: 12/23/2017

Cost Center: RR85843000    Department: IN    Bureau: 07    Subureau: 08    Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Dec 10 | Mon Dec 11 | Tue Dec 12 | Wed Dec 13 | Thu Dec 14 | Fri Dec 15 | Sat Dec 16 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 5:00 | 6:00 | 6:00 | 4:00 | 1:45 | | 22:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.2 | 020 | | | | | | 3:00 | 2:00 | 2:00 | 2:00 | 4:00 | | 13:00 | | | | | |
| 1.3 | 010 | | | | | | | | | 2:00 | 1:00 | | 03:00 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 1.4 | 010 | | | | | | | | | | 1:15 | | 01:15 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Dec 17 | Mon Dec 18 | Tue Dec 19 | Wed Dec 20 | Thu Dec 21 | Fri Dec 22 | Sat Dec 23 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 020 | | | | | | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | | 40:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

### Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201801          Pay Period Beginning Date: 12/10/2017          Pay Period Ending Date: 12/23/2017

Cost Center: RR85843000          Department: IN          Bureau: 07          Subureau: 08          Location Code: DO1

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 12/15/2017 | | BOGGESS, JAY S. | 12/22/2017 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only.  Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201802     Pay Period Beginning Date: 12/24/2017     Pay Period Ending Date: 01/06/2018

Cost Center: RR85843000     Department: IN     Bureau: 07     Suberau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Dec 24 | Mon Dec 25 | Tue Dec 26 | Wed Dec 27 | Thu Dec 28 | Fri Dec 29 | Sat Dec 30 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 050 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 1.2 | 10F | | | | | | | | | | 1:00 | | 01:00 | | | | | |
| 1.3 | AFF | | | | | | | 8:00 | | | 1:00 | | 09:00 | | | | | |
| 1.4 | SFF | | | | | | | | 8:00 | 8:00 | 6:00 | | 22:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Dec 31 | Mon Jan 01 | Tue Jan 02 | Wed Jan 03 | Thu Jan 04 | Fri Jan 05 | Sat Jan 06 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 050 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 2.2 | 10F | | | | | | | 8:00 | 8:00 | | | | 16:00 | | | | | |
| 2.3 | 010 | | | | | | | | | 4:00 | 3:00 | | 07:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.4 | 010 | | | | | | | | | 3:00 | 3:00 | | 06:00 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 2.5 | 010 | | | | | | | | | 1:00 | 2:00 | | 03:00 | | UC591 | RA002317960019300 | 18XR0680A5 | Elephant Butte 115kV Electrical Equipment Replacement |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS
Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201802     Pay Period Beginning Date: 12/24/2017     Pay Period Ending Date: 01/06/2018

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

| Overtime Justification |
|---|
|  |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 01/04/2018 | | BOGGESS, JAY S. | 01/05/2018 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201803  Pay Period Beginning Date: 01/07/2018  Pay Period Ending Date: 01/20/2018

Cost Center: RR85843000  Department: IN  Bureau: 07  Subureau: 08  Location Code: DO1

**Week 1**

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jan 07 | Mon Jan 08 | Tue Jan 09 | Wed Jan 10 | Thu Jan 11 | Fri Jan 12 | Sat Jan 13 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 10F | | | | | | | 1:30 | 8:00 | 8:00 | 8:00 | | 25:30 | | | | | |
| 1.2 | 010 | | | | | | | 2:00 | 2:00 | | | | 04:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.3 | 010 | | | | | | | 6:00 | 4:30 | | | | 10:30 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

**Week 2**

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jan 14 | Mon Jan 15 | Tue Jan 16 | Wed Jan 17 | Thu Jan 18 | Fri Jan 19 | Sat Jan 20 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 050 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 2.2 | 10F | | | | | | | 8:00 | 8:00 | | | | 16:00 | | | | | |
| 2.3 | 010 | | | | | | | | | 4:00 | 4:00 | | 08:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.4 | 030 | | | | | | | | | 4:00 | | | 04:00 | | | | | |
| 2.5 | 020 | | | | | | | | | | 4:00 | | 04:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| **Timekeeper Messages to Payroll** |
|---|
| |

| **Pay Period Comments** |
|---|
| |

**Official Timesheet for HAMANN, DANIEL W**

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201803          Pay Period Beginning Date: 01/07/2018          Pay Period Ending Date: 01/20/2018

Cost Center: RR85843000          Department: IN          Bureau: 07          Subureau: 08          Location Code: DO1

| Overtime Justification |
|---|
| |

| Certified By | Date Certified |
|---|---|
| HAMANN, DANIEL W | 01/18/2018 |

| Approved By | Date Approved |
|---|---|
| BOGGESS, JAY S. | 01/18/2018 |

## Official Timesheet for HAMANN, DANIEL W
PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201804
Pay Period Beginning Date: 01/21/2018
Pay Period Ending Date: 02/03/2018
Cost Center: RR85843000
Department: IN
Bureau: 07
Subureau: 08
Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jan 21 | Mon Jan 22 | Tue Jan 23 | Wed Jan 24 | Thu Jan 25 | Fri Jan 26 | Sat Jan 27 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|------|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | | 8:00 | 8:00 | | | | 16:00 | | UC553 | RA071100030019300 | XXXR4081X5 | Navajo Dam Valve and Gate Rehabilitation |
| 1.2 | 010 | | | | | | 8:00 | | | | | | 08:00 | | WCHRS | RX4888TINE1320000 | XXXR4524KK | TSC HUMAN RESOURCES SERVICES |
| 1.3 | 010 | | | | | | | | | 8:00 | 8:00 | | 16:00 | | G8XTI | RX596898311150000 | 189R5065C6 | FY18 Eng Tech Mgt Special Ing |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jan 28 | Mon Jan 29 | Tue Jan 30 | Wed Jan 31 | Thu Feb 01 | Fri Feb 02 | Sat Feb 03 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|------|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | | | 4:00 | 8:00 | 8:00 | | 20:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.2 | 010 | | | | | | 8:00 | 8:00 | 3:30 | | | | 19:30 | | G8XTI | RX596898311150000 | 189R5065C6 | FY18 Eng Tech Mgt Special Ing |
| 2.3 | SFF | | | | | | | | 0:30 | | | | 00:30 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201804        Pay Period Beginning Date: 01/21/2018        Pay Period Ending Date: 02/03/2018

Cost Center: RR85843000        Department: IN        Bureau: 07        Subureau: 08        Location Code: DO1

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 05/24/2018 | | BOGGESS, JAY S. | 02/05/2018 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201805     Pay Period Beginning Date: 02/04/2018     Pay Period Ending Date: 02/17/2018

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Feb 04 | Mon Feb 05 | Tue Feb 06 | Wed Feb 07 | Thu Feb 08 | Fri Feb 09 | Sat Feb 10 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 3:00 | | 0:30 | | | | 03:30 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.2 | 010 | | | | | | 3:00 | 0:30 | 1:30 | 4:00 | 2:00 | | 11:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.3 | 010 | | | | | | | | | | | | 00:00 | | G8XTI | RX598898311150000 | 189R5085C8 | FY18 Eng Tech Mgt Special Ing |
| 1.4 | 010 | | | | | | | 7:30 | 4:30 | 3:00 | 2:30 | | 17:30 | | NG028 | RA16957THS0019401 | XXXR4081G1 | NGWSP Tohlakai Pumping Plant - Construction Support |
| 1.5 | 010 | | | | | | 2:00 | | 1:30 | | 3:30 | | 07:00 | | UC553 | RA071100030019300 | XXXR4081X5 | Navajo Dam Valve and Gate Rehabilitation |
| 1.6 | SFF | | | | | | | | | 1:00 | | | 01:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Feb 11 | Mon Feb 12 | Tue Feb 13 | Wed Feb 14 | Thu Feb 15 | Fri Feb 16 | Sat Feb 17 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 4:00 | | | | | | 04:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.2 | 010 | | | | | | 4:00 | 4:00 | 0:15 | | | | 08:15 | | NG028 | RA16957THS0019401 | XXXR4081G1 | NGWSP Tohlakai Pumping Plant - Construction Support |
| 2.3 | 010 | | | | | | | 4:00 | 0:45 | 4:00 | 4:00 | | 12:45 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 2.4 | 010 | | | | | | | | 7:00 | 4:00 | 4:00 | | 15:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201805     Pay Period Beginning Date: 02/04/2018     Pay Period Ending Date: 02/17/2018

Cost Center: RR85843000     Department: IN     Bureau: 07     Suburau: 08     Location Code: DO1

| Pay Period Comments |
|---|
|  |

| Overtime Justification |
|---|
|  |

| Certified By | Date Certified |
|---|---|
| HAMANN, DANIEL W | 02/15/2018 |

| Approved By | Date Approved |
|---|---|
| BOGGESS, JAY S. | 02/16/2018 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201806    Pay Period Beginning Date: 02/18/2018    Pay Period Ending Date: 03/03/2018

Cost Center: RR85843000    Department: IN    Bureau: 07    Subureau: 08    Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Feb 18 | Mon Feb 19 | Tue Feb 20 | Wed Feb 21 | Thu Feb 22 | Fri Feb 23 | Sat Feb 24 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 050 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 1.2 | 010 | | | | | | | 4:15 | 0:15 | | 0:30 | | 05:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.3 | 010 | | | | | | | 0:15 | 0:15 | | 0:15 | | 00:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.4 | 010 | | | | | | | 1:00 | 0:15 | 1:45 | 0:30 | | 03:30 | | G8XT5 | RX596898311155000 | 189R5065C6 | Office Modernization Team FY18 |
| 1.5 | 010 | | | | | | | 0:15 | 0:15 | | | | 00:30 | | UC586 | RX059451215441053 | XXXR4081X5 | Glen Canyon Blackstart Engine Generator Electrical Distribution Design |
| 1.6 | 010 | | | | | | | 0:15 | 0:15 | | | | 00:30 | | UC591 | RA002317960019300 | 18XR0680A5 | Elephant Butte 115kV Electrical Equipment Replacement |
| 1.7 | 010 | | | | | | | 0:15 | 0:15 | | | | 00:30 | | NG028 | RA16957THS0019401 | XXXR4081G1 | NGWSP Tohlakal Pumping Plant - Construction Support |
| 1.8 | 030 | | | | | | | | 1:30 | | | | 01:30 | | | | | |
| 1.9 | 010 | | | | | | | 0:15 | 5:00 | 5:00 | 6:30 | | 16:45 | | BCSRM | RP0003A1390019300 | XXXR0680U5 | Black Canyon Switchyard, Modifications and Safety Upgrades - Re-Design |
| 1.10 | 010 | | | | | | | 1:30 | | 1:15 | 0:15 | | 03:00 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| | | Totals: | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Feb 25 | Mon Feb 26 | Tue Feb 27 | Wed Feb 28 | Thu Mar | Fri Mar | Sat Mar | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 8:00 | 8:00 | 4:00 | 1:15 | 0:30 | | 21:45 | | BCSRM | RP0003A1390019300 | XXXR0680U5 | Black Canyon Switchyard, Modifications and Safety Upgrades - Re-Design |
| 2.2 | 010 | | | | | | | | 0:30 | 1:15 | 0:15 | | 02:00 | | G8XT5 | RX596898311155000 | 189R5065C6 | Office Modernization Team FY18 |
| 2.3 | 010 | | | | | | | | 0:45 | 2:45 | 3:30 | | 07:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201806     Pay Period Beginning Date: 02/18/2018     Pay Period Ending Date: 03/03/2018

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Feb 25 | Mon Feb 26 | Tue Feb 27 | Wed Feb 28 | Thu Mar | Fri Mar | Sat Mar | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|-----------|-----------|-----------|-----------|---------|---------|---------|--------|----|-----------|-----------------|------|-------------|
| 2.4 | 010 | | | | | | | | 0:45 | 2:45 | 3:45 | | 07:15 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.5 | SFF | | | | | | | | 2:00 | | | | 02:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|--|-----|-----|-----|-----|-----|-----|-----|-------|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

### Timekeeper Messages to Payroll

### Pay Period Comments

### Overtime Justification

| Certified By | Date Certified | | Approved By | Date Approved |
|--------------|----------------|--|-------------|---------------|
| HAMANN, DANIEL W | 03/02/2018 | | BOGGESS, JAY S. | 03/05/2018 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201807  Pay Period Beginning Date: 03/04/2018  Pay Period Ending Date: 03/17/2018

Cost Center: RR85843000  Department: IN  Bureau: 07  Subureau: 08  Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Mar | Mon Mar | Tue Mar | Wed Mar | Thu Mar | Fri Mar | Sat Mar | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 6:00 | 3:15 | 2:00 | 7:00 | | | 18:15 | | BCSRM | RP0003A1390019300 | XXXR0680U5 | Black Canyon Switchyard, Modifications and Safety Upgrades - Re-Design |
| 1.2 | SFF | | | | | | | | 2:00 | | | | 02:00 | | | | | |
| 1.3 | 010 | | | | | | 0:30 | 0:15 | 4:00 | 0:30 | 8:00 | | 13:15 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.4 | 010 | | | | | | 1:00 | 0:15 | | 0:30 | | | 01:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.5 | 010 | | | | | | 0:30 | | | | | | 00:30 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 1.6 | 010 | | | | | | | 4:15 | | | | | 04:15 | | IBP67 | RX19110001008GENR | 17XR0680A4 | Investigation for SSLE of Backup Power at Building 67 |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Mar | Mon Mar | Tue Mar | Wed Mar | Thu Mar | Fri Mar | Sat Mar | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 7:15 | 7:00 | 7:00 | 5:15 | 7:00 | | 33:30 | | BCSRM | RP0003A1390019300 | XXXR0680U5 | Black Canyon Switchyard, Modifications and Safety Upgrades - Re-Design |
| 2.2 | 010 | | | | | | 0:15 | 0:15 | 0:15 | 0:30 | 0:15 | | 01:30 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.3 | 010 | | | | | | 0:15 | 0:15 | 0:15 | | 0:15 | | 01:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.4 | 010 | | | | | | 0:15 | | | 0:15 | 0:15 | | 00:45 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 2.5 | 010 | | | | | | | 0:30 | 0:30 | 1:45 | | | 02:45 | | UC586 | RX059451215441053 | XXXR4081X5 | Glen Canyon Blackstart Engine Generator Electrical Distribution Design |
| 2.6 | 010 | | | | | | | | | 0:15 | 0:15 | | 00:30 | | UC591 | RA0023179600193 | 18XR0680A5 | Elephant Butte 115kV |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201807     Pay Period Beginning Date: 03/04/2018     Pay Period Ending Date: 03/17/2018

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Mar | Mon Mar | Tue Mar | Wed Mar | Thu Mar | Fri Mar | Sat Mar | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | 00 | | Electrical Equipment Replacement |
| Totals: | | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 05/24/2018 | | BOGGESS, JAY S. | 03/16/2018 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201808     Pay Period Beginning Date: 03/18/2018     Pay Period Ending Date: 03/31/2018

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Mar | Mon Mar | Tue Mar | Wed Mar | Thu Mar | Fri Mar | Sat Mar | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|---------|---------|---------|---------|---------|---------|---------|--------|----|-----------|-----------------|------|-------------|
| 1.1 | 010 | | | | | | | 2:00 | 3:00 | 4:45 | 2:00 | | 11:45 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 1.2 | 010 | | | | | | 1:00 | | | | | | 01:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.3 | 010 | | | | | | | 0:15 | 0:15 | 0:15 | 0:15 | | 01:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.4 | 010 | | | | | | | 4:00 | 1:30 | 0:30 | | | 06:00 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 1.5 | 010 | | | | | | | | 0:15 | 0:15 | | | 00:30 | | FA608 | RR4888FAUC170460 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 1.6 | 010 | | | | | | 7:00 | 1:45 | 0:15 | 0:15 | | | 09:15 | | BCSRM | RP0003A1390019300 | XXXR0680U5 | Black Canyon Switchyard, Modifications and Safety Upgrades - Re-Design |
| 1.7 | 230 | | | | | | | 2:00 | | | | | 02:00 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 1.8 | 010 | | | | | | | | 2:30 | | | | 02:30 | | UC586 | RX059451215441053 | XXXR4081X5 | Glen Canyon Blackstart Engine Generator Electrical Distribution Analysis |
| 1.9 | SFF | | | | | | | | | 2:00 | 2:00 | | 04:00 | | | | | |
| 1.10 | 010 | | | | | | | 0:15 | | | 3:45 | | 04:00 | | UC591 | RA002317960019300 | 18XR0680A5 | Elephant Butte 115kV Electrical Equipment Replacement |
| | | Totals: | | | | 0:00 | 8:00 | 10:00 | 8:00 | 8:00 | 8:00 | 0:00 | 42:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Mar | Mon Mar | Tue Mar | Wed Mar | Thu Mar | Fri Mar | Sat Mar | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|---------|---------|---------|---------|---------|---------|---------|--------|----|-----------|-----------------|------|-------------|
| 2.1 | 061 | | | | | | 1:00 | | | | | | 01:00 | | | | | |
| 2.2 | 010 | | | | | | 1:00 | 1:00 | | 0:15 | 0:15 | | 02:30 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201808     Pay Period Beginning Date: 03/18/2018     Pay Period Ending Date: 03/31/2018

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Mar | Mon Mar | Tue Mar | Wed Mar | Thu Mar | Fri Mar | Sat Mar | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.3 | 010 | | | | | | 0:15 | 1:00 | 0:15 | 0:15 | 0:15 | | 02:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.4 | 010 | | | | | | 0:15 | 0:30 | | 0:30 | 0:30 | | 01:45 | | GP914 | RX3128007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 2.5 | 010 | | | | | | 0:15 | 0:15 | | 2:00 | 0:15 | | 02:45 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 2.6 | 010 | | | | | | 0:15 | 1:00 | 3:45 | 0:15 | 0:15 | | 05:30 | | BCSRM | RP0003A1390019300 | XXXR0680U5 | Black Canyon Switchyard, Modifications and Safety Upgrades - Re-Design |
| 2.7 | 010 | | | | | | 6:00 | 2:45 | 4:00 | 4:45 | 6:30 | | 24:00 | | UC591 | RA002317960019300 | 18XR0680A5 | Elephant Butte 115kV Electrical Equipment Replacement |
| 2.8 | 010 | | | | | | | 0:15 | | | | | 00:15 | | FA597 | RR4888FAGP170480 1 | XXXR4524KS | Leadville WTP Designs at Planning Level |
| 2.9 | 010 | | | | | | | 0:15 | | | | | 00:15 | | FA574 | RR4888FALC1703401 | XXXR4524KS | Senator Wash Pumping-Generating Plant HVAC Modernization |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 18:00 | 16:00 | 16:00 | 16:00 | 0:00 | 82:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| On Tue., 3/20, (2) credit hours were incurred to attend a meeting (Blackfeet) outside my normal working day. |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201808　　　　　　Pay Period Beginning Date: 03/18/2018　　　　　Pay Period Ending Date: 03/31/2018

Cost Center: RR85843000　　　Department: IN　　　　Bureau: 07　　　　Subureau: 08　　　　Location Code: DO1

| Certified By | Date Certified |
|---|---|
| HAMANN, DANIEL W | 05/24/2018 |

| Approved By | Date Approved |
|---|---|
| BOGGESS, JAY S. | 03/29/2018 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201809     Pay Period Beginning Date: 04/01/2018     Pay Period Ending Date: 04/14/2018

Cost Center: RR85843000     Department: IN     Bureau: 07     Suberau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Apr 01 | Mon Apr 02 | Tue Apr 03 | Wed Apr 04 | Thu Apr 05 | Fri Apr 06 | Sat Apr 07 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 0:15 | | 1:00 | 0:15 | | | 01:30 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 1.2 | 010 | | | | | | 2:15 | 0:15 | 0:15 | 0:15 | 1:00 | | 04:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.3 | 010 | | | | | | 2:30 | 0:15 | 0:30 | 0:15 | | | 03:30 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 1.4 | 010 | | | | | | 0:15 | | | 0:30 | | | 00:45 | | BCSRM | RP0003A1390019300 | XXXR0680U5 | Black Canyon Switchyard, Modifications and Safety Upgrades - Re-Design |
| 1.5 | 010 | | | | | | 0:15 | 5:45 | 4:45 | 5:00 | 5:00 | | 20:45 | | UC591 | RA002317960019300 | 18XR0680A5 | Elephant Butte 115kV Electrical Equipment Replacement |
| 1.6 | 030 | | | | | | | 1:30 | | | | | 01:30 | | | | | |
| 1.7 | 010 | | | | | | 2:30 | 0:15 | 1:30 | 1:15 | 2:00 | | 07:30 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.8 | SFS | | | | | | | | | 0:30 | | | 00:30 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Apr 08 | Mon Apr 09 | Tue Apr 10 | Wed Apr 11 | Thu Apr 12 | Fri Apr 13 | Sat Apr 14 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | | 40:00 | | UC591 | RA002317960019300 | 18XR0680A5 | Elephant Butte 115kV Electrical Equipment Replacement |
| 2.2 | 110 | | | | | | 3:45 | 1:30 | | | | | 05:15 | | UC591 | RA002317960019300 | 18XR0680A5 | Elephant Butte 115kV Electrical Equipment Replacement |
| | Totals: | | | | | 0:00 | 11:45 | 9:30 | 8:00 | 8:00 | 8:00 | 0:00 | 45:15 | | | | | |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201809                    Pay Period Beginning Date: 04/01/2018                    Pay Period Ending Date: 04/14/2018
Cost Center: RR85843000          Department: IN          Bureau: 07          Subureau: 08          Location Code: DO1

|  | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 19:45 | 17:30 | 16:00 | 16:00 | 16:00 | 0:00 | 85:15 |

| Timekeeper Messages to Payroll |
|---|
|  |

| Pay Period Comments |
|---|
|  |

| Overtime Justification |
|---|
| Mon-9/09 (3:45): Early flight for Elephant Butt site visit Finished day at normal working time at power plant. |
| Tue-9/10 (1:30): Site survey. |

| Certified By | Date Certified |
|---|---|
| HAMANN, DANIEL W | 05/24/2018 |

| Approved By | Date Approved |
|---|---|
| BOGGESS, JAY S. | 04/13/2018 |

## Official Timesheet for HAMANN, DANIEL W
PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201810     Pay Period Beginning Date: 04/15/2018     Pay Period Ending Date: 04/28/2018

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Apr 15 | Mon Apr 16 | Tue Apr 17 | Wed Apr 18 | Thu Apr 19 | Fri Apr 20 | Sat Apr 21 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 0:15 | 0:15 | 0:15 | 0:15 | | | 01:00 | | UC591 | RA002317960019300 | 18XR0680A5 | Elephant Butte 115kV Electrical Equipment Replacement |
| 1.2 | 010 | | | | | | 0:15 | 0:15 | 0:15 | | | | 00:45 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 1.3 | 010 | | | | | | 1:00 | 1:00 | 4:30 | 0:15 | | | 06:45 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.4 | 010 | | | | | | 0:15 | 0:15 | 0:30 | 0:30 | 0:15 | | 01:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.5 | 010 | | | | | | 6:00 | 6:00 | 2:30 | 0:15 | 3:45 | | 18:30 | | BCSRM | RP0003A1390019300 | XXXR0680U5 | Black Canyon Switchyard, Modifications and Safety Upgrades - Re-Design |
| 1.6 | 010 | | | | | | 0:15 | 0:15 | | 6:45 | 4:00 | | 11:15 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Apr 22 | Mon Apr 23 | Tue Apr 24 | Wed Apr 25 | Thu Apr 26 | Fri Apr 27 | Sat Apr 28 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 2:30 | 2:30 | | | 2:30 | | 07:30 | | UC591 | RA002317960019300 | 18XR0680A5 | Elephant Butte 115kV Electrical Equipment Replacement |
| 2.2 | 010 | | | | | | 1:00 | 1:00 | 7:00 | 3:00 | 1:00 | | 13:00 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 2.3 | 010 | | | | | | 0:15 | 0:15 | | | 0:15 | | 00:45 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.4 | 010 | | | | | | 0:15 | 0:15 | 1:00 | | 0:15 | | 01:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.5 | 010 | | | | | | 3:00 | 3:00 | | 3:00 | 3:00 | | 12:00 | | BCSRM | RP0003A1390019300 | XXXR0680U5 | Black Canyon Switchyard, Modifications and Safety Upgrades - Re-Design |
| 2.6 | 010 | | | | | | 1:00 | 1:00 | | | 1:00 | | 03:00 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201810     Pay Period Beginning Date: 04/15/2018     Pay Period Ending Date: 04/28/2018
Cost Center: RR85843000     Department: IN     Bureau: 07     Suburreau: 08     Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Apr 22 | Mon Apr 23 | Tue Apr 24 | Wed Apr 25 | Thu Apr 26 | Fri Apr 27 | Sat Apr 28 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | | the St. Marys Unit Value Planning Study |
| 2.7 | 030 | | | | | | | | | 2:00 | | | 02:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

### Timekeeper Messages to Payroll

### Pay Period Comments

### Overtime Justification

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 04/26/2018 | | BOGGESS, JAY S. | 04/26/2018 |

# Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201811     Pay Period Beginning Date: 04/29/2018     Pay Period Ending Date: 05/12/2018

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

## Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Apr 29 | Mon Apr 30 | Tue May | Wed May | Thu May | Fri May | Sat May | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|-----------|-----------|---------|---------|---------|---------|---------|--------|----|-----------|-----------------|------|-------------|
| 1.1 | 010 | | | | | | 2:15 | | | 2:15 | 6:30 | | 11:00 | | UC591 | RA002317960019300 | 18XR0680A5 | Elephant Butte 115kV Electrical Equipment Replacement |
| 1.2 | 010 | | | | | | 3:30 | 8:00 | 7:00 | 4:30 | 1:30 | | 24:30 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 1.3 | 010 | | | | | | | | | | | | 00:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.4 | 010 | | | | | | 0:30 | | 1:00 | 0:15 | | | 01:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.5 | 010 | | | | | | | | | 1:00 | | | 01:00 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfoot Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 1.6 | 030 | | | | | | 1:45 | | | | | | 01:45 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

## Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun May | Mon May | Tue May | Wed May | Thu May | Fri May | Sat May | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|---------|---------|---------|---------|---------|---------|---------|--------|----|-----------|-----------------|------|-------------|
| 2.1 | 010 | | | | | | | | 1:00 | | | | 01:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.2 | 010 | | | | | | | 0:30 | | | | | 00:30 | | UC591 | RA002317960019300 | 18XR0680A5 | Elephant Butte 115kV Electrical Equipment Replacement |
| 2.3 | 010 | | | | | | | 7:00 | 2:00 | | | | 09:00 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 2.4 | 010 | | | | | | | 0:30 | 5:00 | 6:00 | 8:00 | | 19:30 | | BCSRM | RP0003A1390019300 | XXXR0680U5 | Black Canyon Switchyard, Modifications and Safety Upgrades - Re-Design |
| 2.5 | 030 | | | | | | 8:00 | | | 2:00 | | | 10:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

**Official Timesheet for HAMANN, DANIEL W**

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201811                    Pay Period Beginning Date: 04/29/2018              Pay Period Ending Date: 05/12/2018

Cost Center: RR85843000        Department: IN            Bureau: 07              Suburea: 08              Location Code: DO1

|  | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |  |
|---|---|---|---|---|---|---|---|---|---|
| **Pay Period Totals:** | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |  |

| **Timekeeper Messages to Payroll** |
|---|
|  |

| **Pay Period Comments** |
|---|
|  |

| **Overtime Justification** |
|---|
|  |

| **Certified By** | **Date Certified** |
|---|---|
| HAMANN, DANIEL W | 05/24/2018 |

| **Approved By** | **Date Approved** |
|---|---|
| BOGGESS, JAY S. | 05/10/2018 |

**Official Timesheet for HAMANN, DANIEL W**

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201812     Pay Period Beginning Date: 05/13/2018     Pay Period Ending Date: 05/26/2018

Cost Center: RR85843000     Department: IN     Bureau: 07     Suburbau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun May | Mon May | Tue May | Wed May | Thu May | Fri May | Sat May | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|---------|---------|---------|---------|---------|---------|---------|--------|----|-----------|-----------------|------|-------------|
| 1.1 | 010 | | | | | | | 8:00 | 8:00 | 8:00 | 7:00 | | 31:00 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 1.2 | 010 | | | | | | 8:00 | | | | 0:45 | | 08:45 | | BCSRM | RP0003A1390019300 | XXXR0680U5 | Black Canyon Switchyard, Modifications and Safety Upgrades - Re-Design |
| 1.3 | 110 | | | | | | | 1:30 | | 0:30 | | | 02:00 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 1.4 | 010 | | | | | | | | | | 0:15 | | 00:15 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| | Totals: | | | | | 0:00 | 8:00 | 9:30 | 8:00 | 8:30 | 8:00 | 0:00 | 42:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun May | Mon May | Tue May | Wed May | Thu May | Fri May | Sat May | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|---------|---------|---------|---------|---------|---------|---------|--------|----|-----------|-----------------|------|-------------|
| 2.1 | 030 | | | | | | 1:00 | | | 2:00 | 2:00 | | 05:00 | | | | | |
| 2.2 | 010 | | | | | | 5:00 | 7:00 | 7:00 | 4:00 | 1:00 | | 24:00 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 2.3 | 010 | | | | | | 2:00 | 1:00 | | 1:00 | 1:00 | | 05:00 | | BCSRM | RP0003A1390019300 | XXXR0680U5 | Black Canyon Switchyard, Modifications and Safety Upgrades - Re-Design |
| 2.4 | 010 | | | | | | | | | | | | 00:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.5 | 010 | | | | | | | | 1:00 | 1:00 | 1:00 | | 03:00 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 2.6 | 060 | | | | | | | | | 2:00 | | | 02:00 | | | | | |
| 2.7 | 010 | | | | | | | | | | 1:00 | | 01:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201812                    Pay Period Beginning Date: 05/13/2018                    Pay Period Ending Date: 05/26/2018

Cost Center: RR85843000          Department: IN          Bureau: 07          Subureau: 08          Location Code: DO1

|  | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| **Pay Period Totals:** | 0:00 | 16:00 | 17:30 | 16:00 | 16:30 | 16:00 | 0:00 | 82:00 |

| **Timekeeper Messages to Payroll** |
|---|
|  |

| **Pay Period Comments** |
|---|
|  |

| **Overtime Justification** |
|---|
| Tue 5/15: 1:30 to FA715 for travel time to site. Thu 5/17: 0:30 to FA715 for travel time from site. |

| **Certified By** | **Date Certified** |
|---|---|
| HAMANN, DANIEL W | 05/25/2018 |

| **Approved By** | **Date Approved** |
|---|---|
| BOGGESS, JAY S. | 05/25/2018 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201813    Pay Period Beginning Date: 05/27/2018    Pay Period Ending Date: 06/09/2018

Cost Center: RR85843000    Department: IN    Bureau: 07    Suburea: 08    Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun May | Mon May | Tue May | Wed May | Thu May | Fri Jun 01 | Sat Jun 02 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 050 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 1.2 | 020 | | | | | | | | | | 2:00 | | 02:00 | | | | | |
| 1.3 | 010 | | | | | | | 2:15 | | | 0:15 | | 02:30 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 1.4 | 010 | | | | | | | 2:15 | 1:00 | | 0:15 | | 03:30 | | BCSRM | RP0003A1390019300 | XXXR0680U5 | Black Canyon Switchyard, Modifications and Safety Upgrades - Re-Design |
| 1.5 | 010 | | | | | | | 2:30 | 4:00 | 8:00 | 0:15 | | 14:45 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 1.6 | 010 | | | | | | | 1:00 | 2:00 | | 3:15 | | 06:15 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.7 | 010 | | | | | | | 1:00 | | | 2:00 | | 03:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jun 03 | Mon Jun 04 | Tue Jun 05 | Wed Jun 06 | Thu Jun 07 | Fri Jun 08 | Sat Jun 09 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 020 | | | | | | 1:00 | | | 3:00 | | | 04:00 | | | | | |
| 2.2 | 010 | | | | | | 0:30 | 0:15 | | | | | 00:45 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 2.3 | 010 | | | | | | 5:30 | 7:15 | 4:30 | 3:00 | 4:00 | | 24:15 | | BCSRM | RP0003A1390019300 | XXXR0680U5 | Black Canyon Switchyard, Modifications and Safety Upgrades - Re-Design |
| 2.4 | 010 | | | | | | 0:30 | 0:15 | 3:00 | 2:00 | 4:00 | | 09:45 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 2.5 | 010 | | | | | | 0:30 | 0:15 | 0:30 | | | | 01:15 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201813      Pay Period Beginning Date: 05/27/2018      Pay Period Ending Date: 06/09/2018

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jun 03 | Mon Jun 04 | Tue Jun 05 | Wed Jun 06 | Thu Jun 07 | Fri Jun 08 | Sat Jun 09 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|---|
| | Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 06/07/2018 | | BOGGESS, JAY S. | 06/07/2018 |

**Official Timesheet for HAMANN, DANIEL W**

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201814     Pay Period Beginning Date: 06/10/2018     Pay Period Ending Date: 06/23/2018

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jun 10 | Mon Jun 11 | Tue Jun 12 | Wed Jun 13 | Thu Jun 14 | Fri Jun 15 | Sat Jun 16 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 231 | | | | | | 2:00 | | | | | | 02:00 | | | | | |
| 1.2 | 010 | | | | | | | 0:15 | 2:00 | 1:00 | | | 03:15 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 1.3 | 010 | | | | | | | 6:15 | 4:00 | 3:00 | | | 13:15 | | BCSRM | RP0003A1390019300 | XXXR0680U5 | Black Canyon Switchyard, Modifications and Safety Upgrades - Re-Design |
| 1.4 | 010 | | | | | | | 0:15 | 2:00 | 3:00 | | | 05:15 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 1.5 | 010 | | | | | | | 0:15 | | | | | 00:15 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.6 | 020 | | | | | | 6:00 | | | | 8:00 | | 14:00 | | | | | |
| 1.7 | 010 | | | | | | | 1:00 | | 1:00 | | | 02:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jun 17 | Mon Jun 18 | Tue Jun 19 | Wed Jun 20 | Thu Jun 21 | Fri Jun 22 | Sat Jun 23 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 020 | | | | | | 2:00 | | | | | | 02:00 | | | | | |
| 2.2 | 010 | | | | | | | 3:00 | 4:00 | 5:00 | 3:30 | | 15:30 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 2.3 | 010 | | | | | | | | | 1:00 | | | 01:00 | | BCSRM | RP0003A1390019300 | XXXR0680U5 | Black Canyon Switchyard, Modifications and Safety Upgrades - Re-Design |
| 2.4 | 010 | | | | | | | 2:30 | 4:00 | 2:00 | 4:30 | 2:30 | 15:30 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 2.5 | 010 | | | | | | | 0:30 | | | | | 00:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201814     Pay Period Beginning Date: 06/10/2018     Pay Period Ending Date: 06/23/2018

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

**Week 2**

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jun 17 | Mon Jun 18 | Tue Jun 19 | Wed Jun 20 | Thu Jun 21 | Fri Jun 22 | Sat Jun 23 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.6 | SFF | | | | | | | | | | 5:30 | | 05:30 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 04/05/2019 | | BOGGESS, JAY S. | 06/22/2018 |

## Official Timesheet for HAMANN, DANIEL W
PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201815     Pay Period Beginning Date: 06/24/2018     Pay Period Ending Date: 07/07/2018

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jun 24 | Mon Jun 25 | Tue Jun 26 | Wed Jun 27 | Thu Jun 28 | Fri Jun 29 | Sat Jun 30 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 020 | | | | | | | | 8:00 | | | | 08:00 | | | | | |
| 1.2 | 010 | | | | | | 1:15 | 3:00 | | 2:00 | 2:00 | | 08:15 | | BOTST | RX154700040024104 | 17XR0680A5 | Boca Dam Filter Material Testing and Specification Review |
| 1.3 | 010 | | | | | | 4:30 | 2:00 | | 2:00 | 2:00 | | 10:30 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 1.4 | 010 | | | | | | 1:15 | 3:00 | | 2:00 | 2:00 | | 08:15 | | BCSRM | RP0003A1390019300 | XXXR0880U5 | Black Canyon Switchyard, Modifications and Safety Upgrades - Re-Design |
| 1.5 | 010 | | | | | | | | | 2:00 | 2:00 | | 04:00 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 1.6 | 010 | | | | | | 1:00 | | | | | | 01:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K68 - LAB UNIQUE COSTS |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jul 01 | Mon Jul 02 | Tue Jul 03 | Wed Jul 04 | Thu Jul 05 | Fri Jul 06 | Sat Jul 07 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 050 | | | | | | | | 8:00 | | | | 08:00 | | | | | |
| 2.2 | 010 | | | | | | | 2:00 | | 3:00 | 2:00 | | 07:00 | | BOTST | RX154700040024104 | 17XR0680A5 | Boca Dam Filter Material Testing and Specification Review |
| 2.3 | 010 | | | | | | 2:15 | 1:00 | | 2:00 | 2:00 | | 07:15 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 2.4 | 010 | | | | | | | | | 2:00 | | | 02:00 | | BCSRM | RP0003A1390019300 | XXXR0880U5 | Black Canyon Switchyard, Modifications and Safety Upgrades - Re-Design |
| 2.5 | 010 | | | | | | 5:45 | 2:00 | | 0:30 | 2:00 | | 10:15 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201815     Pay Period Beginning Date: 06/24/2018     Pay Period Ending Date: 07/07/2018
Cost Center: RR85843000     Department: IN     Bureau: 07     Suburau: 08     Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jul 01 | Mon Jul 02 | Tue Jul 03 | Wed Jul 04 | Thu Jul 05 | Fri Jul 06 | Sat Jul 07 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.6 | 060 | | | | | | | 3:00 | | | | | 03:00 | | | | | |
| 2.7 | 010 | | | | | | | | | 2:00 | | | 02:00 | | FA608 | RR4888FAUC1704601 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 2.8 | 020 | | | | | | | | | 0:30 | | | 00:30 | | | | | |
| Totals: | | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 07/05/2018 | | BOGGESS, JAY S. | 07/05/2018 |

## Official Timesheet for HAMANN, DANIEL W
### PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only.  Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201816     Pay Period Beginning Date: 07/08/2018     Pay Period Ending Date: 07/21/2018

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jul 08 | Mon Jul 09 | Tue Jul 10 | Wed Jul 11 | Thu Jul 12 | Fri Jul 13 | Sat Jul 14 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 2:45 | 3:00 | 1:15 | 2:00 | 0:15 | | 09:15 | | FA828 | RR4888FAMP180230 1 | XXXR4524KS | Los Vaqueros Expansion |
| 1.2 | 010 | | | | | | | | 0:15 | 0:30 | | | 00:45 | | BOTST | RX154700040024104 | 17XR0680A5 | Boca Dam Filter Material Testing and Specification Review |
| 1.3 | 010 | | | | | | 3:30 | 3:00 | 1:45 | 2:45 | 7:30 | | 18:30 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 1.4 | 010 | | | | | | | | | | | | 00:00 | | BCSRM | RP0003A1390019300 | XXXR0680U5 | Black Canyon Switchyard, Modifications and Safety Upgrades - Re-Design |
| 1.5 | 010 | | | | | | | 0:30 | | 0:15 | | | 00:45 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 1.6 | 010 | | | | | | | | 0:15 | 1:45 | | | 02:00 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 1.7 | 020 | | | | | | | | 4:00 | | | | 04:00 | | | | | |
| 1.8 | 010 | | | | | | 0:45 | | 0:15 | | | | 01:00 | | CERG8 | RX00335655322B000 | 18XR0680A5 | Cle Elum Radial Gate Hoist FY18 |
| 1.9 | 010 | | | | | | 1:00 | 1:30 | 0:30 | 0:30 | 0:15 | | 03:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jul 15 | Mon Jul 16 | Tue Jul 17 | Wed Jul 18 | Thu Jul 19 | Fri Jul 20 | Sat Jul 21 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 030 | | | | | | 0:30 | | | | | | 00:30 | | | | | |
| 2.2 | 010 | | | | | | | | | | | | 00:00 | | G8XTI | RX598898311150000 | 189R5065C6 | FY18 Eng Tech Mgt Special Ing |
| 2.3 | 010 | | | | | | | 1:00 | | | | | 01:00 | | BOTST | RX154700040024104 | 17XR0680A5 | Boca Dam Filter Material Testing and Specification Review |
| 2.4 | 010 | | | | | | 6:15 | 4:45 | 4:30 | 5:00 | 4:00 | | 24:30 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201816      Pay Period Beginning Date: 07/08/2018      Pay Period Ending Date: 07/21/2018

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jul 15 | Mon Jul 16 | Tue Jul 17 | Wed Jul 18 | Thu Jul 19 | Fri Jul 20 | Sat Jul 21 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.5 | 010 | | | | | | | | | | | | 00:00 | | BCSRM | RP0003A1390019300 | XXXR0680U5 | Black Canyon Switchyard, Modifications and Safety Upgrades - Re-Design |
| 2.6 | 010 | | | | | | | 0:15 | | 2:00 | | | 02:15 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 2.7 | 010 | | | | | | 0:45 | 0:15 | | | | | 01:00 | | FA608 | RR4888FAUC170480 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 2.8 | 010 | | | | | | | 0:15 | | | | | 00:15 | | CERG8 | RX003356553228000 | 18XR0680A5 | Cle Elum Radial Gate Hoist FY18 |
| 2.9 | 010 | | | | | | 0:30 | 0:30 | 1:00 | 1:00 | 1:00 | | 04:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.10 | 010 | | | | | | | 1:00 | | | | | 01:00 | | FA828 | RR4888FAMP180230 1 | XXXR4524KS | Los Vaqueros Expansion |
| 2.11 | AFF | | | | | | | | 2:00 | | 3:00 | | 05:00 | | | | | |
| 2.12 | 010 | | | | | | | | 0:30 | | | | 00:30 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

**Official Timesheet for HAMANN, DANIEL W**

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201816

Pay Period Beginning Date: 07/08/2018

Pay Period Ending Date: 07/21/2018

Cost Center: RR85843000          Department: IN          Bureau: 07          Subureau: 08          Location Code: DO1

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 07/19/2018 | | BOGGESS, JAY S. | 07/20/2018 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201817    Pay Period Beginning Date: 07/22/2018    Pay Period Ending Date: 08/04/2018

Cost Center: RR85843000    Department: IN    Bureau: 07    Subureau: 08    Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/OCM | Sun Jul 22 | Mon Jul 23 | Tue Jul 24 | Wed Jul 25 | Thu Jul 26 | Fri Jul 27 | Sat Jul 28 | Totals | TW | Key/WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 8:00 | 8:00 | 8:00 | 4:30 | 8:00 | | 36:30 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 1.2 | 110 | | | | | 8:00 | 1:45 | 1:00 | 1:00 | | 3:00 | | 14:45 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 1.3 | 020 | | | | | | | | | 3:30 | | | 03:30 | | | | | |
| | Totals: | | | | | 8:00 | 9:45 | 9:00 | 9:00 | 8:00 | 11:00 | 0:00 | 54:45 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/OCM | Sun Jul 29 | Mon Jul 30 | Tue Jul 31 | Wed Aug | Thu Aug | Fri Aug | Sat Aug | Totals | TW | Key/WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 0:15 | | | | | | 00:15 | | BOTST | RX154700040024104 | 17XR0680A5 | Boca Dam Filter Material Testing and Specification Review |
| 2.2 | 010 | | | | | | 0:15 | 1:00 | 2:00 | 0:30 | 4:00 | | 07:45 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 2.3 | 010 | | | | | | 3:00 | 4:00 | 5:30 | 4:15 | 4:00 | | 20:45 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 2.4 | 010 | | | | | | 0:15 | | | | | | 00:15 | | FA608 | RR4888FAUC170480 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 2.5 | 010 | | | | | | 0:15 | | | 2:15 | | | 02:30 | | CERG8 | RX003356553228000 | 18XR0680A5 | Cle Elum Radial Gate Hoist FY18 |
| 2.6 | 010 | | | | | | 1:00 | 3:00 | 0:30 | | | | 04:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.7 | SFF | | | | | | 3:00 | | | | | | 03:00 | | | | | |
| 2.8 | 010 | | | | | | | | | 1:00 | | | 01:00 | | UC591 | RA002317960019300 | 18XR0680A5 | Elephant Butte 115kV Electrical Equipment Replacement |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201817          Pay Period Beginning Date: 07/22/2018          Pay Period Ending Date: 08/04/2018

Cost Center: RR85843000          Department: IN          Bureau: 07          Subureau: 08          Location Code: DO1

|  | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |  |
|---|---|---|---|---|---|---|---|---|---|
| **Pay Period Totals:** | 8:00 | 17:45 | 17:00 | 17:00 | 16:00 | 19:00 | 0:00 | 94:45 |  |

| Timekeeper Messages to Payroll |
|---|
|  |

| Pay Period Comments |
|---|
|  |

| Overtime Justification |
|---|
| Overtime if for travel time and extended meetings on site. |

| Certified By | Date Certified |
|---|---|
| HAMANN, DANIEL W | 08/02/2018 |

| Approved By | Date Approved |
|---|---|
| BOGGESS, JAY S. | 08/02/2018 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201818      Pay Period Beginning Date: 08/05/2018      Pay Period Ending Date: 08/18/2018

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Aug | Mon Aug | Tue Aug | Wed Aug | Thu Aug | Fri Aug | Sat Aug | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 1:00 | | 2:00 | | | | 03:00 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 1.2 | 010 | | | | | | 6:00 | 8:00 | 6:00 | 7:00 | 8:00 | | 35:00 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 1.3 | 010 | | | | | | 1:00 | | | 1:00 | | | 02:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Aug | Mon Aug | Tue Aug | Wed Aug | Thu Aug | Fri Aug | Sat Aug | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 020 | | | | | | | 2:15 | 4:00 | | | | 06:15 | | | | | |
| 2.2 | 010 | | | | | | 1:00 | | 0:15 | 0:15 | 1:00 | | 02:30 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 2.3 | 010 | | | | | | 3:00 | | 1:45 | 4:00 | 2:00 | | 10:45 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 2.4 | 010 | | | | | | 1:00 | 2:00 | 1:15 | | 4:00 | | 08:15 | | FA608 | RR4888FAUC170460 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 2.5 | 010 | | | | | | | | | 1:00 | | | 01:00 | | CERG8 | RX003356553228000 | 18XR0680A5 | Cle Elum Radial Gate Holst FY18 |
| 2.6 | 010 | | | | | | 1:00 | 1:15 | 0:30 | 1:00 | | | 03:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.7 | 010 | | | | | | 1:00 | 2:30 | 0:15 | 2:00 | | | 05:45 | | BCSRM | RP0003A1390019300 | XXXR0680U5 | Black Canyon Switchyard, Modifications and Safety Upgrades - Re-Design |
| 2.8 | 010 | | | | | | 1:00 | | | 0:45 | | | 01:45 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201818      Pay Period Beginning Date: 08/05/2018      Pay Period Ending Date: 08/18/2018

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

|  | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
|  |

| Pay Period Comments |
|---|
|  |

| Overtime Justification |
|---|
|  |

| Certified By | Date Certified |
|---|---|
| HAMANN, DANIEL W | 08/16/2018 |

| Approved By | Date Approved |
|---|---|
| BOGGESS, JAY S. | 08/17/2018 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201819    Pay Period Beginning Date: 08/19/2018    Pay Period Ending Date: 09/01/2018

Cost Center: RR85843000    Department: IN    Bureau: 07    Subureau: 08    Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Aug | Mon Aug | Tue Aug | Wed Aug | Thu Aug | Fri Aug | Sat Aug | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | | 0:15 | | | | | 00:15 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 1.2 | 010 | | | | | | 7:00 | 6:30 | 7:45 | 7:00 | 8:00 | | 36:15 | | GP914 | RX3128007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 1.3 | 010 | | | | | | | 0:15 | 0:15 | | | | 00:30 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 1.4 | 010 | | | | | | 1:00 | 0:45 | | 1:00 | | | 02:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.5 | 010 | | | | | | | 0:15 | | | | | 00:15 | | BCSRM | RP0003A1390019300 | XXXR0680U5 | Black Canyon Switchyard, Modifications and Safety Upgrades - Re-Design |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Aug | Mon Aug | Tue Aug | Wed Aug | Thu Aug | Fri Aug | Sat Sep 01 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | SFF | | | | | | 2:15 | 0:45 | | | | | 03:00 | | | | | |
| 2.2 | 010 | | | | | | 5:30 | 6:45 | 8:00 | 8:00 | 6:00 | | 34:15 | | GP914 | RX3128007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 2.3 | 010 | | | | | | | 0:15 | 0:30 | | | | 00:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.4 | 060 | | | | | | | | | | 2:00 | | 02:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201819      Pay Period Beginning Date: 08/19/2018      Pay Period Ending Date: 09/01/2018

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

| Timekeeper Messages to Payroll |
| --- |
| |

| Pay Period Comments |
| --- |
| |

| Overtime Justification |
| --- |
| |

| Certified By | Date Certified | | Approved By | Date Approved |
| --- | --- | --- | --- | --- |
| HAMANN, DANIEL W | 04/05/2019 | | HUMMEL, TERRY L | 08/31/2018 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only.  Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201820     Pay Period Beginning Date: 09/02/2018     Pay Period Ending Date: 09/15/2018

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Sep 02 | Mon Sep 03 | Tue Sep 04 | Wed Sep 05 | Thu Sep 06 | Fri Sep 07 | Sat Sep 08 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 050 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 1.2 | 010 | | | | | | | 7:00 | 6:00 | 7:00 | 2:00 | | 22:00 | | GP959 | RX152320002510001 | 18XR0680G1 | Blackfeet Renewable Energy Opportunity Expanded Value Planning Study |
| 1.3 | 010 | | | | | | | | 1:00 | | 4:00 | | 05:00 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 1.4 | 010 | | | | | | | 1:00 | 1:00 | 1:00 | 2:00 | | 05:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Sep 09 | Mon Sep 10 | Tue Sep 11 | Wed Sep 12 | Thu Sep 13 | Fri Sep 14 | Sat Sep 15 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 3:00 | | | 3:00 | 4:00 | | 10:00 | | GP959 | RX152320002510001 | 18XR0680G1 | Blackfeet Renewable Energy Opportunity Expanded Value Planning Study |
| 2.2 | 010 | | | | | | 1:00 | | | | 3:00 | | 04:00 | | BCSRM | RP0003A1390019300 | XXXR0680U5 | Black Canyon Switchyard, Modifications and Safety Upgrades - Re-Design |
| 2.3 | 010 | | | | | | | 2:00 | 2:00 | | 5:00 | 1:00 | | 10:00 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 2.4 | 010 | | | | | | | 2:00 | | | | | 02:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.5 | 030 | | | | | | | | 6:00 | 8:00 | | | 14:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201820        Pay Period Beginning Date: 09/02/2018        Pay Period Ending Date: 09/15/2018

Cost Center: RR85843000       Department: IN       Bureau: 07       Subureau: 08       Location Code: DO1

| Timekeeper Messages to Payroll |
| --- |
| |

| Pay Period Comments |
| --- |
| |

| Overtime Justification |
| --- |
| |

| Certified By | Date Certified | | Approved By | Date Approved |
| --- | --- | --- | --- | --- |
| HAMANN, DANIEL W | 04/05/2019 | | MCSTRAW, WILLIAM D | 09/13/2018 |

**Official Timesheet for HAMANN, DANIEL W**

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201821        Pay Period Beginning Date: 09/16/2018        Pay Period Ending Date: 09/29/2018

Cost Center: RR85843000        Department: IN        Bureau: 07        Subureau: 08        Location Code: DO1

**Week 1**

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Sep 16 | Mon Sep 17 | Tue Sep 18 | Wed Sep 19 | Thu Sep 20 | Fri Sep 21 | Sat Sep 22 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 1:00 | 1:00 | 1:00 | 3:00 | 1:00 | | 07:00 | | GP959 | RX152320002510001 | 18XR0680G1 | Blackfeet Renewable Energy Opportunity Expanded Value Planning Study |
| 1.2 | 010 | | | | | | 6:00 | 6:00 | 6:00 | 5:00 | 6:00 | | 29:00 | | BCSRM | RP0003A1390019300 | XXXR0680U5 | Black Canyon Switchyard, Modifications and Safety Upgrades - Re-Design |
| 1.3 | 010 | | | | | | 1:00 | 1:00 | 1:00 | | | | 03:00 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 1.4 | 010 | | | | | | | | | | 1:00 | | 01:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

**Week 2**

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Sep 23 | Mon Sep 24 | Tue Sep 25 | Wed Sep 26 | Thu Sep 27 | Fri Sep 28 | Sat Sep 29 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 1:00 | 1:00 | 1:00 | 3:00 | 1:00 | | 07:00 | | GP959 | RX152320002510001 | 18XR0680G1 | Blackfeet Renewable Energy Opportunity Expanded Value Planning Study |
| 2.2 | 010 | | | | | | 7:00 | 7:00 | 7:00 | 5:00 | 6:00 | | 32:00 | | BCSRM | RP0003A1390019300 | XXXR0680U5 | Black Canyon Switchyard, Modifications and Safety Upgrades - Re-Design |
| 2.3 | 010 | | | | | | | | | | 1:00 | | 01:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201821                     Pay Period Beginning Date: 09/16/2018                     Pay Period Ending Date: 09/29/2018

Cost Center: RR85843000          Department: IN          Bureau: 07          Subureau: 08          Location Code: DO1

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 04/05/2019 | | BOGGESS, JAY S. | 09/18/2018 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201822
Pay Period Beginning Date: 09/30/2018
Pay Period Ending Date: 10/13/2018

Cost Center: RR85843000
Department: IN
Bureau: 07
Suburau: 08
Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Sep 30 | Mon Oct 01 | Tue Oct 02 | Wed Oct 03 | Thu Oct 04 | Fri Oct 05 | Sat Oct 06 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 4:30 | 3:45 | 1:30 | 3:45 | | | 13:30 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 1.2 | 010 | | | | | | 0:30 | 0:45 | 0:15 | 0:15 | 3:00 | | 04:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.3 | 010 | | | | | | 0:45 | | 6:15 | 4:00 | 2:30 | | 13:30 | | FA715 | RR4888FAMP180150 1 | XXXR4524KK | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 1.4 | 010 | | | | | | | | | | 0:30 | | 00:30 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.5 | 020 | | | | | | 0:15 | 3:30 | | | | | 03:45 | | | | | |
| 1.6 | 030 | | | | | | 2:00 | | | | 2:00 | | 04:00 | | | | | |
| Totals: | | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Oct 07 | Mon Oct 08 | Tue Oct 09 | Wed Oct 10 | Thu Oct 11 | Fri Oct 12 | Sat Oct 13 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 050 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 2.2 | 010 | | | | | | | 0:45 | 0:45 | 0:30 | | | 02:00 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 2.3 | 010 | | | | | | | 2:00 | 0:15 | 2:00 | | | 04:15 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.4 | 010 | | | | | | | 4:30 | 1:30 | 2:45 | 1:00 | | 09:45 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 2.5 | 010 | | | | | | | 1:30 | 5:30 | | 0:30 | | 07:30 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.6 | 020 | | | | | | | | | 1:00 | 1:00 | | 02:00 | | | | | |
| 2.7 | 010 | | | | | | | | | 1:30 | 5:00 | | 06:30 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201822     Pay Period Beginning Date: 09/30/2018     Pay Period Ending Date: 10/13/2018

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 2

| Row | Pay Code | S C H | E H | S R | OC/ OCM | Sun Oct 07 | Mon Oct 08 | Tue Oct 09 | Wed Oct 10 | Thu Oct 11 | Fri Oct 12 | Sat Oct 13 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 10/12/2018 | | BOGGESS, JAY S. | 10/12/2018 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201823  Pay Period Beginning Date: 10/14/2018  Pay Period Ending Date: 10/27/2018

Cost Center: RR85843000  Department: IN  Bureau: 07  Subureau: 08  Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Oct 14 | Mon Oct 15 | Tue Oct 16 | Wed Oct 17 | Thu Oct 18 | Fri Oct 19 | Sat Oct 20 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|------|---|---|---|------|------|------|------|------|------|------|------|-------|----|------|------|------|------|
| 1.1 | 010 | | | | | | | | 1:00 | 3:00 | 1:00 | | 05:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.2 | 010 | | | | | | 7:00 | 5:00 | | 3:30 | 5:00 | | 20:30 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 1.3 | 010 | | | | | | 1:00 | 3:00 | 6:00 | | 1:00 | | 11:00 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 1.4 | 020 | | | | | | | | 1:00 | 1:30 | 1:00 | | 03:30 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Oct 21 | Mon Oct 22 | Tue Oct 23 | Wed Oct 24 | Thu Oct 25 | Fri Oct 26 | Sat Oct 27 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|------|---|---|---|------|------|------|------|------|------|------|------|-------|----|------|------|------|------|
| 2.1 | 010 | | | | | | 6:00 | 8:00 | | 1:00 | 1:00 | | 16:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.2 | 010 | | | | | | | | 5:15 | 3:00 | 3:30 | | 11:45 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 2.3 | 010 | | | | | | | | 2:00 | | | | 02:00 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 2.4 | 020 | | | | | | 2:00 | | 0:45 | 2:00 | | | 04:45 | | | | | |
| 2.5 | 010 | | | | | | | | 2:00 | 3:30 | | | 05:30 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|-----|-----|-----|-----|-----|-----|-----|-------|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201823　　　Pay Period Beginning Date: 10/14/2018　　　Pay Period Ending Date: 10/27/2018

Cost Center: RR85843000　　Department: IN　　Bureau: 07　　Subureau: 08　　Location Code: DO1

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 04/05/2019 | | BOGGESS, JAY S. | 10/26/2018 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201824     Pay Period Beginning Date: 10/28/2018     Pay Period Ending Date: 11/10/2018

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

**Week 1**

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Oct 28 | Mon Oct 29 | Tue Oct 30 | Wed Oct 31 | Thu Nov | Fri Nov | Sat Nov | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 3:00 | 1:00 | 2:00 | 1:00 | | | 07:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.2 | 010 | | | | | | 3:00 | 7:00 | 2:00 | 4:00 | 6:00 | | 22:00 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 1.3 | 010 | | | | | | | | | 1:00 | | | 01:00 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 1.4 | 020 | | | | | | 1:00 | | 1:00 | | 1:00 | | 03:00 | | | | | |
| 1.5 | 010 | | | | | | 1:00 | | | 3:00 | | | 04:00 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 1.6 | 030 | | | | | | | | 3:00 | | | | 03:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

**Week 2**

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Nov | Mon Nov | Tue Nov | Wed Nov | Thu Nov | Fri Nov | Sat Nov | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 0:30 | | | | | | 00:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.2 | 010 | | | | | | 7:00 | 7:00 | 2:00 | | | | 16:00 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 2.3 | 010 | | | | | | | | 1:00 | | | | 01:00 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 2.4 | 020 | | | | | | 1:00 | | | 8:00 | 8:00 | | 17:00 | | | | | |
| 2.5 | 010 | | | | | | | 0:30 | 5:00 | | | | 05:30 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201824                                  Pay Period Beginning Date: 10/28/2018                    Pay Period Ending Date: 11/10/2018

Cost Center: RR85843000            Department: IN                Bureau: 07                Subureau: 08                Location Code: DO1

|  | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| **Pay Period Totals:** | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| **Timekeeper Messages to Payroll** |
|---|
|  |

| **Pay Period Comments** |
|---|
|  |

| **Overtime Justification** |
|---|
|  |

| **Certified By** | **Date Certified** | | **Approved By** | **Date Approved** |
|---|---|---|---|---|
| HAMANN, DANIEL W | 11/07/2018 | | BOGGESS, JAY S. | 11/08/2018 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201825

Pay Period Beginning Date: 11/11/2018

Pay Period Ending Date: 11/24/2018

Cost Center: RR85843000          Department: IN          Bureau: 07          Subureau: 08          Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Nov | Mon Nov | Tue Nov | Wed Nov | Thu Nov | Fri Nov | Sat Nov | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|---------|---------|---------|---------|---------|---------|---------|--------|-----|-----------|-----------------|------|-------------|
| 1.1 | 050 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 1.2 | SFF | | | | | | | 8:00 | 8:00 | | | | 16:00 | | | | | |
| 1.3 | 010 | | | | | | | | | 1:00 | 1:00 | | 02:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.4 | 010 | | | | | | | | | 3:30 | 3:30 | | 07:00 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 1.5 | 010 | | | | | | | | | 3:30 | 3:30 | | 07:00 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Nov | Mon Nov | Tue Nov | Wed Nov | Thu Nov | Fri Nov | Sat Nov | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|---------|---------|---------|---------|---------|---------|---------|--------|-----|-----------|-----------------|------|-------------|
| 2.1 | 050 | | | | | | | | | 8:00 | | | 08:00 | | | | | |
| 2.2 | 010 | | | | | | 8:00 | 8:00 | 5:00 | | 8:00 | | 29:00 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 2.3 | 010 | | | | | | | | | | | | 00:00 | | FA715 | RR4888FAMP180150 1 | XXXR4524KS | Shasta Dam - Crest Road Vehicle Barrier Replacement |
| 2.4 | 060 | | | | | | | | 3:00 | | | | 03:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|--|-----|-----|-----|-----|-----|-----|-----|-------|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|--------------------------------|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201825          Pay Period Beginning Date: 11/11/2018          Pay Period Ending Date: 11/24/2018

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 04/05/2019 | | BOGGESS, JAY S. | 11/23/2018 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201826     Pay Period Beginning Date: 11/25/2018     Pay Period Ending Date: 12/08/2018

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Nov | Mon Nov | Tue Nov | Wed Nov | Thu Nov | Fri Nov | Sat Dec 01 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | | 40:00 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Dec 02 | Mon Dec 03 | Tue Dec 04 | Wed Dec 05 | Thu Dec 06 | Fri Dec 07 | Sat Dec 08 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 050 | | | | | | | | 8:00 | | | | 08:00 | | | | | |
| 2.2 | 010 | | | | | | 8:00 | 8:00 | | 8:00 | 8:00 | | 32:00 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 18:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 04/05/2019 | | BOGGESS, JAY S. | 12/07/2018 |

## Corrected Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201827     Pay Period Beginning Date: 12/09/2018     Pay Period Ending Date: 12/22/2018

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Dec 09 | Mon Dec 10 | Tue Dec 11 | Wed Dec 12 | Thu Dec 13 | Fri Dec 14 | Sat Dec 15 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | | 40:00 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| | | Totals: | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Dec 16 | Mon Dec 17 | Tue Dec 18 | Wed Dec 19 | Thu Dec 20 | Fri Dec 21 | Sat Dec 22 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 7:30 | 7:00 | 6:30 | 7:30 | 7:00 | | 35:30 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 2.2 | 010 | | | | | | 0:30 | 1:00 | | 0:30 | 1:00 | | 03:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.3 | 020 | | | | | | | | 1:30 | | | | 01:30 | | | | | |
| | | Totals: | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

| Overtime Justification |
|---|
| |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| | | | PARSON, DIANNE B. | 02/03/2019 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only.  Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201901

Pay Period Beginning Date: 12/23/2018

Pay Period Ending Date: 01/05/2019

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Dec 23 | Mon Dec 24 | Tue Dec 25 | Wed Dec 26 | Thu Dec 27 | Fri Dec 28 | Sat Dec 29 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 050 | | | | | | 8:00 | 8:00 | | | | | 16:00 | | | | | |
| 1.2 | 010 | | | | | | | | 6:00 | 6:00 | 6:00 | | 18:00 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 1.3 | 010 | | | | | | | | 1:00 | 1:00 | 1:00 | | 03:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.4 | 010 | | | | | | | | 1:00 | 1:00 | 1:00 | | 03:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Dec 30 | Mon Dec 31 | Tue Jan 01 | Wed Jan 02 | Thu Jan 03 | Fri Jan 04 | Sat Jan 05 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 050 | | | | | | | 8:00 | | | | | 08:00 | | | | | |
| 2.2 | 060 | | | | | | 2:00 | | | | | | 02:00 | | | | | |
| 2.3 | 010 | | | | | | 4:00 | | 6:00 | 6:00 | 6:00 | | 22:00 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 2.4 | 010 | | | | | | 1:00 | | 1:00 | 1:00 | 1:00 | | 04:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.5 | 010 | | | | | | 1:00 | | 1:00 | 1:00 | 1:00 | | 04:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201901          Pay Period Beginning Date: 12/23/2018          Pay Period Ending Date: 01/05/2019

Cost Center: RR85843000        Department: IN        Bureau: 07        Subureau: 08        Location Code: DO1

| Overtime Justification |
|---|
| |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 01/03/2019 | | ZEIGER, JAMES RICHARD | 01/04/2019 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201902     Pay Period Beginning Date: 01/06/2019     Pay Period Ending Date: 01/19/2019

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jan 06 | Mon Jan 07 | Tue Jan 08 | Wed Jan 09 | Thu Jan 10 | Fri Jan 11 | Sat Jan 12 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 4:15 | 3:45 | 6:15 | 6:15 | 6:45 | | 27:15 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 1.2 | 010 | | | | | | 1:00 | 0:15 | 0:15 | 0:15 | 0:15 | | 02:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.3 | 010 | | | | | | 0:45 | 2:00 | 1:00 | 1:00 | | | 04:45 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.4 | 010 | | | | | | 1:00 | | 0:30 | | 1:00 | | 02:30 | | G9XTI | RX596898311150000 | 190R5065C6 | BOR Workgroups and Inquiries - FY19 |
| 1.5 | 010 | | | | | | 1:00 | 2:00 | | 0:30 | | | 03:30 | | BOTST | RX154700040024104 | 17XR0680A5 | Boca Dam Filter Material Testing and Specification Review |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jan 13 | Mon Jan 14 | Tue Jan 15 | Wed Jan 16 | Thu Jan 17 | Fri Jan 18 | Sat Jan 19 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 2:30 | 2:00 | 3:00 | 3:45 | 7:00 | | 18:15 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 2.2 | 010 | | | | | | 0:45 | | 0:15 | 0:15 | | | 01:15 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.3 | 010 | | | | | | | 1:00 | 4:45 | 4:00 | 1:00 | | 10:45 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.4 | 010 | | | | | | 4:45 | | | | | | 04:45 | | G9XTI | RX596898311150000 | 190R5065C6 | BOR Workgroups and Inquiries - FY19 |
| 2.5 | 010 | | | | | | | 5:00 | | | | | 05:00 | | BOTST | RX154700040024104 | 17XR0680A5 | Boca Dam Filter Material Testing and Specification Review |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201902 | Pay Period Beginning Date: 01/06/2019 | Pay Period Ending Date: 01/19/2019

Cost Center: RR85843000 | Department: IN | Bureau: 07 | Subureau: 08 | Location Code: DO1

| Pay Period Comments |
|---|
| G9XTI charges are for development of change order. |

| Overtime Justification |
|---|
|  |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 01/15/2019 | | BOGGESS, JAY S. | 01/16/2019 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201903     Pay Period Beginning Date: 01/20/2019     Pay Period Ending Date: 02/02/2019

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jan 20 | Mon Jan 21 | Tue Jan 22 | Wed Jan 23 | Thu Jan 24 | Fri Jan 25 | Sat Jan 26 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 050 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 1.2 | 010 | | | | | | | 5:00 | 3:00 | 5:00 | 7:00 | | 20:00 | | FA608 | RR4888FAUC1704601 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 1.3 | 010 | | | | | | | 1:00 | 2:00 | 1:00 | | | 04:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.4 | 010 | | | | | | | | | 1:00 | | | 01:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.5 | 010 | | | | | | | 2:00 | | 1:00 | 1:00 | | 04:00 | | BOTST | RX154700040024104 | 17XR0680A5 | Boca Dam Filter Material Testing and Specification Review |
| 1.6 | 010 | | | | | | | | 3:00 | | | | 03:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jan 27 | Mon Jan 28 | Tue Jan 29 | Wed Jan 30 | Thu Jan 31 | Fri Feb 01 | Sat Feb 02 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 7:00 | 6:00 | 6:30 | 5:00 | 5:00 | | 29:30 | | FA608 | RR4888FAUC1704601 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 2.2 | 010 | | | | | | 0:30 | | | 1:00 | 1:00 | | 02:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.3 | 010 | | | | | | 0:30 | 2:00 | 0:30 | 1:00 | 1:00 | | 05:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.4 | 010 | | | | | | | | | 1:00 | 1:00 | | 02:00 | | BOTST | RX154700040024104 | 17XR0680A5 | Boca Dam Filter Material Testing and Specification Review |
| 2.5 | 030 | | | | | | | | 1:00 | | | | 01:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201903     Pay Period Beginning Date: 01/20/2019     Pay Period Ending Date: 02/02/2019

Cost Center: RR85843000    Department: IN    Bureau: 07    Suburau: 08    Location Code: DO1

| Timekeeper Messages to Payroll |
| --- |
|  |

| Pay Period Comments |
| --- |
|  |

| Overtime Justification |
| --- |
|  |

| Certified By | Date Certified | | Approved By | Date Approved |
| --- | --- | --- | --- | --- |
| HAMANN, DANIEL W | 01/30/2019 | | BOGGESS, JAY S. | 01/31/2019 |

## Corrected Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201904     Pay Period Beginning Date: 02/03/2019     Pay Period Ending Date: 02/16/2019

Cost Center: RR85843000     Department: IN     Bureau: 07     Suburbau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Feb 03 | Mon Feb 04 | Tue Feb 05 | Wed Feb 06 | Thu Feb 07 | Fri Feb 08 | Sat Feb 09 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 8:00 | 5:00 | 7:00 | 6:00 | 2:00 | | 28:00 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 1.2 | 010 | | | | | | | | | | 4:00 | | 04:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.3 | 010 | | | | | | | | | 1:00 | 2:00 | | 03:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.4 | 010 | | | | | | | | 1:00 | 1:00 | 1:00 | | 03:00 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 1.5 | 020 | | | | | | | 2:00 | | | | | 02:00 | | | | | |
| | | Totals: | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Feb 10 | Mon Feb 11 | Tue Feb 12 | Wed Feb 13 | Thu Feb 14 | Fri Feb 15 | Sat Feb 16 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | | 2:00 | 2:30 | 4:00 | | | 08:30 | | G9XTI | RX596898311150000 | 190R5065C6 | BOR Workgroups and Inquiries - FY19 |
| 2.2 | 010 | | | | | | 7:00 | 4:00 | 3:00 | 4:00 | 1:45 | | 19:45 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 2.3 | 010 | | | | | | | 0:30 | 2:00 | 1:30 | | 4:00 | | 08:00 | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.4 | 010 | | | | | | | | | 1:00 | 0:30 | | 01:30 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.5 | 010 | | | | | | | | | | | | 00:00 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 2.6 | 020 | | | | | | 0:30 | | | | 1:45 | | 02:15 | | | | | |
| | | Totals: | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

## Corrected Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201904　　　　Pay Period Beginning Date: 02/03/2019　　　　Pay Period Ending Date: 02/16/2019
Cost Center: RR85843000　　　Department: IN　　　Bureau: 07　　　Suburau: 08　　　Location Code: DO1

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| Tue(2/12)-2:00 charged to G9XTI was for TBE development on Leavenworth Natl Fish Hatchery Intake.<br>Wed(2/13)-2:30 to LNFHI.<br>Thu(2/14)-4:00 to LNFHI. |

| Overtime Justification |
|---|
| |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| | | | PARSON, DIANNE B. | 03/01/2019 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201905     Pay Period Beginning Date: 02/17/2019     Pay Period Ending Date: 03/02/2019

Cost Center: RR85843000     Department: IN     Bureau: 07     Suburea: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Feb 17 | Mon Feb 18 | Tue Feb 19 | Wed Feb 20 | Thu Feb 21 | Fri Feb 22 | Sat Feb 23 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 050 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 1.2 | 010 | | | | | | | 7:45 | 7:45 | 1:15 | | | 16:45 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 1.3 | 010 | | | | | | | 0:15 | 0:15 | 6:15 | 5:00 | | 11:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.4 | 010 | | | | | | | | | 0:30 | 3:00 | | 03:30 | | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Feb 24 | Mon Feb 25 | Tue Feb 26 | Wed Feb 27 | Thu Feb 28 | Fri Mar | Sat Mar | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 020 | | | | | | 4:00 | | | | 8:00 | | 12:00 | | | | | |
| 2.2 | 010 | | | | | | 1:00 | | 0:30 | | | | 01:30 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.3 | 010 | | | | | | 1:00 | 2:45 | 0:30 | 1:00 | | | 05:15 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.4 | 010 | | | | | | 2:00 | 5:15 | 7:00 | | | | 14:15 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 2.5 | 010 | | | | | | | | | 7:00 | | | 07:00 | | FA810 | RR4888FAMP180200 006 | XXXR4524KS | Shasta Dam Raise - FD |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

# Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only.  Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201905     Pay Period Beginning Date: 02/17/2019     Pay Period Ending Date: 03/02/2019

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

| Pay Period Comments |
| --- |
| WCLUC: ETAS, Workload planning, FA608 Budget<br>WCCAP: Revit, training enrollment. |

| Overtime Justification |
| --- |
|  |

| Certified By | Date Certified | | Approved By | Date Approved |
| --- | --- | --- | --- | --- |
| HAMANN, DANIEL W | 02/27/2019 | | BOGGESS, JAY S. | 03/01/2019 |

## Corrected Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201906     Pay Period Beginning Date: 03/03/2019     Pay Period Ending Date: 03/16/2019

Cost Center: RR85843000    Department: IN    Bureau: 07    Subureau: 08    Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/OCM | Sun Mar | Mon Mar | Tue Mar | Wed Mar | Thu Mar | Fri Mar | Sat Mar | Totals | TW | Key/WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 020 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 1.2 | 010 | | | | | | | 2:00 | 3:00 | 1:00 | 2:00 | | 08:00 | | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| 1.3 | 010 | | | | | | | 1:00 | 2:30 | 6:15 | 4:00 | | 13:45 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 1.4 | 010 | | | | | | | | 3:45 | 1:00 | 1:00 | | 05:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.5 | 010 | | | | | | | | 1:15 | | 0:45 | | 02:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.6 | 030 | | | | | | | | 1:30 | | | | 01:30 | | | | | |
| 1.7 | 110 | | | | | | | | | 1:45 | | | 01:45 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 1.8 | 010 | | | | | | | | | | 1:00 | | 01:00 | | LNFHW | RX522256533460000 | 19XR0680A5 | Leavenworth National Fish Hatchery Water Supply Project Seed Funding |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 9:45 | 8:00 | 0:00 | 41:45 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/OCM | Sun Mar | Mon Mar | Tue Mar | Wed Mar | Thu Mar | Fri Mar | Sat Mar | Totals | TW | Key/WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 7:30 | 8:00 | 8:00 | 8:00 | 4:30 | | 36:00 | | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| 2.2 | 010 | | | | | | | | | | 1:30 | | 01:30 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 2.3 | 010 | | | | | | 0:30 | | | | | | 00:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.4 | 010 | | | | | | | | | | | | 00:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.5 | 110 | | | | | 3:30 | 1:00 | | | 4:00 | | | 08:30 | | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| 2.6 | 020 | | | | | | | | | | 2:00 | | 02:00 | | | | | |

## Corrected Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201906       Pay Period Beginning Date: 03/03/2019       Pay Period Ending Date: 03/16/2019

Cost Center: RR85843000       Department: IN       Bureau: 07       Subureau: 08       Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Mar | Mon Mar | Tue Mar | Wed Mar | Thu Mar | Fri Mar | Sat Mar | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Totals: | | | | | | 3:30 | 9:00 | 8:00 | 8:00 | 12:00 | 8:00 | 0:00 | 48:30 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 3:30 | 17:00 | 16:00 | 16:00 | 21:45 | 16:00 | 0:00 | 90:15 |

### Timekeeper Messages to Payroll

### Pay Period Comments

WCLUC
03/05-3:45 Subgroup meeting. Computer boot problems. ETA.
03/06-1:00 SharePoint specification problem. ETAS
03/08-1:00 Route cables new cube. ETAS.
03/11-0:30 Budget Review-FA608.
WCCAP
03/05-1:15 Travel Management Improvement Seminar.
03/07-0:45 Provide guidance to peer.

### Overtime Justification

FA608
03/07-1:45 ReviewC-FA608.
BDSCS
03/10-3:30 Trip Prep-BDSCS.
03/11-1:00 Travel time-BDSCS.

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| | | | PARSON, DIANNE B. | 03/29/2019 |

**Corrected Timesheet for HAMANN, DANIEL W**

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201907     Pay Period Beginning Date: 03/17/2019     Pay Period Ending Date: 03/30/2019

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Mar | Mon Mar | Tue Mar | Wed Mar | Thu Mar | Fri Mar | Sat Mar | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 6:00 | 1:00 | 1:00 | 2:00 | | | 10:00 | | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| 1.2 | 010 | | | | | | 2:00 | 2:00 | 2:00 | 2:00 | | | 08:00 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 1.3 | 010 | | | | | | | 2:00 | 2:00 | 2:00 | | | 06:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.4 | 010 | | | | | | | 1:00 | | 2:00 | | | 03:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.5 | 020 | | | | | | | | | | 8:00 | | 08:00 | | | | | |
| 1.6 | 010 | | | | | | | 2:00 | 3:00 | | | | 05:00 | | WCHRS | RX4888TINE1320000 | XXXR4524KK | TSC HUMAN RESOURCES SERVICES |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Mar | Mon Mar | Tue Mar | Wed Mar | Thu Mar | Fri Mar | Sat Mar | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 1:30 | 2:15 | 1:00 | | 1:00 | | 05:45 | | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| 2.2 | 010 | | | | | | 3:30 | 1:45 | | 2:00 | 1:00 | | 08:15 | | FA608 | RR4888FAUC170460 1 | XXXR4524KK | Durango Pumping Plant Crest Gate Redesign |
| 2.3 | 010 | | | | | | 1:00 | 0:30 | 3:00 | 2:00 | 1:00 | | 07:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.4 | 010 | | | | | | 2:00 | 1:45 | 4:00 | 2:45 | 4:00 | | 14:30 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.5 | 010 | | | | | | | 1:45 | | 0:45 | 1:00 | | 03:30 | | WCHRS | RX4888TINE1320000 | XXXR4524KK | TSC HUMAN RESOURCES SERVICES |
| 2.6 | 020 | | | | | | | | | 0:30 | | | 00:30 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

## Corrected Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

| Pay Period: 201907 | | Pay Period Beginning Date: 03/17/2019 | | Pay Period Ending Date: 03/30/2019 |
|---|---|---|---|---|
| Cost Center: RR85843000 | Department: IN | Bureau: 07 | Subureau: 08 | Location Code: DO1 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| WCLUC Tue-3/19 2:00 Cables. Navajo. |
| WCCAP Tue-3/19 1:00 Const. Liaison. |
| WCHRS Tue-3/19 2:00 Rona Pierce. OIG |
| WCLUC Wed-3/20 2:00 ETAS, PP06 Amended |
| WCHRS Wed-3/20 3:00 Rona Pierce. OIG |
| WCLUC Thu-3/21 2:00 Citi. PP06 Amended |
| WCCAP Thu-3/21 2:00 HCEP |
| WCLUC Mon-3/25 1:00 ETAS, planning. |
| WCCAP Mon-3/25 2:00 Revit. |
| WCLUC Tue-3/26 0:30 ETAS. |
| WCCAP Tue-3/26 1:45 Revit. |
| WCHRS Tue-3/26 1:45 Performance. |
| WCLUC Wed-3/27 3:00 Durango (FA608) budget. |
| WCCAP Wed-3/27 4:00 Safety training. |
| WCLUC Thu-3/28 2:00 ETAS. Durango. |
| WCCAP Thu-3/28 2:45 Safety training. |
| WCHRS Thu-3/28 0:45 Boca. |

| Overtime Justification |
|---|
| |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| | | | PARSON, DIANNE B. | 04/25/2019 |

## Official Timesheet for HAMANN, DANIEL W
PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201908      Pay Period Beginning Date: 03/31/2019      Pay Period Ending Date: 04/13/2019
Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Mar | Mon Apr 01 | Tue Apr 02 | Wed Apr 03 | Thu Apr 04 | Fri Apr 05 | Sat Apr 06 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | | 1:00 | 1:15 | 0:30 | | | 02:45 | | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| 1.2 | 010 | | | | | | 7:00 | 6:30 | | 4:15 | 6:30 | | 24:15 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 1.3 | 010 | | | | | | | 0:30 | 0:15 | 0:45 | 0:30 | | 02:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.4 | 010 | | | | | | 1:00 | | 5:30 | | 0:45 | | 07:15 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88 - MAINTENANCE OF CAPABILITY |
| 1.5 | 030 | | | | | | | | 1:00 | 2:30 | | | 03:30 | | | | | |
| 1.6 | 010 | | | | | | | | | | 0:15 | | 00:15 | | CEGH4 | RX003369A11010000 | 19XR0680A5 | Cle Elum Gate Hoist Construction Support (4) |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Apr 07 | Mon Apr 08 | Tue Apr 09 | Wed Apr 10 | Thu Apr 11 | Fri Apr 12 | Sat Apr 13 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 020 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 2.2 | 010 | | | | | | 3:30 | | 6:00 | | 1:00 | | 10:30 | | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| 2.3 | 010 | | | | | | | | 1:00 | 8:00 | 4:00 | | 13:00 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 2.4 | 010 | | | | | | | 0:15 | 1:00 | | | | 01:15 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.5 | 010 | | | | | | | 2:15 | | | | | 02:15 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88 - MAINTENANCE OF CAPABILITY |
| 2.6 | 030 | | | | | | | 2:00 | | | 3:00 | | 05:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

# Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201908     Pay Period Beginning Date: 03/31/2019     Pay Period Ending Date: 04/13/2019

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

| Timekeeper Messages to Payroll |
| --- |
| |

| Pay Period Comments |
| --- |
| WOID Date Duration Explanation |
| WCCAP Mon-04/01 1:00 Revit. |
| WCLUC Tue-04/02 0:30 Workoad. |
| WCLUC Wed-04/03 0:15 Archiving. |
| WCCAP Wed-04/03 5:30 Defensive driving. Peer support. |
| WCLUC Thu-04/04 0:45 ETAS. JHA. |
| WCLUC Fri-04/05 0:30 Planning. |
| WCCAP Fri-04/05 0:45 RSHS standards. |
| WCLUC Mon-04/08 0:15 Planning. |
| WCCAP Mon-04/08 2:15 JHA. Peer support. |
| WCLUC Wed-04/10 1:00 Durango Budget. ETAS. |

| Overtime Justification |
| --- |
| |

| Certified By | Date Certified | | Approved By | Date Approved |
| --- | --- | --- | --- | --- |
| HAMANN, DANIEL W | 07/24/2019 | | MCSTRAW, WILLIAM D | 04/12/2019 |

## Corrected Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201909     Pay Period Beginning Date: 04/14/2019     Pay Period Ending Date: 04/27/2019

Cost Center: RR85843000     Department: IN     Bureau: 07     Suburbeau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Apr 14 | Mon Apr 15 | Tue Apr 16 | Wed Apr 17 | Thu Apr 18 | Fri Apr 19 | Sat Apr 20 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 0:45 | | 1:15 | 1:15 | 1:45 | | 05:00 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 1.2 | 010 | | | | | | | | 0:45 | 1:15 | 2:00 | | 04:00 | | FA893 | RR4888FALC1800701 | XXXR4524KS | San Xavier Reliability Recovery Project Appraisal Design Study |
| 1.3 | 010 | | | | | | 1:30 | 7:15 | 6:00 | 4:30 | 1:30 | | 20:45 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 1.4 | 010 | | | | | | 2:15 | | | 1:00 | 0:15 | | 03:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.5 | 020 | | | | | | | | | 1:00 | | | 01:00 | | | | | |
| 1.6 | 010 | | | | | | 1:15 | | | | | | 01:15 | | UC591 | RA002317960019300 | 18XR0680A5 | Elephant Butte 115kV Electrical Equipment Replacement |
| 1.7 | 010 | | | | | | 2:15 | 0:45 | | | 1:30 | | 04:30 | | F061A | RR4888FAPN1900401 | XXXR4524KS | LNFH Surface Intake and Fish Passage |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Apr 21 | Mon Apr 22 | Tue Apr 23 | Wed Apr 24 | Thu Apr 25 | Fri Apr 26 | Sat Apr 27 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 0:30 | | | | | | 00:30 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 2.2 | 010 | | | | | | 1:30 | 3:30 | | | | | 05:00 | | FA893 | RR4888FALC1800701 | XXXR4524KS | San Xavier Reliability Recovery Project Appraisal Design Study |
| 2.3 | 010 | | | | | | 1:45 | | 3:15 | 4:45 | 4:00 | | 13:45 | | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| 2.4 | 010 | | | | | | 1:45 | 2:45 | 4:45 | 3:15 | | | 12:30 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 2.5 | 010 | | | | | | | 0:15 | | | | | 00:15 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.6 | 010 | | | | | | | 1:30 | | | | | 01:30 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |

## Corrected Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201909  Pay Period Beginning Date: 04/14/2019  Pay Period Ending Date: 04/27/2019
Cost Center: RR85843000  Department: IN  Bureau: 07  Subureau: 08  Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Apr 21 | Mon Apr 22 | Tue Apr 23 | Wed Apr 24 | Thu Apr 25 | Fri Apr 26 | Sat Apr 27 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|------|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.7 | 020 | | | | | | 2:30 | | | | 4:00 | | 06:30 | | | | | |
| 2.8 | 110 | | | | | | | | 0:45 | | | | 00:45 | | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:45 | 8:00 | 8:00 | 0:00 | 40:45 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| **Pay Period Totals:** | 0:00 | 16:00 | 16:00 | 16:45 | 16:00 | 16:00 | 0:00 | 80:45 |

| Timekeeper Messages to Payroll |
|---|
| |
| |

| Pay Period Comments |
|---|
| WOID Date Duration Explanation<br>WCLUC Mon-04/15 2:15 Durango. ETAS. Subgroup.<br>G9XTI Mon-04/15 2:15 Leavenworth.<br>G9XTI Tue-04/16 0:45 Leavenworth.<br>WCLUC Thu-04/18 1:00 ETAS. WOID change.<br>WCLUC Fri-04/19 0:15 ETAS.<br>G9XTI Fri-04/19 1:30 Leavenworth.<br>WCLUC Tue-04/23 0:15 ETAS.<br>WCCAP Tue-04/23 1:30 Peer support. |

| Overtime Justification |
|---|
| WOID Date Duration Explanation<br>BDSCS Wed-04/24 0:45 Submittal review mtg. |

## Corrected Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201909　　　　　Pay Period Beginning Date: 04/14/2019　　　　　Pay Period Ending Date: 04/27/2019

Cost Center: RR85843000　　　Department: IN　　　Bureau: 07　　　Subureau: 08　　　Location Code: DO1

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| | | | PARSON, DIANNE B. | 08/21/2019 |

### Corrected Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201910     Pay Period Beginning Date: 04/28/2019     Pay Period Ending Date: 05/11/2019

Cost Center: RR85843000     Department: IN     Bureau: 07     Suburbeau: 08     Location Code: DO1

**Week 1**

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Apr 28 | Mon Apr 29 | Tue Apr 30 | Wed May | Thu May | Fri May | Sat May | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 110 | | | | | 6:00 | | | | | | | 06:00 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 1.2 | 010 | | | | | | 4:00 | | 2:00 | | | | 06:00 | | GP914 | RX31280007RFP1701 | 17XR0680A1 | Blackfeet Renewable Energy Opportunities on the St. Marys Unit Value Planning Study |
| 1.3 | 030 | | | | | | | | | 3:00 | | | 03:00 | | | | | |
| 1.4 | 010 | | | | | | | | 1:00 | 2:00 | | | 03:00 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 1.5 | 010 | | | | | | | | 0:30 | 1:00 | 0:30 | | 02:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.6 | 010 | | | | | | 4:00 | 8:00 | 5:30 | 1:00 | | | 18:30 | | G040P | RX31280007RFP1801 | 18XR0680A1 | Blackfeet REO Expanding Value Planning Study - Nation Wide |
| 1.7 | 110 | | | | | | | 1:00 | 1:30 | | | | 02:30 | | G040P | RX31280007RFP1801 | 18XR0680A1 | Blackfeet REO Expanding Value Planning Study - Nation Wide |
| 1.8 | 010 | | | | | | | | | 5:00 | 2:30 | | 07:30 | | G040P | RX31280007RFP1801 | 18XR0680A1 | Blackfeet REO Expanding Value Planning Study - Nation Wide |
| | Totals: | | | | | 6:00 | 8:00 | 9:00 | 9:30 | 8:00 | 8:00 | 0:00 | 48:30 | | | | | |

**Week 2**

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun May | Mon May | Tue May | Wed May | Thu May | Fri May | Sat May | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 7:00 | 8:00 | 8:00 | 8:00 | 8:00 | | 39:00 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |
| 2.2 | 010 | | | | | | 1:00 | | | | | | 01:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.3 | 110 | | | | | | | 0:30 | | 1:30 | | | 02:00 | | FA608 | RR4888FAUC170460 1 | XXXR4524KS | Durango Pumping Plant Crest Gate Redesign |

## Corrected Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201910     Pay Period Beginning Date: 04/28/2019     Pay Period Ending Date: 05/11/2019

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun May | Mon May | Tue May | Wed May | Thu May | Fri May | Sat May | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|---------|---------|---------|---------|---------|---------|---------|--------|----|-----------|-----------------|------|-------------|
| Totals: | | | | | | 0:00 | 8:00 | 8:30 | 8:00 | 9:30 | 8:00 | 0:00 | 42:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|--|-----|-----|-----|-----|-----|-----|-----|-------|
| Pay Period Totals: | 6:00 | 16:00 | 17:30 | 17:30 | 17:30 | 16:00 | 0:00 | 90:30 |

| Timekeeper Messages to Payroll |
|--------------------------------|
| |

| Pay Period Comments |
|---------------------|
| WOID Date Duration Explanation |
| WCLUC Wed-05/01 0:30 Email. |
| WCLUC Thu-05/02 1:00 ETAS. |
| WCLUC Fri-05/03 0:30 Planning. |
| WCLUC Mon-05/06 1:00 Revit updates. |

| Overtime Justification |
|------------------------|
| WOID Date Duration Explanation |
| GP914 Sun-04/28 6:00 Travel. |
| G040P Tue-04/30 1:00 Session II. |
| G040P Wed-05/01 1:30 Session II. |
| FA608 Tue-05/07 0:30 Deadline. |
| FA608 Tue-05/07 1:30 Deadline. |

| Certified By | Date Certified | Approved By | Date Approved |
|--------------|----------------|-------------|---------------|
| | | PARSON, DIANNE B. | 08/21/2019 |

### Corrected Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201911      Pay Period Beginning Date: 05/12/2019      Pay Period Ending Date: 05/25/2019

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

**Week 1**

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun May | Mon May | Tue May | Wed May | Thu May | Fri May | Sat May | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|------|---|---|---|-----|-----|------|------|------|------|------|-----|-------|----|------|-----------------|------|-------------|
| 1.1 | 010 | | | | | | 4:45 | 6:30 | 4:00 | | | | 15:15 | | G9XTI | RX596898311150000 | 190R5065C6 | BOR Workgroups and Inquiries - FY19 |
| 1.2 | 110 | | | | | | 0:45 | 0:45 | | | | | 01:30 | | G9XTI | RX596898311150000 | 190R5065C6 | BOR Workgroups and Inquiries - FY19 |
| 1.3 | 010 | | | | | | 0:15 | 0:30 | | | | | 00:45 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.4 | 010 | | | | | | | | 2:00 | 3:30 | 2:00 | | 07:30 | | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| 1.5 | 010 | | | | | | 3:00 | 0:45 | | 2:30 | 6:00 | | 14:15 | | FA893 | RR4888FALC1800701 | XXXR4524KS | San Xavier Reliability Recovery Project Appraisal Design Study |
| 1.6 | 010 | | | | | | | 0:15 | | | | | 00:15 | | G040P | RX31280007RFP1801 | 18XR0680A1 | Blackfeet REO Expanding Value Planning Study - Nation Wide |
| 1.7 | 020 | | | | | | | | | 2:00 | | | 02:00 | | | | | |
| | Totals: | | | | | 0:00 | 8:45 | 8:45 | 8:00 | 8:00 | 8:00 | 0:00 | 41:30 | | | | | |

**Week 2**

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun May | Mon May | Tue May | Wed May | Thu May | Fri May | Sat May | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|------|---|---|---|-----|-----|------|------|------|------|------|-----|-------|----|------|-----------------|------|-------------|
| 2.1 | 010 | | | | | | 5:15 | 2:15 | 0:30 | | | | 08:00 | | G9XTI | RX596898311150000 | 190R5065C6 | BOR Workgroups and Inquiries - FY19 |
| 2.2 | 110 | | | | | | 0:30 | | | | | | 00:30 | | G9XTI | RX596898311150000 | 190R5065C6 | BOR Workgroups and Inquiries - FY19 |
| 2.3 | 010 | | | | | | 0:15 | | | | | | 00:15 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.4 | 010 | | | | | | 1:15 | 1:45 | 1:00 | | | | 04:00 | | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| 2.5 | 010 | | | | | | | 4:00 | 6:30 | 7:00 | 6:00 | | 23:30 | | FA893 | RR4888FALC1800701 | XXXR4524KS | San Xavier Reliability Recovery Project Appraisal Design Study |
| 2.6 | 010 | | | | | | 1:15 | | | | | | 01:15 | | G040P | RX31280007RFP1801 | 18XR0680A1 | Blackfeet REO Expanding Value Planning Study - Nation Wide |

## Corrected Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201911          Pay Period Beginning Date: 05/12/2019          Pay Period Ending Date: 05/25/2019

Cost Center: RR85843000          Department: IN          Bureau: 07          Suburbau: 08          Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun May | Mon May | Tue May | Wed May | Thu May | Fri May | Sat May | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|----------|-----|-----|-----|---------|---------|---------|---------|---------|---------|---------|---------|--------|----|-----------|----------------|------|-------------|
| 2.7 | 060 |  |  |  |  |  |  |  |  |  | 2:00 |  | 02:00 |  |  |  |  |  |
| 2.8 | 020 |  |  |  |  |  |  |  | 1:00 |  |  |  | 01:00 |  |  |  |  |  |
|  | Totals: |  |  |  |  | 0:00 | 8:30 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:30 |  |  |  |  |  |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|-----|-----|-----|-----|-----|-----|-----|-------|
| Pay Period Totals: | 0:00 | 17:15 | 16:45 | 16:00 | 16:00 | 16:00 | 0:00 | 82:00 |

### Timekeeper Messages to Payroll

### Pay Period Comments

WOID Date Duration Explanation
G9XTI Mon-05/13 4:45 Durango FA608 SPECB.
G9XTI Tue-05/14 6:30 Durango FA608 SPECB.
G9XTI Wed-05/15 4:00 Durango FA608 SPECB.
G9XTI Mon-05/20 5:15 Durango FA608 QEWs.
G9XTI Tue-05/21 2:15 Durango FA608 QEWs.
G9XTI Wed-05/22 0:30 Durango FA608 QEWs.

### Overtime Justification

WOID Date Duration Explanation
G9XTI Mon-05/13 0:45 Durango FA608 SPECB.
G9XTI Tue-05/14 0:45 Durango FA608 SPECB.
G9XTI Mon-05/20 0:30 Durango FA608 QEWs.

## Corrected Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201911          Pay Period Beginning Date: 05/12/2019          Pay Period Ending Date: 05/25/2019

Cost Center: RR85843000          Department: IN          Bureau: 07          Subureau: 08          Location Code: DO1

| Certified By | Date Certified |     | Approved By | Date Approved |
|---|---|---|---|---|
|  |  |     | PARSON, DIANNE B. | 06/07/2019 |

### Corrected Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201912     Pay Period Beginning Date: 05/26/2019     Pay Period Ending Date: 06/08/2019

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

#### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun May | Mon May | Tue May | Wed May | Thu May | Fri May | Sat Jun 01 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 050 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 1.2 | 010 | | | | | | | | 1:00 | 0:45 | | | 01:45 | | FA648 | RR4888FAMP170220 1 | XXXR4524KS | Truckee Canal Feasibility Study |
| 1.3 | 010 | | | | | | | 1:00 | 2:00 | 2:15 | 0:45 | | 06:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.4 | 010 | | | | | | | | | | 0:15 | | 00:15 | | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| 1.5 | 010 | | | | | | | 4:15 | 5:00 | 3:00 | 2:00 | | 14:15 | | FA893 | RR4888FALC1800701 | XXXR4524KS | San Xavier Reliability Recovery Project Appraisal Design Study |
| 1.6 | 010 | | | | | | | | | | | | 00:00 | | G040P | RX31280007RFP1801 | 18XR0680A1 | Blackfeet REO Expanding Value Planning Study - Nation Wide |
| 1.7 | 020 | | | | | | | 2:45 | | | 5:00 | | 07:45 | | | | | |
| 1.8 | 010 | | | | | | | | | 2:00 | | | 02:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88 -MAINTENANCE OF CAPABILITY |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

#### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jun 02 | Mon Jun 03 | Tue Jun 04 | Wed Jun 05 | Thu Jun 06 | Fri Jun 07 | Sat Jun 08 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 020 | | | | | | 2:00 | | 3:00 | 1:00 | 2:00 | | 08:00 | | | | | |
| 2.2 | 030 | | | | | | 1:00 | | | | | | 01:00 | | | | | |
| 2.3 | 010 | | | | | | 1:00 | 7:30 | 1:15 | | 2:00 | | 11:45 | | FA648 | RR4888FAMP170220 1 | XXXR4524KS | Truckee Canal Feasibility Study |
| 2.4 | 010 | | | | | | 3:00 | 0:30 | 2:30 | | | | 06:00 | | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| 2.5 | 010 | | | | | | 1:00 | | 0:15 | | | | 01:15 | | FA893 | RR4888FALC1800701 | XXXR4524KS | San Xavier Reliability Recovery Project Appraisal Design Study |
| 2.6 | 010 | | | | | | | | 0:45 | 1:00 | 1:00 | | 02:45 | | G040P | RX31280007RFP1801 | 18XR0680A1 | Blackfeet REO Expanding Value Planning Study - Nation Wide |

Report Date: Tuesday, Aug 11, 2020

## Corrected Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201912     Pay Period Beginning Date: 05/26/2019     Pay Period Ending Date: 06/08/2019

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jun 02 | Mon Jun 03 | Tue Jun 04 | Wed Jun 05 | Thu Jun 06 | Fri Jun 07 | Sat Jun 08 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.7 | 010 | | | | | | | | 0:15 | | | | 00:15 | | F061A | RR4888FAPN1900401 | XXXR4524KS | LNFH Surface Intake and Fish Passage |
| 2.8 | 010 | | | | | | | | | 1:00 | 1:00 | | 02:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.9 | 010 | | | | | | | | | 1:00 | 2:00 | | 03:00 | | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| 2.10 | 010 | | | | | | | | | 4:00 | | | 04:00 | | FA893 | RR4888FALC1800701 | XXXR4524KS | San Xavier Reliability Recovery Project Appraisal Design Study |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|

WOID Date (mm/dd) Dur Explanation
WCLUC Tue-05/28 1:00 ETAS.
WCLUC Wed-05/29 2:00 Progress Review.
G9XTI Thu-05/30 1:00 Truckee
WCCAP Thu-05/30 1:00 Switchgear.
WCLUC Thu-05/30 2:15 Revit updates. ETAS. Schedule.
WLCUC Thu-05/30 3:00 Truckee.
G9XTI Fri-5/31 0:45 Truckee
WCLUC Fri-05/31 0:45 Unblock card.
G9XTI Mon-06/03 1:00 Truckee
G9XTI Tue-06/04 7:30 Truckee
G9XTI Wed-6/5 1:15 Truckee

## Corrected Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201912     Pay Period Beginning Date: 05/26/2019     Pay Period Ending Date: 06/08/2019

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

| Overtime Justification |
|---|
|  |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
|  |  | | PARSON, DIANNE B. | 08/21/2019 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201913     Pay Period Beginning Date: 06/09/2019     Pay Period Ending Date: 06/22/2019

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jun 09 | Mon Jun 10 | Tue Jun 11 | Wed Jun 12 | Thu Jun 13 | Fri Jun 14 | Sat Jun 15 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | 2:00 | | | | | | 02:00 | C | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.2 | 030 | | | | | | | 2:00 | | | | | 02:00 | | | | | |
| 1.3 | 010 | | | | | | | 3:00 | | | | | 03:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.4 | 010 | | | | | | | 3:00 | | | | | 03:00 | | FA893 | RR4888FALC1800701 | XXXR4524KS | San Xavier Reliability Recovery Project Appraisal Design Study |
| 1.5 | 010 | | | | | | 1:00 | | 2:00 | | 3:00 | | 06:00 | C | G040P | RX31280007RFP1801 | 18XR0680A1 | Blackfeet REO Expanding Value Planning Study - Nation Wide |
| 1.6 | 010 | | | | | | 5:00 | | 4:00 | | 1:00 | | 10:00 | C | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| 1.7 | 020 | | | | | | | | 2:00 | | 4:00 | | 06:00 | | | | | |
| 1.8 | 010 | | | | | | | | | 6:00 | | | 06:00 | | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| 1.9 | 010 | | | | | | | | | 2:00 | | | 02:00 | | G040P | RX31280007RFP1801 | 18XR0680A1 | Blackfeet REO Expanding Value Planning Study - Nation Wide |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jun 16 | Mon Jun 17 | Tue Jun 18 | Wed Jun 19 | Thu Jun 20 | Fri Jun 21 | Sat Jun 22 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | | 0:30 | | | | | 00:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.2 | 020 | | | | | | 8:00 | | 2:00 | | | | 10:00 | | | | | |
| 2.3 | 010 | | | | | | | 1:00 | | | | | 01:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.4 | 010 | | | | | | | 3:30 | | 7:00 | | | 10:30 | | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| 2.5 | 010 | | | | | | | 1:00 | 3:00 | | 8:00 | | 12:00 | C | BDSCS | RX1547000400241 | 19XR0680A5 | Boca Dam Seismic |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201913      Pay Period Beginning Date: 06/09/2019      Pay Period Ending Date: 06/22/2019

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jun 16 | Mon Jun 17 | Tue Jun 18 | Wed Jun 19 | Thu Jun 20 | Fri Jun 21 | Sat Jun 22 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | 16 | | Modification Construction Suport |
| 2.6 | 010 | | | | | | | 2:00 | | 1:00 | | | 03:00 | | G040P | RX31280007RFP1801 | 18XR0680A1 | Blackfeet REO Expanding Value Planning Study - Nation Wide |
| 2.7 | 010 | | | | | | | | 2:00 | | | | 02:00 | C | FA893 | RR4888FALC1800701 | XXXR4524KS | San Xavier Reliability Recovery Project Appraisal Design Study |
| 2.8 | 010 | | | | | | | | 1:00 | | | | 01:00 | C | G040P | RX31280007RFP1801 | 18XR0680A1 | Blackfeet REO Expanding Value Planning Study - Nation Wide |
| Totals: | | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

| Pay Period Comments |
|---|
| WOID Date (mm/dd) Dur Explanation<br>WCLUC Mon-06/10 2:00 Workload spreadsheet.<br>WCCAP Tue-06/11 3:00 QEWs training.<br>WCLUC Tue-06/18 0:30 Project milestones.<br>WCCAP Tue-06/18 1:00 FISSA training. |

| Overtime Justification |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201913        Pay Period Beginning Date: 06/09/2019        Pay Period Ending Date: 06/22/2019
Cost Center: RR85843000        Department: IN        Bureau: 07        Subureau: 08        Location Code: DO1

| Certified By | Date Certified |
| --- | --- |
| HAMANN, DANIEL W | 07/24/2019 |

| Approved By | Date Approved |
| --- | --- |
| BOGGESS, JAY S. | 06/20/2019 |

**Official Timesheet for HAMANN, DANIEL W**
PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201914     Pay Period Beginning Date: 06/23/2019     Pay Period Ending Date: 07/06/2019
Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

**Week 1**

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jun 23 | Mon Jun 24 | Tue Jun 25 | Wed Jun 26 | Thu Jun 27 | Fri Jun 28 | Sat Jun 29 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 020 | | | | | | | 8:00 | | | | | 08:00 | | | | | |
| 1.2 | 010 | | | | | | 2:00 | | | | | | 02:00 | C | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.3 | 010 | | | | | | 2:00 | | 2:00 | 2:00 | 3:00 | | 09:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.4 | 010 | | | | | | | | 2:00 | 2:00 | | | 04:00 | | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| 1.5 | 010 | | | | | | | | 2:00 | 2:00 | 3:00 | | 07:00 | | FA893 | RR4888FALC1800701 | XXXR4524KS | San Xavier Reliability Recovery Project Appraisal Design Study |
| 1.6 | 010 | | | | | | 4:00 | | 2:00 | 2:00 | 2:00 | | 10:00 | | G040P | RX31280007RFP1801 | 18XR0680A1 | Blackfeet REO Expanding Value Planning Study - Nation Wide |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

**Week 2**

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jun 30 | Mon Jul 01 | Tue Jul 02 | Wed Jul 03 | Thu Jul 04 | Fri Jul 05 | Sat Jul 06 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 030 | | | | | | 1:00 | | | | 4:00 | | 05:00 | | | | | |
| 2.2 | 050 | | | | | | | | 8:00 | | | | 08:00 | | | | | |
| 2.3 | 060 | | | | | | | | 3:00 | | | | 03:00 | | | | | |
| 2.4 | 010 | | | | | | 3:00 | | | | 1:00 | | 04:00 | C | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.5 | 010 | | | | | | 1:00 | | | | | | 01:00 | C | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| 2.6 | 010 | | | | | | | 7:45 | 5:00 | | 1:00 | | 13:45 | C | FA893 | RR4888FALC1800701 | XXXR4524KS | San Xavier Reliability Recovery Project Appraisal Design Study |
| 2.7 | 010 | | | | | | | 3:00 | 0:15 | | 1:00 | | 04:15 | C | G040P | RX31280007RFP1801 | 18XR0680A1 | Blackfeet REO Expanding Value Planning Study - Nation Wide |
| 2.8 | 010 | | | | | | | | | | 1:00 | | 01:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |

# Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only.  Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201914

Pay Period Beginning Date: 06/23/2019

Pay Period Ending Date: 07/06/2019

Cost Center: RR85843000

Department: IN

Bureau: 07

Subureau: 08

Location Code: DO1

## Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jun 30 | Mon Jul 01 | Tue Jul 02 | Wed Jul 03 | Thu Jul 04 | Fri Jul 05 | Sat Jul 06 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |
| |

| Pay Period Comments |
|---|
| |
| |

| Overtime Justification |
|---|
| |
| |

| Certified By | Date Certified | Approved By | Date Approved |
|---|---|---|---|
| HAMANN, DANIEL W | 08/01/2019 | MCSTRAW, WILLIAM D | 07/08/2019 |

## Official Timesheet for HAMANN, DANIEL W
### PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201915      Pay Period Beginning Date: 07/07/2019      Pay Period Ending Date: 07/20/2019

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jul 07 | Mon Jul 08 | Tue Jul 09 | Wed Jul 10 | Thu Jul 11 | Fri Jul 12 | Sat Jul 13 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | | | 0:15 | | | | 00:15 | C | BDSCS | RX15470004024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Support |
| 1.2 | 010 | | | | | | 2:30 | | 1:15 | | 1:15 | | 05:00 | C | F061A | RR4888FAPN1900401 | XXXR4524KS | LNFH Surface Intake and Fish Passage |
| 1.3 | 010 | | | | | | 3:15 | | 1:15 | | 4:00 | | 08:30 | C | FA893 | RR4888FALC1800701 | XXXR4524KS | San Xavier Reliability Recovery Project Appraisal Design Study |
| 1.4 | 010 | | | | | | | | 3:15 | | 2:30 | | 05:45 | C | G040P | RX31280007RFP1801 | 18XR0680A1 | Blackfeet REO Expanding Value Planning Study - Nation Wide |
| 1.5 | 010 | | | | | | | | | | | | 00:00 | C | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.6 | 010 | | | | | | 2:15 | | 2:00 | | 0:15 | | 04:30 | C | WCLUC | RX4888TINE1200000 | XXXR4524KS | K88 - LAB UNIQUE COSTS |
| 1.7 | 010 | | | | | | | | | | | | 00:00 | | BDSCS | RX15470004024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Support |
| 1.8 | 010 | | | | | | | 1:00 | | 5:15 | | | 06:15 | | F061A | RR4888FAPN1900401 | XXXR4524KS | LNFH Surface Intake and Fish Passage |
| 1.9 | 010 | | | | | | | 1:00 | | 2:30 | | | 03:30 | | FA893 | RR4888FALC1800701 | XXXR4524KS | San Xavier Reliability Recovery Project Appraisal Design Study |
| 1.10 | 010 | | | | | | | 3:00 | | 0:15 | | | 03:15 | | G040P | RX31280007RFP1801 | 18XR0680A1 | Blackfeet REO Expanding Value Planning Study - Nation Wide |
| 1.11 | 010 | | | | | | | 3:00 | | | | | 03:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.12 | 010 | | | | | | | | | | | | 00:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KS | K88 - LAB UNIQUE COSTS |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jul 14 | Mon Jul 15 | Tue Jul 16 | Wed Jul 17 | Thu Jul 18 | Fri Jul 19 | Sat Jul 20 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | | 4:00 | 3:45 | | 2:00 | | 09:45 | C | F061A | RR4888FAPN1900401 | XXXR4524KS | LNFH Surface Intake and Fish Passage |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201915     Pay Period Beginning Date: 07/07/2019     Pay Period Ending Date: 07/20/2019

Cost Center: RR85843000    Department: IN    Bureau: 07    Subureau: 08    Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jul 14 | Mon Jul 15 | Tue Jul 16 | Wed Jul 17 | Thu Jul 18 | Fri Jul 19 | Sat Jul 20 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.2 | 010 | | | | | | | 4:00 | 3:15 | | | | 07:15 | C | FA893 | RR4888FALC1800701 | XXXR4524KS | San Xavier Reliability Recovery Project Appraisal Design Study |
| 2.3 | 010 | | | | | | | | | | 1:00 | | 01:00 | C | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.4 | 010 | | | | | | | | 1:00 | | 4:00 | | 05:00 | C | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.5 | 010 | | | | | | 5:45 | | | 4:15 | | | 10:00 | | F061A | RR4888FAPN1900401 | XXXR4524KS | LNFH Surface Intake and Fish Passage |
| 2.6 | 010 | | | | | | 1:15 | | | 0:15 | | | 01:30 | | FA893 | RR4888FALC1800701 | XXXR4524KS | San Xavier Reliability Recovery Project Appraisal Design Study |
| 2.7 | 010 | | | | | | | | | 3:00 | | | 03:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.8 | 010 | | | | | | 1:00 | | | 0:30 | | | 01:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.9 | 010 | | | | | | | | | | 1:00 | | 01:00 | | G9XTI | RX5968983111150000 | 190R5065C6 | BOR Workgroups and Inquiries - FY19 |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| Pay Period Totals: | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| Timekeeper Messages to Payroll |
|---|
| |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

| Pay Period: 201915 | | Pay Period Beginning Date: 07/07/2019 | | Pay Period Ending Date: 07/20/2019 |
|---|---|---|---|---|
| Cost Center: RR85843000 | Department: IN | Bureau: 07 | Subureau: 08 | Location Code: DO1 |

**Pay Period Comments**

WOID Date (mm/dd) Dur Explanation
WCLUC Mon-07/08 2:15 Paycheck issues.
WCCAP Tue-07/09 3:00 Kasey training.
WCLUC Wed-07/10 2:00 Workload spreadsheet.
WCLUC Fri-07/12 0:15 ETAS.
WCLUC Mon-7/15 1:00 eDraws set up.
WCLUC Wed-07/17 1:00 Telework changes
WCCAP Thu-7/18 3:00 Kasey training.
WCLUC Thu-7/18 0:30 ETAS.

**Overtime Justification**

| Certified By | Date Certified | Approved By | Date Approved |
|---|---|---|---|
| HAMANN, DANIEL W | 07/24/2019 | BOGGESS, JAY S. | 07/19/2019 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201916      Pay Period Beginning Date: 07/21/2019      Pay Period Ending Date: 08/03/2019

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jul 21 | Mon Jul 22 | Tue Jul 23 | Wed Jul 24 | Thu Jul 25 | Fri Jul 26 | Sat Jul 27 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | | | | | | | 2:30 | | | | 02:30 | C | FA648 | RR4888FAMP170220 1 | XXXR4524KS | Truckee Canal Feasibility Study |
| 1.2 | 010 | | | | | | 0:30 | | 3:30 | | | | 04:00 | C | F061A | RR4888FAPN1900401 | XXXR4524KS | LNFH Surface Intake and Fish Passage |
| 1.3 | 010 | | | | | | | | 1:00 | | | | 01:00 | C | G040P | RX31280007RFP1801 | 18XR0680A1 | Blackfeet REO Expanding Value Planning Study - Nation Wide |
| 1.4 | 010 | | | | | | 3:00 | | | | | | 03:00 | C | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.5 | 010 | | | | | | | | 1:00 | | | | 01:00 | C | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.6 | 010 | | | | | | | 5:00 | | 4:00 | | | 09:00 | | F061A | RR4888FAPN1900401 | XXXR4524KS | LNFH Surface Intake and Fish Passage |
| 1.7 | 010 | | | | | | | | | 4:00 | | | 04:00 | C | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.8 | 010 | | | | | | | | 1:00 | | | | 01:00 | C | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.9 | 030 | | | | | | 4:30 | | | 8:00 | | | 12:30 | | | | | |
| 1.10 | 010 | | | | | | | 2:00 | | | | | 02:00 | C | FA648 | RR4888FAMP170220 1 | XXXR4524KS | Truckee Canal Feasibility Study |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | Row | From | From | From | From | From | From | From | Work Notes |
|---|---|---|---|---|---|---|---|---|---|
| | 1.4 | To | To | To | To | To | To | To | telework training and agreement |

| | Row | From | From | From | From | From | From | From | Work Notes |
|---|---|---|---|---|---|---|---|---|---|
| | 1.5 | To | To | To | To | To | To | To | Telework Training policy review etas |

| | Row | From | From | From | From | From | From | From | Work Notes |
|---|---|---|---|---|---|---|---|---|---|
| | 1.7 | To | To | To | To | To | To | To | Kasey Nunes qews |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201916          Pay Period Beginning Date: 07/21/2019          Pay Period Ending Date: 08/03/2019

Cost Center: RR85843000          Department: IN          Bureau: 07          Subureau: 08          Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jul 21 | Mon Jul 22 | Tue Jul 23 | Wed Jul 24 | Thu Jul 25 | Fri Jul 26 | Sat Jul 27 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Row | From | From | From | From | From | From | From | | | Work Notes | | | |
| | | | | | | | | | | | | | | | credit card statement discuss time sheet issues | | | |
| | | | | | 1.8 | To | To | To | To | To | To | To | | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jul 28 | Mon Jul 29 | Tue Jul 30 | Wed Jul 31 | Thu Aug | Fri Aug | Sat Aug | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | | | 5:00 | | | | 05:00 | C | F061A | RR4888FAPN1900401 | XXXR4524KS | LNFH Surface Intake and Fish Passage |
| 2.2 | 010 | | | | | | | | 0:30 | | | | 00:30 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.3 | 010 | | | | | | | | 0:30 | | | | 00:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.4 | 010 | | | | | | | 2:00 | | 3:15 | | | 05:15 | | F061A | RR4888FAPN1900401 | XXXR4524KS | LNFH Surface Intake and Fish Passage |
| 2.5 | 010 | | | | | | | 2:00 | | | | | 02:00 | | FA893 | RR4888FALC1800701 | XXXR4524KS | San Xavier Reliability Recovery Project Appraisal Design Study |
| 2.6 | 010 | | | | | | | 3:00 | | | | | 03:00 | C | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.7 | 010 | | | | | | | 1:00 | | | | | 01:00 | C | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.8 | 030 | | | | | | 8:00 | | 2:00 | | | | 10:00 | | | | | |
| 2.9 | 010 | | | | | | | | | 1:15 | | | 01:15 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.10 | 010 | | | | | | | | | 1:45 | | | 01:45 | C | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.11 | 010 | | | | | | | | | | 7:00 | | 07:00 | C | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.12 | 010 | | | | | | | | | 1:45 | 1:00 | | 02:45 | | FA893 | RR4888FALC1800701 | XXXR4524KS | San Xavier Reliability Recovery Project Appraisal Design Study |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

**Official Timesheet for HAMANN, DANIEL W**

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201916      Pay Period Beginning Date: 07/21/2019      Pay Period Ending Date: 08/03/2019

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

**Week 2**

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jul 28 | Mon Jul 29 | Tue Jul 30 | Wed Jul 31 | Thu Aug | Fri Aug | Sat Aug | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Row | From | From | From | From | From | From | From | | | Work Notes | | | |
| | | | | | 2.2 | To | To | To | To | To | To | To | kasey nunes qews | | | | | |
| | | | | | Row | From | From | From | From | From | From | From | | | Work Notes | | | |
| | | | | | 2.3 | To | To | To | To | To | To | To | etas | | | | | |
| | | | | | Row | From | From | From | From | From | From | From | | | Work Notes | | | |
| | | | | | 2.6 | To | To | To | To | To | To | To | Kasey Nunes qews | | | | | |
| | | | | | Row | From | From | From | From | From | From | From | | | Work Notes | | | |
| | | | | | 2.7 | To | To | To | To | To | To | To | etas | | | | | |
| | | | | | Row | From | From | From | From | From | From | From | | | Work Notes | | | |
| | | | | | 2.9 | To | To | To | To | To | To | To | etas resolve certify timesheets | | | | | |
| | | | | | Row | From | From | From | From | From | From | From | | | Work Notes | | | |
| | | | | | 2.10 | To | To | To | To | To | To | To | Telework policy kasey nunes qews | | | | | |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

| Pay Period: 201916 | | Pay Period Beginning Date: 07/21/2019 | | | Pay Period Ending Date: 08/03/2019 |
|---|---|---|---|---|---|
| Cost Center: RR85843000 | Department: IN | Bureau: 07 | | Subureau: 08 | Location Code: DO1 |

**Week 2**

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Jul 28 | Mon Jul 29 | Tue Jul 30 | Wed Jul 31 | Thu Aug | Fri Aug | Sat Aug | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Row | From | From | From | From | From | From | From | | | | Work Notes | | |
| | | | | | 2.11 | To | To | To | To | To | To | To | | | etas g9ktl review | | | |

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| **Pay Period Totals:** | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

| **Timekeeper Messages to Payroll** |
|---|
| |

| **Pay Period Comments** |
|---|
| |

| **Overtime Justification** |
|---|
| |

| Certified By | Date Certified | Approved By | Date Approved |
|---|---|---|---|
| HAMANN, DANIEL W | 08/07/2019 | BOGGESS, JAY S. | 08/05/2019 |

**Official Timesheet for HAMANN, DANIEL W**

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201917      Pay Period Beginning Date: 08/04/2019      Pay Period Ending Date: 08/17/2019

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Aug | Mon Aug | Tue Aug | Wed Aug | Thu Aug | Fri Aug | Sat Aug | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 030 | | | | | | 8:00 | | 3:30 | | | | 11:30 | | | | | |
| 1.2 | 010 | | | | | | | 4:30 | 1:00 | | | | 05:30 | F | F061A | RR4888FAPN1900401 | XXXR4524KS | LNFH Surface Intake and Fish Passage |
| 1.3 | 110 | | | | | | | 0:45 | | | | | 00:45 | F | F061A | RR4888FAPN1900401 | XXXR4524KS | LNFH Surface Intake and Fish Passage |
| 1.4 | 010 | | | | | | | 0:45 | | | | | 00:45 | F | G040P | RX31280007RFP1801 | 18XR0680A1 | Blackfeet REO Expanding Value Planning Study - Nation Wide |
| 1.5 | 010 | | | | | | | 1:00 | 1:00 | | | | 02:00 | F | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.6 | 010 | | | | | | | 1:45 | 2:00 | | | | 03:45 | F | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.7 | 010 | | | | | | | | 2:00 | | | | 02:00 | | WCHRS | RX4888TINE1320000 | XXXR4524KK | TSC HUMAN RESOURCES SERVICES |
| 1.8 | 010 | | | | | | | | 5:00 | | | | 05:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.9 | 010 | | | | | | | | 1:00 | 2:15 | | | 03:15 | | F061A | RR4888FAPN1900401 | XXXR4524KS | LNFH Surface Intake and Fish Passage |
| 1.10 | 010 | | | | | | | | 0:30 | | | | 00:30 | F | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| 1.11 | 020 | | | | | | | | | 1:00 | | | 01:00 | | | | | |
| 1.12 | 010 | | | | | | | | | 2:45 | | | 02:45 | | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| 1.13 | 010 | | | | | | | | | 1:45 | | | 01:45 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 1.14 | 010 | | | | | | | | | 0:15 | | | 00:15 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| | Totals: | | | | | 0:00 | 8:00 | 8:45 | 8:00 | 8:00 | 8:00 | 0:00 | 40:45 | | | | | |

| | | Row | From | From | From | From | From | From | From | Work Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| | | 1.1 | To | To | To | To | To | To | To | Acupuncture for G.I. disorder. |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201917     Pay Period Beginning Date: 08/04/2019     Pay Period Ending Date: 08/17/2019

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Aug | Mon Aug | Tue Aug | Wed Aug | Thu Aug | Fri Aug | Sat Aug | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Row | From | From | From | From | From | From | From | colspan Work Notes | | | | | |
| | | | | | 1.5 | To | To | To | To | To | To | To | 8/6: Reviewed charges to G9XTI. 8/8: Reviewed and signed WOID forms. | | | | | |
| | | | | | Row | From | From | From | From | From | From | From | Work Notes | | | | | |
| | | | | | 1.6 | To | To | To | To | To | To | To | 8/6: Mandatory training: No Fear. 8/8: ETAS coding, installation and use of eDraws with Kasey. | | | | | |
| | | | | | Row | From | From | From | From | From | From | From | Work Notes | | | | | |
| | | | | | 1.7 | To | To | To | To | To | To | To | Employee Appreciation Day | | | | | |
| | | | | | Row | From | From | From | From | From | From | From | Work Notes | | | | | |
| | | | | | 1.8 | To | To | To | To | To | To | To | subgroup meeting. Note end of fiscal year, ETAS data entry dates, as per Dianne instruction. Review, verfiy, certify PP166 in ETAS. reboot and recover files due to card credential reading error. | | | | | |
| | | | | | Row | From | From | From | From | From | From | From | Work Notes | | | | | |
| | | | | | 1.13 | To | To | To | To | To | To | To | Revit: technique for localizing copy of central model. Drawing approval process with Kasey | | | | | |
| | | | | | Row | From | From | From | From | From | From | From | Work Notes | | | | | |
| | | | | | 1.14 | To | To | To | To | To | To | To | ETAS. Enter time for day. | | | | | |

## Official Timesheet for HAMANN, DANIEL W
PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201917      Pay Period Beginning Date: 08/04/2019      Pay Period Ending Date: 08/17/2019

Cost Center: RR85843000      Department: IN      Bureau: 07      Subureau: 08      Location Code: DO1

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Aug | Mon Aug | Tue Aug | Wed Aug | Thu Aug | Fri Aug | Sat Aug | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | 1:00 | | 1:00 | | 1:30 | | 03:30 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.2 | 010 | | | | | | | | | 1:00 | | | 01:00 | F | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 2.3 | 010 | | | | | | 0:15 | | 2:00 | | | | 02:15 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.4 | 010 | | | | | | | | | | | | 00:00 | F | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.5 | 010 | | | | | | 6:15 | | 4:00 | | 6:00 | | 16:15 | | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| 2.6 | 010 | | | | | | 0:30 | | | | | | 00:30 | | F061A | RR4888FAPN1900401 | XXXR4524KS | LNFH Surface Intake and Fish Passage |
| 2.7 | 010 | | | | | | | 7:00 | | | | | 07:00 | F | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| 2.8 | 010 | | | | | | | 1:00 | | | | | 01:00 | F | G040P | RX31280007RFP1801 | 18XR0680A1 | Blackfeet REO Expanding Value Planning Study - Nation Wide |
| 2.9 | 020 | | | | | | | | 1:00 | | 0:30 | | 01:30 | | | | | |
| 2.10 | 030 | | | | | | | | | 4:00 | | | 04:00 | | | | | |
| 2.11 | 010 | | | | | | | | 3:00 | | | | 03:00 | F | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | | Row | From | From | From | From | From | From | From | Work Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| | | 2.1 | To | To | To | To | To | To | To | ETAS. G9XTI charges. |

| | | Row | From | From | From | From | From | From | From | Work Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| | | 2.3 | To | To | To | To | To | To | To | No Fear |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201917        Pay Period Beginning Date: 08/04/2019        Pay Period Ending Date: 08/17/2019

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

|  | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| **Pay Period Totals:** | 0:00 | 16:00 | 16:45 | 16:00 | 16:00 | 16:00 | 0:00 | 80:45 |

| **Timekeeper Messages to Payroll** |
|---|
|  |

| **Pay Period Comments** |
|---|
|  |

| **Overtime Justification** |
|---|
| Team lead scheduled telephone call with supervisor to discuss budget issues. |

| Certified By | Date Certified | | Approved By | Date Approved |
|---|---|---|---|---|
| HAMANN, DANIEL W | 12/27/2019 | | BOGGESS, JAY S. | 08/16/2019 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201918     Pay Period Beginning Date: 08/18/2019     Pay Period Ending Date: 08/31/2019

Cost Center: RR85843000    Department: IN    Bureau: 07    Subureau: 08    Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Aug | Mon Aug | Tue Aug | Wed Aug | Thu Aug | Fri Aug | Sat Aug | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 010 | | ' | | | | 3:30 | | 5:30 | | 3:45 | | 12:45 | F | F061A | RR4888FAPN1900401 | XXXR4524KS | LNFH Surface Intake and Fish Passage |
| 1.2 | 010 | | | | | | 4:30 | | 0:30 | | 1:15 | | 06:15 | F | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| 1.3 | 010 | | | | | | | 0:15 | | 6:30 | | | 06:45 | | F061A | RR4888FAPN1900401 | XXXR4524KS | LNFH Surface Intake and Fish Passage |
| 1.4 | 010 | | | | | | | 7:15 | | 1:00 | | | 08:15 | | BDSCS | RX154700040024116 | 19XR0680A5 | Boca Dam Seismic Modification Construction Suport |
| 1.5 | 020 | | | | | | | 0:30 | 2:00 | 0:30 | 1:00 | | 04:00 | | | | | |
| 1.6 | 030 | | | | | | | | | | 2:00 | | 02:00 | | | | | |
| Totals: | | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

### Week 2

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Aug | Mon Aug | Tue Aug | Wed Aug | Thu Aug | Fri Aug | Sat Aug | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2.1 | 010 | | | | | | | 4:00 | | 5:00 | | | 09:00 | | F061A | RR4888FAPN1900401 | XXXR4524KS | LNFH Surface Intake and Fish Passage |
| 2.2 | 010 | | | | | | 6:30 | | 4:00 | | 2:00 | | 12:30 | F | F061A | RR4888FAPN1900401 | XXXR4524KS | LNFH Surface Intake and Fish Passage |
| 2.3 | 010 | | | | | | | 3:00 | | 2:00 | | | 05:00 | | BDSC2 | RAF247100001942L1 | 19XR0680A5 | Boca Dam Seismic Modification Construction Support - 2 |
| 2.4 | 010 | | | | | | | | 1:00 | | 2:00 | | 03:00 | F | BDSC2 | RAF247100001942L1 | 19XR0680A5 | Boca Dam Seismic Modification Construction Support - 2 |
| 2.5 | 010 | | | | | | 1:00 | | | | | | 01:00 | | WCCAP | RX4888TINE0960200 | XXXR4524KK | K88-MAINTENANCE OF CAPABILITY |
| 2.6 | 020 | | | | | | 0:30 | 1:00 | | 1:00 | 1:00 | | 03:30 | | | | | |
| 2.7 | 030 | | | | | | | | 3:00 | | 3:00 | | 06:00 | | | | | |
| Totals: | | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

**Official Timesheet for HAMANN, DANIEL W**

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201918                     Pay Period Beginning Date: 08/18/2019                     Pay Period Ending Date: 08/31/2019
Cost Center: RR85843000          Department: IN          Bureau: 07          Subureau: 08          Location Code: DO1

**Week 2**

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Aug | Mon Aug | Tue Aug | Wed Aug | Thu Aug | Fri Aug | Sat Aug | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Row | From | From | From | From | From | From | From | colspan: Work Notes |||||
| | | | | | 2.1 | | | | | | | | 8/26: 1 hour spent on Boca before WOID opened. Reversed on 8/27. |||||
| | | | | | | To | To | To | To | To | To | To | |||||
| | | | | | Row | From | From | From | From | From | From | From | Work Notes |||||
| | | | | | 2.2 | | | | | | | | 8/26: 1 hour spent on Boca before WOID opened. Reversed on 8/27. |||||
| | | | | | | To | To | To | To | To | To | To | |||||
| | | | | | Row | From | From | From | From | From | From | From | Work Notes |||||
| | | | | | 2.5 | | | | | | | | 8/26: No Fear mandatory training. |||||
| | | | | | | To | To | To | To | To | To | To | |||||
| | | | | | Row | From | From | From | From | From | From | From | Work Notes |||||
| | | | | | 2.7 | | | | | | | | 8/28: G.I. 8/30: Acupuncture. |||||
| | | | | | | To | To | To | To | To | To | To | |||||

| | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Total |
|---|---|---|---|---|---|---|---|---|
| **Pay Period Totals:** | 0:00 | 16:00 | 16:00 | 16:00 | 16:00 | 16:00 | 0:00 | 80:00 |

**Timekeeper Messages to Payroll**

**Pay Period Comments**

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201918        Pay Period Beginning Date: 08/18/2019        Pay Period Ending Date: 08/31/2019

Cost Center: RR85843000     Department: IN     Bureau: 07     Subureau: 08     Location Code: DO1

**Overtime Justification**

| Certified By | Date Certified | Approved By | Date Approved |
|---|---|---|---|
| HAMANN, DANIEL W | 08/28/2019 | BOGGESS, JAY S. | 08/28/2019 |

## Official Timesheet for HAMANN, DANIEL W

PRIVACY ACT DOCUMENT - RESTRICTED ACCESS

Access to this document is limited to authorized personnel only. Information may not be disclosed from this document unless permitted by the Privacy Act.
This document may not be altered or destroyed except as authorized.
The Privacy Act provides criminal penalties for knowingly and willfully disclosing information from this document without proper authority.

Pay Period: 201919  Pay Period Beginning Date: 09/01/2019  Pay Period Ending Date: 09/14/2019

Cost Center: RR85843000  Department: IN  Bureau: 07  Subureau: 08  Location Code: DO1

### Week 1

| Row | Pay Code | S C | E H | S R | OC/ OCM | Sun Sep 01 | Mon Sep 02 | Tue Sep 03 | Wed Sep 04 | Thu Sep 05 | Fri Sep 06 | Sat Sep 07 | Totals | TW | Key/ WOID | Chargeable Item | Fund | Description |
|-----|------|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.1 | 020 | | | | | | | | 1:00 | 1:00 | | | 02:00 | | | | | |
| 1.2 | 030 | | | | | | | 8:00 | | | 1:30 | | 09:30 | | | | | |
| 1.3 | 050 | | | | | | 8:00 | | | | | | 08:00 | | | | | |
| 1.4 | 010 | | | | | | | | 5:00 | 3:30 | | | 08:30 | | BDSC2 | RAF247100001942L1 | 19XR0680A5 | Boca Dam Seismic Modification Construction Support - 2 |
| 1.5 | 010 | | | | | | | | 2:00 | 1:00 | | | 03:00 | | F061A | RR4888FAPN1900401 | XXXR4524KS | LNFH Surface Intake and Fish Passage |
| 1.6 | 010 | | | | | | | | | 1:00 | | | 01:00 | | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| 1.7 | 010 | | | | | | | | | 1:30 | | | 01:30 | | WCHRS | RX4888TINE1320000 | XXXR4524KK | TSC HUMAN RESOURCES SERVICES |
| 1.8 | 010 | | | | | | | | | | 5:30 | | 05:30 | F | BDSC2 | RAF247100001942L1 | 19XR0680A5 | Boca Dam Seismic Modification Construction Support - 2 |
| 1.9 | 010 | | | | | | | | | | 1:00 | | 01:00 | F | WCLUC | RX4888TINE1200000 | XXXR4524KK | K88 - LAB UNIQUE COSTS |
| | Totals: | | | | | 0:00 | 8:00 | 8:00 | 8:00 | 8:00 | 8:00 | 0:00 | 40:00 | | | | | |

| | | Row | From | From | From | From | From | From | From | Work Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| | | 1.6 | To | To | To | To | To | To | To | EEO meeting preparation. |

| | | Row | From | From | From | From | From | From | From | Work Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| | | 1.7 | To | To | To | To | To | To | To | EEO meeting. |

| | | Row | From | From | From | From | From | From | From | Work Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| | | 1.9 | To | To | To | To | To | To | To | Research PP13 paycheck shortage problem |